# COMPOSITE EXHIBIT C

**** FILED: BROWARD COUNTY, FL Brenda D. Forman, CLERK 8/10/2023 4:07:48 PM.****
BRENDA D. FORMAN, BROWARD COUNTY CLERK OF COURTS

Case 0:23-cv-61594-RS   Document 1-3   Entered on FLSD Docket 08/18/2023   Page 2 of 1096

# PROGRESS DOCKET
## CASE NO. COINX-22-049821

| | | |
|---|---|---|
| Assaf Sasson | § | Location: **Central** |
| Plaintiff | § | Judicial Officer. **73 DeLuca, Steven P.** |
| vs. | § | Filed on: **08/03/2022** |
| State Farm Mutual Automobile Insurance Company | § | Uniform Case Number: **062022CC049821AXXXCE** |
| Defendant | § | |

---

### CASE INFORMATION

Statistical Closures
07/20/2023   Disposed by Other

23 - 0016714

Case Type: **CC Prop Ins Claims > $8,000 - $15,000**

Case Status: **07/20/2023   Disposed**

Case Flags: **Transferred**



FILED
AUG 10 2023
By_____

---

### DATE · CASE ASSIGNMENT

**Current Case Assignment**
Case Number          COINX-22-049821
Court                Central
Date Assigned        08/03/2022
Judicial Officer     73 DeLuca, Steven P.

---

### PARTY INFORMATION

**Plaintiff**    Sasson, Assaf

BROWARD COUNTY, FLORIDA
I hereby certify this printout to be an accurate duplicate of the electronically recorded data stored as an abstract of the official records of the Clerk of the Court.

WITNESS MY HAND this day of AUG 08 2023

CLERK OF THE CIRCUIT & COUNTY COURTS
_____ D.C.

*Lead Attorneys*
**Stabinski, Daren**
*Retained*
954-324-1552(W)
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
daren@darenstabinskipa.com

**Defendant**    State Farm Mutual Automobile Insurance Company

**Clark, Johanna W**
*Retained*
407-648-9099(F)
407-849-0300(W)
Carlton Fields PA
200 S Orange Ave
Suite 1000
Orlando, FL 32801
atokarz@carltonfields.com

---

### DATE · EVENTS & ORDERS OF THE COURT · INDEX

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 07/20/2023 7.03 PM | **DISPOSITIONS** 📄 Order of Transfer<br>Comment (Circuit Court) | *Vol./Book 0 , Page 0, 2 pages Instrument# 118992888* |
| 08/08/2023 | **EVENTS**<br>Don't Docket On This Case | |
| 08/08/2023 | Entire File Transferred | |

NOT AN OFFICIAL COPY — PUBLIC ACCESS — NOT AN OFFICIAL COPY

# PROGRESS DOCKET
## CASE NO. COINX-22-049821

*To Circuit Court*

| | |
|---|---|
| 07/21/2023 | Letter Sent Re Trans Fee |
| 07/14/2023 | Re-Notice of Hearing<br>*Monday, July 17, 2023 at 9 15am via Zoom* |
| 07/14/2023 | Notice of Appearance |
| 07/14/2023 | Notice of Appearance |
| 07/12/2023 | Reply<br>Party:  Plaintiff  Sasson, Assaf |
| 07/07/2023 | Motion to Compel<br>*MOTION TO COMPEL PLAINTIFFS COMPLIANCE WITH CASE MANAGEMENT ORDER*<br>Party:  Defendant  State Farm Mutual Automobile Insurance Company |
| 07/05/2023 | Motion for Extension of Time<br>*MOTION TO EXTEND PRETRIAL DEADLINES*<br>Party:  Plaintiff  Sasson, Assaf |
| 06/30/2023 | Notice of Hearing<br>*Tuesday July 18, 2023 at 9.00am via Zoom* |
| 06/29/2023 | Order Resetting Hearing<br>*PLAINTIFFS' MOTION FOR LEAVE TO AMEND<br>COMPLAINT 07/18/20* |
| 06/21/2023 | Memorandum in Opposition |
| 06/09/2023 | Notice of Unavailability |
| 06/06/2023 | Re-Notice of Hearing |
| 06/06/2023 | Re-Notice of Hearing |
| 06/06/2023 | Notice of Unavailability |
| 05/31/2023 | Notice of Hearing |
| 05/18/2023 | Motion for Leave to Amend<br>*THEN TRANSFER TO CIRCUIT COURT*<br>Party:  Plaintiff  Sasson, Assaf |
| 04/23/2023 | Agreed Order<br>*ON SECOND JOINT MOTION TO AMEND NOVEMBER 2.2022 CASE* |
| 04/20/2023 | Motion to Amend<br>Party·  Plaintiff  Sasson, Assaf |

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

# PROGRESS DOCKET
## CASE NO. COINX-22-049821

| | | |
|---|---|---|
| 04/20/2023 | Answer to Amended Complaint | |
| 04/18/2023 | Agreed Order
*STRIKING LOSS OF USE CLAIM WITHOUT PREJUDICE* | |
| 04/18/2023 | Notice of Taking Deposition | |
| 04/11/2023 | Notice of Taking Deposition Duces Tecum | |
| 04/10/2023 | Agreed Order
*ON PLAINTIFF'S MOTION TO AMEND COMPLAINT* | |
| 04/03/2023 | Motion to Amend
*Complaint*
Party: Plaintiff Sasson, Assaf | |
| 03/30/2023 | Subpoena Filed
*Stuttgart International Auto Body Collision ("Stuttgart International* | |
| 03/30/2023 | Notice of Taking Deposition Duces Tecum
*Stuttgart International's Corporate Representative* | |
| 03/30/2023 | Subpoena Filed
*Daniel Pagan* | |
| 03/30/2023 | Notice of Taking Deposition Duces Tecum
*DANIEL PAGAN*
Party: Defendant State Farm Mutual Automobile Insurance Company | |
| 03/30/2023 | Subpoena Filed
*Daniel Pagan* | |
| 03/21/2023 | Notice of Taking Deposition Duces Tecum | |
| 03/21/2023 | Notice of Taking Deposition Duces Tecum | |
| 03/15/2023 | Notice of Compliance | |
| 02/02/2023 | Request for Copies (Pursuant to Rule 1.351) | |
| 01/30/2023 | Motion to Invoke Rules of Civil Procedure
Party: Defendant State Farm Mutual Automobile Insurance Company | |
| 01/30/2023 | Case Management Order | |
| 01/26/2023 | Joint Motion
*TO AMEND CASE MANAGEMENT ORDER* | |
| 01/19/2023 | Motion for Extension of Time | |

*Printed on 08/08/2023 at 9 00 AM*

# PROGRESS DOCKET
## CASE NO. COINX-22-049821

| | |
|---|---|
| 12/22/2022 | Motion to Compel<br>*PLAINTIFF'S MOTION TO COMPEL* |
| 12/22/2022 | Not of Intent to Serve Subpoenas Under Rule 1.351<br>*Custodian of Records*<br>*Copans Motor, Inc d/b/a Champion Porsche*<br>Party: Defendant State Farm Mutual Automobile Insurance Company |
| 12/22/2022 | Motion to Compel Discovery<br>Party: Defendant State Farm Mutual Automobile Insurance Company |
| 12/22/2022 | Notice of Service of Answers to Interrogatories |
| 12/22/2022 | Response to Request for Production |
| 12/22/2022 | Response to Request for Production |
| 12/22/2022 | Notice of Service of Answers to Interrogatories |
| 12/20/2022 | Expert Interrogatories |
| 12/19/2022 | Notice of Service of Expert Interrogatories |
| 12/19/2022 | Request for Production |
| 12/13/2022 | Motion to Strike<br>*PLAINTIFF'S EXPERT WITNESS LIST AS*<br>*DEFICIENT AND FOR FAILURE TO COMPLY WITH THE PRETRIAL ORDER*<br>Party: Defendant State Farm Mutual Automobile Insurance Company |
| 12/13/2022 | Notice of Withdrawal |
| 12/13/2022 | Expert Witness List |
| 12/12/2022 | Expert Witness List |
| 12/12/2022 | Disclosure of Expert Witness |
| 11/18/2022 | Request for Production<br>*TO PLAINTIFF*<br>Party: Attorney Clark, Johanna W; Defendant State Farm Mutual Automobile Insurance Company |
| 11/18/2022 | Notice of Serving Proposal for Settlement<br>*TO PLAINTIFF*<br>Party: Attorney Clark, Johanna W; Defendant State Farm Mutual Automobile Insurance Company |
| 11/18/2022 | Notice of Service of Interrogs<br>*FIRST SET OF INTERROGATORIES TO PLAINTIFF*<br>Party: Attorney Clark, Johanna W; Defendant State Farm Mutual Automobile Insurance |

# PROGRESS DOCKET
## CASE NO. COINX-22-049821

| | | |
|---|---|---|
| | Company | |
| 11/18/2022 | Not of Intent to Serve Subpoenas Under Rule 1.351<br>*DEPONENT· STUTTGART INTERNATIONAL AUTO BODY AND COLLISION II INC C/O REGISTERED AGENT CLAUDIA M BUSSONE AND DEPONENT· STUTTGART INTERNATIONAL AUTO BODY AND COLLISION II INC ATTN. CUSTODIAN OF RECORDS*<br>Party:  Attorney  Clark, Johanna W;  Defendant  State Farm Mutual Automobile Insurance Company | |
| 11/14/2022 | Agreed Order<br>*STRIKING LOSS OF USE CLAIM WITHOUT PREJUDICE* | *Vol./Book 0, Page 0, 2 pages Instrument# 118527699* |
| 11/14/2022 | Answer to Amended Complaint | |
| 11/03/2022 | Amended Complaint<br>Party:  Plaintiff  Sasson, Assaf | |
| 11/02/2022 | Case Management Order | |
| 10/26/2022 | Notice of Cancellation | |
| 10/06/2022 | Notice of Hearing | |
| 09/21/2022 | Motion to Dismiss<br>*THE COMPLAINT*<br>Party:  Defendant  State Farm Mutual Automobile Insurance Company | |
| 09/10/2022 | Agreed Order<br>*ON DEFENDANT'S MOTION FOR EXTENSION OF TIME TO THE COMPLAINT* | |
| 09/08/2022 | Motion for Extension of Time | |
| 09/08/2022 | Notice of Appearance | |
| 08/16/2022 | eSummons Issuance | |
| 08/08/2022 | Complaint (eFiled) - Insurance Company | |
| 08/03/2022 | Interrogatories & Notice of Filing | |
| 08/03/2022 | Request for Production | |
| 08/03/2022 | Civil Cover Sheet<br>Amount· 8,001.00 | |
| 08/03/2022 | Per AOSC20-23 Amd12, Case is determined General | |

| TARGET DATE | TIME STANDARDS | DATE |
|---|---|---|
| | | |

**** FILED: BROWARD COUNTY, FL, Brenda D. Forman, CLERK 8/10/2023 4:07:48 PM.****
BRENDA D. FORMAN, BROWARD COUNTY CLERK OF COURTS

# PROGRESS DOCKET

## CASE NO. COINX-22-049821

| 08/30/2023 | Transfer Fees Required - County Civil | 08/08/2023 |

| DATE | FINANCIAL INFORMATION |
| --- | --- |

**Plaintiff** Sasson, Assaf

| | |
| --- | --- |
| Total Charges | 310 00 |
| Total Payments and Credits | 310.00 |
| **Balance Due as of  8/8/2023** | **0.00** |

*Printed on 08/08/2023 at 9 00 AM*

**** FILED: BROWARD COUNTY, FL, Brenda D. Forman, CLERK 8/10/2023 4:07:48 PM.****
Instr# 118902886 Page 1 of 2, Recorded 07/21/2023 at 09:27 AM
Broward County Commission

Case 0:23-cv-61594-RS Document 1-3 Entered on FLSD Docket 08/18/2023 Page 8 of 1096

Filing # 177912603 E-Filed 07/20/2023 07:03:24 PM





## IN THE COUNTY COURT OF THE 17TH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. <u>COINX22049821</u>   DIVISION: <u>73</u>   JUDGE: <u>DeLuca, Steven P. (73)</u>

**Assaf Sasson**

Plaintiff(s) / Petitioner(s)

v.

**State Farm Mutual Automobile Insurance Company**

Defendant(s) / Respondent(s)

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT AND TRANSFER CASE TO CIRCUIT COURT

THIS MATTER having come before the Court for hearing on July 17, 2023 on Plaintiffs' Motion for Leave to Amend Complaint and then Transfer to Circuit Court, and the Court having reviewed the record, heard argument of counsel, and being otherwise advised in the premises, it is **HEREBY ORDERED AND ADJUDGED** as follows:

1) Plaintiffs' Motion for Leave to Amend the Complaint and Transfer to Circuit Court is hereby **GRANTED**. Plaintiffs' Third Amended Complaint, attached to Plaintiffs' Motion, shall be filed on the docket promptly upon entry of this order.

2) Based on jurisdictional grounds, this case shall be immediately transferred to the Circuit Court for further proceedings. Any other pending motions, including Plaintiffs' Motion for Extension of the Pretrial Deadlines and Defendant's Motion to Compel Plaintiffs' Compliance with Case Management Order, are therefore moot.

3) Accordingly, the Clerk of Court is hereby **ORDERED** to transfer this matter to the Circuit Court forthwith. As may be required to accomplish the transfer, Plaintiff shall pay all necessary filing fees upon notice and request.

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 07/20/2023 07:03:24 PM.****

**** FILED: BROWARD COUNTY, FL Brenda D. Forman, CLERK 8/10/2023 4:07:48 PM.****
Inst# 118982888 Page 2 of 2 End of Document

Case 0:23-cv-81594-RS   Document 1-3   Entered on FLSD Docket 08/18/2023   Page 9 of 1096

Case Number: COINX22049821

4) This transfer is contingent upon the receiving division accepting the case.  Should the receiving division decline to receive the matter it is requested that the matter be returned without delay.

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>20th day of July, 2023</u>.

<u>COINX22049821 07-20-2023 5:07 PM</u>
Hon. Steven P. DeLuca
**COUNTY COURT JUDGE**
Electronically Signed by Steven P. DeLuca

**Copies Furnished To:**
Christopher M. Paolini , E-mail : cpaolini@carltonfields.com
Christopher M. Paolini , E-mail : atokarz@carltonfields.com
Cristina M. Pierson , E-mail : johnet@kulaw.com
Cristina M. Pierson , E-mail : cmp@kulaw.com
D Matthew Allen , E-mail : bwoolard@carltonfields.com
D Matthew Allen , E-mail : mallen@carltonfields.com
D Matthew Allen , E-mail : tpaecf@cfdom.net
Daren Stabinski , E-mail : Trey@darenstabinskipa.com
Daren Stabinski , E-mail : daren@darenstabinskipa.com
Johanna W Clark , E-mail : dmonge@carltonfields.com
Johanna W Clark , E-mail : jclark@carltonfields.com
Johanna W Clark , E-mail : dmontgomery@carltonfields.com
John E Clabby , E-mail : jclabby@carltonfields.com
John E Clabby , E-mail : nkapadia@carltonfields.com
Miguel A. Rodriguez , E-mail : atokarz@carltonfields.com
Miguel A. Rodriguez , E-mail : marodriguez@carltonfields.com

TRUE COPY

Case 0:23-cv-61594-RS   Document 1-3   Entered on FLSD Docket 08/18/2023   Page 10 of 1096

IN THE COUNTY COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA


ASSAF SASSON AND ADA SASSON,

              Plaintiffs,                CASE NO.:  CACE 23-016714

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

              Defendant.

_____/

### PLAINTIFFS' NOTICE OF FILING

Plaintiffs, Assaf and Ada Sasson, by and through undersigned counsel, hereby file the attached Third Amended Complaint.

### <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this 11th day of  August 2023, to all registered participants of the Florida e-filing portal.

**DAREN STABINSKI P.A.**
100 North Federal Highway, #524
Fort Lauderdale, FL 33301
Phone: (954) 324-1552
Fax: (954) 245-0739
daren@darenstabinskipa.com
Daren Stabinski (FBN 002951)

**KELLEY UUSTAL, PLC**
500 North Federal Highway, Suite 200
Fort Lauderdale, Florida 33301
Phone: (954) 522-6601
Fax: (954) 522-6608
By: /s/ *Cristina Pierson*
Cristina Pierson (FBN 984345)
cmp@kulaw.com
Matthew DellaBetta (FBN 1031216)

1

mdb@kulaw.com
Attorneys for Plaintiffs and Putative Class
Members

IN THE COUNTY COURT IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. COINX-22-049821

ASSAF SASSON and
ADA SASSON,

      Plaintiffs,

vs.

CLASS REPRESENTATION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY.

      Defendant.

_____/

## THIRD AMENDED COMPLAINT
### (Class Action)

Plaintiffs, ASSAF SASSON and ADA SASSON, by and through undersigned counsel, bring this class action pursuant to Florida Rule of Civil Procedure 1.220, on behalf of themselves and all others similarly situated ("Class Members"), against Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm" or "Defendant"), and in support thereof alleges:

### JURISDICTION, PARTIES, & VENUE

1.     This is a class action for damages exceeding $50,000, exclusive of attorney's fees, interest, and costs.

2.     At all times material, Plaintiffs and Class Representatives, Assaf and Ada Sasson, were residents of Broward County, Florida, and insured under an automobile policy issued by STATE FARM AUTOMOBILE INSURANCE COMPANY with collision benefits for a high-value luxury vehicle. A copy of the policy, Florida Policy Form 9810A, is attached hereto as Exhibit A.

1

3.      At all times material hereto, Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, was a duly authorized insurance company, organized and incorporated under the Laws of Florida, was authorized to transact insurance business in the State of Florida, and transacted its customary business through its agents and representatives in Broward County, Florida and throughout the state.

4.      Venue is proper because the events giving rise to the claims occurred in Broward County and the causes of action accrued in Broward County, where State Farm regularly conducts business.

5.      Any and all conditions precedent to the maintenance of this action have occurred, been performed, or have been waived.

## INTRODUCTION

6.      Plaintiffs bring this class action challenging State Farm's systemic and wrongful practice of refusing to pay for the proper and necessary collision repairs of its insureds' high-value, luxury automobiles, in accordance with policy terms. In that regard, State Farm made it part of their business model to deny necessary collision benefits by refusing to pay appropriate hourly labor rates for high-value luxury vehicles, like Plaintiffs, that have suffered damage in a collision.

7.      As customary for high-value, luxury automobiles, the manufacturers require collision repairs to be performed by a manufacturer's certified repair facility. This ensures that repairs are conducted in accordance with the manufacturer's specifications and preserves the original manufacturer warranty on the vehicle.  But State Farm, unlike other Florida insurers, refuses to pay the prevailing competitive price for the hourly labor rates at these certified repair facilities.  State Farm's denial of collision benefits in this manner violates the coverage provisions of State Farm's standard automobile policies and artificially reduces claims payments to the benefit of State Farm and to the detriment of its insureds.

8.     State Farm is one of the nation's largest automobile insurance companies and consistently ranks as one the three largest automobile insurers in Florida. In Florida alone, State Farm generates approximately $2.8 billion in premiums written annually, and comprises approximately 16% of the market share of automobile policies. State Farm sells collision coverage as part of its standard automobile insurance policies throughout Florida, and its practices relating to the payment of hourly rates for collision repairs have been uniform and consistent over at least the last five years.

9.     High-value, luxury vehicles are expensive and complex vehicles to repair after a collision. According to the manufacturers of such vehicles, i.e. Porsche, Mercedes-Benz, Bentley, BMW, and Maserati, proper repair requires a *certified* body shop whose technicians have been specially trained by the manufacturer and possess the sophisticated equipment necessary to repair the vehicle to the manufacturer specifications.

10.     A certified repair facility has the manufacturer's advanced technology and particular "know-how" necessary for proper repair of its vehicle safety systems and sophisticated components. Manufacturers warn vehicle owners that work that is not performed by a certified repair facility voids the manufacturer's warranty.  That consequence would diminish the vehicle's value and subject the vehicle owner to additional costs to maintain and own the vehicle.   Moreover, due to the high-tech nature of the safety systems, it is essential that a certified facility perform the repairs to ensure the specialized protective features have been properly returned to manufacturer specifications after a collision.

11.     In general, automobile insurers charge their insureds more premiums for collision coverage on high-value automobiles than other vehicles based upon the recognition that those vehicles are more expensive to repair after a collision. As explained above, collision repairs for such high-value luxury vehicles must be performed by a certified facility, and consequently, Plaintiffs and the class members are entitled to repairs by professionals within that repair market at those prevailing competitive prices.

3

12.     While State Farm knows of the prevailing competitive prices for that repair market, it has consistently refused to pay those hourly rates for necessary collision repairs despite its promises to "pay for loss caused by collision to a covered vehicle."  *See* "Insuring Agreement" for "Collision Coverage" in the Policy at Exhibit A at 31.  For example, the prevailing competitive price for a Porsche certified facility to perform body and paint labor is $105 per hour based on the majority of the repair market comprised of properly certified facilities.  Yet, State Farm has uniformly rejected repair estimates that exceed $47 per hour for such work and refuses to pay the applicable prevailing rate of certified facilities without justification and contrary to its policy terms.

13.     In fact, the hourly rates for labor accepted by State Farm generally do not distinguish between models or types of cars.  So State Farm uses only one rate (whether it is a Porsche or a Hyundai) as the hourly rate for any vehicle in the same geographic area.

14.     State Farm's method of determining the cost of repair for collision damages to its insureds' high-value luxury vehicles does not comply with the requirements under the policy and results in a systematic underpayment of collision insurance payments to its insureds.

## FACTUAL ALLEGATIONS

15.     For valuable consideration, Defendant State Farm issued a policy of automobile insurance to Plaintiffs that included collision benefits, and specifically provided coverage for Plaintiffs' high value luxury vehicle, a 2022 Porsche Taycan ("the insured vehicle").  A copy of Policy Number J53-4643-B02-59C ("the policy") is attached as Exhibit A and incorporated herein by reference. The insured vehicle was purchased by Plaintiffs for more than $100,000, and is a high-tech, all-electric vehicle described as a "technology flagship" for Porsche.

16.     As reflected in the policy, the insured vehicle is listed as a covered vehicle and as such, Defendant agreed to pay for loss caused by a collision.

17.     On or about May 27, 2022, Plaintiff Ada Sasson, an insured under the policy, was traveling in the insured vehicle and was involved in an automobile collision in Broward County, Florida ("the collision").  The collision caused Plaintiffs' insured vehicle to suffer loss and damage.

18.     Plaintiffs submitted a claim for collision benefits (claim number 59-34T0-34F) to State Farm for payment related to the damages to the insured vehicle that resulted from the collision.

19.     The Limit of Liability provisions in the policy state that the cost to repair the insured vehicle would be determined as follows:

(1)  *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

(a)  The cost agreed to by both the owner of the *covered vehicle* and *us*;

(b)  A bid or repair estimate approved by *us*; or

(c)  A repair estimate that is written based upon or adjusted to:

(i)  the prevailing competitive price;

(ii)  the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

(iii)  a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*.  If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*See* Ex. A, Policy at 32-33.

20.     On or about May 31, 2022, Plaintiffs brought the vehicle to a Porsche dealership who referred Plaintiffs to a local collision body shop certified by Porsche to repair the insured vehicle as required by Porsche to preserve the manufacturer's vehicle warranty and to ensure the work was performed per Porsche's specifications. That Porsche-certified body shop, Stuttgart International, located in Broward County, Florida specializes in repairing high-value luxury vehicles -- like the insured vehicle.

21.     Stuttgart performs collision repairs for numerous insurance companies who pay its hourly labor rates in connection with work on high-value luxury vehicles.  Moreover, Stuttgart's hourly labor rates for Porsche collision repairs represent the prevailing competitive prices – i.e. the prices charged by a majority of the repair market in the area -- and are routinely accepted by Florida automobile insurance companies.

22.      Using these prevailing competitive prices, Stuttgart International created an estimate of repairs to the subject vehicle in the amount of $8,360.87.  This repair estimate was delivered to State Farm, but it was rejected.

23.     On or about July 1, 2022, State Farm created its own estimate of damages to the insured vehicle in the amount of $6,267.03 (based on alternative labor hourly rates that are not the prices charged in the repair market of certified facilities) and offered to pay only that amount for repair to the vehicle, less a $500.00 deductible.

24.     Plaintiffs did not approve or agree to the amount of State Farm's estimate.  And State Farm did not approve the repair estimate provided by Plaintiffs from Stuttgart, despite that Plaintiffs were entitled to have the insured vehicle restored to its "pre-loss condition" which required the collision repairs to be performed by a certified facility.  That would assure that the work was properly performed to manufacturer specifications (including all safety systems) and preserve the manufacturer's original factory warranty.

25.     The repair estimate provided by State Farm was not based upon or adjusted to the prevailing competitive price.  Moreover, paintless dent repair was not applicable and could not properly repair the damages to the insured vehicle.

26.     Despite Plaintiffs' demand and the carrier's admitted collision coverage obligations, State Farm has refused to pay the collision benefits in the total amount of $8,360.87. This is the amount (as reflected in the estimate created by Stuttgart International) that was required to repair the insured vehicle at the prevailing competitive price, pursuant to the subject policy.

27.     Plaintiffs were therefore forced to pay the difference between the State Farm estimate and the cost to repair the vehicle charged by Stuttgart to ensure their vehicle was properly repaired by a Porsche certified repair facility.

28.     Plaintiffs individually, and on behalf of those similarly situated, bring this class action seeking appropriate redress, remedies, and damages.  As shown by its pattern of refusing to pay the appropriate cost to repair collision damages on high-value luxury vehicles, State Farm has engaged and continues to engage in a widespread, recurring, and ongoing practice of improperly underpaying collision benefits and causing its insureds to pay additional monies out of their pockets to have their vehicles properly repaired by certified facilities, as well as suffer other significant harm to their insured vehicles.

## CLASS REPRESENTATION ALLEGATIONS

29.     _Compliance with Rule 1.220._   Plaintiffs seek to certify a class on the claims for breach of contract (Count I) and breach of implied covenant of good faith and fair dealing (Count II).  As established herein, these claims are maintainable on behalf of a class and Plaintiffs have satisfied all of the prerequisites of Rule 1.220 as detailed below.

30.     _Class Definition_. Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated pursuant to Rule 1.220.   The Class is defined as follows:

> All State Farm automobile policy owners (non-commercial) with a covered collision claim after September 1, 2018 involving an insured high-value luxury vehicle, where coverage was denied for the hourly labor rates of a manufacturer's certified facility.

Excluded from the Class are State Farm officers, employees, directors, and members of their immediate families; the legal representatives, heirs, successors or assigns of any such excluded party; and the judicial officer(s) to whom this action is assigned and members of their immediate families.  Plaintiffs reserve the right to amend, modify, or expand the definition of the proposed class or add sub-classes as discovery proceeds before certification is determined by the Court.

31.    _Numerosity under Rule 1.220 (a) and (c)(2)(D)._    The members of the Class are so numerous that joinder of them is impractical.  Upon information and belief, the Class consists of hundreds (and perhaps thousands) of members.  Indeed, Defendant has handled thousands of automobile insurance claims for collision damage to high value luxury vehicles, including those manufactured by Porsche, Mercedes-Benz, Maserati, Bentley, BMW, and Land Rover, but failed to pay to have repairs performed by manufacturer certified facilities.  The identity and precise number of class members is exclusively known by the Defendant and can be easily ascertained from Defendant and its records during discovery. State Farm has the ability to identify all members of the class, but at this time such specific information is not available to the Plaintiffs.

32.    _Commonality under Rule 1.220 (a) and (c)(2)(B)._    There is a well-defined community of interest in the questions of law and fact involving and affecting the proposed Class.  These common questions relate to Defendant's practices at issue and predominate over any questions affecting only individuals. Such questions of law and fact common to the class include:

a.   Whether State Farm engaged is a systematic underpayment of collision losses to high value luxury vehicles;

b.  Whether State Farm has a practice of refusing to pay appropriate hourly rates to repair high value luxury vehicles, like Plaintiffs, that have suffered damage in a collision;

c.  Whether State Farm has a standard business practice of refusing to pay for collision losses on high value luxury vehicles where the estimate included hourly labor rates by manufacturer certified facilities;

d.  Whether Defendant uniformly instructs its agents and employees follow this routine practice;

e.  Whether State Farm has knowledge of the prevailing competitive prices for collision repairs by certified facilities;

f.  Whether the hourly rates charged by certified body shops, like Stuttgart, are prevailing competitive prices;

g.  Whether other Florida insurers routinely pay the prevailing competitive price of the hourly labor rates at properly certified repair facilities;

h.  Whether Defendant's policy requires that the insured vehicle be returned to its pre-loss condition which requires repairs by a properly certified repair facility;

i.  Whether State Farm's conduct in determining the cost of repair complies with its standard automobile insurance policy language;

j.  Whether Defendant breached its contract of insurance and duties of good faith and fair dealing to its insureds;

k.  Whether Defendant artificially reduced collision claim payments with such frequency to constitute a general business practice;

l.  Whether Defendant continues to improperly reject estimates that include hourly rates charged by certified facilities; and

m.  Whether the class members suffered damages and the proper measure of damages.

33.     _Typicality under Rule 1.220 (a) and (c)(2)(C)._  Plaintiffs' claims are typical of the claims that would be asserted by other members of the Class in that by proving their claims, Plaintiffs will prove the claims of all class members. Moreover, Plaintiffs claims similarly arise from the same wrongful conduct of Defendant.  Plaintiffs possess the same legal interest and rights pursuant to State Farm's policy language and have endured the same legal injury as all the class members: All class members have been denied collision benefits and all class members, like Plaintiffs, were similarly injured by Defendant's conduct. As such, Plaintiffs' interests coincide with, and not antagonistic to, those of other Class Members.

34.     _Adequacy under Rule 1.220 (a) and (c)(2)(D)._     Plaintiffs are adequate Class Representatives who have interests in common with the proposed class members and are committed to the vigorous prosecution of this action.   Plaintiffs are State Farm insureds that have expressed a willingness and desire to represent the interests of the class as a whole and have no conflicts with other Class Members.  Plaintiffs have retained the undersigned law firms who have extensive experience in class actions, insurance coverage disputes, and complex litigation, and who have the resources required to pursue this case.

35.     _Predominance under Rule 1.220(b)(3) & (c)(2)(E)._ The many questions of law and fact that are common to the claims predominate over any questions of law or fact affecting only individual members of the class. Those common questions of law and fact are detailed above in the "Commonality" paragraph and are incorporated herein by reference.

36.     _Superiority of Class Determination._  A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy.  Prosecution of separate actions by individual members of the class create a risk of inconsistent or varying adjudications of the same issues and burden the Court with hundreds (and perhaps thousands) of duplicative actions.  Since the issues referenced above will determine liability, it is far more desirable to proceed in a single action

before this Court than to be burdened with fractionalized litigation throughout Florida. Moreover, absent a Class, the class members will continue to suffer damages and Defendant's wrongful conduct will continue without redress or remedy. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

**Count I – Breach of Contract**

37.     Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 36 as if fully set forth herein.

38.     Defendant issued automobile policies of insurance, in the form reflected in Exhibit A, which included collision coverage in exchange for premium payments. This is a valid contract providing Plaintiffs and the class member insureds with a right to seek collision benefits under the policy.

39.     After being involved with a covered collision, Plaintiffs and the class members timely filed claims seeking payment for the cost of repairing the covered high value luxury vehicles under the policy in order to restore their vehicles to their pre-loss condition. That involves the work being performed by a certified repair facility as mandated by the manufacturers.

40.     Despite delivery of an estimate for the cost of repair at prevailing competitive prices, State Farm refused to pay the cost of repair charged by certified facilities.

41.     Defendant materially breached its contracts by failing and refusing to pay the collision benefits as submitted by the Plaintiffs and class members in a timely manner.

42.     As a direct and proximate result of the breach of contract, Plaintiffs and the class members have sustained damages. Indeed, benefits remain unpaid as a result of Defendant's improper denial of

collision repair costs pursuant to the terms of the insurance policy.   Moreover, Plaintiffs and the Class Members have incurred out of pocket losses and other harm alleged herein.

43.     Due to Defendant's failure to pay collision benefits in accordance with its policy, Plaintiffs and class members had to retain counsel to prosecute this suit.  Plaintiffs and the class members are entitled to an award of attorney's fees against State Farm according to § 627.428, Florida Statutes.

WHEREFORE, Plaintiffs demand judgment against Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for themselves and the class members as follows:

    a.  Certifying this matter as a class action pursuant to Rule 1.220;

    b.  Designating Plaintiffs as class representatives and the undersigned as class counsel;

    c.  Awarding Plaintiffs and the class members their damages for breach of contract and denial of benefits, prejudgment interest from the date payment was overdue at the statutory rate;

    d.  Enjoining Defendant's ongoing practice of denying coverage for hourly labor rates of certified facilities;

    e.  Awarding attorneys' fees and costs to the Plaintiffs and Class; and

    f.  Granting such other relief as the Court may deem just and proper.

### COUNT II – Breach of Implied Covenant of Good Faith and Fair Dealing

44.      Plaintiffs reallege and incorporate the allegations of paragraphs 1 through 36, 38 through 40, and 43, as if fully set forth herein.

45.     Every contract in Florida includes an implied covenant of good faith and fair dealing.

46.     Defendant materially breached the implied covenant of good faith and fair dealing by preventing class members from using certified facilities for repairs of their high value luxury vehicles in order to artificially reduce collision claims payments. As a result, Defendant has left its class member insureds with either having to pay out of pocket for covered repairs or having to take risks with repairs performed by non-certified facilities (including failure to satisfy manufacturer specifications and voiding the manufacturer's factory warranty).

12

47.     Contrary to its obligations of good faith to its insureds, Defendant directed that repairs be performed at non-certified facilities, despite that manufacturer requirements that work be performed only by certified facilities. Making matters worse, Defendant did not warn or inform its insureds of the risks involved with proceeding with collision repairs at a non-certified facility.

48.     Defendant engaged in this wrongful conduct as part of a pattern and practice designed to artificially reduce its collision claims payments irrespective of its obligations to its insureds.

49.     As a direct and proximate result of the material breach of the implied covenant of good faith and fair dealing, Plaintiffs and the class members have sustained damages, including out of pocket losses and harm to the insured vehicles.

WHEREFORE, Plaintiffs demand judgment against Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for themselves and the class members as follows:

    a.  Certifying this matter as a class action pursuant to Rule 1.220;

    b.  Designating Plaintiffs as class representatives and the undersigned as class counsel;

    c.  Awarding Plaintiffs and the class members their damages for breach of implied covenant of good faith and fair dealing, plus prejudgment interest at the statutory rate;

    d.  Enjoining Defendant's ongoing practice of denying coverage for hourly labor rates of certified facilities;

    e.  Awarding attorneys' fees and costs to the Plaintiffs and Class pursuant to applicable law relating to class actions; and

    f.  Granting such other relief to Plaintiffs and the Class as the Court may deem just, proper and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury on all issues so triable.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this 21st day of July 2023, to all registered participants of the Florida e-filing portal.

**DAREN STABINSKI P.A.**
100 North Federal Highway, #524
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
daren@darenstabinskipa.com
Daren Stabinski, Esq.
Fla. Bar No. 002951

**KELLEY | UUSTAL PLC**
500 North Federal Highway, Suite 200
Fort Lauderdale, Florida 33301
Telephone: (954) 522-6601
Facsimile: (954) 522-6608
By: /s/ *Cristina M. Pierson*
Cristina M. Pierson, Esq. (FBN 984345)
cmp@kulaw.com
johnet@kulaw.com
Attorneys for Plaintiffs and Putative Class Members



## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number J53 4643-B02-59B including any endorsements, if applicable, for the policy term(s) 04/19/2022 to 06/06/2022 and insuring SASSON, ASSAF & ADA L based on available records.

It is State Farm's business practice to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs. Therefore, the included Declarations Page which was in effect at the time of loss will indicate the policy period of the last policy issuance transaction.

The policy was in effect on the loss date of 05/27/2022.


Jessica Bass
Underwriter
Date: 09/13/2022


Exhibit A



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

State Farm®
**Car Policy**
Booklet

**Florida**
Policy Form 9810A

SF-Sasson, Assaf - 000289

# CONTENTS

**THIS POLICY** .................................... 3

**DEFINITIONS** ................................... 4

**LIABILITY COVERAGE (Bodily Injury and Property Damage)** ................................ 6

Additional Definition ........................... 6

Insuring Agreement .............................. 7

Supplementary Payments ..................... 7

Limits ................................................... 7

Nonduplication..................................... 8

Exclusions ........................................... 8

If Other Liability Coverage Applies................... 9

Required Out-of-State Liability Coverage ....... 10

Financial Responsibility Certification ............. 10

**PROPERTY DAMAGE LIABILITY COVERAGE** ............................................. 10

Additional Definition ........................... 10

Insuring Agreement ............................. 11

Supplementary Payments.....................11

Limit ................................................... 11

Exclusions ........................................... 12

If Other Property Damage Liability Coverage Applies ............................... 13

Required Out-of-State Liability Coverage ....... 14

Financial Responsibility Certification ............. 14

**NO-FAULT COVERAGE** ................................ 14

Additional Definition ........................... 14

Insuring Agreement ............................. 14

Limits.................................................. 15

Application of Any Deductible and Workers' Compensation Offset ........................... 17

Partial Payment or Rejection of a Claim.......... 17

Nonduplication ................................... 17

Exclusions............................................ 17

If Other No-Fault Coverage Applies................ 18

Our Payment Options .......................... 18

**MEDICAL PAYMENTS COVERAGE** ........... 18

Additional Definition ........................... 18

Insuring Agreement ............................. 19

Determining Medical Expenses ...................... 20

Limits................................................... 20

Nonduplication..................................... 21

Exclusions............................................ 21

If Other Medical Payments Coverage or Similar Vehicle Insurance Applies .................. 23

Our Payment Options........................... 24

**UNINSURED MOTOR VEHICLE COVERAGE (Stacking)** ....................................24

Additional Definitions........................24

Insuring Agreement ............................25

Consent to Settlement ........................25

Deciding Fault and Amount.............................25

Limits ...................................................25

Nonduplication ....................................26

Exclusions............................................26

If Other Uninsured Motor Vehicle Coverage Applies ...............................26

Our Payment Options ..........................26

**UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking)**...................................27

Additional Definitions........................27

Insuring Agreement ............................27

Consent to Settlement ........................27

Deciding Fault and Amount .............................28

Limits ...................................................28

Nonduplication ....................................28

Exclusions............................................28

If Other Uninsured Motor Vehicle Coverage Applies ...............................29

Our Payment Options ..........................30

**PHYSICAL DAMAGE COVERAGES** ...........30

Additional Definitions........................30

Insuring Agreements .........................31

Supplementary Payments – Comprehensive Coverage and Collision Coverage....................32

Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage ....................32

Limits – Car Rental and Travel Expenses Coverage .............................................33

Nonduplication ....................................34

Exclusions............................................34

If Other Physical Damage Coverage or Similar Coverage Applies...................................35

Financed Vehicle .................................36

Our Payment Options ..........................36

SF-Sasson, Assaf - 000290

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE** ....................... 36
- Additional Definition ........................................ 36
- Insuring Agreement ......................................... 36
- Benefit ............................................................. 36
- Exclusions......................................................... 37
- Our Payment Options ...................................... 38

**INSURED'S DUTIES**........................................ 38
- Insured's Duty at the Time of an Accident or Loss ............................................................. 38
- Notice to Us of an Accident or Loss ................ 38
- Notice to Us of a Claim or Lawsuit ................. 38
- Insured's Duty to Cooperate With Us .............. 38
- Questioning Under Oath .................................. 38
- Other Duties Under the Physical Damage Coverages .......................................... 39
- Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and  Death, Dismemberment and Loss of Sight Coverage ............................. 39

**GENERAL TERMS** ............................................40
- When Coverage Applies....................................40
- Where Coverage Applies...................................40
- Limited Coverage in Mexico............................40
- Persons Acting On Our Behalf .........................41
- Newly Owned or Newly Leased Car................42
- Changes to This Policy.....................................42
- Premium ...........................................................42
- Renewal.............................................................43
- Nonrenewal.......................................................43
- Cancellation......................................................43
- Assignment........................................................44
- Bankruptcy or Insolvency of the Insured .........44
- Concealment or Fraud .......................................44
- Our Right to Recover Our Payments................45
- Mediation .........................................................45
- Arbitration ........................................................46
- Legal Action Against Us...................................46
- Choice of Law ..................................................48
- Severability ......................................................48

## THIS POLICY

1. This policy consists of:
   a. the most recently issued Declarations Page;
   b. the policy booklet version shown on that Declarations Page; and
   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:
   a. *us*; and
   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:
   a. based on payment of premium for the coverages chosen; and
   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSE-MENTS" on the Declarations Page, in reliance on the following statements:
      (1) *You* are the sole owner of *your car*.

      (2) Neither *you* nor any member of *your* household has, within the past three years, had either:
         (a) a license to drive; or
         (b) a vehicle registration
         suspended, revoked, or refused.
      (3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:
   a. the statements in 3.b. above are made by such named insured or applicant and are true; and
   b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow:
   a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or
   b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary.

SF-Sasson, Assaf - 000291

Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

# DEFINITIONS

**We** define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

**Bodily Injury** means bodily injury to a **person** and sickness, disease, or death that results from it.

**Car** means a land motor vehicle with four or more wheels, designed for use primarily on public roads. **Car** does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

**Car Business** means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

**Emergency Medical Condition** means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

1. Serious jeopardy to patient health;

2. Serious impairment to bodily functions; or

3. Serious dysfunction of any bodily organ or part.

**Fungi** means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

    a. Mycotoxins;

    b. Spores;

    c. Scents; or

    d. Byproducts.

**Medical Expenses** means **reasonable charges** incurred for **medically necessary** medical, surgical, X-ray, dental, and rehabilitative services, including **medically necessary** prosthetic devices and **medically necessary** ambulance, hospital, and nursing services.

**Medical Expenses** do not include any:

1. massage as defined in s. 480.033, Florida Statutes;

2. acupuncture as defined in s. 457.102, Florida Statutes;

3. services, care, treatment, or supplies provided by any massage therapist; or

4. services, care, treatment, or supplies provided by any acupuncturist.

**Medically Necessary** means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

1. in accordance with generally accepted standards of medical practice;

2. clinically appropriate in terms of type, frequency, extent, site, and duration; and

3. not primarily for the convenience of the patient, physician, or other healthcare provider.

**Motor Vehicle** means a vehicle with four or more wheels that:

1. is self-propelled and is of a type:

    a. designed for; and

    b. required to be licensed for use on Florida highways; or

2. is a trailer or semitrailer designed for use with a vehicle described in 1. above.

**Motor Vehicle** does not include:

1. a mobile home; or

2. any motor vehicle which is:

    a. used in mass transit, other than public school transportation;

    b. designed to transport more than five passengers, exclusive of the operator; and

4
9810A

c. *owned by* a municipality, a transit authority, or a political subdivision of the state.

***Newly Acquired Car*** means a *car* newly *owned by you*. A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you*.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you*.

***No-Fault Act*** means the Florida Motor Vehicle No-Fault Law and any amendments.

***Non-Owned Car*** means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1. is *owned by*:
   a. *you*;
   b. any *resident relative*;
   c. any other *person* who resides primarily in *your* household; or
   d. an employer of any *person* described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:
   a. *you*; or
   b. any *resident relative*

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

***Occupying*** means in, on, entering, or exiting.

***Our*** means the Company issuing this policy as shown on the Declarations Page.

***Owned By*** means:

1. owned by;
2. registered to; or
3. leased, if the lease is written for a period of 6 months or more, to.

***Pedestrian*** means a *person* who is not *occupying*:

1. a motor vehicle; or

2. a vehicle designed to be pulled by a motor vehicle.

***Person*** means a human being.

***Private Passenger Car*** means:

1. a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:
   a. while not used for:
      (1) wholesale; or
      (2) retail
      pickup or delivery; and
   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

***Reasonable Charge***, which includes reasonable expense, means an amount determined by *us* to be reasonable in accordance with the *No-Fault Act*, considering one or more of the following:

1. usual and customary charges;

2. payments accepted by the provider;

3. reimbursement levels in the community;

4. various federal and state medical fee schedules applicable to *motor vehicle* and other insurance coverages;

5. the schedule of maximum charges in the *No-Fault Act*,

6. other information relevant to the reasonableness of the charge for the service, treatment, or supply; or

7. Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, if the coding policy or payment methodology does not constitute a utilization limit.

***Relative*** means a relative of any degree by blood or marriage who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

***Resident Relative*** means a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

SF-Sasson, Assaf - 000293

2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

*State Farm Companies* means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

*Temporary Substitute Car* means a *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

*Trailer* means:

1. a trailer:

   a. designed to be pulled by a *private passenger car*;

b. not designed to carry *persons*; and

c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a *car*.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person*, then "*you*" or "*your*" includes the spouse of the first *person* shown as a named insured if the spouse resides primarily with that named insured.

*Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask *us* to replace it with a *car* newly *owned by you*, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly *owned by you* is delivered to *you*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.


## LIABILITY COVERAGE (Bodily Injury and Property Damage)

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:

   a. the ownership, maintenance, or use of:

      (1) *your car*;

      (2) a *newly acquired car*; or

      (3) a *trailer*; and

   b. the maintenance or use of:

      (1) a *non-owned car*; or

      (2) a *temporary substitute car*;

2. the first *person* shown as a named insured on the Declarations Page and that named insured's

spouse who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household, but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

3. any other *person* for his or her use of:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used with *your* express or implied permission; and

SF-Sasson, Assaf - 000294

4. any other **person** or organization vicariously liable for the use of a vehicle by an **insured** as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither **owned by**, nor hired by, that other **person** or organization.

**Insured** does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. **We** will pay damages an **insured** becomes legally liable to pay because of:

   a. **bodily injury** to others; and

   b. damage to property

   caused by an accident that involves a vehicle for which that **insured** is provided Liability Coverage by this policy.

2. **We** have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an **insured** in any claim or lawsuit, with attorneys chosen by **us**; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

**We** will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by **us** to defend an **insured** who is sued for such damages. **We** have no duty to pay attorney fees incurred after **we** deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2. Court costs awarded by the court against an **insured** and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which **we** defend an **insured** with attorneys chosen by **us**.

   **We** have no duty to pay court costs incurred after **we** deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the **insured** is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

   (1) that part of the damages **we** pay; or

   (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   **We** have no duty to pay interest that accrues after **we** deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. **We** also have no duty to pay interest that accrues on any damages paid or payable by a party other than the **insured** or **us**;

4. Premiums for bonds, provided by a company chosen by **us**, required to appeal a decision in a lawsuit against an **insured**. **We** have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after **we** deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an **insured**:

   a. Loss of wages or salary, but not other income, up to $200 for each day an **insured** attends, at **our** request:

   (1) an arbitration;

   (2) a mediation; or

   (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an **insured** at **our** request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an **insured** must be reported to **us** before **we** will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for **bodily injury** are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most **we** will pay for the sum of:

1. all damages resulting from **bodily injury** to any one **person** injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other **persons** as a direct result of that **bodily injury**.

7

9810A

SF-Sasson, Assaf - 000295

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *persons* who sustained damages or emotional distress in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. that have already been paid under Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR *BODILY INJURY* TO:
   a. *YOU*;
   b. *RESIDENT RELATIVES*; AND
   c. ANY OTHER *PERSON* WHO BOTH RESIDES PRIMARILY WITH AN *INSURED* AND WHO:
      (1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR
      (2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees, or if this coverage, of this policy, is used to certify financial responsibility;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

7. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:
   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

9. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

11. FOR DAMAGE TO PROPERTY WHILE IT IS:
    a. *OWNED BY*;
    b. RENTED TO;
    c. USED BY;
    d. IN THE CARE OF; OR
    e. TRANSPORTED BY

8

9810A

SF-Sasson, Assaf - 000296

*YOU*, A ***RESIDENT RELATIVE***, OR THE ***PERSON*** WHO IS LEGALLY LIABLE FOR THE DAMAGE.  This exclusion does not apply to damage to a:

a. motor vehicle ***owned by*** the employer of ***you*** or any ***resident relative*** if such damage is caused by an ***insured*** while operating another motor vehicle;

b. residence while rented to or leased to an ***insured***; or

c. private garage while rented to or leased to an ***insured***;

12. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

13. WHILE USING A ***TRAILER*** WITH A MOTOR VEHICLE IF THAT ***INSURED*** IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR

15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If liability coverage provided by this policy and one or more other Car Policies issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** apply to the same accident, then:

a. the liability coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies.  *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of ***your car*** or a ***trailer*** attached to it.

a. If:

(1) this is the only Car Policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** that provides liability coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same accident,

then ***we*** will pay the proportion of damages payable as primary that ***our*** applicable limit bears to the sum of ***our*** applicable limit and the limits of all other liability coverage that apply as primary coverage.

b. If:

(1) more than one Car Policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** provides liability coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same accident,

then the ***State Farm Companies*** will pay the proportion of damages payable as primary that the maximum amount that may be paid by the ***State Farm Companies*** as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only Car Policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** that provides liability coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

9
9810A

SF-Sasson, Assaf - 000297

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides liability coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

### Required Out-of-State Liability Coverage

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

### Financial Responsibility Certification

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PROPERTY DAMAGE LIABILITY COVERAGE

This policy provides Property Damage Liability Coverage if "B" is shown under "SYMBOLS" on the Declarations Page.

### Additional Definition

*Insured* means:

1. *you* and *resident relatives* for:

a. the ownership, maintenance, or use of:

(1) *your car*;

(2) a *newly acquired car*; or

(3) a *trailer*; and

b. the maintenance or use of:

(1) a *non-owned car*; or

(2) a *temporary substitute car*;

2. the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household,

but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

3. any other *person* for his or her use of:

a. *your car*;

b. a *newly acquired car*;

c. a *temporary substitute car*; or

d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used with *your* express or implied permission; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

10
9810A

SF-Sasson, Assaf - 000298

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of damage to property caused by an accident that involves a vehicle for which that *insured* is provided Property Damage Liability Coverage by this policy;

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Property Damage Liability Coverage.

3. *We* will only defend an *insured* in a claim or lawsuit for damages payable under this policy's Property Damage Liability Coverage, that are caused by an accident for which that *insured* is provided Property Damage Liability Coverage by this policy.  If a claim or lawsuit seeks damages due to both property damage and *bodily injury*, then *we* will only defend the *insured* for property damage, and the *insured* will be required to hire and pay attorneys to defend the *insured* for damages due to *bodily injury*.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Property Damage Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

2. Court costs awarded by the court against an *insured* and resulting from that part of a lawsuit:

   a. that seeks damages payable under this policy's Property Damage Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Property Damage Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Property Damage Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.  *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*.

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*.  *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Property Damage Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Property Damage Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limit**

The Property Damage Liability Coverage limit for damage to property is shown on the Declarations Page under "Property Damage Liability Coverage – Limit – Each Accident".  The limit shown is the most *we* will pay for all damages resulting from damage to property  in any one accident.

SF-Sasson, Assaf - 000299

The Property Damage Liability Coverage limit is the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Exclusions**

THERE IS NO COVERAGE FOR AN ***INSURED***:

1. WHO INTENTIONALLY CAUSES DAMAGE TO PROPERTY;
2. FOR ***BODILY INJURY***;
3. OR FOR THAT ***INSURED'S*** INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;
4. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN ***INSURED***;
5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY ***PERSONS*** FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;
6. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT ***INSURED'S*** EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A ***CAR BUSINESS***. This exclusion does not apply to:
   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;
7. WHILE THAT ***INSURED*** IS VALET PARKING A VEHICLE;
8. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN ***YOUR CAR***, A ***NEWLY ACQUIRED CAR***, A ***TEMPORARY SUBSTITUTE CAR***, OR A ***TRAILER*** IN ANY BUSINESS OR OCCUPATION OTHER THAN A ***CAR BUSINESS*** OR VALET PARKING. This exclusion does not apply to

the maintenance or use of a *private passenger car*;

9. FOR DAMAGE TO PROPERTY WHILE IT IS:
   a. ***OWNED BY***;
   b. RENTED TO;
   c. USED BY;
   d. IN THE CARE OF; OR
   e. TRANSPORTED BY

   ***YOU***, A ***RESIDENT RELATIVE***, OR THE ***PERSON*** WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:
   a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;
   b. residence while rented to or leased to an *insured*;
   c. private garage while rented to or leased to an *insured*.

10. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;
11. WHILE USING A ***TRAILER*** WITH A MOTOR VEHICLE IF THAT ***INSURED*** IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;
12. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:
    a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (12.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR
13. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

SF-Sasson, Assaf - 000300

**If Other Property Damage Liability Coverage Applies**

1. If property damage liability coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

   a. the property damage liability coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Property Damage Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides property damage liability coverage which applies to the accident as primary coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other property damage liability coverage that apply as primary coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides property damage liability coverage which applies to the accident as primary coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also

applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Property Damage Liability Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides property damage liability coverage which applies to the accident as excess coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

   then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other property damage liability coverage that apply as excess coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides property damage liability coverage which applies to the accident as excess coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

   then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as excess coverage.

SF-Sasson, Assaf - 000301

**Required Out-of-State Liability Coverage**

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## NO-FAULT COVERAGE

This policy provides No-Fault Coverage if "P" with a number beside it is shown under "SYMBOLS" on the Declarations Page. "P" with a number beside it is *your* coverage symbol. Check *your* coverage symbol shown on the Declarations Page with the SCHEDULE in the Limits section. The Income Loss option *you* have selected is shown by *your* coverage symbol.

**Additional Definition**

*Insured* means:

1. named insureds and *relatives*:

    a. while *occupying* a *motor vehicle*;

    b. struck as a *pedestrian* by a *motor vehicle*; or

2. any other *person* while *occupying* or *struck* as a *pedestrian* by:

    a. *your car*;

    b. a *newly acquired car*;

    c. a *temporary substitute car*; or

    d. a *trailer* while attached to a *car* described in a., b., or c. above.

**Insuring Agreement**

*We* will pay in accordance with the *No-Fault Act* properly billed and documented *reasonable charges* for *bodily injury* to an *insured* caused by an accident resulting from the ownership, maintenance, or use of a *motor vehicle* as follows:

1. **Medical Expenses**

    *We* will pay 80% of properly billed and documented *medical expenses*, but only if that *insured* receives initial services and care from a provider described in A. below within 14 days

after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

*We* will not pay for any *medical expenses* if that *insured* does not receive initial services and care from a provider described in A. below within 14 days after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

*We* will only pay *medical expenses* for:

A. initial services and care:

    (1) lawfully provided, supervised, ordered or prescribed by:

        (a) a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

        (b) a dentist licensed under chapter 466 of the Florida Statutes; or

        (c) a chiropractic physician licensed under chapter 460 of the Florida Statutes;

    (2) provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

    (3) provided by a *person* or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

B. upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

14
9810A

(1) a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

(2) a dentist licensed under chapter 466 of the Florida Statutes;

(3) a chiropractic physician licensed under chapter 460 of the Florida Statues; or

(4) to the extent permitted by applicable law and under the supervision of a **_person_** described in (1), (2), or (3) immediately above;

(a) a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

(b) an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

C. follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following **_persons_** or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

(a) has a medical director licensed under chapter 458, chapter 459,

or chapter 460 of the Florida Statutes;

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

i. general medicine;

ii. radiography;

iii. orthopedic medicine;

iv. physical medicine;

v. physical therapy;

vi. physical rehabilitation;

vii. prescribing or dispensing outpatient prescription medication; or

viii. laboratory services.

2. **Income Loss**

   **_We_** will pay, when properly documented, 60% of any loss of gross income and loss of earnings capacity per individual injured **_insured_** from that **_insured's_** inability to work that is proximately caused by the injury sustained by that individual **_insured_**.

3. **Replacement Services Loss**

   **_We_** will pay, when properly documented, **_reasonable charges_** incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the individual injured **_insured_** would have performed without income for the benefit of his or her household.

4. **Death Benefits**

   **_We_** will pay $5,000 per deceased individual **_insured_**.

**Limits**

1. **_We_** will not pay any charge that the **_No-Fault Act_** does not require **_us_** to pay, or the amount of any charge that exceeds the amount the **_No-Fault Act_** allows to be charged.

2. The most **_we_** will pay for each injured **_insured_** as a result of any one accident is $10,000 for all combined **Medical Expenses**, **Income Loss**, and **Replacement Services Loss**, described in the **Insuring Agreement** of this policy's No-Fault Coverage.

15
9810A

SF-Sasson, Assaf - 000303

The limit for **Medical Expenses** is $10,000 if a physician (excluding a chiropractic physician), a dentist, a physician assistant, or an advanced registered nurse practitioner described in 1.A. or 1.B under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* had an *emergency medical condition*.

The limit for **Medical Expenses** is $2,500 if any healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* did not have an *emergency medical condition*.

*We* will limit payment of **Medical Expenses** described in the **Insuring Agreement** of this policy's No-Fault Coverage to 80% of a properly billed and documented *reasonable charge*, but in no event will *we* pay more than 80% of the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

a. For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   (I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

   (II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   (III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-subparagraph, then *we* will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

3. *We* will pay a **Death Benefit** of $5,000 per deceased individual *insured*. **Death Benefits** are in addition to the **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** limit.

4. SCHEDULE

| Coverage Symbol | Income Loss Benefits Eliminated For Named Insureds | Income Loss Benefits Eliminated For Named Insureds' Dependent *Relatives* |
| --- | --- | --- |
| P10 | No | No |
| P14 | Yes | Yes |
| P19 | Yes | No |

SF-Sasson, Assaf - 000304

**Application of Any Deductible and Workers' Compensation Offset**

1. The deductible amount, if any, is shown on the Declarations Page beside *your* coverage symbol. The deductible amount does not apply to **Death Benefits**.

   The deductible amount applies to:

   a. each named insured if "N" follows the deductible amount; or

   b. each named insured and each dependent *relative* if "N" does not follow the deductible amount.

   Any deductible will be applied to 100% of properly billed and documented **Medical Expenses**, properly documented **Income Loss**, and properly documented **Replacement Services Loss** that are eligible to be paid under this coverage. The deductible will be applied to such expenses and losses upon our receipt of reasonable documented proof of the expenses and losses and the amount of expenses and losses incurred.

2. After any applicable deductible has been applied, *we* will pay the balance of properly billed and documented **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** in accordance with the percentages and limits as described in the section titled **Limits**.

3. *We* will reduce the amount payable as determined in item 2. above by any workers' compensation benefits received for the same loss or expense.

**Partial Payment or Rejection of a Claim**

If *we* pay only a portion of a claim or reject a claim due to an alleged error in the claim, then *we* shall, at the time of the partial payment or rejection, provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the *person* making the claim, at the *person's* option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

In a dispute between the *insured* and *us*, or between an assignee of the *insured's* rights and *us*, upon request, *we* will notify the *insured* or the assignee that the policy limits under this section have been reached within 15 days after the limits have been reached.

**Nonduplication**

*We* will not pay under No-Fault Coverage any benefits:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under other no-fault coverage, any disability benefits law, or similar law; or

3. that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ***BODILY INJURY*** TO:

   a. ANY ***PEDESTRIAN*** NOT A RESIDENT OF FLORIDA; OR

   b. ANY ***PERSON*** ENTITLED TO NO-FAULT BENEFITS FROM:

      (1) THE OWNER OF A ***MOTOR VEHICLE*** OTHER THAN A NAMED INSURED; OR

      (2) THAT OWNER'S INSURER.

   This exclusion (1.) does not apply to any named insured or any *relative*;

2. ANY NAMED INSURED OR ***RELATIVE*** WHO SUSTAINED ***BODILY INJURY*** WHILE ***OCCUPYING*** A ***MOTOR VEHICLE OWNED BY*** THE NAMED INSURED AND NOT INSURED UNDER THIS POLICY;

3. ANY ***INSURED PERSON***:

   a. WHOSE CONDUCT CONTRIBUTED TO HIS OR HER ***BODILY INJURY*** UNDER ANY OF THE FOLLOWING CIRCUMSTANCES:

      (1) CAUSING ***BODILY INJURY*** TO HIMSELF OR HERSELF INTENTIONALLY; OR

      (2) WHILE COMMITTING A FELONY;

   b. WHOSE ***BODILY INJURY*** OCCURRED WHILE:

17
9810A

    (1) DRIVING **YOUR CAR** OR A **NEW-LY ACQUIRED CAR** WITHOUT **YOUR** PERMISSION; OR

    (2) **OCCUPYING** A **MOTOR VEHICLE** LOCATED FOR USE AS A DWELLING OR PREMISES;

c. WHO OWNS A **MOTOR VEHICLE** SUBJECT TO THE **NO-FAULT ACT.** This exclusion (3.c.) does not apply to:

    (1) any named insured;

    (2) the spouse of any named insured; and

    (3) any **relative** while **occupying your car** if the accident occurs outside Florida; OR

d. WHO REFUSES TO:

    (1) SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAMINATION UNDER OATH; OR

    (2) PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

4. INCOME LOSS WHEN THE SCHEDULE SHOWS INCOME LOSS BENEFITS ARE ELIMINATED UNDER **YOUR** COVERAGE SYMBOL;

5. ANY MASSAGE AS DEFINED IN S. 480.033, FLORIDA STATUTES, OR ACUPUNCTURE AS DEFINED IN S. 457.102, FLORIDA STATUTES, REGARDLESS OF THE **PERSON** OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

6. ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other No-Fault Coverage Applies**

1. If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any **relative** by the **State Farm Companies** apply to the same **bodily injury**, then:

    a. the No-Fault Coverage limits of such policies shall not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

2. If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any **relative** by one or more sources other than the **State Farm Companies** apply to the same **bodily injury**, then:

    a. the No-Fault Coverage limits of such policies shall not be added together to determine the most that may be paid;

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies, subject to **our** pro rata share of the highest applicable limit provided by any one of the policies; and

    c. **we** are entitled to recover from each insurer that is liable to pay no-fault coverage benefits to or for the **insured** who sustained **bodily injury**, an equitable pro rata share of benefits paid and expenses incurred in processing the claim.

**Our Payment Options**

**We** may, at **our** option, make payment to one or more of the following:

1. The **insured**;

2. The **insured's** surviving spouse;

3. A parent or guardian of the **insured**, if the **insured** is a minor or an incompetent **person**;

4. A **person** authorized by law to receive such payment;

5. Any **person** or organization that provides the medical services or funeral services; or

6. Any **person** appearing to **us** to be equitably entitled to receive such payment.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

**Insured** means named insureds and **relatives**:

1. while **occupying** a **motor vehicle**;

2. through being struck as a **pedestrian** by a **motor vehicle**; or

3. through being struck as a **pedestrian** by a motorcycle of a type required to be licensed for use on Florida highways.

SF-Sasson, Assaf - 000306

**Insuring Agreement**

1. Medical Payments Coverage is excess over No-Fault Coverage. The no-fault deductible, if any, is not payable under Medical Payments Coverage.

2. *We* will pay properly billed and documented *medical expenses* for services and care that are incurred because of *bodily injury* to an *insured* caused by an accident resulting from the ownership, maintenance, or use of a *motor vehicle*, but only:

   a. if that *insured* receives initial services and care from a provider described in A. below within 14 days after the *motor vehicle* accident that caused *bodily injury* to that *insured*; and

   b. if such services and care are provided within three years after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

   *We* will not pay for any *medical expenses* if the *insured* does not receive initial services and care from a provider described in A. below within 14 days after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

   *We* will only pay *medical expenses* for:

   A. initial services and care:

   (1) lawfully provided, supervised, ordered or prescribed by:

   (a) a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

   (b) a dentist licensed under chapter 466 of the Florida Statutes; or

   (c) a chiropractic physician licensed under chapter 460 of the Florida Statutes;

   (2) provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

   (3) provided by a *person* or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

   B. upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

   (1) a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

   (2) a dentist licensed under chapter 466 of the Florida Statutes;

   (3) a chiropractic physician licensed under chapter 460 of the Florida Statues; or

   (4) to the extent permitted by applicable law and under the supervision of a *person* described in (1), (2), or (3) immediately above:

   (a) a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

   (b) an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

   C. follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following *persons* or entities:

   (1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

   (2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

   (3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

   (4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

   (5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

   (a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

19
9810A

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

  i. general medicine;

  ii. radiography;

  iii. orthopedic medicine;

  iv. physical medicine;

  v. physical therapy;

  vi. physical rehabilitation;

  vii. prescribing or dispensing outpatient prescription medication; or

  viii. laboratory services.

3. *We* will pay funeral expenses incurred for an *insured* who dies within three years immediately following the date of a *motor vehicle* accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

  a. utilization reviews;

  b. peer reviews; and

  c. medical bill reviews

  to determine if the incurred expenses are *reasonable charges* and *medically necessary* for the *bodily injury* sustained.

2. use a medical examination of the *insured* to determine if:

  a. the *bodily injury* was caused by a *motor vehicle* accident; and

  b. the expenses incurred are *medically necessary*.

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Limits**

The Medical Payments Coverage limit is dependent upon determination of an *emergency medical condition* and is shown on the Declarations Page.

1. **Emergency Medical Condition**

  a. The Medical Payments Coverage limit for an *insured* who has been determined to have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if the insured has been determined to have an *emergency medical condition* by a physician, a dentist, a physician assistant, or an advanced registered nurse practitioner described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage regardless of the number of:

    (1) *insureds*;

    (2) claims made;

    (3) vehicles insured; or

    (4) vehicles involved in the accident.

  b. Subject to the limit shown on the Declarations Page, as described in 1.a. above, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

2. **Not An Emergency Medical Condition**

  The Medical Payments Coverage limit for an *insured* who has been determined to not have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Not An Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if the *insured* has been determined to not have an *emergency medical condition* by a healthcare provider described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, regardless of the number of:

  a. *insureds*;

  b. claims made;

  c. vehicles insured; or

  d. vehicles involved in the accident.

3. In no event will *we* pay more than the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

20
9810A

SF-Sasson, Assaf - 000308

a. For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

(III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-sub-subparagraph, then *we* will limit reimbursement to the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

**Nonduplication**

*We* will not pay under Medical Payments Coverage any damages or expenses:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*; or

2. that have already been paid under No-Fault Coverage or Uninsured Motor Vehicle Coverage of this policy, the no-fault coverage, medical payments coverage, or uninsured motor vehicle coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. UNTIL THE MEDICAL EXPENSE BENEFITS OF ALL NO-FAULT COVERAGE AVAILABLE FROM ALL SOURCES HAVE BEEN EXHAUSTED. This does not apply to the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

2. WHO REFUSES TO:

   a. SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAMINATION UNDER OATH; OR

   b. PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

3. FOR ANY *MEDICAL EXPENSES* THAT ARE NOT PAYABLE UNDER NO-FAULT COVERAGE. This does not include:

   a. the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

SF-Sasson, Assaf - 000309

b.  *medical expenses* not paid because the medical expense benefits of all no-fault coverage available from all sources have been exhausted;

c.  *medical expenses* for *bodily injury* while *occupying* a *non-owned car* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; and

d.  *medical expenses* for *bodily injury* sustained through being struck as a *pedestrian* by a:

(1)  *motor vehicle* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; or

(2)  motorcycle of a type required to be licensed for use on Florida highways;

4.  FOR MILEAGE COSTS FOR THE USE OF A PERSONAL VEHICLE;

5.  FOR ANY INTEREST CHARGES;

6.  IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

7.  WHO:

a.  IS *OCCUPYING* OR THROUGH BEING STRUCK AS A PEDESTRIAN BY A VEHICLE *OWNED BY* ANY NAMED INSURED OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS POLICY; OR

b.  AT THE TIME OF THE ACCIDENT OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT* AND IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT*.

This exclusion (7.b.) does not apply to:

(1)  any named insured;

(2)  the spouse of any named insured; and

(3)  any *relative* while *occupying your car*, a *newly acquired car*, a *temporary substitute car*, or a *non-owned car* if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage;

8.  WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

9.  WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

a.  the use of a *private passenger car* on a share-the-expense basis; or

b.  an *insured* while *occupying* a *non-owned car* as a passenger;

10.  WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

a.  any named insured;

b.  any *relative*; or

c.  any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

11.  WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

12.  WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

13.  WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

14.  WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

a.  IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

b.  RUNS ON RAILS OR CRAWLER-TREADS;

15.  WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

16.  WHOSE *BODILY INJURY* RESULTS FROM:

a.  NUCLEAR REACTION;

b.  RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c.  THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

17.  WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*;

22
9810A

SF-Sasson, Assaf - 000310

18. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (18.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

19. FOR ANY MASSAGE AS DEFINED IN S.480.033, FLORIDA STATUTES, OR ACUPUNCTURE AS DEFINED IN S.457.102, FLORIDA STATUTES, REGARDLESS OF THE *PERSON* OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

20. FOR ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance

which applies to the accident as primary coverage; and

   (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

23
9810A

SF-Sasson, Assaf - 000311

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment;

5. Any *person* or organization that provides the *medically necessary* services or funeral services; or

6. Any *person* appearing to *us* to be equitably entitled to receive such payment.

## UNINSURED MOTOR VEHICLE COVERAGE
### (Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying*:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a trailer attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* express or implied permission. Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle and a trailer attached to such land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or

   b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but

      (1) the limits are less than required by the financial responsibility act of the state of Florida;

      (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for *bodily injury* sustained by the *insured*; or

      (3) the entity providing the financial responsibility:

         (a) denies that it provides liability coverage for compensatory damages that result from the accident; or

         (b) is or becomes insolvent; or

24
9810A

SF-Sasson, Assaf - 000312

2. the owner or driver:

   a. of which could not reasonably have been identified;

   b. remains unknown; and

   c. that causes *bodily injury* to the *insured*.

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

2. *owned by*, rented to, or furnished or available for the regular use of *you* or a *resident relative*;

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1. *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*.

2. The *bodily injury* for which *we* will pay compensatory damages must be:

   a. sustained by an *insured*;

   b. caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*; and

   c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

   a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

   b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1. The *insured* and *we* must agree to the answers to the following two questions:

   a. Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

   b. If the *insured* and *we* agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

2. If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation**, **Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from *bodily injury* to any one *insured* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *insureds* as a direct result of that *bodily injury*.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *insureds* who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

<div align="center">25<br>9810A</div>

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

    a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

    b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

    a. have already been paid;

    b. could have been paid; or

    c. could be paid

    to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. TO THE EXTENT IT BENEFITS:

    a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

    b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

    c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

3. FOR PUNITIVE OR EXEMPLARY DAMAGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative*

by the *State Farm Companies* apply to the same *bodily injury* sustained by a *person* other than *you* or any *resident relative*, then:

    a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

   If uninsured motor vehicle coverage is provided on a primary basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage for an *insured* who sustains *bodily injury*.

   If uninsured motor vehicle coverage is provided on an excess basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as excess coverage.

4. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then *we* may choose one or more policies from which to make payment.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

SF-Sasson, Assaf - 000314

## UNINSURED MOTOR VEHICLE COVERAGE
### (Non-Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U3" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;
2. *resident relatives*;
3. any other *person* while *occupying*:
   a. *your car*;
   b. a *newly acquired car*;
   c. a *temporary substitute car*; or
   d. a trailer attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* express or implied permission. Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and
4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., and 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle and a trailer attached to such land motor vehicle:

1. the ownership, maintenance, and use of which is:
   a. neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or
   b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but
      (1) the limits are less than required by the financial responsibility act of the state of Florida;
      (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for *bodily injury* sustained by the *insured*; or
      (3) the entity providing the financial responsibility:
         (a) denies that it provides liability coverage for compensatory damages that result from the accident; or
         (b) is or becomes insolvent; or
2. the owner or driver:
   a. of which could not reasonably have been identified;
   b. remains unknown; and

c. that causes *bodily injury* to the *insured*.

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;
2. *owned by*, rented to, or furnished or available for the regular use of *you* or a *resident relative*;
3. designed for use primarily off public roads except while on public roads;
4. while located for use as a dwelling or other premises; or
5. whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1. *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*.
2. The *bodily injury* for which *we* will pay compensatory damages must be:
   a. sustained by an *insured*;
   b. caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*; and
   c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.
2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

27
9810A

SF-Sasson, Assaf - 000315

a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1. The *insured* and *we* must agree to the answers to the following two questions:

a. Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

b. If the *insured* and *we* agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

2. If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation**, **Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from *bodily injury* to any one *insured* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *insureds* as a direct result of that *bodily injury*.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *insureds* who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

b. for *bodily injury* under Liability Coverage of any policy issued by the **State Farm Companies** to *you* or any *resident relative*;

2. that:

a. have already been paid;

b. could have been paid; or

c. could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

a. WHILE *OCCUPYING* A VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

b. THROUGH BEING STRUCK BY A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*.

This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* or through being struck by a motor vehicle not *owned by* one or both of them;

3. TO THE EXTENT IT BENEFITS:

a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW,

28
9810A

SF-Sasson, Assaf - 000316

DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

c.   ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

4.   FOR PUNITIVE OR EXEMPLARY DAMAGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1.   If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

a.   the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

b.   the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2.   The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

a.   If:

(1)   this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

(2)   uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

b.   If:

(1)   more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

(2)   uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

3.   Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

a.   If:

(1)   this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

(2)   uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

b.   If:

(1)   more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

(2)   uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

SF-Sasson, Assaf - 000317

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

   a. being driven by an *insured*; or

   b. in the custody of an *insured* if at the time of the *loss* it is:

      (1) not being driven; or

      (2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*;

6. a *non-owned trailer* while it is being used by an *insured*; and

7. a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily Rental Charge* means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle*. *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or

2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b.  any other *person* who resides primarily in *your* household; or

   c.  an employer of any *person* described in a. or b. above; nor

2.  has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

1.  **Comprehensive Coverage**

   a.  *We* will pay for *loss*, except *loss caused by collision*, to a *covered vehicle*.

   b.  *We* will pay transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:

     (1)  during the period that:

       (a)  starts on the date *you* report the theft to *us*; and

       (b)  ends on the earliest of:

         (i)  the date the vehicle is returned to *your* possession in a drivable condition;

         (ii)  the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

         (iii)  the date *we* offer to pay for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

     (2)  during the period that:

       (a)  starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

       (b)  ends on the date the vehicle is repaired.

   These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

   c.  The deductible does not apply to damage to the windshield of any *covered vehicle*.

2.  **Collision Coverage**

   *We* will pay for *loss caused by collision* to a *covered vehicle*.

3.  **Emergency Road Service Coverage**

   *We* will pay the fair cost incurred by an *insured* for:

   a.  up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

   b.  towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

   c.  towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

   d.  delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition.  *We* do not pay the cost of the gas, oil, battery, or tire; and

   e.  up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

4.  **Car Rental and Travel Expenses Coverage**

   a.  **Car Rental Expense**

   *We* will pay the *daily rental charge* incurred when an *insured* rents a *car* from a *car business* while *your car* or a *newly acquired car* is:

     (1)  not drivable; or

     (2)  being repaired

   as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

   *We* will pay this *daily rental charge* incurred during a period that:

     (1)  starts on the date:

       (a)  the vehicle is not drivable as a result of the *loss*; or

       (b)  the vehicle is left at a repair facility if the vehicle is drivable; and

     (2)  ends on the earliest of:

       (a)  the date the vehicle has been repaired or replaced;

       (b)  the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

       (c)  seven days after *we* offer to pay for the *loss* if the vehicle is:

         (i)  a total loss as determined by *us*; or

         (ii)  stolen and not recovered.

   The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

SF-Sasson, Assaf - 000319

b. **Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

(a) starts after the *loss* occurs; and

(b) ends on the earlier of:

(i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

(ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive coverage deductible or collision coverage deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or

the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.

(1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

(a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

(b) A bid or repair estimate approved by *us*; or

(c) A repair estimate that is written based upon or adjusted to:

(i) the prevailing competitive price;

(ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a

32

9810A

SF-Sasson, Assaf - 000320

survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

(4) If *you* and *we* agree, then windshield glass will be repaired instead of replaced;

b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by mediation or appraisal. Either the owner or *we* may request mediation or appraisal.

(2) Mediation will follow the rules outlined in this policy, found under **Mediation**, in the section titled **GENERAL TERMS**.

(3) Appraisal will follow the rules and procedures as listed below:

(a) The owner and *we* will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

(f) *We* do not waive any of *our* rights by submitting to an appraisal.

(4) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. **Car Rental Expense**

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

(1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount; or

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

33
9810A

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. **Travel Expenses**

   The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. **Rental Car – Repayment of Deductible Expense**

   The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

   a. INTENTIONALLY DAMAGED; OR

   b. STOLEN

   BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

   a. THEFT;

   b. CONVERSION;

   c. EMBEZZLEMENT; OR

   d. SECRETION

   BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

    a. LIEN AGREEMENT;

    b. RENTAL AGREEMENT;

    c. LEASE AGREEMENT; OR

    d. SALES AGREEMENT

    NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

    a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

    b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

    a. FAILS OR IS DEFECTIVE; OR

    b. IS DAMAGED AS A DIRECT RESULT OF:

SF-Sasson, Assaf - 000322

    (1)  WEAR AND TEAR;

    (2)  FREEZING; OR

    (3)  MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the **loss** is the result of theft of the **covered vehicle**;

14. ANY PART OR EQUIPMENT:

  a.  THAT IS NOT LEGAL FOR USE IN OR ON THE **COVERED VEHICLE** IN THE JURISDICTION WHERE THE **COVERED VEHICLE** IS REGISTERED; OR

  b.  THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE **COVERED VEHICLE** IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE **COVERED VEHICLE**.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the **covered vehicle**, then **we** will pay the cost that **we** would otherwise have paid to repair the vehicle with the legal version of the part or equipment. **We** will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

  a.  **loss** is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

  b.  **loss caused by collision** to another part of the **covered vehicle** causes **loss** to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

  a.  DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

  b.  **OWNED BY** AN **INSURED**; AND

  c.  NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY **COVERED VEHICLE** WHILE IT IS:

  a.  BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

  b.  ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same **loss** or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that **loss** or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an **insured** by the **State Farm Companies** apply to the same **loss** or expense, then only one policy applies. **We** will select a policy that pays the most for the **loss** or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a **loss** to **your car**.

If similar coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same **loss** or expense, then the **State Farm Companies** will pay the proportion of the **loss** or expense payable as primary that the maximum amount that may be paid by the **State Farm Companies** bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same **loss** or expense, then the **State Farm Companies** will pay the proportion of the **loss** or expense payable as excess that the maximum amount that may be paid by the **State Farm Companies** bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

35
9810A

SF-Sasson, Assaf - 000323

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*.   Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment.  *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

   (1) *You*;

   (2) The repairer; or

   (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

   (1) *You*;

   (2) The owner of such vehicle;

   (3) The repairer; or

   (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;

   b. The *insured* who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

**Insuring Agreement**

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1. dies; or

2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident.  The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident.  Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

SF-Sasson, Assaf - 000324

**Death, Dismemberment and
Loss of Sight Benefits Schedules**

| | |
|---|---|
| If the amount shown on the Declarations Page for the *insured* is $5,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |
| If the amount shown on the Declarations Page for the *insured* is $10,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

**Exclusions**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN *INSURED*:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*;

2. WHILE *OCCUPYING*, LOADING, OR UN-LOADING:

   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

   b. A VEHICLE, OTHER THAN AN EMER-GENCY VEHICLE, WHILE USED IN THE:

      (1) *INSURED'S* BUSINESS; OR

      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.

      This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

   c. A MILITARY VEHICLE; OR

   d. A VEHICLE WHILE IT IS:

      (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CON-TEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

      (2) ON A TRACK DESIGNED PRIMARI-LY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

3. WHILE *OCCUPYING*, LOADING, UN-LOADING, OR WHO IS STRUCK AS A *PE-DESTRIAN* BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. A MOTOR VEHICLE THAT IS DE-SIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LO-CATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, AND LOSS OF SIGHT THAT RESULTS FROM:

   a. WAR OF ANY KIND;

   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINA-TION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

   c. EXPOSURE TO *FUNGI*;

   d. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *IN-SURED* WAS SANE OR INSANE; OR

   e. DISEASE except pus-forming infection due to *bodily injury* sustained in the ac-cident.

SF-Sasson, Assaf - 000325

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* or organization authorized by law to receive such payment.

## INSURED'S DUTIES

1. **Insured's Duty at the Time of an Accident or Loss**

   The *insured* must make a reasonable effort to identify:

   a. the owners, operators, and passengers of the vehicles involved in the accident or *loss*;

   b. the *person* or *persons* involved in the accident or *loss*; and

   c. the potential witnesses to the accident or *loss*.

2. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

3. **Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

4. **Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

      (1) making settlements;

      (2) securing and giving evidence; and

      (3) attending, and getting witnesses to attend, depositions, hearings, and trials.

   b. The *insured* must not, except at his or her own cost, voluntarily:

      (1) make any payment to others; or

      (2) assume any obligation to others

unless authorized by the terms of this policy.

   c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

5. **Questioning Under Oath**

   Under:

   a. No-Fault Coverage, each *insured* making claim or seeking payment, must, at *our* option:

      (1) submit to an examination under oath;

      (2) provide a statement under oath; or

      (3) do both (1) and (2) above,

   as often as *we* reasonably require. Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *insured* answering questions under oath to answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

   The scope of the questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. Compliance with **Questioning Under Oath** is a condition precedent to receiving benefits.

   b. all other coverages, each *insured* making claim or seeking payment, must, at *our* option:

      (1) submit to an examination under oath;

      (2) provide a statement under oath; or

      (3) do both (1) and (2) above,

   as often as *we* reasonably require. Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *insured* answering questions under oath to

SF-Sasson, Assaf - 000326

answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

6. **Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft or vandalism;

c. allow *us* to:

   (1) inspect any damaged property before its repair or disposal;

   (2) test any part or equipment before that part or equipment is removed or repaired; and

   (3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

   (1) records;

   (2) receipts; and

   (3) invoices

   that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

7. **Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage**, and **Death, Dismemberment and Loss of Sight Coverage**

An *insured* making claim under:

a. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

   (1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

   (2) submit to be examined as often as *we* may reasonably require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request.

    (a) Under No-Fault Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are no longer liable for subsequent benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations raises a rebuttable presumption that the *insured's* refusal or failure was unreasonable;

    (b) Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are not liable for coverage benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations will be considered unreasonable;

   (3) provide written authorization for *us* to obtain:

    (a) medical bills;

    (b) medical records;

    (c) wage, salary, and employment information; and

    (d) any other information *we* deem necessary to substantiate the claim.

   If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

   If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

   (4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. No-Fault Coverage or Medical Payments Coverage must, at *our* request, submit documentation from the appropriate healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage, or described in

SF-Sasson, Assaf - 000327

2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, confirming whether that healthcare provider determined the *insured* had, or did not have, an *emergency medical condition*;

c. No-Fault Coverage and Uninsured Motor Vehicle Coverage must send *us* immediately a copy of all lawsuit papers if the

*insured* files a lawsuit against the party liable for the accident; and

d. Uninsured Motor Vehicle Coverage must report an accident, involving a motor vehicle whose owner or driver remains unknown, to the police within 24 hours or as soon as reasonably practicable, and to *us* within 30 days.

## GENERAL TERMS

1. **When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

2. **Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page.

a. Liability Coverage, Property Damage Liability Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Physical Damage Coverages apply to accidents and *losses* that occur:

   (1) in the United States of America and its territories and possessions;

   (2) in Canada; and

   (3) while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

b. No-Fault Coverage applies to accidental *bodily injury* sustained:

   (1) by an *insured* in Florida; and

   (2) by *you* and *relatives* outside Florida; but within:

       (a) the United States of America, its territories or possessions; or

       (b) Canada,

   while *occupying your car*, a *newly acquired car*, or a *temporary substitute car*.

c. Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

3. **Limited Coverage in Mexico**

This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

a. **Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

*We* may, in addition to the damages described in item 1 of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at *our* option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

b. **Property Damage Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Property Damage Liability Coverage is changed to read:

*We* may, in addition to the damages described in items 1. and 2. of the **Insuring Agreement** of this policy's Property Damage Liability Coverage, pay or reimburse,

SF-Sasson, Assaf - 000328

at our option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Property Damage Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

c. **No-Fault Coverage**

The definition of *insured* is changed read:

*Insured* means named insured and *relatives* while *occupying*:

(1) *your car*;

(2) a *newly acquired car*;

(3) a *temporary substitute car*; or

(4) a *trailer* while attached to a *car* described in (1), (2), or (3) above.

d. **Medical Payments Coverage**

e. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF FLORIDA IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of Florida in the United States of America.

4. **Persons Acting On Our Behalf**

A company employee adjuster, independent adjuster, attorney, investigator, or other *persons* acting on *our* behalf that needs access to an *insured* or claimant or to the insured property that is the subject of a claim must provide at least 48 hours' notice to the *insured* or claimant, public adjuster, or legal representative before scheduling a meeting with the claimant or an onsite inspection of the insured property. The *insured* or claimant may deny access to the property if the notice has not been provided. The *insured* or claimant may waive the 48-hour notice.

A public adjuster must ensure prompt notice of property loss claims submitted to *us* by or through a public adjuster or on which a public adjuster represents the *insured* at the time the claim or notice of loss is submitted to *us*. The public adjuster must ensure that notice is given to *us*, the public adjuster's contract is provided to *us*, the property is available for inspection of the loss or damage by *us*, and *we* are given an opportunity to interview the *insured* directly about the loss and claim. *We* must be allowed to obtain necessary information to investigate and respond to the claim.

*We* may not exclude the public adjuster from its in-person meetings with the *insured*. *We* shall meet or communicate with the public adjuster in an effort to reach agreement as to the scope of the covered loss under the insurance policy. This section does not impair the terms and conditions of the insurance policy in effect at the time the claim is filed.

A public adjuster may not restrict or prevent *us*, company employee adjuster, independent adjuster, attorney, investigator, or other *person* acting on *our* behalf from having reasonable access at reasonable times to an *insured* or claimant or to the insured property that is the subject of a claim.

A public adjuster may not act or fail to reasonably act in any manner that obstructs or prevents *us* or *our* adjuster from timely conducting an inspection of any part of the insured property for which there is a claim for loss or damage. The public adjuster representing the *insured* may be present for *our* inspection, but if the unavailability of the public adjuster otherwise delays *our* timely inspection of the property, the public adjuster or the *insured* must allow *us* to have access to the property without the participation or presence of the public adjuster or *insured* in order to facilitate *our* prompt inspection of the loss or damage.

SF-Sasson, Assaf - 000329

5. **Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

6. **Changes to This Policy**

a. **Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Florida without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

b. **Change of Interest**

(1) No change of interest in this policy is effective unless *we* consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured shown on the Declarations Page

dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

c. **Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

d. **Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

(1) *you*; or

(2) the United States Postal Service.

7. **Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon:

(1) the purchase of other products or services from the *State Farm Companies*;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of

SF-Sasson, Assaf - 000330

any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

(1) *Your car*, or its use, including annual mileage;

(2) The *persons* who regularly drive *your car*, including newly licensed family members;

(3) *Your* marital status; or

(4) The location where *your car* is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

8. **Renewal**

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 9. and 10. below.

9. **Nonrenewal**

If *we* decide not to renew this policy, then, at least 45 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the first named insured who is shown on the Declarations Page.

10. **Cancellation**

a. **How You May Cancel**

(1) *You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

(2) However, if the policy provides Liability Coverage or Property Damage Liability Coverage and No-Fault Coverage, *you* may not cancel *your* policy during the first two months immediately following the policy effective date unless:

(a) *your car* has been totally destroyed;

(b) *you* have transferred ownership of *your car*;

(c) *you* have purchased another policy covering *your car*; or

(d) *you* are a member of the United States Armed Forces and have been called to or are on active duty outside the United States in an emergency situation.

b. **How and When We May Cancel**

(1) *We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the first named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

(2) Except as provided under **Cancellation Due to Incorrect Premium**, the date cancellation is effective will be at least:

(a) 10 days after the date *we* mail or deliver the cancellation notice, if the cancellation is because the premium was not paid when due; or

(b) 45 days after *we* mail or deliver the cancellation notice, if the cancellation is because of any other reason.

(3) If *we* cancel this policy for nonpayment of premium during the first 60 days immediately following the effective date of this policy, *we* will do so only if a check used to pay the premium is dishonored for any reason or any other type of premium payment was subsequently determined to be rejected or invalid.

(4) After this policy has been in force for more than 59 days, *we* will not cancel this policy before the end of the current policy period unless it is based on one or more of the following reasons:

(a) Nonpayment of premium;

43
9810A

SF-Sasson, Assaf - 000331

(b) **You**, any **resident relative**, or any other **person** who usually drives **your car** has had his or her driver's license or motor vehicle registration under suspension or revocation during the policy period or the 180 days immediately preceding its effective date, or if the policy is a renewal, during its policy period; or

(c) Material misrepresentation or fraud.

c. **Cancellation Due to Incorrect Premium**

(1) If **we** determine that **we** have charged **you** an incorrect premium for coverages requested in **your** insurance application, **we** will immediately notify **you** of any additional premium due. **You** may:

(a) maintain **your** policy in force by paying the additional amount due by the date stated in the notice; or

(b) cancel **your** policy by the date stated in the notice and receive a refund of any unearned premium.

(2) If **you** fail to respond by the date stated in the notice **we** will cancel **your** policy. The date cancellation is effective will be at least 14 days after the date **we** mail or deliver the cancellation notice.

d. **Return of Unearned Premium**

(1) If **you** cancel this policy, then premium will be earned on a pro rata basis. **We** may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed to **you** within 30 days after the effective date of the policy cancellation, or 30 days after **we** receive **your** request to cancel this policy, whichever is later.

(2) If **we** cancel this policy, then premium will be earned on a pro rata basis. Any unearned premium will be mailed at the time **we** cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation.

11. **Assignment**

No assignment of benefits or other transfer of rights is binding upon **us** unless approved by **us**. This does not include a post loss assignment of benefits.

12. **Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the **insured** or his or her estate will not relieve **us** of **our** obligations under this policy.

13. **Concealment or Fraud**

a. **Coverages Other Than No-Fault and Medical Payments Coverage**

There is no coverage under this policy for any **person** who, or organization making claim or seeking payment that, has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

b. **No-Fault Coverage and Medical Payments Coverage**

Benefits shall not be due or payable to or on behalf of an **insured person** if that **person** has committed, by material act or omission, any insurance fraud relating to No-Fault Coverage or Medical Payments Coverage under this policy, if the fraud is admitted to in a sworn statement by the **insured** or if it is established in a court of competent jurisdiction. Any insurance fraud shall void all coverage arising from the claim related to such fraud under No-Fault Coverage or Medical Payments Coverage of the **insured person** who committed the fraud, irrespective of whether a portion of the **insured person's** claim may be legitimate, and any benefits paid prior to the discovery of the **insured person's** insurance fraud shall be recoverable by **us**, in their entirety, from the **person** who committed insurance fraud. **We** are entitled to all **our** costs and attorney's fees in any action in which **we** prevail that enforces **our** right of recovery under this provision.

Neither **we** nor the **insured** is required to pay a claim or charges:

(1) for any service or treatment that was not lawful at the time rendered; or

(2) to any **person** who knowingly submits a false or misleading statement relating to the claim or charges.

If **we** have reasonable belief that a fraudulent insurance act (s. 626.989, Florida Statutes, or s. 817.234, Florida Statutes) has been committed, **we** shall notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, **we** have an additional 60 days to

44
9810A

conduct a fraud investigation. Notwithstanding the demand letter conditions under the **Legal Action Against Us** provision of this policy, no later than 90 days after the submission of the claim, *we* must deny the claim or pay the claim with simple interest as provided in d. (2) under the **Legal Action Against Us** provision of this policy. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Insurance Fraud.

14. **Our Right to Recover Our Payments**

Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*. Under all other coverages, the following apply:

a. **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, that is not an *insured*, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(1) doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through *our* representatives when *we* ask.

b. **Reimbursement**

(1) If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(a) hold in trust for *us* the proceeds of any recovery; and

(b) reimburse *us* to the extent of *our* payment.

(2) *We* have a right of reimbursement against the owner or the insurer of the owner of a commercial motor vehicle for *our* payments of No-Fault benefits to any *person* having been an *occupant* of the commercial motor vehicle or having been struck by the commercial motor vehicle as a *pedestrian*.

*Our* right of reimbursement for benefits under No-Fault Coverage does not apply to an owner or registrant of a taxicab as identified in s.627.733(1)(b), Florida Statutes.

15. **Mediation**

The *insured* or *we* may demand mediation of any claim:

a. in an amount of $10,000 or less, resulting from:

1. *bodily injury* under No-Fault Coverage, Medical Payments Coverage, or Uninsured Motor Vehicle Coverages; or

2. death of or loss to an *insured* under Death, Dismemberment and Loss of Sight Coverage; or

b. in any amount, for a *loss* covered under Physical Damage Coverages,

by filing a written request with the Florida Department of Financial Services on a form which may be obtained from the Florida Department of Financial Services. The request must state why mediation is being requested and the issue in dispute.

The Florida Department of Financial Services will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible.

Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosure provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a *person* files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation. Any suit regarding a mediated dispute must be filed as prescribed under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.

SF-Sasson, Assaf - 000333

16. **Arbitration**

a. The *insured* or *we* may request, in writing, arbitration of any claim. If *you* and *we* agree to arbitrate, then arbitration will follow the procedure outlined below.

(1) The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

(2) The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

(3) Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

(4) The arbitrators shall only decide the answers to the following two questions:

(a) are damages compensatory; and

(b) if damages are compensatory, then what is the amount of compensatory damages.

(5) Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

(6) A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

(a) *us*;

(b) the *insured*;

(c) any assignee of the *insured*; and

(d) any *person* or organization with whom the *insured* expressly or impliedly contracts.

(7) Subject to (1), (2), (3), (4), (5), and (6) above, state court rules governing procedure and admission of evidence will be used.

(8) *We* do not waive any of *our* rights by submitting to arbitration.

b. *We* are not bound by any:

(1) judgment obtained without *our* written consent; or

(2) default judgment against any *person* or organization other than *us*.

c. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

17. **Legal Action Against Us**

a. Legal action may only be brought against *us* within five years immediately following the date of the accident or *loss*.

b. Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy.

c. Under No-Fault Coverage, *we* shall create and maintain for each *insured* a log of No-Fault Coverage benefits *we* have paid on behalf of the *insured*. If litigation is commenced, *we* shall provide to the *insured* a copy of the log within 30 days after receiving a request for the log from the *insured*.

d. In addition, legal action may only be brought against *us* regarding:

(1) Liability Coverage and Property Damage Liability Coverage, after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(a) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(b) agreement between the claimant and *us*.

(2) No-Fault Coverage, if within 30 days after *our* receipt of written notice of an intent to initiate litigation for:

(a) an overdue claim, *we* fail to pay the overdue claim, applicable interest, and a penalty of 10% of the overdue amount that *we* pay, subject to a maximum penalty of $250; or

46
9810A

SF-Sasson, Assaf - 000334

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice and to pay a penalty of 10%, subject to a maximum penalty of $250, when *we* pay for such future treatment.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

Such notice of intent to initiate litigation may not be sent until the claim is overdue, including any additional time *we* have to pay the claim pursuant to the *No-Fault Act*.

The notice must state that it is a "demand letter under s.627.736" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to *us*; and

iii. to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, any other standard form approved by the Florida Office of Insurance Regulation, or the lost wage statement previously submitted, may be used as the itemized statement. To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website. Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(3) Medical Payments Coverage unless *we* receive written notice of an intent to initiate litigation and if within 30 days after *our* receipt of such for:

(a) a claim, *we* fail to pay the claim; or

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

The notice must state that it is a "demand letter for Medical Payments Coverage" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to us; and

47
9810A

SF-Sasson, Assaf - 000335

iii.  to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, or any other standard form approved by the Florida Office of Insurance Regulation, may be used as the itemized statement.  To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website.  Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(4)  Uninsured Motor Vehicle Coverage if the *insured* or that *insured's* legal representative within five years immediately following the date of the accident:

(a)  presents an Uninsured Motor Vehicle Coverage claim to *us*;

(b)  files a lawsuit,  in a state or federal court that has jurisdiction against *us*;

(c)  consents to a jury trial if requested by *us*; and

(d)  agrees that *we* may contest the issues of liability and the amount of damages.

*We* are not bound by any judgment obtained without *our* written consent.

*We* are not bound by default judgment against any *person* or organization other than *us*.

Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

18.  **Choice of Law**

Without regard to choice of law rules, the law of the state of:

a.  Florida will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b.  Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1)  Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2)  Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

19.  **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a.  such provision will remain in full force to the extent not held invalid or unenforceable; and

b.  all other provisions of this policy will remain valid and enforceable.

Policy Form 9810A
©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

SF-Sasson, Assaf - 000336

**State Farm Mutual Automobile Insurance Company**
PO Box 2358
Bloomington IL 61702-2358

R 7560  4  C                    MU07   V9l

## DECLARATIONS PAGE



NAMED INSURED
AT2                       59-6825-4  C      A
003972 0058
SASSON, ASSAF  &  ADA L
3385 NE 167TH ST
N MIAMI BEACH FL  33160-3849

| | |
|---|---|
| POLICY NUMBER | J53 4643-B02-59B |

POLICY PERIOD APR 19 2022 to AUG 02 2022
12:01 A.M. Standard Time

STATE FARM PAYMENT PLAN NUMBER
1520065519

AGENT

ANTHONY GARCIA
1035 S STATE ROAD 7 STE 311
WELLINGTON, FL 33414-6137

PHONE: (561)793-9822

DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.
IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.

### YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|------|------|-------|-----------|-------------------|-------|
| 2022 | PORSCHE | TAYCAN | 4DR | WP0AA2Y11NSA13378 | 60306010002 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---------|-------------------|----------|
| A | Liability Coverage | $174.50 |
| | Bodily Injury Limits | |
| | Each Person,   Each Accident | |
| | $300,000       $300,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $100,000 | |
| P14/$10,00 | $500 Deductible No-Fault Coverage | $55.38 |
| | Deductible Applies to Each Named Insured and to | |
| | Each of Your Dependent Relatives | |
| D | Comprehensive Coverage - $500 Deductible | $119.03 |
| G | Collision Coverage - $500 Deductible | $203.93 |
| H | Emergency Road Service Coverage | $.54 |
| R1 | Car Rental and Travel Expenses Coverage | $7.84 |
| | Limit - Car Rental Expense | |
| | Each Day,    Each Loss | |
| | 80%         $1,000 | |

| | | |
|---|---|---|
| **Total premium for APR 19 2022 to AUG 02 2022.** | **$561.22** | This is not a bill. |

### IMPORTANT MESSAGES

IMPORTANT NOTICE- Under No-Fault Coverage, the only medical expenses we will pay are reasonable medical expenses that are payable under the Florida Motor Vehicle No-Fault Law. The most we will pay for such reasonable medical expenses is 80% of the "schedule of maximum charges" found in the Florida Motor Vehicle No-Fault Law and in the Limits section of the Florida Car Policy's No-Fault Coverage.

Replaced policy number J534643-59A.

**Your total renewal premium for FEB 02 2022 to AUG 02 2022 is $981.13.**

For questions, problems or to obtain information about coverage call: (561)793-9822.

State Farm works hard to offer you the best combination of price, service, and protection.  The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once during your policy term, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

### EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9810A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
CREDITOR- DCU CREDIT UNION, PO BOX 9130, MARLBOROUGH MA 01752-9130.
6128S.1   AMENDATORY ENDORSEMENT:
6910A    AMENDATORY ENDORSEMENT:

Agent:      ANTHONY GARCIA
Telephone:  (561)793-9822

Prepared    JUN 03 2022        6825-C0D

ST-8
0102-0406

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary

President

SF-Sasson, Assaf - 000338

B10

6910A
Page 1 of 1

## 6910A AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **PHYSICAL DAMAGE COVERAGES**

   **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

   The following is added:

   If there is disagreement as to the cost of repair, replacement, or recalibration of glass, an appraisal will be used as the first step toward resolution. Appraisal will follow the rules and procedures as listed below.

   a. The owner and **we** will each select a competent appraiser.

   b. The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the **owner** or **we** may petition a court that has jurisdiction to select the third appraiser.

   c. Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

   d. The appraisers shall only determine the cost of repair, replacement, and recalibration of glass. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

   e. A written appraisal that is both agreed upon by and signed by any **two** appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the **covered vehicle** and **us**.

   f. **We** and **you** do not waive any rights by submitting to an appraisal.

2. **GENERAL TERMS**

   a. Item (3) of **How and When We May Cancel**, under **Cancellation**, is changed to read:

      If **we** cancel this policy for nonpayment of premium during the first 30 days immediately following the **effective date** of this policy, **we** will do so only if a check used to pay the premium is dishonored for any **reason** or any other type of premium payment was subsequently determined to be rejected or invalid.

   b. Item a. of **Legal Action Against Us** is changed to read:

      Legal action may only be **brought** against **us** within five years immediately following the date of the accident or **loss**. However, this limitation of action is tolled for a period of 60 days after **we** receive notice from the Florida Department of Financial Services, in accordance with section 624.155, Florida Statutes.

6910A

© Copyright, State Farm Mutual Automobile Insurance Company, 2020

6910A
2020
9-15

SF-Sasson, Assaf - 000339

**PLEASE ATTACH TO YOUR POLICY BOOKLET**



SF-Sasson, Assaf - 000340

## 6128S.1 AMENDATORY ENDORSEMENT

This endorsement is a part of the policy.  Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

   a. *Newly Acquired Car* is changed to read:

      *Newly Acquired Car* means a *car* newly **owned by you** or a *resident relative*.

      A *car* ceases to be a *newly acquired car* on the earlier of:

      1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

      2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

      If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

   b. *Pedestrian* is changed to read:

      *Pedestrian* means a *person* who is not *occupying*:

      1. a *motor vehicle*;

      2. a self-propelled vehicle; or

      3. a trailer or other vehicle attached to a self-propelled vehicle.

   c. *Relative* is changed to read:

      *Relative* means a *person*, other than *you*, who is:

      1. related to any named insured in any degree by blood, by marriage, or by adoption and who makes his or her home in the same family unit with that named insured, whether or not temporarily living elsewhere, or

      2. a ward or foster child of any named insured or of a *person* described in 1. above and who makes his or her home in the same family unit with that named insured.

2. **LIABILITY COVERAGE (Bodily Injury and Property Damage)**

   a. Item 4. of *Insured*, under **Additional Definition**, is changed to read:

      *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

      a. neither **owned by**, nor hired by, that other *person* or organization; and

      b. neither available for, nor being used for, carrying *persons* for a charge.

   b. The following is added to **Supplementary Payments**:

      Attorney fees for attorneys representing the *person* or entity asserting a claim against an *insured* are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

6128S.1
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000341

c. **Exclusions**

(1) The exception to exclusion 11. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

3. **PROPERTY DAMAGE LIABILITY COVERAGE**

a. Item 4. of *Insured*, under **Additional Definition**, is changed to read:

*Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability.

This provision applies only if the vehicle is:

a. neither *owned by*, nor hired by, that other *person* or organization; and

b. neither available for, nor being used for, carrying *persons* for a charge.

b. The following is added to **Supplementary Payments**:

Attorney fees for attorneys representing the *person* or entity asserting a claim against an *insured* are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

c. **Exclusions**

(1) The exception to exclusion 9. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY*

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
6128S.1

SF-Sasson, Assaf - 000342

*ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

4. **NO-FAULT COVERAGE**

   a. **Additional Definition**

   Item 2. of the definition of *Insured* is changed to read:

   *Insured* means any other *person* while *occupying* or struck as a *pedestrian* by:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   b. **Insuring Agreement**

   Item 1.C. is changed to read:

   follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following *persons* or entities:

   (1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

   (2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

   (3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

   (4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above; and

   (5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or

   (a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

   (b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

   (c) provides at least four of the following medical specialties:

   i.   general medicine;

   ii.  radiography;

   iii. orthopedic medicine;

   iv.  physical medicine;

   v.   physical therapy;

   vi.  physical rehabilitation;

Page 3 of 11                                                   6128S.1
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000343

vii. prescribing or dispensing outpatient prescription medication; or

viii. laboratory services.

c. **Limits**

(1) Item 2.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 2. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

d. **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN ***INSURED*** WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. ***OCCUPYING*** OR STRUCK BY ***YOUR CAR***, A ***NEWLY ACQUIRED CAR***, OR A ***TEMPORARY SUBSTITUTE CAR*** WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

5. **MEDICAL PAYMENTS COVERAGE**

a. **Insuring Agreement**

Item 2.C. is changed to read:

follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following ***persons*** or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000344

Statutes, based upon referral by a provider described in B. above; and

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or

(a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

i. general medicine;

ii. radiography;

iii. orthopedic medicine;

iv. physical medicine;

v. physical therapy;

vi. physical rehabilitation;

vii. prescribing or dispensing outpatient prescription medication; or

viii. laboratory services.

b. **Limits**

(1) Item 3.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 3. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

c. **Exclusions**

(1) Exclusion 7. is changed to read:

THERE IS NO COVERAGE FOR AN ***INSURED*** WHO:

a. IS ***OCCUPYING*** OR THROUGH BEING STRUCK

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
6128S.1

SF-Sasson, Assaf - 000345

AS A *PEDESTRIAN* BY A VE-HICLE **OWNED BY** ANY NAMED INSURED OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS POL-ICY; OR

b. AT THE TIME OF THE ACCI-DENT OWNS A *MOTOR VE-HICLE* SUBJECT TO THE *NO-FAULT ACT* AND IS NOT INSURED FOR THE COVER-AGE REQUIRED BY THE *NO-FAULT ACT*.

This exclusion (7.b.) does not apply to:

(1) any named insured;

(2) the spouse of any named in-sured; and

(3) any *relative* while *occupy-ing your car*, a *newly ac-quired car*, a *temporary substitute car*, or a *non-owned car* if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Pay-ments Coverage;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANS-PORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR*

WHILE SUCH VEHICLE IS BEING USED TO PRO-VIDE TRANSPORTA-TION NETWORK SERVICES.

6. **UNINSURED MOTOR VEHICLE COV-ERAGE (Stacking)**

a. **Additional Definitions**

"*Uninsured Motor Vehicle* does not in-clude a land motor vehicle or trailer" is changed to read:

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Cov-erage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehi-cle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being oper-ated by a *person* other than *you* or a *resident relative*;

2. designed for use primarily off public roads except while on public roads;

3. while located for use as a dwell-ing or other premises; or

4. whose owner or operator could have been reasonably identified.

b. **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTA-TION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY*

6128S.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000346

*ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

7. **UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking)**

   a. **Additional Definitions**

   "*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer" is changed to read:

   *Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

   1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

   2. designed for use primarily off public roads except while on public roads;

   3. while located for use as a dwelling or other premises; or

   4. whose owner or operator could have been reasonably identified.

   b. **Exclusions**

   (1) Exclusion 2. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

   a. WHILE *OCCUPYING* A VEHICLE *OWNED BY YOU* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

   b. WHILE *OCCUPYING* A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*. This exclusion (2.b.) does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, provided that the vehicle is *owned by* neither that named insured nor that spouse; OR

   c. WHILE A *PEDESTRIAN* AND IS STRUCK BY A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*;

   (2) The following exclusions are added:

   (a) THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A VEHICLE *OWNED BY* THAT *INSURED* IF THAT VEHICLE IS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE UNDER THIS POLICY OR ANY OTHER POLICY.

   (b) THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

   1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
6128S.1

SF-Sasson, Assaf - 000347

2. ***OCCUPYING*** OR STRUCK BY ***YOUR CAR***, A ***NEWLY ACQUIRED CAR***, OR A ***TEMPORARY SUBSTITUTE CAR*** WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

8. **PHYSICAL DAMAGE COVERAGES**

   a   The paragraph that reads:

   If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

   is changed to read:

   **Deductible**

   1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, ***we*** will not deduct more than $500 for any ***loss*** to a ***newly acquired car***.

   2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, ***we*** will not deduct more than $500 for any ***loss caused by collision*** to a ***newly acquired car***.

   b. **Exclusions**

      The following exclusion is added:

      THERE IS NO COVERAGE FOR ANY ***COVERED VEHICLE*** WHILE IT IS USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

9. **INSURED'S DUTIES**

   a. Item 7.a.(3) is changed to read:

      An ***insured*** making claim under:

      a. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

         (3) provide written authorization for ***us*** to obtain medical bills, medical records, wage information, salary information, employment information, and any other relevant information ***we*** deem reasonably necessary to substantiate the claim.

         Such authorizations must not:

         (a) restrict ***us*** from performing ***our*** business functions in:

            (i) obtaining relevant and reasonably necessary records, bills, information, and data; nor

            (ii) using or retaining relevant and reasonably necessary records, bills, information, and data collected or received by ***us***;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000348

(b) require **us** to violate federal or state laws or regulations;

(c) prevent **us** from fulfilling **our** data reporting and data retention obligations to insurance regulators; or

(d) prevent **us** from disclosing claim information and data:

    (i) to enable performance of **our** business functions;

    (ii) to meet **our** reporting obligations to insurance regulators;

    (iii) to meet **our** reporting obligations to insurance data consolidators; and

    (iv) as otherwise permitted by law.

If an injured **insured** is a minor, unable to act, or dead, then his or her legal representative must provide **us** with the written authorization.

If the holder of the information refuses to provide it to **us** despite the authorization, then at **our** request the **person** making claim or his or her legal representative must obtain the information and promptly provide it to **us**; and

b. The following is added to item 7.:

An **insured** making claim under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must submit to **us** all information **we** need to comply with federal and state laws and regulations.

10. **GENERAL TERMS**

a. The following is added to **Limited Coverage in Mexico**:

**Uninsured Motor Vehicle Coverage (Stacking and Non-Stacking)**

b. Under **Limited Coverage in Mexico**, **Legal Action Against Us** is changed to read:

Any legal action against **us** arising out of an accident or **loss** occurring in the country of Mexico must be brought in a Florida state court in the United States of America, or a United States of America District Court that has jurisdiction.

c. The provision entitled **Persons Acting On Our Behalf** is deleted in its entirety.

d. The following is added to **Newly Owned or Newly Leased Car**:

If a **resident relative** wants to insure a **car** newly **owned by** the **resident relative** with the **State Farm Companies** after that **car** ceases to be a **newly acquired car**, then the **resident relative** must apply to the **State Farm Companies** for a separate policy to insure the **car** newly **owned by** the **resident relative**. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

e. The following is added to **Premium**:

If due to insufficient funds, payment of premium for this policy by debit

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000349

card, credit card, electronic funds transfer, or electronic check is returned, is declined, or cannot be processed, *we* may impose an insufficient funds fee of $15 per occurrence.

f. **Return of Unearned Premium** is changed to read:

(1) If *you* cancel this policy:

(a) then premium will be earned on a pro rata basis. *We* may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed or electronically transferred to *you* within 30 days after the effective date of the policy cancellation, or 30 days after *we* receive *your* request to cancel this policy, whichever is later. Delay in the return of unearned premium does not affect the cancellation;

(b) *you* may elect to apply the unearned portion of any premium paid to unpaid balances of other policies with the **State Farm Companies**.

(2) If *we* cancel this policy:

(a) then premium will be earned on a pro rata basis. Any unearned premium will be mailed or electronically transferred at the time we cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation;

(b) *you* may elect to apply the unearned portion of any

premium paid to unpaid balances of other policies with the **State Farm Companies**.

g. The following are added to **GENERAL TERMS**:

**Electronic Delivery**

With *your* consent, *we* may, if allowed by law, electronically deliver any document or notice, including a notice to renew, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice. This provision does not apply to any notice to non-renew or cancel.

**Our Rights Regarding Claim Information**

a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b. Subject to a. above, *we* will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, relevant data, and any other reasonable information to process the claim;

(2) using any of the items described in item b.(1) above; or

6128S.1
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000350

(3) retaining:

   (a) any of the items in item b.(1) above; or

   (b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c. *We* may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

   (1) to enable performance of *our* business functions;

   (2) to meet *our* reporting obligations to insurance regulators;

   (3) to meet *our* reporting obligations to insurance data consolidators;

   (4) to meet other obligations required by law; and

   (5) as otherwise permitted by law.

d. *Our* rights under a., b., and c. above shall not be impaired by any:

   (1) authorization related to any claim submitted under this policy; or

   (2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000351

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.   COINX-22-049821

ASSAF SASSON,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
Defendant.

_____/

## COMPLAINT

COMES NOW, the Plaintiff, ASSAF SASSON, by and through undersigned counsel, hereby sues the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and in support thereof alleges:

1. This is a petition within the jurisdictional limits of this Court exclusive of interest, costs, attorney's fees.

2. At all times material hereto, the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY was a duly authorized insurance company, organized and incorporated under the Laws of Florida or authorized to transact insurance business in the State of Florida.

3. At all times material hereto, the Plaintiff, ASSAF SASSON was and is over the age of 18 and sui juris.

4. Venue is proper in Broward County, Florida, because this claim arose in Broward County, Florida, and the Defendant sufficiently transacts business in Broward

County, Florida.

5. For valuable consideration, at all times material hereto, the Defendant, STATE
   FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, issued a policy of
   automobile insurance, that included collision benefits, which provided coverage to
   Plaintiff under Policy Number J53-4643-B02-59C (The Plaintiff is not in possession
   of the complete policy of insurance, and therefore, is unable to attach a true and
   correct copy hereto, however the declarations page of the policy is attached hereto).

6. Pursuant to the terms thereof, the Defendant agreed to pay collision benefits to
   repair or replace Plaintiff's 2022 Porsche Taycan in the event of an accident.

7. On or about May 27, 2022, ADA SASSON, an insured under said policy, was
   traveling in the above insured vehicle and was involved in an automobile accident
   in Broward County, Florida.  Said vehicle was insured under said insurance
   policy.

8. Said automobile accident caused the Plaintiff's vehicle to suffer damages.

9. The Plaintiff, ASSAF SASSON, submitted a claim for collision benefits to the
   Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE
   COMPANY for payment related to the damages to his automobile suffered in the
   above-mentioned motor vehicle accident, under claim number 59-34T0-34F.

10. The Plaintiff has complied with all statutory conditions precedent to recovering
    benefits under said policy.

11. As the subject vehicle is a luxury foreign vehicle, on or about May 31, 2022,
    Plaintiff brought the vehicle to Stuttgart International, in Broward County,

Florida, a collision body shop that specializes in repairing such vehicles.

12. Stuttgart International created an estimate of repairs to the subject vehicle in the amount of $8,360.87.  Said estimate was provided to Defendant.

13. On or about July 1, 2022, Defendant created an estimate of damages to the subject vehicle in the amount of $6,267.03, and only agreed to pay that amount for repair to the vehicle less a $500.00 deductible.

14. To date, Defendant has refused and continues to refuse to pay Plaintiff the amount of the estimate created by Stuttgart International, which is the true the amount required to properly repair the subject luxury vehicle.

15. Moreover, Defendant has refused and continues to refuse to pay Plaintiff for devaluation to the subject vehicle caused as a result of the subject accident, an amount which is covered under the subject policy.

16. As a direct and proximate result of Defendant's failure to pay the full benefits under the subject policy, Plaintiff has been denied use of the vehicle and suffered damages as a result thereof.

17. The Defendant has breached its contract with Plaintiff by failing to pay for the damages sustained by Plaintiff in the above referenced accident.

18. The Plaintiff and/or its agents have complied with all statutory conditions under the law.

19. As a result of the Defendant's failure and/or refusal to pay the aforesaid benefits due, the Plaintiff suffered actual damages more than $8,000.00 but less than

$15,000.00, exclusive of attorney's fees, costs, and interest.

20. The Plaintiff has been caused to retain the undersigned and this law firm to enforce its rights against the Defendant for collision benefits and is thereby obligated to pay reasonable attorney's fee and costs.

21. The Plaintiff is entitled to prevailing party attorney's fees, costs, and statutory interest pursuant to Florida Statutes §627.428.

WHEREFORE, the Plaintiff, ASSAF SASSON, demands judgment against the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, in the amount greater than $8,000.00 but less than $15,000.00, for collision damages to Plaintiff's vehicle, damages due to devaluation of his vehicle, loss of use damages, attorney's fees, costs, interest, and further demands trial by jury for all issues so triable, and any other relief that this Court deems just and proper.

Respectfully submitted,

Daren Stabinski P.A.
100 N. Federal Hwy, #524
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com

    /s/ Daren Stabinski
Daren Stabinski, Esq.
Fla. Bar No. 002951

State Farm Mutual Automobile Insurance Company
*PO Box 2358*
*Bloomington IL 61702-2358*

 **State Farm®**

P-6825       A

SASSON, ASSAF & ADA L
3385 NE 167TH ST
N MIAMI BEACH FL 33160-3849

## AUTO RENEWAL

**PREMIUM PAID: $1,102.73**
**DO NOT PAY.**
*Your premium is billed through the State Farm Payment Plan*

State Farm Payment Plan Number: 1520065519

**Your State Farm Agent**

ANTHONY GARCIA

Office: 561-793-9822

Address: 1035 S STATE ROAD 7 STE 311
              WELLINGTON, FL 33414-6137

*If you have a new or different car, have added any drivers, or have moved,*
*please contact your agent.*

**Thank you for choosing State Farm.**

**Policy Number: J53 4643-B02-59C**
Policy Period: August 2, 2022 to February 2, 2023

**Vehicle:**
2022 PORSCHE TAYCAN

**Principal Driver:**
ASSAF  SASSON

IMPORTANT NOTICE- Under No-Fault Coverage, the only medical expenses we will pay are reasonable medical expenses that are payable under the Florida Motor Vehicle No-Fault Law. The most we will pay for such reasonable medical expenses is 80% of the "schedule of maximum charges" found in the Florida Motor Vehicle No-Fault Law and in the Limits section of the Florida Car Policy's No-Fault Coverage.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

Policy Number: J53 4643-B02-59C
Prepared June 10, 2022
Form 1004933

Page number 1 of 7

144211  201  11-01-2015

TP-OB

# Save up to 25% off on auto care

As a valued State Farm® customer, now it's simple to find great mechanic shops in your neighborhood and enjoy exclusive savings from Openbay of up to 25%.



Compare estimates



Choose local shops

Schedule appointments online



**Scan to sign up and start saving.**

Learn more at Openbay.com



## VEHICLE INFORMATION

**Review your policy information carefully.** If anything is incorrect, or if there are any changes to your vehicle information, please let us know right away.

| Vehicle Description | Vehicle Identification Number (VIN) | Who principally drives this vehicle? | How is this vehicle normally used? *National average: 12,000 miles driven annually per vehicle* |
|---|---|---|---|
| 2022 PORSCHE TAYCAN | WP0AA2Y11NSA13378 | ASSAF SASSON, a married male, who will be age 56 as of August 02, 2022. | To Work, School or Pleasure. Driven over 7,500 miles annually. |

### Other Household Vehicle(s)
Your premium may be influenced by other State Farm policies that currently insure the following vehicle(s) in your household:

    2018 TESLA MODEL 3
    2021 TESLA MODEL S

### Premium Adjustment
Each year, we review our medical payments and personal injury protection coverages claim experience to determine the vehicle safety discount that is applied to each make and model. In addition, we review the comprehensive, collision, bodily injury and property damage claim experience annually to determine which makes and models have earned decreases or increases from State Farm's standard rates. If any changes result from our reviews, adjustments are reflected in the rates shown on this renewal notice.

## DRIVER INFORMATION

### Assigned Driver(s)
The following driver(s) are assigned to the vehicle(s) on this policy.

| Name | Age *as of August 2, 2022* | Gender | Marital Status |
|---|---|---|---|
| ASSAF  SASSON | 56 | Male | Married |

### Other Household Driver(s)
In addition to the Principal Driver(s) and Assigned Driver(s), your premium may be influenced by the drivers shown below and other individuals permitted to drive your vehicle.  This list does not extend or expand coverage beyond that contained in this automobile policy.  The drivers listed below are the drivers reported to us that most frequently drive other vehicles in your household.

    ADA L SASSON
    NOA ANN SASSON



**Principal Driver & Assigned Drivers**
For each automobile, the **Principal Driver** is the individual who most frequently drives it.
Each driver is designated as an **Assigned Driver** on the household automobile that he or she most frequently drives.

Your premium may be influenced by the information shown for these drivers.

**IMPORTANT NOTICE REGARDING YOUR PREMIUM**

State Farm works hard to offer you the best combination of price, service, and protection.  The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once during your policy term, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

**COVERAGE AND LIMITS** *See your policy for an explanation of these coverages.*

| A | Liability | |
|---|---|---|
| | Bodily Injury 300,000/300,000 | |
| | Property Damage  100,000 | $358.80 |
| P14 | 500 Deductible No Fault | |
| | Deductible Applies to You and to | |
| | Each of Your Dependent Relatives | $91.46 |
| D | 500 Deductible Comprehensive | $254.26 |
| G | 500 Deductible Collision | $383.11 |
| H | Emergency Road Service | $0.97 |
| R1 | Car Rental & Travel Expense | |
| | 80%  Per Day, $1,000 Max | $14.13 |
| **Total Premium** | | **$1,102.73** |

If any coverage you carry is changed to give broader protection with no additional premium charge, we will give you the broader protection without issuing a new policy, starting on the date we adopt the broader protection.

**IMPORTANT INFORMATION ABOUT UNINSURED MOTOR VEHICLE COVERAGE**

Now is a good time to consider either adding Uninsured Motor Vehicle Coverage, or increasing your limits for this coverage. This coverage protects you, your resident family members and your passengers in the event of bodily injury sustained in an accident for which an unidentified, uninsured, or underinsured driver is legally liable.
You have the right to choose one of these options:
a. select stacking coverage (U) with any available limits up to your bodily injury liability coverage limits, which means

that if more than one Uninsured Motor Vehicle Coverage applies, the limits for the applicable coverages may be added together (Stacking is not available for policies with a named insured that is not a natural person);
b. select, at a reduced premium, non-stacking coverage (U3) with any available limits up to your bodily injury liability coverage limits, which means the Uninsured Motor Vehicle Coverage limits are not added together in most circumstances. The non-stacking coverage on this policy is not available to persons injured while occupying a motor vehicle owned by you or a resident family member which is not insured for uninsured motorist coverage by this policy; or
c. reject this coverage entirely.
Please contact your State Farm agent if you wish to change coverage.

*(continued on next page)*



## COVERAGE AND LIMITS *continued*

**IMPORTANT INFORMATION ABOUT PREMIUM SAVINGS FOR NO-FAULT COVERAGE**

(Coverage P - Personal Injury Protection Insurance)
For personal injury protection insurance, the named insured may elect a deductible and to exclude coverage for loss of gross income and loss of earning capacity ("lost wages"). These elections apply to the named insured alone, or to the named insured and all dependent resident relatives. A premium reduction will result from these elections. The named insured is hereby advised not to elect the lost wage exclusion if the named insured or dependent resident relatives are employed, since lost wages will not be payable in the event of an accident.

Please contact your agent for information about No-Fault premium savings.

**DISCOUNTS** *These adjustments have already been applied to your premium.*

| | |
|---|---|
| Multicar | ✓ |
| Vehicle Safety | ✓ |
| Good Driving | ✓ |
| Homeownership | ✓ |
| **Total Discounts** | **$467.49** |

## SURCHARGES AND DISCOUNTS

**AUTOMOBILE RATING PLAN** - Applies to private passenger cars only.

**Accident-Free Discount** - Once your policy has been in force for at least three years with no chargeable accidents, you may qualify for our Accident-Free Discount. Once you qualify, this discount applies as long as there are no chargeable accidents, and may even increase over time.

**Good Driving Discount** - Newer policyholders who do not yet qualify for our Accident-Free Discount (available after three years with no chargeable accidents) may already be receiving a Good Driving Discount. This discount continues to apply until your policy qualifies for the Accident-Free Discount as long as there are no chargeable accidents and no new drivers. If you add new drivers, they must also qualify in order for your Good Driving Discount to continue.

**Chargeable Accidents** - For new business rating, an accident is chargeable if it results in $750 or more of damage to any property. For renewal business, an accident is chargeable as of the date State Farm pays at least $750 (for accidents occurring on or after April 1, 1999) under property damage liability and collision coverages for an at-fault accident.

**Surcharges** - If there are chargeable accidents, you may lose your Good Driving Discount or Accident-Free Discount and receive accident surcharges. But if the accident is the first to become chargeable in nine years and this policy has been in force for at least that long, the Accident-Free Discount will continue and no surcharge will apply. The surcharge for each accident depends upon the number and timing of the accidents, and each accident surcharge will remain in effect up to three years.

Surcharges will be removed if the company is given satisfactory evidence that the driver involved is no longer a member of the household or will not be driving the car in the future. If that driver is insured on another State Farm policy, his or her driving record will be considered in the rating of the other policy.

These discounts and surcharges do not apply to all coverages. For complete details, see your State Farm agent.

## ADDITIONAL INFORMATION

If any information on this renewal notice is incomplete or inaccurate, or if you want to confirm the information we have in our records, please contact your agent. For additional information regarding discounts or coverages, see your State Farm agent or visit statefarm.com®.

*22-000303435*

CHIEF FINANCIAL OFFICER
**JIMMY PATRONIS**
STATE OF FLORIDA

ASSAF SASSON

PLAINTIFF(S)

VS.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT, DISCOVERY

| | |
|---|---|
| **CASE #:** | **COINX-22-049821** |
| **COURT:** | **COUNTY COURT** |
| **COUNTY:** | **BROWARD** |
| **DFS-SOP #:** | 22-000303435 |

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Wednesday, August 17, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Friday, August 19, 2022 to the designated agent for the named entity as shown below.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
LYNETTE COLEMAN
1201 HAYS STREET
TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

Jimmy Patronis
Chief Financial Officer

DAREN STABINSKI
PARTNER
DAREN STABINSKI P.A.
100 N FEDERAL HWY
APT 524
FT LAUDERDALE, FL 33301

BL1

Filing # 155458400 E-Filed 08/16/2022 04:43:18 PM

IN THE COUNTY COURT IN AND
FOR BROWARD COUNTY, FLORIDA

CASE NO.  COINX-22-049821

ASSAF SASSON,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

 Defendant.

_____ /

## S U M M O N S

THE STATE OF FLORIDA:

To Each Sheriff of Said State:

 **YOU ARE COMMANDED** to serve this Summons along with a copy of the Complaint, Notice of Service

of Interrogatories, Interrogatories, and Request for Production, in this lawsuit on the Defendant:

|  |  |
|---|---|
| PLEASE SERVE: | STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY |
| BY SERVING: | CHIEF FINANCIAL OFFICER<br>300 East Gaines Street<br>Tallahassee, FL 32399 |

Each defendant is required to serve written defenses to the Complaint on the Plaintiff's attorney, to wit: **Daren**

**Stabinski, Esq., Daren Stabinski P.A., 100 N. Federal Hwy, #524, Fort Lauderdale, FL 33301,**

**daren@darenstabinskipa.com,** within twenty (20) days after service of this Summons on that Defendant, exclusive

of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on

Plaintiff's attorney, or immediately thereafter.  If a defendant fails to do so, a default will be entered against that

defendant for the relief demanded in the Complaint or Petition.  Discovery is to be answered within 45 days of the

service of the Complaint.

____ of __    AUG 17 2022

As Clerk of said Court

By: _____
        as Deputy Clerk

BRENDA D. FORMAN

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 08/16/2022 04:43:17 PM.****

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:   COINX-22-049821

ASSAF SASSON,

      Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

_____/

## PLAINTIFFS' REQUEST FOR PRODUCTION TO DEFENDANT

Plaintiff, ASSAF SASSON, by and through their undersigned counsel, and pursuant to Florida Rules of Civil Procedure, hereby request the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, to produce within the items and matters hereinafter set forth on or before the applicable time prescribed by said rule for inspection and/or copying at the office of the undersigned attorney, the following items and/or documents:

1.     Any and all insurance policies ever issued by the Defendant to the Plaintiff, including all declarations pages, applications, addenda and riders.

2.     The underwriting file of the Plaintiff.

3.     Copies of any and all correspondence, forms, report or other documents regarding the Plaintiff's claim herein.

4.     Any and all surveillance reports, claims history reports or other investigative reports prepared by you or on your behalf with regard to the Plaintiff or Plaintiff's claim.

5.      Any and all correspondence between Defendant and/or any representative thereof and the Plaintiff or anyone acting on the Plaintiff's behalf.

6.      Any and all documents, papers or things given to Defendant and/or any representative thereof by the Plaintiff or the Plaintiff's agents prior to the filing of the lawsuit.

7.      Any and all written or recorded statements of Plaintiff.

8.      Any and all written or recorded statements of the Plaintiff's agents and/or representatives.

9.      Any and all written or recorded statements of any witness or third party with regard to the subject claim.

10.     Any and all contracts, agreements and/or producing agreements as between the Defendant and the insurance agent, with regard to the sale and/or solicitation of the subject insurance.

11.     Any and all estimates and/or appraisal reports relating to the Plaintiffs' claims which are the subject of this litigation.

12.     Any and all underwriting guidelines, manuals, memos, instructions or other documents delivered by the Defendant to the insurance agent related to the subject policy.

13.     Any and all photographs and/or video of the Plaintiffs' property and/or its contents.

14.     Any and all proof of loss forms, statements, notices of claim and/or any other document submitted by the Plaintiff pertaining to his claim that is the subject of this litigation.

15.     Any appraisals, estimates or other documents pertaining to the value of Plaintiff's claim.

16.     Defendant's entire file pertaining to the claim made by Plaintiffs.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of this Request for Production was attached and to be served together with the Summon and Complaint onto the Defendant.

> Daren Stabinski P.A.
> 100 N. Federal Hwy, #524
> Fort Lauderdale, FL 33301
> Ph:  (954) 324-1552
> Fax: (954) 245-0739
> Email:  daren@darenstabinskipa.com
>
> __/s/ Daren Stabinski_____
> Daren Stabinski, Esq.
> Fla. Bar. No. 002951

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: COINX-22-049821

ASSAF SASSON,

     Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

_____/

## PLAINTIFFS' NOTICE OF SERVICE OF INSURANCE COVERAGE INTERROGATORIES TO DEFENDANT

Plaintiff, ASSAF SASSON, by and through their undersigned counsel, and pursuant to Fla.R.Civ.P. 1.340, hereby file notice that certain Insurance Coverage Interrogatories, numbered 1 through 17 were propounded upon the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, to be answered in writing, under oath, within forty-five (45) days from date of service of same.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of this Request for Production was attached and to be served together with the Summon and Complaint onto the Defendant.

Daren Stabinski P.A.
100 N. Federal Hwy, #524
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com

   _/s/ Daren Stabinski_____
Daren Stabinski, Esq.
Fla. Bar. No. 002951

**PLAINTIFFS' INSURANCE COVERAGE INTERROGATORIES
TO DEFENDANT**

1.     What is your name, address and, if you are answering for someone else, your official position or relationship with the party to whom the interrogatories are directed?

2.     Describe any and all policies of insurance which you contend cover or may cover the allegations set forth in Plaintiffs' complaint, detailing as to such policies the name of the insurer, the number of the policy, the available limits of coverage, including those contained in the policy language, and the name and address of the custodian of the policy.

3.     Please state with specificity any defenses to coverage that you have in this matter and identify any documents supporting your defenses to coverage.

4.      Please state with specificity any conditions precedent or subsequent to the Plaintiffs' claim that you contend have not been fulfilled by the Plaintiffs, if any exist.

5.      Please state your reason(s) for your nonpayment and/or non-consideration of this claim.

6.      Please state the date that you received notice of this claim, the date that you acknowledged notice of the claim, and the date that you received notice of the incident which is the subject of this matter.

7.      State separately the facts upon which you rely on for each affirmative defense in your Answer to the Plaintiffs' Complaint.

8.      Do you contend any person or entity other than you is, or may be, liable in whole or in part for the claims asserted against you in this lawsuit? If so, state the full name and address of each such person or entity, the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not you have notified each such person or entity of your contention.

9.      List the names, addresses and telephone numbers of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which the witness has knowledge.

10.      State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody, or control of, any estimate of damage, model, plat, map, drawing, motion picture, video-tape, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

11.    Please provide a list of the names and current addresses of any and all individuals employed by, or agents of the Defendant, who were in any way involved with the handling of this claim, for any purpose after the date of loss but prior to the institution of this litigation.  Please also provide the date of inspection(s) of the property and a short statement of the person's knowledge and involvement with the claim.

12.    List the names, residence addresses, business addresses and telephone numbers of all persons believed or known by you, your agents, or attorneys, to have heard Plaintiffs make any statement, remark or comment concerning the incident involved herein and the substance of any such statement, remark or comment.

13.    For any and all policy defenses which you reasonably believe are available with regard to the claim made by the Plaintiffs herein: Describe in detail the factual and legal basis for any such defenses and give complete names, residence addresses, business addresses and telephone numbers of each any every person believed or known by you, your agents or attorneys, to have knowledge of the facts which would provide the basis for any such defense.

14.    Please list any amounts that Defendant has paid to Plaintiffs to date for the subject claim, and describe what each such payment was for.

15.    For each denied or withheld payment of claim listed above, state in detail the legal grounds for doing so, the factual basis for doing so, and provide the exact wording of any policy provisions, or the exact wording of any statutory language or case law upon which you base your denial or withholding of payment.

16.    If an appraisal of the subject vehicle and/or its contents was prepared, please state the items that have been appraised, the amount that each such item was appraised for, the name and address of any person who performed or contributed to said appraisal, and the date of said appraisal.

17.    State the specific nature of your relationship with the insurance agent who sold Plaintiffs the subject policy of insurance at the time that the subject policy was issued.  State whether said insurance agent was authorized to sell or service your policies, and if so, state the specifics of its authority.

**JURAT**

_____
Affiant


STATE OF FLORIDA          )
                          )          SS:
COUNTY OF                 )


      SUBSCRIBED and sworn to (or affirmed) before me this ____ day of

_____, 2021, by _____, who is personally known

to me or has produced _____ as identification.


_____
NOTARY PUBLIC, State of Florida

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

                  Plaintiff,

v.

CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                  Defendant.

_____/

## DEFENDANT'S NOTICE OF APPEARANCE AND
## DESIGNATION OF E-MAIL ADDRESSES

PLEASE TAKE NOTICE that Johanna W. Clark and Christopher M. Paolini of the law

firm of Carlton Fields, P.A., hereby enter their appearance as counsel for Defendant, State Farm

Mutual Automobile Company.

Pursuant to Florida Rule of Judicial Administration 2.516, Defendant hereby designates

the following addresses by e-mail:

Email: jclark@carltonfields.com (primary)
Email: cpaolini@carltonfields.com (primary)
Email: atokarz@carltonfields.com (secondary)
Email: dmonge@carltonfields.com (secondary)

Please note that service by e-mail should utilize all e-mail addresses. Correspondence

other than service should utilize only the primary e-mail address.

Dated: September 8, 2022

Respectfully submitted,

/s/ Johanna W. Clark
Johanna W. Clark [
Florida Bar No. 196400
Christopher M. Paolini
Florida Bar No. 669199
CARLTON FIELDS, P.A.

1

130647140.1

200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:        (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: cpaolini@carltonfields.com (primary)
Email: atokarz@carltonfields.com (secondary)
Email: dmonge@carltonfields.com (secondary)
*Attorneys for Defendant, State Farm Mutual Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 8, 2022, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

*/s/ Johanna W. Clark*
Johanna W. Clark

2

Filing # 157037780 E-Filed 09/08/2022 05:01:12 PM

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

              Plaintiff,

v.

CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

              Defendant.

_____/

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR EXTENSION OF TIME TO RESPOND TO THE COMPLAINT

Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), pursuant to Florida Rule of Civil Procedure 1.090, requests the Court enter an Order briefly extending the time for State Farm to respond to the Complaint, and in support thereof states as follows:

1.    Plaintiff filed this action attempting to assert one count against State Farm for breach of a policy of automobile insurance.

2.    State Farm's response to the Complaint is due on September 8, 2022.

3.    State Farm recently retained undersigned counsel to represent it in the defense of this matter. State Farm's counsel is in depositions this week on other matters and State Farm's counsel requires additional time to complete a review of the file and prepare a response to the Complaint. State Farm therefore respectfully requests that the Court enter an Order extending the time for State Farm to respond to the Complaint by 14 days.

4.    This motion is being made in good faith and not for purposes of delay.

WHEREFORE, Defendant, State Farm Mutual Automobile Insurance Company, respectfully requests that the Court extend the time for State Farm to respond to the Complaint, and grant State Farm any other relief this Court deems fair and equitable.

130714312.1

Dated: September 8, 2022

Respectfully submitted,

/s/ Johanna W. Clark

Johanna W. Clark [
Florida Bar No.  196400
Christopher M. Paolini
Florida Bar No. 669199
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:       (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: cpaolini@carltonfields.com (primary)
Email: atokarz@carltonfields.com (secondary)
Email: dmonge@carltonfields.com (secondary)
*Attorneys for Defendant, State Farm Mutual Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 8, 2022, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

/s/ Johanna W. Clark

Johanna W. Clark

**IN THE COUNTY COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. **COINX22049821**   DIVISION: **73**   JUDGE: **DeLuca, Steven P. (73)**

**Assaf Sasson**

Plaintiff(s) / Petitioner(s)

v.

**State Farm Mutual Automobile Insurance Company**

Defendant(s) / Respondent(s)

_____/

**AGREED ORDER ON DEFENDANT'S MOTION FOR EXTENSION OF TIME TO THE
COMPLAINT**

   THIS CAUSE having come before the Court on agreement of the parties on Defendant's Motion for
Extension of Time to Respond to Plaintiff's Complaint, it is hereby ORDERED and ADJUDGED

Defendant shall have up to and including September 21, 2022 to file its response to Plaintiff's complaint.

**Pursuant to Rule 2.516(h)(1), the Court hereby orders counsel to furnish copies of this
Order/Judgment to any party who does not have an email address shown on this document.**

**DONE AND ORDERED** in Chambers at Broward County, Florida on 9th day of September, 2022.

COINX22049821 09-09-2022 3:19 PM

COINX22049821 09-09-2022 3:19 PM
Hon. Steven P. DeLuca
**COUNTY COURT JUDGE**
Electronically Signed by Steven P. DeLuca

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days. If you have a hearing or voice disability you can contact the court through the Florida Relay Service by calling 711.**

**Copies Furnished To:**
Christopher M. Paolini , E-mail : dmonge@carltonfields.com
Christopher M. Paolini , E-mail : cpaolini@carltonfields.com
Christopher M. Paolini , E-mail : atokarz@carltonfields.com
Daren Stabinski , E-mail : daren@darenstabinskipa.com
Johanna W Clark , E-mail : vskinner@carltonfields.com
Johanna W Clark , E-mail : dmontgomery@carltonfields.com
Johanna W Clark , E-mail : jclark@carltonfields.com

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

        Plaintiff,

CASE NO: COINX-22-049821

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION TO DISMISS THE COMPLAINT

State Farm Mutual Automobile Insurance Company ("State Farm"), pursuant to Florida Rule of Civil Procedure 1.140(b)(6), moves to dismiss the Complaint filed by Assaf Sasson ("Plaintiff") because it fails to state a cause of action.

## BACKGROUND AND SUMMARY OF ARGUMENT

Plaintiff filed this one-count action against State Farm, his automobile insurer, attempting to assert a claim for breach of contract under his insurance policy (the "Policy")[1]. Plaintiff alleges State Farm paid $6,267.03 for repairs to the vehicle, but breached the contract by refusing to pay the entire $8,360.87 estimate prepared by Plaintiff's collision body shop, Stuttgart International ("Stuttgart"). As shown below, Plaintiff does not allege State Farm breached any provision of the Policy, which is fatal to his claim. The Policy imposes no contractual obligation on State Farm to pay the full amount of a repair bill submitted by a third party such as Stuttgart; to the contrary, the limit of liability provision in the Policy expressly limits the amount State Farm owes for the loss.

---

[1] A certified copy of the Policy is attached as **Exhibit A**.

Because Plaintiff has not alleged a breach of any contractual obligation owed by State Farm, Plaintiff has failed to state a cause of action.

## MEMORANDUM OF LAW

**I.     Standard for a motion to dismiss.**

In ruling on a motion to dismiss, a trial court is limited to the four corners of the complaint and its incorporated attachments. *One Call Prop. Servs. Inc. v. Sec. First Ins. Co*., 165 So. 3d 749, 752 (Fla. 4th DCA 2015).   However, where the terms of a legal document are impliedly incorporated by reference into a complaint, the trial court may consider the contents of the document in ruling on a motion to dismiss. *Id.* (trial court properly considered insurance policy attached to motion to dismiss where Plaintiff's standing to sue was based on assignment of policy). A copy of the applicable Policy, which Plaintiff references and cites in his complaint, is attached to this Motion as **Exhibit A.**[2]  If a conflict exists between the exhibits and the allegations, the exhibits control.  *E.g., Fladell v. Palm Beach Co. Canvassing Bd.*, 772 So. 2d 1240, 1242 (Fla. 2000); *see also Appel v Lexington Ins. Co.*, 29 So. 3d 337, 379 (Fla 5th DCA 2010) (*citing Fladell* and affirming order granting motion to dismiss because insurance policy, incorporated by reference in complaint, negated plaintiffs' allegation of insurer's duty to defend).

**II.     Plaintiff fails to plead a breach of *any* contractual obligation owed by State Farm and "devaluation" of the vehicle is not covered under the Policy.**

A breach of contract claim requires a plaintiff to plead and prove a specific promise or obligation was not performed by the defendant. *See, e.g., Abbott Laboratories, Inc. v. General Elec. Capital*, 765 So.2d 737 (Fla. 5th DCA 2000) (recognizing the elements of a contract action

---

[2] In the event the Court elects not to consider the Policy because it is not attached to the Complaint, the Court must dismiss the Complaint for Plaintiff's failure to attach the Policy under Fla. R. Civ. P. 1.130.

are (1) a valid contract, (2) a material breach of the contract, and (3) damages); *Burlington &*

*Rockenbach, P.C. v. Law Offices of E. Clay Parker*, 160 So. 3d 955 (Fla. 5th DCA 2015) (holding

that a contract action depends upon the execution of the contract, the obligation thereby assumed,

and the breach of that obligation).

> ***Where it appears that the alleged conduct***, nonperformance or defective
> performance ***does not contravene any term in the contract, an action for
> breach will not be sustained.*** Where, by the express definite terms of a
> complete contract any action taken or omitted under it does not appear to be a
> violation of it and no fraud or other illegal or inequitable conduct is shown,
> additional provisions will not be implied for the purpose of showing a violation
> when it otherwise does not appear and where the contract may be performed
> according to its terms.

Fla. Jur. 2d *Contracts* §269 (2012) (emphasis added); *see City-Wide Sanitation Co. v. City of*

*Pembroke Pines*, 214 So.2d 485, 486 (Fla. 4th DCA 1968).

In the Complaint, Plaintiff alleges his vehicle incurred damage as the result of a collision,

that (at the time of the collision) the vehicle was insured under insurance Policy J53-4643-B02-

59C issued by State Farm, that State Farm prepared an estimate in the amount of $6,267.03 for

repairs to the vehicle, and that Plaintiff's collision body shop, Stuttgart, prepared an estimate in

the amount of $8,360.87. (Compl. ¶¶ 5, 7, 12, 13).  Plaintiff alleges State Farm breached the Policy

when it failed to pay "the amount of the estimate created by Stuttgart" and failed to pay

"devaluation of the subject vehicle".  (Compl. at ¶ 14-15).

There exists <u>no</u> obligation in the Policy for State Farm to pay the full amount of any

estimate for the vehicle, such as the one prepared by Stuttgart.  In this regard, the Complaint is

silent as to *any* terms or provisions in the Policy (or Florida law for that matter) that were

purportedly breached by State Farm.  A breach of contract claim requires a specific promise or

obligation that was not performed by the defendant. *See, e.g., Abbott Laboratories,* 765 So. 2d at

737.  Neither Plaintiff, nor the Court, is permitted to extend State Farm's liability to an obligation

it has not expressly assumed in the contract. *See, e.g., Ideal Mut. Ins. Co. v. C.D.I. Const., Inc.*, 640 F. 2d 654 (Fla. 5th DCA 1981) (recognizing the parties' intent must be discerned from the four corners of the insurance Policy and the contract language itself is the best evidence of the parties' intent); *South Carolina Ins. Co. v. Heuer*, 402 So. 2d 480, 481 (Fla. 4th DCA 1981) ("Particularly with respect to insurance policies, a court needs to view the contract provisions in light of the character of the risks assumed by the insurer."); *see also O'Conner v. Safeco Ins. Co. of North America*, 352 So. 2d 1255 (Fla. 1st DCA 1977).

The Policy in this case contains a specific Limit of Liability provision that governs the payment obligations of State Farm as follows:

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:
   a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.
      1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:
         a) The cost agreed to by both the owner of the *covered vehicle* and *us*; or
         b) A bid or repair estimate approved by *us*; or
         c) A repair estimate that is written based upon or adjusted to:
            i. The prevailing competitive price;
            ii. The lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or
            iii. A combination of (i) and (ii) above.

Policy, pg. 32 (emphasis in original).  Plaintiff here has failed to allege a breach of any term of the Policy.

Because no breach of contract claim exists for a duty manufactured by a litigant, and because Plaintiff has not alleged a breach of any contractual provision, duty, or obligation set forth

in the subject Policy, Plaintiff has failed to state a cause of action for breach of contract the Complaint should be dismissed.

Additionally, Plaintiff's claim for "devaluation" of the vehicle is not covered under the Policy.  Florida law prohibits an insured, such as Plaintiff, from seeking extra-contractual damages like "devaluation" in a first-party breach of insurance contract action against an insurer.  *See Citizens Prop. Ins. Corp. v. Manor House, LLC*, 313 So. 3d 579, 582 (Fla. 2021) ("we conclude that extra-contractual, consequential damages are not available in a first-party breach of insurance contract action because the contractual amount due to the insured is the amount owed pursuant to the express terms and conditions of the policy."), *reh'g denied*, 2021 WL 1027485 (Fla. Mar. 17, 2021); *Smith v. Superior Ins. Co*., 802 So.2d 424 (Fla. 2d DCA 2001) (inherent diminished value of insured's vehicle was not expressly covered under the policy and could not be recovered in a first party claim).  Here, the Policy does not provide coverage for "devaluation" of Plaintiff's vehicle and therefore State Farm's failure to pay it cannot form the basis of any breach of the Policy.

## CONCLUSION

WHEREFORE State Farm respectfully requests the Court enter an Order dismissing the case, awarding State Farm its attorney's fees and costs in connection with the defense of this action, and granting State Farm such other relief as is just and proper.

Dated: September 21, 2022

Respectfully submitted,

*/s/ Johanna W. Clark*
Johanna W. Clark
Florida Bar No.  196400
Christopher M. Paolini
Florida Bar No. 669199
CARLTON FIELDS, P.A.

200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:        (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: cpaolini@carltonfields.com (primary)
Email: atokarz@carltonfields.com (secondary)
Email: dmonge@carltonfields.com (secondary)
*Attorneys for Defendant, State Farm Mutual*
*Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 21, 2022, the foregoing was electronically filed

through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a

service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com


*/s/ Johanna W. Clark*
Johanna W. Clark

# EXHIBIT A



# Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number J53 4643-B02-59B including any endorsements, if applicable, for the policy term(s) 04/19/2022 to 06/06/2022 and insuring SASSON, ASSAF & ADA L based on available records.

It is State Farm's business practice to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs. Therefore, the included Declarations Page which was in effect at the time of loss will indicate the policy period of the last policy issuance transaction.

The policy was in effect on the loss date of 05/27/2022.

Jessica Bass
Underwriter
Date: 09/13/2022



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

State Farm®
**Car Policy**
Booklet

**Florida**
Policy Form 9810A

# CONTENTS

**THIS POLICY** .................................... 3

**DEFINITIONS** .................................... 4

**LIABILITY COVERAGE (Bodily Injury and Property Damage)** .................................... 6

    Additional Definition ........................................ 6

    Insuring Agreement ......................................... 7

    Supplementary Payments .................................. 7

    Limits ............................................................... 7

    Nonduplication.................................................. 8

    Exclusions ........................................................ 8

    If Other Liability Coverage Applies.................. 9

    Required Out-of-State Liability Coverage ....... 10

    Financial Responsibility Certification ............. 10

**PROPERTY DAMAGE LIABILITY COVERAGE** .................................... 10

    Additional Definition ...................................... 10

    Insuring Agreement ......................................... 11

    Supplementary Payments ................................. 11

    Limit ............................................................... 11

    Exclusions ...................................................... 12

    If Other Property Damage Liability Coverage Applies ............................................ 13

    Required Out-of-State Liability Coverage ....... 14

    Financial Responsibility Certification ............. 14

**NO-FAULT COVERAGE** ................................ 14

    Additional Definition ...................................... 14

    Insuring Agreement ......................................... 14

    Limits ............................................................. 15

    Application of Any Deductible and Workers' Compensation Offset ...................................... 17

    Partial Payment or Rejection of a Claim.......... 17

    Nonduplication ............................................... 17

    Exclusions....................................................... 17

    If Other No-Fault Coverage Applies................ 18

    Our Payment Options ...................................... 18

**MEDICAL PAYMENTS COVERAGE** ........... 18

    Additional Definition ...................................... 18

    Insuring Agreement ......................................... 19

    Determining Medical Expenses ....................... 20

    Limits ............................................................. 20

    Nonduplication................................................ 21

    Exclusions....................................................... 21

    If Other Medical Payments Coverage or Similar Vehicle Insurance Applies ................. 23

    Our Payment Options...................................... 24

**UNINSURED MOTOR VEHICLE COVERAGE (Stacking)** ....................................24

    Additional Definitions......................................24

    Insuring Agreement .........................................25

    Consent to Settlement......................................25

    Deciding Fault and Amount.............................25

    Limits .............................................................25

    Nonduplication ...............................................26

    Exclusions.......................................................26

    If Other Uninsured Motor Vehicle Coverage Applies ...........................................26

    Our Payment Options ......................................26

**UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking)**....................................27

    Additional Definitions......................................27

    Insuring Agreement .........................................27

    Consent to Settlement......................................27

    Deciding Fault and Amount .............................28

    Limits .............................................................28

    Nonduplication ...............................................28

    Exclusions.......................................................28

    If Other Uninsured Motor Vehicle Coverage Applies ...........................................29

    Our Payment Options ......................................30

**PHYSICAL DAMAGE COVERAGES** ...........30

    Additional Definitions......................................30

    Insuring Agreements .......................................31

    Supplementary Payments – Comprehensive Coverage and Collision Coverage....................32

    Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage ....................32

    Limits – Car Rental and Travel Expenses Coverage .........................................................33

    Nonduplication ...............................................34

    Exclusions.......................................................34

    If Other Physical Damage Coverage or Similar Coverage Applies.................................35

    Financed Vehicle ............................................36

    Our Payment Options ......................................36

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE** ...................... 36

Additional Definition ........................................ 36
Insuring Agreement ........................................ 36
Benefit ............................................................ 36
Exclusions ........................................................ 37
Our Payment Options ...................................... 38

**INSURED'S DUTIES** .................................... 38

Insured's Duty at the Time of an Accident or Loss ............................................................ 38
Notice to Us of an Accident or Loss ............... 38
Notice to Us of a Claim or Lawsuit ................ 38
Insured's Duty to Cooperate With Us ............. 38
Questioning Under Oath .................................. 38
Other Duties Under the Physical Damage Coverages ......................................... 39
Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage .............................. 39

**GENERAL TERMS** ........................................ 40

When Coverage Applies ................................... 40
Where Coverage Applies .................................. 40
Limited Coverage in Mexico ............................ 40
Persons Acting On Our Behalf ........................ 41
Newly Owned or Newly Leased Car ................ 42
Changes to This Policy .................................... 42
Premium .......................................................... 42
Renewal ........................................................... 43
Nonrenewal ..................................................... 43
Cancellation ..................................................... 43
Assignment ...................................................... 44
Bankruptcy or Insolvency of the Insured ........ 44
Concealment or Fraud ..................................... 44
Our Right to Recover Our Payments ............... 45
Mediation ........................................................ 45
Arbitration ....................................................... 46
Legal Action Against Us .................................. 46
Choice of Law ................................................. 48
Severability ...................................................... 48

## THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSEMENTS" on the Declarations Page, in reliance on the following statements:

      (1) *You* are the sole owner of *your car*.

   (2) Neither *you* nor any member of *your* household has, within the past three years, had either:

      (a) a license to drive; or

      (b) a vehicle registration

      suspended, revoked, or refused.

   (3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:

   a. the statements in 3.b. above are made by such named insured or applicant and are true; and

   b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow:

   a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

   b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary.

Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

# DEFINITIONS

**We** define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

**Bodily Injury** means bodily injury to a **person** and sickness, disease, or death that results from it.

**Car** means a land motor vehicle with four or more wheels, designed for use primarily on public roads. **Car** does not include:

1.  Any vehicle while located for use as a dwelling or other premises; or

2.  A truck-tractor designed to pull any type of trailer.

**Car Business** means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

**Emergency Medical Condition** means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

1.  Serious jeopardy to patient health;

2.  Serious impairment to bodily functions; or

3.  Serious dysfunction of any bodily organ or part.

**Fungi** means any type or form of fungus or fungi and includes:

1.  Mold;

2.  Mildew; and

3.  Any of the following that are produced or released by fungi:

    a.  Mycotoxins;

    b.  Spores;

    c.  Scents; or

    d.  Byproducts.

**Medical Expenses** means **reasonable charges** incurred for **medically necessary** medical, surgical, X-ray, dental, and rehabilitative services, including **medically necessary** prosthetic devices and **medically necessary** ambulance, hospital, and nursing services.

**Medical Expenses** do not include any:

1.  massage as defined in s. 480.033, Florida Statutes;

2.  acupuncture as defined in s. 457.102, Florida Statutes;

3.  services, care, treatment, or supplies provided by any massage therapist; or

4.  services, care, treatment, or supplies provided by any acupuncturist.

**Medically Necessary** means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

1.  in accordance with generally accepted standards of medical practice;

2.  clinically appropriate in terms of type, frequency, extent, site, and duration; and

3.  not primarily for the convenience of the patient, physician, or other healthcare provider.

**Motor Vehicle** means a vehicle with four or more wheels that:

1.  is self-propelled and is of a type:

    a.  designed for; and

    b.  required to be licensed for use on Florida highways; or

2.  is a trailer or semitrailer designed for use with a vehicle described in 1. above.

**Motor Vehicle** does not include:

1.  a mobile home; or

2.  any motor vehicle which is:

    a.  used in mass transit, other than public school transportation;

    b.  designed to transport more than five passengers, exclusive of the operator; and

c.  *owned by* a municipality, a transit authority, or a political subdivision of the state.

***Newly Acquired Car*** means a *car* newly *owned by you*. A *car* ceases to be a *newly acquired car* on the earlier of:

1.  the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

2.  the end of the 14th calendar day immediately following the date the *car* is delivered to *you*.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you*.

***No-Fault Act*** means the Florida Motor Vehicle No-Fault Law and any amendments.

***Non-Owned Car*** means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1.  is *owned by*:
    a.  *you*;
    b.  any *resident relative*;
    c.  any other *person* who resides primarily in *your* household; or
    d.  an employer of any *person* described in a., b., or c. above; nor

2.  has been operated by, rented by, or in the possession of:
    a.  *you*; or
    b.  any *resident relative*

    during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

***Occupying*** means in, on, entering, or exiting.

***Our*** means the Company issuing this policy as shown on the Declarations Page.

***Owned By*** means:

1.  owned by;
2.  registered to; or
3.  leased, if the lease is written for a period of 6 months or more, to.

***Pedestrian*** means a *person* who is not *occupying*:

1.  a motor vehicle; or

2.  a vehicle designed to be pulled by a motor vehicle.

***Person*** means a human being.

***Private Passenger Car*** means:

1.  a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or

2.  a pickup truck, van, minivan, or sport utility vehicle:
    a.  while not used for:
        (1)  wholesale; or
        (2)  retail

        pickup or delivery; and
    b.  that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

***Reasonable Charge***, which includes reasonable expense, means an amount determined by *us* to be reasonable in accordance with the *No-Fault Act*, considering one or more of the following:

1.  usual and customary charges;
2.  payments accepted by the provider;
3.  reimbursement levels in the community;
4.  various federal and state medical fee schedules applicable to *motor vehicle* and other insurance coverages;
5.  the schedule of maximum charges in the *No-Fault Act*,
6.  other information relevant to the reasonableness of the charge for the service, treatment, or supply; or
7.  Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, if the coding policy or payment methodology does not constitute a utilization limit.

***Relative*** means a relative of any degree by blood or marriage who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

***Resident Relative*** means a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

1.  related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

*State Farm Companies* means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

*Temporary Substitute Car* means a *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

*Trailer* means:

1. a trailer:

   a. designed to be pulled by a *private passenger car*;

b. not designed to carry *persons*; and

c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a *car*.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person*, then "*you*" or "*your*" includes the spouse of the first *person* shown as a named insured if the spouse resides primarily with that named insured.

*Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask *us* to replace it with a *car* newly *owned by you*, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly *owned by you* is delivered to *you*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.

## LIABILITY COVERAGE (Bodily Injury and Property Damage)

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:

   a. the ownership, maintenance, or use of:

      (1) *your car*;

      (2) a *newly acquired car*; or

      (3) a *trailer*; and

   b. the maintenance or use of:

      (1) a *non-owned car*; or

      (2) a *temporary substitute car*;

2. the first *person* shown as a named insured on the Declarations Page and that named insured's

spouse who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household, but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

3. any other *person* for his or her use of:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used with *your* express or implied permission; and

4. any other **person** or organization vicariously liable for the use of a vehicle by an **insured** as defined in 1., 2., or 3. above, but only for such vicarious liability.  This provision applies only if the vehicle is neither **owned by**, nor hired by, that other **person** or organization.

**Insured** does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. **We** will pay damages an **insured** becomes legally liable to pay because of:

   a. **bodily injury** to others; and

   b. damage to property

   caused by an accident that involves a vehicle for which that **insured** is provided Liability Coverage by this policy.

2. **We** have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an **insured** in any claim or lawsuit, with attorneys chosen by **us**; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

**We** will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by **us** to defend an **insured** who is sued for such damages. **We** have no duty to pay attorney fees incurred after **we** deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2. Court costs awarded by the court against an **insured** and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which **we** defend an **insured** with attorneys chosen by **us**.

   **We** have no duty to pay court costs incurred after **we** deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the **insured** is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

   (1) that part of the damages **we** pay; or

   (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   **We** have no duty to pay interest that accrues after **we** deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. **We** also have no duty to pay interest that accrues on any damages paid or payable by a party other than the **insured** or **us**;

4. Premiums for bonds, provided by a company chosen by **us**, required to appeal a decision in a lawsuit against an **insured**. **We** have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after **we** deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an **insured**:

   a. Loss of wages or salary, but not other income, up to $200 for each day an **insured** attends, at **our** request:

   (1) an arbitration;

   (2) a mediation; or

   (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an **insured** at **our** request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an **insured** must be reported to **us** before **we** will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for **bodily injury** are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most **we** will pay for the sum of:

1. all damages resulting from **bodily injury** to any one **person** injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other **persons** as a direct result of that **bodily injury**.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *persons* who sustained damages or emotional distress in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. that have already been paid under Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR *BODILY INJURY* TO:

   a. *YOU*;

   b. *RESIDENT RELATIVES*; AND

   c. ANY OTHER *PERSON* WHO BOTH RESIDES PRIMARILY WITH AN *INSURED* AND WHO:

      (1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR

      (2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees, or if this coverage, of this policy, is used to certify financial responsibility;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

7. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*;

   b. any *resident relative*; or

   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

9. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

11. FOR DAMAGE TO PROPERTY WHILE IT IS:

    a. *OWNED BY*;

    b. RENTED TO;

    c. USED BY;

    d. IN THE CARE OF; OR

    e. TRANSPORTED BY

*YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE.  This exclusion does not apply to damage to a:

a.  motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b.  residence while rented to or leased to an *insured*; or

c.  private garage while rented to or leased to an *insured*;

12.  FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

13.  WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14.  FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a.  OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILLCLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b.  ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR

15.  WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1.  If liability coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

a.  the liability coverage limits of such policies will not be added together to determine the most that may be paid; and

b.  the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies.  *We* may choose one or more policies from which to make payment.

2.  The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

a.  If:

(1)  this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides liability coverage which applies to the accident as primary coverage; and

(2)  liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

b.  If:

(1)  more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides liability coverage which applies to the accident as primary coverage; and

(2)  liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3.  Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a.  If:

(1)  this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides liability coverage which applies to the accident as excess coverage; and

(2)  liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then **we** will pay the proportion of damages payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other liability coverage that apply as excess coverage.

b.  If:

(1)  more than one Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** provides liability coverage which applies to the accident as excess coverage; and

(2)  liability coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

### Required Out-of-State Liability Coverage

If:

1.  an **insured** is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2.  this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

### Financial Responsibility Certification

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PROPERTY DAMAGE LIABILITY COVERAGE

This policy provides Property Damage Liability Coverage if "B" is shown under "SYMBOLS" on the Declarations Page.

### Additional Definition

**Insured** means:

1.  **you** and **resident relatives** for:

a.  the ownership, maintenance, or use of:

(1)  **your car**;

(2)  a **newly acquired car**; or

(3)  a **trailer**; and

b.  the maintenance or use of:

(1)  a **non-owned car**; or

(2)  a **temporary substitute car**;

2.  the first **person** shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a **car** that is **owned by**, or furnished by an employer to, a **person** who resides primarily in **your** household,

but only if such **car** is neither **owned by**, nor furnished by an employer to, the first **person** shown as a named insured on the Declarations Page or that **person's** spouse;

3.  any other **person** for his or her use of:

a.  **your car**;

b.  a **newly acquired car**;

c.  a **temporary substitute car**; or

d.  a **trailer** while attached to a **car** described in a., b., or c. above.

Such vehicle must be used with **your** express or implied permission; and

4.  any other **person** or organization vicariously liable for the use of a vehicle by an **insured** as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither **owned by**, nor hired by, that other **person** or organization.

**Insured** does not include the United States of America or any of its agencies.

10
9810A

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of damage to property caused by an accident that involves a vehicle for which that *insured* is provided Property Damage Liability Coverage by this policy;

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Property Damage Liability Coverage.

3. *We* will only defend an *insured* in a claim or lawsuit for damages payable under this policy's Property Damage Liability Coverage, that are caused by an accident for which that *insured* is provided Property Damage Liability Coverage by this policy. If a claim or lawsuit seeks damages due to both property damage and *bodily injury*, then *we* will only defend the *insured* for property damage, and the *insured* will be required to hire and pay attorneys to defend the *insured* for damages due to *bodily injury*.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Property Damage Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

2. Court costs awarded by the court against an *insured* and resulting from that part of a lawsuit:

   a. that seeks damages payable under this policy's Property Damage Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Property Damage Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Property Damage Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*.

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Property Damage Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Property Damage Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limit**

The Property Damage Liability Coverage limit for damage to property is shown on the Declarations Page under "Property Damage Liability Coverage – Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

The Property Damage Liability Coverage limit is the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES DAMAGE TO PROPERTY;
2. FOR *BODILY INJURY*;
3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;
4. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;
5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;
6. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:
   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;
7. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;
8. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to

the maintenance or use of a *private passenger car*;

9. FOR DAMAGE TO PROPERTY WHILE IT IS:
   a. *OWNED BY*;
   b. RENTED TO;
   c. USED BY;
   d. IN THE CARE OF; OR
   e. TRANSPORTED BY

   *YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:
   a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;
   b. residence while rented to or leased to an *insured*;
   c. private garage while rented to or leased to an *insured*.
10. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;
11. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;
12. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:
   a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (12.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR
13. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Property Damage Liability Coverage Applies**

1. If property damage liability coverage provided by this policy and one or more other Car Policies issued to **you** or any **resident relative** by the **State Farm Companies** apply to the same accident, then:

    a. the property damage liability coverage limits of such policies will not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

2. The Property Damage Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of **your car** or a **trailer** attached to it.

    a. If:

        (1) this is the only Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides property damage liability coverage which applies to the accident as primary coverage; and

        (2) property damage liability coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

        then **we** will pay the proportion of damages payable as primary that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other property damage liability coverage that apply as primary coverage.

    b. If:

        (1) more than one Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** provides property damage liability coverage which applies to the accident as primary coverage; and

        (2) property damage liability coverage provided by one or more sources other than the **State Farm Companies** also

applies as primary coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Property Damage Liability Coverage provided by this policy applies as excess coverage.

    a. If:

        (1) this is the only Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides property damage liability coverage which applies to the accident as excess coverage; and

        (2) property damage liability coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

    then **we** will pay the proportion of damages payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other property damage liability coverage that apply as excess coverage.

    b. If:

        (1) more than one Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** provides property damage liability coverage which applies to the accident as excess coverage; and

        (2) property damage liability coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

    then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## NO-FAULT COVERAGE

This policy provides No-Fault Coverage if "P" with a number beside it is shown under "SYMBOLS" on the Declarations Page. "P" with a number beside it is *your* coverage symbol. Check *your* coverage symbol shown on the Declarations Page with the SCHEDULE in the Limits section. The Income Loss option *you* have selected is shown by *your* coverage symbol.

**Additional Definition**

*Insured* means:

1. named insureds and *relatives*:

   a. while *occupying* a *motor vehicle*;

   b. struck as a *pedestrian* by a *motor vehicle*; or

2. any other *person* while *occupying* or *struck* as a *pedestrian* by:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

**Insuring Agreement**

*We* will pay in accordance with the *No-Fault Act* properly billed and documented *reasonable charges* for *bodily injury* to an *insured* caused by an accident resulting from the ownership, maintenance, or use of a *motor vehicle* as follows:

1. **Medical Expenses**

   *We* will pay 80% of properly billed and documented *medical expenses*, but only if that *insured* receives initial services and care from a provider described in A. below within 14 days

after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

*We* will not pay for any *medical expenses* if that *insured* does not receive initial services and care from a provider described in A. below within 14 days after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

*We* will only pay *medical expenses* for:

A. initial services and care:

   (1) lawfully provided, supervised, ordered or prescribed by:

      (a) a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

      (b) a dentist licensed under chapter 466 of the Florida Statutes; or

      (c) a chiropractic physician licensed under chapter 460 of the Florida Statutes;

   (2) provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

   (3) provided by a *person* or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

B. upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

(1) a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

(2) a dentist licensed under chapter 466 of the Florida Statutes;

(3) a chiropractic physician licensed under chapter 460 of the Florida Statues; or

(4) to the extent permitted by applicable law and under the supervision of a *person* described in (1), (2), or (3) immediately above;

   (a) a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

   (b) an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

C. follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following *persons* or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

   (a) has a medical director licensed under chapter 458, chapter 459,

or chapter 460 of the Florida Statutes;

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

   i. general medicine;

   ii. radiography;

   iii. orthopedic medicine;

   iv. physical medicine;

   v. physical therapy;

   vi. physical rehabilitation;

   vii. prescribing or dispensing outpatient prescription medication; or

   viii. laboratory services.

2. **Income Loss**

*We* will pay, when properly documented, 60% of any loss of gross income and loss of earnings capacity per individual injured *insured* from that *insured's* inability to work that is proximately caused by the injury sustained by that individual *insured*.

3. **Replacement Services Loss**

*We* will pay, when properly documented, *reasonable charges* incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the individual injured *insured* would have performed without income for the benefit of his or her household.

4. **Death Benefits**

*We* will pay $5,000 per deceased individual *insured*.

**Limits**

1. *We* will not pay any charge that the *No-Fault Act* does not require *us* to pay, or the amount of any charge that exceeds the amount the *No-Fault Act* allows to be charged.

2. The most *we* will pay for each injured *insured* as a result of any one accident is $10,000 for all combined **Medical Expenses**, **Income Loss**, and **Replacement Services Loss**, described in the **Insuring Agreement** of this policy's No-Fault Coverage.

15
9810A

The limit for **Medical Expenses** is $10,000 if a physician (excluding a chiropractic physician), a dentist, a physician assistant, or an advanced registered nurse practitioner described in 1.A. or 1.B under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* had an *emergency medical condition*.

The limit for **Medical Expenses** is $2,500 if any healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* did not have an *emergency medical condition*.

*We* will limit payment of **Medical Expenses** described in the **Insuring Agreement** of this policy's No-Fault Coverage to 80% of a properly billed and documented *reasonable charge*, but in no event will *we* pay more than 80% of the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

a.  For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b.  For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c.  For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d.  For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e.  For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f.  For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I)  The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(II)  Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

(III)  The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-subparagraph, then *we* will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided.  Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

3.  *We* will pay a **Death Benefit** of $5,000 per deceased individual *insured*.  **Death Benefits** are in addition to the **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** limit.

4.  SCHEDULE

| Coverage Symbol | Income Loss Benefits Eliminated For Named Insureds | Income Loss Benefits Eliminated For Named Insureds' Dependent *Relatives* |
|---|---|---|
|  |  |  |
| P10 | No | No |
| P14 | Yes | Yes |
| P19 | Yes | No |

**Application of Any Deductible and Workers' Compensation Offset**

1. The deductible amount, if any, is shown on the Declarations Page beside *your* coverage symbol. The deductible amount does not apply to **Death Benefits**.

   The deductible amount applies to:

   a. each named insured if "N" follows the deductible amount; or

   b. each named insured and each dependent *relative* if "N" does not follow the deductible amount.

   Any deductible will be applied to 100% of properly billed and documented **Medical Expenses**, properly documented **Income Loss**, and properly documented **Replacement Services Loss** that are eligible to be paid under this coverage. The deductible will be applied to such expenses and losses upon our receipt of reasonable documented proof of the expenses and losses and the amount of expenses and losses incurred.

2. After any applicable deductible has been applied, *we* will pay the balance of properly billed and documented **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** in accordance with the percentages and limits as described in the section titled **Limits**.

3. *We* will reduce the amount payable as determined in item 2. above by any workers' compensation benefits received for the same loss or expense.

**Partial Payment or Rejection of a Claim**

If *we* pay only a portion of a claim or reject a claim due to an alleged error in the claim, then *we* shall, at the time of the partial payment or rejection, provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the *person* making the claim, at the *person's* option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

In a dispute between the *insured* and *us*, or between an assignee of the *insured's* rights and *us*, upon request, *we* will notify the *insured* or the assignee that the policy limits under this section have been reached within 15 days after the limits have been reached.

**Nonduplication**

*We* will not pay under No-Fault Coverage any benefits:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under other no-fault coverage, any disability benefits law, or similar law; or

3. that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. *BODILY INJURY* TO:

   a. ANY *PEDESTRIAN* NOT A RESIDENT OF FLORIDA; OR

   b. ANY *PERSON* ENTITLED TO NO-FAULT BENEFITS FROM:

      (1) THE OWNER OF A *MOTOR VEHICLE* OTHER THAN A NAMED INSURED; OR

      (2) THAT OWNER'S INSURER.

   This exclusion (1.) does not apply to any named insured or any *relative*;

2. ANY NAMED INSURED OR *RELATIVE* WHO SUSTAINED *BODILY INJURY* WHILE *OCCUPYING* A *MOTOR VEHICLE OWNED BY* THE NAMED INSURED AND NOT INSURED UNDER THIS POLICY;

3. ANY *INSURED PERSON*:

   a. WHOSE CONDUCT CONTRIBUTED TO HIS OR HER *BODILY INJURY* UNDER ANY OF THE FOLLOWING CIRCUMSTANCES:

      (1) CAUSING *BODILY INJURY* TO HIMSELF OR HERSELF INTENTIONALLY; OR

      (2) WHILE COMMITTING A FELONY;

   b. WHOSE *BODILY INJURY* OCCURRED WHILE:

(1) DRIVING ***YOUR CAR*** OR A ***NEW-LY ACQUIRED CAR*** WITHOUT ***YOUR*** PERMISSION; OR

(2) ***OCCUPYING*** A ***MOTOR VEHICLE*** LOCATED FOR USE AS A DWELL-ING OR PREMISES;

c.   WHO OWNS A ***MOTOR VEHICLE*** SUB-JECT TO THE ***NO-FAULT ACT.*** This ex-clusion (3.c.) does not apply to:

(1) any named insured;

(2) the spouse of any named insured; and

(3) any ***relative*** while ***occupying your car*** if the accident occurs outside Florida; OR

d.   WHO REFUSES TO:

(1) SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAM-INATION UNDER OATH; OR

(2) PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

4.   INCOME LOSS WHEN THE SCHEDULE SHOWS INCOME LOSS BENEFITS ARE ELIMINATED UNDER ***YOUR*** COVERAGE SYMBOL;

5.   ANY MASSAGE AS DEFINED IN S. 480.033, FLORIDA STATUTES, OR ACU-PUNCTURE AS DEFINED IN S. 457.102, FLORIDA STATUTES, REGARDLESS OF THE ***PERSON*** OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

6.   ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other No-Fault Coverage Applies**

1.   If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any ***relative*** by the ***State Farm Companies*** apply to the same ***bodily injury***, then:

a.   the No-Fault Coverage limits of such poli-cies shall not be added together to deter-mine the most that may be paid; and

b.   the maximum amount that may be paid from all such policies combined is the single high-est applicable limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment.

2.   If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any ***relative*** by one or more sources other than the ***State Farm Com-panies*** apply to the same ***bodily injury***, then:

a.   the No-Fault Coverage limits of such poli-cies shall not be added together to deter-mine the most that may be paid;

b.   the maximum amount that may be paid from all such policies combined is the single high-est applicable limit provided by any one of the policies, subject to ***our*** pro rata share of the highest applicable limit provided by any one of the policies; and

c.   ***we*** are entitled to recover from each insur-er that is liable to pay no-fault coverage benefits to or for the ***insured*** who sus-tained ***bodily injury***, an equitable pro rata share of benefits paid and expenses in-curred in processing the claim.

**Our Payment Options**

***We*** may, at ***our*** option, make payment to one or more of the following:

1.   The ***insured***;

2.   The ***insured's*** surviving spouse;

3.   A parent or guardian of the ***insured***, if the ***insured*** is a minor or an incompetent ***person***;

4.   A ***person*** authorized by law to receive such pay-ment;

5.   Any ***person*** or organization that provides the medical services or funeral services; or

6.   Any ***person*** appearing to ***us*** to be equitably entitled to receive such payment.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Dec-larations Page.

**Additional Definition**

***Insured*** means named insureds and ***relatives***:

1.   while ***occupying*** a ***motor vehicle***;

2.   through being struck as a ***pedestrian*** by a ***mo-tor vehicle***; or

3.   through being struck as a ***pedestrian*** by a mo-torcycle of a type required to be licensed for use on Florida highways.

**Insuring Agreement**

1.  Medical Payments Coverage is excess over No-Fault Coverage.  The no-fault deductible, if any, is not payable under Medical Payments Coverage.

2.  **We** will pay properly billed and documented **medical expenses** for services and care that are incurred because of **bodily injury** to an **insured** caused by an accident resulting from the ownership, maintenance, or use of a **motor vehicle**, but only:

    a.  if that **insured** receives initial services and care from a provider described in A. below within 14 days after the **motor vehicle** accident that caused **bodily injury** to that **insured**; and

    b.  if such services and care are provided within three years after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

    **We** will not pay for any **medical expenses** if the **insured** does not receive initial services and care from a provider described in A. below within 14 days after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

    **We** will only pay **medical expenses** for:

    A.  initial services and care:

        (1)  lawfully provided, supervised, ordered or prescribed by:

            (a)  a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

            (b)  a dentist licensed under chapter 466 of the Florida Statutes; or

            (c)  a chiropractic physician licensed under chapter 460 of the Florida Statutes;

        (2)  provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

        (3)  provided by a **person** or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

    B.  upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

        (1)  a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

        (2)  a dentist licensed under chapter 466 of the Florida Statutes;

        (3)  a chiropractic physician licensed under chapter 460 of the Florida Statues; or

        (4)  to the extent permitted by applicable law and under the supervision of a **person** described in (1), (2), or (3) immediately above:

            (a)  a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

            (b)  an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

    C.  follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following **persons** or entities:

        (1)  a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

        (2)  an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

        (3)  an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

        (4)  a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

        (5)  a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

            (a)  has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

    i.  general medicine;

    ii.  radiography;

    iii.  orthopedic medicine;

    iv.  physical medicine;

    v.  physical therapy;

    vi.  physical rehabilitation;

    vii.  prescribing or dispensing outpatient prescription medication; or

    viii. laboratory services.

3. *We* will pay funeral expenses incurred for an *insured* who dies within three years immediately following the date of a *motor vehicle* accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

    a.  utilization reviews;

    b.  peer reviews; and

    c.  medical bill reviews

    to determine if the incurred expenses are *reasonable charges* and *medically necessary* for the *bodily injury* sustained.

2. use a medical examination of the *insured* to determine if:

    a.  the *bodily injury* was caused by a *motor vehicle* accident; and

    b.  the expenses incurred are *medically necessary*.

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Limits**

The Medical Payments Coverage limit is dependent upon determination of an *emergency medical condition* and is shown on the Declarations Page.

1. **Emergency Medical Condition**

    a.  The Medical Payments Coverage limit for an *insured* who has been determined to have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if the insured has been determined to have an *emergency medical condition* by a physician, a dentist, a physician assistant, or an advanced registered nurse practitioner described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage regardless of the number of:

        (1) *insureds*;

        (2) claims made;

        (3) vehicles insured; or

        (4) vehicles involved in the accident.

    b.  Subject to the limit shown on the Declarations Page, as described in 1.a. above, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

2. **Not An Emergency Medical Condition**

The Medical Payments Coverage limit for an *insured* who has been determined to not have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Not An Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if the *insured* has been determined to not have an *emergency medical condition* by a healthcare provider described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, regardless of the number of:

    a.  *insureds*;

    b.  claims made;

    c.  vehicles insured; or

    d.  vehicles involved in the accident.

3. In no event will *we* pay more than the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

a. For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

(III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-sub-subparagraph, then *we* will limit reimbursement to the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided.  Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

**Nonduplication**

*We* will not pay under Medical Payments Coverage any damages or expenses:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*; or

2. that have already been paid under No-Fault Coverage or Uninsured Motor Vehicle Coverage of this policy, the no-fault coverage, medical payments coverage, or uninsured motor vehicle coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. UNTIL THE MEDICAL EXPENSE BENEFITS OF ALL NO-FAULT COVERAGE AVAILABLE FROM ALL SOURCES HAVE BEEN EXHAUSTED. This does not apply to the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

2. WHO REFUSES TO:

   a. SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAMINATION UNDER OATH; OR

   b. PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

3. FOR ANY *MEDICAL EXPENSES* THAT ARE NOT PAYABLE UNDER NO-FAULT COVERAGE.  This does not include:

   a. the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

b. *medical expenses* not paid because the medical expense benefits of all no-fault coverage available from all sources have been exhausted;

c. *medical expenses* for *bodily injury* while *occupying* a *non-owned car* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; and

d. *medical expenses* for *bodily injury* sustained through being struck as a *pedestrian* by a:

(1) *motor vehicle* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; or

(2) motorcycle of a type required to be licensed for use on Florida highways;

4. FOR MILEAGE COSTS FOR THE USE OF A PERSONAL VEHICLE;

5. FOR ANY INTEREST CHARGES;

6. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

7. WHO:

a. IS *OCCUPYING* OR THROUGH BEING STRUCK AS A PEDESTRIAN BY A VEHICLE *OWNED BY* ANY NAMED INSURED OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS POLICY; OR

b. AT THE TIME OF THE ACCIDENT OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT* AND IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT*.

This exclusion (7.b.) does not apply to:

(1) any named insured;

(2) the spouse of any named insured; and

(3) any *relative* while *occupying your car*, a *newly acquired car*, a *temporary substitute car*, or a *non-owned car* if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage;

8. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

9. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

a. the use of a *private passenger car* on a share-the-expense basis; or

b. an *insured* while *occupying* a *non-owned car* as a passenger;

10. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

a. any named insured;

b. any *relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

11. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

12. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

13. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

14. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

b. RUNS ON RAILS OR CRAWLER-TREADS;

15. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

16. WHOSE *BODILY INJURY* RESULTS FROM:

a. NUCLEAR REACTION;

b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

17. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*;

22

9810A

18. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (18.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

19. FOR ANY MASSAGE AS DEFINED IN S.480.033, FLORIDA STATUTES, OR ACUPUNCTURE AS DEFINED IN S.457.102, FLORIDA STATUTES, REGARDLESS OF THE *PERSON* OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

20. FOR ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance

which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

   then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

   then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

23
9810A

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment;

5. Any *person* or organization that provides the *medically necessary* services or funeral services; or

6. Any *person* appearing to *us* to be equitably entitled to receive such payment.

## UNINSURED MOTOR VEHICLE COVERAGE
### (Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying*:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a trailer attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* express or implied permission.  Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle and a trailer attached to such land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or

   b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but

   (1) the limits are less than required by the financial responsibility act of the state of Florida;

   (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for *bodily injury* sustained by the *insured*; or

   (3) the entity providing the financial responsibility:

       (a) denies that it provides liability coverage for compensatory damages that result from the accident; or

       (b) is or becomes insolvent; or

2. the owner or driver:

    a. of which could not reasonably have been identified;

    b. remains unknown; and

    c. that causes *bodily injury* to the *insured*.

***Uninsured Motor Vehicle*** does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an ***uninsured motor vehicle*** for ***bodily injury*** sustained by ***you*** or a ***resident relative*** while the vehicle is being operated by a ***person*** other than ***you*** or a ***resident relative***;

2. ***owned by***, rented to, or furnished or available for the regular use of ***you*** or a ***resident relative***;

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1. ***We*** will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from the owner or driver of an ***uninsured motor vehicle***.

2. The ***bodily injury*** for which ***we*** will pay compensatory damages must be:

    a. sustained by an ***insured***;

    b. caused by an accident that involves the operation, maintenance, or use of an ***uninsured motor vehicle***; and

    c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The ***insured*** must inform ***us*** of a settlement offer, if any, proposed by or on behalf of the owner or driver of the ***uninsured motor vehicle***, and the ***insured*** must request ***our*** written consent to accept such settlement offer.

If ***we***:

1. consent in writing, then the ***insured*** may accept such settlement offer.

2. inform the ***insured*** in writing that ***we*** do not consent, then the ***insured*** may not accept such settlement offer and:

    a. ***we*** will make payment to the ***insured*** in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the ***uninsured motor vehicle***; and

    b. any recovery from or on behalf of the owner or driver of the ***uninsured motor vehicle*** shall first be used to repay ***us***.

**Deciding Fault and Amount**

1. The ***insured*** and ***we*** must agree to the answers to the following two questions:

    a. Is the ***insured*** legally entitled to recover compensatory damages from the owner or driver of the ***uninsured motor vehicle***?

    b. If the ***insured*** and ***we*** agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the ***insured*** is legally entitled to recover from the owner or driver of the ***uninsured motor vehicle***?

2. If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation**, **Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most ***we*** will pay for the sum of:

1. all damages resulting from ***bodily injury*** to any one ***insured*** injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other ***insureds*** as a direct result of that ***bodily injury***.

The limit shown under "Each Accident" is the most ***we*** will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from ***bodily injury*** to two or more ***insureds*** who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most ***we*** will pay regardless of the number of:

1. ***insureds***;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

    a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

    b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

    a. have already been paid;

    b. could have been paid; or

    c. could be paid

    to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. TO THE EXTENT IT BENEFITS:

    a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

    b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

    c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

3. FOR PUNITIVE OR EXEMPLARY DAMAGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury* sustained by a *person* other than *you* or any *resident relative*, then:

    a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

    If uninsured motor vehicle coverage is provided on a primary basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage for an *insured* who sustains *bodily injury*.

    If uninsured motor vehicle coverage is provided on an excess basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as excess coverage.

4. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then *we* may choose one or more policies from which to make payment.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## UNINSURED MOTOR VEHICLE COVERAGE
### (Non-Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U3" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying*:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a trailer attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* express or implied permission.  Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., and 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle and a trailer attached to such land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or

   b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but

      (1) the limits are less than required by the financial responsibility act of the state of Florida;

      (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for *bodily injury* sustained by the *insured*; or

      (3) the entity providing the financial responsibility:

         (a) denies that it provides liability coverage for compensatory damages that result from the accident; or

         (b) is or becomes insolvent; or

2. the owner or driver:

   a. of which could not reasonably have been identified;

   b. remains unknown; and

c. that causes *bodily injury* to the *insured*.

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy.  However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

2. *owned by*, rented to, or  furnished or available for the regular use of *you* or a *resident relative*;

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1. *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*.

2. The *bodily injury* for which *we* will pay compensatory damages must be:

   a. sustained by an *insured*;

   b. caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*; and

   c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

27
9810A

a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1. The *insured* and *we* must agree to the answers to the following two questions:

   a. Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

   b. If the *insured* and *we* agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

2. If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation**, **Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from *bodily injury* to any one *insured* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *insureds* as a direct result of that *bodily injury*.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *insureds* who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

   a. WHILE *OCCUPYING* A VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

   b. THROUGH BEING STRUCK BY A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*.

   This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* or through being struck by a motor vehicle not *owned by* one or both of them;

3. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW,

DISABILITY BENEFITS LAW, OR SIM-ILAR LAW; OR

c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

4. FOR PUNITIVE OR EXEMPLARY DAM-AGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

(2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

    a. being driven by an *insured*; or

    b. in the custody of an *insured* if at the time of the *loss* it is:

      (1) not being driven; or

      (2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*;

6. a *non-owned trailer* while it is being used by an *insured*; and

7. a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily Rental Charge* means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle*.  *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or

2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

    a. an *insured*;

    b. any other *person* who resides primarily in *your* household; or

    c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

    a. an *insured*;

b. any other *person* who resides primarily in *your* household; or

c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

1. **Comprehensive Coverage**

   a. *We* will pay for *loss*, except *loss caused by collision*, to a *covered vehicle*.

   b. *We* will pay transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:

   (1) during the period that:

   (a) starts on the date *you* report the theft to *us*; and

   (b) ends on the earliest of:

   (i) the date the vehicle is returned to *your* possession in a drivable condition;

   (ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

   (iii) the date *we* offer to pay for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

   (2) during the period that:

   (a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

   (b) ends on the date the vehicle is repaired.

   These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

   c. The deductible does not apply to damage to the windshield of any *covered vehicle*.

2. **Collision Coverage**

   *We* will pay for *loss caused by collision* to a *covered vehicle*.

3. **Emergency Road Service Coverage**

   *We* will pay the fair cost incurred by an *insured* for:

a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**

   a. **Car Rental Expense**

   *We* will pay the *daily rental charge* incurred when an *insured* rents a *car* from a *car business* while *your car* or a *newly acquired car* is:

   (1) not drivable; or

   (2) being repaired

   as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

   *We* will pay this *daily rental charge* incurred during a period that:

   (1) starts on the date:

   (a) the vehicle is not drivable as a result of the *loss*; or

   (b) the vehicle is left at a repair facility if the vehicle is drivable; and

   (2) ends on the earliest of:

   (a) the date the vehicle has been repaired or replaced;

   (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

   (c) seven days after *we* offer to pay for the *loss* if the vehicle is:

   (i) a total loss as determined by *us*; or

   (ii) stolen and not recovered.

   The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

31
9810A

b. **Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

(a) starts after the *loss* occurs; and

(b) ends on the earlier of:

(i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

(ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive coverage deductible or collision coverage deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or

the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.

(1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

(a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

(b) A bid or repair estimate approved by *us*; or

(c) A repair estimate that is written based upon or adjusted to:

(i) the prevailing competitive price;

(ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a

survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

(4) If *you* and *we* agree, then windshield glass will be repaired instead of replaced;

b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by mediation or appraisal. Either the owner or *we* may request mediation or appraisal.

(2) Mediation will follow the rules outlined in this policy, found under **Mediation**, in the section titled **GENERAL TERMS**.

(3) Appraisal will follow the rules and procedures as listed below:

(a) The owner and *we* will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

(f) *We* do not waive any of *our* rights by submitting to an appraisal.

(4) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. **Car Rental Expense**

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

(1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount; or

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

33
9810A

b.  Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2.  **Travel Expenses**

The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3.  **Rental Car – Repayment of Deductible Expense**

The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1.  ANY *COVERED VEHICLE* THAT IS:

a.  INTENTIONALLY DAMAGED; OR

b.  STOLEN

BY OR AT THE DIRECTION OF AN *INSURED*;

2.  ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3.  ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4.  ANY *COVERED VEHICLE* DUE TO:

a.  THEFT;

b.  CONVERSION;

c.  EMBEZZLEMENT; OR

d.  SECRETION

BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5.  *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6.  ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7.  *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8.  *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

a.  NUCLEAR REACTION;

b.  RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c.  THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9.  *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10.  *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11.  *YOUR CAR* WHILE SUBJECT TO ANY:

a.  LIEN AGREEMENT;

b.  RENTAL AGREEMENT;

c.  LEASE AGREEMENT; OR

d.  SALES AGREEMENT

NOT SHOWN ON THE DECLARATIONS PAGE;

12.  ANY *NON-OWNED CAR* WHILE IT IS:

a.  BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

b.  USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13.  ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

a.  FAILS OR IS DEFECTIVE; OR

b.  IS DAMAGED AS A DIRECT RESULT OF:

(1) WEAR AND TEAR;

(2) FREEZING; OR

(3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

a. THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE* IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b. *OWNED BY* AN *INSURED*; AND

c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

35
9810A

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

      (1) *You*;

      (2) The repairer; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

      (1) *You*;

      (2) The owner of such vehicle;

      (3) The repairer; or

      (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;

   b. The *insured* who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

**Insuring Agreement**

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1. dies; or

2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

### Death, Dismemberment and
### Loss of Sight Benefits Schedules

If the amount shown on the Declarations Page for the **insured** is $5,000, then **we** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

If the amount shown on the Declarations Page for the **insured** is $10,000, then **we** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

**Exclusions**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN **INSURED**:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A **CAR BUSINESS**;

2. WHILE **OCCUPYING**, LOADING, OR UN-LOADING:

   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

   b. A VEHICLE, OTHER THAN AN EMER-GENCY VEHICLE, WHILE USED IN THE:

      (1) **INSURED'S** BUSINESS; OR

      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A **CAR BUSINESS**.

      This exclusion (2.b.) does not apply if the vehicle is a **private passenger car**;

   c. A MILITARY VEHICLE; OR

   d. A VEHICLE WHILE IT IS:

      (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CON-TEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

      (2) ON A TRACK DESIGNED PRIMARI-LY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

3. WHILE **OCCUPYING**, LOADING, UN-LOADING, OR WHO IS STRUCK AS A **PE-DESTRIAN** BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. A MOTOR VEHICLE THAT IS DE-SIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LO-CATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, AND LOSS OF SIGHT THAT RESULTS FROM:

   a. WAR OF ANY KIND;

   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINA-TION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

   c. EXPOSURE TO **FUNGI**;

   d. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE **IN-SURED** WAS SANE OR INSANE; OR

   e. DISEASE except pus-forming infection due to **bodily injury** sustained in the ac-cident.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1.  The *insured*;

2.  The *insured's* surviving spouse;

3.  A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4.  A *person* or organization authorized by law to receive such payment.

# INSURED'S DUTIES

1.  **Insured's Duty at the Time of an Accident or Loss**

    The *insured* must make a reasonable effort to identify:

    a.  the owners, operators, and passengers of the vehicles involved in the accident or *loss*;

    b.  the *person* or *persons* involved in the accident or *loss*; and

    c.  the potential witnesses to the accident or *loss*.

2.  **Notice to Us of an Accident or Loss**

    The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible.  The notice must give *us*:

    a.  *your* name;

    b.  the names and addresses of all *persons* involved in the accident or *loss*;

    c.  the hour, date, place, and facts of the accident or *loss*; and

    d.  the names and addresses of witnesses to the accident or *loss*.

3.  **Notice to Us of a Claim or Lawsuit**

    a.  If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

    b.  If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

4.  **Insured's Duty to Cooperate With Us**

    a.  The *insured* must cooperate with *us* and, when asked, assist *us* in:

        (1)  making settlements;

        (2)  securing and giving evidence; and

        (3)  attending, and getting witnesses to attend, depositions, hearings, and trials.

    b.  The *insured* must not, except at his or her own cost, voluntarily:

        (1)  make any payment to others; or

        (2)  assume any obligation to others

unless authorized by the terms of this policy.

    c.  Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

5.  **Questioning Under Oath**

    Under:

    a.  No-Fault Coverage, each *insured* making claim or seeking payment, must, at *our* option:

        (1)  submit to an examination under oath;

        (2)  provide a statement under oath; or

        (3)  do both (1) and (2) above,

    as often as *we* reasonably require.  Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers.  *We* may require each *insured* answering questions under oath to answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

    The scope of the questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information.  Compliance with **Questioning Under Oath** is a condition precedent to receiving benefits.

    b.  all other coverages, each *insured* making claim or seeking payment, must, at *our* option:

        (1)  submit to an examination under oath;

        (2)  provide a statement under oath; or

        (3)  do both (1) and (2) above,

    as often as *we* reasonably require.  Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers.  *We* may require each *insured* answering questions under oath to

answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

6. **Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft or vandalism;

c. allow *us* to:

(1) inspect any damaged property before its repair or disposal;

(2) test any part or equipment before that part or equipment is removed or repaired; and

(3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

(1) records;

(2) receipts; and

(3) invoices

that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

7. **Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage**, and **Death, Dismemberment and Loss of Sight Coverage**

An *insured* making claim under:

a. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

(2) submit to be examined as often as *we* may reasonably require by physicians chosen and paid by *us*. A copy of the

report will be sent to the *person* upon written request.

(a) Under No-Fault Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are no longer liable for subsequent benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations raises a rebuttable presumption that the *insured's* refusal or failure was unreasonable;

(b) Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are not liable for coverage benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations will be considered unreasonable;

(3) provide written authorization for *us* to obtain:

(a) medical bills;

(b) medical records;

(c) wage, salary, and employment information; and

(d) any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

(4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. No-Fault Coverage or Medical Payments Coverage must, at *our* request, submit documentation from the appropriate healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage, or described in

2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, confirming whether the injured *insured* had, or did not have, an *emergency medical condition*;

c. No-Fault Coverage and Uninsured Motor Vehicle Coverage must send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

d. Uninsured Motor Vehicle Coverage must report an accident, involving a motor vehicle whose owner or driver remains unknown, to the police within 24 hours or as soon as reasonably practicable, and to *us* within 30 days.

## GENERAL TERMS

1. **When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

2. **Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page.

a. Liability Coverage, Property Damage Liability Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Physical Damage Coverages apply to accidents and *losses* that occur:

(1) in the United States of America and its territories and possessions;

(2) in Canada; and

(3) while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

b. No-Fault Coverage applies to accidental *bodily injury* sustained:

(1) by an *insured* in Florida; and

(2) by *you* and *relatives* outside Florida; but within:

(a) the United States of America, its territories or possessions; or

(b) Canada,

while *occupying your car*, a *newly acquired car*, or a *temporary substitute car*.

c. Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

3. **Limited Coverage in Mexico**

This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

a. **Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

*We* may, in addition to the damages described in item 1 of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at *our* option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

b. **Property Damage Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Property Damage Liability Coverage is changed to read:

*We* may, in addition to the damages described in items 1. and 2. of the **Insuring Agreement** of this policy's Property Damage Liability Coverage, pay or reimburse,

at our option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Property Damage Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

c. **No-Fault Coverage**

The definition of *insured* is changed read:

> *Insured* means named insured and *relatives* while *occupying*:
>
> (1) *your car*;
>
> (2) a *newly acquired car*;
>
> (3) a *temporary substitute car*; or
>
> (4) a *trailer* while attached to a *car* described in (1), (2), or (3) above.

d. **Medical Payments Coverage**

e. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF FLORIDA IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of Florida in the United States of America.

4. **Persons Acting On Our Behalf**

A company employee adjuster, independent adjuster, attorney, investigator, or other *persons* acting on *our* behalf that needs access to an *insured* or claimant or to the insured property that is the subject of a claim must provide at least 48 hours' notice to the *insured* or claimant, public adjuster, or legal representative before scheduling a meeting with the claimant or an onsite inspection of the insured property. The *insured* or claimant may deny access to the property if the notice has not been provided. The *insured* or claimant may waive the 48-hour notice.

A public adjuster must ensure prompt notice of property loss claims submitted to *us* by or through a public adjuster or on which a public adjuster represents the *insured* at the time the claim or notice of loss is submitted to *us*. The public adjuster must ensure that notice is given to *us*, the public adjuster's contract is provided to *us*, the property is available for inspection of the loss or damage by *us*, and *we* are given an opportunity to interview the *insured* directly about the loss and claim. *We* must be allowed to obtain necessary information to investigate and respond to the claim.

*We* may not exclude the public adjuster from its in-person meetings with the *insured*. *We* shall meet or communicate with the public adjuster in an effort to reach agreement as to the scope of the covered loss under the insurance policy. This section does not impair the terms and conditions of the insurance policy in effect at the time the claim is filed.

A public adjuster may not restrict or prevent *us*, company employee adjuster, independent adjuster, attorney, investigator, or other *person* acting on *our* behalf from having reasonable access at reasonable times to an *insured* or claimant or to the insured property that is the subject of a claim.

A public adjuster may not act or fail to reasonably act in any manner that obstructs or prevents *us* or *our* adjuster from timely conducting an inspection of any part of the insured property for which there is a claim for loss or damage. The public adjuster representing the *insured* may be present for *our* inspection, but if the unavailability of the public adjuster otherwise delays *our* timely inspection of the property, the public adjuster or the *insured* must allow *us* to have access to the property without the participation or presence of the public adjuster or *insured* in order to facilitate *our* prompt inspection of the loss or damage.

5. **Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

6. **Changes to This Policy**

a. **Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Florida without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

b. **Change of Interest**

(1) No change of interest in this policy is effective unless *we* consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured shown on the Declarations Page

dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

c. **Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

d. **Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

(1) *you*; or

(2) the United States Postal Service.

7. **Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon:

(1) the purchase of other products or services from the *State Farm Companies*;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of

any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which **you** are a member, employee, subscriber, licensee, or franchisee.

d. The premium for this policy is based upon information **we** have received from **you** or other sources. **You** must inform **us** if any information regarding the following is incorrect or incomplete, or changes during the policy period, and **you** must answer questions **we** ask regarding the following:

(1) **Your car**, or its use, including annual mileage;

(2) The **persons** who regularly drive **your car**, including newly licensed family members;

(3) **Your** marital status; or

(4) The location where **your car** is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to **us** when **we** ask, then **we** may decrease or increase the premium during the policy period. If **we** decrease the premium during the policy period, then **we** will provide a refund or a credit in the amount of the decrease. If **we** increase the premium during the policy period, then **you** must pay the amount of the increase.

8. **Renewal**

**We** agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless **we** mail or deliver a nonrenewal notice or a cancellation notice as set forth in 9. and 10. below.

9. **Nonrenewal**

If **we** decide not to renew this policy, then, at least 45 days before the end of the current policy period, **we** will mail or deliver a nonrenewal notice to the most recent policy address that **we** have on record for the first named insured who is shown on the Declarations Page.

10. **Cancellation**

a. **How You May Cancel**

(1) **You** may cancel this policy by providing to **us** advance notice of the date cancellation is effective. **We** may confirm the cancellation in writing.

(2) However, if the policy provides Liability Coverage or Property Damage Liability Coverage and No-Fault Coverage, **you** may not cancel **your** policy during the first two months immediately following the policy effective date unless:

(a) **your car** has been totally destroyed;

(b) **you** have transferred ownership of **your car**;

(c) **you** have purchased another policy covering **your car**; or

(d) **you** are a member of the United States Armed Forces and have been called to or are on active duty outside the United States in an emergency situation.

b. **How and When We May Cancel**

(1) **We** may cancel this policy by mailing or delivering a written notice to the most recent policy address that **we** have on record for the first named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

(2) Except as provided under **Cancellation Due to Incorrect Premium**, the date cancellation is effective will be at least:

(a) 10 days after the date **we** mail or deliver the cancellation notice, if the cancellation is because the premium was not paid when due; or

(b) 45 days after **we** mail or deliver the cancellation notice, if the cancellation is because of any other reason.

(3) If **we** cancel this policy for nonpayment of premium during the first 60 days immediately following the effective date of this policy, **we** will do so only if a check used to pay the premium is dishonored for any reason or any other type of premium payment was subsequently determined to be rejected or invalid.

(4) After this policy has been in force for more than 59 days, **we** will not cancel this policy before the end of the current policy period unless it is based on one or more of the following reasons:

(a) Nonpayment of premium;

43
9810A

(b) **You**, any **resident relative**, or any other **person** who usually drives **your car** has had his or her driver's license or motor vehicle registration under suspension or revocation during the policy period or the 180 days immediately preceding its effective date, or if the policy is a renewal, during its policy period; or

(c) Material misrepresentation or fraud.

c. **Cancellation Due to Incorrect Premium**

(1) If **we** determine that **we** have charged **you** an incorrect premium for coverages requested in **your** insurance application, **we** will immediately notify **you** of any additional premium due. **You** may:

(a) maintain **your** policy in force by paying the additional amount due by the date stated in the notice; or

(b) cancel **your** policy by the date stated in the notice and receive a refund of any unearned premium.

(2) If **you** fail to respond by the date stated in the notice **we** will cancel **your** policy. The date cancellation is effective will be at least 14 days after the date **we** mail or deliver the cancellation notice.

d. **Return of Unearned Premium**

(1) If **you** cancel this policy, then premium will be earned on a pro rata basis. **We** may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed to **you** within 30 days after the effective date of the policy cancellation, or 30 days after **we** receive **your** request to cancel this policy, whichever is later.

(2) If **we** cancel this policy, then premium will be earned on a pro rata basis. Any unearned premium will be mailed at the time **we** cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation.

11. **Assignment**

No assignment of benefits or other transfer of rights is binding upon **us** unless approved by **us**. This does not include a post loss assignment of benefits.

12. **Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the **insured** or his or her estate will not relieve **us** of **our** obligations under this policy.

13. **Concealment or Fraud**

a. **Coverages Other Than No-Fault and Medical Payments Coverage**

There is no coverage under this policy for any **person** who, or organization making claim or seeking payment that, has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

b. **No-Fault Coverage and Medical Payments Coverage**

Benefits shall not be due or payable to or on behalf of an **insured person** if that **person** has committed, by material act or omission, any insurance fraud relating to No-Fault Coverage or Medical Payments Coverage under this policy, if the fraud is admitted to in a sworn statement by the **insured** or if it is established in a court of competent jurisdiction. Any insurance fraud shall void all coverage arising from the claim related to such fraud under No-Fault Coverage or Medical Payments Coverage of the **insured person** who committed the fraud, irrespective of whether a portion of the **insured person's** claim may be legitimate, and any benefits paid prior to the discovery of the **insured person's** insurance fraud shall be recoverable by **us**, in their entirety, from the **person** who committed insurance fraud. **We** are entitled to all **our** costs and attorney's fees in any action in which **we** prevail that enforces **our** right of recovery under this provision.

Neither **we** nor the **insured** is required to pay a claim or charges:

(1) for any service or treatment that was not lawful at the time rendered; or

(2) to any **person** who knowingly submits a false or misleading statement relating to the claim or charges.

If **we** have reasonable belief that a fraudulent insurance act (s. 626.989, Florida Statutes, or s. 817.234, Florida Statutes) has been committed, **we** shall notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, **we** have an additional 60 days to

44
9810A

conduct a fraud investigation. Notwithstanding the demand letter conditions under the **Legal Action Against Us** provision of this policy, no later than 90 days after the submission of the claim, *we* must deny the claim or pay the claim with simple interest as provided in d. (2) under the **Legal Action Against Us** provision of this policy. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Insurance Fraud.

14. **Our Right to Recover Our Payments**

Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*. Under all other coverages, the following apply:

a. **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, that is not an *insured*, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(1) doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through *our* representatives when *we* ask.

b. **Reimbursement**

(1) If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(a) hold in trust for *us* the proceeds of any recovery; and

(b) reimburse *us* to the extent of *our* payment.

(2) *We* have a right of reimbursement against the owner or the insurer of the owner of a commercial motor vehicle for *our* payments of No-Fault benefits to any *person* having been an *occupant* of the commercial motor vehicle or having been struck by the commercial motor vehicle as a *pedestrian*.

*Our* right of reimbursement for benefits under No-Fault Coverage does not apply to an owner or registrant of a taxicab as identified in s.627.733(1)(b), Florida Statutes.

15. **Mediation**

The *insured* or *we* may demand mediation of any claim:

a. in an amount of $10,000 or less, resulting from:

1. *bodily injury* under No-Fault Coverage, Medical Payments Coverage, or Uninsured Motor Vehicle Coverages; or

2. death of or loss to an *insured* under Death, Dismemberment and Loss of Sight Coverage; or

b. in any amount, for a *loss* covered under Physical Damage Coverages,

by filing a written request with the Florida Department of Financial Services on a form which may be obtained from the Florida Department of Financial Services. The request must state why mediation is being requested and the issue in dispute.

The Florida Department of Financial Services will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible.

Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosure provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a *person* files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation. Any suit regarding a mediated dispute must be filed as prescribed under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.

16. **Arbitration**

a. The *insured* or *we* may request, in writing, arbitration of any claim. If *you* and *we* agree to arbitrate, then arbitration will follow the procedure outlined below.

(1) The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

(2) The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

(3) Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

(4) The arbitrators shall only decide the answers to the following two questions:

(a) are damages compensatory; and

(b) if damages are compensatory, then what is the amount of compensatory damages.

(5) Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

(6) A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

(a) *us*;

(b) the *insured*;

(c) any assignee of the *insured*; and

(d) any *person* or organization with whom the *insured* expressly or impliedly contracts.

(7) Subject to (1), (2), (3), (4), (5), and (6) above, state court rules governing procedure and admission of evidence will be used.

(8) *We* do not waive any of *our* rights by submitting to arbitration.

b. *We* are not bound by any:

(1) judgment obtained without *our* written consent; or

(2) default judgment against any *person* or organization other than *us*.

c. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

17. **Legal Action Against Us**

a. Legal action may only be brought against *us* within five years immediately following the date of the accident or *loss*.

b. Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy.

c. Under No-Fault Coverage, *we* shall create and maintain for each *insured* a log of No-Fault Coverage benefits *we* have paid on behalf of the *insured*. If litigation is commenced, *we* shall provide to the *insured* a copy of the log within 30 days after receiving a request for the log from the *insured*.

d. In addition, legal action may only be brought against *us* regarding:

(1) Liability Coverage and Property Damage Liability Coverage, after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(a) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(b) agreement between the claimant and *us*.

(2) No-Fault Coverage, if within 30 days after *our* receipt of written notice of an intent to initiate litigation for:

(a) an overdue claim, applicable interest, and a penalty of 10% of the overdue amount that *we* pay, subject to a maximum penalty of $250; or

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice and to pay a penalty of 10%, subject to a maximum penalty of $250, when *we* pay for such future treatment.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

Such notice of intent to initiate litigation may not be sent until the claim is overdue, including any additional time *we* have to pay the claim pursuant to the *No-Fault Act*.

The notice must state that it is a "demand letter under s.627.736" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to *us*; and

iii. to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, any other standard form approved by the Florida Office of Insurance Regulation, or the lost wage statement previously submitted, may be used as the itemized statement. To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website. Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(3) Medical Payments Coverage unless *we* receive written notice of an intent to initiate litigation and if within 30 days after *our* receipt of such for:

(a) a claim, *we* fail to pay the claim; or

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

The notice must state that it is a "demand letter for Medical Payments Coverage" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to us; and

iii. to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, or any other standard form approved by the Florida Office of Insurance Regulation, may be used as the itemized statement. To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website. Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(4) Uninsured Motor Vehicle Coverage if the *insured* or that *insured's* legal representative within five years immediately following the date of the accident:

(a) presents an Uninsured Motor Vehicle Coverage claim to *us*;

(b) files a lawsuit, in a state or federal court that has jurisdiction against *us*;

(c) consents to a jury trial if requested by *us*; and

(d) agrees that *we* may contest the issues of liability and the amount of damages.

*We* are not bound by any judgment obtained without *our* written consent.

*We* are not bound by default judgment against any *person* or organization other than *us*.

Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

18. **Choice of Law**

Without regard to choice of law rules, the law of the state of:

a. Florida will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

19. **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

Policy Form 9810A
©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

**State Farm Mutual Automobile Insurance Company**
PO Box 2358
Bloomington IL 61702-2358

B 75500-4 C

MUTL   V2L

## DECLARATIONS PAGE



NAMED INSURED

AT2                003972 0058
SASSON, ASSAF & ADA L
3385 NE 167TH ST
N MIAMI BEACH FL  33160-3849

59-6825-4 C    A
003972 0058

| POLICY NUMBER    J53 4643-B02-59B |
| POLICY PERIOD APR 19 2022 to AUG 02 2022 |
| 12:01 A.M. Standard Time |

STATE FARM PAYMENT PLAN NUMBER
 1520065519

AGENT

ANTHONY GARCIA
1035 S STATE ROAD 7 STE 311
WELLINGTON, FL 33414-6137

PHONE: (561)793-9822

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

### YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|------|------|-------|-----------|-------------------|-------|
| 2022 | PORSCHE | TAYCAN | 4DR | WP0AA2Y11NSA13378 | 60306010002 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---------|-------------------|----------|
| A | Liability Coverage | $174.50 |
|  | Bodily Injury Limits |  |
|  | Each Person,    Each Accident |  |
|  | $300,000      $300,000 |  |
|  | Property Damage Limit |  |
|  | Each Accident |  |
|  | $100,000 |  |
| P14/$10,00 | $500 Deductible No-Fault Coverage | $55.38 |
|  | Deductible Applies to Each Named Insured and to |  |
|  | Each of Your Dependent Relatives |  |
| D | Comprehensive Coverage - $500 Deductible | $119.03 |
| G | Collision Coverage - $500 Deductible | $203.93 |
| H | Emergency Road Service Coverage | $.54 |
| R1 | Car Rental and Travel Expenses Coverage | $7.84 |
|  | Limit - Car Rental Expense |  |
|  | Each Day,    Each Loss |  |
|  | 80%      $1,000 |  |

| **Total premium for APR 19 2022 to AUG 02 2022.** | **$561.22** | This is not a bill. |

### IMPORTANT MESSAGES

IMPORTANT NOTICE- Under No-Fault Coverage, the only medical expenses we will pay are reasonable medical expenses that are payable under the Florida Motor Vehicle No-Fault Law. The most we will pay for such reasonable medical expenses is 80% of the "schedule of maximum charges" found in the Florida Motor Vehicle No-Fault Law and in the Limits section of the Florida Car Policy's No-Fault Coverage.

Replaced policy number J534643-59A.

**Your total renewal premium for FEB 02 2022 to AUG 02 2022 is $981.13.**

For questions, problems or to obtain information about coverage call: (561)793-9822.

State Farm works hard to offer you the best combination of price, service, and protection.   The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once during your policy term, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

### EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9810A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
CREDITOR- DCU CREDIT UNION, PO BOX 9130, MARLBOROUGH MA 01752-9130.
6128S.1   AMENDATORY ENDORSEMENT:
6910A   AMENDATORY ENDORSEMENT:

Agent:   ANTHONY GARCIA
Telephone:  (561)793-9822
Prepared   JUN 03 2022    6825-C0D

See Reverse Side

ST-8
0102-0406

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary

President

B10

## 6910A AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

### 1. PHYSICAL DAMAGE COVERAGES

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

The following is added:

If there is disagreement as to the cost of repair, replacement, or recalibration of glass, an appraisal will be used as the first step toward resolution. Appraisal will follow the rules and procedures as listed below.

a. The owner and **we** will each select a competent appraiser.

b. The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or **we** may petition a court that has jurisdiction to select the third appraiser.

c. Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

d. The appraisers shall only determine the cost of repair, replacement, and recalibration of glass. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

e. A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the **covered vehicle** and **us**.

f. **We** and **you** do not waive any rights by submitting to an appraisal.

### 2. GENERAL TERMS

a. Item (3) of **How and When We May Cancel**, under **Cancellation**, is changed to read:

If **we** cancel this policy for nonpayment of premium during the first 30 days immediately following the effective date of this policy, **we** will do so only if a check used to pay the premium is dishonored for any reason or any other type of premium payment was subsequently determined to be rejected or invalid.

b. Item a. of **Legal Action Against Us** is changed to read:

Legal action may only be brought against **us** within five years immediately following the date of the accident or **loss**. However, this limitation of action is tolled for a period of 60 days after **we** receive notice from the Florida Department of Financial Services, in accordance with section 624.155, Florida Statutes.

© Copyright, State Farm Mutual Automobile Insurance Company, 2020

6910A

6910A-2020
9.13

**PLEASE ATTACH TO YOUR POLICY BOOKLET**



## 6128S.1 AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

   a. ***Newly Acquired Car*** is changed to read:

      ***Newly Acquired Car*** means a ***car*** newly ***owned by you*** or a ***resident relative***.

      A ***car*** ceases to be a ***newly acquired car*** on the earlier of:

      1. the effective date and time of a policy, including any binder, issued by ***us*** or any other company that describes the ***car*** as an insured vehicle; or

      2. the end of the 14th calendar day immediately following the date the ***car*** is delivered to ***you*** or a ***resident relative***.

      If a ***newly acquired car*** is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that ***newly acquired car***, subject to a deductible of $500.

   b. ***Pedestrian*** is changed to read:

      ***Pedestrian*** means a ***person*** who is not ***occupying***:

      1. a ***motor vehicle***;

      2. a self-propelled vehicle; or

      3. a trailer or other vehicle attached to a self-propelled vehicle.

   c. ***Relative*** is changed to read:

      ***Relative*** means a ***person***, other than ***you***, who is:

      1. related to any named insured in any degree by blood, by marriage, or by adoption and who makes his or her home in the same family unit with that named insured, whether or not temporarily living elsewhere, or

      2. a ward or foster child of any named insured or of a ***person*** described in 1. above and who makes his or her home in the same family unit with that named insured.

2. **LIABILITY COVERAGE (Bodily Injury and Property Damage)**

   a. Item 4. of ***Insured***, under **Additional Definition**, is changed to read:

      ***Insured*** means any other ***person*** or organization vicariously liable for the use of a vehicle by an ***insured*** as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

      a. neither ***owned by***, nor hired by, that other ***person*** or organization; and

      b. neither available for, nor being used for, carrying ***persons*** for a charge.

   b. The following is added to **Supplementary Payments**:

      Attorney fees for attorneys representing the ***person*** or entity asserting a claim against an ***insured*** are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

c. **Exclusions**

(1) The exception to exclusion 11. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

3. **PROPERTY DAMAGE LIABILITY COVERAGE**

a. Item 4. of *Insured*, under **Additional Definition**, is changed to read:

*Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability.

This provision applies only if the vehicle is:

a. neither *owned by*, nor hired by, that other *person* or organization; and

b. neither available for, nor being used for, carrying *persons* for a charge.

b. The following is added to **Supplementary Payments**:

Attorney fees for attorneys representing the *person* or entity asserting a claim against an *insured* are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

c. **Exclusions**

(1) The exception to exclusion 9. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY*

6128S.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

*ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

4. **NO-FAULT COVERAGE**

   a. **Additional Definition**

   Item 2. of the definition of *Insured* is changed to read:

   *Insured* means any other *person* while *occupying* or struck as a *pedestrian* by:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   b. **Insuring Agreement**

   Item 1.C. is changed to read:

   follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following *persons* or entities:

   (1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

   (2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

   (3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

   (4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above; and

   (5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or

   (a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

   (b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

   (c) provides at least four of the following medical specialties:

   i. general medicine;

   ii. radiography;

   iii. orthopedic medicine;

   iv. physical medicine;

   v. physical therapy;

   vi. physical rehabilitation;

6128S.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

vii. prescribing or dispensing outpatient prescription medication; or

viii. laboratory services.

c. **Limits**

(1) Item 2.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 2. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

d. **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN ***INSURED*** WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. ***OCCUPYING*** OR STRUCK BY ***YOUR CAR***, A ***NEWLY ACQUIRED CAR***, OR A ***TEMPORARY SUBSTITUTE CAR*** WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

5. **MEDICAL PAYMENTS COVERAGE**

a. **Insuring Agreement**

Item 2.C. is changed to read:

follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following ***persons*** or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6128S.1

Statutes, based upon referral by a provider described in B. above; and

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or

    (a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

    (b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

    (c) provides at least four of the following medical specialties:

       i.   general medicine;

       ii.   radiography;

       iii.   orthopedic medicine;

       iv.   physical medicine;

       v.   physical therapy;

       vi.   physical rehabilitation;

       vii.   prescribing or dispensing outpatient prescription medication; or

       viii.laboratory services.

**b.** **Limits**

(1) Item 3.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

    (I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 3. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

**c.** **Exclusions**

(1) Exclusion 7. is changed to read:

THERE IS NO COVERAGE FOR AN ***INSURED*** WHO:

    a.  IS   ***OCCUPYING***   OR THROUGH BEING STRUCK

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
6128S.1

AS A *PEDESTRIAN* BY A VEHICLE *OWNED BY* ANY NAMED INSURED OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS POLICY; OR

b.  AT THE TIME OF THE ACCIDENT OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT* AND IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT*.

This exclusion (7.b.) does not apply to:

(1) any named insured;

(2) the spouse of any named insured; and

(3) any *relative* while *occupying your car*, a *newly acquired car*, a *temporary substitute car*, or a *non-owned car* if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1.  PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2.  *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR*

WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

6.  **UNINSURED MOTOR VEHICLE COVERAGE (Stacking)**

a.  **Additional Definitions**

"*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer" is changed to read:

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1.  whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

2.  designed for use primarily off public roads except while on public roads;

3.  while located for use as a dwelling or other premises; or

4.  whose owner or operator could have been reasonably identified.

b.  **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1.  PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2.  *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY*

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

*ACQUIRED CAR*, OR A *TEM-PORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

7. **UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking)**

   a. **Additional Definitions**

   "*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer" is changed to read:

   *Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

   1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

   2. designed for use primarily off public roads except while on public roads;

   3. while located for use as a dwelling or other premises; or

   4. whose owner or operator could have been reasonably identified.

   b. **Exclusions**

   (1) Exclusion 2. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

   a. WHILE *OCCUPYING* A VEHICLE *OWNED BY YOU* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

   b. WHILE *OCCUPYING* A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*. This exclusion (2.b.) does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, provided that the vehicle is *owned by* neither that named insured nor that spouse; OR

   c. WHILE A *PEDESTRIAN* AND IS STRUCK BY A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*;

   (2) The following exclusions are added:

   (a) THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A VEHICLE *OWNED BY* THAT *INSURED* IF THAT VEHICLE IS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE UNDER THIS POLICY OR ANY OTHER POLICY.

   (b) THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

   1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

6128S.1
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

2. **OCCUPYING** OR STRUCK BY **YOUR CAR**, A **NEWLY ACQUIRED CAR**, OR A **TEMPORARY SUBSTITUTE CAR** WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

8. **PHYSICAL DAMAGE COVERAGES**

a   The paragraph that reads:

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

is changed to read:

**Deductible**

1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, **we** will not deduct more than $500 for any **loss** to a **newly acquired car**.

2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, **we** will not deduct more than $500 for any **loss caused by collision** to a **newly acquired car**.

b. **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR ANY **COVERED VEHICLE** WHILE IT IS USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

9. **INSURED'S DUTIES**

a. Item 7.a.(3) is changed to read:

An **insured** making claim under:

a. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(3) provide written authorization for **us** to obtain medical bills, medical records, wage information, salary information, employment information, and any other relevant information **we** deem reasonably necessary to substantiate the claim.

Such authorizations must not:

(a) restrict **us** from performing **our** business functions in:

(i) obtaining relevant and reasonably necessary records, bills, information, and data; nor

(ii) using or retaining relevant and reasonably necessary records, bills, information, and data collected or received by **us**;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(b) require **us** to violate federal or state laws or regulations;

(c) prevent **us** from fulfilling **our** data reporting and data retention obligations to insurance regulators; or

(d) prevent **us** from disclosing claim information and data:

(i) to enable performance of **our** business functions;

(ii) to meet **our** reporting obligations to insurance regulators;

(iii) to meet **our** reporting obligations to insurance data consolidators; and

(iv) as otherwise permitted by law.

If an injured **insured** is a minor, unable to act, or dead, then his or her legal representative must provide **us** with the written authorization.

If the holder of the information refuses to provide it to **us** despite the authorization, then at **our** request the **person** making claim or his or her legal representative must obtain the information and promptly provide it to **us**; and

b. The following is added to item 7.:

An **insured** making claim under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must submit to **us** all information **we** need to comply with federal and state laws and regulations.

10. **GENERAL TERMS**

a. The following is added to **Limited Coverage in Mexico**:

**Uninsured Motor Vehicle Coverage (Stacking and Non-Stacking)**

b. Under **Limited Coverage in Mexico**, **Legal Action Against Us** is changed to read:

Any legal action against **us** arising out of an accident or **loss** occurring in the country of Mexico must be brought in a Florida state court in the United States of America, or a United States of America District Court that has jurisdiction.

c. The provision entitled **Persons Acting On Our Behalf** is deleted in its entirety.

d. The following is added to **Newly Owned or Newly Leased Car**:

If a **resident relative** wants to insure a **car** newly **owned by** the **resident relative** with the **State Farm Companies** after that **car** ceases to be a **newly acquired car**, then the **resident relative** must apply to the **State Farm Companies** for a separate policy to insure the **car** newly **owned by** the **resident relative**. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

e. The following is added to **Premium**:

If due to insufficient funds, payment of premium for this policy by debit

6128S.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

card, credit card, electronic funds transfer, or electronic check is returned, is declined, or cannot be processed, *we* may impose an insufficient funds fee of $15 per occurrence.

f. **Return of Unearned Premium** is changed to read:

   (1) If *you* cancel this policy:

      (a) then premium will be earned on a pro rata basis. *We* may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed or electronically transferred to *you* within 30 days after the effective date of the policy cancellation, or 30 days after *we* receive *your* request to cancel this policy, whichever is later. Delay in the return of unearned premium does not affect the cancellation;

      (b) *you* may elect to apply the unearned portion of any premium paid to unpaid balances of other policies with the ***State Farm Companies***.

   (2) If *we* cancel this policy:

      (a) then premium will be earned on a pro rata basis. Any unearned premium will be mailed or electronically transferred at the time we cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation;

      (b) *you* may elect to apply the unearned portion of any

premium paid to unpaid balances of other policies with the ***State Farm Companies***.

g. The following are added to **GENERAL TERMS**:

   **Electronic Delivery**

   With *your* consent, *we* may, if allowed by law, electronically deliver any document or notice, including a notice to renew, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice. This provision does not apply to any notice to non-renew or cancel.

   **Our Rights Regarding Claim Information**

   a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

   b. Subject to a. above, *we* will not be restricted in or prohibited from:

      (1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, relevant data, and any other reasonable information to process the claim;

      (2) using any of the items described in item b.(1) above; or

6128S.1
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(3) retaining:

    (a) any of the items in item b.(1) above; or

    (b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c.  *We* may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

    (1) to enable performance of *our* business functions;

    (2) to meet *our* reporting obligations to insurance regulators;

    (3) to meet *our* reporting obligations to insurance data consolidators;

    (4) to meet other obligations required by law; and

    (5) as otherwise permitted by law.

d.  *Our* rights under a., b., and c. above shall not be impaired by any:

    (1) authorization related to any claim submitted under this policy; or

    (2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6128S.1

Filing # 158684035 E-Filed 10/06/2022 10:27:48 AM

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

      Plaintiff,                    Case No. COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

_____/

## NOTICE OF HEARING

      **NOTICE IS HEREBY GIVEN** that the undersigned will call up for hearing before the

Honorable Steven P. DeLuca, the following:

      **MOTION:**     **State Farm's Motion to Dismiss the Complaint**

      **DATE:**         **October 26, 2022**

      **TIME:**          **11:00 a.m**

      **PLACE:**       **VIRTUAL HEARING VIA ZOOM**
                            https://17thflcourts.zoom.us/j/499985495

Dated:  October 5, 2022

                               Respectfully submitted,

                               */s/ Johanna W. Clark*
                               Johanna W. Clark
                               Florida Bar No.  196400
                               Christopher M. Paolini
                               Florida Bar No. 669199
                               CARLTON FIELDS, P.A.
                               200 S. Orange Avenue, Suite 1000
                               Orlando, Florida 32801
                               Phone:    (407) 849-0300
                               Fax:      (407) 648-9099
                               Email: jclark@carltonfields.com (*primary*)
                               Email: cpaolini@carltonfields.com (*primary*)
                               Email: dmonge@carltonfields.com (*secondary*)
                               Email: atokarz@carltonfields.com (*secondary*)
                               *Attorneys for Defendant, State Farm Mutual*
                               *Automobile Insurance Company*

130925069.1

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on October 6, 2022, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com

*/s/ Johanna W. Clark*
JOHANNA W. CLARK

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days. If you have a hearing or voice disability you can contact the court through the Florida Relay Service by calling 711.**

2

130925069.1

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

      Plaintiff,                Case No. COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

_____/

## NOTICE OF CANCELLATION OF HEARING

    **NOTICE IS HEREBY GIVEN** that the hearing before the Honorable Steven P. DeLuca,

is hereby **CANCELLED**:

        **MOTION:**    **State Farm's Motion to Dismiss the Complaint**

        **DATE:**       **October 26, 2022**

        **TIME:**        **11:00 a.m**

        **PLACE:**      **VIRTUAL HEARING VIA ZOOM**
                       https://17thflcourts.zoom.us/j/499985495

Dated:  October 26, 2022

                       Respectfully submitted,

                       */s/ Johanna W. Clark*
                       Johanna W. Clark
                       Florida Bar No.  196400
                       Christopher M. Paolini
                       Florida Bar No. 669199
                       CARLTON FIELDS, P.A.
                       200 S. Orange Avenue, Suite 1000
                       Orlando, Florida 32801
                       Phone:    (407) 849-0300
                       Fax:      (407) 648-9099
                       Email: jclark@carltonfields.com (*primary*)
                       Email: cpaolini@carltonfields.com (*primary*)
                       Email: dmonge@carltonfields.com (*secondary*)
                       Email: atokarz@carltonfields.com (*secondary*)
                       *Attorneys for Defendant, State Farm Mutual*
                       *Automobile Insurance Company*

131101637.1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 26, 2022, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com

*/s/ Johanna W. Clark*
JOHANNA W. CLARK


**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days.  If you have a hearing or voice disability you can contact the court through the Florida Relay Service by calling 711.**

131101637.1

### IN THE COUNTY COURT OF THE 17TH JUDICIAL CIRCUIT
### IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. **COINX22049821**   DIVISION: **73**   JUDGE: **DeLuca, Steven P. (73)**

**Assaf Sasson**

Plaintiff(s) / Petitioner(s)

v.

**State Farm Mutual Automobile Insurance Company**

Defendant(s) / Respondent(s)

_____/

### CASE MANAGEMENT ORDER

## UNIFORM ORDER SETTING PRETRIAL DEADLINES AND RELATED REQUIREMENTS

**NO CONTINUANCES** will be granted for reasons that should have been readily apparent to counsel when the trial order was received or based upon the unavailability of expert witnesses since testimony may be preserved by deposition. Continuances may only be granted based upon a properly filed written motion and court order granting same. **Continuances requested for reasons relating to failure to follow this Order will not be granted.**

**BY ORDER OF THE COURT the following requirements are imposed on all parties:**

1.    THE REQUIREMENTS OF THIS PRETRIAL ORDER CANNOT BE WAIVED BY STIPULATION.

2.    **DISCOVERY** must be completed no later than ninety (90) days from the date of this Order.

3.   **EXPERT WITNESSES** – The names and addresses of expert witnesses shall be disclosed by the plaintiff(s) no later than (30) days from the date of this Order and by the Defendant(s) no later than (40) days from the date of this Order.

## PRETRIAL STIPULATION REQUIREMENTS

4.    A **JOINT** PreTrial Stipulation must be filed and a copy delivered to the Court by all counsel of record no later than 100 days from the date of this Order.  THE COURT DOES NOT ACCEPT UNILATERATERAL PRETRIAL STIPULATIONS. It is the responsibility of **all** parties to cooperate in good faith in preparation of the Joint Pretrial Stipulation. FAILURE TO COMPLY WITH THIS REQUIREMENT MAY RESULT IN SANCTIONS. Any Unilateral Pretrial Stipulations filed will be *sua sponte* STRICKEN and may result in the imposition of sanctions on the filing party. Failure to file a complete Joint Pretrial Stipulation, including witness lists, exhibit lists, jury instructions and verdict forms, will result in postponement of the trial, and/or sanctions including dismissal and/or default. If either party delays the preparation of the Joint Stipulation, a motion describing the delay must be immediately filed with the Clerk of the Courts and brought to the Court's attention prior to the deadline.

The Joint Pretrial Stipulation must be a single, unified submission and must contain the following information in separately numbered paragraphs or sections:

  a.    **Statement of the Facts:** A concise, impartial statement of the facts of the case.

  b.    **Stipulated Facts:** A list of any stipulated facts requiring no   proof at trial.

  c.    **Statements of Disputed Law & Fact:** A statement of the disputed issues of law and fact to be tried.

  d.    **Exhibit Lists**: Each party shall separately list all exhibits they intend to introduce into evidence. Each exhibit shall be listed by number and contain a description on a separate schedule attached to the joint pretrial stipulation. Generic descriptions of exhibits will be stricken. Any evidentiary objections to any listed exhibit of an opposing party shall be stated in the joint pretrial stipulation and delineated with specificity. Demonstrative exhibits (e.g., charts, enlargements of exhibits) to use at a jury trial must be displayed to all counsel prior to being shown to the jury.

e.  **Witness Lists:** Each party shall attach to the Joint pretrial Stipulation a list of the names and addresses all witnesses, including "rebuttal" and "impeachment" witnesses, intended to be called at trial. Witnesses **MUST** be listed in alphabetical order by actual name of the witness, and not designation (i.e., use of such designations as Corporate Representative). All expert witnesses shall be so designated. Only those witnesses listed by name shall be permitted to testify at trial.

f.  **Jury Instructions:**  If the trial is a jury trial, all agreed jury instructions and disputed jury instructions must be filed as part of the joint pretrial stipulation. Disputed jury instructions shall be identified as to the party that proposed the instruction(s) (and, if checked, copies of any statutory citations and/ or case law pertaining to the proposed instruction(s) shall be attached).

g.  **Verdict Forms:** If the trial is a jury trial, an agreed verdict form or disputed verdict forms must be filed as part of the joint pretrial stipulation.

5.  Failure to file a **complete** joint pretrial joint pretrial stipulation, including jury instructions and verdict forms, will result in sanctions including dismissal and/ or default.

6.  At trial, the parties shall be **STRICTLY LIMITED** to exhibits and witnesses disclosed and objections reserved in the joint pretrial stipulation.

A party desiring to use an exhibit, examination or test result, or witness discovered after the deadlines set forth in this Order must immediately, upon discovery, notify all other counsel and the Court by written motion. Use of the exhibit, examination or test result, or witness may be allowed for good cause shown or to prevent manifest injustice.

## **MEDIATION**

7.  **MEDIATION:** Simultaneously herewith, the parties are being referred to mandatory mediation, which shall be completed within 105 days of the date of this Order.

8.  FAILURE TO MEDIATE IN GOOD FAITH OR TO ATTEND THE PRETRIAL

CONFERENCE MAY RESULT IN SANCTIONS, INCLUDING DISMISSAL OR DEFAULT.

## **REQUIREMENTS RELATED TO PRETRIAL CONFERENCE**

IF A PRETRIAL CONFERENCE DATE HAS BEEN SET IN THIS ORDER ABOVE, THE FOLLOWING PROVISIONS WILL APPLY:

9.     **MOTIONS FOR SUMMARY JUDGEMENT will NOT** be heard at the pretrial conference or at the time of trial. They must be heard no later than (10) days prior to the pretrial conference).

10.    Prior to the pretrial conference, the Court must have ruled on all Motions previously filed, with the exception of motions in limine. In the absence of good cause for failure to notice such motion for hearing, the motion is subject to being deemed abandoned or waived.

11.    **Motions in Limine** must be heard at least five (5) days prior to the date of trial.

12.    **ALL DAUBERT related issues** (section 90.702, Florida Statutes shall be noticed and heard – or agreed to by the parties – no later than two (2) weeks before the pretrial conference. FAILURE TO DO SO SHALL CONSTITUTE A WAIVER AT TRIAL OF ANY DAUBERT RELATED EVIDENCE OBJECTION OR ISSUE.

13.    **ALL** EXHIBITS MUST BE BROUGHT TO THE PRETRIAL CONFERENCE FOR PRE-MARKING. Any exhibit either party desires to use at trial exceeding four (4) pages in length must be consecutively paginated (by Bates-stamp method or otherwise). Any exhibit not meeting this requirement will not be allowed for the use at trial.

14.    At the time of the pretrial conference, the parties shall further be prepared to discuss all the items set forth in Florida Rule of Civil Procedure 1.200(b).

15.    **SETTLEMENT:** Counsel shall immediately notify this Court in the event of settlement and submit a stipulation for and order of dismissal. Counsel shall also notify

the court of any pending hearings that will be canceled as a result of the settlement.

**Pursuant to Rule 2.516(h)(1), the Court hereby orders counsel to furnish copies of this Order/Judgment to any party who does not have an email address shown on this document.**

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>2nd day of November, 2022</u>.

COINX22049821 11-02-2022 3:19 AM

<u>COINX22049821 11-02-2022 3:19 AM</u>
Hon. Steven P. DeLuca
**COUNTY COURT JUDGE**
Electronically Signed by Steven P. DeLuca

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days. If you have a hearing or voice disability you can contact the court through the Florida Relay Service by calling 711.**

Copies Furnished To:
Christopher M. Paolini , E-mail : cpaolini@carltonfields.com
Christopher M. Paolini , E-mail : atokarz@carltonfields.com
Daren Stabinski , E-mail : daren@darenstabinskipa.com
Johanna W Clark , E-mail : dmontgomery@carltonfields.com
Johanna W Clark , E-mail : dmonge@carltonfields.com
Johanna W Clark , E-mail : jclark@carltonfields.com

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. COINX-22-049821

ASSAF SASSON,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
Defendant.

_____/

## AMENDED COMPLAINT

COMES NOW, the Plaintiff, ASSAF SASSON, by and through undersigned counsel, hereby sues the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and in support thereof alleges:

1. This is a petition within the jurisdictional limits of this Court exclusive of interest, costs, attorney's fees.

2. At all times material hereto, the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY was a duly authorized insurance company, organized and incorporated under the Laws of Florida or authorized to transact insurance business in the State of Florida.

3. At all times material hereto, the Plaintiff, ASSAF SASSON was and is over the age of 18 and sui juris.

4. Venue is proper in Broward County, Florida, because this claim arose in Broward County, Florida, and the Defendant sufficiently transacts business in Broward

County, Florida.

5. For valuable consideration, at all times material hereto, the Defendant, STATE

FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, issued a policy of

automobile insurance, that included collision benefits, which provided coverage to

Plaintiff under Policy Number J53-4643-B02-59C (A copy of the policy is attached

and incorporated by reference herein).

6. Pursuant to the terms thereof, the Defendant agreed to pay collision benefits to

repair or replace Plaintiff's 2022 Porsche Taycan in the event of an accident under

the following terms:

*The Policy in this case contains a specific Limit of Liability provision that governs the
payment obligations of State Farm as follows:*
*1. We have the right to choose to settle with or the owner of the covered vehicle
in one of the following ways:*
   *a. Pay the cost to repair the covered vehicle minus any applicable
deductible.*
       *1) We have the right to choose one of the following to
determine the cost to repair the covered vehicle;*
          *a) The cost agreed to by both the owner of the covered vehicle
and us; or*
          *b) A bid or repair estimate approved by us; or*
          *c) A repair estimate that is written based upon or adjusted
to:*
                *i. The prevailing competitive price;*
                *ii. The lower of paintless dent repair pricing
established by an agreement we have with a
third party or the paintless dent repair price that
is competitive in the market; or*
                *iii. A combination of (i) and (ii) above.*

7. On or about May 27, 2022, ADA SASSON, an insured under said policy, was

traveling in the above insured vehicle and was involved in an automobile accident

in Broward County, Florida.  Said vehicle was insured under said insurance

policy.

8. Said automobile accident caused the Plaintiff's vehicle to suffer damages.

9. The Plaintiff, ASSAF SASSON, submitted a claim for collision benefits to the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for payment related to the damages to his automobile suffered in the above-mentioned motor vehicle accident, under claim number 59-34T0-34F.

10. The Plaintiff has complied with all statutory conditions precedent to recovering benefits under said policy.

11. As the subject vehicle is a luxury foreign vehicle, on or about May 31, 2022, Plaintiff brought the vehicle to Stuttgart International, in Broward County, Florida, a collision body shop that specializes in repairing such vehicles.

12. Stuttgart International created an estimate of repairs to the subject vehicle in the amount of $8,360.87.  Said estimate was provided to Defendant.

13. On or about July 1, 2022, Defendant created its own estimate of damages to the subject vehicle in the amount of $6,267.03, and only agreed to pay that amount for repair to the vehicle less a $500.00 deductible.

14. Plaintiff did not agree to the amount to the amount of Defendant's estimate and Defendant did not approve the estimate provided by Stutgart.

15. The repair estimate provided by Defendant was not based upon or adjusted to the prevailing competitive price.

16. Paintless dent repair could not repair the damages to Plaintiff's vehicle.

17. To date, Defendant has refused and continues to refuse to pay Plaintiff the amount of the estimate created by Stuttgart International, which is the true the amount required to properly repair the subject

luxury vehicle, or the prevailing competitive price to repair said vehicle, as required by the subject policy.

18. As a direct and proximate result of Defendant's failure to pay the full benefits under the subject policy, Plaintiff has been denied use of the vehicle and suffered damages as a result thereof.

19. The Defendant has breached its contract with Plaintiff by failing to pay for the damages sustained by Plaintiff in the above referenced accident.

20. The Plaintiff and/or its agents have complied with all statutory conditions under the law.

21. As a result of the Defendant's failure and/or refusal to pay the aforesaid benefits due, the Plaintiff suffered actual damages more than $8,000.00 but less than $15,000.00, exclusive of attorney's fees, costs, and interest.

22. The Plaintiff has been caused to retain the undersigned and this law firm to enforce its rights against the Defendant for collision benefits and is thereby obligated to pay reasonable attorney's fee and costs.

23. The Plaintiff is entitled to prevailing party attorney's fees, costs, and statutory interest pursuant to Florida Statutes §627.428.

WHEREFORE, the Plaintiff, ASSAF SASSON, demands judgment against the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, in the amount greater than $8,000.00 but less than $15,000.00, for collision damages to Plaintiff's vehicle, loss of use damages, attorney's fees, costs, interest, and further demands trial by jury for all issues so triable, and any other relief that this Court deems just and proper.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by email

this 3rd day of November, 2022, to all registered participants of the Florida e-filing portal.


Daren Stabinski P.A.
1213 N.E. First Street
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

__/s/ *Daren Stabinski*_____
Daren Stabinski, Esq.
Fla. Bar No. 002951

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

           Plaintiff,

v.

                              CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

           Defendant.

_____/

## AGREED ORDER STRIKING LOSS OF USE CLAIM WITHOUT PREJUDICE

THIS CAUSE came before the Court upon the agreement of the parties, and the Court, having reviewed Plaintiff's Amended Complaint and being duly advised of the agreement of the parties, hereby ORDERS that paragraph 18 of the Amended Complaint and Plaintiff's claim for "loss of use" in the Wherefore clause of the Amended Complaint is stricken without prejudice as such a claim is extra-contractual and not properly raised in a first party breach of contract claim. *See Covington v. State Farm Fire & Cas. Co.*, 330 So.3d 943, 946 (Fla. 4th DCA 2021)

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>14th day of November, 2022</u>.

<u>COINX22049821 11-14-2022 11:23 AM</u>
Hon. Steven P. DeLuca
**COUNTY COURT JUDGE**
Electronically Signed by Steven P. DeLuca

**Copies Furnished To:**
Christopher M. Paolini , E-mail : cpaolini@carltonfields.com
Christopher M. Paolini , E-mail : atokarz@carltonfields.com

Daren Stabinski , E-mail : daren@darenstabinskipa.com
Johanna W Clark , E-mail : dmontgomery@carltonfields.com
Johanna W Clark , E-mail : dmonge@carltonfields.com
Johanna W Clark , E-mail : jclark@carltonfields.com

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

               Plaintiff,

v.

CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

               Defendant.

_____/

## <u>DEFENDANT'S ANSWER AND DEFENSES TO THE AMENDED COMPLAINT</u>

Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), by and through the undersigned counsel, hereby files its Answer and Defenses to Plaintiff's Amended Complaint by specifically denying each and every allegation not expressly and specifically admitted hereafter, and in further answer to the enumerated paragraphs of the Amended Complaint states:

1. State Farm admits that Plaintiff purports to assert an action for damages that within the jurisdictional limits of this Court, exclusive of interest, costs and attorneys' fees, but denies that Plaintiff has asserted such an action or that Plaintiff is entitled to recovery of any damages.

2. State Farm admits that it is a corporation licensed to do business in Florida and that it handles insurance claims throughout the state. Otherwise, denied.

3. State Farm is without knowledge as to whether Plaintiff was and is over the age of 18 and *sui juris* and therefore denies the same.

4. State Farm admits the allegations in paragraph 4 for venue purposes only. Otherwise, denied.

131224802.1

5.      State Farm admits that a policy of insurance was issued by State Farm to Assaf Sasson and that the policy speaks for itself. Otherwise, denied.

6.      State Farm admits that a policy of insurance was issued by State Farm to Assaf Sasson and that the policy speaks for itself. Otherwise, denied.

7.      State Farm admits that on or about June 1, 2022, it received notice of an accident that reportedly occurred on May 27, 2022 involving a vehicle insured under Assaf Sasson's State Farm automobile insurance policy. Otherwise, denied.

8.      State Farm is without knowledge and therefore denies the allegations contained in Paragraph 8 of the Amended Complaint.

9.      State Farm admits that on or about June 1, 2022, it received notice of an accident that reportedly occurred on May 27, 2022 involving a vehicle insured under Assaf Sasson's State Farm automobile insurance policy and assigned claim number 59-34T0-34F to the reported loss. Otherwise, denied.

10.      State Farm denies the allegations contained in Paragraph 10 of the Amended Complaint.

11.      State Farm is without knowledge and therefore denies the allegations contained in Paragraph 11 of the Amended Complaint.

12.      State Farm admits that on June 2, 2022 State Farm received a document dated June 2, 2022 and titled "Preliminary Estimate" which includes a "grand total" of $8,360.87. State Farm denies the remaining allegations in Paragraph 12 of the Amended Complaint.

13.      State Farm admits that on or about July 1, 2022, State Farm created its Supplement of Record 1 Summary for the subject loss in the amount of $6,267.03 and State Farm issued a payment of $5,767.03 to Stuttgart International Auto Body after applying the

2

subject policy's applicable deductible.  State Farm denies the remaining allegations in Paragraph 13 of the Amended Complaint.

14.     State Farm admits that it issued a $6,267.03 payment to Stuttgart International Auto Body in accordance with the terms, conditions and limitations of the subject policy.  State Farm admits it did not approve Stuttgart's estimate.  State Farm denies the remaining allegations in Paragraph 14 of the Amended Complaint.

15.     State Farm denies the allegations contained in Paragraph 15 of the Amended Complaint.

16.      State Farm denies the allegations contained in Paragraph 16 of the Amended Complaint.

17.     State Farm denies the allegations contained in Paragraph 17 of the Amended Complaint.

18.     State Farm denies the allegations contained in Paragraph 18 of the Amended Complaint.

19.     State Farm denies the allegations contained in Paragraph 19 of the Amended Complaint.

20.     State Farm denies the allegations contained in Paragraph 20 of the Amended Complaint.

21.     State Farm denies the allegations contained in Paragraph 21 of the Amended Complaint.

22.     State Farm is without knowledge of Plaintiff's arrangement with counsel and therefore denies the allegations contained in Paragraph 22 of the Amended Complaint.

131224802.1

23.     State Farm denies the allegations contained in Paragraph 23 of the Amended Complaint.

State Farm denies the allegations within the "Wherefore" paragraph of the Amended Complaint.

## <u>DEFENSES AND AFFIRMATIVE DEFENSES</u>

1.      Plaintiff's action is barred and defeated in whole or in part because the damages claimed are not reasonable or necessary, or both, and/or because the damages claimed exceed the limit of liability for collision coverage under the policy.

2.      Plaintiff's action is barred in whole or in part because the damages claimed by Plaintiff were not caused by or attributable to the loss event reported to State Farm or alleged in the operative Amended Complaint.

3.      Plaintiff's claim is barred, in whole or in part, and/or any recovery by the Plaintiff must be reduced, by virtue of any fault and/or comparative fault of the Plaintiff or Plaintiff's representative, which substantially contributed to the actions complained about and the damages claimed. For example, any excess repair time or actions that may be at issue in this case are the fault of the Plaintiff and/or Plaintiff's representative(s) and, accordingly, damages so-caused are not recoverable from State Farm.

4.      Plaintiff's action is barred or defeated in whole or in part and/or recovery must be reduced because the Plaintiff failed to reasonably mitigate Plaintiff's damages by authorizing repairs that exceed the coverage under the policy.

5.      Defendant is entitled to a setoff of all payments made for operations, parts, procedures, etc., that were not charged or performed, or both, for repairs to the subject vehicle.

4

6.     State Farm reserves the right to amend and supplement its defenses as discovery proceeds.

## DEMAND FOR JURY TRIAL

State Farm demands trial by jury on all issues so triable as of right.

Dated:  November 7, 2022

Respectfully submitted,

*/s/ Johanna W. Clark*
Johanna W. Clark
Florida Bar No.  196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:       (407) 648-9099
Email: jclark@carltonfields.com (*primary*)
Email: marodriguez@carltonfields.com (*primary*)
Email: dmonge@carltonfields.com (*secondary*)
Email: atokarz@carltonfields.com (*secondary*)
*Attorneys for Defendant, State Farm Mutual Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 14, 2022, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com

*/s/ Johanna W. Clark*
JOHANNA W. CLARK

131224802.1

Filing # 161513005 E-Filed 11/18/2022 10:38:18 AM

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

          Plaintiff,

CASE NO: COINX-22-049821

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant.

_____/

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF

Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), pursuant to Florida Rule of Civil Procedure 1.350, requests that Plaintiff, Assaf Sasson, produce the documents identified in the following request for production numbered one (1) through fourteen (14), pursuant to the Definitions and Instructions below, thirty (30) days from the date of service hereof.

## DEFINITIONS AND INSTRUCTIONS

Unless otherwise specified in these requests for production, the following definitions apply:

1. The terms "you," "your" or "plaintiff" mean Assaf Sasson, and all persons acting on behalf of this plaintiff including all present and former, agents, representatives, or attorneys of, or consultants, or advisors to, plaintiff.

2. The singular and plural forms of any word shall be interchangeable, as shall masculine and feminine pronouns.

3. Connector words shall be construed conjunctively or disjunctively as necessary to bring within the scope of any request any information which might otherwise be construed to be

1

outside the scope.

4.      The term "person" includes any natural person, alive or deceased, and all other entities having legal existence, including but not limited to any corporation, organization, partnership, other business entity or association, and any government or governmental body, commission, department, committee, board or agency.

5.      "State Farm" means and refers to State Farm Mutual Automobile Insurance Company and its agents.

6.      Except when specified, the terms "Complaint" or "your Complaint" mean the Complaint authorized by you and filed on your behalf in the above-captioned lawsuit, including any amendments thereto.

7.      The term "writing" includes all documents, any written materials and all other media used to record or memorialize information, including but not limited to, information saved in computer memory, electronic mail, diskettes, hard drives, magnetic tape, audio tape, and video tape.

8.      The term "documents" means:

a.      all written, printed, typed, recorded or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in your actual or constructive possession, custody or control, including but not limited to, all writings, letters, correspondence, computer printout of emails or other communications, graphs, charts, photographs, films, estimates, supplements, receipts, invoices, contracts, ledgers, cancelled checks, books and records, internal memoranda, reports, studies, calendars,

131245690.1

minutes, records of meetings, records of telephone conferences, pamphlets, training materials, accounting records (including financial as well as any inventory accounting), appraisals, telegrams, memoranda, notes (including handwritten notes), instructions, notebooks, records, agreements, address books, microfilm, notices, releases, waivers, assignments, summaries, invoices, checks, pay stubs, payment records, bills, drafts, data sheets, data compilations, computer data sheets, computer data compilations, work papers, work sheets, calendars, statistics, tape recordings, transcripts of tape recordings, phonograph records or data compilations from which information can be obtained or translated into reasonably usable form;

b.      The original and all other copies not absolutely identical;

c.      All drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not, all exhibits, attachments, or other materials affixed thereto; and

d.      All writings.

9.      "Communication" means any contact, oral or written, formal or informal, at any time or place, under any circumstance, in any manner, whereby a statement of any nature is transmitted or transferred, including any meeting or other conversation, and shall include, without limitation, any document relating to any such contact.

10.      The phrase "relating to," relates to," or "related to" as used in this request is intended to and shall be interpreted to mean relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates,

3

proves, evidences, shows, refutes, disputes, rebuts, controverts, contradicts, or is logically or factually connected with the repair charges, services, parts and materials, or any other issues described in Plaintiff's Complaint.

11.     If, in response to any of the document requests, you claim that a document or documents are privileged, please state, with regard to each designated document, the following:

        a.     The type of privilege claimed (e.g. attorney/client, work product, trade secret, etc.);

        b.     The type of document involved (e.g. letter, report, etc.);

        c.     The author or authors of the document;

        d.     All recipients of the document;

        e.     The date of the document; and

        f.     The subject matter of, or addressed by, the document.

12.     If any requested document that at one time existed is now lost, destroyed or discarded, please identify such document and provide as much of the following information as possible:

(i)     the type of document;

(ii)     its date;

(iii)     the date or approximate date it was lost, destroyed or discarded;

(iv)     the circumstances and manner in which it was lost, destroyed or discarded;

(v)     the reason or reasons the document was lost, destroyed or discarded;

(vi)     the identity of each person who authorized or has knowledge of the circumstances surrounding the disposal of the document;

(vii)     the identity of each person who lost, discarded or destroyed the documents; and

(viii)     the identity of each person having knowledge of the contents of the documents.

4

## REQUESTS FOR PRODUCTION

1.      All documents related to your property damage claim with State Farm under claim number 59-34T0-34F for date of loss May 27, 2022.

2.      All documents related to any estimates or repair work for the subject vehicle by Stuttgart International Auto Body, or any other repairer, related to your property damage claim under claim number 59-34T0-34F or at any time.

3.      All documents related to the allegations in paragraph 23 of the Complaint that "Plaintiff demands judgment for collision damages to Plaintiff's vehicle, loss of use damages, attorney's fees, costs, and interest."

4.      All estimates related to any damage sustained by the subject vehicle related to your property damage claim with State Farm under claim number 59-34T0-34F.

5.      All receipts for any repairs performed on the subject vehicle related to your property damage claim with State Farm under claim number 59-34T0-34F.

6.      All documents related to any automobile accidents involving the subject vehicle at any time.

7.      All documents, including any estimates, invoices and/or receipts, related to any repairs for any automobile accidents involving the subject vehicle at any time.

8.      All documents evidencing any communications with State Farm regarding any damage caused to the subject vehicle between May 27, 2022 and the present date.

9.      All photographs and videos depicting the condition of the subject vehicle before and/or after the May 27, 2022 automobile accident.

131245690.1

10.     All documents evidencing payment made by you (or by any other person or entity on your behalf) for repairs to the subject vehicle between May 27, 2022 and the present date, including repairs that are the subject of this lawsuit.

11.     All Social media postings from Facebook, Twitter, Tumblr, Reddit, YouTube, LinkedIn, Pinterest, MySpace, Google Plus+, Instagram and any other social media sites or fora, including photos, that make reference to the damages claimed, the insurance claims made, and the litigation concerning the repair of the subject vehicle or this Action;

12.     All text messages, e-mail messages and/or other written communications referring to the repair of the subject vehicle, any claims you made arising from that damage, or this action.

13.     All receipts, evidence of payment, or any other documents related to any damages, specific or general, which you will be claiming or seeking to recover in this lawsuit.

14.     All documents you intend to use at trial.

Dated: November 18, 2022                Respectfully submitted,

                                        /s/ Johanna W. Clark
                                        Johanna W. Clark
                                        Florida Bar No.  196400
                                        Christopher M. Paolini
                                        Florida Bar No. 669199
                                        CARLTON FIELDS, P.A.
                                        200 S. Orange Avenue, Suite 1000
                                        Orlando, Florida 32801
                                        Phone:    (407) 849-0300
                                        Fax:      (407) 648-9099
                                        Email: jclark@carltonfields.com (*primary*)
                                        Email: cpaolini@carltonfields.com (*primary*)
                                        Email: dmonge@carltonfields.com (*secondary*)
                                        Email: atokarz@carltonfields.com (*secondary*)
                                        *Attorneys for Defendant, State Farm Mutual*
                                        *Automobile Insurance Company*

131245690.1

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 18, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

/s/ Johanna W. Clark
JOHANNA W. CLARK

131245690.1

Case 0:23-cv-61594-RS Document 1-3 Entered on FLSD Docket 08/18/2023 Page 216 of 1096

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

                      CASE NO: COINX-22-049821

        Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF INTENT TO SERVE SUBPOENA DUCES TECUM ON NON-PARTY

YOU ARE NOTIFIED THAT, pursuant to Rule 1.351, Florida Rules of Civil Procedure,

ten (10) days from the date of service of this Notice, if no objection is received by any party, the

undersigned will directly issue or apply to the Clerk of Court for issuance of the attached

Subpoena directed to the following, who is a non-party, to produce the items listed at the time

and place specified in the Subpoena:

        **Stuttgart International Auto Body and Collision II, Inc.**
        **c/o Registered Agent**
        **Claudia M. Bussone**
        **1055 NW 51 Court**
        **Fort Lauderdale, FL 33309**

        **Stuttgart International Auto Body and Collision II, Inc.**
        **Attn: Custodian of Records**
        **1055 NW 51st Court**
        **Fort Lauderdale, FL 33309**

Dated: November 18, 2022

Respectfully submitted,

/s/ Johanna W. Clark
Johanna W. Clark
Florida Bar No. 196400
Christopher Paolini
Florida Bar No. 669199
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, FL 32801
Phone:    (407) 849-0300
Fax:        (407) 648-9099
Email: jclark@carltonfields.com (*primary*)
Email: cpaolini@carltonfields.com (*primary*)
Email: dmonge@carltonfields.com (*secondary*)
Email: atokarz@carltonfields.com (*secondary*)
*Attorneys for Defendant, State Farm Mutual*
*Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 18, 2022, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

/s/ Johanna W. Clark
JOHANNA W. CLARK

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

CASE NO: COINX-22-049821

          Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant.

_____/

**SUBPOENA FOR PRODUCTION OF DOCUMENTS FROM NON-PARTY,**
**STUTTGART INTERNATIONAL AUTO BODY AND COLLISION II, INC.**
**(WITHOUT DEPOSITION)**

THE STATE OF FLORIDA

TO:   **Stuttgart International Auto Body and Collision II, Inc.**
      **c/o Registered Agent**
      **Claudia M. Bussone**
      **1055 NW 51 Court**
      **Fort Lauderdale, FL 33309**

      **Stuttgart International Auto Body and Collision II, Inc.**
      **Attn: Custodian of Records**
      **1055 NW 51st Court**
      **Fort Lauderdale, FL 33309**

YOU ARE COMMANDED to produce by mail to the undersigned attorney, Johanna W. Clark, Esquire, of Carlton Fields, P.A., 200 South Orange Avenue, Suite 1000, Orlando, Florida 32801, on or before the **15TH day of December, 2022, at 9:30 a.m., or** to produce electronically by E-mail to Johanna W. Clark, Esquire at jclark@carltonfields.com and Christopher M. Paoli, Esquire at cpaoli@carltonfields.com, the documents described below:

**See Schedule "A"**

You will not be required to surrender the original items.

You may comply with this subpoena by providing readable copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon payment, in advance, of the reasonable cost of preparation. If you mail or deliver the copies to the attorney whose name appears on this subpoena

before the date indicated above, you do not have to appear in person.

You have the right to object to the production pursuant to this subpoena at any time before the specified date of production by giving written notice to the attorney whose name appears on this subpoena.

**You may be in contempt of court if you fail to:  (1) appear as specified; (2) furnish the records instead of appearing as provided above; or (3) object to this subpoena.**

You can only be excused by the attorney whose name appears on this subpoena and, unless excused by that person or the Court, you shall respond to this subpoena as directed.

DATED on this _____ day of _____, 2022

Johanna W. Clark, Esquire
AS OFFICER OF THE COURT
Florida Bar No.: 196400

*Issued by:*

Johanna W. Clark, Esquire
Florida Bar Number 196400
CARLTON FIELDS, P.A.
P.O. Box 1171
Orlando, Florida 32802-1171
Tel: (407) 849-0300
Fax: (407) 648-9099
jclark@carltonfields.com  (primary)
*Attorneys for State Farm Mutual Automobile Insurance Company*

---

**Notice**
**AMERICANS WITH DISABILITY ACT OF 1990**

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Johanna W. Clark at (407) 849-0300 or 1 888 849-9191; Carlton Fields, P.A., 200 South Orange Ave., Suite 1000, Orlando, FL 32801 within two (2) working days of your receipt of this subpoena; if you are hearing or voice impaired, call (800) 955-8771.**

131251613.1

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1.     The term "writing" includes all documents, any written materials and all other media used to record or memorialize information, including but not limited to, information saved in computer memory, electronic mail, diskettes, hard drives, magnetic tape, audio tape, and video tape.

2.     The term "documents" means:

    a.     all written, printed, typed, recorded or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in your actual or constructive possession, custody or control, including but not limited to, all writings, letters, correspondence, computer printout of emails or other communications, graphs, charts, photographs, films, estimates, supplements, receipts, invoices, contracts, ledgers, cancelled checks, books and records, internal memoranda, reports, studies, calendars, minutes, records of meetings, records of telephone conferences, pamphlets, training materials, accounting records (including financial as well as any inventory accounting),  appraisals, telegrams, memoranda, notes (including handwritten notes), instructions, notebooks, records, agreements, address books, microfilm, notices, releases, waivers, assignments, summaries, invoices, checks, pay stubs, payment records, bills, drafts, data sheets, data compilations, computer data sheets, computer data compilations, work papers, work sheets, calendars, statistics, tape recordings, transcripts of tape recordings, phonograph records or data compilations from which information can be obtained or translated into reasonably usable form;

    b.     The original and all other copies not absolutely identical;

    c.     All drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not, all exhibits, attachments, or other materials affixed thereto; and

    d.     All writings.

3.     The singular and plural forms of any word shall be interchangeable, as shall masculine and feminine pronouns.

4.     Connector words shall be construed conjunctively or disjunctively as necessary to bring within the scope of any request any information which might otherwise be construed to be

131251613.1

outside the scope.

5.      The term "person" includes any natural person, alive or deceased, and all other entities having legal existence, including but not limited to any corporation, organization, partnership, other business entity or association, and any government or governmental body, commission, department, committee, board or agency.

6.      "Communication" means any contact, oral or written, formal or informal, at any time or place, under any circumstance, in any manner, whereby a statement of any nature is transmitted or transferred, including any meeting or other conversation, and shall include, without limitation, any document relating to any such contact.

7.      The phrase "relating to," relates to," or "related to" as used in this request is intended to and shall be interpreted to mean relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, contradicts, or is logically or factually connected with the repair charges, services, parts and materials, or any other issues described in Plaintiff's Complaint against State Farm for repairs to **Assaf Sasson's 2022 Porsche Taycan, VIN No. WP0AA2Y11NSA13378**.

8.      If, in response to any of the document requests, you claim that a document or documents are privileged, please state, with regard to each designated document, the following:

a.      The type of privilege claimed (e.g. attorney/client, work product, trade secret, etc.);

b.      The type of document involved (e.g. letter, report, etc.);

c.      The author or authors of the document;

d.      All recipients of the document;

4

e.      The date of the document; and

f.      The subject matter of, or addressed by, the document.

9.      If any requested document that at one time existed is now lost, destroyed or discarded, please identify such document and provide as much of the following information as possible:

a.      The type of document;

b.      Its date;

c.      The date or approximate date it was lost, destroyed or discarded;

d.      The circumstances and manner in which it was lost, destroyed or discarded;

e.      The reason or reasons the document was lost, destroyed, or discarded.

10.     Unless otherwise indicated in a specific request, the time period covered by these requests is from May 1, 2021 through the present.

## **ITEMS TO BE PRODUCED**

Complete copies of any and all records prepared and/or generated as a result of repairs to, parts, painting, auto repair and/or any other work performed on or relating to a **2022 Porsche Taycan, VIN No. WP0AA2Y11NSA13378**, for or on behalf of Assaf Sasson. The requested records include, but are not limited to, billing records, receipt(s) for payment received, work order(s), bookkeeping or accounting records showing entry or entries for work performed or parts purchased, records showing the form of payment, return records, and any and all other records relating to said parts or work related to the subject vehicle, and includes *but is not limited to* the parts and services identified in **Composite Exhibit 1**.

131251613.1

# COMPOSITE
# EXHIBIT 1

# STUTTGART INTERNATIONAL

Stuttgart International Auto Body Collision
1055 NW 51ST CT, FORT LAUDERDALE, FL 33309
Phone: (954) 563-5011
FAX: (954) 351-0911

### Preliminary Estimate

**Customer: Sasson, Ada**                                                                 **Job Number:**

Written By: Daniel Pagan

| | | | | | |
|---|---|---|---|---|---|
| Insured: | Sasson, Ada | Policy #: | HAT # 4329 | Claim #: | HAT # 4329 |
| Type of Loss: | | Date of Loss: | | Days to Repair: | 0 |
| Point of Impact: | | | | | |

**Owner:**                                         **Inspection Location:**                        **Insurance Company:**

Sasson, Ada                                      STUTTGART INTERNATIONAL
(786) 586-2101 Business                   1055 NW 51ST CT
                                                        FORT LAUDERDALE, FL 33309
                                                        Repair Facility
                                                        (954) 563-5011 Business

### VEHICLE

2022 PORS Taycan RWD 4D SED Electric- Electric

| | | | | | |
|---|---|---|---|---|---|
| VIN: | WP0AA2Y11NSA13378 | Interior Color: | | Mileage In: | Vehicle Out: |
| License: | | Exterior Color: | | Mileage Out: | |
| State: | | Production Date: | | Condition: | Job #: |

| **TRANSMISSION** | **CONVENIENCE** | AM Radio | **SEATS** |
|---|---|---|---|
| Automatic Transmission | Air Conditioning | FM Radio | Bucket Seats |
| **POWER** | Intermittent Wipers | Stereo | Leather Seats |
| Power Steering | Tilt Wheel | Search/Seek | Heated Seats |
| Power Brakes | Cruise Control | Auxiliary Audio Connection | **WHEELS** |
| Power Windows | Rear Defogger | Satellite Radio | Aluminum/Alloy Wheels |
| Power Locks | Keyless Entry | **SAFETY** | **PAINT** |
| Power Mirrors | Message Center | Drivers Side Air Bag | Three Stage Paint |
| Heated Mirrors | Steering Wheel Touch Controls | Passenger Air Bag | Stone Guard |
| Power Driver Seat | Telescopic Wheel | Anti-Lock Brakes (4) | **OTHER** |
| Power Passenger Seat | Climate Control | 4 Wheel Disc Brakes | Traction Control |
| **DECOR** | Navigation System | Front Side Impact Air Bags | Stability Control |
| Dual Mirrors | Backup Camera | Head/Curtain Air Bags | Rear Spoiler |
| Tinted Glass | Parking Sensors | Hands Free Device | Xenon or L.E.D. Headlamps |
| Console/Storage | Home Link | Rear Side Impact Air Bags | Power Trunk/Liftgate |
| Overhead Console | **RADIO** | Lane Departure Warning | |

**Preliminary Estimate**

**Customer: Sasson, Ada**

**Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

| Line | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|------|------|-------------|-------------|-----|------------------|-------|-------|
| 1 | # | PARTS PRICES ARE SUBJECT TO CHANGE | | 1 | | | |
| 2 | # | POSSIBLE HIDDEN DAMAGES | | 1 | | | |
| 3 | **FRONT BUMPER & GRILLE** | | | | | | |
| 4 | | O/H front bumper | | | | 3.2 | |
| 5 | Repl | Bumper cover w/auto park | 9J1807013AY | 1 | 1,116.91 | Incl. | 3.0 |
| 6 | | Add for Three Stage | | | | | 2.1 |
| 7 | | Add for camera | | | m | 0.2 M | |
| 8 | Repl | Spoiler | 9J1807541OK1 | 1 | 350.72 | Incl. | |
| 9 | Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | |
| 10 | Repl | LT Side bracket | 9J1807227B | 1 | 30.75 | 0.2 | |
| 11 | Repl | Center cover w/o adaptive cruise, w/o night vision | 9J1807823OK1 | 1 | 48.75 | 0.2 | |
| 12 | Repl | LT Corner trim | 9J1807833OK1 | 1 | 48.75 | Incl. | |
| 13 | Repl | LT Front bracket | 9J1807347AOK1 | 1 | 53.62 | 0.2 | |
| 14 | Repl | LT Outer grille | 9J1806681OK1 | 1 | 53.63 | Incl. | |
| 15 | Repl | LT Air duct Turbo, Turbo S | 9J1807014Y | 1 | 56.88 | | |
| 16 | R&I | LT Air inlet screen | | | | 0.2 | |
| 17 | R&I | RT Air inlet screen | | | | 0.2 | |
| 18 | * R&I | Park sensor outer w/auto park | | | m | Incl. M | |
| 19 | * R&I | Park sensor inner w/auto park | | | m | Incl. M | |
| 20 | Refn | Park sensor outer w/auto park | | | m | | 0.2 |
| 21 | | Add for Three Stage | | | | | 0.1 |
| 22 | Refn | Park sensor inner w/auto park | | | m | | 0.2 |
| 23 | | Add for Three Stage | | | | | 0.1 |
| 24 | **FRONT LAMPS** | | | | | | |
| 25 | Repl | LT Turn signal lamp | 9J1945061D | 1 | 74.05 | 0.2 | |
| 26 | R&I | RT Turn signal lamp | | | | 0.2 | |
| 27 | R&I | LT R&I headlamp assy | | | | 0.4 | |
| 28 | **HOOD** | | | | | | |
| 29 | R&I | Emblem | | | | 0.2 | |
| 30 | Repl | Emblem packing | 9P1853611 | 1 | 10.98 | | |
| 31 | Blnd | Hood | | | | | 2.0 |
| 32 | **FENDER** | | | | | | |
| 33 | Repl | LT Fender w/o Turbo S | 9J1821101YGRV | 1 | 684.11 | 2.6 | 2.2 |
| 34 | | Add for Three Stage | | | | | 1.5 |
| 35 | Repl | LT Fender liner upper w/o Turbo S | 9J1810907D | 1 | 277.01 | Incl. | |
| 36 | R&I | LT Trim | | | | Incl. | |
| 37 | * R&I | LT Charging port | | | m | 0.6 M | |
| 38 | R&I | LT Charging port cover | | | | 0.2 | |
| 39 | Refn | LT Charging port cover | | | | | 0.8 |
| 40 | | Overlap Minor Panel | | | | | -0.2 |

**Preliminary Estimate**

| Customer: Sasson, Ada | | | | | | | | Job Number: |
|---|---|---|---|---|---|---|---|---|

2022 PORS Taycan RWD 4D SED Electric- Electric

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 41 | | | Add for Three Stage | | | | | | 0.2 |
| 42 | * | Repl | LT Front bracket | 9J1805373YGRV | 1 | 99.02 | 0.1 | | 0.7 |
| 43 | | | Add for Three Stage | | | | | | 0.3 |
| 44 | **ELECTRICAL** | | | | | | | | |
| 45 | * | R&I | Battery D&R | | | | m | 0.4 M | |
| 46 | **WHEELS** | | | | | | | | |
| 47 | | R&I | LT/Front R&I wheel | | | | m | 0.1 M | |
| 48 | | R&I | RT/Front R&I wheel | | | | m | 0.1 M | |
| 49 | **RESTRAINT SYSTEMS** | | | | | | | | |
| 50 | | R&I | LT Ft impact sensor | | | | m | 0.2 M | |
| 51 | **FRONT DOOR** | | | | | | | | |
| 52 | | Blnd | LT Door shell | | | | | | 1.8 |
| 53 | | R&I | LT Belt molding matte black | | | | | 0.8 | |
| 54 | | R&I | LT R&I mirror | | | | | 0.5 | |
| 55 | | R&I | LT Handle, outside | | | | | 0.5 | |
| 56 | | R&I | LT R&I trim panel | | | | | 0.8 | |
| 57 | **VEHICLE DIAGNOSTICS** | | | | | | | | |
| 58 | * | | Pre-repair scan | | 1 | | m | 1.0 M | |
| 59 | * | | Post-repair scan | | 1 | | m | 1.0 M | |
| 60 | **MISCELLANEOUS OPERATIONS** | | | | | | | | |
| 61 | | Repl | Cover car/bag | | 1 | | | 0.2 | |
| 62 | # | | Prep & Seal Raw Bumper Cover | | 1 | | | | 1.0 |
| 63 | # | | Tint Color & Letdown Panel | | 1 | | | | 1.0 |
| 64 | # | | Sand & Buff | | 1 | | | | 5.0 |
| 65 | # | | Flex Additive | | 1 | 10.00 | | | |
| 66 | | | OTHER CHARGES | | | | | | |
| 67 | # | | E.P.C. | | 1 | 5.00 | | | |
| | | | **SUBTOTALS** | | | 3,165.52 | 14.5 | | 22.0 |

**Preliminary Estimate**

**Customer: Sasson, Ada**                                                                 **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

## ESTIMATE TOTALS

| Category | Basis | | Rate | Cost $ |
|---|---|---|---|---|
| Parts | | | | 3,160.52 |
| Body Labor | 10.9 hrs | @ | $ 105.00 /hr | 1,144.50 |
| Paint Labor | 22.0 hrs | @ | $ 105.00 /hr | 2,310.00 |
| Mechanical Labor | 3.6 hrs | @ | $ 249.00 /hr | 896.40 |
| Paint Supplies | 22.0 hrs | @ | $ 38.00 /hr | 836.00 |
| Other Charges | | | | 5.00 |
| Subtotal | | | | 8,352.42 |
| Sales Tax | $ 8,352.42 | @ | 7.0000 % | 584.67 |
| **Grand Total** | | | | **8,937.09** |
| Deductible | | | | 0.00 |
| **CUSTOMER PAY** | | | | **0.00** |
| **INSURANCE PAY** | | | | **8,937.09** |

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE(FLORIDA STATUTES TITLE XLVI, CHAPTER 817.234). FAILURE TO USE THE INSURANCE PROCEEDS IN ACCORDANCE WITH THE SECURITY AGREEMENT,IF ANY, COULD BE A VIOLATION OF S. 812.014, FLORIDA STATUTES. IF YOU HAVE ANY QUESTIONS, CONTACT YOUR LENDING INSTITUTION. IF A CHARGE FOR SHOP SUPPLIES OR HAZARDOUS OR OTHER WASTE REMOVAL IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: "THIS CHARGE REPRESENTS COSTS AND PROFITS TO THE MOTOR VEHICLE REPAIR FACILITY FOR MISCELLANEOUS SHOP SUPPLIES OR WASTE DISPOSAL." IF A CHARGE FOR NEW TIRES OR A NEW OR REMANUFACTURED LEAD-ACID BATTERY IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: A $1.00 FEE FOR EACH NEW MOTOR VEHICLE TIRE SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW MOTOR VEHICLE TIRES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX CHAPTER 403.718. A $1.50 FEE FOR EACH NEW OR REMANUFACTURED LEAD-ACID BATTERY SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW OR REMANUFACTURED LEAD-ACID BATTERIES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX 403.7185.

**Preliminary Estimate**

---

**Customer: Sasson, Ada**                                                **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data. Unless otherwise noted, (a) all items are derived from the Guide ERQ6965, CCC Data Date 06/09/2022, and potentially other third party sources of data; and (b) the parts presented are OEM-parts. OEM parts are manufactured by or for the vehicle's Original Equipment Manufacturer (OEM) according to OEM's specifications for U.S. distribution. OEM parts are available at OE/Vehicle dealerships or the specified supplier. OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships with discounted pricing. Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may have been modified or may have come from an alternate data source. Tilde sign (~) items indicate MOTOR Not-Included Labor operations. The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate. Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM, A/M or NAGS. Used parts are described as LKQ, RCY, or USED. Reconditioned parts are described as Recond. Recored parts are described as Recore. NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications. Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times. NAGS labor operation times are not included. Pound sign (#) items indicate manual entries.

Some 2022 vehicles contain minor changes from the previous year. For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used. The CCC ONE estimator has a list of applicable vehicles. Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component. s=MOTOR Structural component. T=Miscellaneous Taxed charge category. X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category. E=Electrical labor category. F=Frame labor category. G=Glass labor category. M=Mechanical labor category. S=Structural labor category. (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent. Algn.=Align. ALU=Aluminum. A/M=Aftermarket part. Blnd=Blend. BOR=Boron steel. CAPA=Certified Automotive Parts Association. D&R=Disconnect and Reconnect. HSS=High Strength Steel. HYD=Hydroformed Steel. Incl.=Included. LKQ=Like Kind and Quality. LT=Left. MAG=Magnesium. Non-Adj.=Non Adjacent. NSF=NSF International Certified Part. O/H=Overhaul. Qty=Quantity. Refn=Refinish. Repl=Replace. R&I=Remove and Install. R&R=Remove and Replace. Rpr=Repair. RT=Right. SAS=Sandwiched Steel. Sect=Section. Subl=Sublet. UHS=Ultra High Strength Steel. N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Intelligent Services Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair. EPA=Environmental Protection Agency. NHTSA= National Highway Transportation and Safety Administration. PDR=Paintless Dent Repair. VIN=Vehicle Identification Number.

---

# STUTTGART INTERNATIONAL

Stuttgart International Auto Body Collision
1055 NW 51ST CT, FORT LAUDERDALE, FL 33309
Phone: (954) 563-5011
FAX: (954) 351-0911

| | |
|---|---|
| Workfile ID: | 30916eef |
| PartsShare: | 6NnkvH |

## Preliminary Estimate

**Customer: Sasson, Ada**                                                     **Job Number:**

Written By: Daniel Pagan

| | | | | | |
|---|---|---|---|---|---|
| Insured: | Sasson, Ada | Policy #: | HAT # 4329 | Claim #: | HAT # 4329 |
| Type of Loss: | | Date of Loss: | | Days to Repair: | 0 |
| Point of Impact: | | | | | |

**Owner:**                           **Inspection Location:**                    **Insurance Company:**
Sasson, Ada                          STUTTGART INTERNATIONAL
(786) 586-2101 Business              1055 NW 51ST CT
                                     FORT LAUDERDALE, FL 33309
                                     Repair Facility
                                     (954) 563-5011 Business

## VEHICLE

2022 PORS Taycan RWD 4D SED Electric- Electric

| | | | | | | |
|---|---|---|---|---|---|---|
| VIN: | WP0AA2Y11NSA13378 | Interior Color: | | Mileage In: | | Vehicle Out: |
| License: | | Exterior Color: | | Mileage Out: | | |
| State: | | Production Date: | | Condition: | | Job #: |

| TRANSMISSION | CONVENIENCE | AM Radio | SEATS |
|---|---|---|---|
| Automatic Transmission | Air Conditioning | FM Radio | Bucket Seats |
| **POWER** | Intermittent Wipers | Stereo | Leather Seats |
| Power Steering | Tilt Wheel | Search/Seek | Heated Seats |
| Power Brakes | Cruise Control | Auxiliary Audio Connection | **WHEELS** |
| Power Windows | Rear Defogger | Satellite Radio | Aluminum/Alloy Wheels |
| Power Locks | Keyless Entry | **SAFETY** | **PAINT** |
| Power Mirrors | Message Center | Drivers Side Air Bag | Three Stage Paint |
| Heated Mirrors | Steering Wheel Touch Controls | Passenger Air Bag | Stone Guard |
| Power Driver Seat | Telescopic Wheel | Anti-Lock Brakes (4) | **OTHER** |
| Power Passenger Seat | Climate Control | 4 Wheel Disc Brakes | Traction Control |
| **DECOR** | Navigation System | Front Side Impact Air Bags | Stability Control |
| Dual Mirrors | Backup Camera | Head/Curtain Air Bags | Rear Spoiler |
| Tinted Glass | Parking Sensors | Hands Free Device | Xenon or L.E.D. Headlamps |
| Console/Storage | Home Link | Rear Side Impact Air Bags | Power Trunk/Liftgate |
| Overhead Console | **RADIO** | Lane Departure Warning | |

**Preliminary Estimate**

| **Customer: Sasson, Ada** | | | | | | | **Job Number:** |
|---|---|---|---|---|---|---|---|

2022 PORS Taycan RWD 4D SED Electric- Electric

| Line | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|---|---|---|---|---|---|---|---|
| 1 | # | PARTS PRICES ARE SUBJECT TO CHANGE | | 1 | | | |
| 2 | # | POSSIBLE HIDDEN DAMAGES | | 1 | | | |
| 3 | **FRONT BUMPER & GRILLE** | | | | | | |
| 4 | | O/H front bumper | | | | 3.2 | |
| 5 | Repl | Bumper cover w/auto park | 9J1807013AY | 1 | 1,116.91 | Incl. | 3.0 |
| 6 | | Add for Three Stage | | | | | 2.1 |
| 7 | | Add for camera | | | | m | 0.2 M |
| 8 | Repl | Spoiler | 9J1805741OK1 | 1 | 350.72 | Incl. | |
| 9 | Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | |
| 10 | Repl | LT Side bracket | 9J1807227B | 1 | 30.75 | 0.2 | |
| 11 | Repl | Center cover w/o adaptive cruise, w/o night vision | 9J1807823OK1 | 1 | 48.75 | 0.2 | |
| 12 | Repl | LT Corner trim | 9J1807833OK1 | 1 | 48.75 | Incl. | |
| 13 | Repl | LT Front bracket | 9J1807347AOK1 | 1 | 53.62 | 0.2 | |
| 14 | Repl | LT Outer grille | 9J1807681OK1 | 1 | 53.63 | Incl. | |
| 15 | Repl | LT Air duct Turbo, Turbo S | 9J1807014Y | 1 | 56.88 | | |
| 16 | R&I | LT Air inlet screen | | | | 0.2 | |
| 17 | R&I | RT Air inlet screen | | | | 0.2 | |
| 18 | * | R&I | Park sensor outer w/auto park | | | m | Incl. M |
| 19 | * | R&I | Park sensor inner w/auto park | | | m | Incl. M |
| 20 | | Refn | Park sensor outer w/auto park | | | m | 0.2 |
| 21 | | Add for Three Stage | | | | | 0.1 |
| 22 | | Refn | Park sensor inner w/auto park | | | m | 0.2 |
| 23 | | Add for Three Stage | | | | | 0.1 |
| 24 | **FRONT LAMPS** | | | | | | |
| 25 | Repl | LT Turn signal lamp | 9J1945061D | 1 | 74.05 | 0.2 | |
| 26 | R&I | RT Turn signal lamp | | | | 0.2 | |
| 27 | R&I | LT R&I headlamp assy | | | | 0.4 | |
| 28 | **HOOD** | | | | | | |
| 29 | R&I | Emblem | | | | 0.2 | |
| 30 | Repl | Emblem packing | 9P1853611 | 1 | 10.98 | | |
| 31 | **FENDER** | | | | | | |
| 32 | Repl | LT Fender w/o Turbo S | 9J1821101YGRV | 1 | 684.11 | 2.6 | 2.2 |
| 33 | | Add for Three Stage | | | | | 1.5 |
| 34 | Repl | LT Fender liner upper w/o Turbo S | 9J1810907D | 1 | 277.01 | Incl. | |
| 35 | R&I | LT Trim | | | | Incl. | |
| 36 | * | R&I | LT Charging port | | | m | 0.6 M |
| 37 | | R&I | LT Charging port cover | | | | 0.2 | |
| 38 | | Refn | LT Charging port cover | | | | | 0.8 |
| 39 | | Overlap Minor Panel | | | | | -0.2 |
| 40 | | Add for Three Stage | | | | | 0.2 |

**Preliminary Estimate**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Customer: Sasson, Ada** | | | | | | | **Job Number:** |

2022 PORS Taycan RWD 4D SED Electric- Electric

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 41 | **ELECTRICAL** | | | | | | | |
| 42 | * | R&I | Battery D&R | | | m | 0.4 | M |
| 43 | **WHEELS** | | | | | | | |
| 44 | | R&I | LT/Front R&I wheel | | | m | 0.1 | M |
| 45 | | R&I | RT/Front R&I wheel | | | m | 0.1 | M |
| 46 | **RESTRAINT SYSTEMS** | | | | | | | |
| 47 | | R&I | LT Ft impact sensor | | | m | 0.2 | M |
| 48 | **FRONT DOOR** | | | | | | | |
| 49 | | Blnd | LT Door shell | | | | | 1.8 |
| 50 | | R&I | LT Belt molding matte black | | | | 0.8 | |
| 51 | | R&I | LT R&I mirror | | | | 0.5 | |
| 52 | | R&I | LT Handle, outside | | | | 0.5 | |
| 53 | | R&I | LT R&I trim panel | | | | 0.8 | |
| 54 | **VEHICLE DIAGNOSTICS** | | | | | | | |
| 55 | * | | Pre-repair scan | 1 | | m | 1.0 | M |
| 56 | * | | Post-repair scan | 1 | | m | 1.0 | M |
| 57 | **MISCELLANEOUS OPERATIONS** | | | | | | | |
| 58 | | Repl | Cover car/bag | 1 | | | 0.2 | |
| 59 | # | | Prep & Seal Raw Bumper Cover | 1 | | | | 1.0 |
| 60 | # | | Tint Color & Letdown Panel | 1 | | | | 1.0 |
| 61 | # | | Sand & Buff | 1 | | | | 5.0 |
| 62 | # | | Flex Additive | 1 | 10.00 | | | |
| 63 | | | OTHER CHARGES | | | | | |
| 64 | # | | E.P.C. | 1 | 5.00 | | | |
| | | | **SUBTOTALS** | **3,066.50** | | **14.4** | | **19.0** |

## ESTIMATE TOTALS

| Category | Basis | | Rate | Cost $ |
|---|---|---|---|---|
| Parts | | | | 3,061.50 |
| Body Labor | 10.8 hrs | @ | $ 105.00 /hr | 1,134.00 |
| Paint Labor | 19.0 hrs | @ | $ 105.00 /hr | 1,995.00 |
| Mechanical Labor | 3.6 hrs | @ | $ 249.00 /hr | 896.40 |
| Paint Supplies | 19.0 hrs | @ | $ 38.00 /hr | 722.00 |
| Other Charges | | | | 5.00 |
| Subtotal | | | | 7,813.90 |
| Sales Tax | $ 7,813.90 | @ | 7.0000 % | 546.97 |
| **Grand Total** | | | | **8,360.87** |
| Deductible | | | | 0.00 |
| **CUSTOMER PAY** | | | | **0.00** |
| **INSURANCE PAY** | | | | **8,360.87** |

**Preliminary Estimate**

**Customer: Sasson, Ada**                                                                           **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE(FLORIDA STATUTES TITLE XLVI, CHAPTER 817.234). FAILURE TO USE THE INSURANCE PROCEEDS IN ACCORDANCE WITH THE SECURITY AGREEMENT,IF ANY, COULD BE A VIOLATION OF S. 812.014, FLORIDA STATUTES. IF YOU HAVE ANY QUESTIONS, CONTACT YOUR LENDING INSTITUTION. IF A CHARGE FOR SHOP SUPPLIES OR HAZARDOUS OR OTHER WASTE REMOVAL IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: "THIS CHARGE REPRESENTS COSTS AND PROFITS TO THE MOTOR VEHICLE REPAIR FACILITY FOR MISCELLANEOUS SHOP SUPPLIES OR WASTE DISPOSAL." IF A CHARGE FOR NEW TIRES OR A NEW OR REMANUFACTURED LEAD-ACID BATTERY IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: A $1.00 FEE FOR EACH NEW MOTOR VEHICLE TIRE SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW MOTOR VEHICLE TIRES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX CHAPTER 403.718. A $1.50 FEE FOR EACH NEW OR REMANUFACTURED LEAD-ACID BATTERY SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW OR REMANUFACTURED LEAD-ACID BATTERIES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX 403.7185.

**Preliminary Estimate**

| | |
|---|---|
| **Customer: Sasson, Ada** | **Job Number:** |

2022 PORS Taycan RWD 4D SED Electric- Electric

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data.  Unless otherwise noted, (a) all items are derived from the Guide ERQ6965, CCC Data Date 06/01/2022, and potentially other third party sources of data; and (b) the parts presented are OEM-parts.  OEM parts are manufactured by or for the vehicle's Original Equipment Manufacturer (OEM) according to OEM's specifications for U.S. distribution.  OEM parts are available at OE/Vehicle dealerships or the specified supplier.  OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships with discounted pricing.    Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may have been modified or may have come from an alternate data source.  Tilde sign (~) items indicate MOTOR Not-Included Labor operations.  The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate. Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM,  A/M or NAGS.  Used parts are described as LKQ, RCY, or USED.  Reconditioned parts are described as Recond.  Recored parts are described as Recore.  NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications.  Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times.  NAGS labor operation times are not included.  Pound sign (#) items indicate manual entries.

Some 2022 vehicles contain minor changes from the previous year.  For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used.  The CCC ONE estimator has a list of applicable vehicles.  Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component.  s=MOTOR Structural component.  T=Miscellaneous Taxed charge category.  X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category.  E=Electrical labor category.  F=Frame labor category.  G=Glass labor category.  M=Mechanical labor category.  S=Structural labor category.   (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent.  Algn.=Align.  ALU=Aluminum.  A/M=Aftermarket part.  Blnd=Blend.  BOR=Boron steel.  CAPA=Certified Automotive Parts Association.  D&R=Disconnect and Reconnect.  HSS=High Strength Steel.  HYD=Hydroformed Steel.  Incl.=Included.  LKQ=Like Kind and Quality.  LT=Left.  MAG=Magnesium.   Non-Adj.=Non Adjacent.  NSF=NSF International Certified Part.  O/H=Overhaul.  Qty=Quantity.  Refn=Refinish.  Repl=Replace.  R&I=Remove and Install.  R&R=Remove and Replace.  Rpr=Repair.  RT=Right.  SAS=Sandwiched Steel.  Sect=Section.  Subl=Sublet.  UHS=Ultra High Strength Steel.  N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Intelligent Services Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair.  EPA=Environmental Protection Agency.  NHTSA= National Highway Transportation and Safety Administration.  PDR=Paintless Dent Repair.  VIN=Vehicle Identification Number.

# STUTTGART INTERNATIONAL

| | | |
|---|---|---|
| | Workfile ID: | 30916eef |
| | PartsShare: | 6NnkvH |

Stuttgart International Auto Body Collision

1055 NW 51ST CT, FORT LAUDERDALE, FL 33309

Phone: (954) 563-5011

FAX: (954) 351-0911

## Preliminary Estimate

---

**Customer: Sasson, Ada**                                                                              **Job Number:**

Written By: Daniel Pagan

| | | | | | |
|---|---|---|---|---|---|
| Insured: | Sasson, Ada | Policy #: | HAT # 4329 | Claim #: | HAT # 4329 |
| Type of Loss: | | Date of Loss: | | Days to Repair: | 0 |
| Point of Impact: | | | | | |

**Owner:**                                       **Inspection Location:**                         **Insurance Company:**

Sasson, Ada                                     STUTTGART INTERNATIONAL

(786) 586-2101 Business               1055 NW 51ST CT

FORT LAUDERDALE, FL 33309

Repair Facility

(954) 563-5011 Business

---

## VEHICLE

2022 PORS Taycan RWD 4D SED Electric- Electric

| | | | | | | |
|---|---|---|---|---|---|---|
| VIN: | WP0AA2Y11NSA13378 | Interior Color: | | Mileage In: | | Vehicle Out: |
| License: | | Exterior Color: | | Mileage Out: | | |
| State: | | Production Date: | | Condition: | | Job #: |

---

| **TRANSMISSION** | **CONVENIENCE** | AM Radio | **SEATS** |
|---|---|---|---|
| Automatic Transmission | Air Conditioning | FM Radio | Bucket Seats |
| **POWER** | Intermittent Wipers | Stereo | Leather Seats |
| Power Steering | Tilt Wheel | Search/Seek | Heated Seats |
| Power Brakes | Cruise Control | Auxiliary Audio Connection | **WHEELS** |
| Power Windows | Rear Defogger | Satellite Radio | Aluminum/Alloy Wheels |
| Power Locks | Keyless Entry | **SAFETY** | **PAINT** |
| Power Mirrors | Message Center | Drivers Side Air Bag | Three Stage Paint |
| Heated Mirrors | Steering Wheel Touch Controls | Passenger Air Bag | Stone Guard |
| Power Driver Seat | Telescopic Wheel | Anti-Lock Brakes (4) | **OTHER** |
| Power Passenger Seat | Climate Control | 4 Wheel Disc Brakes | Traction Control |
| **DECOR** | Navigation System | Front Side Impact Air Bags | Stability Control |
| Dual Mirrors | Backup Camera | Head/Curtain Air Bags | Rear Spoiler |
| Tinted Glass | Parking Sensors | Hands Free Device | Xenon or L.E.D. Headlamps |
| Console/Storage | Home Link | Rear Side Impact Air Bags | Power Trunk/Liftgate |
| Overhead Console | **RADIO** | Lane Departure Warning | |

**Preliminary Estimate**

| Customer: Sasson, Ada | Job Number: |
|---|---|

2022 PORS Taycan RWD 4D SED Electric- Electric

| Line | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|---|---|---|---|---|---|---|---|
| 1 | # | PARTS PRICES ARE SUBJECT TO CHANGE | | 1 | | | |
| 2 | # | POSSIBLE HIDDEN DAMAGES | | 1 | | | |
| 3 | **FRONT BUMPER & GRILLE** | | | | | | |
| 4 | | O/H front bumper | | | | 3.2 | |
| 5 | Repl | Bumper cover w/auto park | 9J1807013AY | 1 | 1,116.91 | Incl. | 3.0 |
| 6 | | Add for Three Stage | | | | | 2.1 |
| 7 | | Add for camera | | | m | 0.2 M | |
| 8 | Repl | Spoiler | 9J18075410K1 | 1 | 350.72 | Incl. | |
| 9 | Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | |
| 10 | Repl | LT Side bracket | 9J1807227B | 1 | 30.75 | 0.2 | |
| 11 | Repl | Center cover w/o adaptive cruise, w/o night vision | 9J18078230K1 | 1 | 48.75 | 0.2 | |
| 12 | Repl | LT Corner trim | 9J18078330K1 | 1 | 48.75 | Incl. | |
| 13 | Repl | LT Front bracket | 9J1807347AOK1 | 1 | 53.62 | 0.2 | |
| 14 | Repl | LT Outer grille | 9J18076810K1 | 1 | 53.63 | Incl. | |
| 15 | Repl | LT Air duct Turbo, Turbo S | 9J1807014Y | 1 | 56.88 | | |
| 16 | R&I | LT Air inlet screen | | | | 0.2 | |
| 17 | R&I | RT Air inlet screen | | | | 0.2 | |
| 18 | * | R&I | Park sensor outer w/auto park | | m | Incl. M | |
| 19 | * | R&I | Park sensor inner w/auto park | | m | Incl. M | |
| 20 | | Refn | Park sensor outer w/auto park | | m | | 0.2 |
| 21 | | Add for Three Stage | | | | | 0.1 |
| 22 | | Refn | Park sensor inner w/auto park | | m | | 0.2 |
| 23 | | Add for Three Stage | | | | | 0.1 |
| 24 | **FRONT LAMPS** | | | | | | |
| 25 | Repl | LT Turn signal lamp | 9J1945061D | 1 | 74.05 | 0.2 | |
| 26 | R&I | RT Turn signal lamp | | | | 0.2 | |
| 27 | R&I | LT R&I headlamp assy | | | | 0.4 | |
| 28 | **HOOD** | | | | | | |
| 29 | R&I | Emblem | | | | 0.2 | |
| 30 | Repl | Emblem packing | 9P1853611 | 1 | 10.98 | | |
| 31 | **FENDER** | | | | | | |
| 32 | Repl | LT Fender w/o Turbo S | 9J1821101YGRV | 1 | 684.11 | 2.6 | 2.2 |
| 33 | | Add for Three Stage | | | | | 1.5 |
| 34 | Repl | LT Fender liner upper w/o Turbo S | 9J1810907D | 1 | 277.01 | Incl. | |
| 35 | R&I | LT Trim | | | | Incl. | |
| 36 | * | R&I | LT Charging port | | m | 0.6 M | |
| 37 | | R&I | LT Charging port cover | | | 0.2 | |
| 38 | | Refn | LT Charging port cover | | | | 0.8 |
| 39 | | Overlap Minor Panel | | | | | -0.2 |
| 40 | | Add for Three Stage | | | | | 0.2 |

**Preliminary Estimate**

| Customer: Sasson, Ada | | | | | | | Job Number: | |
|---|---|---|---|---|---|---|---|---|

2022 PORS Taycan RWD 4D SED Electric- Electric

| 41 | **ELECTRICAL** | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 42 | * | R&I | Battery D&R | | | m | 0.4 | M |
| 43 | **WHEELS** | | | | | | | |
| 44 | | R&I | LT/Front R&I wheel | | | m | 0.1 | M |
| 45 | | R&I | RT/Front R&I wheel | | | m | 0.1 | M |
| 46 | **RESTRAINT SYSTEMS** | | | | | | | |
| 47 | | R&I | LT Ft impact sensor | | | m | 0.2 | M |
| 48 | **FRONT DOOR** | | | | | | | |
| 49 | | Blnd | LT Door shell | | | | | 1.8 |
| 50 | | R&I | LT Belt molding matte black | | | | 0.8 | |
| 51 | | R&I | LT R&I mirror | | | | 0.5 | |
| 52 | | R&I | LT Handle, outside | | | | 0.5 | |
| 53 | | R&I | LT R&I trim panel | | | | 0.8 | |
| 54 | **VEHICLE DIAGNOSTICS** | | | | | | | |
| 55 | * | | Pre-repair scan | 1 | | m | 1.0 | M |
| 56 | * | | Post-repair scan | 1 | | m | 1.0 | M |
| 57 | **MISCELLANEOUS OPERATIONS** | | | | | | | |
| 58 | | Repl | Cover car/bag | 1 | | | 0.2 | |
| 59 | # | | Prep & Seal Raw Bumper Cover | 1 | | | | 1.0 |
| 60 | # | | Tint Color & Letdown Panel | 1 | | | | 1.0 |
| 61 | # | | Sand & Buff | 1 | | | | 5.0 |
| 62 | # | | Flex Additive | 1 | 10.00 | | | |
| 63 | | | OTHER CHARGES | | | | | |
| 64 | # | | E.P.C. | 1 | 5.00 | | | |
| | | | **SUBTOTALS** | **3,066.50** | | **14.4** | | **19.0** |

## ESTIMATE TOTALS

| Category | Basis | | Rate | Cost $ |
|---|---|---|---|---|
| Parts | | | | 3,061.50 |
| Body Labor | 10.8 hrs | @ | $ 105.00 /hr | 1,134.00 |
| Paint Labor | 19.0 hrs | @ | $ 105.00 /hr | 1,995.00 |
| Mechanical Labor | 3.6 hrs | @ | $ 249.00 /hr | 896.40 |
| Paint Supplies | 19.0 hrs | @ | $ 38.00 /hr | 722.00 |
| Other Charges | | | | 5.00 |
| Subtotal | | | | 7,813.90 |
| Sales Tax | $ 7,813.90 | @ | 7.0000 % | 546.97 |
| **Grand Total** | | | | **8,360.87** |
| Deductible | | | | 0.00 |
| **CUSTOMER PAY** | | | | **0.00** |
| **INSURANCE PAY** | | | | **8,360.87** |

**Preliminary Estimate**

**Customer: Sasson, Ada**                                                                      **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE(FLORIDA STATUTES TITLE XLVI, CHAPTER 817.234). FAILURE TO USE THE INSURANCE PROCEEDS IN ACCORDANCE WITH THE SECURITY AGREEMENT,IF ANY, COULD BE A VIOLATION OF S. 812.014, FLORIDA STATUTES. IF YOU HAVE ANY QUESTIONS, CONTACT YOUR LENDING INSTITUTION. IF A CHARGE FOR SHOP SUPPLIES OR HAZARDOUS OR OTHER WASTE REMOVAL IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: "THIS CHARGE REPRESENTS COSTS AND PROFITS TO THE MOTOR VEHICLE REPAIR FACILITY FOR MISCELLANEOUS SHOP SUPPLIES OR WASTE DISPOSAL." IF A CHARGE FOR NEW TIRES OR A NEW OR REMANUFACTURED LEAD-ACID BATTERY IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: A $1.00 FEE FOR EACH NEW MOTOR VEHICLE TIRE SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW MOTOR VEHICLE TIRES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX CHAPTER 403.718. A $1.50 FEE FOR EACH NEW OR REMANUFACTURED LEAD-ACID BATTERY SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW OR REMANUFACTURED LEAD-ACID BATTERIES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX 403.7185.

**Preliminary Estimate**

---

**Customer: Sasson, Ada**                                                                                                  **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

---

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data.  Unless otherwise noted, (a) all items are derived from the Guide ERQ6965, CCC Data Date 06/01/2022, and potentially other third party sources of data; and (b) the parts presented are OEM-parts.  OEM parts are manufactured by or for the vehicle's Original Equipment Manufacturer (OEM) according to OEM's specifications for U.S. distribution.  OEM parts are available at OE/Vehicle dealerships or the specified supplier.  OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships with discounted pricing.    Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may have been modified or may have come from an alternate data source.  Tilde sign (~) items indicate MOTOR Not-Included Labor operations.  The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate. Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM,  A/M or NAGS.  Used parts are described as LKQ, RCY, or USED.  Reconditioned parts are described as Recond.  Recored parts are described as Recore.  NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications.  Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times.  NAGS labor operation times are not included.  Pound sign (#) items indicate manual entries.

Some 2022 vehicles contain minor changes from the previous year.  For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used.  The CCC ONE estimator has a list of applicable vehicles.  Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component.  s=MOTOR Structural component.  T=Miscellaneous Taxed charge category.  X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category.  E=Electrical labor category.  F=Frame labor category.  G=Glass labor category.  M=Mechanical labor category.  S=Structural labor category.   (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent.  Algn.=Align.  ALU=Aluminum.  A/M=Aftermarket part.  Blnd=Blend.  BOR=Boron steel.  CAPA=Certified Automotive Parts Association.  D&R=Disconnect and Reconnect.  HSS=High Strength Steel.  HYD=Hydroformed Steel.  Incl.=Included.  LKQ=Like Kind and Quality.  LT=Left.  MAG=Magnesium.   Non-Adj.=Non Adjacent.  NSF=NSF International Certified Part.  O/H=Overhaul.  Qty=Quantity.  Refn=Refinish.  Repl=Replace.  R&I=Remove and Install.  R&R=Remove and Replace.  Rpr=Repair.  RT=Right.  SAS=Sandwiched Steel.  Sect=Section.  Subl=Sublet.  UHS=Ultra High Strength Steel.  N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Intelligent Services Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair.  EPA=Environmental Protection Agency.  NHTSA= National Highway Transportation and Safety Administration.  PDR=Paintless Dent Repair.  VIN=Vehicle Identification Number.







Filing # 161513005 E-Filed 11/18/2022 10:38:18 AM

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

          Plaintiff,

v.

           CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant.

_____/

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S
NOTICE OF SERVING FIRST SET OF INTERROGATORIES TO PLAINTIFF**

      Defendant, State Farm Mutual Automobile Insurance Company ("State Farm") by and through its undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.340, propounds the following Interrogatories to Plaintiff, Assaf Sasson, numbered one (1) through two (2), to be answered fully, in writing and under oath, within thirty (30) days from the date hereof.

Dated: November 18, 2022      Respectfully submitted,

                        */s/ Johanna W. Clark*
                        Johanna W. Clark
                        Florida Bar No.  196400
                        Christopher M. Paolini
                        Florida Bar No.  669199
                        CARLTON FIELDS, P.A.
                        200 S. Orange Avenue, Suite 1000
                        Orlando, Florida 32801
                        Tel:   (407) 849-0300
                        Fax:   (407) 648-9099
                        Email: jclark@carltonfields.com (primary)
                        Email: cpaolini@carltonfields.com (primary)
                        Email: dmonge@carltonfields.com (secondary)
                        Email:atokarz@carltonfields.com(secondary)
                        *Attorneys for State Farm Mutual Automobile Insurance Company*

1

131223833.1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 18, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com
*Attorneys for Plaintiff*

/s/ Johanna W. Clark
JOHANNA W. CLARK

2

131223833.1

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

           Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

           Defendant.

_____/

CASE NO: COINX-22-049821

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S FIRST SET OF INTERROGATORIES PROPOUNDED TO PLAINTIFF

Pursuant to Florida Rule of Civil Procedure 1.340, Defendant, State Farm Mutual Automobile Insurance Company ("State Farm") requests that Plaintiff, his agents, attorneys, representatives, and any others acting on his behalf, answer the following interrogatories in writing and under oath within thirty (30) days after service of this request.

## DEFINITIONS AND INSTRUCTIONS

Unless otherwise specified in these interrogatories, the following definitions apply:

The terms "you," "your" or "plaintiff" mean Assaf Sasson and all your agents, attorneys, consultants, accountants, predecessors and successors in interest and any other individual or entity associated or affiliated with you or purporting to act on your behalf with respect to the matter in question.

The following interrogatories call not only for knowledge of Assaf Sasson but also for all knowledge available to Assaf Sasson by reasonable inquiry, including inquiry of Plaintiff's representatives, agents, accountants and bookkeepers, and, if not privileged, the Plaintiff's attorneys.

131223833.1

Space is provided for answers to these Interrogatories. If such space is insufficient, please attach additional sheets as needed.

The singular and plural forms of any word shall be interchangeable, as shall masculine and feminine pronouns.

Connector words shall be construed conjunctively or disjunctively as necessary to bring within the scope of any request any information which might otherwise be construed to be outside the scope.

The terms "Defendant" and "State Farm" shall mean State Farm Mutual Automobile Insurance Company.

The term "document" means the original, duplicate or any copy of all written, printed, typed, recorded, graphic, electronic mail (e-mail), or photographic matter or sound reproduction including but not limited to: any and all writings, correspondence, memoranda, graphs, charts, photographs, film, estimates, receipts, invoices, contracts, ledgers, cancelled checks, books and records, internal memoranda, reports, studies, calendars, minutes, records of meetings, records of telephone conferences, computer printout of e-mails or other communications, pamphlets, training materials, accounting records (including financial as well as any inventory accounting), and notes prepared by you or others, including handwritten notes, phono-record, and/or other data compilations from which information can be obtained or translated through detection devices into reasonably useable form; it also includes any and all drafts of a document that differ in any way from a final version of a document. The word "document" is further defined to include all notes or notations on such document(s) and all exhibits or attachments or other materials affixed thereto.

131223833.1

The phrase "relating to," "relates to," or "related to" as used in this request is intended to and shall be interpreted to mean relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, contradicts, or is logically or factually connected with the repair charges, services, parts and materials, or any other issues described in the Plaintiff's Complaint.

The word "person" means individuals and all other entities having legal existence, including but not limited to, corporations, general partnerships, limited partnerships, professional associations, and governmental entities or governmental corporations.

The words "identify", "identity", and "identification" when used with respect to a person mean to state the full name and present or last known residence and business or permanent address of such person and, if a natural person, his/her present or last known job title, and the name and address of his/her present or last known employer.

The words "identify", "identity" and "identification" when used with respect to a document (including electronically stored information), means and includes the name and address of the custodian of the document, the location of the document, and a general description of the document, including the type of document (e.g., letter or memorandum) and, if electronically stored information the software application used to create it (e.g. MS Word or MS Excel Spreadsheet), the date, the subject matter, the name of each person who wrote, signed, initialed, dictated or otherwise participated in the preparation of the document, the name and address of each addressee (if any) and the name and address of each person who has possession, custody or control of such document. If any such document was, but is no longer in your

131223833.1

possession or subject to your control, state what disposition was made of it and the reason for its disposition.

The words "identify", "identity", and "identification" when used with respect to an act, occurrence, conversation, statement or conduct, including an alleged violation or breach (hereinafter collectively called an "act"), mean to: (1) describe the substance of each event constituting such an act and to state the date when such act occurred; (2) identify each person participating in such act; (3) identify each person present when such act occurred; (4) state whether the occurrence of such act was recorded or described in a document; (5) state whether such document, or a copy thereof, now exists; and (6) identify the person presently having possession, custody or control of each such document.

The words "identify", "identity", and "identification" when used in reference to any other item means to provide all information about the item being identified that is available to you, including a detailed description of the item, its location, and its custodian.

The word "communication" means any contact, oral or written, formal or informal, at any time or place, under any circumstance, in any manner, whereby a statement of any nature is transmitted or transferred, including any meeting or other conversation, and shall include, without limitation, any document relating to any such contact.

Unless otherwise defined herein, each word or term shall have the meaning ascribed to it in *Webster's Ninth New Collegiate Dictionary*.

If, in response to any of the interrogatories, you claim that information is privileged, please state, with regard to each designated claim of privilege, the following:

        a) The type of privilege claimed (*e.g.* attorney/client, work product, trade secret, etc.);

131223833.1

b) The person or persons providing the information;

c) All recipients of the information;

d) The date or dates of the disclosure of the information;

e) The subject matter of, or addressed by, the information;

f) Whether the information is contained in a document and, if so, the following:

The type of document (*e.g.* letter, or report, *etc.*);

       i. The author or authors of the document;

      ii. All recipients of the document;

     iii. The date of the document; and

     iv. The subject matter of, or addressed by, the document.

7

## **INTERROGATORIES**

1.   Identify the names and addresses of all person who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit and specify the subject matter about which the witness has knowledge.

2.   Describe in detail and itemize the repair operations and the respective charges/amounts for each line item for which you seek declaratory relief, including but not limited to the following:

a) a detailed description of each and every repair operation at issue;

b) any and all parts at issue;

c) the manufacturer's part number;

d) the price of the manufacturer's part number;

e) any adjustment made to the manufacturer's part price;

f) the number of labor hours sought for each itemized repair operation;

g) the type of labor hour (e.g., body, refinish, frame) for each repair operation at issue;

h) the rate of each specific labor hour;

i) the amount of paint and materials; and

j) the amount of sales tax for each part or material.

131223833.1

## **VERIFICATION PAGE**

I AM AWARE THAT ANY MATERIALLY FALSE STATEMENT KNOWINGLY MADE WITH THE INTENT TO DEFRAUD OR MISLEAD SHALL SUBJECT ME TO THE PENALTY FOR PERJURY AND MAY BE CONSIDERED A FRAUD UPON THE COURT.

THE FOREGOING ANSWERS TO INTERROGATORIES ARE TRUE AND CORRECT.

_____
ASSAF SASSON

STATE OF FLORIDA
COUNTY OF _____

THE FOREGOING INSTRUMENT was sworn to and subscribed before me this ___ day of _____, 2022, by Assaf Sasson.  He ☐ is personally known to me, or ☐ has produced his/her (state) _____ driver's license, or _____ (type of identification) as identification.

_____
Notary Public
State of: _____
My Commission Expires:_____

9

Case 0:23-cv-61594-RS   Document 1-3   Entered on FLSD Docket 08/18/2023   Page 251 of 1096

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

               Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

               Defendant.

_____/

CASE NO: COINX-22-049821

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S
NOTICE OF SERVING PROPOSAL FOR SETTLEMENT TO PLAINTIFF**

      Defendant, State Farm Mutual Automobile Insurance Company, gives notice that it has

served a Proposal for Settlement to Plaintiff, Assaf Sasson, pursuant to Florida Rule of Civil

Procedure 1.442 and Florida Statutes Section 768.79.

Dated: November 18, 2022             Respectfully submitted,

                                      */s/ Johanna W. Clark*_____
                                        Johanna W. Clark
                                        Florida Bar No.  196400
                                        Christopher M. Paolini
                                        Florida Bar No. 669199
                                        CARLTON FIELDS, P.A.
                                        200 S. Orange Avenue, Suite 1000
                                        Orlando, Florida 32801
                                        Phone:   (407) 849-0300
                                        Fax:     (407) 648-9099
                                        Email: jclark@carltonfields.com (*primary*)
                                        Email: cpaolini@carltonfields.com (*primary*)
                                        Email: dmonge@carltonfields.com *(secondary)*
                                        Email: atokarz@carltonfields.com *(secondary)*
                                        *Attorneys for Defendant, State Farm Mutual
Automobile Insurance Company*

1

129173630.2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 18, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

/s/ Johanna W. Clark
JOHANNA W. CLARK

129173630.2

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

            Plaintiff,

v.

CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

            Defendant.

_____/

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S
PROPOSAL FOR SETTLEMENT TO PLAINTIFF**

Defendant, State Farm Mutual Automobile Insurance Company ( "State Farm"), hereby serves its Proposal for Settlement and Offer of Judgment ("Proposal") to Plaintiff, Assaf Sasson ("Plaintiff"), pursuant to Rule 1.442, Florida Rules of Civil Procedure, and Section 768.79, Florida Statutes.  In accordance therewith, State Farm states as follows:

1.      This Proposal is made by State Farm, and is extended to Plaintiff.

2.      This Proposal is attempting to resolve all damages that would otherwise be awarded in a final judgment in the action in which this Proposal is served.  This Proposal does not seek to resolve any other litigation between Plaintiff and State Farm.

3.      The Total Amount of this Proposal is One Hundred Dollars ($100.00), inclusive of attorneys' fees (which are part of Plaintiff's legal claims), costs, and all relief that could be awarded in a final judgment against State Farm in the above-captioned litigation, which amount will be paid to Plaintiff. The non-monetary terms of this Proposal are those conditions stated in Paragraph 4.

4.      The non-monetary terms of this Proposal are that, upon acceptance and payment of the Total Amount of this Proposal set forth in Paragraph 3, Plaintiff will file with the Court a

1

129173630.2

Notice of Voluntary Dismissal with Prejudice of Plaintiff's claims against State Farm in the above-captioned litigation, with each party to bear its own attorneys' fees and costs.

5.      Plaintiff's claims against State Farm relative to this Proposal do not include a claim for punitive damages; thus, no amount ($0.00) of this Proposal is apportioned to settle a claim for punitive damages.

6.      In accordance with the applicable Rules, this Proposal shall be deemed rejected unless accepted by delivery of a written notice of acceptance within thirty (30) days after service of this Proposal.

7.      This Proposal is made in good faith and based on State Farm's good faith judgment as to the complete lack of merit of Plaintiff's claims against it as a matter of fact and law. This Proposal should not be construed as any admission of liability, but as an attempt to avoid unnecessary expenses of litigation.

Dated: November 18, 2022                    Respectfully submitted,

                                            /s/ Johanna W. Clark
                                            Johanna W. Clark
                                            Florida Bar No.  196400
                                            Christopher M. Paolini
                                            Florida Bar No. 669199
                                            CARLTON FIELDS, P.A.
                                            200 S. Orange Avenue, Suite 1000
                                            Orlando, Florida 32801
                                            Phone:    (407) 849-0300
                                            Fax:      (407) 648-9099
                                            Email: jclark@carltonfields.com (*primary*)
                                            Email: cpaolini@carltonfields.com (*primary*)
                                            Email: dmonge@carltonfields.com (*secondary*)
                                            Email: atokarz@carltonfields.com (*secondary*)
                                            *Attorneys for Defendant, State Farm Mutual*
                                            *Automobile Insurance Company*

2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 18, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

/s/ *Johanna W. Clark*
JOHANNA W. CLARK

3

129173630.2

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. COINX-22-049821

ASSAF SASSON,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
Defendant.
_____/.

EXPERT WITNESS LIST

Plaintiff, ASSAF SASSON, hereby files this expert witness list pursuant to this

Court's case management order:

1.  Daniel Pagan
    Stuttgart International
    1055 NW 51 Ct.
    Fort Lauderdale, FL 33309

    Note that Daniel Pagan is a fact witness in this case, however his testimony may
    involve expert opinions regarding the reasonable cost of repairs. He is therefore
    being listed as an expert witness in an abundance of caution.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by email

this 12th day of December, 2022, to all registered participants of the Florida e-filing portal.

Daren Stabinski P.A.
1213 N.E. First Street
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com

__/s/ *Daren Stabinski*_____
Daren Stabinski, Esq.
Fla. Bar No. 002951

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

          Plaintiff,

v.

      CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant.

_____/

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S**
**EXPERT WITNESS DISCLOSURE**

Defendant, State Farm Mutual Automobile Insurance Company, pursuant to the Court's

November 2, 2022 Case Management Order, hereby serves its expert witness disclosure and

states:

1.    **Expert Witness:**  Steven Ellenthal

2.    **Expert's Address:**  6264 NW 125 Avenue, Coral Springs, FL 33076

Dated: December 12, 2022        Respectfully submitted,

          */s/ Johanna W. Clark*_____
          Johanna W. Clark
          Florida Bar No. 196400
          Christopher M. Paolini
          Florida Bar No. 669199
          CARLTON FIELDS, P.A.
          200 S. Orange Avenue, Suite 1000
          Orlando, Florida 32801
          Phone:    (407) 849-0300
          Fax:     (407) 648-9099
          Email: jclark@carltonfields.com (*primary*)
          Email: cpaolini@carltonfields.com (*primary*)
          Email: dmonge@carltonfields.com (*secondary*)
          Email: atokarz@carltonfields.com (*secondary*)
          *Attorneys for Defendant, State Farm Mutual*
          *Automobile Insurance Company*

1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 12, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

<div align="right">

*/s/ Johanna W. Clark*
JOHANNA W. CLARK

</div>

2

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. COINX-22-049821

ASSAF SASSON,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
Defendant.
_____/

AMENDED EXPERT WITNESS LIST (pursuant to agreement by counsel)

Plaintiff, ASSAF SASSON, hereby files this expert witness list pursuant to this

Court's case management order:

1. Daniel Pagan
   Stuttgart International
   1055 NW 51 Ct.
   Fort Lauderdale, FL 33309

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by email

this 12th day of December, 2022, to all registered participants of the Florida e-filing portal.

Daren Stabinski P.A.
1213 N.E. First Street
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

___/s/ *Daren Stabinski*_____
Daren Stabinski, Esq.
Fla. Bar No. 002951

Case 0:23-cv-61594-RS   Document 1-3   Entered on FLSD Docket 08/18/2023   Page 260 of 1096

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

               Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

               Defendant.

_____/

CASE NO: COINX-22-049821

### STATE FARM'S MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS LIST AS DEFICIENT AND FOR FAILURE TO COMPLY WITH THE PRETRIAL ORDER

Defendant, State Farm Mutual Automobile Insurance Company, by and through undersigned counsel, pursuant to this Court's November 2, 2022 Uniform Order Setting Pretrial Deadlines and Related Requirements and Fla. R. Civ. P. 1.280(b)(5), hereby files this Motion to Strike Plaintiff's Expert Witness List and in support thereof submits as follows:

1.      November 2, 2022 the Court issued its Uniform Order Setting Pretrial Deadlines and Related Requirements (the "Pretrial Order").

2.      The Pretrial Order required Plaintiff to disclose its expert on or before December 2, 2022.

3.      Plaintiff did not disclose any experts on or before December 2, 2022.

4.      On December 12, 2022, twenty minutes after State Farm timely disclosed its expert in compliance with the Pretrial Order, Plaintiff filed his purported Expert Witness List disclosing Daniel Pagan as a fact witness and possibly an expert witness in "an abundance of caution."

5.      Plaintiff's expert witness must be excluded because Plaintiff's disclosure was not timely made pursuant to the Court's Pretrial Order.

1

6.     Further, ostensibly to afford himself 1) the option of shielding Mr. Pagan from expert questioning or 2) at Plaintiff's discretion *at any time* to present Mr. Pagan as an expert, Plaintiff's purported disclosure is improper pursuant to the Pretrial Order.

7.     Plaintiff's obligation under the Pretrial Order was to disclose his expert by December 2, 2022, which Plaintiff did not do.  In addition, Plaintiff's obligation was to disclose his expert by December 2, 2022, not disclose the "possibility" of an expert.

8.     Therefore, Plaintiff has failed to timely and properly disclose Daniel Pagan as an expert and his attempt to "kind of" disclose him as an expert violates the Court's Order.

9.     The general rule is that a trial court can properly exclude the testimony of a witness whose name has not been disclosed in accordance with a pretrial order. *Binger v. King Pest Control*, 401 So. 2d 1310, 1313 (Fla. 1981).

10.     "Requiring reasonable compliance with a pretrial order directing witnesses' disclosure will help to eliminate surprise and avoid trial by ambush." *Id.*

11.     The *Binger* factors which govern the trial court's exercise of discretion in excluding testimony of witnesses whose name has not been disclosed in accordance with pretrial order are: (i) the objecting party's ability to cure prejudice or, similarly, his independent knowledge of existence of witness; (ii) the calling party's possible intentional, or bad faith, noncompliance with pretrial order, and; (iii) possible disruption of orderly and efficient trial of case. *Id.*

12.     Plaintiff's noncompliance with the Pretrial Order and failure to timely identify a witness as an expert witness has prevented proper preparation by State Farm. *See Binger*, 401 So. 2d 1310.

2

13.     State Farm will be substantially prejudiced if Plaintiff's late-reported and mischaracterized expert witness were to testify at trial.

14.     State Farm will be unable to cure said prejudice resulting from Plaintiff's late-reported and half-hearted disclosure.

15.     Plaintiff's noncompliance with the Pretrial Order will result in the disruption of an orderly and efficient trial of the case.

WHEREFORE, Defendant respectfully requests that this Court exclude the witness listed in Plaintiff's Expert Witness List, or, alternatively, if after considering all relevant *Binger* factors, this Court concludes that use of the undisclosed witness will not substantially endanger the fairness of the proceeding, State Farm requests that the Pretrial Order mandating the disclosure be modified, that Plaintiff be ordered to definitively list its expert(s) and for any other relief this honorable Court deems just and proper.

Dated: December 13, 2022                    Respectfully submitted,

                                            */s/ Johanna W. Clark*
                                            Johanna W. Clark
                                            Florida Bar No. 196400
                                            Miguel A. Rodriguez
                                            Florida Bar No. 1002585
                                            CARLTON FIELDS, P.A.
                                            200 S. Orange Avenue, Suite 1000
                                            Orlando, Florida 32801
                                            Phone:    (407) 849-0300
                                            Fax:      (407) 648-9099
                                            Email: jclark@carltonfields.com (*primary*)
                                            Email: cpaolini@carltonfields.com (*primary*)
                                            Email: dmonge@carltonfields.com (*secondary*)
                                            Email: atokarz@carltonfields.com (*secondary*)
                                            *Attorneys for Defendant, State Farm Mutual*
                                            *Automobile Insurance Company*

**THIS SPACE HAS BEEN INTENTIONALLY LEFT BLANK**
*(Certificate of Service follows)*

131484381.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 13, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

*/s/ Johanna W. Clark*
JOHANNA W. CLARK

4

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

               Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

               Defendant.

_____/

CASE NO: COINX-22-049821

### STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF WITHDRAWAL OF STATE FARM'S MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS LIST AS DEFICIENT AND FOR FAILURE TO COMPLY WITH THE PRETRIAL ORDER

Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), by and through undersigned counsel, hereby files its Notice of Withdrawal of State Farm's Motion to Strike Plaintiff's Expert Witness List as Deficient and For Failure to Comply with the Pretrial Order, filed December 13, 2022 (Filing No. 162924423).

Dated: December 13, 2022

/s/ *Johanna W. Clark*
Johanna W. Clark
Florida Bar No.  196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:        (407) 648-9099
Email: jclark@carltonfields.com (*primary*)
Email: marodriguez@carltonfields.com (*primary*)
Email: dmonge@carltonfields.com (*secondary*)
Email: atokarz@carltonfields.com (*secondary*)
*Attorneys for Defendant, State Farm Mutual Automobile Insurance Company*

1

131489395.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 13, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

<div style="text-align:right">

*/s/ Johanna W. Clark*
JOHANNA W. CLARK

</div>

131489395.1

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

               Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

               Defendant.

_____/

CASE NO: COINX-22-049821

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S
EXPERT WITNESS REQUEST FOR PRODUCTION TO PLAINTIFF**

      Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), by and through its undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.350, requests that Plaintiff, produce for inspection and copying at the offices of the undersigned attorneys, within thirty (30) days of the date of service of this request, the documents and things described in the requests that appear below.

**EXPERT WITNESS REQUESTS FOR PRODUCTION TO PLAINTIFF**

      1.     A copy of the resume or Curriculum Vitae of all experts identified in your answer to Interrogatory No. 1 of State Farm's Expert Interrogatories.

      2.     A copy of the entire file for each and every expert identified in your answer to Interrogatory No. 1 of State Farm's Expert Interrogatories.

      3.     Any and all documents or other materials provided to or received from each and every expert witness identified in your answer to Interrogatory No. 1 of State Farm's State Farm's Expert Interrogatories.

      4.     Any and all documents identified in your answer to State Farm's Expert Interrogatories.

131527682.1

5.      Any and all retainer agreements, contracts, bills, invoices and records of payment between Plaintiffs and each and every expert identified in your answer to Interrogatory No. 1 of State Farm's Expert Interrogatories.

6.      Any and all reports, including but not limited to drafts of reports created or written by or on behalf of all experts identified in your answer to Interrogatory No. 1 of State Farm's Expert Interrogatories.

7.      Any and all communications, including but not limited to emails, letters, notes and faxes, sent to or received from all experts identified in your answer to Interrogatory No. 1 of State Farm's Expert Interrogatories  regarding any of the issues in this case.

8.      Any and all drawings, charts, graphs, videos, photographs, animations, reconstructions, diagrams, and analyses created by, received from or sent to any of the experts identified in your answer to Interrogatory No. 1 of State Farm's Expert Interrogatories.

9.      All materials, information or data, including electronic data, reviewed by each and every expert identified in your answer to Interrogatory No. 1 of State Farm's Expert Interrogatories  regarding this case, whether or not relied upon in formulating his/her final opinions, including publications, books, statutes, rules, standards, protocols, policies, procedures or other items whether or not contained in the expert's file.

10.      A list or other documentation identifying the cases in which each and every expert identified in your answer to Interrogatory No. 1 of State Farm's Expert Interrogatories  testified at trial or by deposition during the last seven years and a copy of the transcript of such testimony.

Dated: December 19, 2022

Respectfully submitted,

/s/ Johanna W. Clark
Johanna W. Clark
Florida Bar No.  196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:        (407) 648-9099
Email: jclark@carltonfields.com (*primary*)
Email: marodriguez@carltonfields.com (*primary*)
Email: dmonge@carltonfields.com (*secondary*)
Email: atokarz@carltonfields.com (*secondary*)
*Attorneys for Defendant, State Farm Mutual*
*Automobile Insurance Company*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 19, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

/s/ Johanna W. Clark
JOHANNA W. CLARK

131527682.1

3

Filing # 163307736 E-Filed 12/19/2022 02:15:37 PM

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

          Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant.

_____/

CASE NO: COINX-22-049821

### DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF SERVING OF EXPERT INTERROGATORIES TO PLAINTIFF

Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), by and through its undersigned counsel, hereby gives notice of propounding the attached Expert Interrogatories to Plaintiff to be answered in writing, under oath, and within the time provided by the Florida Rules of Civil Procedure.

Dated: December 19, 2022

Respectfully submitted,

/s/ Johanna W. Clark_____
Johanna W. Clark
Florida Bar No.  196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:        (407) 648-9099
Email: jclark@carltonfields.com (*primary*)
Email: marodriguez@carltonfields.com (*primary*)
Email: dmonge@carltonfields.com (*secondary*)
Email: atokarz@carltonfields.com (*secondary*)
*Attorneys for Defendant, State Farm Mutual Automobile Insurance Company*

1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 19, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

<div align="right">

*/s/ Johanna W. Clark*
JOHANNA W. CLARK

</div>

131527724.1

## <u>EXPERT INTERROGATORIES TO PLAINTIFF</u>

1.      Please state the name and address of each person expected by you or your attorneys to testify as an expert witness during the trial of this matter.

        **ANSWER:**

2.      Please state the following information for each expert witness listed in #1 above.

        a)      His or her profession or occupation, and the field in which he is allegedly an expert.

        **ANSWER:**

        b)      The name and address of each school he/she attended and a description of each degree received.

        **ANSWER:**

        c)      The name of any professional or trade association of which he/she is a member.

        **ANSWER:**

d)      The title, subject matter, publisher and date of publication of any books, papers or articles on subjects in his/her field.

     **ANSWER:**

e)      The number of years he/she has practiced or worked in his field.

     **ANSWER:**

f)      His/her places of employment for the past ten (10) years.

     **ANSWER:**

g)      The subject matter on which he/she is expected to testify.

     **ANSWER:**

4

3.  Please state whether any of your experts listed in #1 above have determined any facts or formed any opinions concerning any issues involved in this case.

    **ANSWER:**

    If so, please state:

    a)  The name of the expert or experts, and the issue about which he/she has an opinion.

        **ANSWER:**

    b)  The fact or facts determined and the opinion or opinions formed by each expert.

        **ANSWER:**

    c)  The substance of the facts relied on by each expert in arriving at his/her opinion or opinions.

        **ANSWER:**

    d)  A summary of the grounds relied on by each expert in reaching his/her opinion.

        **ANSWER:**

131527724.1

e)      Give a complete list of all documents, deposition, exhibits, plans, drawings, ordinances or statutes which each expert has used in reaching his/her opinion.

**ANSWER:**

4.      Did any expert listed in #1 above submit a report setting forth his/her opinions or conclusions reached?

**ANSWER:**

If so, please state:

a)      The name of each such expert.

**ANSWER:**

b)      A description of each report that was made.

**ANSWER:**

c)      The date that each report was made.

**ANSWER:**

d)      The date his report was submitted and who submitted it.

131527724.1

**ANSWER:**

e)   The name or other means of identification of the person to whom this report was submitted and the name and address of the person who has present custody of the report.

   **ANSWER:**

f)   A summary of the contents of each report (and produce the report pursuant to Florida Rule of Civil Procedure 1.350).

   **ANSWER:**

5.   For each expert identified in #1, please describe the scope of his/her employment in this matter, including specifically the tasks and assignments given to the expert, and the compensation being paid for the services being provided.

   **ANSWER:**

131527724.1

6.      For each expert identified in #1, describe the expert's general litigation experience, including the percentage of work performed for plaintiffs and defendants.

      **ANSWER:**

7.      Identify other cases in which each expert identified in #1 has testified, at trial or by deposition, within the last seven years.

      **ANSWER:**

8.    For each expert identified in #1, provide the approximate percentage of hours (of total working hours) and percentage of earned income (of total earned income) he/she derives from serving as an expert witness during the last seven years.

       **ANSWER:**

9.    For each expert identified in #1, please describe how he/she will be compensated for services including the expert's rate for services and the total amount to be paid.

       **ANSWER:**

## <u>VERIFICATION</u>

The foregoing answers to interrogatories are true and correct.

By: _____

Name: _____


STATE OF FLORIDA

COUNTY OF _____

THE FOREGOING INSTRUMENT was sworn to and subscribed before me this ___ day of _____, 20___, by _____. He /_____/ is personally known to me, or has produced /_____/ his/her (state) _____ driver's license, or /_____/ (type of identification) _____ as identification.

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 20___.


_____
Notary Public
My Commission Expires:

Case 0:23-cv-61594-RS Document 1-3 Entered on FLSD Docket 08/18/2023 Page 279 of 1096

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:

ASSAF SASSON,

     Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

_____/

## PLAINTIFFS' NOTICE OF SERVICE OF INTERROGATORIES TO DEFENDANT

Plaintiff, ASSAF SASSON, by and through their undersigned counsel, and pursuant to Fla.R.Civ.P. 1.340, hereby file notice that certain Interrogatories, numbered 1 through 14 were propounded upon the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, to be answered in writing, under oath, within thirty days from date of service of same.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by email this 20h day of December, 2022, to all registered participants of the Florida e-filing portal.

Daren Stabinski P.A.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com

__/s/ *Daren Stabinski*_____
Daren Stabinski, Esq.
Fla. Bar. No. 002951

1.   State the name, address, and profession of each person whom you expect to call as an expert witness at trial or for any other purpose in this cause.

2.   With regard to each person listed above, state his/her background, education, and experience which qualifies him/her to testify as an expert in his/her area of expertise.

3.    State the substance of the facts to which each expert listed is expected to testify.

4.   Give a complete list of all documents, records, depositions, exhibits, plans, drawings, ordinances, regulations, statutes or other documents which each expert has used in formulating his/her opinion.

5.   State the opinions to which the aforementioned experts are expected to testify.

6.      Give a summary of the grounds or bases of each opinion stated.

7.      What is the scope of employment in the pending case and the compensation for such service?

8.      For each expert, state the expert's general litigation experience, including the percentage of work performed for plaintiffs and defendants.

9.      State the identity of other cases, within the preceding three (3) years, in which each expert has testified at deposition or trial.

10.    Provide an approximation for each expert as to the portion of the expert's professional time or work involved as an expert witness, which may be based on the number of hours, percentage of total hours, or the percentage of earned income derived from serving as an expert witness.

11.    Did any expert submit any other reports based upon tests, examinations, or analyses of documents that he/she conducted in which he/she did not render an opinion?

   If so, state:
   a) The description of each report that was made.

   b) The date that each report was made.

   c) The name or other means of identification of the person to whom each report was submitted.

   d) The name and address of the person who has present custody of said report.

12.    Is the expert to be compensated for his/her work and efforts in connection with this action?

   a)  If so, how much is he/she to be paid?

   b)  If he/she has not been paid, then give the basis for payment, such as hourly rate, weekly rate, etc.

13.     State the date when each expert was retained.

14.     If there are any experts that you intend to call at trial whose opinions are incomplete, please state the names of each such expert and when you expect his/her opinion to be complete.

_____

_____

STATE OF FLORIDA

COUNTY OF _____

I HEREBY CERTIFY that on this day personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments, _____, and _____, who says that the foregoing responses to interrogatories are true and correct. He/she is personally known to me or has produced his/her driver's license as identification and has taken an oath.

SWORN TO AND SUBSCRIBED BEFORE ME on _____, 2022.

_____

NOTARY PUBLIC

My Commission Expires



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 25417038**
**Date Processed: 08/19/2022**

| | |
|---|---|
| **Primary Contact:** | State Farm Enterprise SOP<br>Corporation Service Company- Wilmington, DELAWARE<br>251 Little Falls Dr<br>Wilmington, DE 19808-1674 |

| | |
|---|---|
| **Entity:** | State Farm Mutual Automobile Insurance Company<br>Entity ID Number  3461675 |
| **Entity Served:** | State Farm Mutual Automobile Insurance Company |
| **Title of Action:** | Assaf Sasson vs. State Farm Mutual Automobile Insurance Company |
| **Matter Name/ID:** | Assaf Sasson vs. State Farm Mutual Automobile Insurance Company (12765601) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Broward County Court, FL |
| **Case/Reference No:** | DFS#22-000303435/COINX-22-049821 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 08/19/2022 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | FL DFS on 08/17/2022 |
| **How Served:** | Electronic SOP |
| **Sender Information:** | Daren Stabinski P.A.<br>954-324-1552 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

*22-000303435*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

ASSAF SASSON

PLAINTIFF(S)

VS.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT, DISCOVERY

| | |
|---|---|
| CASE #: | COINX-22-049821 |
| COURT: | COUNTY COURT |
| COUNTY: | BROWARD |
| DFS-SOP #: | 22-000303435 |

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Wednesday, August 17, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Friday, August 19, 2022 to the designated agent for the named entity as shown below.

> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
> LYNETTE COLEMAN
> 1201 HAYS STREET
> TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080**

Jimmy Patronis
Chief Financial Officer

DAREN STABINSKI
PARTNER
DAREN STABINSKI P.A.
100 N FEDERAL HWY
APT 524
FT LAUDERDALE, FL 33301

BL1

SF-Sasson, Assaf - 000103

IN THE COUNTY COURT IN AND
FOR BROWARD COUNTY, FLORIDA

CASE NO.   COINX-22-049821

ASSAF SASSON,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

 Defendant.
_____ /

### S U M M O N S

THE STATE OF FLORIDA:

To Each Sheriff of Said State:

       **YOU ARE COMMANDED** to serve this Summons along with a copy of the Complaint, Notice of Service

of Interrogatories, Interrogatories, and Request for Production, in this lawsuit on the Defendant:

| | |
|---|---|
| PLEASE SERVE: | STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY |
| BY SERVING: | CHIEF FINANCIAL OFFICER |
| | 300 East Gaines Street |
| | Tallahassee, FL 32399 |

Each defendant is required to serve written defenses to the Complaint on the Plaintiff's attorney, to wit: **Daren**

**Stabinski, Esq., Daren Stabinski P.A., 100 N. Federal Hwy, #524, Fort Lauderdale, FL 33301,**

**daren@darenstabinskipa.com,** within twenty (20) days after service of this Summons on that Defendant, exclusive

of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on

Plaintiff's attorney, or immediately thereafter.  If a defendant fails to do so, a default will be entered against that

defendant for the relief demanded in the Complaint or Petition.  Discovery is to be answered within 45 days of the

service of the Complaint.

____ of __     AUG 17 2022

                 As Clerk of said Court

                 By: _____
                     as Deputy Clerk

BRENDA D. FORMAN

SF-Sasson, Assaf - 000104

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.  COINX-22-049821

ASSAF SASSON,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
Defendant.

_____/

## COMPLAINT

COMES NOW, the Plaintiff, ASSAF SASSON, by and through undersigned
counsel, hereby sues the Defendant, STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and in support thereof alleges:

1. This is a petition within the jurisdictional limits of this Court exclusive of interest,
   costs, attorney's fees.

2. At all times material hereto, the Defendant, STATE FARM MUTUAL AUTOMOBILE
   INSURANCE COMPANY was a duly authorized insurance company, organized and
   incorporated under the Laws of Florida or authorized to transact insurance business
   in the State of Florida.

3. At all times material hereto, the Plaintiff, ASSAF SASSON was and is over the
   age of 18 and sui juris.

4. Venue is proper in Broward County, Florida, because this claim arose in Broward
   County, Florida, and the Defendant sufficiently transacts business in Broward

SF-Sasson, Assaf - 000105

County, Florida.

5. For valuable consideration, at all times material hereto, the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, issued a policy of automobile insurance, that included collision benefits, which provided coverage to Plaintiff under Policy Number J53-4643-B02-59C (The Plaintiff is not in possession of the complete policy of insurance, and therefore, is unable to attach a true and correct copy hereto, however the declarations page of the policy is attached hereto).

6. Pursuant to the terms thereof, the Defendant agreed to pay collision benefits to repair or replace Plaintiff's 2022 Porsche Taycan in the event of an accident.

7. On or about May 27, 2022, ADA SASSON, an insured under said policy, was traveling in the above insured vehicle and was involved in an automobile accident in Broward County, Florida.  Said vehicle was insured under said insurance policy.

8. Said automobile accident caused the Plaintiff's vehicle to suffer damages.

9. The Plaintiff, ASSAF SASSON, submitted a claim for collision benefits to the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for payment related to the damages to his automobile suffered in the above-mentioned motor vehicle accident, under claim number 59-34T0-34F.

10. The Plaintiff has complied with all statutory conditions precedent to recovering benefits under said policy.

11. As the subject vehicle is a luxury foreign vehicle, on or about May 31, 2022, Plaintiff brought the vehicle to Stuttgart International, in Broward County,

SF-Sasson, Assaf - 000106

Florida, a collision body shop that specializes in repairing such vehicles.

12. Stuttgart International created an estimate of repairs to the subject vehicle in the amount of $8,360.87.  Said estimate was provided to Defendant.

13. On or about July 1, 2022, Defendant created an estimate of damages to the subject vehicle in the amount of $6,267.03, and only agreed to pay that amount for repair to the vehicle less a $500.00 deductible.

14. To date, Defendant has refused and continues to refuse to pay Plaintiff the amount of the estimate created by Stuttgart International, which is the true the amount required to properly repair the subject luxury vehicle.

15. Moreover, Defendant has refused and continues to refuse to pay Plaintiff for devaluation to the subject vehicle caused as a result of the subject accident, an amount which is covered under the subject policy.

16. As a direct and proximate result of Defendant's failure to pay the full benefits under the subject policy, Plaintiff has been denied use of the vehicle and suffered damages as a result thereof.

17. The Defendant has breached its contract with Plaintiff by failing to pay for the damages sustained by Plaintiff in the above referenced accident.

18. The Plaintiff and/or its agents have complied with all statutory conditions under the law.

19. As a result of the Defendant's failure and/or refusal to pay the aforesaid benefits due, the Plaintiff suffered actual damages more than $8,000.00 but less than

SF-Sasson, Assaf - 000107

$15,000.00, exclusive of attorney's fees, costs, and interest.

20. The Plaintiff has been caused to retain the undersigned and this law firm to enforce its rights against the Defendant for collision benefits and is thereby obligated to pay reasonable attorney's fee and costs.

21. The Plaintiff is entitled to prevailing party attorney's fees, costs, and statutory interest pursuant to Florida Statutes §627.428.

WHEREFORE, the Plaintiff, ASSAF SASSON, demands judgment against the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, in the amount greater than $8,000.00 but less than $15,000.00, for collision damages to Plaintiff's vehicle, damages due to devaluation of his vehicle, loss of use damages, attorney's fees, costs, interest, and further demands trial by jury for all issues so triable, and any other relief that this Court deems just and proper.

Respectfully submitted,

Daren Stabinski P.A.
100 N. Federal Hwy, #524
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com

   /s/ Daren Stabinski
Daren Stabinski, Esq.
Fla. Bar No. 002951

SF-Sasson, Assaf - 000108

State Farm Mutual Automobile Insurance Company
PO Box 2358
Bloomington IL 61702-2358



P-6825          A

SASSON, ASSAF & ADA L
3385 NE 167TH ST
N MIAMI BEACH FL 33160-3849

## AUTO RENEWAL

**PREMIUM PAID: $1,102.73**
**DO NOT PAY.**
*Your premium is billed through the State Farm Payment Plan*

State Farm Payment Plan Number: 1520065519

**Policy Number: J53 4643-B02-59C**
Policy Period: August 2, 2022 to February 2, 2023

**Vehicle:**
2022 PORSCHE TAYCAN

**Principal Driver:**
ASSAF  SASSON

**Your State Farm Agent**

ANTHONY GARCIA

Office: 561-793-9822

Address: 1035 S STATE ROAD 7 STE 311
              WELLINGTON, FL 33414-6137

*If you have a new or different car, have added any drivers, or have moved, please contact your agent.*

**Thank you for choosing State Farm.**

---

IMPORTANT NOTICE- Under No-Fault Coverage, the only medical expenses we will pay are reasonable medical expenses that are payable under the Florida Motor Vehicle No-Fault Law. The most we will pay for such reasonable medical expenses is 80% of the "schedule of maximum charges" found in the Florida Motor Vehicle No-Fault Law and in the Limits section of the Florida Car Policy's No-Fault Coverage.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

---

Policy Number: J53 4643-B02-59C
Prepared June 10, 2022
Form 1004933

Page number 1 of 7

144211  201  11-01-2015

TP-OB

# Save up to 25% off
# on auto care

As a valued State Farm® customer, now it's simple to find great mechanic shops in your neighborhood and enjoy exclusive savings from Openbay of up to 25%.



**Compare estimates**



**Choose local shops**



**Schedule appointments online**



**Scan to sign up and start saving.**

Learn more at Openbay.com

SF-Sasson, Assaf - 000109



## VEHICLE INFORMATION

**Review your policy information carefully.** If anything is incorrect, or if there are any changes to your vehicle information, please let us know right away.

| Vehicle Description | Vehicle Identification Number (VIN) | Who principally drives this vehicle? | How is this vehicle normally used? *National average: 12,000 miles driven annually per vehicle* |
| --- | --- | --- | --- |
| 2022 PORSCHE TAYCAN | WP0AA2Y11NSA13378 | ASSAF SASSON, a married male, who will be age 56 as of August 02, 2022. | To Work, School or Pleasure. Driven over 7,500 miles annually. |

### Other Household Vehicle(s)

Your premium may be influenced by other State Farm policies that currently insure the following vehicle(s) in your household:

    2018 TESLA MODEL 3
    2021 TESLA MODEL S

### Premium Adjustment

Each year, we review our medical payments and personal injury protection coverages claim experience to determine the vehicle safety discount that is applied to each make and model. In addition, we review the comprehensive, collision, bodily injury and property damage claim experience annually to determine which makes and models have earned decreases or increases from State Farm's standard rates. If any changes result from our reviews, adjustments are reflected in the rates shown on this renewal notice.

## DRIVER INFORMATION

### Assigned Driver(s)

The following driver(s) are assigned to the vehicle(s) on this policy.

| Name | Age *as of August 2, 2022* | Gender | Marital Status |
| --- | --- | --- | --- |
| ASSAF  SASSON | 56 | Male | Married |

### Other Household Driver(s)

In addition to the Principal Driver(s) and Assigned Driver(s), your premium may be influenced by the drivers shown below and other individuals permitted to drive your vehicle. This list does not extend or expand coverage beyond that contained in this automobile policy. The drivers listed below are the drivers reported to us that most frequently drive other vehicles in your household.

    ADA L SASSON
    NOA ANN SASSON

SF-Sasson, Assaf - 000110



**Principal Driver & Assigned Drivers**

For each automobile, the **Principal Driver** is the individual who most frequently drives it.

Each driver is designated as an **Assigned Driver** on the household automobile that he or she most frequently drives.

Your premium may be influenced by the information shown for these drivers.

**IMPORTANT NOTICE REGARDING YOUR PREMIUM**

State Farm works hard to offer you the best combination of price, service, and protection.  The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once during your policy term, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

**COVERAGE AND LIMITS** *See your policy for an explanation of these coverages.*

| A | Liability | |
|---|---|---|
| | Bodily Injury 300,000/300,000 | |
| | Property Damage  100,000 | $358.80 |
| P14 | 500 Deductible No Fault | |
| | Deductible Applies to You and to | |
| | Each of Your Dependent Relatives | $91.46 |
| D | 500 Deductible Comprehensive | $254.26 |
| G | 500 Deductible Collision | $383.11 |
| H | Emergency Road Service | $0.97 |
| R1 | Car Rental & Travel Expense | |
| | 80%  Per Day, $1,000 Max | $14.13 |
| **Total Premium** | | **$1,102.73** |

If any coverage you carry is changed to give broader protection with no additional premium charge, we will give you the broader protection without issuing a new policy, starting on the date we adopt the broader protection.

**IMPORTANT INFORMATION ABOUT UNINSURED MOTOR VEHICLE COVERAGE**

Now is a good time to consider either adding Uninsured Motor Vehicle Coverage, or increasing your limits for this coverage. This coverage protects you, your resident family members and your passengers in the event of bodily injury sustained in an accident for which an unidentified, uninsured, or underinsured driver is legally liable.

You have the right to choose one of these options:

a. select stacking coverage (U) with any available limits up to your bodily injury liability coverage limits, which means

that if more than one Uninsured Motor Vehicle Coverage applies, the limits for the applicable coverages may be added together (Stacking is not available for policies with a named insured that is not a natural person);

b. select, at a reduced premium, non-stacking coverage (U3) with any available limits up to your bodily injury liability coverage limits, which means the Uninsured Motor Vehicle Coverage limits are not added together in most circumstances. The non-stacking coverage on this policy is not available to persons injured while occupying a motor vehicle owned by you or a resident family member which is not insured for uninsured motorist coverage by this policy; or

c. reject this coverage entirely.

Please contact your State Farm agent if you wish to change coverage.

*(continued on next page)*

Policy Number: J53 4643-B02-59C
Prepared June 10, 2022

SF-Sasson, Assaf - 000111



**COVERAGE AND LIMITS** *continued*

**IMPORTANT INFORMATION ABOUT PREMIUM SAVINGS FOR NO-FAULT COVERAGE**

(Coverage P - Personal Injury Protection Insurance)
For personal injury protection insurance, the named insured may elect a deductible and to exclude coverage for loss of gross income and loss of earning capacity ("lost wages"). These elections apply to the named insured alone, or to the named insured and all dependent resident relatives. A premium reduction will result from these elections. The named insured is hereby advised not to elect the lost wage exclusion if the named insured or dependent resident relatives are employed, since lost wages will not be payable in the event of an accident.

Please contact your agent for information about No-Fault premium savings.

**DISCOUNTS** *These adjustments have already been applied to your premium.*

| | |
|---|---|
| Multicar | ✓ |
| Vehicle Safety | ✓ |
| Good Driving | ✓ |
| Homeownership | ✓ |
| **Total Discounts** | **$467.49** |

## SURCHARGES AND DISCOUNTS

**AUTOMOBILE RATING PLAN** - Applies to private passenger cars only.

**Accident-Free Discount** - Once your policy has been in force for at least three years with no chargeable accidents, you may qualify for our Accident-Free Discount. Once you qualify, this discount applies as long as there are no chargeable accidents, and may even increase over time.

**Good Driving Discount** - Newer policyholders who do not yet qualify for our Accident-Free Discount (available after three years with no chargeable accidents) may already be receiving a Good Driving Discount. This discount continues to apply until your policy qualifies for the Accident-Free Discount as long as there are no chargeable accidents and no new drivers. If you add new drivers, they must also qualify in order for your Good Driving Discount to continue.

**Chargeable Accidents** - For new business rating, an accident is chargeable if it results in $750 or more of damage to any property. For renewal business, an accident is chargeable as of the date State Farm pays at least $750 (for accidents occurring on or after April 1, 1999) under property damage liability and collision coverages for an at-fault accident.

**Surcharges** - If there are chargeable accidents, you may lose your Good Driving Discount or Accident-Free Discount and receive accident surcharges. But if the accident is the first to become chargeable in nine years and this policy has been in force for at least that long, the Accident-Free Discount will continue and no surcharge will apply. The surcharge for each accident depends upon the number and timing of the accidents, and each accident surcharge will remain in effect up to three years.

Surcharges will be removed if the company is given satisfactory evidence that the driver involved is no longer a member of the household or will not be driving the car in the future. If that driver is insured on another State Farm policy, his or her driving record will be considered in the rating of the other policy.

These discounts and surcharges do not apply to all coverages. For complete details, see your State Farm agent.

## ADDITIONAL INFORMATION

If any information on this renewal notice is incomplete or inaccurate, or if you want to confirm the information we have in our records, please contact your agent. For additional information regarding discounts or coverages, see your State Farm agent or visit statefarm.com®.

SF-Sasson, Assaf - 000112

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:   COINX-22-049821

ASSAF SASSON,

     Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Defendant.

_____/

## PLAINTIFFS' REQUEST FOR PRODUCTION TO DEFENDANT

Plaintiff, ASSAF SASSON, by and through their undersigned counsel, and pursuant to Florida Rules of Civil Procedure, hereby request the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, to produce within the items and matters hereinafter set forth on or before the applicable time prescribed by said rule for inspection and/or copying at the office of the undersigned attorney, the following items and/or documents:

1.    Any and all insurance policies ever issued by the Defendant to the Plaintiff, including all declarations pages, applications, addenda and riders.

2.    The underwriting file of the Plaintiff.

3.    Copies of any and all correspondence, forms, report or other documents regarding the Plaintiff's claim herein.

4.    Any and all surveillance reports, claims history reports or other investigative reports prepared by you or on your behalf with regard to the Plaintiff or Plaintiff's claim.

5.      Any and all correspondence between Defendant and/or any representative thereof and the Plaintiff or anyone acting on the Plaintiff's behalf.

6.      Any and all documents, papers or things given to Defendant and/or any representative thereof by the Plaintiff or the Plaintiff's agents prior to the filing of the lawsuit.

7.      Any and all written or recorded statements of Plaintiff.

8.      Any and all written or recorded statements of the Plaintiff's agents and/or representatives.

9.      Any and all written or recorded statements of any witness or third party with regard to the subject claim.

10.     Any and all contracts, agreements and/or producing agreements as between the Defendant and the insurance agent, with regard to the sale and/or solicitation of the subject insurance.

11.     Any and all estimates and/or appraisal reports relating to the Plaintiffs' claims which are the subject of this litigation.

12.     Any and all underwriting guidelines, manuals, memos, instructions or other documents delivered by the Defendant to the insurance agent related to the subject policy.

13.     Any and all photographs and/or video of the Plaintiffs' property and/or its contents.

14.     Any and all proof of loss forms, statements, notices of claim and/or any other document submitted by the Plaintiff pertaining to his claim that is the subject of this litigation.

SF-Sasson, Assaf - 000114

15.     Any appraisals, estimates or other documents pertaining to the value of Plaintiff's claim.

16.     Defendant's entire file pertaining to the claim made by Plaintiffs.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of this Request for Production was attached and to be served together with the Summon and Complaint onto the Defendant.

Daren Stabinski P.A.
100 N. Federal Hwy, #524
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

__/s/ Daren Stabinski_____
Daren Stabinski, Esq.
Fla. Bar. No. 002951

SF-Sasson, Assaf - 000115

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:  COINX-22-049821

ASSAF SASSON,

      Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

_____/

## PLAINTIFFS' NOTICE OF SERVICE OF INSURANCE COVERAGE INTERROGATORIES TO DEFENDANT

Plaintiff, ASSAF SASSON, by and through their undersigned counsel, and pursuant to Fla.R.Civ.P. 1.340, hereby file notice that certain Insurance Coverage Interrogatories, numbered 1 through 17 were propounded upon the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, to be answered in writing, under oath, within forty-five (45) days from date of service of same.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of this Request for Production was attached and to be served together with the Summon and Complaint onto the Defendant.

Daren Stabinski P.A.
100 N. Federal Hwy, #524
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

  _/s/ Daren Stabinski_____
Daren Stabinski, Esq.
Fla. Bar. No. 002951

## <u>PLAINTIFFS' INSURANCE COVERAGE INTERROGATORIES<br>TO DEFENDANT</u>

1.      What is your name, address and, if you are answering for someone else, your official position or relationship with the party to whom the interrogatories are directed?

2.      Describe any and all policies of insurance which you contend cover or may cover the allegations set forth in Plaintiffs' complaint, detailing as to such policies the name of the insurer, the number of the policy, the available limits of coverage, including those contained in the policy language, and the name and address of the custodian of the policy.

3.      Please state with specificity any defenses to coverage that you have in this matter and identify any documents supporting your defenses to coverage.

SF-Sasson, Assaf - 000117

4.      Please state with specificity any conditions precedent or subsequent to the Plaintiffs' claim that you contend have not been fulfilled by the Plaintiffs, if any exist.

5.      Please state your reason(s) for your nonpayment and/or non-consideration of this claim.

6.      Please state the date that you received notice of this claim, the date that you acknowledged notice of the claim, and the date that you received notice of the incident which is the subject of this matter.

7.      State separately the facts upon which you rely on for each affirmative defense in your Answer to the Plaintiffs' Complaint.

8.     Do you contend any person or entity other than you is, or may be, liable in whole or in part for the claims asserted against you in this lawsuit? If so, state the full name and address of each such person or entity, the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not you have notified each such person or entity of your contention.

9.     List the names, addresses and telephone numbers of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which the witness has knowledge.

10.    State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody, or control of, any estimate of damage, model, plat, map, drawing, motion picture, video-tape, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

11.     Please provide a list of the names and current addresses of any and all individuals employed by, or agents of the Defendant, who were in any way involved with the handling of this claim, for any purpose after the date of loss but prior to the institution of this litigation.  Please also provide the date of inspection(s) of the property and a short statement of the person's knowledge and involvement with the claim.

12.     List the names, residence addresses, business addresses and telephone numbers of all persons believed or known by you, your agents, or attorneys, to have heard Plaintiffs make any statement, remark or comment concerning the incident involved herein and the substance of any such statement, remark or comment.

13.     For any and all policy defenses which you reasonably believe are available with regard to the claim made by the Plaintiffs herein: Describe in detail the factual and legal basis for any such defenses and give complete names, residence addresses, business addresses and telephone numbers of each any every person believed or known by you, your agents or attorneys, to have knowledge of the facts which would provide the basis for any such defense.

14.     Please list any amounts that Defendant has paid to Plaintiffs to date for the subject claim, and describe what each such payment was for.

15.     For each denied or withheld payment of claim listed above, state in detail the legal grounds for doing so, the factual basis for doing so, and provide the exact wording of any policy provisions, or the exact wording of any statutory language or case law upon which you base your denial or withholding of payment.

16.     If an appraisal of the subject vehicle and/or its contents was prepared, please state the items that have been appraised, the amount that each such item was appraised for, the name and address of any person who performed or contributed to said appraisal, and the date of said appraisal.

SF-Sasson, Assaf - 000121

17.    State the specific nature of your relationship with the insurance agent who sold Plaintiffs the subject policy of insurance at the time that the subject policy was issued.  State whether said insurance agent was authorized to sell or service your policies, and if so, state the specifics of its authority.

SF-Sasson, Assaf - 000122

**JURAT**

_____
Affiant

STATE OF FLORIDA    )
                     )    SS:
COUNTY OF           )

SUBSCRIBED and sworn to (or affirmed) before me this _____ day of _____, 2021, by _____, who is personally known to me or has produced _____ as identification.

_____
NOTARY PUBLIC, State of Florida

SF-Sasson, Assaf - 000123

**From:**"HOME CLMS-STATEFARMCLAIMS" <statefarmclaims@statefarm.com>
**Sent:**Fri, 1 Jul 2022 19:35:57 +0000
**To:**"STUTTGARTINTL@AOL.COM" <STUTTGARTINTL@AOL.COM>
**Cc:**"SASSONASSAF@GMAIL.COM" <SASSONASSAF@GMAIL.COM>;"DF - AUTO - Drop File Document" <DF-AUTO-CL@internal.statefarm.com>
**Subject:**59-34T0-34F
**Attachments:**DocRetrievalServlet.pdf

Attached is a copy of the Supplemental Estimate for the 2022 Taycan for Assaf Sasson.
Per Mr. Sasson's request, payment on the entire approved estimate, 5,767.03 has issued direct to Stuttgart International Auto today.

Please let me know if either of you have any questions or needs.

Jason Cannell
_____
E-mail automatically created by the free PDFCreator
www.pdfforge.org

-----------------------------------------------------
Jason A Cannell | Claim Specialist – Property Complex Tier 2
State Farm Insurance® | 400 E Rio Salado Pkwy | Tempe, AZ,  85281
Bus: 480-842-3711
Email: jason.cannell.d4tb@statefarm.com

# STATE FARM INSURANCE COMPANIES

ALL

Take this initial estimate to the repair facility of your choice.  If additional damage is found have the repair facility use the "Request Supplement" link at b2b.statefarm.com. **This is not an email address; it is the site to submit a Supplement**. All supplements must be approved by State Farm.

|  |  |
|---|---|
| Claim #: | 59-34T0-34F*1 |
| Workfile ID: | e264c7eb |
| Rate Table: | Default |

## Supplement of Record 1 Summary

Written By: JOHN HENRIQUEZ, 7/1/2022 12:23:10 PM
Claim Rep: A T1 CS Team, Prop, (844) 292-8615 x102 Business

| Insured: | ASSAF SASSON | Owner Policy #: | | Claim #: | 59-34T0-34F*1 |
|---|---|---|---|---|---|
| Type of Loss: | Collision | Date of Loss: | 05/27/2022 12:00 AM | Days to Repair: | 0 |
| Point of Impact: | 11 Left Front | Deductible: | 500.00 | | |

| Owner (Insured): | Inspection Location: | Repair Facility: |
|---|---|---|
| ASSAF SASSON | Stuttgart International Auto | Stuttgart International Auto |
| 3385 NE 167TH ST | 1055 NW 51st Ct | 1055 NW 51st Ct |
| N MIAMI BEACH, FL 33160-3849 | Fort Lauderdale, FL 33309 | Fort Lauderdale, FL 33309 |
| (786) 586-2101 Evening | Pocket Estimate | (954) 563-5011 Evening |
| (786) 586-2101 Cellular | (954) 563-5011 Evening | |

## VEHICLE

2022 PORS Taycan RWD 4D SED Electric- Electric white

| VIN: | WP0AA2Y11NSA13378 | Production Date: | | Interior Color: | |
|---|---|---|---|---|---|
| License: | kcya92 | Odometer: | 1603 | Exterior Color: | white |
| State: | FL | Condition: | | | |

| **TRANSMISSION** | **CONVENIENCE** | AM Radio | **SEATS** |
|---|---|---|---|
| Automatic Transmission | Air Conditioning | FM Radio | Bucket Seats |
| **POWER** | Intermittent Wipers | Stereo | Leather Seats |
| Power Steering | Tilt Wheel | Search/Seek | Heated Seats |
| Power Brakes | Cruise Control | Auxiliary Audio Connection | **WHEELS** |
| Power Windows | Rear Defogger | Satellite Radio | Aluminum/Alloy Wheels |
| Power Locks | Keyless Entry | **SAFETY** | **PAINT** |
| Power Mirrors | Message Center | Drivers Side Air Bag | Three Stage Paint |
| Heated Mirrors | Steering Wheel Touch Controls | Passenger Air Bag | **OTHER** |
| Power Driver Seat | Telescopic Wheel | Anti-Lock Brakes (4) | Traction Control |
| Power Passenger Seat | Climate Control | 4 Wheel Disc Brakes | Stability Control |
| **DECOR** | Navigation System | Front Side Impact Air Bags | Rear Spoiler |
| Dual Mirrors | Backup Camera | Head/Curtain Air Bags | Xenon or L.E.D. Headlamps |
| Tinted Glass | Parking Sensors | Hands Free Device | Power Trunk/Liftgate |
| Console/Storage | Home Link | Rear Side Impact Air Bags | |
| Overhead Console | **RADIO** | Lane Departure Warning | |

SF-Sasson, Assaf - 000125

Claim #: 59-34T0-34F*1
Workfile ID: e264c7eb

## Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

| Line | | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|------|---|------|-------------|-------------|-----|------------------|-------|-------|
| 1 | **FRONT BUMPER & GRILLE** | | | | | | | |
| 2 | | | O/H front bumper | | | | 3.2 | |
| 3 | <> | Repl | Bumper cover w/auto park | 9J1807013AY | 1 | 1,116.91 | Incl. | 3.0 |
| 4 | | S01 | Add for Three Stage | | | | | 2.1 |
| 5 | | | Add for camera | | | m | 0.2 | |
| 6 | | Repl | Spoiler | 9J1807541OK1 | 1 | 350.72 | Incl. | |
| 7 | | Repl | LT Side bracket | 9J1807227B | 1 | 30.75 | 0.2 | |
| 8 | | Repl | Center cover w/o adaptive cruise, w/o night vision | 9J1807823OK1 | 1 | 48.75 | 0.2 | |
| 9 | | Repl | LT Corner trim | 9J1807833OK1 | 1 | 48.75 | Incl. | |
| 10 | | Repl | LT Front bracket | 9J1807347AOK1 | 1 | 53.62 | 0.2 | |
| 11 | | Repl | LT Outer grille | 9J1807681OK1 | 1 | 53.63 | Incl. | |
| 12 | * | S01 | Repl | LT Air inlet duct | 9J1121705AOK1 | 1 | 56.88 | 0.1 | |
| 13 | | R&I | RT Air inlet screen | 9J1121753DOK1 | | | 0.2 | |
| 14 | | R&I | LT Air inlet screen | 9J1121754DOK1 | | | 0.2 | |
| 15 | | Repl | Add for distance sens | | 1 | m | 0.3 M | |
| 16 | * | R&I | Park sensor outer w/o auto park | 95B919275 | | m | Incl. M | |
| 17 | * | R&I | Park sensor outer w/auto park | 95B91927500G2X | | m | Incl. M | |
| 18 | * | R&I | Park sensor inner w/o auto park | 5Q0919275CG2X | | m | Incl. M | |
| 19 | * | R&I | Park sensor inner w/auto park | 9Y0919275A | | m | Incl. M | |
| 20 | | S01 | Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | |
| 21 | **FRONT LAMPS** | | | | | | | |
| 22 | | S01 | R&I | RT Turn signal lamp | 9J1945062D | | | 0.2 | |
| 23 | | R&I | LT R&I headlamp assy | 9J1941077D | | | 0.4 | |
| 24 | | Repl | LT Turn signal lamp | 9J1945061D | 1 | 74.05 | 0.2 | |
| 25 | **HOOD** | | | | | | | |
| 26 | | Blnd | Hood | 9J1823031AYGRV | | | | 2.0 |
| 27 | | R&I | Emblem | 9P1853601 | | | 0.2 | |
| 28 | | Repl | Emblem packing | 9P1853611 | 1 | 10.98 | | |
| 29 | **FENDER** | | | | | | | |
| 30 | | Repl | LT Fender w/o Turbo S | 9J1821101YGRV | 1 | 684.11 | 2.6 | 2.2 |
| 31 | | | Overlap Major Non-Adj. Panel | | | | | -0.2 |
| 32 | | S01 | Add for Three Stage | | | | | 0.8 |
| 33 | | Repl | LT Fender liner upper w/o Turbo S | 9J1810907D | 1 | 277.01 | Incl. | |
| 34 | * | S01 | R&I | LT Charging port | 9J1821941E | | m | 0.6 M | |
| 35 | | R&I | LT Trim | 9J1854521G2X | | | Incl. | |
| 36 | | R&I | LT Charging port cover | 9J1821323 | | | 0.2 | |
| 37 | | Blnd | LT Charging port cover | 9J1821323 | | | | 0.6 |
| 38 | | S01 | Repl | LT Front bracket | 9J1805373YGRV | 1 | 99.02 | 0.1 | |
| 39 | **ELECTRICAL** | | | | | | | |
| 40 | | R&I | Battery | PAD915105 | | m | 0.4 M | |

SF-Sasson, Assaf - 000126

| | | Claim #: | 59-34T0-34F*1 |
|---|---|---|---|
| | | Workfile ID: | e264c7eb |

## Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 41 | | | Repl | High voltage system deactivate/activate | | 1 | | m | 1.8 M |
| 42 | **WHEELS** | | | | | | | | |
| 43 | | | R&I | LT/Front R&I wheel | 9J1601025C041 | | | m | 0.1 |
| 44 | | S01 | R&I | RT/Front R&I wheel | 9J1601025B041 | | | m | 0.1 |
| | | | | NOTE: bumper access | | | | | |
| 45 | **FRONT DOOR** | | | | | | | | |
| 46 | | | Blnd | LT Door shell | 9J1831051YGRV | | | | 1.8 |
| 47 | | | R&I | LT Belt molding matte black | 9J183747503C | | | | 0.8 |
| 48 | | | R&I | LT R&I mirror | 9J1857411B | | | | 0.5 |
| 49 | | | R&I | LT Handle, outside | 9J1837205YG2X | | | | 0.5 |
| 50 | | | R&I | LT R&I trim panel | 9J1867021OF5 | | | | 0.8 |
| 51 | **MISCELLANEOUS OPERATIONS** | | | | | | | | |
| 52 | # | | Rpr | Pre-repair Scan | | | | | 0.5 M |
| 53 | # | | Rpr | Post-repair Scan | | | | | 0.5 M |
| 54 | # | | Repl | Additional Cover Car | | 1 | 10.00 | | 0.2 |
| 55 | # | S01 | Repl | De-nib & Polish Material | | 1 | 25.00 | | |
| 56 | # | S01 | Rpr | De-nib & Polish | | | | | 3.2 |
| | | | | NOTE: 30% of base time , bumper 3, hood 2.8, fender 2.2 , lf door 2. charge door, total 10.6 @30% 3.2 hours. | | | | | |
| 57 | # | S01 | Rpr | Color Tint | | | | | 0.6 |
| 58 | **OTHER CHARGES** | | | | | | | | |
| 59 | # | S01 | | E.P.C. | | 1 | 5.00 | | |
| | | | | **SUBTOTALS** | | **3,190.52** | | **18.7** | **12.9** |

### ESTIMATE TOTALS

| Category | | Basis | | Rate | Cost $ |
|---|---|---|---|---|---|
| Parts | | | | | 3,185.52 |
| Body Labor | | 14.6 hrs | @ | $ 47.00 /hr | 686.20 |
| Paint Labor | | 12.9 hrs | @ | $ 47.00 /hr | 606.30 |
| Mechanical Labor | | 4.1 hrs | @ | $ 249.00 /hr | 1,020.90 |
| Paint Supplies | | 12.9 hrs | @ | $ 28.00 /hr | 361.20 |
| Other Charges | | | | | 5.00 |
| Subtotal | | | | | 5,865.12 |
| Sales Tax | Tier 1 | $ 5,000.00 | @ | 7.0000 % | 350.00 |
| Sales Tax | Tier 2 | $ 865.12 | @ | 6.0000 % | 51.91 |
| **Total Cost of Repairs** | | | | | **6,267.03** |
| Deductible | | | | | 500.00 |
| **Total Adjustments** | | | | | **500.00** |
| **Net Cost of Repairs** | | | | | **5,767.03** |

SF-Sasson, Assaf - 000127

Claim #:                    59-34T0-34F*1

Workfile ID:                e264c7eb

**Supplement of Record 1 Summary**

2022 PORS Taycan RWD 4D SED Electric- Electric white

Register online to check the status of your claim and stay connected with State Farm®. To register, go to   http://www.statefarm.com/
and select Check the Status of a Claim.  If you are already registered, thank you!

SF-Sasson, Assaf - 000128

Claim #: 59-34T0-34F*1
Workfile ID: e264c7eb

## Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

## SUPPLEMENT SUMMARY

| Line | | Oper | | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|------|---|------|---|-------------|-------------|-----|------------------|-------|-------|
| **Changed Items** | | | | | | | | | |
| 12 | | | Repl | LT Air inlet duct | 9J1121705AOK1 | 1 | -52.00 | -0.1 | |
| 12 | * | S01 | Repl | LT Air inlet duct | 9J1121705AOK1 | 1 | 56.88 | 0.1 | |
| **Deleted Items** | | | | | | | | | |
| 4 | | | | Add for Clear Coat | | | | | -1.2 |
| 30 | | | | Add for Clear Coat | | | | | -0.4 |
| **Added Items** | | | | | | | | | |
| 4 | | S01 | | Add for Three Stage | | | | | 2.1 |
| 20 | | S01 | Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | |
| 22 | | S01 | R&I | RT Turn signal lamp | 9J1945062D | | | 0.2 | |
| 32 | | S01 | | Add for Three Stage | | | | | 0.8 |
| 34 | * | S01 | R&I | LT Charging port | 9J1821941E | | m | 0.6 M | |
| 38 | | S01 | Repl | LT Front bracket | 9J1805373YGRV | 1 | 99.02 | 0.1 | |
| 44 | | S01 | R&I | RT/Front R&I wheel | 9J1601025B041 | | m | 0.1 | |
| | | | | NOTE: bumper access | | | | | |
| 55 | # | S01 | Repl | De-nib & Polish Material | | 1 | 25.00 | | |
| 56 | # | S01 | Rpr | De-nib & Polish | | | | 3.2 | |
| | | | | NOTE: 30% of base time , bumper 3, hood 2.8, fender 2.2 , lf door  2. charge door, total 10.6 @30% 3.2 hours. | | | | | |
| 57 | # | S01 | Rpr | Color Tint | | | | | 0.6 |
| | **OTHER CHARGES** | | | | | | | | |
| **Changed Items** | | | | | | | | | |
| | # | Est | | E.P.C. | | 1 | -3.50 | | |
| | # | S01 | | E.P.C. | | 1 | 5.00 | | |
| | | | | | **SUBTOTALS** | | **375.74** | **4.2** | **1.9** |

### TOTALS SUMMARY

| Category | | Basis | | Rate | Cost $ |
|----------|---|-------|---|------|--------|
| Parts | | | | | 374.24 |
| Body Labor | | 3.6 hrs | @ | $ 47.00 /hr | 169.20 |
| Paint Labor | | 1.9 hrs | @ | $ 47.00 /hr | 89.30 |
| Mechanical Labor | | 0.6 hrs | @ | $ 249.00 /hr | 149.40 |
| Paint Supplies | | 1.9 hrs | @ | $ 28.00 /hr | 53.20 |
| Other Charges | | | | | 1.50 |
| Subtotal | | | | | 836.84 |
| Sales Tax | Tier 2 | $ 836.84 | @ | 6.0000 % | 50.21 |
| **Total Supplement Amount** | | | | | **887.05** |
| **NET COST OF SUPPLEMENT** | | | | | **887.05** |

SF-Sasson, Assaf - 000129

Claim #:                   59-34T0-34F*1
Workfile ID:               e264c7eb

## Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

### CUMULATIVE EFFECTS OF SUPPLEMENT(S)

| | | | |
|---|---|---:|---|
| Estimate | | 5,379.98 | JOHN HENRIQUEZ |
| Supplement S01 | | 887.05 | JOHN HENRIQUEZ |
| **Workfile Total:** | **$** | **6,267.03** | |
| **TOTAL ADJUSTMENTS:** | **$** | **500.00** | |
| **NET COST OF REPAIRS:** | **$** | **5,767.03** | |

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE(FLORIDA STATUTES TITLE XLVI, CHAPTER 817.234). FAILURE TO USE THE INSURANCE PROCEEDS IN ACCORDANCE WITH THE SECURITY AGREEMENT,IF ANY, COULD BE A VIOLATION OF S. 812.014, FLORIDA STATUTES. IF YOU HAVE ANY QUESTIONS, CONTACT YOUR LENDING INSTITUTION. IF A CHARGE FOR SHOP SUPPLIES OR HAZARDOUS OR OTHER WASTE REMOVAL IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: "THIS CHARGE REPRESENTS COSTS AND PROFITS TO THE MOTOR VEHICLE REPAIR FACILITY FOR MISCELLANEOUS SHOP SUPPLIES OR WASTE DISPOSAL." IF A CHARGE FOR NEW TIRES OR A NEW OR REMANUFACTURED LEAD-ACID BATTERY IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: A $1.00 FEE FOR EACH NEW MOTOR VEHICLE TIRE SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW MOTOR VEHICLE TIRES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX CHAPTER 403.718. A $1.50 FEE FOR EACH NEW OR REMANUFACTURED LEAD-ACID BATTERY SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW OR REMANUFACTURED LEAD-ACID BATTERIES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX 403.7185.

SF-Sasson, Assaf - 000130

Claim #:      59-34T0-34F*1
Workfile ID:      e264c7eb

## Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data. Unless otherwise noted, (a) all items are derived from the Guide ERQ6965, CCC Data Date 06/16/2022, and potentially other third party sources of data; and (b) the parts presented are OEM-parts. OEM parts are manufactured by or for the vehicle's Original Equipment Manufacturer (OEM) according to OEM's specifications for U.S. distribution. OEM parts are available at OE/Vehicle dealerships or the specified supplier. OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships with discounted pricing. Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may have been modified or may have come from an alternate data source. Tilde sign (~) items indicate MOTOR Not-Included Labor operations. The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate. Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM, A/M or NAGS. Used parts are described as LKQ, RCY, or USED. Reconditioned parts are described as Recond. Recored parts are described as Recore. NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications. Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times. NAGS labor operation times are not included. Pound sign (#) items indicate manual entries.

Some 2022 vehicles contain minor changes from the previous year. For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used. The CCC ONE estimator has a list of applicable vehicles. Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component. s=MOTOR Structural component. T=Miscellaneous Taxed charge category. X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category. E=Electrical labor category. F=Frame labor category. G=Glass labor category. M=Mechanical labor category. S=Structural labor category. (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent. Algn.=Align. ALU=Aluminum. A/M=Aftermarket part. Blnd=Blend. BOR=Boron steel. CAPA=Certified Automotive Parts Association. D&R=Disconnect and Reconnect. HSS=High Strength Steel. HYD=Hydroformed Steel. Incl.=Included. LKQ=Like Kind and Quality. LT=Left. MAG=Magnesium. Non-Adj.=Non Adjacent. NSF=NSF International Certified Part. O/H=Overhaul. Qty=Quantity. Refn=Refinish. Repl=Replace. R&I=Remove and Install. R&R=Remove and Replace. Rpr=Repair. RT=Right. SAS=Sandwiched Steel. Sect=Section. Subl=Sublet. UHS=Ultra High Strength Steel. N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Intelligent Services Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair. EPA=Environmental Protection Agency. NHTSA= National Highway Transportation and Safety Administration. PDR=Paintless Dent Repair. VIN=Vehicle Identification Number.

SF-Sasson, Assaf - 000131

Claim #: 59-34T0-34F*1
Workfile ID: e264c7eb

**Supplement of Record 1 Summary**

2022 PORS Taycan RWD 4D SED Electric- Electric white

# *****INSURANCE COMPANY DISCLOSURES AND CUSTOMER NOTIFICATIONS*****

**ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.**

**THE FOLLOWING DISCLOSURE APPLIES TO THOSE PARTS IDENTIFIED AS NON-OEM ON THE ESTIMATE:**

**THIS ESTIMATE HAS BEEN PREPARED BASED ON THE USE OF CRASH PARTS SUPPLIED BY A SOURCE OTHER THAN THE MANUFACTURER OF YOUR MOTOR VEHICLE. THE AFTERMARKET CRASH PARTS USED IN THE PREPARATION OF THIS ESTIMATE ARE WARRANTED BY THE MANUFACTURER OR DISTRIBUTOR OF SUCH PARTS RATHER THAN THE MANUFACTURER OF YOUR VEHICLE.**

SF-Sasson, Assaf - 000132

# STUTTGART INTERNATIONAL

Stuttgart International Auto Body Collision
1055 NW 51ST CT, FORT LAUDERDALE, FL 33309
Phone: (954) 563-5011
FAX: (954) 351-0911

| | |
|---|---|
| Workfile ID: | 30916eef |
| PartsShare: | 6NnkvH |

## Preliminary Estimate

**Customer: Sasson, Ada**                                                                                  **Job Number:**

Written By: Daniel Pagan

| | | | | | |
|---|---|---|---|---|---|
| Insured: | Sasson, Ada | Policy #: | HAT # 4329 | Claim #: | HAT # 4329 |
| Type of Loss: | | Date of Loss: | | Days to Repair: | 0 |
| Point of Impact: | | | | | |

**Owner:**                                **Inspection Location:**                          **Insurance Company:**

Sasson, Ada
(786) 586-2101 Business

STUTTGART INTERNATIONAL
1055 NW 51ST CT
FORT LAUDERDALE, FL 33309
Repair Facility
(954) 563-5011 Business

## VEHICLE

2022 PORS Taycan RWD 4D SED Electric- Electric

| | | | | | |
|---|---|---|---|---|---|
| VIN: | WP0AA2Y11NSA13378 | Interior Color: | | Mileage In: | Vehicle Out: |
| License: | | Exterior Color: | | Mileage Out: | |
| State: | | Production Date: | | Condition: | Job #: |

| TRANSMISSION | CONVENIENCE | | SEATS |
|---|---|---|---|
| Automatic Transmission | Air Conditioning | AM Radio | Bucket Seats |
| **POWER** | Intermittent Wipers | FM Radio | Leather Seats |
| Power Steering | Tilt Wheel | Stereo | Heated Seats |
| Power Brakes | Cruise Control | Search/Seek | **WHEELS** |
| Power Windows | Rear Defogger | Auxiliary Audio Connection | Aluminum/Alloy Wheels |
| Power Locks | Keyless Entry | Satellite Radio | **PAINT** |
| Power Mirrors | Message Center | **SAFETY** | Three Stage Paint |
| Heated Mirrors | Steering Wheel Touch Controls | Drivers Side Air Bag | Stone Guard |
| Power Driver Seat | Telescopic Wheel | Passenger Air Bag | **OTHER** |
| Power Passenger Seat | Climate Control | Anti-Lock Brakes (4) | Traction Control |
| **DECOR** | Navigation System | 4 Wheel Disc Brakes | Stability Control |
| Dual Mirrors | Backup Camera | Front Side Impact Air Bags | Rear Spoiler |
| Tinted Glass | Parking Sensors | Head/Curtain Air Bags | Xenon or L.E.D. Headlamps |
| Console/Storage | Home Link | Hands Free Device | Power Trunk/Liftgate |
| Overhead Console | **RADIO** | Rear Side Impact Air Bags | |
| | | Lane Departure Warning | |

---

6/13/2022 4:12:30 PM                                          055768                                                    Page 1

SF-Sasson, Assaf - 000133

**Preliminary Estimate**

**Customer: Sasson, Ada**                                                    **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

| Line | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|------|------|-------------|-------------|-----|-------|-------|-------|
| 1 | # | PARTS PRICES ARE SUBJECT TO CHANGE | | 1 | | | |
| 2 | # | POSSIBLE HIDDEN DAMAGES | | 1 | | | |
| 3 | **FRONT BUMPER & GRILLE** | | | | | | |
| 4 | | O/H front bumper | | | | 3.2 | |
| 5 | Repl | Bumper cover w/auto park | 9J1807013AY | 1 | 1,116.91 | Incl. | 3.0 |
| 6 | | Add for Three Stage | | | | | 2.1 |
| 7 | | Add for camera | | | m | 0.2 M | |
| 8 | Repl | Spoiler | 9J1807541OK1 | 1 | 350.72 | Incl. | |
| 9 | Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | |
| 10 | Repl | LT Side bracket | 9J1807227B | 1 | 30.75 | 0.2 | |
| 11 | Repl | Center cover w/o adaptive cruise, w/o night vision | 9J1807823OK1 | 1 | 48.75 | 0.2 | |
| 12 | Repl | LT Corner trim | 9J1807833OK1 | 1 | 48.75 | Incl. | |
| 13 | Repl | LT Front bracket | 9J1807347AOK1 | 1 | 53.62 | 0.2 | |
| 14 | Repl | LT Outer grille | 9J1807681OK1 | 1 | 53.63 | Incl. | |
| 15 | Repl | LT Air duct Turbo, Turbo S | 9J1807014Y | 1 | 56.88 | | |
| 16 | R&I | LT Air inlet screen | | | | 0.2 | |
| 17 | R&I | RT Air inlet screen | | | | 0.2 | |
| 18 | * R&I | Park sensor outer w/auto park | | | m | Incl. M | |
| 19 | * R&I | Park sensor inner w/auto park | | | m | Incl. M | |
| 20 | Refn | Park sensor outer w/auto park | | | m | | 0.2 |
| 21 | | Add for Three Stage | | | | | 0.1 |
| 22 | Refn | Park sensor inner w/auto park | | | m | | 0.2 |
| 23 | | Add for Three Stage | | | | | 0.1 |
| 24 | **FRONT LAMPS** | | | | | | |
| 25 | Repl | LT Turn signal lamp | 9J1945061D | 1 | 74.05 | 0.2 | |
| 26 | R&I | RT Turn signal lamp | | | | 0.2 | |
| 27 | R&I | LT R&I headlamp assy | | | | 0.4 | |
| 28 | **HOOD** | | | | | | |
| 29 | R&I | Emblem | | | | 0.2 | |
| 30 | Repl | Emblem packing | 9P1853611 | 1 | 10.98 | | |
| 31 | Blnd | Hood | | | | | 2.0 |
| 32 | **FENDER** | | | | | | |
| 33 | Repl | LT Fender w/o Turbo S | 9J1821101YGRV | 1 | 684.11 | 2.6 | 2.2 |
| 34 | | Add for Three Stage | | | | | 1.5 |
| 35 | Repl | LT Fender liner upper w/o Turbo S | 9J1810907D | 1 | 277.01 | Incl. | |
| 36 | R&I | LT Trim | | | | Incl. | |
| 37 | * R&I | LT Charging port | | | m | 0.6 M | |
| 38 | R&I | LT Charging port cover | | | | 0.2 | |
| 39 | Refn | LT Charging port cover | | | | | 0.8 |
| 40 | | Overlap Minor Panel | | | | | -0.2 |

6/13/2022 4:12:30 PM                                      055768                                      Page 2

**Preliminary Estimate**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Customer: Sasson, Ada** | | | | | | | **Job Number:** | |

2022 PORS Taycan RWD 4D SED Electric- Electric

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 41 | | | Add for Three Stage | | | | | | 0.2 |
| 42 | * | Repl | LT Front bracket | 9J1805373YGRV | 1 | 99.02 | | 0.1 | 0.7 |
| 43 | | | Add for Three Stage | | | | | | 0.3 |
| 44 | **ELECTRICAL** | | | | | | | | |
| 45 | * | R&I | Battery D&R | | | | m | 0.4 M | |
| 46 | **WHEELS** | | | | | | | | |
| 47 | | R&I | LT/Front R&I wheel | | | | m | 0.1 M | |
| 48 | | R&I | RT/Front R&I wheel | | | | m | 0.1 M | |
| 49 | **RESTRAINT SYSTEMS** | | | | | | | | |
| 50 | | R&I | LT Ft impact sensor | | | | m | 0.2 M | |
| 51 | **FRONT DOOR** | | | | | | | | |
| 52 | | Blnd | LT Door shell | | | | | | 1.8 |
| 53 | | R&I | LT Belt molding matte black | | | | | 0.8 | |
| 54 | | R&I | LT R&I mirror | | | | | 0.5 | |
| 55 | | R&I | LT Handle, outside | | | | | 0.5 | |
| 56 | | R&I | LT R&I trim panel | | | | | 0.8 | |
| 57 | **VEHICLE DIAGNOSTICS** | | | | | | | | |
| 58 | * | | Pre-repair scan | | 1 | | m | 1.0 M | |
| 59 | * | | Post-repair scan | | 1 | | m | 1.0 M | |
| 60 | **MISCELLANEOUS OPERATIONS** | | | | | | | | |
| 61 | | Repl | Cover car/bag | | 1 | | | 0.2 | |
| 62 | # | | Prep & Seal Raw Bumper Cover | | 1 | | | | 1.0 |
| 63 | # | | Tint Color & Letdown Panel | | 1 | | | | 1.0 |
| 64 | # | | Sand & Buff | | 1 | | | | 5.0 |
| 65 | # | | Flex Additive | | 1 | 10.00 | | | |
| 66 | | | OTHER CHARGES | | | | | | |
| 67 | # | | E.P.C. | | 1 | 5.00 | | | |
| | | | **SUBTOTALS** | | | **3,165.52** | | **14.5** | **22.0** |

SF-Sasson, Assaf - 000135

**Preliminary Estimate**

**Customer: Sasson, Ada**

**Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

### ESTIMATE TOTALS

| Category | Basis | | Rate | Cost $ |
|---|---|---|---|---|
| Parts | | | | 3,160.52 |
| Body Labor | 10.9 hrs | @ | $ 105.00 /hr | 1,144.50 |
| Paint Labor | 22.0 hrs | @ | $ 105.00 /hr | 2,310.00 |
| Mechanical Labor | 3.6 hrs | @ | $ 249.00 /hr | 896.40 |
| Paint Supplies | 22.0 hrs | @ | $ 38.00 /hr | 836.00 |
| Other Charges | | | | 5.00 |
| Subtotal | | | | 8,352.42 |
| Sales Tax | $ 8,352.42 | @ | 7.0000 % | 584.67 |
| **Grand Total** | | | | **8,937.09** |
| Deductible | | | | 0.00 |
| **CUSTOMER PAY** | | | | **0.00** |
| **INSURANCE PAY** | | | | **8,937.09** |

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE(FLORIDA STATUTES TITLE XLVI, CHAPTER 817.234). FAILURE TO USE THE INSURANCE PROCEEDS IN ACCORDANCE WITH THE SECURITY AGREEMENT,IF ANY, COULD BE A VIOLATION OF S. 812.014, FLORIDA STATUTES. IF YOU HAVE ANY QUESTIONS, CONTACT YOUR LENDING INSTITUTION. IF A CHARGE FOR SHOP SUPPLIES OR HAZARDOUS OR OTHER WASTE REMOVAL IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: "THIS CHARGE REPRESENTS COSTS AND PROFITS TO THE MOTOR VEHICLE REPAIR FACILITY FOR MISCELLANEOUS SHOP SUPPLIES OR WASTE DISPOSAL." IF A CHARGE FOR NEW TIRES OR A NEW OR REMANUFACTURED LEAD-ACID BATTERY IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: A $1.00 FEE FOR EACH NEW MOTOR VEHICLE TIRE SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW MOTOR VEHICLE TIRES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX CHAPTER 403.718. A $1.50 FEE FOR EACH NEW OR REMANUFACTURED LEAD-ACID BATTERY SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW OR REMANUFACTURED LEAD-ACID BATTERIES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX 403.7185.

SF-Sasson, Assaf - 000136

**Preliminary Estimate**

---

**Customer: Sasson, Ada**                                                                                      **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data.  Unless otherwise noted, (a) all items are derived from the Guide ERQ6965, CCC Data Date 06/09/2022, and potentially other third party sources of data; and (b) the parts presented are OEM-parts.  OEM parts are manufactured by or for the vehicle's Original Equipment Manufacturer (OEM) according to OEM's specifications for U.S. distribution.  OEM parts are available at OE/Vehicle dealerships or the specified supplier.  OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships with discounted pricing.     Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may have been modified or may have come from an alternate data source.  Tilde sign (~) items indicate MOTOR Not-Included Labor operations.  The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate.  Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM,  A/M or NAGS.  Used parts are described as LKQ, RCY, or USED.  Reconditioned parts are described as Recond.  Recored parts are described as Recore.  NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications.  Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times.  NAGS labor operation times are not included.  Pound sign (#) items indicate manual entries.

Some 2022 vehicles contain minor changes from the previous year.  For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used.  The CCC ONE estimator has a list of applicable vehicles.  Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component.  s=MOTOR Structural component.  T=Miscellaneous Taxed charge category.  X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category.  E=Electrical labor category.  F=Frame labor category.  G=Glass labor category.  M=Mechanical labor category.  S=Structural labor category.  (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent.  Algn.=Align.  ALU=Aluminum.  A/M=Aftermarket part.  Blnd=Blend.  BOR=Boron steel.  CAPA=Certified Automotive Parts Association.  D&R=Disconnect and Reconnect.  HSS=High Strength Steel.  HYD=Hydroformed Steel.  Incl.=Included.  LKQ=Like Kind and Quality.  LT=Left.  MAG=Magnesium.  Non-Adj.=Non Adjacent.  NSF=NSF International Certified Part.  O/H=Overhaul.  Qty=Quantity.  Refn=Refinish.  Repl=Replace.  R&I=Remove and Install.  R&R=Remove and Replace.  Rpr=Repair.  RT=Right.  SAS=Sandwiched Steel.  Sect=Section.  Subl=Sublet.  UHS=Ultra High Strength Steel.  N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Intelligent Services Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair.  EPA=Environmental Protection Agency.  NHTSA= National Highway Transportation and Safety Administration.  PDR=Paintless Dent Repair.  VIN=Vehicle Identification Number.

---

SF-Sasson, Assaf - 000137

**From:**"John Henriquez" <john.henriquez.i9qa@statefarm.com>
**Sent:**Mon, 6 Jun 2022 20:08:35 +0000
**To:**"DF - AUTO - Drop File Document" ███████████████████
**Subject**█████
**Attachments**█████████████████████

---

**From:** stuttgartintl@aol.com <stuttgartintl@aol.com>
**Sent:** Thursday, June 2, 2022 4:08 PM
**To:** John Henriquez <john.henriquez.i9qa@statefarm.com>
**Subject:** [EXTERNAL] Re: 59-34T0-34F

Good afternoon John,

Here is the estimate along with the images of the damages. Let me know if you need anything else.
Thanks in advance.

Regards,
Dan

Stuttgart International
1055 NW 51st Court
Ft. Lauderdale, FL 33309
Ph: (954) 563-5011
Fax: (954) 351-0911

-----Original Message-----
From: John Henriquez <john.henriquez.i9qa@statefarm.com>
To: stuttgartintl@aol.com <stuttgartintl@aol.com>
Sent: Thu, Jun 2, 2022 9:10 am
Subject: FW: 59-34T0-34F

---

**From:** John Henriquez <john.henriquez.i9qa@statefarm.com>
**Sent:** Thursday, June 2, 2022 9:10 AM
**To:** John Henriquez <john.henriquez.i9qa@statefarm.com>
**Subject:** 59-34T0-34F

Claim number: 59-34T0-34F
Vehicle Owner Name:  ASSAF SASSON
Vehicle Year, Make, Model: ( *1 ) 2022 PORSCHE TAYCAN

WP0AA2Y11NSA13378

Hello,

In order to provide you with an estimate in a timely manner please reply to this email with the
photos/documentation listed below. When you reply, please make sure the Subject line of the

email only includes the claim number. In addition, you can also send photos to me via text at 954-658-2455 or via a call on Face Time or Google Duo, if you prefer.

Please note, if I do not receive the documentation outlined below within 48 hours of this email, the assignment may be cancelled at which time you would need to contact the claim handler assigned to this file to have another assignment dispatched.

1)      Four overall photos, one from each corner, to provide a broad view of damage with a legible license plate;
2)      VIN plate photo on driver post/door &/or on lower left of windshield;
3)      Mileage photo;
4)      Point of impact photos showing the main area of damage;
5)      Photos showing any/all areas of damage as needed;
6)      Photos to support replacement of parts needed;
7)      Photos to support repair labor needed;
8)      Open driver door and passenger front door, take photo of driver's side view, center console, and passenger side view of dash to support vehicle option identification;
9)      Copy of shop estimate if available;
10)     Copy of tow bill, if applicable.

If there is any additional documentation you believe would be helpful, please include it. Please keep in mind the email has a size cap of 25MB. It is ok to send documentation via multiple emails, if needed.

If you have any questions, please reply to this email at john.henriquez.i9qa@statefarm.com or you can also use statefarmclaims@statefarm.com] or call me at 954-658-2455

**John  Henriquez**

*This message may contain confidential and/or privileged information. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy; disclose or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Thank you for your cooperation.*



SF-Sasson, Assaf - 000147



SF-Sasson, Assaf - 000148



SF-Sasson, Assaf - 000149



SF-Sasson, Assaf - 000150



SF-Sasson, Assaf - 000151





SF-Sasson, Assaf - 000153



SF-Sasson, Assaf - 000154



SF-Sasson, Assaf - 000155



SF-Sasson, Assaf - 000156



SF-Sasson, Assaf - 000157



SF-Sasson, Assaf - 000158



SF-Sasson, Assaf - 000159



SF-Sasson, Assaf - 000160



SF-Sasson, Assaf - 000161



SF-Sasson, Assaf - 000162



SF-Sasson, Assaf - 000163



SF-Sasson, Assaf - 000164



SF-Sasson, Assaf - 000165



SF-Sasson, Assaf - 000166



SF-Sasson, Assaf - 000167



SF-Sasson, Assaf - 000168



SF-Sasson, Assaf - 000169

# STUTTGART INTERNATIONAL

Stuttgart International Auto Body Collision
1055 NW 51ST CT, FORT LAUDERDALE, FL 33309
Phone: (954) 563-5011
FAX: (954) 351-0911

| | |
|---|---|
| Workfile ID: | 30916eef |
| PartsShare: | 6NnkvH |

## Preliminary Estimate

**Customer: Sasson, Ada**                                              **Job Number:**

Written By: Daniel Pagan

| | | | | | |
|---|---|---|---|---|---|
| Insured: | Sasson, Ada | Policy #: | HAT # 4329 | Claim #: | HAT # 4329 |
| Type of Loss: | | Date of Loss: | | Days to Repair: | 0 |
| Point of Impact: | | | | | |

**Owner:**
Sasson, Ada
(786) 586-2101 Business

**Inspection Location:**
STUTTGART INTERNATIONAL
1055 NW 51ST CT
FORT LAUDERDALE, FL 33309
Repair Facility
(954) 563-5011 Business

**Insurance Company:**

---

## VEHICLE

2022 PORS Taycan RWD 4D SED Electric- Electric

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| VIN: | WP0AA2Y11NSA13378 | Interior Color: | | Mileage In: | | Vehicle Out: | |
| License: | | Exterior Color: | | Mileage Out: | | |
| State: | | Production Date: | | Condition: | | Job #: | |

---

| TRANSMISSION | CONVENIENCE | AM Radio | SEATS |
|---|---|---|---|
| Automatic Transmission | Air Conditioning | FM Radio | Bucket Seats |
| **POWER** | Intermittent Wipers | Stereo | Leather Seats |
| Power Steering | Tilt Wheel | Search/Seek | Heated Seats |
| Power Brakes | Cruise Control | Auxiliary Audio Connection | **WHEELS** |
| Power Windows | Rear Defogger | Satellite Radio | Aluminum/Alloy Wheels |
| Power Locks | Keyless Entry | **SAFETY** | **PAINT** |
| Power Mirrors | Message Center | Drivers Side Air Bag | Three Stage Paint |
| Heated Mirrors | Steering Wheel Touch Controls | Passenger Air Bag | Stone Guard |
| Power Driver Seat | Telescopic Wheel | Anti-Lock Brakes (4) | **OTHER** |
| Power Passenger Seat | Climate Control | 4 Wheel Disc Brakes | Traction Control |
| **DECOR** | Navigation System | Front Side Impact Air Bags | Stability Control |
| Dual Mirrors | Backup Camera | Head/Curtain Air Bags | Rear Spoiler |
| Tinted Glass | Parking Sensors | Hands Free Device | Xenon or L.E.D. Headlamps |
| Console/Storage | Home Link | Rear Side Impact Air Bags | Power Trunk/Liftgate |
| Overhead Console | **RADIO** | Lane Departure Warning | |

SF-Sasson, Assaf - 000170

**Preliminary Estimate**

| **Customer: Sasson, Ada** | | | | | | | **Job Number:** |
|---|---|---|---|---|---|---|---|

2022 PORS Taycan RWD 4D SED Electric- Electric

| Line | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|---|---|---|---|---|---|---|---|
| 1 | # | PARTS PRICES ARE SUBJECT TO CHANGE | | 1 | | | |
| 2 | # | POSSIBLE HIDDEN DAMAGES | | 1 | | | |
| 3 | **FRONT BUMPER & GRILLE** | | | | | | |
| 4 | | O/H front bumper | | | | 3.2 | |
| 5 | Repl | Bumper cover w/auto park | 9J1807013AY | 1 | 1,116.91 | Incl. | 3.0 |
| 6 | | Add for Three Stage | | | | | 2.1 |
| 7 | | Add for camera | | | m | 0.2 M | |
| 8 | Repl | Spoiler | 9J1807541OK1 | 1 | 350.72 | Incl. | |
| 9 | Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | |
| 10 | Repl | LT Side bracket | 9J1807227B | 1 | 30.75 | 0.2 | |
| 11 | Repl | Center cover w/o adaptive cruise, w/o night vision | 9J1807823OK1 | 1 | 48.75 | 0.2 | |
| 12 | Repl | LT Corner trim | 9J1807833OK1 | 1 | 48.75 | Incl. | |
| 13 | Repl | LT Front bracket | 9J1807347AOK1 | 1 | 53.62 | 0.2 | |
| 14 | Repl | LT Outer grille | 9J1807681OK1 | 1 | 53.63 | Incl. | |
| 15 | Repl | LT Air duct Turbo, Turbo S | 9J1807014Y | 1 | 56.88 | | |
| 16 | R&I | LT Air inlet screen | | | | 0.2 | |
| 17 | R&I | RT Air inlet screen | | | | 0.2 | |
| 18 | * R&I | Park sensor outer w/auto park | | | m | Incl. M | |
| 19 | * R&I | Park sensor inner w/auto park | | | m | Incl. M | |
| 20 | Refn | Park sensor outer w/auto park | | | m | | 0.2 |
| 21 | | Add for Three Stage | | | | | 0.1 |
| 22 | Refn | Park sensor inner w/auto park | | | m | | 0.2 |
| 23 | | Add for Three Stage | | | | | 0.1 |
| 24 | **FRONT LAMPS** | | | | | | |
| 25 | Repl | LT Turn signal lamp | 9J1945061D | 1 | 74.05 | 0.2 | |
| 26 | R&I | RT Turn signal lamp | | | | 0.2 | |
| 27 | R&I | LT R&I headlamp assy | | | | 0.4 | |
| 28 | **HOOD** | | | | | | |
| 29 | R&I | Emblem | | | | 0.2 | |
| 30 | Repl | Emblem packing | 9P1853611 | 1 | 10.98 | | |
| 31 | **FENDER** | | | | | | |
| 32 | Repl | LT Fender w/o Turbo S | 9J1821101YGRV | 1 | 684.11 | 2.6 | 2.2 |
| 33 | | Add for Three Stage | | | | | 1.5 |
| 34 | Repl | LT Fender liner upper w/o Turbo S | 9J1810907D | 1 | 277.01 | Incl. | |
| 35 | R&I | LT Trim | | | | Incl. | |
| 36 | * R&I | LT Charging port | | | m | 0.6 M | |
| 37 | R&I | LT Charging port cover | | | | 0.2 | |
| 38 | Refn | LT Charging port cover | | | | | 0.8 |
| 39 | | Overlap Minor Panel | | | | | -0.2 |
| 40 | | Add for Three Stage | | | | | 0.2 |

**Preliminary Estimate**

| Customer: Sasson, Ada | | | | | | | Job Number: |
|---|---|---|---|---|---|---|---|

2022 PORS Taycan RWD 4D SED Electric- Electric

| 41 | **ELECTRICAL** | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 42 | * | R&I | Battery D&R | | | m | 0.4 M | |
| 43 | **WHEELS** | | | | | | | |
| 44 | | R&I | LT/Front R&I wheel | | | m | 0.1 M | |
| 45 | | R&I | RT/Front R&I wheel | | | m | 0.1 M | |
| 46 | **RESTRAINT SYSTEMS** | | | | | | | |
| 47 | | R&I | LT Ft impact sensor | | | m | 0.2 M | |
| 48 | **FRONT DOOR** | | | | | | | |
| 49 | | Blnd | LT Door shell | | | | | 1.8 |
| 50 | | R&I | LT Belt molding matte black | | | | 0.8 | |
| 51 | | R&I | LT R&I mirror | | | | 0.5 | |
| 52 | | R&I | LT Handle, outside | | | | 0.5 | |
| 53 | | R&I | LT R&I trim panel | | | | 0.8 | |
| 54 | **VEHICLE DIAGNOSTICS** | | | | | | | |
| 55 | * | | Pre-repair scan | 1 | | m | 1.0 M | |
| 56 | * | | Post-repair scan | 1 | | m | 1.0 M | |
| 57 | **MISCELLANEOUS OPERATIONS** | | | | | | | |
| 58 | | Repl | Cover car/bag | 1 | | | 0.2 | |
| 59 | # | | Prep & Seal Raw Bumper Cover | 1 | | | | 1.0 |
| 60 | # | | Tint Color & Letdown Panel | 1 | | | | 1.0 |
| 61 | # | | Sand & Buff | 1 | | | | 5.0 |
| 62 | # | | Flex Additive | 1 | 10.00 | | | |
| 63 | | | OTHER CHARGES | | | | | |
| 64 | # | | E.P.C. | 1 | 5.00 | | | |
| | | | **SUBTOTALS** | **3,066.50** | | | **14.4** | **19.0** |

## ESTIMATE TOTALS

| Category | Basis | | Rate | Cost $ |
|---|---|---|---|---|
| Parts | | | | 3,061.50 |
| Body Labor | 10.8 hrs | @ | $ 105.00 /hr | 1,134.00 |
| Paint Labor | 19.0 hrs | @ | $ 105.00 /hr | 1,995.00 |
| Mechanical Labor | 3.6 hrs | @ | $ 249.00 /hr | 896.40 |
| Paint Supplies | 19.0 hrs | @ | $ 38.00 /hr | 722.00 |
| Other Charges | | | | 5.00 |
| Subtotal | | | | 7,813.90 |
| Sales Tax | $ 7,813.90 | @ | 7.0000 % | 546.97 |
| **Grand Total** | | | | **8,360.87** |
| Deductible | | | | 0.00 |
| **CUSTOMER PAY** | | | | **0.00** |
| **INSURANCE PAY** | | | | **8,360.87** |

SF-Sasson, Assaf - 000172

**Preliminary Estimate**

**Customer: Sasson, Ada**                                                                                        **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A
STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING
INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE(FLORIDA STATUTES TITLE XLVI, CHAPTER
817.234). FAILURE TO USE THE INSURANCE PROCEEDS IN ACCORDANCE WITH THE SECURITY AGREEMENT,IF
ANY, COULD BE A VIOLATION OF S. 812.014, FLORIDA STATUTES. IF YOU HAVE ANY QUESTIONS, CONTACT YOUR
LENDING INSTITUTION. IF A CHARGE FOR SHOP SUPPLIES OR HAZARDOUS OR OTHER WASTE REMOVAL IS
INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: "THIS CHARGE REPRESENTS COSTS AND PROFITS
TO THE MOTOR VEHICLE REPAIR FACILITY FOR MISCELLANEOUS SHOP SUPPLIES OR WASTE DISPOSAL." IF A
CHARGE FOR NEW TIRES OR A NEW OR REMANUFACTURED LEAD-ACID BATTERY IS INCLUDED ON THIS
ESTIMATE, PLEASE NOTE THE FOLLOWING: A $1.00 FEE FOR EACH NEW MOTOR VEHICLE TIRE SOLD AT RETAIL IS
IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW MOTOR VEHICLE
TIRES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX CHAPTER 403.718. A $1.50 FEE FOR EACH
NEW OR REMANUFACTURED LEAD-ACID BATTERY SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN
THE BUSINESS OF MAKING RETAIL SALES OF NEW OR REMANUFACTURED LEAD-ACID BATTERIES WITHIN THE
STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX 403.7185.

SF-Sasson, Assaf - 000173

**Preliminary Estimate**

---

**Customer: Sasson, Ada**                                                                    **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

---

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data.  Unless otherwise noted, (a) all items are derived from the Guide ERQ6965, CCC Data Date 06/01/2022, and potentially other third party sources of data; and (b) the parts presented are OEM-parts.  OEM parts are manufactured by or for the vehicle's Original Equipment Manufacturer (OEM) according to OEM's specifications for U.S. distribution.  OEM parts are available at OE/Vehicle dealerships or the specified supplier.  OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships with discounted pricing.    Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may have been modified or may have come from an alternate data source. Tilde sign (~) items indicate MOTOR Not-Included Labor operations.  The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate. Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM,  A/M or NAGS.  Used parts are described as LKQ, RCY, or USED.  Reconditioned parts are described as Recond.  Recored parts are described as Recore.  NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications.  Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times.  NAGS labor operation times are not included.  Pound sign (#) items indicate manual entries.

Some 2022 vehicles contain minor changes from the previous year.  For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used.  The CCC ONE estimator has a list of applicable vehicles.  Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component.  s=MOTOR Structural component.  T=Miscellaneous Taxed charge category. X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category.  E=Electrical labor category.  F=Frame labor category.  G=Glass labor category. M=Mechanical labor category.  S=Structural labor category.  (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent.  Algn.=Align.  ALU=Aluminum.  A/M=Aftermarket part.  Blnd=Blend.  BOR=Boron steel. CAPA=Certified Automotive Parts Association.  D&R=Disconnect and Reconnect.  HSS=High Strength Steel. HYD=Hydroformed Steel.  Incl.=Included.  LKQ=Like Kind and Quality.  LT=Left.  MAG=Magnesium.  Non-Adj.=Non Adjacent.  NSF=NSF International Certified Part.  O/H=Overhaul.  Qty=Quantity.  Refn=Refinish.  Repl=Replace. R&I=Remove and Install.  R&R=Remove and Replace.  Rpr=Repair.  RT=Right.  SAS=Sandwiched Steel. Sect=Section.  Subl=Sublet.  UHS=Ultra High Strength Steel.  N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Intelligent Services Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair.  EPA=Environmental Protection Agency.  NHTSA= National Highway Transportation and Safety Administration.  PDR=Paintless Dent Repair.  VIN=Vehicle Identification Number.

---

SF-Sasson, Assaf - 000174

**From:**"John Henriquez" <john.henriquez.i9qa@statefarm.com>
**Sent:**Mon, 6 Jun 2022 19:33:18 +0000
**To:**"DF - AUTO - Drop File Document" ██████████████████████
**Subject**██████████████████
**Attachments**█████████████████████████████

---

**From:** stuttgartintl@aol.com <stuttgartintl@aol.com>
**Sent:** Thursday, June 2, 2022 4:08 PM
**To:** John Henriquez <john.henriquez.i9qa@statefarm.com>
**Subject:** [EXTERNAL] Re: 59-34T0-34F

Good afternoon John,

Here is the estimate along with the images of the damages. Let me know if you need anything else. Thanks in advance.

Regards,
Dan

Stuttgart International
1055 NW 51st Court
Ft. Lauderdale, FL 33309
Ph: (954) 563-5011
Fax: (954) 351-0911

-----Original Message-----
From: John Henriquez <john.henriquez.i9qa@statefarm.com>
To: stuttgartintl@aol.com <stuttgartintl@aol.com>
Sent: Thu, Jun 2, 2022 9:10 am
Subject: FW: 59-34T0-34F

---

**From:** John Henriquez <john.henriquez.i9qa@statefarm.com>
**Sent:** Thursday, June 2, 2022 9:10 AM
**To:** John Henriquez <john.henriquez.i9qa@statefarm.com>
**Subject:** 59-34T0-34F

Claim number: 59-34T0-34F
Vehicle Owner Name:  ASSAF SASSON
Vehicle Year, Make, Model: ( *1 ) 2022 PORSCHE TAYCAN

WP0AA2Y11NSA13378

Hello,

In order to provide you with an estimate in a timely manner please reply to this email with the photos/documentation listed below. When you reply, please make sure the Subject line of the

email only includes the claim number. In addition, you can also send photos to me via text at 954-658-2455 or via a call on Face Time or Google Duo, if you prefer.

Please note, if I do not receive the documentation outlined below within 48 hours of this email, the assignment may be cancelled at which time you would need to contact the claim handler assigned to this file to have another assignment dispatched.

1)      Four overall photos, one from each corner, to provide a broad view of damage with a legible license plate;
2)      VIN plate photo on driver post/door &/or on lower left of windshield;
3)      Mileage photo;
4)      Point of impact photos showing the main area of damage;
5)      Photos showing any/all areas of damage as needed;
6)      Photos to support replacement of parts needed;
7)      Photos to support repair labor needed;
8)      Open driver door and passenger front door, take photo of driver's side view, center console, and passenger side view of dash to support vehicle option identification;
9)      Copy of shop estimate if available;
10)     Copy of tow bill, if applicable.

If there is any additional documentation you believe would be helpful, please include it. Please keep in mind the email has a size cap of 25MB. It is ok to send documentation via multiple emails, if needed.

If you have any questions, please reply to this email at john.henriquez.i9qa@statefarm.com  or you can also use statefarmclaims@statefarm.com] or call me at 954-658-2455

**John  Henriquez**

*This message may contain confidential and/or privileged information. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy; disclose or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Thank you for your cooperation.*

SF-Sasson, Assaf - 000176



SF-Sasson, Assaf - 000177



SF-Sasson, Assaf - 000178



SF-Sasson, Assaf - 000179



SF-Sasson, Assaf - 000180





SF-Sasson, Assaf - 000182



SF-Sasson, Assaf - 000183



SF-Sasson, Assaf - 000184



SF-Sasson, Assaf - 000185



SF-Sasson, Assaf - 000186



SF-Sasson, Assaf - 000187



SF-Sasson, Assaf - 000188



SF-Sasson, Assaf - 000189



SF-Sasson, Assaf - 000190



SF-Sasson, Assaf - 000191



SF-Sasson, Assaf - 000192



SF-Sasson, Assaf - 000193



SF-Sasson, Assaf - 000194



SF-Sasson, Assaf - 000195



SF-Sasson, Assaf - 000196



SF-Sasson, Assaf - 000197



SF-Sasson, Assaf - 000198



SF-Sasson, Assaf - 000199

# STUTTGART INTERNATIONAL

Stuttgart International Auto Body Collision
1055 NW 51ST CT, FORT LAUDERDALE, FL 33309
Phone: (954) 563-5011
FAX: (954) 351-0911

Workfile ID: 30916eef
PartsShare: 6NnkvH

## Preliminary Estimate

---

**Customer: Sasson, Ada**                                                   **Job Number:**

Written By: Daniel Pagan

| | | | |
|---|---|---|---|
| Insured: Sasson, Ada | Policy #: HAT # 4329 | Claim #: HAT # 4329 |
| Type of Loss: | Date of Loss: | Days to Repair: 0 |
| Point of Impact: | | |

**Owner:**                         **Inspection Location:**                **Insurance Company:**
Sasson, Ada                         STUTTGART INTERNATIONAL
(786) 586-2101 Business             1055 NW 51ST CT
                                    FORT LAUDERDALE, FL 33309
                                    Repair Facility
                                    (954) 563-5011 Business

---

## VEHICLE

2022 PORS Taycan RWD 4D SED Electric- Electric

| | | | |
|---|---|---|---|
| VIN: WP0AA2Y11NSA13378 | Interior Color: | Mileage In: | Vehicle Out: |
| License: | Exterior Color: | Mileage Out: | |
| State: | Production Date: | Condition: | Job #: |

---

| **TRANSMISSION** | **CONVENIENCE** | AM Radio | **SEATS** |
|---|---|---|---|
| Automatic Transmission | Air Conditioning | FM Radio | Bucket Seats |
| **POWER** | Intermittent Wipers | Stereo | Leather Seats |
| Power Steering | Tilt Wheel | Search/Seek | Heated Seats |
| Power Brakes | Cruise Control | Auxiliary Audio Connection | **WHEELS** |
| Power Windows | Rear Defogger | Satellite Radio | Aluminum/Alloy Wheels |
| Power Locks | Keyless Entry | **SAFETY** | **PAINT** |
| Power Mirrors | Message Center | Drivers Side Air Bag | Three Stage Paint |
| Heated Mirrors | Steering Wheel Touch Controls | Passenger Air Bag | Stone Guard |
| Power Driver Seat | Telescopic Wheel | Anti-Lock Brakes (4) | **OTHER** |
| Power Passenger Seat | Climate Control | 4 Wheel Disc Brakes | Traction Control |
| **DECOR** | Navigation System | Front Side Impact Air Bags | Stability Control |
| Dual Mirrors | Backup Camera | Head/Curtain Air Bags | Rear Spoiler |
| Tinted Glass | Parking Sensors | Hands Free Device | Xenon or L.E.D. Headlamps |
| Console/Storage | Home Link | Rear Side Impact Air Bags | Power Trunk/Liftgate |
| Overhead Console | **RADIO** | Lane Departure Warning | |

---

SF-Sasson, Assaf - 000200

**Preliminary Estimate**

---

**Customer: Sasson, Ada**                                                          **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

---

| Line | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|------|------|-------------|-------------|-----|------------------|-------|-------|
| 1 | # | PARTS PRICES ARE SUBJECT TO CHANGE | | 1 | | | |
| 2 | # | POSSIBLE HIDDEN DAMAGES | | 1 | | | |
| 3 | | **FRONT BUMPER & GRILLE** | | | | | |
| 4 | | O/H front bumper | | | | 3.2 | |
| 5 | Repl | Bumper cover w/auto park | 9J1807013AY | 1 | 1,116.91 | Incl. | 3.0 |
| 6 | | Add for Three Stage | | | | | 2.1 |
| 7 | | Add for camera | | | | m    0.2 M | |
| 8 | Repl | Spoiler | 9J1807541OK1 | 1 | 350.72 | Incl. | |
| 9 | Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | |
| 10 | Repl | LT Side bracket | 9J1807227B | 1 | 30.75 | 0.2 | |
| 11 | Repl | Center cover w/o adaptive cruise, w/o night vision | 9J1807823OK1 | 1 | 48.75 | 0.2 | |
| 12 | Repl | LT Corner trim | 9J1807833OK1 | 1 | 48.75 | Incl. | |
| 13 | Repl | LT Front bracket | 9J1807347AOK1 | 1 | 53.62 | 0.2 | |
| 14 | Repl | LT Outer grille | 9J1807681OK1 | 1 | 53.63 | Incl. | |
| 15 | Repl | LT Air duct Turbo, Turbo S | 9J1807014Y | 1 | 56.88 | | |
| 16 | R&I | LT Air inlet screen | | | | 0.2 | |
| 17 | R&I | RT Air inlet screen | | | | 0.2 | |
| 18 | * R&I | Park sensor outer w/auto park | | | | m   Incl. M | |
| 19 | * R&I | Park sensor inner w/auto park | | | | m   Incl. M | |
| 20 | Refn | Park sensor outer w/auto park | | | | m | 0.2 |
| 21 | | Add for Three Stage | | | | | 0.1 |
| 22 | Refn | Park sensor inner w/auto park | | | | m | 0.2 |
| 23 | | Add for Three Stage | | | | | 0.1 |
| 24 | | **FRONT LAMPS** | | | | | |
| 25 | Repl | LT Turn signal lamp | 9J1945061D | 1 | 74.05 | 0.2 | |
| 26 | R&I | RT Turn signal lamp | | | | 0.2 | |
| 27 | R&I | LT R&I headlamp assy | | | | 0.4 | |
| 28 | | **HOOD** | | | | | |
| 29 | R&I | Emblem | | | | 0.2 | |
| 30 | Repl | Emblem packing | 9P1853611 | 1 | 10.98 | | |
| 31 | | **FENDER** | | | | | |
| 32 | Repl | LT Fender w/o Turbo S | 9J1821101YGRV | 1 | 684.11 | 2.6 | 2.2 |
| 33 | | Add for Three Stage | | | | | 1.5 |
| 34 | Repl | LT Fender liner upper w/o Turbo S | 9J1810907D | 1 | 277.01 | Incl. | |
| 35 | R&I | LT Trim | | | | Incl. | |
| 36 | * R&I | LT Charging port | | | | m   0.6 M | |
| 37 | R&I | LT Charging port cover | | | | 0.2 | |
| 38 | Refn | LT Charging port cover | | | | | 0.8 |
| 39 | | Overlap Minor Panel | | | | | -0.2 |
| 40 | | Add for Three Stage | | | | | 0.2 |

---

SF-Sasson, Assaf - 000201

**Preliminary Estimate**

---

**Customer: Sasson, Ada**                                                          **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

---

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 41 | **ELECTRICAL** | | | | | | | | |
| 42 | * | R&I | Battery D&R | | | m | 0.4 | M | |
| 43 | **WHEELS** | | | | | | | | |
| 44 | | R&I | LT/Front R&I wheel | | | m | 0.1 | M | |
| 45 | | R&I | RT/Front R&I wheel | | | m | 0.1 | M | |
| 46 | **RESTRAINT SYSTEMS** | | | | | | | | |
| 47 | | R&I | LT Ft impact sensor | | | m | 0.2 | M | |
| 48 | **FRONT DOOR** | | | | | | | | |
| 49 | | Blnd | LT Door shell | | | | | | 1.8 |
| 50 | | R&I | LT Belt molding matte black | | | | 0.8 | | |
| 51 | | R&I | LT R&I mirror | | | | 0.5 | | |
| 52 | | R&I | LT Handle, outside | | | | 0.5 | | |
| 53 | | R&I | LT R&I trim panel | | | | 0.8 | | |
| 54 | **VEHICLE DIAGNOSTICS** | | | | | | | | |
| 55 | * | | Pre-repair scan | 1 | | m | 1.0 | M | |
| 56 | * | | Post-repair scan | 1 | | m | 1.0 | M | |
| 57 | **MISCELLANEOUS OPERATIONS** | | | | | | | | |
| 58 | | Repl | Cover car/bag | 1 | | | 0.2 | | |
| 59 | # | | Prep & Seal Raw Bumper Cover | 1 | | | | | 1.0 |
| 60 | # | | Tint Color & Letdown Panel | 1 | | | | | 1.0 |
| 61 | # | | Sand & Buff | 1 | | | | | 5.0 |
| 62 | # | | Flex Additive | 1 | 10.00 | | | | |
| 63 | | | OTHER CHARGES | | | | | | |
| 64 | # | | E.P.C. | 1 | 5.00 | | | | |
| | | | **SUBTOTALS** | | **3,066.50** | | **14.4** | | **19.0** |

---

## ESTIMATE TOTALS

| Category | Basis | | Rate | Cost $ |
|---|---|---|---|---|
| Parts | | | | 3,061.50 |
| Body Labor | 10.8 hrs | @ | $ 105.00 /hr | 1,134.00 |
| Paint Labor | 19.0 hrs | @ | $ 105.00 /hr | 1,995.00 |
| Mechanical Labor | 3.6 hrs | @ | $ 249.00 /hr | 896.40 |
| Paint Supplies | 19.0 hrs | @ | $ 38.00 /hr | 722.00 |
| Other Charges | | | | 5.00 |
| Subtotal | | | | 7,813.90 |
| Sales Tax | $ 7,813.90 | @ | 7.0000 % | 546.97 |
| **Grand Total** | | | | **8,360.87** |
| Deductible | | | | 0.00 |
| **CUSTOMER PAY** | | | | **0.00** |
| **INSURANCE PAY** | | | | **8,360.87** |

SF-Sasson, Assaf - 000202

**Preliminary Estimate**

**Customer: Sasson, Ada**                                                                    **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE(FLORIDA STATUTES TITLE XLVI, CHAPTER 817.234). FAILURE TO USE THE INSURANCE PROCEEDS IN ACCORDANCE WITH THE SECURITY AGREEMENT,IF ANY, COULD BE A VIOLATION OF S. 812.014, FLORIDA STATUTES. IF YOU HAVE ANY QUESTIONS, CONTACT YOUR LENDING INSTITUTION. IF A CHARGE FOR SHOP SUPPLIES OR HAZARDOUS OR OTHER WASTE REMOVAL IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: "THIS CHARGE REPRESENTS COSTS AND PROFITS TO THE MOTOR VEHICLE REPAIR FACILITY FOR MISCELLANEOUS SHOP SUPPLIES OR WASTE DISPOSAL." IF A CHARGE FOR NEW TIRES OR A NEW OR REMANUFACTURED LEAD-ACID BATTERY IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: A $1.00 FEE FOR EACH NEW MOTOR VEHICLE TIRE SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW MOTOR VEHICLE TIRES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX CHAPTER 403.718. A $1.50 FEE FOR EACH NEW OR REMANUFACTURED LEAD-ACID BATTERY SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW OR REMANUFACTURED LEAD-ACID BATTERIES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX 403.7185.

SF-Sasson, Assaf - 000203

**Preliminary Estimate**

| | |
|---|---|
| **Customer: Sasson, Ada** | **Job Number:** |

2022 PORS Taycan RWD 4D SED Electric- Electric

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data.  Unless otherwise noted, (a) all items are derived from the Guide ERQ6965, CCC Data Date 06/01/2022, and potentially other third party sources of data; and (b) the parts presented are OEM-parts.  OEM parts are manufactured by or for the vehicle's Original Equipment Manufacturer (OEM) according to OEM's specifications for U.S. distribution.  OEM parts are available at OE/Vehicle dealerships or the specified supplier.  OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships with discounted pricing.    Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may have been modified or may have come from an alternate data source.  Tilde sign (~) items indicate MOTOR Not-Included Labor operations.  The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate. Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM,  A/M or NAGS.  Used parts are described as LKQ, RCY, or USED.  Reconditioned parts are described as Recond.  Recored parts are described as Recore.  NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications.  Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times.  NAGS labor operation times are not included.  Pound sign (#) items indicate manual entries.

Some 2022 vehicles contain minor changes from the previous year.  For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used.  The CCC ONE estimator has a list of applicable vehicles.  Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component.  s=MOTOR Structural component.  T=Miscellaneous Taxed charge category.  X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category.  E=Electrical labor category.  F=Frame labor category.  G=Glass labor category.  M=Mechanical labor category.  S=Structural labor category.   (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent.  Algn.=Align.  ALU=Aluminum.  A/M=Aftermarket part.  Blnd=Blend.  BOR=Boron steel.  CAPA=Certified Automotive Parts Association.  D&R=Disconnect and Reconnect.  HSS=High Strength Steel.  HYD=Hydroformed Steel.  Incl.=Included.  LKQ=Like Kind and Quality.  LT=Left.  MAG=Magnesium.   Non-Adj.=Non Adjacent.  NSF=NSF International Certified Part.  O/H=Overhaul.  Qty=Quantity.  Refn=Refinish.  Repl=Replace.  R&I=Remove and Install.  R&R=Remove and Replace.  Rpr=Repair.  RT=Right.  SAS=Sandwiched Steel.  Sect=Section.  Subl=Sublet.  UHS=Ultra High Strength Steel.  N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Intelligent Services Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair.  EPA=Environmental Protection Agency.  NHTSA= National Highway Transportation and Safety Administration.  PDR=Paintless Dent Repair.  VIN=Vehicle Identification Number.

SF-Sasson, Assaf - 000204

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*



June 7, 2022

Miguel Salas
3870 NE 168th St
N Miami Beach FL  33160-3554

State Farm Claims
PO Box 52250
Phoenix AZ 85072-2250

.

RE:    Claim Number:        59-34T0-34F
       Date of Loss:         May 27, 2022
       Our Insured:          Ada L Sasson

Dear Miguel Salas:

We have received notice of your loss. To help us with our investigation and evaluation, we would like the opportunity to discuss the details with you. Please contact us at your earliest convenience.

We are committed to providing remarkable claim service. We look forward to hearing from you soon. If we have spoken with you since the date of this letter, please disregard our request.

Sincerely,

Jason Cannell
Claim Specialist
(844) 292-8615  Ext. 4808423711
statefarmfireclaims@statefarm.com
*For your protection, when emailing State Farm, please do not include sensitive personal information such as Social Security Number, credit/debit card number (financial account number), driver's license number, or health/medical information in an email. Please contact us at (844) 292-8615  Ext. 4808423711 to discuss sensitive information.*

State Farm Mutual Automobile Insurance Company

Take advantage of our self-service options
Go to statefarm.com® to easily review claim status, update direct deposit account information for claim payments and many other insurance and banking services.

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*



June 7, 2022

Ada and Assaf Sasson
3385 NE 167th St
N Miami Beach FL  33160-3849

State Farm Claims
PO Box 52250
Phoenix AZ 85072-2250

RE:    Claim Number:        59-34T0-34F
       Date of Loss:        May 27, 2022

Dear Ada and Assaf Sasson:

State Farm® will prepare an estimate using prices that are competitive in your market area. You have the right to select the repair facility that will repair your vehicle. Only you can authorize repairs to your vehicle.

In the event additional damage is identified by the repairer you select, any amount previously paid will be taken into consideration as we determine any additional amounts owed. We will review and consider any supplemental amounts requested by you or the repairer you select, should additional loss-related damage become apparent. Any additional payment will be based upon supplemental amounts agreed to by State Farm.

If paintless dent repair is specified in whole or in part for your vehicle repairs, payment is based on the price for those repairs from agreements we have with repair facilities for such repairs. This price is competitive in the market area for paintless dent repair.

If you have not selected a repair facility, we can assist you by identifying Select Service® and/or paintless dent repairers who have agreements with State Farm to provide quality repairs at prices that are competitive in your market area. Conveniently located repairers can also be found by going to statefarm.com®.

You are free to select repairers who do not have Select Service or paintless dent repair agreements with State Farm. These repairers may perform quality repairs on your vehicle, but may charge more than the prices that are competitive in your market area, and/or prices for paintless dent repair that are established through agreements we have with repair facilities. We will assist you by working with these repairers as best we can.

59-34T0-34F
Page 2
June 7, 2022


Sincerely,


Jason Cannell
Claim Specialist
(844) 292-8615  Ext. 4808423711

State Farm Mutual Automobile Insurance Company

SF-Sasson, Assaf - 000220



Claim Number: 59-34T0-34F
Date of Incident: 05/27/2022



# Hello, ASSAF. We have your claim.

We received a claim for your 2018 MASERATI GHIBLI and have started our review.

We'll contact you if we need more information. We're here to help you get back on the road.

## Things for you to do

Use your claims hub on our app or online to view your claim details.

You can also

- Track your claim.
- View financial or personal information
- Set up or manage your electronic payment preferences.

We're here for you – before, during and after your claim. Learn more about the claims process.

Your Claim Contact
Claim Team
844-292-8615, ext. 102

MONDAY - FRIDAY : 7 am - 7 pm
SATURDAY - SUNDAY : closed

Save the StateFarm® claims number to your phone or text **AUTO** to 62789 for your claim contact card.

---

CONTACT US   PRIVACY POLICY   TERMS OF USE         Like a good neighbor, State Farm is there.®

Email intended for: ASSAF SASSON

**Please do not reply to this message**. This email was sent from a notification-only address that cannot accept incoming emails.

If you need to call us and you are deaf, hard of hearing, or do not use your voice to communicate, you may contact us via 711 or other relay services.

You received this email at SASSONASSAF@GMAIL.COM because you have a State Farm policy/account or you have requested information from State Farm. If you do not want to receive State Farm emails, you may opt out. If you prefer, write to us: State Farm Mutual Automobile Insurance Company, Mail Response Center, 1 State Farm Plaza, Bloomington, IL 61710.

For your protection, please do not include sensitive personal information such as Social Security Number, credit/debit card number (financial account number), driver's license number, or health/medical information in an email. Call your State Farm agent or State Farm customer service to discuss sensitive information.

           State Farm Mutual Automobile Insurance Company



Claim Number: 59-34T0-34F
Date of Incident: 05/27/2022



## Hello, ADA. We have your claim.

We received a claim for your 2018 MASERATI GHIBLI and have started our review.

We'll contact you if we need more information. We're here to help you get back on the road.

## Things for you to do

Use your claims hub on our app or online to view your claim details.

You can also

- Track your claim.
- View financial or personal information
- Set up or manage your electronic payment preferences.

We're here for you – before, during and after your claim. Learn more about the claims process.

Your Claim Contact
Claim Team
844-292-8615, ext. 102

MONDAY - FRIDAY : 7 am - 7 pm
SATURDAY - SUNDAY : closed

Save the StateFarm® claims number to your phone or text **AUTO** to 62789 for your claim contact card.

---

**CONTACT US**   **PRIVACY POLICY**   **TERMS OF USE**        Like a good neighbor, State Farm is there.®

Email intended for: ADA SASSON

**Please do not reply to this message**. This email was sent from a notification-only address that cannot accept incoming emails.

If you need to call us and you are deaf, hard of hearing, or do not use your voice to communicate, you may contact us via 711 or other relay services.

You received this email at SASSONADA@GMAIL.COM because you have a State Farm policy/account or you have requested information from State Farm. If you do not want to receive State Farm emails, you may opt out. If you prefer, write to us at: State Farm Mutual Automobile Insurance Company, Mail Response Center, 1 State Farm Plaza, Bloomington, IL 61710.

For your protection, please do not include sensitive personal information such as Social Security Number, credit/debit card number (financial account number), driver's license number, or health/medical information in an email. Call your State Farm agent or State Farm customer service to discuss sensitive information.

          State Farm Mutual Automobile Insurance Company



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 25417038**
**Date Processed: 08/19/2022**

| | |
|---|---|
| **Primary Contact:** | State Farm Enterprise SOP<br>Corporation Service Company- Wilmington, DELAWARE<br>251 Little Falls Dr<br>Wilmington, DE 19808-1674 |

| | |
|---|---|
| **Entity:** | State Farm Mutual Automobile Insurance Company<br>Entity ID Number  3461675 |
| **Entity Served:** | State Farm Mutual Automobile Insurance Company |
| **Title of Action:** | Assaf Sasson vs. State Farm Mutual Automobile Insurance Company |
| **Matter Name/ID:** | Assaf Sasson vs. State Farm Mutual Automobile Insurance Company (12765601) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Broward County Court, FL |
| **Case/Reference No:** | DFS#22-000303435/COINX-22-049821 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 08/19/2022 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | FL DFS on 08/17/2022 |
| **How Served:** | Electronic SOP |
| Sender Information: | Daren Stabinski P.A.<br>954-324-1552 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

*22-000303435*

CHIEF FINANCIAL OFFICER
**JIMMY PATRONIS**
STATE OF FLORIDA

ASSAF SASSON

PLAINTIFF(S)

VS.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT, DISCOVERY

**CASE #:**  **COINX-22-049821**
**COURT:**  **COUNTY COURT**
**COUNTY:**  **BROWARD**
**DFS-SOP #:** 22-000303435

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the
State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Wednesday,
August 17, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Friday, August 19, 2022 to
the designated agent for the named entity as shown below.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
LYNETTE COLEMAN
1201 HAYS STREET
TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible
for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court
pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

Jimmy Patronis
Chief Financial Officer

DAREN STABINSKI
PARTNER
DAREN STABINSKI P.A.
100 N FEDERAL HWY
APT 524
FT LAUDERDALE, FL 33301

BL1

SF-Sasson, Assaf - 000225

IN THE COUNTY COURT IN AND
FOR BROWARD COUNTY, FLORIDA

CASE NO.  COINX-22-049821

ASSAF SASSON,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

 Defendant.

_____ /

**S U M M O N S**

THE STATE OF FLORIDA:

To Each Sheriff of Said State:

      **YOU ARE COMMANDED** to serve this Summons along with a copy of the Complaint, Notice of Service

of Interrogatories, Interrogatories, and Request for Production, in this lawsuit on the Defendant:

      PLEASE SERVE:     STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

      BY SERVING:     CHIEF FINANCIAL OFFICER
                             300 East Gaines Street
                             Tallahassee, FL 32399

Each defendant is required to serve written defenses to the Complaint on the Plaintiff's attorney, to wit: **Daren**

**Stabinski, Esq., Daren Stabinski P.A., 100 N. Federal Hwy, #524, Fort Lauderdale, FL 33301,**

**daren@darenstabinskipa.com,** within twenty (20) days after service of this Summons on that Defendant, exclusive

of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on

Plaintiff's attorney, or immediately thereafter.  If a defendant fails to do so, a default will be entered against that

defendant for the relief demanded in the Complaint or Petition.  Discovery is to be answered within 45 days of the

service of the Complaint.

____ of __    AUG 17 2022

                As Clerk of said Court

                By: _____
                   as Deputy Clerk

                    BRENDA D. FORMAN

SF-Sasson, Assaf - 000226

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.  COINX-22-049821

ASSAF SASSON,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
Defendant.

_____/

### COMPLAINT

COMES NOW, the Plaintiff, ASSAF SASSON, by and through undersigned counsel, hereby sues the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and in support thereof alleges:

1. This is a petition within the jurisdictional limits of this Court exclusive of interest, costs, attorney's fees.

2. At all times material hereto, the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY was a duly authorized insurance company, organized and incorporated under the Laws of Florida or authorized to transact insurance business in the State of Florida.

3. At all times material hereto, the Plaintiff, ASSAF SASSON was and is over the age of 18 and sui juris.

4. Venue is proper in Broward County, Florida, because this claim arose in Broward County, Florida, and the Defendant sufficiently transacts business in Broward

County, Florida.

5. For valuable consideration, at all times material hereto, the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, issued a policy of automobile insurance, that included collision benefits, which provided coverage to Plaintiff under Policy Number J53-4643-B02-59C (The Plaintiff is not in possession of the complete policy of insurance, and therefore, is unable to attach a true and correct copy hereto, however the declarations page of the policy is attached hereto).

6. Pursuant to the terms thereof, the Defendant agreed to pay collision benefits to repair or replace Plaintiff's 2022 Porsche Taycan in the event of an accident.

7. On or about May 27, 2022, ADA SASSON, an insured under said policy, was traveling in the above insured vehicle and was involved in an automobile accident in Broward County, Florida. Said vehicle was insured under said insurance policy.

8. Said automobile accident caused the Plaintiff's vehicle to suffer damages.

9. The Plaintiff, ASSAF SASSON, submitted a claim for collision benefits to the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for payment related to the damages to his automobile suffered in the above-mentioned motor vehicle accident, under claim number 59-34T0-34F.

10. The Plaintiff has complied with all statutory conditions precedent to recovering benefits under said policy.

11. As the subject vehicle is a luxury foreign vehicle, on or about May 31, 2022, Plaintiff brought the vehicle to Stuttgart International, in Broward County,

SF-Sasson, Assaf - 000228

Florida, a collision body shop that specializes in repairing such vehicles.

12. Stuttgart International created an estimate of repairs to the subject vehicle in the amount of $8,360.87.  Said estimate was provided to Defendant.

13. On or about July 1, 2022, Defendant created an estimate of damages to the subject vehicle in the amount of $6,267.03, and only agreed to pay that amount for repair to the vehicle less a $500.00 deductible.

14. To date, Defendant has refused and continues to refuse to pay Plaintiff the amount of the estimate created by Stuttgart International, which is the true the amount required to properly repair the subject luxury vehicle.

15. Moreover, Defendant has refused and continues to refuse to pay Plaintiff for devaluation to the subject vehicle caused as a result of the subject accident, an amount which is covered under the subject policy.

16. As a direct and proximate result of Defendant's failure to pay the full benefits under the subject policy, Plaintiff has been denied use of the vehicle and suffered damages as a result thereof.

17. The Defendant has breached its contract with Plaintiff by failing to pay for the damages sustained by Plaintiff in the above referenced accident.

18. The Plaintiff and/or its agents have complied with all statutory conditions under the law.

19. As a result of the Defendant's failure and/or refusal to pay the aforesaid benefits due, the Plaintiff suffered actual damages more than $8,000.00 but less than

SF-Sasson, Assaf - 000229

$15,000.00, exclusive of attorney's fees, costs, and interest.

20. The Plaintiff has been caused to retain the undersigned and this law firm to enforce its rights against the Defendant for collision benefits and is thereby obligated to pay reasonable attorney's fee and costs.

21. The Plaintiff is entitled to prevailing party attorney's fees, costs, and statutory interest pursuant to Florida Statutes §627.428.

WHEREFORE, the Plaintiff, ASSAF SASSON, demands judgment against the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, in the amount greater than $8,000.00 but less than $15,000.00, for collision damages to Plaintiff's vehicle, damages due to devaluation of his vehicle, loss of use damages, attorney's fees, costs, interest, and further demands trial by jury for all issues so triable, and any other relief that this Court deems just and proper.

Respectfully submitted,

Daren Stabinski P.A.
100 N. Federal Hwy, #524
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com

___/s/ Daren Stabinski_____
Daren Stabinski, Esq.
Fla. Bar No. 002951

SF-Sasson, Assaf - 000230

State Farm Mutual Automobile Insurance Company
PO Box 2358
Bloomington IL 61702-2358



P-6825      A

SASSON, ASSAF & ADA L
3385 NE 167TH ST
N MIAMI BEACH FL 33160-3849

## AUTO RENEWAL

**PREMIUM PAID: $1,102.73**
**DO NOT PAY.**
*Your premium is billed through the State Farm Payment Plan*

State Farm Payment Plan Number: 1520065519

**Your State Farm Agent**

ANTHONY GARCIA

Office: 561-793-9822

Address: 1035 S STATE ROAD 7 STE 311
             WELLINGTON, FL 33414-6137

*If you have a new or different car, have added any drivers, or have moved, please contact your agent.*

**Thank you for choosing State Farm.**

**Policy Number: J53 4643-B02-59C**
Policy Period: August 2, 2022 to February 2, 2023

**Vehicle:**
2022 PORSCHE TAYCAN

**Principal Driver:**
ASSAF  SASSON

IMPORTANT NOTICE- Under No-Fault Coverage, the only medical expenses we will pay are reasonable medical expenses that are payable under the Florida Motor Vehicle No-Fault Law. The most we will pay for such reasonable medical expenses is 80% of the "schedule of maximum charges" found in the Florida Motor Vehicle No-Fault Law and in the Limits section of the Florida Car Policy's No-Fault Coverage.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

Policy Number: J53 4643-B02-59C
Prepared June 10, 2022
Form 1004933

Page number 1 of 7

144211  201  11-01-2015

TP-DB

# Save up to 25% off
# on auto care

As a valued State Farm® customer, now it's simple to find great mechanic shops in your neighborhood and enjoy exclusive savings from Openbay of up to 25%.


**Compare estimates**


**Choose local shops**


**Schedule appointments online**



**Scan to sign up and start saving.**

Learn more at Openbay.com

SF-Sasson, Assaf - 000231



## VEHICLE INFORMATION

**Review your policy information carefully.** If anything is incorrect, or if there are any changes to your vehicle information, please let us know right away.

| Vehicle Description | Vehicle Identification Number (VIN) | Who principally drives this vehicle? | How is this vehicle normally used? *National average: 12,000 miles driven annually per vehicle* |
|---|---|---|---|
| 2022 PORSCHE TAYCAN | WP0AA2Y11NSA13378 | ASSAF SASSON, a married male, who will be age 56 as of August 02, 2022. | To Work, School or Pleasure. Driven over 7,500 miles annually. |

### Other Household Vehicle(s)

Your premium may be influenced by other State Farm policies that currently insure the following vehicle(s) in your household:

2018 TESLA MODEL 3
2021 TESLA MODEL S

### Premium Adjustment

Each year, we review our medical payments and personal injury protection coverages claim experience to determine the vehicle safety discount that is applied to each make and model. In addition, we review the comprehensive, collision, bodily injury and property damage claim experience annually to determine which makes and models have earned decreases or increases from State Farm's standard rates. If any changes result from our reviews, adjustments are reflected in the rates shown on this renewal notice.

## DRIVER INFORMATION

### Assigned Driver(s)

The following driver(s) are assigned to the vehicle(s) on this policy.

| Name | Age *as of August 2, 2022* | Gender | Marital Status |
|---|---|---|---|
| ASSAF SASSON | 56 | Male | Married |

### Other Household Driver(s)

In addition to the Principal Driver(s) and Assigned Driver(s), your premium may be influenced by the drivers shown below and other individuals permitted to drive your vehicle. This list does not extend or expand coverage beyond that contained in this automobile policy. The drivers listed below are the drivers reported to us that most frequently drive other vehicles in your household.

ADA L SASSON
NOA ANN SASSON

SF-Sasson, Assaf - 000232



**Principal Driver & Assigned Drivers**

For each automobile, the **Principal Driver** is the individual who most frequently drives it.

Each driver is designated as an **Assigned Driver** on the household automobile that he or she most frequently drives.

Your premium may be influenced by the information shown for these drivers.

**IMPORTANT NOTICE REGARDING YOUR PREMIUM**

State Farm works hard to offer you the best combination of price, service, and protection.  The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once during your policy term, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

**COVERAGE AND LIMITS** *See your policy for an explanation of these coverages.*

| A | Liability | |
|---|---|---|
| | Bodily Injury 300,000/300,000 | |
| | Property Damage  100,000 | $358.80 |
| P14 | 500 Deductible No Fault | |
| | Deductible Applies to You and to | |
| | Each of Your Dependent Relatives | $91.46 |
| D | 500 Deductible Comprehensive | $254.26 |
| G | 500 Deductible Collision | $383.11 |
| H | Emergency Road Service | $0.97 |
| R1 | Car Rental & Travel Expense | |
| | 80%  Per Day, $1,000 Max | $14.13 |
| **Total Premium** | | **$1,102.73** |

If any coverage you carry is changed to give broader protection with no additional premium charge, we will give you the broader protection without issuing a new policy, starting on the date we adopt the broader protection.

**IMPORTANT INFORMATION ABOUT UNINSURED MOTOR VEHICLE COVERAGE**

Now is a good time to consider either adding Uninsured Motor Vehicle Coverage, or increasing your limits for this coverage. This coverage protects you, your resident family members and your passengers in the event of bodily injury sustained in an accident for which an unidentified, uninsured, or underinsured driver is legally liable.

You have the right to choose one of these options:

  a. select stacking coverage (U) with any available limits up to your bodily injury liability coverage limits, which means

that if more than one Uninsured Motor Vehicle Coverage applies, the limits for the applicable coverages may be added together (Stacking is not available for policies with a named insured that is not a natural person);

  b. select, at a reduced premium, non-stacking coverage (U3) with any available limits up to your bodily injury liability coverage limits, which means the Uninsured Motor Vehicle Coverage limits are not added together in most circumstances. The non-stacking coverage on this policy is not available to persons injured while occupying a motor vehicle owned by you or a resident family member which is not insured for uninsured motorist coverage by this policy; or

  c. reject this coverage entirely.

Please contact your State Farm agent if you wish to change coverage.

*(continued on next page)*

SF-Sasson, Assaf - 000233



## COVERAGE AND LIMITS *continued*

**IMPORTANT INFORMATION ABOUT PREMIUM SAVINGS FOR NO-FAULT COVERAGE**

(Coverage P - Personal Injury Protection Insurance)
For personal injury protection insurance, the named insured may elect a deductible and to exclude coverage for loss of gross income and loss of earning capacity ("lost wages"). These elections apply to the named insured alone, or to the named insured and all dependent resident relatives. A premium reduction will result from these elections. The named insured is hereby advised not to elect the lost wage exclusion if the  named insured or dependent resident relatives are employed, since lost wages will not be payable in the event of an accident.

Please contact your agent for information about No-Fault premium savings.

**DISCOUNTS** *These adjustments have already been applied to your premium.*

| | |
|---|---|
| Multicar | ✓ |
| Vehicle Safety | ✓ |
| Good Driving | ✓ |
| Homeownership | ✓ |
| **Total Discounts** | **$467.49** |

## SURCHARGES AND DISCOUNTS

**AUTOMOBILE RATING PLAN** - Applies to private passenger cars only.

**Accident-Free Discount** - Once your policy has been in force for at least three years with no chargeable accidents, you may qualify for our Accident-Free Discount. Once you qualify, this discount applies as long as there are no chargeable accidents, and may even increase over time.

**Good Driving Discount** - Newer policyholders who do not yet qualify for our Accident-Free Discount  (available after three years with no chargeable accidents) may already be receiving a Good Driving Discount. This discount continues to apply until your policy qualifies for the Accident-Free Discount as long as there are no chargeable accidents and no new drivers. If you add new drivers, they must also qualify in order for your Good Driving Discount to continue.

**Chargeable Accidents** - For new business rating, an accident is chargeable if it results in $750 or more of damage to any property. For renewal business, an accident is chargeable as of the date State Farm pays at least $750 (for accidents occurring on or after April 1, 1999) under property damage liability and collision coverages for an at-fault accident.

**Surcharges** - If there are chargeable accidents, you may lose your Good Driving Discount or Accident-Free Discount and receive accident surcharges. But if the accident is the first to become chargeable in nine years and this policy has been in force for at least that long, the Accident-Free Discount will continue and no surcharge will apply. The surcharge for each accident depends upon the number and timing of the accidents, and each accident surcharge will remain in effect up to three years.

Surcharges will be removed if the company is given satisfactory evidence that the driver involved is no longer a member of the household or will not be driving the car in the future. If that driver is insured on another State Farm policy, his or her driving record will be considered in the rating of the other policy.

These discounts and surcharges do not apply to all coverages. For complete details, see your State Farm agent.

## ADDITIONAL INFORMATION

If any information on this renewal notice is incomplete or inaccurate, or if you want to confirm the information we have in our records, please contact your agent. For additional information regarding discounts or coverages, see your State Farm agent or visit statefarm.com®.

SF-Sasson, Assaf - 000234

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:   COINX-22-049821

ASSAF SASSON,

        Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/

## PLAINTIFFS' REQUEST FOR PRODUCTION TO DEFENDANT

Plaintiff, ASSAF SASSON, by and through their undersigned counsel, and pursuant to Florida Rules of Civil Procedure, hereby request the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, to produce within the items and matters hereinafter set forth on or before the applicable time prescribed by said rule for inspection and/or copying at the office of the undersigned attorney, the following items and/or documents:

1. Any and all insurance policies ever issued by the Defendant to the Plaintiff, including all declarations pages, applications, addenda and riders.

2. The underwriting file of the Plaintiff.

3. Copies of any and all correspondence, forms, report or other documents regarding the Plaintiff's claim herein.

4. Any and all surveillance reports, claims history reports or other investigative reports prepared by you or on your behalf with regard to the Plaintiff or Plaintiff's claim.

5.      Any and all correspondence between Defendant and/or any representative thereof and the Plaintiff or anyone acting on the Plaintiff's behalf.

6.      Any and all documents, papers or things given to Defendant and/or any representative thereof by the Plaintiff or the Plaintiff's agents prior to the filing of the lawsuit.

7.      Any and all written or recorded statements of Plaintiff.

8.      Any and all written or recorded statements of the Plaintiff's agents and/or representatives.

9.      Any and all written or recorded statements of any witness or third party with regard to the subject claim.

10.     Any and all contracts, agreements and/or producing agreements as between the Defendant and the insurance agent, with regard to the sale and/or solicitation of the subject insurance.

11.     Any and all estimates and/or appraisal reports relating to the Plaintiffs' claims which are the subject of this litigation.

12.     Any and all underwriting guidelines, manuals, memos, instructions or other documents delivered by the Defendant to the insurance agent related to the subject policy.

13.     Any and all photographs and/or video of the Plaintiffs' property and/or its contents.

14.     Any and all proof of loss forms, statements, notices of claim and/or any other document submitted by the Plaintiff pertaining to his claim that is the subject of this litigation.

SF-Sasson, Assaf - 000236

15.     Any appraisals, estimates or other documents pertaining to the value of Plaintiff's claim.

16.     Defendant's entire file pertaining to the claim made by Plaintiffs.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of this Request for Production was attached and to be served together with the Summon and Complaint onto the Defendant.

Daren Stabinski P.A.
100 N. Federal Hwy, #524
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

__/s/ Daren Stabinski_____
Daren Stabinski, Esq.
Fla. Bar. No. 002951

SF-Sasson, Assaf - 000237

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:  COINX-22-049821

ASSAF SASSON,

      Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

_____/

## PLAINTIFFS' NOTICE OF SERVICE OF INSURANCE COVERAGE INTERROGATORIES TO DEFENDANT

Plaintiff, ASSAF SASSON, by and through their undersigned counsel, and pursuant to Fla.R.Civ.P. 1.340, hereby file notice that certain Insurance Coverage Interrogatories, numbered 1 through 17 were propounded upon the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, to be answered in writing, under oath, within forty-five (45) days from date of service of same.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of this Request for Production was attached and to be served together with the Summon and Complaint onto the Defendant.

Daren Stabinski P.A.
100 N. Federal Hwy, #524
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

__/s/ Daren Stabinski_____
Daren Stabinski, Esq.
Fla. Bar. No. 002951

## PLAINTIFFS' INSURANCE COVERAGE INTERROGATORIES
## TO DEFENDANT

1.      What is your name, address and, if you are answering for someone else, your official position or relationship with the party to whom the interrogatories are directed?

2.      Describe any and all policies of insurance which you contend cover or may cover the allegations set forth in Plaintiffs' complaint, detailing as to such policies the name of the insurer, the number of the policy, the available limits of coverage, including those contained in the policy language, and the name and address of the custodian of the policy.

3.      Please state with specificity any defenses to coverage that you have in this matter and identify any documents supporting your defenses to coverage.

2

SF-Sasson, Assaf - 000239

4.    Please state with specificity any conditions precedent or subsequent to the Plaintiffs' claim that you contend have not been fulfilled by the Plaintiffs, if any exist.

5.    Please state your reason(s) for your nonpayment and/or non-consideration of this claim.

6.    Please state the date that you received notice of this claim, the date that you acknowledged notice of the claim, and the date that you received notice of the incident which is the subject of this matter.

7.    State separately the facts upon which you rely on for each affirmative defense in your Answer to the Plaintiffs' Complaint.

8.      Do you contend any person or entity other than you is, or may be, liable in whole or in part for the claims asserted against you in this lawsuit? If so, state the full name and address of each such person or entity, the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not you have notified each such person or entity of your contention.

9.      List the names, addresses and telephone numbers of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which the witness has knowledge.

10.     State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody, or control of, any estimate of damage, model, plat, map, drawing, motion picture, video-tape, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

11.     Please provide a list of the names and current addresses of any and all individuals employed by, or agents of the Defendant, who were in any way involved with the handling of this claim, for any purpose after the date of loss but prior to the institution of this litigation.  Please also provide the date of inspection(s) of the property and a short statement of the person's knowledge and involvement with the claim.

12.     List the names, residence addresses, business addresses and telephone numbers of all persons believed or known by you, your agents, or attorneys, to have heard Plaintiffs make any statement, remark or comment concerning the incident involved herein and the substance of any such statement, remark or comment.

13.     For any and all policy defenses which you reasonably believe are available with regard to the claim made by the Plaintiffs herein: Describe in detail the factual and legal basis for any such defenses and give complete names, residence addresses, business addresses and telephone numbers of each any every person believed or known by you, your agents or attorneys, to have knowledge of the facts which would provide the basis for any such defense.

14.     Please list any amounts that Defendant has paid to Plaintiffs to date for the subject claim, and describe what each such payment was for.

15.     For each denied or withheld payment of claim listed above, state in detail the legal grounds for doing so, the factual basis for doing so, and provide the exact wording of any policy provisions, or the exact wording of any statutory language or case law upon which you base your denial or withholding of payment.

16.     If an appraisal of the subject vehicle and/or its contents was prepared, please state the items that have been appraised, the amount that each such item was appraised for, the name and address of any person who performed or contributed to said appraisal, and the date of said appraisal.

17.   State the specific nature of your relationship with the insurance agent who sold Plaintiffs the subject policy of insurance at the time that the subject policy was issued.  State whether said insurance agent was authorized to sell or service your policies, and if so, state the specifics of its authority.

SF-Sasson, Assaf - 000244

**JURAT**

_____
Affiant


STATE OF FLORIDA          )
                          )          SS:
COUNTY OF                 )


    SUBSCRIBED and sworn to (or affirmed) before me this _____ day of _____, 2021, by _____, who is personally known to me or has produced _____ as identification.


_____
NOTARY PUBLIC, State of Florida

SF-Sasson, Assaf - 000245

# STATE FARM INSURANCE COMPANIES

ALL

Take this initial estimate to the repair facility of your choice.  If additional damage is found have the repair facility use the "Request Supplement" link at b2b.statefarm.com. **This is not an email address; it is the site to submit a Supplement**. All supplements must be approved by State Farm.

|  |  |
|---|---|
| Claim #: | 59-34T0-34F*1 |
| Workfile ID: | e264c7eb |
| Rate Table: | Default |

## Supplement of Record 1 Summary

Written By: JOHN HENRIQUEZ, 7/1/2022 12:23:10 PM
Claim Rep: A T1 CS Team, Prop, (844) 292-8615 x102 Business

| | | | | | |
|---|---|---|---|---|---|
| Insured: | ASSAF SASSON | Owner Policy #: | | Claim #: | 59-34T0-34F*1 |
| Type of Loss: | Collision | Date of Loss: | 05/27/2022 12:00 AM | Days to Repair: | 0 |
| Point of Impact: | 11 Left Front | Deductible: | 500.00 | | |

| Owner (Insured): | Inspection Location: | Repair Facility: |
|---|---|---|
| ASSAF SASSON | Stuttgart International Auto | Stuttgart International Auto |
| 3385 NE 167TH ST | 1055 NW 51st Ct | 1055 NW 51st Ct |
| N MIAMI BEACH, FL 33160-3849 | Fort Lauderdale, FL 33309 | Fort Lauderdale, FL 33309 |
| (786) 586-2101 Evening | Pocket Estimate | (954) 563-5011 Evening |
| (786) 586-2101 Cellular | (954) 563-5011 Evening | |

## VEHICLE

2022 PORS Taycan RWD 4D SED Electric- Electric white

| | | | | | |
|---|---|---|---|---|---|
| VIN: | WP0AA2Y11NSA13378 | Production Date: | | Interior Color: | |
| License: | kcya92 | Odometer: | 1603 | Exterior Color: | white |
| State: | FL | Condition: | | | |

| TRANSMISSION | CONVENIENCE | AM Radio | SEATS |
|---|---|---|---|
| Automatic Transmission | Air Conditioning | FM Radio | Bucket Seats |
| POWER | Intermittent Wipers | Stereo | Leather Seats |
| Power Steering | Tilt Wheel | Search/Seek | Heated Seats |
| Power Brakes | Cruise Control | Auxiliary Audio Connection | WHEELS |
| Power Windows | Rear Defogger | Satellite Radio | Aluminum/Alloy Wheels |
| Power Locks | Keyless Entry | SAFETY | PAINT |
| Power Mirrors | Message Center | Drivers Side Air Bag | Three Stage Paint |
| Heated Mirrors | Steering Wheel Touch Controls | Passenger Air Bag | OTHER |
| Power Driver Seat | Telescopic Wheel | Anti-Lock Brakes (4) | Traction Control |
| Power Passenger Seat | Climate Control | 4 Wheel Disc Brakes | Stability Control |
| DECOR | Navigation System | Front Side Impact Air Bags | Rear Spoiler |
| Dual Mirrors | Backup Camera | Head/Curtain Air Bags | Xenon or L.E.D. Headlamps |
| Tinted Glass | Parking Sensors | Hands Free Device | Power Trunk/Liftgate |
| Console/Storage | Home Link | Rear Side Impact Air Bags | |
| Overhead Console | RADIO | Lane Departure Warning | |

SF-Sasson, Assaf - 000248

Claim #: 59-34T0-34F*1
Workfile ID: e264c7eb

## Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

| Line | | Oper | | Description | Part Number | Qty | Extended Price $ | Labor | | Paint |
|------|---|---|------|-------------|-------------|-----|------------------|-------|---|-------|
| 1 | | **FRONT BUMPER & GRILLE** | | | | | | | | |
| 2 | | | | O/H front bumper | | | | 3.2 | | |
| 3 | <> | | Repl | Bumper cover w/auto park | 9J1807013AY | 1 | 1,116.91 | Incl. | | 3.0 |
| 4 | | S01 | | Add for Three Stage | | | | | | 2.1 |
| 5 | | | | Add for camera | | | | m | 0.2 |
| 6 | | | Repl | Spoiler | 9J1807541OK1 | 1 | 350.72 | Incl. | | |
| 7 | | | Repl | LT Side bracket | 9J1807227B | 1 | 30.75 | 0.2 | | |
| 8 | | | Repl | Center cover w/o adaptive cruise, w/o night vision | 9J1807823OK1 | 1 | 48.75 | 0.2 | | |
| 9 | | | Repl | LT Corner trim | 9J1807833OK1 | 1 | 48.75 | Incl. | | |
| 10 | | | Repl | LT Front bracket | 9J1807347AOK1 | 1 | 53.62 | 0.2 | | |
| 11 | | | Repl | LT Outer grille | 9J1807681OK1 | 1 | 53.63 | Incl. | | |
| 12 | * | S01 | Repl | LT Air inlet duct | 9J1121705AOK1 | 1 | 56.88 | 0.1 | | |
| 13 | | | R&I | RT Air inlet screen | 9J1121753DOK1 | | | 0.2 | | |
| 14 | | | R&I | LT Air inlet screen | 9J1121754DOK1 | | | 0.2 | | |
| 15 | | | Repl | Add for distance sens | | 1 | | m | 0.3 | M |
| 16 | * | | R&I | Park sensor outer w/o auto park | 95B919275 | | | m | Incl. | M |
| 17 | * | | R&I | Park sensor w/auto park | 95B91927500G2X | | | m | Incl. | M |
| 18 | * | | R&I | Park sensor inner w/o auto park | 5Q0919275CG2X | | | m | Incl. | M |
| 19 | * | | R&I | Park sensor inner w/auto park | 9Y0919275A | | | m | Incl. | M |
| 20 | | S01 | Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | | |
| 21 | | **FRONT LAMPS** | | | | | | | | |
| 22 | | S01 | R&I | RT Turn signal lamp | 9J1945062D | | | 0.2 | | |
| 23 | | | R&I | LT R&I headlamp assy | 9J1941077D | | | 0.4 | | |
| 24 | | | Repl | LT Turn signal lamp | 9J1945061D | 1 | 74.05 | 0.2 | | |
| 25 | | **HOOD** | | | | | | | | |
| 26 | | | Blnd | Hood | 9J1823031AYGRV | | | | | 2.0 |
| 27 | | | R&I | Emblem | 9P1853601 | | | 0.2 | | |
| 28 | | | Repl | Emblem packing | 9P1853611 | 1 | 10.98 | | | |
| 29 | | **FENDER** | | | | | | | | |
| 30 | | | Repl | LT Fender w/o Turbo S | 9J1821101YGRV | 1 | 684.11 | 2.6 | | 2.2 |
| 31 | | | | Overlap Major Non-Adj. Panel | | | | | | -0.2 |
| 32 | | S01 | | Add for Three Stage | | | | | | 0.8 |
| 33 | | | Repl | LT Fender liner upper w/o Turbo S | 9J1810907D | 1 | 277.01 | Incl. | | |
| 34 | * | S01 | R&I | LT Charging port | 9J1821941E | | | m | 0.6 | M |
| 35 | | | R&I | LT Trim | 9J1854521G2X | | | Incl. | | |
| 36 | | | R&I | LT Charging port cover | 9J1821323 | | | 0.2 | | |
| 37 | | | Blnd | LT Charging port cover | 9J1821323 | | | | | 0.6 |
| 38 | | S01 | Repl | LT Front bracket | 9J1805373YGRV | 1 | 99.02 | 0.1 | | |
| 39 | | **ELECTRICAL** | | | | | | | | |
| 40 | | | R&I | Battery | PAD915105 | | | m | 0.4 | M |

SF-Sasson, Assaf - 000249

| | Claim #: | 59-34T0-34F*1 |
|---|---|---|
| | Workfile ID: | e264c7eb |

## Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

| 41 | | | Repl | High voltage system deactivate/activate | | 1 | | m | 1.8 | M |
|---|---|---|---|---|---|---|---|---|---|---|
| 42 | WHEELS | | | | | | | | | |
| 43 | | | R&I | LT/Front R&I wheel | 9J1601025C041 | | | m | 0.1 | |
| 44 | | S01 | R&I | RT/Front R&I wheel | 9J1601025B041 | | | m | 0.1 | |
| | | | | NOTE: bumper access | | | | | | |
| 45 | FRONT DOOR | | | | | | | | | |
| 46 | | | Blnd | LT Door shell | 9J1831051YGRV | | | | | 1.8 |
| 47 | | | R&I | LT Belt molding matte black | 9J183747503C | | | | 0.8 | |
| 48 | | | R&I | LT R&I mirror | 9J1857411B | | | | 0.5 | |
| 49 | | | R&I | LT Handle, outside | 9J1837205YG2X | | | | 0.5 | |
| 50 | | | R&I | LT R&I trim panel | 9J1867021OF5 | | | | 0.8 | |
| 51 | MISCELLANEOUS OPERATIONS | | | | | | | | | |
| 52 | # | | Rpr | Pre-repair Scan | | | | | 0.5 | M |
| 53 | # | | Rpr | Post-repair Scan | | | | | 0.5 | M |
| 54 | # | | Repl | Additional Cover Car | | 1 | 10.00 | | 0.2 | |
| 55 | # | S01 | Repl | De-nib & Polish Material | | 1 | 25.00 | | | |
| 56 | # | S01 | Rpr | De-nib & Polish | | | | | 3.2 | |
| | | | | NOTE: 30% of base time , bumper 3, hood 2.8, fender 2.2 , lf door 2. charge door, total 10.6 @30% 3.2 hours. | | | | | | |
| 57 | # | S01 | Rpr | Color Tint | | | | | | 0.6 |
| 58 | OTHER CHARGES | | | | | | | | | |
| 59 | # | S01 | | E.P.C. | | 1 | 5.00 | | | |
| | | | | SUBTOTALS | | 3,190.52 | | 18.7 | | 12.9 |

## ESTIMATE TOTALS

| Category | | Basis | | Rate | Cost $ |
|---|---|---|---|---|---|
| Parts | | | | | 3,185.52 |
| Body Labor | | 14.6 hrs | @ | $ 47.00 /hr | 686.20 |
| Paint Labor | | 12.9 hrs | @ | $ 47.00 /hr | 606.30 |
| Mechanical Labor | | 4.1 hrs | @ | $ 249.00 /hr | 1,020.90 |
| Paint Supplies | | 12.9 hrs | @ | $ 28.00 /hr | 361.20 |
| Other Charges | | | | | 5.00 |
| Subtotal | | | | | 5,865.12 |
| Sales Tax | Tier 1 | $ 5,000.00 | @ | 7.0000 % | 350.00 |
| Sales Tax | Tier 2 | $ 865.12 | @ | 6.0000 % | 51.91 |
| Total Cost of Repairs | | | | | 6,267.03 |
| Deductible | | | | | 500.00 |
| Total Adjustments | | | | | 500.00 |
| Net Cost of Repairs | | | | | 5,767.03 |

SF-Sasson, Assaf - 000250

Claim #:                                59-34T0-34F*1
Workfile ID:                            e264c7eb

## Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

Register online to check the status of your claim and stay connected with State Farm®. To register, go to   http://www.statefarm.com/
and select Check the Status of a Claim.  If you are already registered, thank you!

SF-Sasson, Assaf - 000251

Claim #:      59-34T0-34F*1
Workfile ID:      e264c7eb

## Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

## SUPPLEMENT SUMMARY

| Line | | | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|------|---|---|------|-------------|-------------|-----|----------|-------|-------|
| **Changed Items** | | | | | | | | | |
| 12 | | | Repl | LT Air inlet duct | 9J1121705AOK1 | 1 | -52.00 | -0.1 | |
| 12 | * | S01 | Repl | LT Air inlet duct | 9J1121705AOK1 | 1 | 56.88 | 0.1 | |
| **Deleted Items** | | | | | | | | | |
| 4 | | | | Add for Clear Coat | | | | | -1.2 |
| 30 | | | | Add for Clear Coat | | | | | -0.4 |
| **Added Items** | | | | | | | | | |
| 4 | | S01 | | Add for Three Stage | | | | | 2.1 |
| 20 | | S01 | Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | |
| 22 | | S01 | R&I | RT Turn signal lamp | 9J1945062D | | | 0.2 | |
| 32 | | S01 | | Add for Three Stage | | | | | 0.8 |
| 34 | * | S01 | R&I | LT Charging port | 9J1821941E | | m | 0.6  M | |
| 38 | | S01 | Repl | LT Front bracket | 9J1805373YGRV | 1 | 99.02 | 0.1 | |
| 44 | | S01 | R&I | RT/Front R&I wheel | 9J1601025B041 | | m | 0.1 | |
| | | | | NOTE: bumper access | | | | | |
| 55 | # | S01 | Repl | De-nib & Polish Material | | 1 | 25.00 | | |
| 56 | # | S01 | Rpr | De-nib & Polish | | | | 3.2 | |
| | | | | NOTE: 30% of base time , bumper 3, hood 2.8, fender 2.2 , lf door  2. charge door, total 10.6 @30% 3.2 hours. | | | | | |
| 57 | # | S01 | Rpr | Color Tint | | | | | 0.6 |
| **OTHER CHARGES** | | | | | | | | | |
| **Changed Items** | | | | | | | | | |
| | # | Est | | E.P.C. | | 1 | -3.50 | | |
| | # | S01 | | E.P.C. | | 1 | 5.00 | | |
| | | | | **SUBTOTALS** | | | 375.74 | 4.2 | 1.9 |

## TOTALS SUMMARY

| Category | Basis | | Rate | Cost $ |
|----------|-------|---|------|--------|
| Parts | | | | 374.24 |
| Body Labor | 3.6 hrs | @ | $ 47.00 /hr | 169.20 |
| Paint Labor | 1.9 hrs | @ | $ 47.00 /hr | 89.30 |
| Mechanical Labor | 0.6 hrs | @ | $ 249.00 /hr | 149.40 |
| Paint Supplies | 1.9 hrs | @ | $ 28.00 /hr | 53.20 |
| Other Charges | | | | 1.50 |
| Subtotal | | | | 836.84 |
| Sales Tax | Tier 2 | $ 836.84  @ | 6.0000 % | 50.21 |
| **Total Supplement Amount** | | | | **887.05** |
| **NET COST OF SUPPLEMENT** | | | | **887.05** |

SF-Sasson, Assaf - 000252

Claim #: 59-34T0-34F*1
Workfile ID: e264c7eb

Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

## CUMULATIVE EFFECTS OF SUPPLEMENT(S)

| | | | |
|---|---|---:|---|
| Estimate | | 5,379.98 | JOHN HENRIQUEZ |
| Supplement S01 | | 887.05 | JOHN HENRIQUEZ |
| Workfile Total: | $ | 6,267.03 | |
| TOTAL ADJUSTMENTS: | $ | 500.00 | |
| NET COST OF REPAIRS: | $ | 5,767.03 | |

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE(FLORIDA STATUTES TITLE XLVI, CHAPTER 817.234). FAILURE TO USE THE INSURANCE PROCEEDS IN ACCORDANCE WITH THE SECURITY AGREEMENT,IF ANY, COULD BE A VIOLATION OF S. 812.014, FLORIDA STATUTES. IF YOU HAVE ANY QUESTIONS, CONTACT YOUR LENDING INSTITUTION. IF A CHARGE FOR SHOP SUPPLIES OR HAZARDOUS OR OTHER WASTE REMOVAL IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: "THIS CHARGE REPRESENTS COSTS AND PROFITS TO THE MOTOR VEHICLE REPAIR FACILITY FOR MISCELLANEOUS SHOP SUPPLIES OR WASTE DISPOSAL." IF A CHARGE FOR NEW TIRES OR A NEW OR REMANUFACTURED LEAD-ACID BATTERY IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: A $1.00 FEE FOR EACH NEW MOTOR VEHICLE TIRE SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW MOTOR VEHICLE TIRES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX CHAPTER 403.718. A $1.50 FEE FOR EACH NEW OR REMANUFACTURED LEAD-ACID BATTERY SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW OR REMANUFACTURED LEAD-ACID BATTERIES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX 403.7185.

SF-Sasson, Assaf - 000253

Claim #:                                                      59-34T0-34F*1
Workfile ID:                                                  e264c7eb

## Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data.  Unless otherwise noted, (a) all items are derived from the Guide ERQ6965, CCC Data Date 06/16/2022, and potentially other third party sources of data; and (b) the parts presented are OEM-parts.  OEM parts are manufactured by or for the vehicle's Original Equipment Manufacturer (OEM) according to OEM's specifications for U.S. distribution.  OEM parts are available at OE/Vehicle dealerships or the specified supplier.  OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships with discounted pricing.  Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may have been modified or may have come from an alternate data source.  Tilde sign (~) items indicate MOTOR Not-Included Labor operations.  The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate. Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM,  A/M or NAGS.  Used parts are described as LKQ, RCY, or USED.  Reconditioned parts are described as Recond.  Recored parts are described as Recore.  NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications.  Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times.  NAGS labor operation times are not included.  Pound sign (#) items indicate manual entries.

Some 2022 vehicles contain minor changes from the previous year.  For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used.  The CCC ONE estimator has a list of applicable vehicles.  Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component.  s=MOTOR Structural component.  T=Miscellaneous Taxed charge category.
X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category.  E=Electrical labor category.  F=Frame labor category.  G=Glass labor category.
M=Mechanical labor category.  S=Structural labor category.  (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent.  Algn.=Align.  ALU=Aluminum.  A/M=Aftermarket part.  Blnd=Blend.  BOR=Boron steel.
CAPA=Certified Automotive Parts Association.  D&R=Disconnect and Reconnect.  HSS=High Strength Steel.
HYD=Hydroformed Steel.  Incl.=Included.  LKQ=Like Kind and Quality.  LT=Left.  MAG=Magnesium.  Non-Adj.=Non Adjacent.  NSF=NSF International Certified Part.  O/H=Overhaul.  Qty=Quantity.  Refn=Refinish.  Repl=Replace.
R&I=Remove and Install.  R&R=Remove and Replace.  Rpr=Repair.  RT=Right.  SAS=Sandwiched Steel.
Sect=Section.  Subl=Sublet.  UHS=Ultra High Strength Steel.  N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Intelligent Services Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair.  EPA=Environmental Protection Agency.  NHTSA= National Highway Transportation and Safety Administration.  PDR=Paintless Dent Repair.  VIN=Vehicle Identification Number.

SF-Sasson, Assaf - 000254

Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

*****INSURANCE COMPANY DISCLOSURES AND CUSTOMER NOTIFICATIONS*****

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

THE FOLLOWING DISCLOSURE APPLIES TO THOSE PARTS IDENTIFIED AS NON-OEM ON THE ESTIMATE:

THIS ESTIMATE HAS BEEN PREPARED BASED ON THE USE OF CRASH PARTS SUPPLIED BY A SOURCE OTHER THAN THE MANUFACTURER OF YOUR MOTOR VEHICLE. THE AFTERMARKET CRASH PARTS USED IN THE PREPARATION OF THIS ESTIMATE ARE WARRANTED BY THE MANUFACTURER OR DISTRIBUTOR OF SUCH PARTS RATHER THAN THE MANUFACTURER OF YOUR VEHICLE.

SF-Sasson, Assaf - 000255

# STATE FARM INSURANCE COMPANIES

ALL

Take this initial estimate to the repair facility of your choice.  If additional damage is found have the repair facility use the "Request Supplement" link at b2b.statefarm.com. **This is not an email address; it is the site to submit a Supplement**. All supplements must be approved by State Farm.

|  |  |
|---|---|
| Claim #: | 59-34T0-34F*1 |
| Workfile ID: | e264c7eb |
| Rate Table: | Default |

## Estimate of Record

Written By: JOHN HENRIQUEZ, 6/6/2022 4:05:00 PM
Claim Rep: A T1 CS Team, Prop, (844) 292-8615 x102 Business

| | | | | | |
|---|---|---|---|---|---|
| Insured: | ASSAF SASSON | Owner Policy #: | | Claim #: | 59-34T0-34F*1 |
| Type of Loss: | Collision | Date of Loss: | 05/27/2022 12:00 AM | Days to Repair: | 0 |
| Point of Impact: | 11 Left Front | Deductible: | 500.00 | | |

| Owner (Insured): | Inspection Location: | Repair Facility: |
|---|---|---|
| ASSAF SASSON | Stuttgart International Auto | Stuttgart International Auto |
| 3385 NE 167TH ST | 1055 NW 51st Ct | 1055 NW 51st Ct |
| N MIAMI BEACH, FL 33160-3849 | Fort Lauderdale, FL 33309 | Fort Lauderdale, FL 33309 |
| (786) 586-2101 Evening | Field | (954) 563-5011 Evening |
| (786) 586-2101 Cellular | (954) 563-5011 Evening | |

## VEHICLE

2022 PORS Taycan RWD 4D SED Electric- Electric white

| | | | | | |
|---|---|---|---|---|---|
| VIN: | WP0AA2Y11NSA13378 | Production Date: | | Interior Color: | |
| License: | kcya92 | Odometer: | 1603 | Exterior Color: | white |
| State: | FL | Condition: | | | |

| TRANSMISSION | CONVENIENCE | AM Radio | SEATS |
|---|---|---|---|
| Automatic Transmission | Air Conditioning | FM Radio | Bucket Seats |
| POWER | Intermittent Wipers | Stereo | Leather Seats |
| Power Steering | Tilt Wheel | Search/Seek | Heated Seats |
| Power Brakes | Cruise Control | Auxiliary Audio Connection | WHEELS |
| Power Windows | Rear Defogger | Satellite Radio | Aluminum/Alloy Wheels |
| Power Locks | Keyless Entry | SAFETY | PAINT |
| Power Mirrors | Message Center | Drivers Side Air Bag | Clear Coat Paint |
| Heated Mirrors | Steering Wheel Touch Controls | Passenger Air Bag | OTHER |
| Power Driver Seat | Telescopic Wheel | Anti-Lock Brakes (4) | Traction Control |
| Power Passenger Seat | Climate Control | 4 Wheel Disc Brakes | Stability Control |
| DECOR | Navigation System | Front Side Impact Air Bags | Rear Spoiler |
| Dual Mirrors | Backup Camera | Head/Curtain Air Bags | Xenon or L.E.D. Headlamps |
| Tinted Glass | Parking Sensors | Hands Free Device | Power Trunk/Liftgate |
| Console/Storage | Home Link | Rear Side Impact Air Bags | |
| Overhead Console | RADIO | Lane Departure Warning | |

| | | |
|---|---|---|
| 6/6/2022 4:05:01 PM | 443585   \|   1.8.08.12130 | Page 1 |

SF-Sasson, Assaf - 000256

Claim #: 59-34T0-34F*1
Workfile ID: e264c7eb

**Estimate of Record**

2022 PORS Taycan RWD 4D SED Electric- Electric white

| Line | | Oper | Description | Part Number | Qty | Extended Price $ | | Labor | | Paint |
|------|------|------|-------------|-------------|-----|------------------|---|-------|---|-------|
| 1 | **FRONT BUMPER & GRILLE** | | | | | | | | | |
| 2 | | | O/H front bumper | | | | | 3.2 | | |
| 3 | <> | Repl | Bumper cover w/auto park | 9J1807013AY | 1 | 1,116.91 | | Incl. | | 3.0 |
| 4 | | | Add for Clear Coat | | | | | | | 1.2 |
| 5 | | | Add for camera | | | | m | 0.2 | | |
| 6 | | Repl | Spoiler | 9J18075410K1 | 1 | 350.72 | | Incl. | | |
| 7 | | Repl | LT Side bracket | 911807227B | 1 | 30.75 | | 0.2 | | |
| 8 | | Repl | Center cover w/o adaptive cruise, w/o night vision | 9J18078230K1 | 1 | 48.75 | | 0.2 | | |
| 9 | | Repl | LT Corner trim | 9J18078330K1 | 1 | 48.75 | | Incl. | | |
| 10 | | Repl | LT Front bracket | 9J1807347A0K1 | 1 | 53.62 | | 0.2 | | |
| 11 | | Repl | LT Outer grille | 9J18076810K1 | 1 | 53.63 | | Incl. | | |
| 12 | | Repl | LT Air inlet duct | 9J1121705A0K1 | 1 | 52.00 | | 0.1 | | |
| 13 | | R&I | RT Air inlet screen | 9J11217530K1 | | | | 0.2 | | |
| 14 | | R&I | LT Air inlet screen | 9J11217540K1 | | | | 0.2 | | |
| 15 | | Repl | Add for distance sens | | 1 | | m | 0.3 | M | |
| 16 | * | R&I | Park sensor outer w/o auto park | 95B919275 | | | m | Incl. | M | |
| 17 | * | R&I | Park sensor outer w/auto park | 95B91927500G2X | | | m | Incl. | M | |
| 18 | * | R&I | Park sensor inner w/o auto park | 5Q0919275CG2X | | | m | Incl. | M | |
| 19 | * | R&I | Park sensor inner w/auto park | 9Y0919275A | | | m | Incl. | M | |
| 20 | **FRONT LAMPS** | | | | | | | | | |
| 21 | | R&I | LT R&I headlamp assy | 9J1941077D | | | | 0.4 | | |
| 22 | | Repl | LT Turn signal lamp | 9J1945061D | 1 | 74.05 | | 0.2 | | |
| 23 | **HOOD** | | | | | | | | | |
| 24 | * | Blnd | Hood | 9J1823031AYGRV | | | | | | 2.0 |
| 25 | | R&I | Emblem | 9P1853601 | | | | 0.2 | | |
| 26 | | Repl | Emblem packing | 9P1853611 | 1 | 10.98 | | | | |
| 27 | **FENDER** | | | | | | | | | |
| 28 | | Repl | LT Fender w/o Turbo S | 9J1821101YGRV | 1 | 684.11 | | 2.6 | | 2.2 |
| 29 | | | Overlap Major Non-Adj. Panel | | | | | | | -0.2 |
| 30 | | | Add for Clear Coat | | | | | | | 0.4 |
| 31 | | Repl | LT Fender liner upper w/o Turbo S | 9J1810907D | 1 | 277.01 | | Incl. | | |
| 32 | | R&I | LT Trim | 9J1854521G2X | | | | Incl. | | |
| 33 | | R&I | LT Charging port cover | 9J1821323 | | | | 0.2 | | |
| 34 | * | Blnd | LT Charging port cover | 9J1821323 | | | | | | 0.6 |
| 35 | **ELECTRICAL** | | | | | | | | | |
| 36 | | R&I | Battery | PAD915105 | | | m | 0.4 | M | |
| 37 | | Repl | High voltage system deactivate/activate | | 1 | | m | 1.8 | M | |
| 38 | **WHEELS** | | | | | | | | | |
| 39 | | R&I | LT/Front R&I wheel | 9J1601025C041 | | | m | 0.1 | | |

SF-Sasson, Assaf - 000257

| | | | Claim #: | | 59-34T0-34F*1 |
|---|---|---|---|---|---|
| | | | Workfile ID: | | e264c7eb |

## Estimate of Record

2022 PORS Taycan RWD 4D SED Electric- Electric white

| 40 | FRONT DOOR | | | | | | | |
|----|---|---|---|---|---|---|---|---|
| 41 | * | Blnd | LT Door shell | 9J1831051YGRV | | | | 1.8 |
| 42 | | R&I | LT Belt molding matte black | 9J183747503C | | | 0.8 | |
| 43 | | R&I | LT R&I mirror | 9J1857411B | | | 0.5 | |
| 44 | | R&I | LT Handle, outside | 9J1837205YG2X | | | 0.5 | |
| 45 | | R&I | LT R&I trim panel | 9J1867021OF5 | | | 0.8 | |
| 46 | MISCELLANEOUS OPERATIONS | | | | | | | |
| 47 | # | Rpr | Pre-repair Scan | | | | 0.5 | M |
| 48 | # | Rpr | Post-repair Scan | | | | 0.5 | M |
| 49 | # | Repl | Additional Cover Car | | 1 | 10.00 | 0.2 | |
| 50 | OTHER CHARGES | | | | | | | |
| 51 | # | | E.P.C. | | 1 | 3.50 | | |
| | | | | SUBTOTALS | 2,814.78 | | 14.5 | 11.0 |

### ESTIMATE TOTALS

| Category | Basis | | Rate | Cost $ |
|----------|-------|---|------|--------|
| Parts | | | | 2,811.28 |
| Body Labor | 11.0 hrs | @ | $ 47.00 /hr | 517.00 |
| Paint Labor | 11.0 hrs | @ | $ 47.00 /hr | 517.00 |
| Mechanical Labor | 3.5 hrs | @ | $ 249.00 /hr | 871.50 |
| Paint Supplies | 11.0 hrs | @ | $ 28.00 /hr | 308.00 |
| Other Charges | | | | 3.50 |
| Subtotal | | | | 5,028.28 |
| Sales Tax | Tier 1 | $ 5,000.00 @ | 7.0000 % | 350.00 |
| Sales Tax | Tier 2 | $ 28.28 @ | 6.0000 % | 1.70 |
| Total Cost of Repairs | | | | 5,379.98 |
| Deductible | | | | 500.00 |
| Total Adjustments | | | | 500.00 |
| Net Cost of Repairs | | | | 4,879.98 |

Register online to check the status of your claim and stay connected with State Farm®. To register, go to   http://www.statefarm.com/ and select Check the Status of a Claim.  If you are already registered, thank you!

SF-Sasson, Assaf - 000258

Claim #:                                    59-34T0-34F*1

Workfile ID:                                e264c7eb

Estimate of Record

2022 PORS Taycan RWD 4D SED Electric- Electric white

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE(FLORIDA STATUTES TITLE XLVI, CHAPTER 817.234). FAILURE TO USE THE INSURANCE PROCEEDS IN ACCORDANCE WITH THE SECURITY AGREEMENT,IF ANY, COULD BE A VIOLATION OF S. 812.014, FLORIDA STATUTES. IF YOU HAVE ANY QUESTIONS, CONTACT YOUR LENDING INSTITUTION. IF A CHARGE FOR SHOP SUPPLIES OR HAZARDOUS OR OTHER WASTE REMOVAL IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: "THIS CHARGE REPRESENTS COSTS AND PROFITS TO THE MOTOR VEHICLE REPAIR FACILITY FOR MISCELLANEOUS SHOP SUPPLIES OR WASTE DISPOSAL." IF A CHARGE FOR NEW TIRES OR A NEW OR REMANUFACTURED LEAD-ACID BATTERY IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: A $1.00 FEE FOR EACH NEW MOTOR VEHICLE TIRE SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW MOTOR VEHICLE TIRES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX CHAPTER 403.718. A $1.50 FEE FOR EACH NEW OR REMANUFACTURED LEAD-ACID BATTERY SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW OR REMANUFACTURED LEAD-ACID BATTERIES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX 403.7185.

SF-Sasson, Assaf - 000259

Estimate of Record

---

2022 PORS Taycan RWD 4D SED Electric- Electric white

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data.  Unless otherwise noted, (a) all items are derived from the Guide ERQ6965, CCC Data Date 06/01/2022, and potentially other third party sources of data; and (b) the parts presented are OEM-parts.  OEM parts are manufactured by or for the vehicle's Original Equipment Manufacturer (OEM) according to OEM's specifications for U.S. distribution.  OEM parts are available at OE/Vehicle dealerships or the specified supplier.  OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships with discounted pricing.   Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may have been modified or may have come from an alternate data source.  Tilde sign (~) items indicate MOTOR Not-Included Labor operations.  The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate. Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM,  A/M or NAGS.  Used parts are described as LKQ, RCY, or USED.  Reconditioned parts are described as Recond.  Recored parts are described as Recore.  NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications.  Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times.  NAGS labor operation times are not included.  Pound sign (#) items indicate manual entries.

Some 2022 vehicles contain minor changes from the previous year.  For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used.  The CCC ONE estimator has a list of applicable vehicles.  Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component.  s=MOTOR Structural component.  T=Miscellaneous Taxed charge category. X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category.  E=Electrical labor category.  F=Frame labor category.  G=Glass labor category. M=Mechanical labor category.  S=Structural labor category.  (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent.  Algn.=Align.  ALU=Aluminum.  A/M=Aftermarket part.  Blnd=Blend.  BOR=Boron steel. CAPA=Certified Automotive Parts Association.  D&R=Disconnect and Reconnect.  HSS=High Strength Steel. HYD=Hydroformed Steel.  Incl.=Included.  LKQ=Like Kind and Quality.  LT=Left.  MAG=Magnesium.   Non-Adj.=Non Adjacent.  NSF=NSF International Certified Part.  O/H=Overhaul.  Qty=Quantity.  Refn=Refinish.  Repl=Replace. R&I=Remove and Install.  R&R=Remove and Replace.  Rpr=Repair.  RT=Right.  SAS=Sandwiched Steel. Sect=Section.  Subl=Sublet.  UHS=Ultra High Strength Steel.  N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Intelligent Services Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair.  EPA=Environmental Protection Agency.  NHTSA= National Highway Transportation and Safety Administration.  PDR=Paintless Dent Repair.  VIN=Vehicle Identification Number.

SF-Sasson, Assaf - 000260

Estimate of Record

2022 PORS Taycan RWD 4D SED Electric- Electric white

\*\*\*\*\*STATE FARM DISCLOSURES AND CUSTOMER NOTIFICATIONS\*\*\*\*\*

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

THE FOLLOWING DISCLOSURE APPLIES TO THOSE PARTS IDENTIFIED AS NON-OEM ON THE ESTIMATE:

THIS ESTIMATE HAS BEEN PREPARED BASED ON THE USE OF CRASH PARTS SUPPLIED BY A SOURCE OTHER THAN THE MANUFACTURER OF YOUR MOTOR VEHICLE. THE AFTERMARKET CRASH PARTS USED IN THE PREPARATION OF THIS ESTIMATE ARE WARRANTED BY THE MANUFACTURER OR DISTRIBUTOR OF SUCH PARTS RATHER THAN THE MANUFACTURER OF YOUR VEHICLE.

SF-Sasson, Assaf - 000261



SF-Sasson, Assaf - 000262



SF-Sasson, Assaf - 000263



SF-Sasson, Assaf - 000264





SF-Sasson, Assaf - 000266



SF-Sasson, Assaf - 000267



SF-Sasson, Assaf - 000268



SF-Sasson, Assaf - 000269



SF-Sasson, Assaf - 000270



SF-Sasson, Assaf - 000271





SF-Sasson, Assaf - 000273



SF-Sasson, Assaf - 000274





SF-Sasson, Assaf - 000276



SF-Sasson, Assaf - 000277



SF-Sasson, Assaf - 000278



SF-Sasson, Assaf - 000279



SF-Sasson, Assaf - 000280



SF-Sasson, Assaf - 000281



**For Customer Support refer to the appropriate platform below:**

**Police Records Retrieval**
800-934-9698
PoliceRecords.support@lexisnexisrisk.com

**Accurint for Insurance**
866-277-8407
Accurint.support@lexisnexisrisk.com

PAGE COUNT: 5

CLIENT:     6625
DIVISION:
ADJUSTER: VACID6
CLAIM:      5934T034F

TRANSACTION #: 1772798762
DATE:                  2022-06-03 04:26:30.0

DATE OF LOSS: 05/27/2022                TIME OF LOSS: 0:0:0
STREET:          164TH ST AND 35TH AVE
CITY:              N MIAMI BEACH
COUNTY:        DADE
STATE:           FL

INVESTIGATING AGENCY: NORTH MIAMI BEACH PD
REPORT NUMBER:        2022-0527-05
REPORT TYPE:             AUTOACCIDENT
PARTY1:                      ADA L SASSON
PARTY2:
PARTY3:

CAR: GHIBLI    MAKE: MASERATI    YEAR: 2018
                      TAG:

ADDITIONAL INFO:

NOTE:

THANK YOU FOR YOUR ORDER!

SF-Sasson, Assaf - 000282

**FLORIDA TRAFFIC CRASH REPORT**

| LONG FORM | | SHORT FORM | X | UPDATE | |
|---|---|---|---|---|---|

**(Electronic Version)**

TRAFFIC CRASH RECORDS
NEIL KIRKMAN BUILDING, TALLAHASSEE, FL 32399-0537

| Date of Crash | Time of Crash | Date of Report | Invest. Agency Report Number | HSMV Crash Report Number |
|---|---|---|---|---|
| 27/May/2022 09:11 AM | 27/May/2022 09:11 AM | 27/May/2022 12:00 AM | 2022052705 | 24734369 |

## CRASH IDENTIFIERS

| County Code | City Code | County of Crash | Place or City of Crash | Within City Limits | Time Reported | Time Dispatched |
|---|---|---|---|---|---|---|
| 01 | 82 | MIAMI-DADE | NORTH MIAMI BEACH | Yes | 27/May/2022 09:11 AM | 27/May/2022 09:13 AM |

| Time on Scene | Time Cleared Scene | Completed | Reason (if Investigation NOT Completed) | Notified By |
|---|---|---|---|---|
| 27/May/2022 09:20 AM | 27/May/2022 09:37 AM | Yes | | Motorist |

## ROADWAY INFORMATION

| Crash Occured On Street, Road, Highway | At Street Address# | At Lattitude and Longitude |
|---|---|---|
| NE 35 AV | | |

| At Feet | Or Miles | Direction | From Intersection With Street, Road, Highway | Or From Milepost # |
|---|---|---|---|---|
| 40 | | North | NE 164 ST | |

| Road System Identifier | Type Of Shoulder | Type Of Intersection |
|---|---|---|
| 5 Local | 3 Curb | 1 Not at Intersection |

## CRASH INFORMATION (Check if Pictures Taken)

| light Condition | Weather Condition | Roadway Surface Condition | School Bus Related | Manner Of Collision |
|---|---|---|---|---|
| 1 Daylight | 1 Clear | 1 Dry | 1 No | 3 Angle |

| First Harmful Event Type | First Harmful Event | First Harmful Event Location | Within Interchange | First Harmful Event Relation to Junction |
|---|---|---|---|---|
| | 14 | 1 On Roadway | No | 1 Non.Junction |

| Contributing Circumstances: Road | Contributing Circumstances: Road | Contributing Circumstances: Road |
|---|---|---|
| 4 Work Zone (construction/ maintenance/utility) | | |

| Contributing Circumstances: Environment | Contributing Circumstances: Environment | Contributing Circumstances: Environment |
|---|---|---|
| 1 None | | |

| Work Zone Related | Crash In Work Zone | Type Of Work Zone | Workers In Work Zone | Law Enforcement In Work Zone |
|---|---|---|---|---|
| 1 No | | | | |

## VEHICLE (Check if Commercial)

| Vehicle | Motor Vehicle Type | Hit and Run | Veh License Number | State | Reg. Expires | Permanent Reg. | VIN |
|---|---|---|---|---|---|---|---|
| 2 | 1 Vehicle in Transport | 1 No | KSP3831 | TX | 01/Oct/2022 | No | 1FT7W2BT5JEB81584 |

| Year | Make | Model | Style | Color | Extent of Damage | Est. Damage | Towed Due To | Vehicle Removed By | Rotation |
|---|---|---|---|---|---|---|---|---|---|
| 2018 | FORD | | TK | BLK | Minor | 1000 | No | | |

| Insurance Company | Insurance Policy Number |
|---|---|
| STATE FARM | 3449421 |

| Name of Vehicle Owner (Check Box If Business) | Current Address (Number and Street) | City and State | Zip Code |
|---|---|---|---|
| MIGUEL SALAS | 3870 NE 168TH ST | NORTH MIAMI BEACH FL | 33160 |

| Trailer One: | License Number | State | Reg. Expires | Permanent Reg. | VIN | Year | Make | Length | Axles |
|---|---|---|---|---|---|---|---|---|---|

| Trailer Two: | License Number | State | Reg. Expires | Permanent Reg. | VIN | Year | Make | Length | Axles |
|---|---|---|---|---|---|---|---|---|---|

| Vehicle Traveling: | Direction | On Street, Road, Highway | At Est. Speed | Posted Speed | Total Lanes |
|---|---|---|---|---|---|
| | South | NE 35 AV | 5 | 30 | 2 |

| CMV Configuration | Cargo Body Type | Area of Initial Impact | Most Damaged Area |
|---|---|---|---|
| Comm GVWR/GCWR | Trailer Type (trailer one) Trailer Type (trailer two) | 18. Undercarriage 19. Overturn 20. Windshield 21. Trailer | 18. Undercarriage 19. Overturn 20. Windshield 21. Trailer |
| Haz. Mat. Release | Haz. Mat. Placard Number Class | | |

| Motor Carrier Name | US DOT Number |
|---|---|

| Motor Carrier Address | City and State | Zip Code | Phone Number |
|---|---|---|---|

| Comm/Non-Commercial | Vehicle Defects (one) | Vehicle Defects (two) | Emergency Vehicle Use | Special Function of MV |
|---|---|---|---|---|
| 3 Pickup | 1 None | | 1 No | 1 No Special Function |

| Vehicle Maneuver Action | Trafficway | Roadway Grade | Roadway Alignment | Most Harmful Event | Most Harmful Event Detail |
|---|---|---|---|---|---|
| 1 Straight Ahead | 4 Two-Way, Divided, Positive Median Barrier | 1 Level | 1 Straight | 2 Collision with Non-Fixed Object | 14 Motor Vehicle in Transport |

| Traffic Control Device For This Vehicle | First (1) Sequence of Events | Second (2) Sequence of Events | Third (3) Sequence of Events | Fourth (4) Sequence of Events |
|---|---|---|---|---|
| 77 Other, Explain in Narrative | 2 Collision with Non-Fixed Object 14 Motor Vehicle in Transport | | | |

## VEHICLE (Check if Commercial)

| Vehicle | Motor Vehicle Type | Hit and Run | Veh License Number | State | Reg. Expires | Permanent Reg. | VIN |
|---|---|---|---|---|---|---|---|
| 1 | 1 Vehicle in Transport | 1 No | KCYA92 | FL | 26/May/2023 | No | WP0AA2Y11NSA13378 |

| Year | Make | Model | Style | Color | Extent of Damage | Est. Damage | Towed Due To | Vehicle Removed By | Rotation |
|---|---|---|---|---|---|---|---|---|---|
| 2022 | PORS | | 4D | WHI | Functional | 3000 | No | | |

| Insurance Company | Insurance Policy Number |
|---|---|
| STATE FARM | 534643 |

SF-Sasson, Assaf - 000283

| Date of Crash 27/May/2020 | Date of Report 27/May/2020 | Invest. Agency Report Number 012052763 | HSMV Crash Report Number 84909063 |
|---|---|---|---|

| Name of Vehicle Owner (Check Box If Business) ADA SASSON | | Current Address (Number and Street) 3385 NE 167TH ST | City and State NORTH MIAMI BEACH FL | Zip Code 33160 |
|---|---|---|---|---|

| Trailer One: | License Number | State | Reg. Expires | Permanent Reg. | VIN | | Year | Make | Length | Axles |
|---|---|---|---|---|---|---|---|---|---|---|
| Trailer Two: | License Number | State | Reg. Expires | Permanent Reg. | VIN | | Year | Make | Length | Axles |

| Vehicle Traveling: | Direction South | On Street, Road, Highway NE 35 AV | | At Est. Speed 2 | Posted Speed 30 | Total Lanes 2 |
|---|---|---|---|---|---|---|

| CMV Configuration | | Cargo Body Type | | Area of Initial Impact | Most Damaged Area |
|---|---|---|---|---|---|

Comm GVWR/GCWR | Trailer Type (trailer one) | Trailer Type (trailer two)

18. Undercarriage
19. Overturn
20. Windshield
21. Trailer

Haz. Mat. Release | Haz. Mat. Placard | Number | Class

Motor Carrier Name | US DOT Number

Motor Carrier Address | City and State | Zip Code | Phone Number

| Comm/Non-Commercial | Vehicle Body Type 1 Passenger Car | Vehicle Defects (one) 1 None | Vehicle Defects (two) | Emergency Vehicle Use 1 No | Special Function of MV 1 No Special Function |
|---|---|---|---|---|---|

| Vehicle Maneuver Action 6 Changing Lanes | Trafficway 4 Two-Way, Divided, Positive Median Barrier | Roadway Grade 1 Level | Roadway Alignment 1 Straight | Most Harmful Event 2 Collision with Non-Fixed Object | Most Harmful Event Detail 14 Motor Vehicle in Transport |
|---|---|---|---|---|---|

| Traffic Control Device For This Vehicle 77 Other, Explain in Narrative | First (1) Sequence of Events 2 Collision with Non-Fixed Object 14 Motor Vehicle in Transport | Second (2) Sequence of Events | Third (3) Sequence of Events | Fourth (4) Sequence of Events |
|---|---|---|---|---|

## PERSON RECORD

| Person# 1 | Description 1 Driver | Vehicle # 1 | Name ADA SASSON | Date of Birth 26/May/1968 | Sex 2 Female | Phone Number (305)947-8333 | Re-Exam No |
|---|---|---|---|---|---|---|---|

| Address 3385 NE 167TH ST | City NORTH MIAMI BEACH | State FL | Zip Code 33160 |
|---|---|---|---|

| Driver License Number S250000686860 | State FL | Expires 26/May/2025 | DL Type 5 E/Operator | Req. End. 3 No Req Endorsement | Injury Severity 1 None | Ejection 1 Not Ejected |
|---|---|---|---|---|---|---|

| Restraint System 3 Shoulder and Lap Belt Used | Air Bag Deployed 1 Not Applicable | Helmet Use 3 No Helmet | Eye Protection 3 Not Applicable | Seating Location Seat 1 Left | Seating Location Row 1 Front | Seating Location Other 1 Not Applicable |
|---|---|---|---|---|---|---|

| Drivers Actions at Time of Crash (first) 3 Failed to Yield Right.of.Way | Drivers Actions at Time of Crash (second) | Driver Distracted By 1 Not Distracted | Vision Obstruction 1 Vision Not Obscured |
|---|---|---|---|

| Drivers Actions at Time of Crash (third) | Drivers Actions at Time of Crash (fourth) | Drivers Condition at Time of Crash 1 Apparently Normal |
|---|---|---|

| Suspected Alcohol Use 1 No | Alcohol Tested | Alcohol Test Type | Alcohol Test Result | BAC | Suspected Drug Use 1 No | Drug Tested | Drug Test Type | Drug Test Result |
|---|---|---|---|---|---|---|---|---|

| Source of Transport to Medical Facility 1 Not Transported | EMS Agency Name or ID | EMS Run Number | Medical Facility Transported To |
|---|---|---|---|

## PERSON RECORD

| Person# 2 | Description 1 Driver | Vehicle # 2 | Name MIGUEL SALAS | Date of Birth 29/Sep/1979 | Sex 1 Male | Phone Number | Re-Exam No |
|---|---|---|---|---|---|---|---|

| Address 3870 NE 168TH ST | City NORTH MIAMI BEACH | State FL | Zip Code 33160 |
|---|---|---|---|

| Driver License Number S420540793490 | State FL | Expires 29/Sep/2025 | DL Type 5 E/Operator | Req. End. 3 No Req Endorsement | Injury Severity 1 None | Ejection 1 Not Ejected |
|---|---|---|---|---|---|---|

| Restraint System 3 Shoulder and Lap Belt Used | Air Bag Deployed 2 Not Deployed | Helmet Use 3 No Helmet | Eye Protection 3 Not Applicable | Seating Location Seat 1 Left | Seating Location Row 1 Front | Seating Location Other 1 Not Applicable |
|---|---|---|---|---|---|---|

| Drivers Actions at Time of Crash (first) 1 No Contributing Action | Drivers Actions at Time of Crash (second) | Driver Distracted By 1 Not Distracted | Vision Obstruction 1 Vision Not Obscured |
|---|---|---|---|

| Drivers Actions at Time of Crash (third) | Drivers Actions at Time of Crash (fourth) | Drivers Condition at Time of Crash 1 Apparently Normal |
|---|---|---|

| Suspected Alcohol Use 1 No | Alcohol Tested | Alcohol Test Type | Alcohol Test Result | BAC | Suspected Drug Use 1 No | Drug Tested | Drug Test Type | Drug Test Result |
|---|---|---|---|---|---|---|---|---|

| Source of Transport to Medical Facility 1 Not Transported | EMS Agency Name or ID | EMS Run Number | Medical Facility Transported To |
|---|---|---|---|

## NARRATIVE

SOUTH BOUND NE 35 AV AT NE 164 ST HAS CONSTRUCTION GOING ON. THERE ARE ORANGE CONES JUST NORTH OF NE 164 ST MAKING THE RIGHT LANE MERGE INTO THE LEFT LANE.

VEH-2 WAS TRAVELING SOUTH ON NE 35 AVE IN THE LEFT LANE. VEH-1 WAS TRAVELING SOUTH ON NE 35 AV IN THE RIGHT LANE. VEH-1 ATTEMPTED TO MERGE INTO THE LEFT LANE AND HIT VEH-2.

NO INJURIES. VEH-1 AT FAULT. NO CITATION ISSUED.

## REPORTING OFFICER

SF-Sasson, Assaf - 000284

| Date of Crash | Date of Report | Invest. Agency Report Number | HSMV Crash Report Number |
|---|---|---|---|
| 27/May/2020 01:26AM | 27/May/2020 03:11AM | 2020-527051 | 24793609 |

| ID/Badge # | Rank and Name | Department | Type of Department |
|---|---|---|---|
| 227 | POLICE OFFICER C. BAGWELL | NORTH MIAMI BEACH POLICE DEPARTMENT | PD |

SF-Sasson, Assaf - 000285

| Date of Crash | Date of Report | Invest. Agency Report Number | HSMV Crash Report Number |
| 27/May/2021 01:24 | 27/May/2021 03:11 | 0122052761 | |

Case 0:23-cv-61594-AHS   Document 1-3   Entered on FLSD Docket 08/18/2023   Page 445 of 1096

SF-Sasson, Assaf - 000286

END OF PRINT FOR CLAIM 59-L3D-39Q



# Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number J53 4643-B02-59B including any endorsements, if applicable, for the policy term(s) 04/19/2022 to 06/06/2022 and insuring SASSON, ASSAF & ADA L based on available records.

It is State Farm's business practice to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs. Therefore, the included Declarations Page which was in effect at the time of loss will indicate the policy period of the last policy issuance transaction.

The policy was in effect on the loss date of 05/27/2022.


Jessica Bass
Underwriter
Date: 09/13/2022

SF-Sasson, Assaf - 000288



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

State Farm®
**Car Policy**
Booklet

Florida
Policy Form 9810A

SF-Sasson, Assaf - 000289

# CONTENTS

**THIS POLICY** ...................................... 3

**DEFINITIONS** ................................... 4

**LIABILITY COVERAGE (Bodily Injury and Property Damage)** ............................. 6

  Additional Definition .......................... 6
  Insuring Agreement ............................ 7
  Supplementary Payments ..................... 7
  Limits ............................................ 7
  Nonduplication.................................. 8
  Exclusions ...................................... 8
  If Other Liability Coverage Applies.................. 9
  Required Out-of-State Liability Coverage ........ 10
  Financial Responsibility Certification ........... 10

**PROPERTY DAMAGE LIABILITY COVERAGE** ..................................... 10

  Additional Definition .......................... 10
  Insuring Agreement ........................... 11
  Supplementary Payments ..................... 11
  Limit ............................................ 11
  Exclusions ...................................... 12
  If Other Property Damage Liability Coverage Applies ............................. 13
  Required Out-of-State Liability Coverage ....... 14
  Financial Responsibility Certification ........... 14

**NO-FAULT COVERAGE** ................... 14

  Additional Definition .......................... 14
  Insuring Agreement ........................... 14
  Limits............................................ 15
  Application of Any Deductible and Workers' Compensation Offset ........................... 17
  Partial Payment or Rejection of a Claim.......... 17
  Nonduplication ................................. 17
  Exclusions...................................... 17
  If Other No-Fault Coverage Applies.............. 18
  Our Payment Options ......................... 18

**MEDICAL PAYMENTS COVERAGE** ........... 18

  Additional Definition .......................... 18
  Insuring Agreement ........................... 19
  Determining Medical Expenses ................ 20
  Limits........................................... 20
  Nonduplication.................................. 21
  Exclusions....................................... 21
  If Other Medical Payments Coverage or Similar Vehicle Insurance Applies ................ 23
  Our Payment Options......................... 24

**UNINSURED MOTOR VEHICLE COVERAGE (Stacking)** ......................................24

  Additional Definitions........................24
  Insuring Agreement ...........................25
  Consent to Settlement .........................25
  Deciding Fault and Amount...................25
  Limits ...........................................25
  Nonduplication ...............................26
  Exclusions......................................26
  If Other Uninsured Motor Vehicle Coverage Applies .............................26
  Our Payment Options .........................26

**UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking)**......................................27

  Additional Definitions........................27
  Insuring Agreement ...........................27
  Consent to Settlement .........................27
  Deciding Fault and Amount ..................28
  Limits ...........................................28
  Nonduplication ...............................28
  Exclusions......................................28
  If Other Uninsured Motor Vehicle Coverage Applies .............................29
  Our Payment Options .........................30

**PHYSICAL DAMAGE COVERAGES**...........30

  Additional Definitions........................30
  Insuring Agreements .........................31
  Supplementary Payments – Comprehensive Coverage and Collision Coverage ..................32
  Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage ....................32
  Limits – Car Rental and Travel Expenses Coverage .......................................33
  Nonduplication ...............................34
  Exclusions ......................................34
  If Other Physical Damage Coverage or Similar Coverage Applies................................35
  Financed Vehicle .............................36
  Our Payment Options .........................36

SF-Sasson, Assaf - 000290

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE** ...................... 36

Additional Definition ........................................ 36
Insuring Agreement ........................................ 36
Benefit ............................................................. 36
Exclusions......................................................... 37
Our Payment Options ...................................... 38

**INSURED'S DUTIES** ........................................ 38

Insured's Duty at the Time of an Accident or Loss ......................................................... 38
Notice to Us of an Accident or Loss ............... 38
Notice to Us of a Claim or Lawsuit ................ 38
Insured's Duty to Cooperate With Us ............. 38
Questioning Under Oath .................................. 38
Other Duties Under the Physical Damage Coverages ......................................... 39
Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and  Death, Dismemberment and Loss of Sight Coverage ............................ 39

**GENERAL TERMS** ............................................40

When Coverage Applies ...................................40
Where Coverage Applies...................................40
Limited Coverage in Mexico............................40
Persons Acting On Our Behalf ........................41
Newly Owned or Newly Leased Car...............42
Changes to This Policy.....................................42
Premium ...........................................................42
Renewal.............................................................43
Nonrenewal.......................................................43
Cancellation......................................................43
Assignment........................................................44
Bankruptcy or Insolvency of the Insured ........44
Concealment or Fraud .....................................44
Our Right to Recover Our Payments...............45
Mediation .........................................................45
Arbitration ........................................................46
Legal Action Against Us...................................46
Choice of Law ..................................................48
Severability .......................................................48

## THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSEMENTS" on the Declarations Page, in reliance on the following statements:

      (1) *You* are the sole owner of *your car*.

      (2) Neither *you* nor any member of *your* household has, within the past three years, had either:

         (a) a license to drive; or

         (b) a vehicle registration

         suspended, revoked, or refused.

      (3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:

   a. the statements in 3.b. above are made by such named insured or applicant and are true; and

   b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow:

   a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the ***State Farm Companies***, subject to their applicable eligibility rules; or

   b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary.

3
9810A

SF-Sasson, Assaf - 000291

Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

# DEFINITIONS

**We** define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

**Bodily Injury** means bodily injury to a **person** and sickness, disease, or death that results from it.

**Car** means a land motor vehicle with four or more wheels, designed for use primarily on public roads. **Car** does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

**Car Business** means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

**Emergency Medical Condition** means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

1. Serious jeopardy to patient health;

2. Serious impairment to bodily functions; or

3. Serious dysfunction of any bodily organ or part.

**Fungi** means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

   a. Mycotoxins;

   b. Spores;

   c. Scents; or

   d. Byproducts.

**Medical Expenses** means **reasonable charges** incurred for **medically necessary** medical, surgical, X-ray, dental, and rehabilitative services, including **medically necessary** prosthetic devices and **medically necessary** ambulance, hospital, and nursing services.

**Medical Expenses** do not include any:

1. massage as defined in s. 480.033, Florida Statutes;

2. acupuncture as defined in s. 457.102, Florida Statutes;

3. services, care, treatment, or supplies provided by any massage therapist; or

4. services, care, treatment, or supplies provided by any acupuncturist.

**Medically Necessary** means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

1. in accordance with generally accepted standards of medical practice;

2. clinically appropriate in terms of type, frequency, extent, site, and duration; and

3. not primarily for the convenience of the patient, physician, or other healthcare provider.

**Motor Vehicle** means a vehicle with four or more wheels that:

1. is self-propelled and is of a type:

   a. designed for; and

   b. required to be licensed for use on Florida highways; or

2. is a trailer or semitrailer designed for use with a vehicle described in 1. above.

**Motor Vehicle** does not include:

1. a mobile home; or

2. any motor vehicle which is:

   a. used in mass transit, other than public school transportation;

   b. designed to transport more than five passengers, exclusive of the operator; and

4
9810A

SF-Sasson, Assaf - 000292

c. ***owned by*** a municipality, a transit authority, or a political subdivision of the state.

***Newly Acquired Car*** means a ***car*** newly ***owned by you***. A ***car*** ceases to be a ***newly acquired car*** on the earlier of:

1. the effective date and time of a policy, including any binder, issued by ***us*** or any other company that describes the ***car*** as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the ***car*** is delivered to ***you***.

If a ***newly acquired car*** is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that ***newly acquired car***, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the ***newly acquired car*** is delivered to ***you***.

***No-Fault Act*** means the Florida Motor Vehicle No-Fault Law and any amendments.

***Non-Owned Car*** means a ***car*** that is in the lawful possession of ***you*** or any ***resident relative*** and that neither:

1. is ***owned by***:

   a. ***you***;

   b. any ***resident relative***;

   c. any other ***person*** who resides primarily in ***your*** household; or

   d. an employer of any ***person*** described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:

   a. ***you***; or

   b. any ***resident relative***

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or ***loss***.

***Occupying*** means in, on, entering, or exiting.

***Our*** means the Company issuing this policy as shown on the Declarations Page.

***Owned By*** means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 6 months or more, to.

***Pedestrian*** means a ***person*** who is not ***occupying***:

1. a motor vehicle; or

2. a vehicle designed to be pulled by a motor vehicle.

***Person*** means a human being.

***Private Passenger Car*** means:

1. a ***car*** of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry ***persons*** and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

   a. while not used for:

     (1) wholesale; or

     (2) retail

     pickup or delivery; and

   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

***Reasonable Charge***, which includes reasonable expense, means an amount determined by ***us*** to be reasonable in accordance with the ***No-Fault Act***, considering one or more of the following:

1. usual and customary charges;

2. payments accepted by the provider;

3. reimbursement levels in the community;

4. various federal and state medical fee schedules applicable to ***motor vehicle*** and other insurance coverages;

5. the schedule of maximum charges in the ***No-Fault Act***,

6. other information relevant to the reasonableness of the charge for the service, treatment, or supply; or

7. Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, if the coding policy or payment methodology does not constitute a utilization limit.

***Relative*** means a relative of any degree by blood or marriage who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

***Resident Relative*** means a ***person***, other than ***you***, who resides primarily with the first ***person*** shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

<div align="center">5</div>
<div align="center">9810A</div>

SF-Sasson, Assaf - 000293

2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

*State Farm Companies* means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

*Temporary Substitute Car* means a *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:
   a. breakdown;
   b. repair;
   c. servicing;
   d. damage; or
   e. theft; and

2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

*Trailer* means:

1. a trailer:
   a. designed to be pulled by a *private passenger car*;

b. not designed to carry *persons*; and

c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a *car*.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person*, then "*you*" or "*your*" includes the spouse of the first *person* shown as a named insured if the spouse resides primarily with that named insured.

*Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask *us* to replace it with a *car* newly *owned by you*, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly *owned by you* is delivered to *you*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.

## LIABILITY COVERAGE (Bodily Injury and Property Damage)

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:
   a. the ownership, maintenance, or use of:
      (1) *your car*;
      (2) a *newly acquired car*; or
      (3) a *trailer*; and
   b. the maintenance or use of:
      (1) a *non-owned car*; or
      (2) a *temporary substitute car*;

2. the first *person* shown as a named insured on the Declarations Page and that named insured's

spouse who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household, but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

3. any other *person* for his or her use of:
   a. *your car*;
   b. a *newly acquired car*;
   c. a *temporary substitute car*; or
   d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used with *your* express or implied permission; and

6

9810A

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others; and

   b. damage to property

   caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from *bodily injury* to any one *person* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *persons* as a direct result of that *bodily injury*.

7

9810A

SF-Sasson, Assaf - 000295

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *persons* who sustained damages or emotional distress in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. that have already been paid under Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR *BODILY INJURY* TO:

   a. *YOU*;

   b. *RESIDENT RELATIVES*; AND

   c. ANY OTHER *PERSON* WHO BOTH RESIDES PRIMARILY WITH AN *INSURED* AND WHO:

      (1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR

      (2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees, or if this coverage, of this policy, is used to certify financial responsibility;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

7. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*;

   b. any *resident relative*; or

   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

9. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

11. FOR DAMAGE TO PROPERTY WHILE IT IS:

    a. *OWNED BY*;

    b. RENTED TO;

    c. USED BY;

    d. IN THE CARE OF; OR

    e. TRANSPORTED BY

SF-Sasson, Assaf - 000296

*YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

12. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

13. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR

15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If liability coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

a. the liability coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides liability coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides liability coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides liability coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

SF-Sasson, Assaf - 000297

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

b.  If:

    (1)  more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides liability coverage which applies to the accident as excess coverage; and

    (2)  liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1.  an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2.  this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PROPERTY DAMAGE LIABILITY COVERAGE

This policy provides Property Damage Liability Coverage if "B" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1.  *you* and *resident relatives* for:

    a.  the ownership, maintenance, or use of:

        (1)  *your car*;

        (2)  a *newly acquired car*; or

        (3)  a *trailer*; and

    b.  the maintenance or use of:

        (1)  a *non-owned car*; or

        (2)  a *temporary substitute car*;

2.  the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household,

but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

3.  any other *person* for his or her use of:

    a.  *your car*;

    b.  a *newly acquired car*;

    c.  a *temporary substitute car*; or

    d.  a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used with *your* express or implied permission; and

4.  any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

10
9810A

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of damage to property caused by an accident that involves a vehicle for which that *insured* is provided Property Damage Liability Coverage by this policy;

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Property Damage Liability Coverage.

3. *We* will only defend an *insured* in a claim or lawsuit for damages payable under this policy's Property Damage Liability Coverage, that are caused by an accident for which that *insured* is provided Property Damage Liability Coverage by this policy. If a claim or lawsuit seeks damages due to both property damage and *bodily injury*, then *we* will only defend the *insured* for property damage, and the *insured* will be required to hire and pay attorneys to defend the *insured* for damages due to *bodily injury*.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Property Damage Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

2. Court costs awarded by the court against an *insured* and resulting from that part of a lawsuit:

   a. that seeks damages payable under this policy's Property Damage Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Property Damage Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Property Damage Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*.

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Property Damage Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Property Damage Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limit**

The Property Damage Liability Coverage limit for damage to property is shown on the Declarations Page under "Property Damage Liability Coverage – Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

SF-Sasson, Assaf - 000299

The Property Damage Liability Coverage limit is the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES DAMAGE TO PROPERTY;
2. FOR *BODILY INJURY*;
3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;
4. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;
5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;
6. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:
   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;
7. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;
8. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;
9. FOR DAMAGE TO PROPERTY WHILE IT IS:
   a. *OWNED BY*;
   b. RENTED TO;
   c. USED BY;
   d. IN THE CARE OF; OR
   e. TRANSPORTED BY

   *YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:
   a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;
   b. residence while rented to or leased to an *insured*;
   c. private garage while rented to or leased to an *insured*.
10. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;
11. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;
12. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:
    a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (12.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR
13. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

SF-Sasson, Assaf - 000300

**If Other Property Damage Liability Coverage Applies**

1. If property damage liability coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

   a. the property damage liability coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Property Damage Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides property damage liability coverage which applies to the accident as primary coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other property damage liability coverage that apply as primary coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides property damage liability coverage which applies to the accident as primary coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Property Damage Liability Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides property damage liability coverage which applies to the accident as excess coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other property damage liability coverage that apply as excess coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides property damage liability coverage which applies to the accident as excess coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as excess coverage.

SF-Sasson, Assaf - 000301

**Required Out-of-State Liability Coverage**

If:

1. an **insured** is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## NO-FAULT COVERAGE

This policy provides No-Fault Coverage if "P" with a number beside it is shown under "SYMBOLS" on the Declarations Page. "P" with a number beside it is **your** coverage symbol. Check **your** coverage symbol shown on the Declarations Page with the SCHEDULE in the Limits section. The Income Loss option **you** have selected is shown by **your** coverage symbol.

**Additional Definition**

**Insured** means:

1. named insureds and **relatives**:

    a. while **occupying** a **motor vehicle**;

    b. struck as a **pedestrian** by a **motor vehicle**; or

2. any other **person** while **occupying** or **struck** as a **pedestrian** by:

    a. **your car**;

    b. a **newly acquired car**;

    c. a **temporary substitute car**; or

    d. a **trailer** while attached to a **car** described in a., b., or c. above.

**Insuring Agreement**

**We** will pay in accordance with the **No-Fault Act** properly billed and documented **reasonable charges** for **bodily injury** to an **insured** caused by an accident resulting from the ownership, maintenance, or use of a **motor vehicle** as follows:

1. **Medical Expenses**

    **We** will pay 80% of properly billed and documented **medical expenses**, but only if that **insured** receives initial services and care from a provider described in A. below within 14 days

after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

**We** will not pay for any **medical expenses** if that **insured** does not receive initial services and care from a provider described in A. below within 14 days after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

**We** will only pay **medical expenses** for:

A. initial services and care:

    (1) lawfully provided, supervised, ordered or prescribed by:

        (a) a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

        (b) a dentist licensed under chapter 466 of the Florida Statutes; or

        (c) a chiropractic physician licensed under chapter 460 of the Florida Statutes;

    (2) provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

    (3) provided by a **person** or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

B. upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

SF-Sasson, Assaf - 000302

(1) a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

(2) a dentist licensed under chapter 466 of the Florida Statutes;

(3) a chiropractic physician licensed under chapter 460 of the Florida Statues; or

(4) to the extent permitted by applicable law and under the supervision of a **person** described in (1), (2), or (3) immediately above;

    (a) a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

    (b) an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

C. follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following **persons** or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

    (a) has a medical director licensed under chapter 458, chapter 459,

      or chapter 460 of the Florida Statutes;

    (b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

    (c) provides at least four of the following medical specialties:

      i. general medicine;

      ii. radiography;

      iii. orthopedic medicine;

      iv. physical medicine;

      v. physical therapy;

      vi. physical rehabilitation;

      vii. prescribing or dispensing outpatient prescription medication; or

      viii. laboratory services.

2. **Income Loss**

   **We** will pay, when properly documented, 60% of any loss of gross income and loss of earnings capacity per individual injured **insured** from that **insured's** inability to work that is proximately caused by the injury sustained by that individual **insured**.

3. **Replacement Services Loss**

   **We** will pay, when properly documented, **reasonable charges** incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the individual injured **insured** would have performed without income for the benefit of his or her household.

4. **Death Benefits**

   **We** will pay $5,000 per deceased individual **insured**.

**Limits**

1. **We** will not pay any charge that the **No-Fault Act** does not require **us** to pay, or the amount of any charge that exceeds the amount the **No-Fault Act** allows to be charged.

2. The most **we** will pay for each injured **insured** as a result of any one accident is $10,000 for all combined **Medical Expenses**, **Income Loss**, and **Replacement Services Loss**, described in the **Insuring Agreement** of this policy's No-Fault Coverage.

15
9810A

The limit for **Medical Expenses** is $10,000 if a physician (excluding a chiropractic physician), a dentist, a physician assistant, or an advanced registered nurse practitioner described in 1.A. or 1.B under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* had an *emergency medical condition*.

The limit for **Medical Expenses** is $2,500 if any healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* did not have an *emergency medical condition*.

*We* will limit payment of **Medical Expenses** described in the **Insuring Agreement** of this policy's No-Fault Coverage to 80% of a properly billed and documented *reasonable charge*, but in no event will *we* pay more than 80% of the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

a. For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

(III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-subparagraph, then *we* will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

3. *We* will pay a **Death Benefit** of $5,000 per deceased individual *insured*. **Death Benefits** are in addition to the **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** limit.

4. SCHEDULE

| Coverage Symbol | Income Loss Benefits Eliminated For Named Insureds | Income Loss Benefits Eliminated For Named Insureds' Dependent *Relatives* |
|---|---|---|
| P10 | No | No |
| P14 | Yes | Yes |
| P19 | Yes | No |

SF-Sasson, Assaf - 000304

**Application of Any Deductible and Workers' Compensation Offset**

1. The deductible amount, if any, is shown on the Declarations Page beside *your* coverage symbol. The deductible amount does not apply to **Death Benefits**.

   The deductible amount applies to:

   a. each named insured if "N" follows the deductible amount; or

   b. each named insured and each dependent *relative* if "N" does not follow the deductible amount.

   Any deductible will be applied to 100% of properly billed and documented **Medical Expenses**, properly documented **Income Loss**, and properly documented **Replacement Services Loss** that are eligible to be paid under this coverage. The deductible will be applied to such expenses and losses upon our receipt of reasonable documented proof of the expenses and losses and the amount of expenses and losses incurred.

2. After any applicable deductible has been applied, *we* will pay the balance of properly billed and documented **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** in accordance with the percentages and limits as described in the section titled **Limits**.

3. *We* will reduce the amount payable as determined in item 2. above by any workers' compensation benefits received for the same loss or expense.

**Partial Payment or Rejection of a Claim**

If *we* pay only a portion of a claim or reject a claim due to an alleged error in the claim, then *we* shall, at the time of the partial payment or rejection, provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the *person* making the claim, at the *person's* option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

In a dispute between the *insured* and *us*, or between an assignee of the *insured's* rights and *us*, upon request, *we* will notify the *insured* or the assignee that the policy limits under this section have been reached within 15 days after the limits have been reached.

**Nonduplication**

*We* will not pay under No-Fault Coverage any benefits:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under other no-fault coverage, any disability benefits law, or similar law; or

3. that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ***BODILY INJURY*** TO:

   a. ANY ***PEDESTRIAN*** NOT A RESIDENT OF FLORIDA; OR

   b. ANY ***PERSON*** ENTITLED TO NO-FAULT BENEFITS FROM:

      (1) THE OWNER OF A ***MOTOR VEHICLE*** OTHER THAN A NAMED INSURED; OR

      (2) THAT OWNER'S INSURER.

   This exclusion (1.) does not apply to any named insured or any *relative*;

2. ANY NAMED INSURED OR ***RELATIVE*** WHO SUSTAINED ***BODILY INJURY*** WHILE ***OCCUPYING*** A ***MOTOR VEHICLE OWNED BY*** THE NAMED INSURED AND NOT INSURED UNDER THIS POLICY;

3. ANY ***INSURED PERSON***:

   a. WHOSE CONDUCT CONTRIBUTED TO HIS OR HER ***BODILY INJURY*** UNDER ANY OF THE FOLLOWING CIRCUMSTANCES:

      (1) CAUSING ***BODILY INJURY*** TO HIMSELF OR HERSELF INTENTIONALLY; OR

      (2) WHILE COMMITTING A FELONY;

   b. WHOSE ***BODILY INJURY*** OCCURRED WHILE:

17
9810A

SF-Sasson, Assaf - 000305

(1) DRIVING *YOUR CAR* OR A *NEW-LY ACQUIRED CAR* WITHOUT *YOUR* PERMISSION; OR

(2) *OCCUPYING* A *MOTOR VEHICLE* LOCATED FOR USE AS A DWELLING OR PREMISES;

c. WHO OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT.* This exclusion (3.c.) does not apply to:

(1) any named insured;

(2) the spouse of any named insured; and

(3) any *relative* while *occupying your car* if the accident occurs outside Florida; OR

d. WHO REFUSES TO:

(1) SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAMINATION UNDER OATH; OR

(2) PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

4. INCOME LOSS WHEN THE SCHEDULE SHOWS INCOME LOSS BENEFITS ARE ELIMINATED UNDER *YOUR* COVERAGE SYMBOL;

5. ANY MASSAGE AS DEFINED IN S. 480.033, FLORIDA STATUTES, OR ACUPUNCTURE AS DEFINED IN S. 457.102, FLORIDA STATUTES, REGARDLESS OF THE *PERSON* OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

6. ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other No-Fault Coverage Applies**

1. If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

a. the No-Fault Coverage limits of such policies shall not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by one or more sources other than the *State Farm Companies* apply to the same *bodily injury*, then:

a. the No-Fault Coverage limits of such policies shall not be added together to determine the most that may be paid;

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies, subject to *our* pro rata share of the highest applicable limit provided by any one of the policies; and

c. *we* are entitled to recover from each insurer that is liable to pay no-fault coverage benefits to or for the *insured* who sustained *bodily injury*, an equitable pro rata share of benefits paid and expenses incurred in processing the claim.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment;

5. Any *person* or organization that provides the medical services or funeral services; or

6. Any *person* appearing to *us* to be equitably entitled to receive such payment.

# MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means named insureds and *relatives*:

1. while *occupying* a *motor vehicle*;

2. through being struck as a *pedestrian* by a *motor vehicle*; or

3. through being struck as a *pedestrian* by a motorcycle of a type required to be licensed for use on Florida highways.

18
9810A

SF-Sasson, Assaf - 000306

**Insuring Agreement**

1. Medical Payments Coverage is excess over No-Fault Coverage. The no-fault deductible, if any, is not payable under Medical Payments Coverage.

2. **We** will pay properly billed and documented **medical expenses** for services and care that are incurred because of **bodily injury** to an **insured** caused by an accident resulting from the ownership, maintenance, or use of a **motor vehicle**, but only:

   a. if that **insured** receives initial services and care from a provider described in A. below within 14 days after the **motor vehicle** accident that caused **bodily injury** to that **insured**; and

   b. if such services and care are provided within three years after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

   **We** will not pay for any **medical expenses** if the **insured** does not receive initial services and care from a provider described in A. below within 14 days after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

   **We** will only pay **medical expenses** for:

   A. initial services and care:

      (1) lawfully provided, supervised, ordered or prescribed by:

         (a) a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

         (b) a dentist licensed under chapter 466 of the Florida Statutes; or

         (c) a chiropractic physician licensed under chapter 460 of the Florida Statutes;

      (2) provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

      (3) provided by a **person** or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

   B. upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

      (1) a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

      (2) a dentist licensed under chapter 466 of the Florida Statutes;

      (3) a chiropractic physician licensed under chapter 460 of the Florida Statues; or

      (4) to the extent permitted by applicable law and under the supervision of a **person** described in (1), (2), or (3) immediately above;

         (a) a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

         (b) an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

   C. follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following **persons** or entities:

      (1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

      (2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

      (3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

      (4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

      (5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

         (a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

19
9810A

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

    i.  general medicine;

    ii.  radiography;

    iii.  orthopedic medicine;

    iv.  physical medicine;

    v.  physical therapy;

    vi.  physical rehabilitation;

    vii.  prescribing or dispensing outpatient prescription medication; or

    viii. laboratory services.

3. *We* will pay funeral expenses incurred for an *insured* who dies within three years immediately following the date of a *motor vehicle* accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

    a.  utilization reviews;

    b.  peer reviews; and

    c.  medical bill reviews

    to determine if the incurred expenses are *reasonable charges* and *medically necessary* for the *bodily injury* sustained.

2. use a medical examination of the *insured* to determine if:

    a.  the *bodily injury* was caused by a *motor vehicle* accident; and

    b.  the expenses incurred are *medically necessary*.

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Limits**

The Medical Payments Coverage limit is dependent upon determination of an *emergency medical condition* and is shown on the Declarations Page.

1. **Emergency Medical Condition**

    a.  The Medical Payments Coverage limit for an *insured* who has been determined to have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if the insured has been determined to have an *emergency medical condition* by a physician, a dentist, a physician assistant, or an advanced registered nurse practitioner described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage regardless of the number of:

    (1)  *insureds*;

    (2)  claims made;

    (3)  vehicles insured; or

    (4)  vehicles involved in the accident.

    b.  Subject to the limit shown on the Declarations Page, as described in 1.a. above, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

2. **Not An Emergency Medical Condition**

    The Medical Payments Coverage limit for an *insured* who has been determined to not have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Not An Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if the *insured* has been determined to not have an *emergency medical condition* by a healthcare provider described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, regardless of the number of:

    a.  *insureds*;

    b.  claims made;

    c.  vehicles insured; or

    d.  vehicles involved in the accident.

3. In no event will *we* pay more than the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

SF-Sasson, Assaf - 000308

a. For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

(III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-sub-subparagraph, then *we* will limit reimbursement to the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided.  Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

**Nonduplication**

*We* will not pay under Medical Payments Coverage any damages or expenses:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*; or

2. that have already been paid under No-Fault Coverage or Uninsured Motor Vehicle Coverage of this policy, the no-fault coverage, medical payments coverage, or uninsured motor vehicle coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. UNTIL THE MEDICAL EXPENSE BENEFITS OF ALL NO-FAULT COVERAGE AVAILABLE FROM ALL SOURCES HAVE BEEN EXHAUSTED.  This does not apply to the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

2. WHO REFUSES TO:

   a. SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAMINATION UNDER OATH; OR

   b. PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

3. FOR ANY *MEDICAL EXPENSES* THAT ARE NOT PAYABLE UNDER NO-FAULT COVERAGE.  This does not include:

   a. the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

SF-Sasson, Assaf - 000309

b. *medical expenses* not paid because the medical expense benefits of all no-fault coverage available from all sources have been exhausted;

c. *medical expenses* for *bodily injury* while *occupying* a *non-owned car* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; and

d. *medical expenses* for *bodily injury* sustained through being struck as a *pedestrian* by a:

   (1) *motor vehicle* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; or

   (2) motorcycle of a type required to be licensed for use on Florida highways;

4. FOR MILEAGE COSTS FOR THE USE OF A PERSONAL VEHICLE;

5. FOR ANY INTEREST CHARGES;

6. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

7. WHO:

a. IS *OCCUPYING* OR THROUGH BEING STRUCK AS A PEDESTRIAN BY A VEHICLE *OWNED BY* ANY NAMED INSURED OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS POLICY; OR

b. AT THE TIME OF THE ACCIDENT OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT* AND IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT*.

This exclusion (7.b.) does not apply to:

   (1) any named insured;

   (2) the spouse of any named insured; and

   (3) any *relative* while *occupying your car*, a *newly acquired car*, a *temporary substitute car*, or a *non-owned car* if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage;

8. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

9. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

a. the use of a *private passenger car* on a share-the-expense basis; or

b. an *insured* while *occupying* a *non-owned car* as a passenger;

10. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

a. any named insured;

b. any *relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

11. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

12. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

13. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

14. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

b. RUNS ON RAILS OR CRAWLER-TREADS;

15. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

16. WHOSE *BODILY INJURY* RESULTS FROM:

a. NUCLEAR REACTION;

b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

17. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*;

22
9810A

SF-Sasson, Assaf - 000310

18. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (18.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

19. FOR ANY MASSAGE AS DEFINED IN S.480.033, FLORIDA STATUTES, OR ACUPUNCTURE AS DEFINED IN S.457.102, FLORIDA STATUTES, REGARDLESS OF THE *PERSON* OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

20. FOR ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

   a. If:

     (1) this is the only vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance

which applies to the accident as primary coverage; and

     (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

   b. If:

     (1) more than one vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

     (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   a. If:

     (1) this is the only vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

     (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

SF-Sasson, Assaf - 000311

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment;

5. Any *person* or organization that provides the *medically necessary* services or funeral services; or

6. Any *person* appearing to *us* to be equitably entitled to receive such payment.

## UNINSURED MOTOR VEHICLE COVERAGE
### (Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying*:

a. *your car*;

b. a *newly acquired car*;

c. a *temporary substitute car*; or

d. a trailer attached to a *car* described in a., b., or c. above.

Such vehicle must be used with *your* express or implied permission.  Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle and a trailer attached to such land motor vehicle:

1. the ownership, maintenance, and use of which is:

a. neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or

b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but

(1) the limits are less than required by the financial responsibility act of the state of Florida;

(2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for *bodily injury* sustained by the *insured*; or

(3) the entity providing the financial responsibility:

(a) denies that it provides liability coverage for compensatory damages that result from the accident; or

(b) is or becomes insolvent; or

24
9810A

2.  the owner or driver:

    a.  of which could not reasonably have been identified;

    b.  remains unknown; and

    c.  that causes *bodily injury* to the *insured*.

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1.  whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

2.  *owned by*, rented to, or furnished or available for the regular use of *you* or a *resident relative*;

3.  designed for use primarily off public roads except while on public roads;

4.  while located for use as a dwelling or other premises; or

5.  whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1.  *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*.

2.  The *bodily injury* for which *we* will pay compensatory damages must be:

    a.  sustained by an *insured*;

    b.  caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*; and

    c.  a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1.  consent in writing, then the *insured* may accept such settlement offer.

2.  inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

    a.  *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

    b.  any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1.  The *insured* and *we* must agree to the answers to the following two questions:

    a.  Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

    b.  If the *insured* and *we* agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

2.  If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation, Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1.  all damages resulting from *bodily injury* to any one *insured* injured in any one accident; and

2.  all damages, including damages for emotional distress, sustained by other *insureds* as a direct result of that *bodily injury*.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *insureds* who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1.  *insureds*;

2.  claims made;

SF-Sasson, Assaf - 000313

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

    a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

    b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

    a. have already been paid;

    b. could have been paid; or

    c. could be paid

    to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. TO THE EXTENT IT BENEFITS:

    a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

    b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

    c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

3. FOR PUNITIVE OR EXEMPLARY DAMAGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative*

by the *State Farm Companies* apply to the same *bodily injury* sustained by a *person* other than *you* or any *resident relative*, then:

    a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

    If uninsured motor vehicle coverage is provided on a primary basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage for an *insured* who sustains *bodily injury*.

    If uninsured motor vehicle coverage is provided on an excess basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as excess coverage.

4. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then *we* may choose one or more policies from which to make payment.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

SF-Sasson, Assaf - 000314

## UNINSURED MOTOR VEHICLE COVERAGE
### (Non-Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U3" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying*:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a trailer attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* express or implied permission. Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., and 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle and a trailer attached to such land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or

   b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but

      (1) the limits are less than required by the financial responsibility act of the state of Florida;

      (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for *bodily injury* sustained by the *insured*; or

      (3) the entity providing the financial responsibility:

         (a) denies that it provides liability coverage for compensatory damages that result from the accident; or

         (b) is or becomes insolvent; or

2. the owner or driver:

   a. of which could not reasonably have been identified;

   b. remains unknown; and

c. that causes *bodily injury* to the *insured*.

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

2. *owned by*, rented to, or furnished or available for the regular use of *you* or a *resident relative*;

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1. *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*.

2. The *bodily injury* for which *we* will pay compensatory damages must be:

   a. sustained by an *insured*;

   b. caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*; and

   c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

SF-Sasson, Assaf - 000315

a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1. The *insured* and *we* must agree to the answers to the following two questions:

   a. Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

   b. If the *insured* and *we* agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

2. If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation**, **Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from *bodily injury* to any one *insured* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *insureds* as a direct result of that *bodily injury*.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *insureds* who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the **State Farm Companies** to *you* or any *resident relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

   a. WHILE *OCCUPYING* A VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

   b. THROUGH BEING STRUCK BY A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*.

   This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* or through being struck by a motor vehicle not *owned by* one or both of them;

3. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW,

SF-Sasson, Assaf - 000316

DISABILITY BENEFITS LAW, OR SIM-
ILAR LAW; OR

c.   ANY GOVERNMENT OR ANY OF ITS
POLITICAL     SUBDIVISIONS     OR
AGENCIES; OR

4.   FOR PUNITIVE OR EXEMPLARY DAM-
AGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1.   If Uninsured Motor Vehicle Coverage provided
by this policy and one or more other vehicle
policies issued to *you* or any *resident relative*
by the *State Farm Companies* apply to the
same *bodily injury*, then:

a.   the Uninsured Motor Vehicle Coverage
limits of such policies will not be added
together to determine the most that may be
paid; and

b.   the maximum amount that may be paid
from all such policies combined is the sin-
gle highest applicable limit provided by
any one of the policies.  *We* may choose
one or more policies from which to make
payment.

2.   The Uninsured Motor Vehicle Coverage pro-
vided by this policy applies as primary cover-
age for an *insured* who sustains *bodily injury*
while *occupying your car*.

a.   If:

(1)   this is the only vehicle policy issued
to *you* or any *resident relative* by the
*State Farm Companies* that provides
Uninsured Motor Vehicle Coverage
which applies to the accident as pri-
mary coverage; and

(2)   uninsured motor vehicle coverage
provided by one or more sources other
than the *State Farm Companies* also
applies as primary coverage for the
same accident,

then *we* will pay the proportion of dam-
ages payable as primary that *our* applica-
ble limit bears to the sum of *our* applicable
limit and the limits of all other uninsured
motor vehicle coverage that apply as pri-
mary coverage.

b.   If:

(1)   more than one vehicle policy issued to
*you* or any *resident relative* by the
*State Farm Companies* provides Un-
insured Motor Vehicle Coverage
which applies to the accident as pri-
mary coverage; and

(2)   uninsured motor vehicle coverage
provided by one or more sources other
than the *State Farm Companies* also
applies as primary coverage for the
same accident,

then the *State Farm Companies* will pay
the proportion of damages payable as pri-
mary that the maximum amount that may
be paid by the *State Farm Companies* as
determined in 1. above bears to the sum of
such amount and the limits of all other un-
insured motor vehicle coverage that apply
as primary coverage.

3.   Except as provided in 2. above, the Uninsured
Motor Vehicle Coverage provided by this poli-
cy applies as excess coverage.

a.   If:

(1)   this is the only vehicle policy issued
to *you* or any *resident relative* by the
*State Farm Companies* that provides
Uninsured Motor Vehicle Coverage
which applies to the accident as ex-
cess coverage; and

(2)   uninsured motor vehicle coverage
provided by one or more sources other
than the *State Farm Companies* also
applies as excess coverage for the
same accident,

then *we* will pay the proportion of damag-
es payable as excess that *our* applicable
limit bears to the sum of *our* applicable
limit and the limits of all other uninsured
motor vehicle coverage that apply as ex-
cess coverage.

b.   If:

(1)   more than one vehicle policy issued to
*you* or any *resident relative* by the *State
Farm Companies* provides Uninsured
Motor Vehicle Coverage which applies to
the accident as excess coverage; and

(2)   uninsured motor vehicle coverage pro-
vided by one or more sources other than
the *State Farm Companies* also applies
as excess coverage for the same accident,

then the *State Farm Companies* will pay
the proportion of damages payable as ex-
cess that the maximum amount that may
be paid by the *State Farm Companies* as
determined in 1. above bears to the sum of
such amount and the limits of all other un-
insured motor vehicle coverage that apply
as excess coverage.

29
9810A

SF-Sasson, Assaf - 000317

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

    a. being driven by an *insured*; or

    b. in the custody of an *insured* if at the time of the *loss* it is:

        (1) not being driven; or

        (2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*;

6. a *non-owned trailer* while it is being used by an *insured*; and

7. a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily Rental Charge* means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle*. *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or

2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

    a. an *insured*;

    b. any other *person* who resides primarily in *your* household; or

    c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

    a. an *insured*;

SF-Sasson, Assaf - 000318

   b.  any other **person** who resides primarily in **your** household; or

   c.  an employer of any **person** described in a. or b. above; nor

2.  has been used by, rented by, or in the possession of an **insured** during any part of each of the 31 or more consecutive days immediately prior to the date of the **loss**.

**Insuring Agreements**

1.  **Comprehensive Coverage**

   a.  **We** will pay for **loss**, except **loss caused by collision**, to a **covered vehicle**.

   b.  **We** will pay transportation expenses incurred by an **insured** as a result of the total theft of **your car** or a **newly acquired car**. These transportation expenses are payable:

     (1)  during the period that:

       (a)  starts on the date **you** report the theft to **us**; and

       (b)  ends on the earliest of:

         (i)  the date the vehicle is returned to **your** possession in a drivable condition;

         (ii)  the date **we** offer to pay for the **loss** if the vehicle has not yet been recovered; or

         (iii)  the date **we** offer to pay for the **loss** if the vehicle is recovered, but is a total loss as determined by **us**; and

     (2)  during the period that:

       (a)  starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to **your** possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

       (b)  ends on the date the vehicle is repaired.

    These transportation expenses must be reported to **us** before **we** will pay such incurred expenses.

   c.  The deductible does not apply to damage to the windshield of any **covered vehicle**.

2.  **Collision Coverage**

   **We** will pay for **loss caused by collision** to a **covered vehicle**.

3.  **Emergency Road Service Coverage**

   **We** will pay the fair cost incurred by an **insured** for:

   a.  up to one hour of labor to repair a **covered vehicle** at the place of its breakdown;

   b.  towing to the nearest repair facility where necessary repairs can be made if a **covered vehicle** is not drivable;

   c.  towing a **covered vehicle** out of a location where it is stuck if the vehicle is on or immediately next to a public road;

   d.  delivery of gas, oil, battery, or tire necessary to return a **covered vehicle** to driving condition. **We** do not pay the cost of the gas, oil, battery, or tire; and

   e.  up to one hour of labor for locksmith services to unlock a **covered vehicle** if its key is lost, stolen, or locked inside the vehicle.

4.  **Car Rental and Travel Expenses Coverage**

   a.  **Car Rental Expense**

   **We** will pay the **daily rental charge** incurred when an **insured** rents a **car** from a **car business** while **your car** or a **newly acquired car** is:

     (1)  not drivable; or

     (2)  being repaired

   as a result of a **loss** which would be payable under Comprehensive Coverage or Collision Coverage.

   **We** will pay this **daily rental charge** incurred during a period that:

     (1)  starts on the date:

       (a)  the vehicle is not drivable as a result of the **loss**; or

       (b)  the vehicle is left at a repair facility if the vehicle is drivable; and

     (2)  ends on the earliest of:

       (a)  the date the vehicle has been repaired or replaced;

       (b)  the date **we** offer to pay for the **loss** if the vehicle is repairable but **you** choose to delay repairs; or

       (c)  seven days after **we** offer to pay for the **loss** if the vehicle is:

         (i)  a total loss as determined by **us**; or

         (ii)  stolen and not recovered.

   The amount of any such **daily rental charge** incurred by an **insured** must be reported to **us** before **we** will pay such amount.

SF-Sasson, Assaf - 000319

b. **Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

(a) starts after the *loss* occurs; and

(b) ends on the earlier of:

(i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

(ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive coverage deductible or collision coverage deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or

the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.

(1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

(a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

(b) A bid or repair estimate approved by *us*; or

(c) A repair estimate that is written based upon or adjusted to:

(i) the prevailing competitive price;

(ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a

32
9810A

SF-Sasson, Assaf - 000320

survey made by **us**. If asked, **we** will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the **covered vehicle** to its pre-loss condition.

**You** agree with **us** that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

**You** also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the **covered vehicle** does not include any reduction in the value of the **covered vehicle** after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then **you** or the owner of the **covered vehicle** must pay for the amount of the betterment.

(4) If **you** and **we** agree, then windshield glass will be repaired instead of replaced;

b. Pay the actual cash value of the **covered vehicle** minus any applicable deductible.

(1) The owner of the **covered vehicle** and **we** must agree upon the actual cash value of the **covered vehicle**. If there is disagreement as to the actual cash value of the **covered vehicle**, then the disagreement will be resolved by mediation or appraisal. Either the owner or **we** may request mediation or appraisal.

(2) Mediation will follow the rules outlined in this policy, found under **Mediation**, in the section titled **GENERAL TERMS**.

(3) Appraisal will follow the rules and procedures as listed below:

(a) The owner and **we** will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or **we** may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the **covered vehicle**. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the **covered vehicle** and **us**.

(f) **We** do not waive any of **our** rights by submitting to an appraisal.

(4) The damaged **covered vehicle** must be given to **us** in exchange for **our** payment, unless **we** agree that the owner may keep it. If the owner keeps the **covered vehicle**, then **our** payment will be reduced by the value of the **covered vehicle** after the **loss**; or

c. Return the stolen **covered vehicle** to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most **we** will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per **loss**.

3. The most **we** will pay for **loss** to a **non-owned trailer** or a **non-owned camper** is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. **Car Rental Expense**

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a. The limit shown under "Each Day" is the most **we** will pay for the **daily rental charge**. If:

(1) a dollar amount is shown, then **we** will pay the **daily rental charge** up to that dollar amount; or

(2) a percentage amount is shown, then **we** will pay that percentage of the **daily rental charge**.

SF-Sasson, Assaf - 000321

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. **Travel Expenses**

The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. **Rental Car – Repayment of Deductible Expense**

The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

a. INTENTIONALLY DAMAGED; OR

b. STOLEN

BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

a. THEFT;

b. CONVERSION;

c. EMBEZZLEMENT; OR

d. SECRETION

BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

a. NUCLEAR REACTION;

b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

a. LIEN AGREEMENT;

b. RENTAL AGREEMENT;

c. LEASE AGREEMENT; OR

d. SALES AGREEMENT

NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

a. FAILS OR IS DEFECTIVE; OR

b. IS DAMAGED AS A DIRECT RESULT OF:

34
9810A

SF-Sasson, Assaf - 000322

(1) WEAR AND TEAR;

(2) FREEZING; OR

(3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

a. THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE* IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b. *OWNED BY* AN *INSURED*; AND

c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

SF-Sasson, Assaf - 000323

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

      (1) *You*;

      (2) The repairer; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

      (1) *You*;

      (2) The owner of such vehicle;

      (3) The repairer; or

      (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;

   b. The *insured* who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

**Insuring Agreement**

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1. dies; or

2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

36
9810A

**Death, Dismemberment and
Loss of Sight Benefits Schedules**

| If the amount shown on the Declarations Page for the ***insured*** is $5,000, then ***we*** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

| If the amount shown on the Declarations Page for the ***insured*** is $10,000, then ***we*** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

**Exclusions**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN ***INSURED***:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A ***CAR BUSINESS***;

2. WHILE ***OCCUPYING***, LOADING, OR UN-LOADING:

   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

   b. A VEHICLE, OTHER THAN AN EMER-GENCY VEHICLE, WHILE USED IN THE:

      (1) ***INSURED'S*** BUSINESS; OR

      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A ***CAR BUSINESS***.

      This exclusion (2.b.) does not apply if the vehicle is a ***private passenger car***;

   c. A MILITARY VEHICLE; OR

   d. A VEHICLE WHILE IT IS:

      (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CON-TEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

      (2) ON A TRACK DESIGNED PRIMARI-LY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

3. WHILE ***OCCUPYING***, LOADING, UN-LOADING, OR WHO IS STRUCK AS A ***PE-DESTRIAN*** BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. A MOTOR VEHICLE THAT IS DE-SIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LO-CATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, AND LOSS OF SIGHT THAT RESULTS FROM:

   a. WAR OF ANY KIND;

   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINA-TION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

   c. EXPOSURE TO ***FUNGI***;

   d. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE ***IN-SURED*** WAS SANE OR INSANE; OR

   e. DISEASE except pus-forming infection due to ***bodily injury*** sustained in the ac-cident.

SF-Sasson, Assaf - 000325

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* or organization authorized by law to receive such payment.

## INSURED'S DUTIES

1. **Insured's Duty at the Time of an Accident or Loss**

   The *insured* must make a reasonable effort to identify:

   a. the owners, operators, and passengers of the vehicles involved in the accident or *loss*;

   b. the *person* or *persons* involved in the accident or *loss*; and

   c. the potential witnesses to the accident or *loss*.

2. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

3. **Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

4. **Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

      (1) making settlements;

      (2) securing and giving evidence; and

      (3) attending, and getting witnesses to attend, depositions, hearings, and trials.

   b. The *insured* must not, except at his or her own cost, voluntarily:

      (1) make any payment to others; or

      (2) assume any obligation to others

unless authorized by the terms of this policy.

   c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

5. **Questioning Under Oath**

   Under:

   a. No-Fault Coverage, each *insured* making claim or seeking payment, must, at *our* option:

      (1) submit to an examination under oath;

      (2) provide a statement under oath; or

      (3) do both (1) and (2) above,

   as often as *we* reasonably require. Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *insured* answering questions under oath to answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

   The scope of the questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. Compliance with **Questioning Under Oath** is a condition precedent to receiving benefits.

   b. all other coverages, each *insured* making claim or seeking payment, must, at *our* option:

      (1) submit to an examination under oath;

      (2) provide a statement under oath; or

      (3) do both (1) and (2) above,

   as often as *we* reasonably require. Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *insured* answering questions under oath to

SF-Sasson, Assaf - 000326

answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

6. **Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft or vandalism;

c. allow *us* to:

  (1) inspect any damaged property before its repair or disposal;

  (2) test any part or equipment before that part or equipment is removed or repaired; and

  (3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

  (1) records;

  (2) receipts; and

  (3) invoices

  that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

7. **Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage**, and **Death, Dismemberment and Loss of Sight Coverage**

An *insured* making claim under:

a. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

  (1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

  (2) submit to be examined as often as *we* may reasonably require by physicians chosen and paid by *us*. A copy of the

report will be sent to the *person* upon written request.

  (a) Under No-Fault Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are no longer liable for subsequent benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations raises a rebuttable presumption that the *insured's* refusal or failure was unreasonable;

  (b) Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are not liable for coverage benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations will be considered unreasonable;

  (3) provide written authorization for *us* to obtain:

    (a) medical bills;

    (b) medical records;

    (c) wage, salary, and employment information; and

    (d) any other information *we* deem necessary to substantiate the claim.

  If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

  If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

  (4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. No-Fault Coverage or Medical Payments Coverage must, at *our* request, submit documentation from the appropriate healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage, or described in

SF-Sasson, Assaf - 000327

2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, confirming whether that healthcare provider determined the injured *insured* had, or did not have, an *emergency medical condition*;

c. No-Fault Coverage and Uninsured Motor Vehicle Coverage must send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

d. Uninsured Motor Vehicle Coverage must report an accident, involving a motor vehicle whose owner or driver remains unknown, to the police within 24 hours or as soon as reasonably practicable, and to *us* within 30 days.

## GENERAL TERMS

1. **When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

2. **Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page.

a. Liability Coverage, Property Damage Liability Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Physical Damage Coverages apply to accidents and *losses* that occur:

   (1) in the United States of America and its territories and possessions;

   (2) in Canada; and

   (3) while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

b. No-Fault Coverage applies to accidental *bodily injury* sustained:

   (1) by an *insured* in Florida; and

   (2) by *you* and *relatives* outside Florida; but within:

   (a) the United States of America, its territories or possessions; or

   (b) Canada,

   while *occupying your car*, a *newly acquired car*, or a *temporary substitute car*.

c. Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

3. **Limited Coverage in Mexico**

This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

a. **Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

*We* may, in addition to the damages described in item 1 of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at *our* option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

b. **Property Damage Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Property Damage Liability Coverage is changed to read:

*We* may, in addition to the damages described in items 1. and 2. of the **Insuring Agreement** of this policy's Property Damage Liability Coverage, pay or reimburse,

SF-Sasson, Assaf - 000328

at our option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Property Damage Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

c. **No-Fault Coverage**

The definition of *insured* is changed read:

*Insured* means named insured and *relatives* while *occupying*:

(1) *your car*;

(2) a *newly acquired car*;

(3) a *temporary substitute car*; or

(4) a *trailer* while attached to a *car* described in (1), (2), or (3) above.

d. **Medical Payments Coverage**

e. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF FLORIDA IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of Florida in the United States of America.

4. **Persons Acting On Our Behalf**

A company employee adjuster, independent adjuster, attorney, investigator, or other *persons* acting on *our* behalf that needs access to an *insured* or claimant or to the insured property that is the subject of a claim must provide at least 48 hours' notice to the *insured* or claimant, public adjuster, or legal representative before scheduling a meeting with the claimant or an onsite inspection of the insured property. The *insured* or claimant may deny access to the property if the notice has not been provided. The *insured* or claimant may waive the 48-hour notice.

A public adjuster must ensure prompt notice of property loss claims submitted to *us* by or through a public adjuster or on which a public adjuster represents the *insured* at the time the claim or notice of loss is submitted to *us*. The public adjuster must ensure that notice is given to *us*, the public adjuster's contract is provided to *us*, the property is available for inspection of the loss or damage by *us*, and *we* are given an opportunity to interview the *insured* directly about the loss and claim. *We* must be allowed to obtain necessary information to investigate and respond to the claim.

*We* may not exclude the public adjuster from its in-person meetings with the *insured*. *We* shall meet or communicate with the public adjuster in an effort to reach agreement as to the scope of the covered loss under the insurance policy. This section does not impair the terms and conditions of the insurance policy in effect at the time the claim is filed.

A public adjuster may not restrict or prevent *us*, company employee adjuster, independent adjuster, attorney, investigator, or other *person* acting on *our* behalf from having reasonable access at reasonable times to an *insured* or claimant or to the insured property that is the subject of a claim.

A public adjuster may not act or fail to reasonably act in any manner that obstructs or prevents *us* or *our* adjuster from timely conducting an inspection of any part of the insured property for which there is a claim for loss or damage. The public adjuster representing the *insured* may be present for *our* inspection, but if the unavailability of the public adjuster otherwise delays *our* timely inspection of the property, the public adjuster or the *insured* must allow *us* to have access to the property without the participation or presence of the public adjuster or *insured* in order to facilitate *our* prompt inspection of the loss or damage.

41
9810A

SF-Sasson, Assaf - 000329

5. **Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

  (1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

  (2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

6. **Changes to This Policy**

a. **Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

  (1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

  (2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Florida without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

b. **Change of Interest**

  (1) No change of interest in this policy is effective unless *we* consent in writing.

  (2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured shown on the Declarations Page

dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

  (a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

  (b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

c. **Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

d. **Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

  (1) *you*; or

  (2) the United States Postal Service.

7. **Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon:

  (1) the purchase of other products or services from the *State Farm Companies*;

  (2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of

SF-Sasson, Assaf - 000330

any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

(1) *Your car*, or its use, including annual mileage;

(2) The *persons* who regularly drive *your car*, including newly licensed family members;

(3) *Your* marital status; or

(4) The location where *your car* is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

8. **Renewal**

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 9. and 10. below.

9. **Nonrenewal**

If *we* decide not to renew this policy, then, at least 45 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the first named insured who is shown on the Declarations Page.

10. **Cancellation**

a. **How You May Cancel**

(1) *You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

(2) However, if the policy provides Liability Coverage or Property Damage Liability Coverage and No-Fault Coverage, *you* may not cancel *your* policy during the first two months immediately following the policy effective date unless:

(a) *your car* has been totally destroyed;

(b) *you* have transferred ownership of *your car*;

(c) *you* have purchased another policy covering *your car*; or

(d) *you* are a member of the United States Armed Forces and have been called to or are on active duty outside the United States in an emergency situation.

b. **How and When We May Cancel**

(1) *We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the first named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

(2) Except as provided under **Cancellation Due to Incorrect Premium**, the date cancellation is effective will be at least:

(a) 10 days after the date *we* mail or deliver the cancellation notice, if the cancellation is because the premium was not paid when due; or

(b) 45 days after *we* mail or deliver the cancellation notice, if the cancellation is because of any other reason.

(3) If *we* cancel this policy for nonpayment of premium during the first 60 days immediately following the effective date of this policy, *we* will do so only if a check used to pay the premium is dishonored for any reason or any other type of premium payment was subsequently determined to be rejected or invalid.

(4) After this policy has been in force for more than 59 days, *we* will not cancel this policy before the end of the current policy period unless it is based on one or more of the following reasons:

(a) Nonpayment of premium;

43

9810A

SF-Sasson, Assaf - 000331

(b) *You*, any *resident relative*, or any other *person* who usually drives *your car* has had his or her driver's license or motor vehicle registration under suspension or revocation during the policy period or the 180 days immediately preceding its effective date, or if the policy is a renewal, during its policy period; or

(c) Material misrepresentation or fraud.

c. **Cancellation Due to Incorrect Premium**

(1) If *we* determine that *we* have charged *you* an incorrect premium for coverages requested in *your* insurance application, *we* will immediately notify *you* of any additional premium due. *You* may:

(a) maintain *your* policy in force by paying the additional amount due by the date stated in the notice; or

(b) cancel *your* policy by the date stated in the notice and receive a refund of any unearned premium.

(2) If *you* fail to respond by the date stated in the notice *we* will cancel *your* policy. The date cancellation is effective will be at least 14 days after the date *we* mail or deliver the cancellation notice.

d. **Return of Unearned Premium**

(1) If *you* cancel this policy, then premium will be earned on a pro rata basis. *We* may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed to *you* within 30 days after the effective date of the policy cancellation, or 30 days after *we* receive *your* request to cancel this policy, whichever is later.

(2) If *we* cancel this policy, then premium will be earned on a pro rata basis. Any unearned premium will be mailed at the time *we* cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation.

11. **Assignment**

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*. This does not include a post loss assignment of benefits.

12. **Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

13. **Concealment or Fraud**

a. **Coverages Other Than No-Fault and Medical Payments Coverage**

There is no coverage under this policy for any *person* who, or organization making claim or seeking payment that, has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

b. **No-Fault Coverage and Medical Payments Coverage**

Benefits shall not be due or payable to or on behalf of an *insured person* if that *person* has committed, by material act or omission, any insurance fraud relating to No-Fault Coverage or Medical Payments Coverage under this policy, if the fraud is admitted to in a sworn statement by the *insured* or if it is established in a court of competent jurisdiction. Any insurance fraud shall void all coverage arising from the claim related to such fraud under No-Fault Coverage or Medical Payments Coverage of the *insured person* who committed the fraud, irrespective of whether a portion of the *insured person's* claim may be legitimate, and any benefits paid prior to the discovery of the *insured person's* insurance fraud shall be recoverable by *us*, in their entirety, from the *person* who committed insurance fraud. *We* are entitled to all *our* costs and attorney's fees in any action in which *we* prevail that enforces *our* right of recovery under this provision.

Neither *we* nor the *insured* is required to pay a claim or charges:

(1) for any service or treatment that was not lawful at the time rendered; or

(2) to any *person* who knowingly submits a false or misleading statement relating to the claim or charges.

If *we* have reasonable belief that a fraudulent insurance act (s. 626.989, Florida Statutes, or s. 817.234, Florida Statutes) has been committed, *we* shall notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, *we* have an additional 60 days to

44
9810A

SF-Sasson, Assaf - 000332

conduct a fraud investigation. Notwithstanding the demand letter conditions under the **Legal Action Against Us** provision of this policy, no later than 90 days after the submission of the claim, *we* must deny the claim or pay the claim with simple interest as provided in d. (2) under the **Legal Action Against Us** provision of this policy. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Insurance Fraud.

14. **Our Right to Recover Our Payments**

Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*. Under all other coverages, the following apply:

a. **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, that is not an *insured*, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(1) doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through *our* representatives when *we* ask.

b. **Reimbursement**

(1) If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(a) hold in trust for *us* the proceeds of any recovery; and

(b) reimburse *us* to the extent of *our* payment.

(2) *We* have a right of reimbursement against the owner or the insurer of the owner of a commercial motor vehicle for *our* payments of No-Fault benefits to any *person* having been an *occupant* of the commercial motor vehicle or having been struck by the commercial motor vehicle as a *pedestrian*.

*Our* right of reimbursement for benefits under No-Fault Coverage does not apply to an owner or registrant of a taxicab as identified in s.627.733(1)(b), Florida Statutes.

15. **Mediation**

The *insured* or *we* may demand mediation of any claim:

a. in an amount of $10,000 or less, resulting from:

1. *bodily injury* under No-Fault Coverage, Medical Payments Coverage, or Uninsured Motor Vehicle Coverages; or

2. death of or loss to an *insured* under Death, Dismemberment and Loss of Sight Coverage; or

b. in any amount, for a *loss* covered under Physical Damage Coverages,

by filing a written request with the Florida Department of Financial Services on a form which may be obtained from the Florida Department of Financial Services. The request must state why mediation is being requested and the issue in dispute.

The Florida Department of Financial Services will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible.

Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosure provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a *person* files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation. Any suit regarding a mediated dispute must be filed as prescribed under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.

SF-Sasson, Assaf - 000333

16. **Arbitration**

a. The *insured* or *we* may request, in writing, arbitration of any claim. If *you* and *we* agree to arbitrate, then arbitration will follow the procedure outlined below.

(1) The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

(2) The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

(3) Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

(4) The arbitrators shall only decide the answers to the following two questions:

(a) are damages compensatory; and

(b) if damages are compensatory, then what is the amount of compensatory damages.

(5) Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

(6) A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

(a) *us*;

(b) the *insured*;

(c) any assignee of the *insured*; and

(d) any *person* or organization with whom the *insured* expressly or impliedly contracts.

(7) Subject to (1), (2), (3), (4), (5), and (6) above, state court rules governing procedure and admission of evidence will be used.

(8) *We* do not waive any of *our* rights by submitting to arbitration.

b. *We* are not bound by any:

(1) judgment obtained without *our* written consent; or

(2) default judgment against any *person* or organization other than *us*.

c. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

17. **Legal Action Against Us**

a. Legal action may only be brought against *us* within five years immediately following the date of the accident or *loss*.

b. Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy.

c. Under No-Fault Coverage, *we* shall create and maintain for each *insured* a log of No-Fault Coverage benefits *we* have paid on behalf of the *insured*. If litigation is commenced, *we* shall provide to the *insured* a copy of the log within 30 days after receiving a request for the log from the *insured*.

d. In addition, legal action may only be brought against *us* regarding:

(1) Liability Coverage and Property Damage Liability Coverage, after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(a) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(b) agreement between the claimant and *us*.

(2) No-Fault Coverage, if within 30 days after *our* receipt of written notice of an intent to initiate litigation for:

(a) an overdue claim, applicable interest, and a penalty of 10% of the overdue amount that *we* pay, subject to a maximum penalty of $250; or

SF-Sasson, Assaf - 000334

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice and to pay a penalty of 10%, subject to a maximum penalty of $250, when *we* pay for such future treatment.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

Such notice of intent to initiate litigation may not be sent until the claim is overdue, including any additional time *we* have to pay the claim pursuant to the *No-Fault Act*.

The notice must state that it is a "demand letter under s.627.736" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to *us*; and

iii. to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, any other standard form approved by the Florida Office of Insurance Regulation, or the lost wage statement previously submitted, may be used as the itemized statement. To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website. Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(3) Medical Payments Coverage unless *we* receive written notice of an intent to initiate litigation and if within 30 days after *our* receipt of such for:

(a) a claim, *we* fail to pay the claim; or

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

The notice must state that it is a "demand letter for Medical Payments Coverage" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to us; and

SF-Sasson, Assaf - 000335

iii.   to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, or any other standard form approved by the Florida Office of Insurance Regulation, may be used as the itemized statement.  To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website.  Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(4)  Uninsured Motor Vehicle Coverage if the *insured* or that *insured's* legal representative within five years immediately following the date of the accident:

(a)  presents an Uninsured Motor Vehicle Coverage claim to *us*;

(b)  files a lawsuit, in a state or federal court that has jurisdiction against *us*;

(c)  consents to a jury trial if requested by *us*; and

(d)  agrees that *we* may contest the issues of liability and the amount of damages.

*We* are not bound by any judgment obtained without *our* written consent.

*We* are not bound by default judgment against any *person* or organization other than *us*.

Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

18.  **Choice of Law**

Without regard to choice of law rules, the law of the state of:

a.  Florida will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b.  Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1)  Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2)  Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

19.  **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a.  such provision will remain in full force to the extent not held invalid or unenforceable; and

b.  all other provisions of this policy will remain valid and enforceable.

Policy Form 9810A
©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

SF-Sasson, Assaf - 000336

**State Farm Mutual Automobile Insurance Company**
PO Box 2358
Bloomington IL 61702-2358

**DECLARATIONS PAGE**

NAMED INSURED

AT2                          59-6825-4  C     A
          003972  0058
SASSON, ASSAF & ADA L
3385 NE 167TH ST
N MIAMI BEACH FL  33160-3849

| POLICY NUMBER   J53 4643-B02-59B |
|---|
| POLICY PERIOD APR 19 2022 to AUG 02 2022 12:01 A.M. Standard Time |

STATE FARM PAYMENT PLAN NUMBER
1520065519

AGENT

ANTHONY GARCIA
1035 S STATE ROAD 7 STE 311
WELLINGTON, FL 33414-6137

PHONE: (561)793-9822

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

### YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|---|---|---|---|---|---|
| 2022 | PORSCHE | TAYCAN | 4DR | WP0AA2Y11NSA13378 | 60306010002 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---|---|---|
| A | Liability Coverage | $174.50 |
|  | Bodily Injury Limits |  |
|  | Each Person,   Each Accident |  |
|  | $300,000       $300,000 |  |
|  | Property Damage Limit |  |
|  | Each Accident |  |
|  | $100,000 |  |
| P14/$10,00 | $500 Deductible No-Fault Coverage | $55.38 |
|  | Deductible Applies to Each Named Insured and to |  |
|  | Each of Your Dependent Relatives |  |
| D | Comprehensive Coverage - $500 Deductible | $119.03 |
| G | Collision Coverage - $500 Deductible | $203.93 |
| H | Emergency Road Service Coverage | $.54 |
| R1 | Car Rental and Travel Expenses Coverage | $7.84 |
|  | Limit - Car Rental Expense |  |
|  | Each Day,       Each Loss |  |
|  | 80%             $1,000 |  |

| Total premium for APR 19 2022 to AUG 02 2022. | $561.22 | This is not a bill. |
|---|---|---|

### IMPORTANT MESSAGES

IMPORTANT NOTICE- Under No-Fault Coverage, the only medical expenses we will pay are reasonable medical expenses that are payable under the Florida Motor Vehicle No-Fault Law. The most we will pay for such reasonable medical expenses is 80% of the "schedule of maximum charges" found in the Florida Motor Vehicle No-Fault Law and in the Limits section of the Florida Car Policy's No-Fault Coverage.

Replaced policy number J534643-59A.

**Your total renewal premium for FEB 02 2022 to AUG 02 2022 is $981.13.**

For questions, problems or to obtain information about coverage call: (561)793-9822.

State Farm works hard to offer you the best combination of price, service, and protection.    The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once during your policy term, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

### EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9810A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
CREDITOR- DCU CREDIT UNION, PO BOX 9130, MARLBOROUGH MA 01752-9130.
6128S.1   AMENDATORY ENDORSEMENT.
6910A     AMENDATORY ENDORSEMENT.

Agent:     ANTHONY GARCIA
Telephone:  (561)793-9822
Prepared   JUN 03 2022          6825-C0D

09289/03803
155-3866.2 04-2005 (o1a025hd)
I4SX0N (o1a025te)                (o1a025ec)                SF-Sasson, Assaf - 000337

ST-8
0102/0406

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary                                    President

SF-Sasson, Assaf - 000338

B10

Policy Number: J53 4643-B02-59B
Sheet 1 of 1

PLEASE ATTACH TO YOUR POLICY BOOKLET

## 6910A AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **PHYSICAL DAMAGE COVERAGES**

   **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

   The following is added:

   If there is disagreement as to the cost of repair, replacement, or recalibration of glass, an appraisal will be used as the first step toward resolution. Appraisal will follow the rules and procedures as listed below:

   a. The owner and *we* will each select a competent appraiser.

   b. The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

   c. Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

   d. The appraisers shall only determine the cost of repair, replacement, and recalibration of glass. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

   e. A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

   f. *We* and *you* do not waive any rights by submitting to an appraisal.

2. **GENERAL TERMS**

   a. Item (3) of **How and When We May Cancel**, under **Cancellation**, is changed to read:

      If *we* cancel this policy for nonpayment of premium during the first 30 days immediately following the effective date of this policy, *we* will do so only if a check used to pay the premium is dishonored for any reason or any other type of premium payment was subsequently determined to be rejected or invalid.

   b. Item a. of **Legal Action Against Us** is changed to read:

      Legal action may only be brought against *us* within five years immediately following the date of the accident or *loss*. However, this limitation of action is tolled for a period of 60 days after *we* receive notice from the Florida Department of Financial Services, in accordance with section 624.155, Florida Statutes.

6910A

©, Copyright, State Farm Mutual Automobile Insurance Company, 2020



ST-8
0409-2020

SF-Sasson, Assaf - 000339

09290/03803
ED1

SF-Sasson, Assaf - 000340

## 6128S.1 AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

   a. *Newly Acquired Car* is changed to read:

   *Newly Acquired Car* means a *car* newly *owned by you* or a *resident relative*.

   A *car* ceases to be a *newly acquired car* on the earlier of:

   1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

   2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

   If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

   b. *Pedestrian* is changed to read:

   *Pedestrian* means a *person* who is not *occupying*:

   1. a *motor vehicle*;

   2. a self-propelled vehicle; or

   3. a trailer or other vehicle attached to a self-propelled vehicle.

   c. *Relative* is changed to read:

   *Relative* means a *person*, other than *you*, who is:

   1. related to any named insured in any degree by blood, by marriage, or by adoption and who makes his or her home in the same family unit with that named insured, whether or not temporarily living elsewhere, or

   2. a ward or foster child of any named insured or of a *person* described in 1. above and who makes his or her home in the same family unit with that named insured.

2. **LIABILITY COVERAGE (Bodily Injury and Property Damage)**

   a. Item 4. of *Insured*, under **Additional Definition**, is changed to read:

   *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

   a. neither *owned by*, nor hired by, that other *person* or organization; and

   b. neither available for, nor being used for, carrying *persons* for a charge.

   b. The following is added to **Supplementary Payments**:

   Attorney fees for attorneys representing the *person* or entity asserting a claim against an *insured* are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000341

c. **Exclusions**

(1) The exception to exclusion 11. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

3. **PROPERTY DAMAGE LIABILITY COVERAGE**

a. Item 4. of *Insured*, under **Additional Definition**, is changed to read:

*Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability.

This provision applies only if the vehicle is:

a. neither *owned by*, nor hired by, that other *person* or organization; and

b. neither available for, nor being used for, carrying *persons* for a charge.

b. The following is added to **Supplementary Payments**:

Attorney fees for attorneys representing the *person* or entity asserting a claim against an *insured* are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

c. **Exclusions**

(1) The exception to exclusion 9. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY*

6128S.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000342

*ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

4. **NO-FAULT COVERAGE**

a. **Additional Definition**

Item 2. of the definition of *Insured* is changed to read:

*Insured* means any other *person* while *occupying* or struck as a *pedestrian* by:

a. *your car*;

b. a *newly acquired car*;

c. a *temporary substitute car*; or

d. a *trailer* while attached to a *car* described in a., b., or c. above.

b. **Insuring Agreement**

Item 1.C. is changed to read:

follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following *persons* or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above; and

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or

(a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

i. general medicine;

ii. radiography;

iii. orthopedic medicine;

iv. physical medicine;

v. physical therapy;

vi. physical rehabilitation;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000343

vii. prescribing or dispensing outpatient prescription medication; or

viii. laboratory services.

c. **Limits**

(1) Item 2.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 2. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

d. **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

5. **MEDICAL PAYMENTS COVERAGE**

a. **Insuring Agreement**

Item 2.C. is changed to read:

follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following *persons* or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000344

Statutes, based upon referral by a provider described in B. above; and

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or

    (a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

    (b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

    (c) provides at least four of the following medical specialties:

       i.  general medicine;

       ii.  radiography;

       iii.  orthopedic medicine;

       iv.  physical medicine;

       v.  physical therapy;

       vi.  physical rehabilitation;

       vii.  prescribing or dispensing outpatient prescription medication; or

       viii. laboratory services.

**b.  Limits**

(1) Item 3.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

    (I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 3. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

**c.  Exclusions**

(1) Exclusion 7. is changed to read:

THERE IS NO COVERAGE FOR AN ***INSURED*** WHO:

    a.  IS    ***OCCUPYING***  OR THROUGH BEING STRUCK

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
6128S.1

SF-Sasson, Assaf - 000345

AS A *PEDESTRIAN* BY A VE-HICLE *OWNED BY* ANY NAMED INSURED OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS POL-ICY; OR

b. AT THE TIME OF THE ACCI-DENT OWNS A *MOTOR VE-HICLE* SUBJECT TO THE *NO-FAULT ACT* AND IS NOT INSURED FOR THE COVER-AGE REQUIRED BY THE *NO-FAULT ACT*.

This exclusion (7.b.) does not apply to:

(1) any named insured;

(2) the spouse of any named in-sured; and

(3) any *relative* while *occupy-ing your car*, a *newly ac-quired car*, a *temporary substitute car*, or a *non-owned car* if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Pay-ments Coverage;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANS-PORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR*

WHILE SUCH VEHICLE IS BEING USED TO PRO-VIDE TRANSPORTA-TION NETWORK SERVICES.

6. **UNINSURED MOTOR VEHICLE COV-ERAGE (Stacking)**

a. **Additional Definitions**

"*Uninsured Motor Vehicle* does not in-clude a land motor vehicle or trailer" is changed to read:

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Cov-erage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehi-cle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being oper-ated by a *person* other than *you* or a *resident relative*;

2. designed for use primarily off public roads except while on public roads;

3. while located for use as a dwell-ing or other premises; or

4. whose owner or operator could have been reasonably identified.

b. **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTA-TION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY*

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000346

*ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

7. **UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking)**

a. **Additional Definitions**

"*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer" is changed to read:

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

2. designed for use primarily off public roads except while on public roads;

3. while located for use as a dwelling or other premises; or

4. whose owner or operator could have been reasonably identified.

b. **Exclusions**

(1) Exclusion 2. is changed to read:

THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

a. WHILE *OCCUPYING* A VEHICLE *OWNED BY YOU* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

b. WHILE *OCCUPYING* A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*. This exclusion (2.b.) does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, provided that the vehicle is *owned by* neither that named insured nor that spouse; OR

c. WHILE A *PEDESTRIAN* AND IS STRUCK BY A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*;

(2) The following exclusions are added:

(a) THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A VEHICLE *OWNED BY* THAT *INSURED* IF THAT VEHICLE IS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE UNDER THIS POLICY OR ANY OTHER POLICY.

(b) THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
6128S.1

SF-Sasson, Assaf - 000347

2. ***OCCUPYING*** OR STRUCK BY ***YOUR CAR***, A ***NEWLY ACQUIRED CAR***, OR A ***TEMPORARY SUBSTITUTE CAR*** WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

8. **PHYSICAL DAMAGE COVERAGES**

   a   The paragraph that reads:

   If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

   is changed to read:

   **Deductible**

   1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, ***we*** will not deduct more than $500 for any ***loss*** to a ***newly acquired car***.

   2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, ***we*** will not deduct more than $500 for any ***loss caused by collision*** to a ***newly acquired car***.

b. **Exclusions**

   The following exclusion is added:

   THERE IS NO COVERAGE FOR ANY ***COVERED VEHICLE*** WHILE IT IS USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

9. **INSURED'S DUTIES**

   a. Item 7.a.(3) is changed to read:

   An ***insured*** making claim under:

   a. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

      (3) provide written authorization for ***us*** to obtain medical bills, medical records, wage information, salary information, employment information, and any other relevant information ***we*** deem reasonably necessary to substantiate the claim.

      Such authorizations must not:

      (a) restrict ***us*** from performing ***our*** business functions in:

         (i) obtaining relevant and reasonably necessary records, bills, information, and data; nor

         (ii) using or retaining relevant and reasonably necessary records, bills, information, and data collected or received by ***us***;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000348

(b) require **us** to violate federal or state laws or regulations;

(c) prevent **us** from fulfilling **our** data reporting and data retention obligations to insurance regulators; or

(d) prevent **us** from disclosing claim information and data:

    (i) to enable performance of **our** business functions;

    (ii) to meet **our** reporting obligations to insurance regulators;

    (iii) to meet **our** reporting obligations to insurance data consolidators; and

    (iv) as otherwise permitted by law.

If an injured **insured** is a minor, unable to act, or dead, then his or her legal representative must provide **us** with the written authorization.

If the holder of the information refuses to provide it to **us** despite the authorization, then at **our** request the **person** making claim or his or her legal representative must obtain the information and promptly provide it to **us**; and

b. The following is added to item 7.:

An **insured** making claim under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must submit to **us** all information **we** need to comply with federal and state laws and regulations.

10. **GENERAL TERMS**

a. The following is added to **Limited Coverage in Mexico**:

**Uninsured Motor Vehicle Coverage (Stacking and Non-Stacking)**

b. Under **Limited Coverage in Mexico**, **Legal Action Against Us** is changed to read:

Any legal action against **us** arising out of an accident or **loss** occurring in the country of Mexico must be brought in a Florida state court in the United States of America, or a United States of America District Court that has jurisdiction.

c. The provision entitled **Persons Acting On Our Behalf** is deleted in its entirety.

d. The following is added to **Newly Owned or Newly Leased Car**:

If a **resident relative** wants to insure a **car** newly **owned by** the **resident relative** with the **State Farm Companies** after that **car** ceases to be a **newly acquired car**, then the **resident relative** must apply to the **State Farm Companies** for a separate policy to insure the **car** newly **owned by** the **resident relative**. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

e. The following is added to **Premium**:

If due to insufficient funds, payment of premium for this policy by debit

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000349

card, credit card, electronic funds transfer, or electronic check is returned, is declined, or cannot be processed, *we* may impose an insufficient funds fee of $15 per occurrence.

f. **Return of Unearned Premium** is changed to read:

(1) If *you* cancel this policy:

(a) then premium will be earned on a pro rata basis. *We* may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed or electronically transferred to *you* within 30 days after the effective date of the policy cancellation, or 30 days after *we* receive *your* request to cancel this policy, whichever is later. Delay in the return of unearned premium does not affect the cancellation;

(b) *you* may elect to apply the unearned portion of any premium paid to unpaid balances of other policies with the **State Farm Companies**.

(2) If *we* cancel this policy:

(a) then premium will be earned on a pro rata basis. Any unearned premium will be mailed or electronically transferred at the time we cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation;

(b) *you* may elect to apply the unearned portion of any

premium paid to unpaid balances of other policies with the **State Farm Companies**.

g. The following are added to **GENERAL TERMS**:

**Electronic Delivery**

With *your* consent, *we* may, if allowed by law, electronically deliver any document or notice, including a notice to renew, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice. This provision does not apply to any notice to nonrenew or cancel.

**Our Rights Regarding Claim Information**

a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b. Subject to a. above, *we* will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, relevant data, and any other reasonable information to process the claim;

(2) using any of the items described in item b.(1) above; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
6128S.1

SF-Sasson, Assaf - 000350

(3) retaining:

    (a) any of the items in item b.(1) above; or

    (b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c. *We* may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

(1) to enable performance of *our* business functions;

(2) to meet *our* reporting obligations to insurance regulators;

(3) to meet *our* reporting obligations to insurance data consolidators;

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. *Our* rights under a., b., and c. above shall not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
6128S.1

SF-Sasson, Assaf - 000351

# STUTTGART INTERNATIONAL

|  | Workfile ID: | 30916eef |
|---|---|---|
|  | PartsShare: | 6NnkvH |

Stuttgart International Auto Body Collision
1055 NW 51ST CT, FORT LAUDERDALE, FL 33309
Phone: (954) 563-5011
FAX: (954) 351-0911

### Preliminary Estimate

---

**Customer: Sasson, Ada**                                                                                      **Job Number:**

Written By: Daniel Pagan

Insured:        Sasson, Ada              Policy #:                          Claim #:
Type of Loss:                            Date of Loss:                      Days to Repair:   0
Point of Impact:

**Owner:**                               **Inspection Location:**            **Insurance Company:**
Sasson, Ada                              STUTTGART INTERNATIONAL
(786) 586-2101 Business                  1055 NW 51ST CT
                                         FORT LAUDERDALE, FL 33309
                                         Repair Facility
                                         (954) 563-5011 Business

---

## VEHICLE

2022 PORS Taycan RWD 4D SED Electric- Electric

VIN:    WP0AA2Y11NSA13378        Interior Color:              Mileage In:              Vehicle Out:
License:                         Exterior Color:              Mileage Out:
State:                           Production Date:             Condition:               Job #:

---

| **TRANSMISSION** | **CONVENIENCE** | AM Radio | **SEATS** |
|---|---|---|---|
| Automatic Transmission | Air Conditioning | FM Radio | Bucket Seats |
| **POWER** | Intermittent Wipers | Stereo | Leather Seats |
| Power Steering | Tilt Wheel | Search/Seek | Heated Seats |
| Power Brakes | Cruise Control | Auxiliary Audio Connection | **WHEELS** |
| Power Windows | Rear Defogger | Satellite Radio | Aluminum/Alloy Wheels |
| Power Locks | Keyless Entry | **SAFETY** | **PAINT** |
| Power Mirrors | Message Center | Drivers Side Air Bag | Three Stage Paint |
| Heated Mirrors | Steering Wheel Touch Controls | Passenger Air Bag | Stone Guard |
| Power Driver Seat | Telescopic Wheel | Anti-Lock Brakes (4) | **OTHER** |
| Power Passenger Seat | Climate Control | 4 Wheel Disc Brakes | Traction Control |
| **DECOR** | Navigation System | Front Side Impact Air Bags | Stability Control |
| Dual Mirrors | Backup Camera | Head/Curtain Air Bags | Rear Spoiler |
| Tinted Glass | Parking Sensors | Hands Free Device | Xenon or L.E.D. Headlamps |
| Console/Storage | Home Link | Rear Side Impact Air Bags | Power Trunk/Liftgate |
| Overhead Console | **RADIO** | Lane Departure Warning |  |

**Preliminary Estimate**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Customer: Sasson, Ada** | | | | | | **Job Number:** | |

2022 PORS Taycan RWD 4D SED Electric- Electric

| Line | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|---|---|---|---|---|---|---|---|
| 1 | # | PARTS PRICES ARE SUBJECT TO CHANGE | | 1 | | | |
| 2 | # | POSSIBLE HIDDEN DAMAGES | | 1 | | | |
| 3 | **FRONT BUMPER & GRILLE** | | | | | | |
| 4 | | O/H front bumper | | | | 3.2 | |
| 5 | Repl | Bumper cover w/auto park | 9J1807013AY | 1 | 1,116.91 | Incl. | 3.0 |
| 6 | | Add for Three Stage | | | | | 2.1 |
| 7 | | Add for camera | | | | m | 0.2 M |
| 8 | Repl | Spoiler | 9J1805410K1 | 1 | 350.72 | Incl. | |
| 9 | Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | |
| 10 | Repl | LT Side bracket | 9J1807227B | 1 | 30.75 | 0.2 | |
| 11 | Repl | Center cover w/o adaptive cruise, w/o night vision | 9J1807823OK1 | 1 | 48.75 | 0.2 | |
| 12 | Repl | LT Corner trim | 9J1807833OK1 | 1 | 48.75 | Incl. | |
| 13 | Repl | LT Front bracket | 9J1807347AOK1 | 1 | 53.62 | 0.2 | |
| 14 | Repl | LT Outer grille | 9J1807681OK1 | 1 | 53.63 | Incl. | |
| 15 | Repl | LT Air duct Turbo, Turbo S | 9J1807014Y | 1 | 56.88 | | |
| 16 | R&I | LT Air inlet screen | | | | 0.2 | |
| 17 | R&I | RT Air inlet screen | | | | 0.2 | |
| 18 | * | R&I | Park sensor outer w/auto park | | | m | Incl. M |
| 19 | * | R&I | Park sensor inner w/auto park | | | m | Incl. M |
| 20 | Refn | Park sensor outer w/auto park | | | | m | 0.2 |
| 21 | | Add for Three Stage | | | | | 0.1 |
| 22 | Refn | Park sensor inner w/auto park | | | | m | 0.2 |
| 23 | | Add for Three Stage | | | | | 0.1 |
| 24 | **FRONT LAMPS** | | | | | | |
| 25 | Repl | LT Turn signal lamp | 9J1945061D | 1 | 74.05 | 0.2 | |
| 26 | R&I | RT Turn signal lamp | | | | 0.2 | |
| 27 | R&I | LT R&I headlamp assy | | | | 0.4 | |
| 28 | **HOOD** | | | | | | |
| 29 | R&I | Emblem | | | | 0.2 | |
| 30 | Repl | Emblem packing | 9P1853611 | 1 | 10.98 | | |
| 31 | **FENDER** | | | | | | |
| 32 | Repl | LT Fender w/o Turbo S | 9J1821101YGRV | 1 | 684.11 | 2.6 | 2.2 |
| 33 | | Add for Three Stage | | | | | 1.5 |
| 34 | Repl | LT Fender liner upper w/o Turbo S | 9J1810907D | 1 | 277.01 | Incl. | |
| 35 | R&I | LT Trim | | | | Incl. | |
| 36 | * | R&I | LT Charging port | | | m | 0.6 M |
| 37 | R&I | LT Charging port cover | | | | 0.2 | |
| 38 | Refn | LT Charging port cover | | | | | 0.8 |
| 39 | | Overlap Minor Panel | | | | | -0.2 |
| 40 | | Add for Three Stage | | | | | 0.2 |

**Preliminary Estimate**

**Customer: Sasson, Ada**                                                                                           **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 41 | **ELECTRICAL** | | | | | | |
| 42 | * | R&I | Battery D&R | | m | 0.4 M | |
| 43 | **WHEELS** | | | | | | |
| 44 | | R&I | LT/Front R&I wheel | | m | 0.1 M | |
| 45 | | R&I | RT/Front R&I wheel | | m | 0.1 M | |
| 46 | **RESTRAINT SYSTEMS** | | | | | | |
| 47 | | R&I | LT Ft impact sensor | | m | 0.2 M | |
| 48 | **FRONT DOOR** | | | | | | |
| 49 | | Blnd | LT Door shell | | | | 1.8 |
| 50 | | R&I | LT Belt molding matte black | | | 0.8 | |
| 51 | | R&I | LT R&I mirror | | | 0.5 | |
| 52 | | R&I | LT Handle, outside | | | 0.5 | |
| 53 | | R&I | LT R&I trim panel | | | 0.8 | |
| 54 | **VEHICLE DIAGNOSTICS** | | | | | | |
| 55 | * | | Pre-repair scan | 1 | m | 1.0 M | |
| 56 | * | | Post-repair scan | 1 | m | 1.0 M | |
| 57 | **MISCELLANEOUS OPERATIONS** | | | | | | |
| 58 | | Repl | Cover car/bag | 1 | | 0.2 | |
| 59 | # | | Prep & Seal Raw Bumper Cover | 1 | | | 1.0 |
| 60 | # | | Tint Color & Letdown Panel | 1 | | | 1.0 |
| 61 | # | | Sand & Buff | 1 | | | 5.0 |
| 62 | # | | Flex Additive | 1 | 10.00 | | |
| 63 | | | OTHER CHARGES | | | | |
| 64 | # | | E.P.C. | 1 | 5.00 | | |
| | | | **SUBTOTALS** | **3,066.50** | | **14.4** | **19.0** |

## ESTIMATE TOTALS

| Category | Basis | | Rate | Cost $ |
|---|---|---|---|---|
| Parts | | | | 3,061.50 |
| Body Labor | 10.8 hrs | @ | $ 105.00 /hr | 1,134.00 |
| Paint Labor | 19.0 hrs | @ | $ 105.00 /hr | 1,995.00 |
| Mechanical Labor | 3.6 hrs | @ | $ 249.00 /hr | 896.40 |
| Paint Supplies | 19.0 hrs | @ | $ 38.00 /hr | 722.00 |
| Other Charges | | | | 5.00 |
| Subtotal | | | | 7,813.90 |
| Sales Tax | $ 7,813.90 | @ | 7.0000 % | 546.97 |
| **Grand Total** | | | | **8,360.87** |
| Deductible | | | | 0.00 |
| **CUSTOMER PAY** | | | | **0.00** |
| **INSURANCE PAY** | | | | **8,360.87** |

**Preliminary Estimate**

**Customer: Sasson, Ada**                                                          **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE(FLORIDA STATUTES TITLE XLVI, CHAPTER 817.234). FAILURE TO USE THE INSURANCE PROCEEDS IN ACCORDANCE WITH THE SECURITY AGREEMENT,IF ANY, COULD BE A VIOLATION OF S. 812.014, FLORIDA STATUTES. IF YOU HAVE ANY QUESTIONS, CONTACT YOUR LENDING INSTITUTION. IF A CHARGE FOR SHOP SUPPLIES OR HAZARDOUS OR OTHER WASTE REMOVAL IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: "THIS CHARGE REPRESENTS COSTS AND PROFITS TO THE MOTOR VEHICLE REPAIR FACILITY FOR MISCELLANEOUS SHOP SUPPLIES OR WASTE DISPOSAL." IF A CHARGE FOR NEW TIRES OR A NEW OR REMANUFACTURED LEAD-ACID BATTERY IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: A $1.00 FEE FOR EACH NEW MOTOR VEHICLE TIRE SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW MOTOR VEHICLE TIRES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX CHAPTER 403.718. A $1.50 FEE FOR EACH NEW OR REMANUFACTURED LEAD-ACID BATTERY SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW OR REMANUFACTURED LEAD-ACID BATTERIES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX 403.7185.

**Preliminary Estimate**

---

**Customer: Sasson, Ada**                                                                              **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

---

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data.  Unless otherwise noted, (a) all items are derived from the Guide ERQ6965, CCC Data Date 05/16/2022, and potentially other third party sources of data; and (b) the parts presented are OEM-parts.  OEM parts are manufactured by or for the vehicle's Original Equipment Manufacturer (OEM) according to OEM's specifications for U.S. distribution.  OEM parts are available at OE/Vehicle dealerships or the specified supplier.  OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships with discounted pricing.    Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may have been modified or may have come from an alternate data source.  Tilde sign (~) items indicate MOTOR Not-Included Labor operations.  The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate. Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM,  A/M or NAGS.  Used parts are described as LKQ, RCY, or USED.  Reconditioned parts are described as Recond.  Recored parts are described as Recore.  NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications.  Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times.  NAGS labor operation times are not included.  Pound sign (#) items indicate manual entries.

Some 2022 vehicles contain minor changes from the previous year.  For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used.  The CCC ONE estimator has a list of applicable vehicles.  Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component.  s=MOTOR Structural component.  T=Miscellaneous Taxed charge category.  X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category.  E=Electrical labor category.  F=Frame labor category.  G=Glass labor category.  M=Mechanical labor category.  S=Structural labor category.  (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent.  Algn.=Align.  ALU=Aluminum.  A/M=Aftermarket part.  Blnd=Blend.  BOR=Boron steel.  CAPA=Certified Automotive Parts Association.  D&R=Disconnect and Reconnect.  HSS=High Strength Steel.  HYD=Hydroformed Steel.  Incl.=Included.  LKQ=Like Kind and Quality.  LT=Left.  MAG=Magnesium.   Non-Adj.=Non Adjacent.  NSF=NSF International Certified Part.  O/H=Overhaul.  Qty=Quantity.  Refn=Refinish.  Repl=Replace.  R&I=Remove and Install.  R&R=Remove and Replace.  Rpr=Repair.  RT=Right.  SAS=Sandwiched Steel.  Sect=Section.  Subl=Sublet.  UHS=Ultra High Strength Steel.  N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Intelligent Services Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair.  EPA=Environmental Protection Agency.  NHTSA= National Highway Transportation and Safety Administration.  PDR=Paintless Dent Repair.  VIN=Vehicle Identification Number.

# STUTTGART INTERNATIONAL

Stuttgart International Auto Body Collision
1055 NW 51ST CT, FORT LAUDERDALE, FL 33309
Phone: (954) 563-5011
FAX: (954) 351-0911

| | |
|---|---|
| Workfile ID: | 30916eef |
| PartsShare: | 6NnkvH |

## Preliminary Estimate

**Customer: Sasson, Ada**

**Job Number:**

Written By: Daniel Pagan

| | | | | | |
|---|---|---|---|---|---|
| Insured: | Sasson, Ada | Policy #: | HAT # 4329 | Claim #: | HAT # 4329 |
| Type of Loss: | | Date of Loss: | | Days to Repair: | 0 |
| Point of Impact: | | | | | |

**Owner:**
Sasson, Ada
(786) 586-2101 Business

**Inspection Location:**
STUTTGART INTERNATIONAL
1055 NW 51ST CT
FORT LAUDERDALE, FL 33309
Repair Facility
(954) 563-5011 Business

**Insurance Company:**

*Final Amount*

## VEHICLE

2022 PORS Taycan RWD 4D SED Electric- Electric

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| VIN: | WP0AA2Y11NSA13378 | Interior Color: | | Mileage In: | | Vehicle Out: | |
| License: | | Exterior Color: | | Mileage Out: | | | |
| State: | | Production Date: | | Condition: | | Job #: | |

| TRANSMISSION | CONVENIENCE | | SEATS |
|---|---|---|---|
| Automatic Transmission | Air Conditioning | AM Radio | Bucket Seats |
| **POWER** | Intermittent Wipers | FM Radio | Leather Seats |
| Power Steering | Tilt Wheel | Stereo | Heated Seats |
| Power Brakes | Cruise Control | Search/Seek | **WHEELS** |
| Power Windows | Rear Defogger | Auxiliary Audio Connection | Aluminum/Alloy Wheels |
| Power Locks | Keyless Entry | Satellite Radio | **PAINT** |
| Power Mirrors | Message Center | **SAFETY** | Three Stage Paint |
| Heated Mirrors | Steering Wheel Touch Controls | Drivers Side Air Bag | Stone Guard |
| Power Driver Seat | Telescopic Wheel | Passenger Air Bag | **OTHER** |
| Power Passenger Seat | Climate Control | Anti-Lock Brakes (4) | Traction Control |
| **DECOR** | Navigation System | 4 Wheel Disc Brakes | Stability Control |
| Dual Mirrors | Backup Camera | Front Side Impact Air Bags | Rear Spoiler |
| Tinted Glass | Parking Sensors | Head/Curtain Air Bags | Xenon or L.E.D. Headlamps |
| Console/Storage | Home Link | Hands Free Device | Power Trunk/Liftgate |
| Overhead Console | **RADIO** | Rear Side Impact Air Bags | |
| | | Lane Departure Warning | |

**Preliminary Estimate**

---

**Customer: Sasson, Ada**

**Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

---

| Line | | Oper | Description | Part Number | Qty | Extended Price $ | Labor | | Paint |
|------|---|------|-------------|-------------|-----|------------------|-------|---|-------|
| 1 | # | | PARTS PRICES ARE SUBJECT TO CHANGE | | 1 | | | | |
| 2 | # | | POSSIBLE HIDDEN DAMAGES | | 1 | | | | |
| 3 | **FRONT BUMPER & GRILLE** | | | | | | | | |
| 4 | | | O/H front bumper | | | | 3.2 | | |
| 5 | | Repl | Bumper cover w/auto park | 9J1807013AY | 1 | 1,116.91 | Incl. | | 3.0 |
| 6 | | | Add for Three Stage | | | | | | 2.1 |
| 7 | | | Add for camera | | | | m | 0.2 M | |
| 8 | | Repl | Spoiler | 9J1805410K1 | 1 | 350.72 | Incl. | | |
| 9 | | Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | | |
| 10 | | Repl | LT Side bracket | 9J1807227B | 1 | 30.75 | 0.2 | | |
| 11 | | Repl | Center cover w/o adaptive cruise, w/o night vision | 9J1807823OK1 | 1 | 48.75 | 0.2 | | |
| 12 | | Repl | LT Corner trim | 9J1807833OK1 | 1 | 48.75 | Incl. | | |
| 13 | | Repl | LT Front bracket | 9J1807347AOK1 | 1 | 53.62 | 0.2 | | |
| 14 | | Repl | LT Outer grille | 9J1807681OK1 | 1 | 53.63 | Incl. | | |
| 15 | | Repl | LT Air duct Turbo, Turbo S | 9J1807014Y | 1 | 56.88 | | | |
| 16 | | R&I | LT Air inlet screen | | | | 0.2 | | |
| 17 | | R&I | RT Air inlet screen | | | | 0.2 | | |
| 18 | * | R&I | Park sensor outer w/auto park | | | m | Incl. M | | |
| 19 | * | R&I | Park sensor inner w/auto park | | | m | Incl. M | | |
| 20 | | Refn | Park sensor outer w/auto park | | | m | | | 0.2 |
| 21 | | | Add for Three Stage | | | | | | 0.1 |
| 22 | | Refn | Park sensor inner w/auto park | | | m | | | 0.2 |
| 23 | | | Add for Three Stage | | | | | | 0.1 |
| 24 | **FRONT LAMPS** | | | | | | | | |
| 25 | | Repl | LT Turn signal lamp | 9J1945061D | 1 | 74.05 | 0.2 | | |
| 26 | | R&I | RT Turn signal lamp | | | | 0.2 | | |
| 27 | | R&I | LT R&I headlamp assy | | | | 0.4 | | |
| 28 | **HOOD** | | | | | | | | |
| 29 | | R&I | Emblem | | | | 0.2 | | |
| 30 | | Repl | Emblem packing | 9P1853611 | 1 | 10.98 | | | |
| 31 | | Blnd | Hood | | | | | | 2.0 |
| 32 | **FENDER** | | | | | | | | |
| 33 | | Repl | LT Fender w/o Turbo S | 9J1821101YGRV | 1 | 684.11 | 2.6 | | 2.2 |
| 34 | | | Add for Three Stage | | | | | | 1.5 |
| 35 | | Repl | LT Fender liner upper w/o Turbo S | 9J1810907D | 1 | 277.01 | Incl. | | |
| 36 | | R&I | LT Trim | | | | Incl. | | |
| 37 | * | R&I | LT Charging port | | | m | 0.6 M | | |
| 38 | | R&I | LT Charging port cover | | | | 0.2 | | |
| 39 | | Refn | LT Charging port cover | | | | | | 0.8 |
| 40 | | | Overlap Minor Panel | | | | | | -0.2 |

---

**Preliminary Estimate**

**Customer: Sasson, Ada**  **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 41 | | | Add for Three Stage | | | | | | 0.2 |
| 42 | * | Repl | LT Front bracket | 9J1805373YGRV | 1 | 99.02 | | 0.1 | 0.7 |
| 43 | | | Add for Three Stage | | | | | | 0.3 |
| 44 | **ELECTRICAL** | | | | | | | | |
| 45 | * | R&I | Battery D&R | | | | m | 0.4 M | |
| 46 | **WHEELS** | | | | | | | | |
| 47 | | R&I | LT/Front R&I wheel | | | | m | 0.1 M | |
| 48 | | R&I | RT/Front R&I wheel | | | | m | 0.1 M | |
| 49 | **RESTRAINT SYSTEMS** | | | | | | | | |
| 50 | | R&I | LT Ft impact sensor | | | | m | 0.2 M | |
| 51 | **FRONT DOOR** | | | | | | | | |
| 52 | | Blnd | LT Door shell | | | | | | 1.8 |
| 53 | | R&I | LT Belt molding matte black | | | | | 0.8 | |
| 54 | | R&I | LT R&I mirror | | | | | 0.5 | |
| 55 | | R&I | LT Handle, outside | | | | | 0.5 | |
| 56 | | R&I | LT R&I trim panel | | | | | 0.8 | |
| 57 | **VEHICLE DIAGNOSTICS** | | | | | | | | |
| 58 | * | | Pre-repair scan | | 1 | | m | 1.0 M | |
| 59 | * | | Post-repair scan | | 1 | | m | 1.0 M | |
| 60 | **MISCELLANEOUS OPERATIONS** | | | | | | | | |
| 61 | | Repl | Cover car/bag | | 1 | | | 0.2 | |
| 62 | # | | Prep & Seal Raw Bumper Cover | | 1 | | | | 1.0 |
| 63 | # | | Tint Color & Letdown Panel | | 1 | | | | 1.0 |
| 64 | # | | Sand & Buff | | 1 | | | | 5.0 |
| 65 | # | | Flex Additive | | 1 | 10.00 | | | |
| 66 | | | OTHER CHARGES | | | | | | |
| 67 | # | | E.P.C. | | 1 | 5.00 | | | |
| | | | **SUBTOTALS** | | | **3,165.52** | | **14.5** | **22.0** |

**Preliminary Estimate**

**Customer: Sasson, Ada**                                                    **Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

## ESTIMATE TOTALS

| Category | Basis | | Rate | Cost $ |
|---|---|---|---|---|
| Parts | | | | 3,160.52 |
| Body Labor | 10.9 hrs | @ | $ 105.00 /hr | 1,144.50 |
| Paint Labor | 22.0 hrs | @ | $ 105.00 /hr | 2,310.00 |
| Mechanical Labor | 3.6 hrs | @ | $ 249.00 /hr | 896.40 |
| Paint Supplies | 22.0 hrs | @ | $ 38.00 /hr | 836.00 |
| Other Charges | | | | 5.00 |
| Subtotal | | | | 8,352.42 |
| Sales Tax | $ 8,352.42 | @ | 7.0000 % | 584.67 |
| **Grand Total** | | | | **8,937.09** |
| Deductible | | | | 0.00 |
| **CUSTOMER PAY** | | | | **0.00** |
| **INSURANCE PAY** | | | | **8,937.09** |

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE(FLORIDA STATUTES TITLE XLVI, CHAPTER 817.234). FAILURE TO USE THE INSURANCE PROCEEDS IN ACCORDANCE WITH THE SECURITY AGREEMENT,IF ANY, COULD BE A VIOLATION OF S. 812.014, FLORIDA STATUTES. IF YOU HAVE ANY QUESTIONS, CONTACT YOUR LENDING INSTITUTION. IF A CHARGE FOR SHOP SUPPLIES OR HAZARDOUS OR OTHER WASTE REMOVAL IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: "THIS CHARGE REPRESENTS COSTS AND PROFITS TO THE MOTOR VEHICLE REPAIR FACILITY FOR MISCELLANEOUS SHOP SUPPLIES OR WASTE DISPOSAL." IF A CHARGE FOR NEW TIRES OR A NEW OR REMANUFACTURED LEAD-ACID BATTERY IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: A $1.00 FEE FOR EACH NEW MOTOR VEHICLE TIRE SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW MOTOR VEHICLE TIRES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX CHAPTER 403.718. A $1.50 FEE FOR EACH NEW OR REMANUFACTURED LEAD-ACID BATTERY SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW OR REMANUFACTURED LEAD-ACID BATTERIES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX 403.7185.

**Preliminary Estimate**

---

**Customer: Sasson, Ada**

**Job Number:**

2022 PORS Taycan RWD 4D SED Electric- Electric

---

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data. Unless otherwise noted, (a) all items are derived from the Guide ERQ6965, CCC Data Date 06/16/2022, and potentially other third party sources of data; and (b) the parts presented are OEM parts. OEM parts are manufactured by or for the vehicle's Original Equipment Manufacturer (OEM) according to OEM's specifications for U.S. distribution. OEM parts are available at OE/Vehicle dealerships or the specified supplier. OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships with discounted pricing. Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may have been modified or may have come from an alternate data source. Tilde sign (~) items indicate MOTOR Not-Included Labor operations. The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate. Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM, A/M or NAGS. Used parts are described as LKQ, RCY, or USED. Reconditioned parts are described as Recond. Recored parts are described as Recore. NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications. Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times. NAGS labor operation times are not included. Pound sign (#) items indicate manual entries.

Some 2022 vehicles contain minor changes from the previous year. For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used. The CCC ONE estimator has a list of applicable vehicles. Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component. s=MOTOR Structural component. T=Miscellaneous Taxed charge category. X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category. E=Electrical labor category. F=Frame labor category. G=Glass labor category. M=Mechanical labor category. S=Structural labor category. (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent. Algn.=Align. ALU=Aluminum. A/M=Aftermarket part. Blnd=Blend. BOR=Boron steel. CAPA=Certified Automotive Parts Association. D&R=Disconnect and Reconnect. HSS=High Strength Steel. HYD=Hydroformed Steel. Incl.=Included. LKQ=Like Kind and Quality. LT=Left. MAG=Magnesium. Non-Adj.=Non Adjacent. NSF=NSF International Certified Part. O/H=Overhaul. Qty=Quantity. Refn=Refinish. Repl=Replace. R&I=Remove and Install. R&R=Remove and Replace. Rpr=Repair. RT=Right. SAS=Sandwiched Steel. Sect=Section. Subl=Sublet. UHS=Ultra High Strength Steel. N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Intelligent Services Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair. EPA=Environmental Protection Agency. NHTSA= National Highway Transportation and Safety Administration. PDR=Paintless Dent Repair. VIN=Vehicle Identification Number.

---

**PORSCHE**®



**Champion Porsche**
500 West Copans Road
Pompano Beach, FL 33064
(800) 940-4020 / (954) 946-4020
www.championporsche.com

****PRICE QUOTES ONLY VALID TILL END OF MONTH DATED****

(1) NO RETURNS ACCEPTED AFTER 72 HOURS.
(2) ALL SPECIAL ORDERS MUST BE PAID FOR IN ADVANCE.
(3) ALL SALES ON SPECIAL ORDERS, ELECTRICAL PARTS, AND FUEL PUMPS ARE FINAL.
(4) 20% CHARGE ON ANY RETURN.
(5) ABSOLUTELY NO REFUNDS WITHOUT THIS INVOICE.

ALL ... CT TO THE MAGNUSON-MOSS ACT AND THE MERCHANDISE PURCHASED IS UNDER LIMITED WARRANTY BY THE MANUFACTURER. THE TERMS OF THIS WARRANTY ARE AVAILABLE FOR YOUR INSPECTION.

RECEIVED BY X

PART NUMBERS WITH 5 DIGITS OR LESS ARE NOT COVERED UNDER THE ORIGINAL VEHICLE MANUFACTURERS WARRANTY

| CUST. NO. | TAX EXEMPT NUMBER | CUST. ...O. NO. | SHIP VIA | PAY | SOLD BY | INVOICE DATE | INVOICE |
|---|---|---|---|---|---|---|---|
| 1144 | 16-00-123628-26 | 29 | | PENDING  A.J. | | 06/21/22 | 661074 POW |

PAISTEMO@YAHOO.COM
954-563-5011
T#1

BILL TO:
STUTTGART INTL AUTO BODY COLL
1055 NW 51 CT
FORT LAUDERDALE, FL 33309

SHIP TO:
WP0AA2Y11NSA13378
VOR
VOR
VOR,

| QUANTITY | | PART NUMBER / DESCRIPTION | BIN | LIST | NET | AMOUNT |
|---|---|---|---|---|---|---|
| SHIP | B.O. | | | | | |
| 1 | 0 | 9J1-805-373-Y-GRV CONSOLE PRIMED | 221D2 | 99.02 | 79.27 | 79.27 |

| | |
|---|---|
| SUBTOTAL | 79.27 |
| TAX | 0.00 |
| FREIGHT | 12.28 |
| PAY THIS AMOUNT | 91.55 |

**Champion**
**Champion Porsche**
500 West Copans Road, Pompano Beach, FL 33064
(800) 940-4020 / (954) 946-4020  www.championporsche.com

11:47:18  CUSTOMER COPY

NET506

PAGE 1 OF 1



**PORSCHE**®

**Champion Porsche**

**Champion Porsche**
500 West Copans Road
Pompano Beach, FL 33064
(800) 940-4020 / (954) 946-4020
www.championporsche.com

****PRICE QUOTES ONLY VALID TILL END OF MONTH DATED****

(1) NO RETURNS ACCEPTED AFTER 72 HOURS.
(2) ALL SPECIAL ORDERS MUST BE PAID FOR IN ADVANCE.
(3) ALL SALES ON SPECIAL ORDERS, ELECTRICAL PARTS, AND FUEL PUMPS ARE FINAL.
(4) 20% CHARGE ON ANY RETURN.
(5) ABSOLUTELY NO REFUNDS WITHOUT THIS INVOICE.

ALL ............ PURCHASED IS UNDER LIMITED WARRANTY BY THE MANUFACTURER. THE TERMS OF THIS WARRANTY ARE AVAILABLE FOR YOUR INSPECTION.

RECEIVED BY X

SUBJECT TO THE MAGNUSON-MOSS ACT AND THE MERCHANDISE

PART NUMBERS WITH 5 DIGITS OR LESS ARE NOT COVERED UNDER THE ORIGINAL VEHICLE MANUFACTURERS WARRANTY

| CUST. NO. | TAX EXEMPT NUMBER | CUST. P. O. NO. | SHIP VIA | PAY | SOLD BY | INVOICE DATE | INVOICE |
|---|---|---|---|---|---|---|---|
| 1144 | 16-00-123628-26 | 4329 | | PENDING  A.J. | | 06/27/22 | 661919 POW |

PAISTEMO@YAHOO.COM
954-563-5011
T#1

**BILL TO**
STUTTGART INTL AUTO BODY COLL
1055 NW 51 CT
FORT LAUDERDALE, FL 33309

**SHIP TO**
WP0AA2Y11NSA13378

| QUANTITY | | PART NUMBER / DESCRIPTION | BIN | LIST | NET | AMOUNT |
|---|---|---|---|---|---|---|
| SHIP | B.O. | | | | | |
| 1 | 0 | 9J1-971-095-DC   WIRING SET FOR B | NEW | 245.34 | 196.39 | 196.39 |

**Champion**

**Champion Porsche**

500 West Copans Road, Pompano Beach, FL 33064
(800) 940-4020 / (954) 946-4020  www.championporsche.com

| | | |
|---|---|---|
| SUBTOTAL | | 196.39 |
| TAX | | 0.00 |
| FREIGHT | | 43.20 |
| PAY THIS AMOUNT | | 239.59 |

08:03:17   CUSTOMER COPY

NET506

PAGE 1 OF 1



**PORSCHE®** | **Champion** | **Champion Porsche**
| **Champion Porsche** | 500 West Copans Road
Pompano Beach, FL 33064
(800) 940-4020 / (954) 946-4020
www.championporsche.com



****PRICE QUOTES ONLY VALID TILL END OF MONTH DATED****

| | (1) NO RETURNS ACCEPTED AFTER 72 HOURS. |
| | (2) ALL SPECIAL ORDERS MUST BE PAID FOR IN ADVANCE. |
| | (3) ALL SALES ON SPECIAL ORDERS, ELECTRICAL PARTS, AND FUEL PUMPS ARE FINAL. |
| | (4) 20% CHARGE ON ANY RETURN. |
| | (5) ABSOLUTELY NO REFUNDS WITHOUT THIS INVOICE. |

ALL ... CT TO THE MAGNUSON-MOSS ACT AND THE MERCHANDISE
PURCHASED IS UNDER LIMITED WARRANTY BY THE MANUFACTURER. THE TERMS OF THIS WARRANTY
ARE AVAILABLE FOR YOUR INSPECTION.

RECEIVED BY X

PART NUMBERS WITH 5 DIGITS OR LESS ARE
NOT COVERED UNDER THE ORIGINAL VEHICLE
MANUFACTURERS WARRANTY

| CUST. NO. | TAX EXEMPT NUMBER | CUST. P.O. NO. | SHIP VIA | PAY | SOLD BY | INVOICE DATE | INVOICE |
|---|---|---|---|---|---|---|---|
| 1144 | 16-00-123628-26 PAISTEMO@YAHOO.COM 954-563-5011 T#1 | | ETA | PENDING A.J. | | 06/21/22 | 660235 POW |

BILL TO: STUTTGART INTL AUTO BODY COLL
1055 NW 51 CT
FORT LAUDERDALE, FL 33309

SHIP TO: WP0AA2Y11NSA13378

| SHIP | B.O. | PART NUMBER / DESCRIPTION | BIN | LIST | NET | AMOUNT |
|---|---|---|---|---|---|---|
| 1 | 0 | 9J1-807-013-AY TRIM FOR BUMPER | 719C | 1116.91 | 894.09 | 894.09 |
| 1 | 0 | 9J1-807-541--OK1 SPOILER MATT BLA | 717B | 350.72 | 280.75 | 280.75 |
| 1 | 0 | 9J1-807-227-B HOLDER FOR BUMPE | 204C1 | 30.75 | 24.62 | 24.62 |
| 1 | 0 | 9J1-807-823-P-OK1 TRIM MATT BLACK | 208B2 | 48.75 | 39.02 | 39.02 |
| 1 | 0 | 9J1-807-823-S-OK1 TRIM MATT BLACK | 215D2 | 90.98 | 72.83 | 72.83 |
| 1 | 0 | 9J1-807-833--OK1 TRIM MATT BLACK | NEW #53 | 48.75 | 39.02 | 39.02 |
| 1 | 0 | 9J1-807-347-A-OK1 BRACKET FOR HEAD | 210C6 | 53.62 | 42.92 | 42.92 |
| 1 | 0 | 9J1-807-681--OK1 GRILLE MATT BLAC | 212D2 | 53.63 | 42.93 | 42.93 |
| 1 | 0 | 9J1-807-014-Y AIR GUIDE - PART | 236A | 56.88 | 45.53 | 45.53 |
| 1 | 0 | 9J1-945-061-D SIDE MARKER LIGH | 204C5 | 74.05 | 59.28 | 59.28 |
| 1 | 0 | 9P1-853-611 DESK PAD | 154 | 10.98 | 8.79 | 8.79 |
| 1 | 0 | 9J1-821-101-Y-GRV WING PRIMED | 727C | 684.11 | 547.63 | 547.63 |
| 1 | 0 | 9J1-810-907-D WHEEL HOUSING LI | 708C1 | 277.01 | 221.75 | 221.75 |

(2)

4 more
cly

**Champion**
**Champion Porsche**
500 West Copans Road, Pompano Beach, FL 33064
(800) 940-4020 / (954) 946-4020 www.championporsche.com

| | | |
|---|---|---|
| SUBTOTAL | 2319.16 |
| TAX | 0.00 |
| FREIGHT | 0.00 |
| PAY THIS AMOUNT | 2319.16 |

11:47:30 CUSTOMER COPY

NET506

PAGE 1 OF 1

Case 0:23-cv-61594-RS Document 1-3 Entered on FLSD Docket 08/18/2023 Page 524 of 1096

| 2022 | PORSCHE | TAYCAN | # 1603 | KCYA92 |
|---|---|---|---|---|

**Rec. from Ins: $ 5,767.03**

**Due from Cust: $ 2,670.03**

**Total Repair Cost: $ 8,437.09**

NAME **ADA SASSON**

ADDRESS **3382 NE 167TH ST**

CITY **NORTH MIAMI FL 33160**

BUS PHONE
CELL: 786-586-2101

DELIVERY DATE 08/03/22
DATE IN/OUT 08/03/22

| DESCRIPTION | AMOUNT |
|---|---|
| ESTIMATE | 4879 98 |
| SUPPLEMENT 1 | 887 05 |
| DEDUCTIBLE - WAIVED | 500 00 |
| DIFFERENCE IN ESTIMATE | 2670 06 |

**STUTTGART INTERNATIONAL**
**AUTO BODY COLLISION II, INC.**

1055 NW 51 COURT
FORT LAUDERDALE FL, 33309

Tel: 954-563-5011
FAX: 954-351-0911

stuttgartintl@aol.com

FL REGISTRATION: MV 97900

| | AMOUNT |
|---|---|
| MECHANICAL LABOR | |
| LABOR OTHER MAKE | |
| OTHER SHOP | |
| OIL & GREASE | |
| SUBLET REPAIRS | |
| PARTS | |
| ACCESSORIES | |
| OTHER PARTS & ACCESSORIES | |
| SALES TAX ( .07 %) | |
| SUB TOTAL | |
| TOTAL | |

8437.09

7/7/22, 8:01 AM

Remittance Detail

**STUTTGART INTERNATIONAL AUTO BODY**
1055 NW 51ST CT
FT LAUDERDALE, FL 33309-3135
TIN:****9648

**Payer**
Payment Number: 119469702KA0701
Payment Date: 07-07-2022

## Electronic Funds Transfer Remittance Information

| Billing Ref.# | Invoice Date | Comment | Named Insured | Claim # | Contact Name | Contact Phone # | Submitted Amt. | Adjusted Amt. | Paid Amt. |
|---|---|---|---|---|---|---|---|---|---|
| 59-34T0-34F | 07-01-2022 | | ASSAF SASSON | 5934T034F | JASON CANNELL | 844-292-8615 | $5,767.03 | | $5,767.03 |
| | | | | | | | Payment Total: | | $5,767.03 |

STUTTGART INTERNATIONAL
1055 NW 51ST CT
FORT LAUDERDALE, FL 3330
(954)563-5011

## SALE

MID: 6469033
TID: 001          REF#: 00000002
DID: 0001
Batch #: 215001   RRN: 00000002
08/03/22                  15:51:52
APPR CODE: 70595D
VISA                      Chip
************2194            **/**

## AMOUNT          $1,900.00

APPROVED

SIGNATURE NOT REQUIRED

VISA CREDIT
AID: A0000000031010
TVR: 80 80 00 80 00
IAD: 06011203A02000
TSI: 68 00
ARC: 00

I AGREE TO PAY ABOVE TOTAL AMOUNT
IN ACCORDANCE WITH CARD ISSUER'S
AGREEMENT
(MERCHANT AGREEMENT IF CREDIT VOUCHER)
RETAIN THIS COPY FOR STATEMENT
VERIFICATION

Thank You
Please Come Again

MERCHANT COPY

---

STUTTGART INTERNATIONAL
1055 NW 51ST CT
FORT LAUDERDALE, FL 3330
(954)563-5011

## SALE

MID: 6469033
TID: 001          REF#: 00000003
DID: 0001
Batch #: 215001   RRN: 00000003
08/03/22                  15:53:31
APPR CODE: 13966Z
MASTERCARD                Chip
************7697            **/**

## AMOUNT          $770.06

APPROVED

SIGNATURE NOT REQUIRED

Mastercard
AID: A0000000041010
TVR: 00 00 00 80 00
IAD: 0110A040012200000000000000000000
0000FF
TSI: E8 00
ARC: 00

I AGREE TO PAY ABOVE TOTAL AMOUNT
IN ACCORDANCE WITH CARD ISSUER'S
AGREEMENT
(MERCHANT AGREEMENT IF CREDIT VOUCHER)
RETAIN THIS COPY FOR STATEMENT
VERIFICATION

Thank You
Please Come Again

MERCHANT COPY





# STATE FARM INSURANCE COMPANIES

ALL
Take this initial estimate to the repair facility of your choice.  If additional damage is found have the repair facility use the "Request Supplement" link at b2b.statefarm.com. **This is not an email address; it is the site to submit a Supplement**. All supplements must be approved by State Farm.

|  |  |
|---|---|
| Claim #: | 59-34T0-34F*1 |
| Workfile ID: | e264c7eb |
| Rate Table: | Default |

## Supplement of Record 1 Summary

Written By: JOHN HENRIQUEZ, 7/1/2022 12:23:10 PM
Claim Rep: A T1 CS Team, Prop, (844) 292-8615 x102 Business

| | | | | | | |
|---|---|---|---|---|---|---|
| Insured: | ASSAF SASSON | Owner Policy #: | | Claim #: | 59-34T0-34F*1 | |
| Type of Loss: | Collision | Date of Loss: | 05/27/2022 12:00 AM | Days to Repair: | 0 | |
| Point of Impact: | 11 Left Front | Deductible: | 500.00 | | | |

| **Owner (Insured):** | **Inspection Location:** | **Repair Facility:** |
|---|---|---|
| ASSAF SASSON | Stuttgart International Auto | Stuttgart International Auto |
| 3385 NE 167TH ST | 1055 NW 51st Ct | 1055 NW 51st Ct |
| N MIAMI BEACH, FL 33160-3849 | Fort Lauderdale, FL 33309 | Fort Lauderdale, FL 33309 |
| (786) 586-2101 Evening | Pocket Estimate | (954) 563-5011 Evening |
| (786) 586-2101 Cellular | (954) 563-5011 Evening | |

## VEHICLE

2022 PORS Taycan RWD 4D SED Electric- Electric white

| | | | | | |
|---|---|---|---|---|---|
| VIN: | WP0AA2Y11NSA13378 | Production Date: | | Interior Color: | |
| License: | kcya92 | Odometer: | 1603 | Exterior Color: | white |
| State: | FL | Condition: | | | |

| **TRANSMISSION** | **CONVENIENCE** | AM Radio | **SEATS** |
|---|---|---|---|
| Automatic Transmission | Air Conditioning | FM Radio | Bucket Seats |
| **POWER** | Intermittent Wipers | Stereo | Leather Seats |
| Power Steering | Tilt Wheel | Search/Seek | Heated Seats |
| Power Brakes | Cruise Control | Auxiliary Audio Connection | **WHEELS** |
| Power Windows | Rear Defogger | Satellite Radio | Aluminum/Alloy Wheels |
| Power Locks | Keyless Entry | **SAFETY** | **PAINT** |
| Power Mirrors | Message Center | Drivers Side Air Bag | Three Stage Paint |
| Heated Mirrors | Steering Wheel Touch Controls | Passenger Air Bag | **OTHER** |
| Power Driver Seat | Telescopic Wheel | Anti-Lock Brakes (4) | Traction Control |
| Power Passenger Seat | Climate Control | 4 Wheel Disc Brakes | Stability Control |
| **DECOR** | Navigation System | Front Side Impact Air Bags | Rear Spoiler |
| Dual Mirrors | Backup Camera | Head/Curtain Air Bags | Xenon or L.E.D. Headlamps |
| Tinted Glass | Parking Sensors | Hands Free Device | Power Trunk/Liftgate |
| Console/Storage | Home Link | Rear Side Impact Air Bags | |
| Overhead Console | **RADIO** | Lane Departure Warning | |

Claim #:      59-34T0-34F*1
Workfile ID:      e264c7eb

## Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

| Line | | Oper | Description | Part Number | Qty | Extended Price $ | Labor | | Paint |
|---|---|---|---|---|---|---|---|---|---|
| 1 | **FRONT BUMPER & GRILLE** | | | | | | | | |
| 2 | | | O/H front bumper | | | | 3.2 | | |
| 3 | <> | Repl | Bumper cover w/auto park | 9J1807013AY | 1 | 1,116.91 | Incl. | | 3.0 |
| 4 | | S01 | Add for Three Stage | | | | | | 2.1 |
| 5 | | | Add for camera | | | m | 0.2 | | |
| 6 | | Repl | Spoiler | 9J1807541OK1 | 1 | 350.72 | Incl. | | |
| 7 | | Repl | LT Side bracket | 9J1807227B | 1 | 30.75 | 0.2 | | |
| 8 | | Repl | Center cover w/o adaptive cruise, w/o night vision | 9J1807823OK1 | 1 | 48.75 | 0.2 | | |
| 9 | | Repl | LT Corner trim | 9J1807833OK1 | 1 | 48.75 | Incl. | | |
| 10 | | Repl | LT Front bracket | 9J1807347AOK1 | 1 | 53.62 | 0.2 | | |
| 11 | | Repl | LT Outer grille | 9J1807681OK1 | 1 | 53.63 | Incl. | | |
| 12 | * | S01 | Repl | LT Air inlet duct | 9J1121705AOK1 | 1 | <u>56.88</u> | 0.1 | |
| 13 | | R&I | RT Air inlet screen | 9J1121753DOK1 | | | 0.2 | | |
| 14 | | R&I | LT Air inlet screen | 9J1121754DOK1 | | | 0.2 | | |
| 15 | | Repl | Add for distance sens | | 1 | m | 0.3 | M | |
| 16 | * | R&I | Park sensor outer w/o auto park | 95B919275 | | m | <u>Incl.</u> | M | |
| 17 | * | R&I | Park sensor outer w/auto park | 95B91927500G2X | | m | <u>Incl.</u> | M | |
| 18 | * | R&I | Park sensor inner w/o auto park | 5Q0919275CG2X | | m | <u>Incl.</u> | M | |
| 19 | * | R&I | Park sensor inner w/auto park | 9Y0919275A | | m | <u>Incl.</u> | M | |
| 20 | | S01 | Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | |
| 21 | **FRONT LAMPS** | | | | | | | | |
| 22 | | S01 | R&I | RT Turn signal lamp | 9J1945062D | | | 0.2 | |
| 23 | | R&I | LT R&I headlamp assy | 9J1941077D | | | 0.4 | | |
| 24 | | Repl | LT Turn signal lamp | 9J1945061D | 1 | 74.05 | 0.2 | | |
| 25 | **HOOD** | | | | | | | | |
| 26 | | Blnd | Hood | 9J1823031AYGRV | | | | | 2.0 |
| 27 | | R&I | Emblem | 9P1853601 | | | 0.2 | | |
| 28 | | Repl | Emblem packing | 9P1853611 | 1 | 10.98 | | | |
| 29 | **FENDER** | | | | | | | | |
| 30 | | Repl | LT Fender w/o Turbo S | 9J1821101YGRV | 1 | 684.11 | 2.6 | | 2.2 |
| 31 | | | Overlap Major Non-Adj. Panel | | | | | | -0.2 |
| 32 | | S01 | Add for Three Stage | | | | | | 0.8 |
| 33 | | Repl | LT Fender liner upper w/o Turbo S | 9J1810907D | 1 | 277.01 | Incl. | | |
| 34 | * | S01 | R&I | LT Charging port | 9J1821941E | | m | <u>0.6</u> | M |
| 35 | | R&I | LT Trim | 9J1854521G2X | | | Incl. | | |
| 36 | | R&I | LT Charging port cover | 9J1821323 | | | 0.2 | | |
| 37 | | Blnd | LT Charging port cover | 9J1821323 | | | | | 0.6 |
| 38 | | S01 | Repl | LT Front bracket | 9J1805373YGRV | 1 | 99.02 | 0.1 | |
| 39 | **ELECTRICAL** | | | | | | | | |
| 40 | | R&I | Battery | PAD915105 | | m | 0.4 | M | |

Claim #: 59-34T0-34F*1
Workfile ID: e264c7eb

### Supplement of Record 1 Summary

2022 PORS Taycan RWD 4D SED Electric- Electric white

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 41 | | | Repl | High voltage system deactivate/activate | | 1 | m | 1.8 | M |
| 42 | **WHEELS** | | | | | | | | |
| 43 | | | R&I | LT/Front R&I wheel | 9J1601025C041 | | m | 0.1 | |
| 44 | | S01 | R&I | RT/Front R&I wheel | 9J1601025B041 | | m | 0.1 | |
| | | | | NOTE: bumper access | | | | | |
| 45 | **FRONT DOOR** | | | | | | | | |
| 46 | | | Blnd | LT Door shell | 9J1831051YGRV | | | | 1.8 |
| 47 | | | R&I | LT Belt molding matte black | 9J183747503C | | | 0.8 | |
| 48 | | | R&I | LT R&I mirror | 9J1857411B | | | 0.5 | |
| 49 | | | R&I | LT Handle, outside | 9J1837205YG2X | | | 0.5 | |
| 50 | | | R&I | LT R&I trim panel | 9J1867021OF5 | | | 0.8 | |
| 51 | **MISCELLANEOUS OPERATIONS** | | | | | | | | |
| 52 | # | | Rpr | Pre-repair Scan | | | | 0.5 | M |
| 53 | # | | Rpr | Post-repair Scan | | | | 0.5 | M |
| 54 | # | | Repl | Additional Cover Car | | 1 | 10.00 | 0.2 | |
| 55 | # | S01 | Repl | De-nib & Polish Material | | 1 | 25.00 | | |
| 56 | # | S01 | Rpr | De-nib & Polish | | | | 3.2 | |
| | | | | NOTE: 30% of base time , bumper 3, hood 2.8, fender 2.2 , lf door  2. charge door, total 10.6 @30% 3.2 hours. | | | | | |
| 57 | # | S01 | Rpr | Color Tint | | | | | 0.6 |
| 58 | **OTHER CHARGES** | | | | | | | | |
| 59 | # | S01 | | E.P.C. | | 1 | 5.00 | | |
| | | | | **SUBTOTALS** | | **3,190.52** | | **18.7** | **12.9** |

### ESTIMATE TOTALS

| Category | | Basis | | Rate | Cost $ |
|---|---|---|---|---|---|
| Parts | | | | | 3,185.52 |
| Body Labor | | 14.6 hrs | @ | $ 47.00 /hr | 686.20 |
| Paint Labor | | 12.9 hrs | @ | $ 47.00 /hr | 606.30 |
| Mechanical Labor | | 4.1 hrs | @ | $ 249.00 /hr | 1,020.90 |
| Paint Supplies | | 12.9 hrs | @ | $ 28.00 /hr | 361.20 |
| Other Charges | | | | | 5.00 |
| Subtotal | | | | | 5,865.12 |
| Sales Tax | Tier 1 | $ 5,000.00 | @ | 7.0000 % | 350.00 |
| Sales Tax | Tier 2 | $ 865.12 | @ | 6.0000 % | 51.91 |
| **Total Cost of Repairs** | | | | | **6,267.03** |
| Deductible | | | | | 500.00 |
| **Total Adjustments** | | | | | **500.00** |
| **Net Cost of Repairs** | | | | | **5,767.03** |

Claim #:                                    59-34T0-34F*1

Workfile ID:                                e264c7eb

**Supplement of Record 1 Summary**

2022 PORS Taycan RWD 4D SED Electric- Electric white

Register online to check the status of your claim and stay connected with State Farm®. To register, go to   http://www.statefarm.com/
and select Check the Status of a Claim.  If you are already registered, thank you!

| | |
|---|---|
| Claim #: | 59-34T0-34F*1 |
| Workfile ID: | e264c7eb |

**Supplement of Record 1 Summary**

2022 PORS Taycan RWD 4D SED Electric- Electric white

## SUPPLEMENT SUMMARY

| Line | | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|---|---|---|---|---|---|---|---|---|
| **Changed Items** | | | | | | | | |
| 12 | | Repl | LT Air inlet duct | 9J1121705AOK1 | 1 | -52.00 | -0.1 | |
| 12 | * | S01 Repl | LT Air inlet duct | 9J1121705AOK1 | 1 | 56.88 | 0.1 | |
| **Deleted Items** | | | | | | | | |
| 4 | | | Add for Clear Coat | | | | | -1.2 |
| 30 | | | Add for Clear Coat | | | | | -0.4 |
| **Added Items** | | | | | | | | |
| 4 | | S01 | Add for Three Stage | | | | | 2.1 |
| 20 | | S01 Repl | Wire harness w/o distance sensor | 9J1971095DC | 1 | 245.34 | | |
| 22 | | S01 R&I | RT Turn signal lamp | 9J1945062D | | | 0.2 | |
| 32 | | S01 | Add for Three Stage | | | | | 0.8 |
| 34 | * | S01 R&I | LT Charging port | | | | m | 0.6  M |
| 38 | | S01 Repl | LT Front bracket | 9J1805373YGRV | 1 | 99.02 | 0.1 | |
| 44 | | S01 R&I | RT/Front R&I wheel | 9J1601025B041 | | | m | 0.1 |
| | | | NOTE: bumper access | | | | | |
| 55 | # | S01 Repl | De-nib & Polish Material | | 1 | 25.00 | | |
| 56 | # | S01 Rpr | De-nib & Polish | | | | 3.2 | |
| | | | NOTE: 30% of base time , bumper 3, hood 2.8, fender 2.2 , lf door  2. charge door, total 10.6 @30% 3.2 hours. | | | | | |
| 57 | # | S01 Rpr | Color Tint | | | | | 0.6 |
| | **OTHER CHARGES** | | | | | | | |
| **Changed Items** | | | | | | | | |
| | # | Est | E.P.C. | | 1 | -3.50 | | |
| | # | S01 | E.P.C. | | 1 | 5.00 | | |
| | | | **SUBTOTALS** | | | **375.74** | **4.2** | **1.9** |

## TOTALS SUMMARY

| Category | Basis | | Rate | Cost $ |
|---|---|---|---|---|
| Parts | | | | 374.24 |
| Body Labor | 3.6 hrs | @ | $ 47.00 /hr | 169.20 |
| Paint Labor | 1.9 hrs | @ | $ 47.00 /hr | 89.30 |
| Mechanical Labor | 0.6 hrs | @ | $ 249.00 /hr | 149.40 |
| Paint Supplies | 1.9 hrs | @ | $ 28.00 /hr | 53.20 |
| Other Charges | | | | 1.50 |
| Subtotal | | | | 836.84 |
| Sales Tax | Tier 2 | $ 836.84 | @    6.0000 % | 50.21 |
| **Total Supplement Amount** | | | | **887.05** |
| **NET COST OF SUPPLEMENT** | | | | **887.05** |

Claim #: 59-34T0-34F*1
Workfile ID: e264c7eb

**Supplement of Record 1 Summary**

2022 PORS Taycan RWD 4D SED Electric- Electric white

## CUMULATIVE EFFECTS OF SUPPLEMENT(S)

| | | |
|---|---:|---|
| Estimate | 5,379.98 | JOHN HENRIQUEZ |
| Supplement S01 | 887.05 | JOHN HENRIQUEZ |

| | | |
|---|---|---:|
| **Workfile Total:** | $ | **6,267.03** |
| **TOTAL ADJUSTMENTS:** | $ | **500.00** |
| **NET COST OF REPAIRS:** | $ | **5,767.03** |

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE(FLORIDA STATUTES TITLE XLVI, CHAPTER 817.234). FAILURE TO USE THE INSURANCE PROCEEDS IN ACCORDANCE WITH THE SECURITY AGREEMENT,IF ANY, COULD BE A VIOLATION OF S. 812.014, FLORIDA STATUTES. IF YOU HAVE ANY QUESTIONS, CONTACT YOUR LENDING INSTITUTION. IF A CHARGE FOR SHOP SUPPLIES OR HAZARDOUS OR OTHER WASTE REMOVAL IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: "THIS CHARGE REPRESENTS COSTS AND PROFITS TO THE MOTOR VEHICLE REPAIR FACILITY FOR MISCELLANEOUS SHOP SUPPLIES OR WASTE DISPOSAL." IF A CHARGE FOR NEW TIRES OR A NEW OR REMANUFACTURED LEAD-ACID BATTERY IS INCLUDED ON THIS ESTIMATE, PLEASE NOTE THE FOLLOWING: A $1.00 FEE FOR EACH NEW MOTOR VEHICLE TIRE SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW MOTOR VEHICLE TIRES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX CHAPTER 403.718. A $1.50 FEE FOR EACH NEW OR REMANUFACTURED LEAD-ACID BATTERY SOLD AT RETAIL IS IMPOSED ON ANY PERSON ENGAGING IN THE BUSINESS OF MAKING RETAIL SALES OF NEW OR REMANUFACTURED LEAD-ACID BATTERIES WITHIN THE STATE OF FLORIDA. FLORIDA STATUTES TITLE XXIX 403.7185.

**Supplement of Record 1 Summary**

2022 PORS Taycan RWD 4D SED Electric- Electric white

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data.  Unless otherwise noted, (a) all items are derived from the Guide ERQ6965, CCC Data Date 06/16/2022, and potentially other third party sources of data; and (b) the parts presented are OEM-parts.  OEM parts are manufactured by or for the vehicle's Original Equipment Manufacturer (OEM) according to OEM's specifications for U.S. distribution.  OEM parts are available at OE/Vehicle dealerships or the specified supplier.  OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships with discounted pricing.   Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may have been modified or may have come from an alternate data source. Tilde sign (~) items indicate MOTOR Not-Included Labor operations.  The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate. Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM, A/M or NAGS.  Used parts are described as LKQ, RCY, or USED.  Reconditioned parts are described as Recond.  Recored parts are described as Recore.  NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications.  Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times.  NAGS labor operation times are not included.  Pound sign (#) items indicate manual entries.

Some 2022 vehicles contain minor changes from the previous year.  For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used.  The CCC ONE estimator has a list of applicable vehicles.  Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component.  s=MOTOR Structural component.  T=Miscellaneous Taxed charge category. X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category.  E=Electrical labor category.  F=Frame labor category.  G=Glass labor category. M=Mechanical labor category.  S=Structural labor category.  (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent.  Algn.=Align.  ALU=Aluminum.  A/M=Aftermarket part.  Blnd=Blend.  BOR=Boron steel. CAPA=Certified Automotive Parts Association.  D&R=Disconnect and Reconnect.  HSS=High Strength Steel. HYD=Hydroformed Steel.  Incl.=Included.  LKQ=Like Kind and Quality.  LT=Left.  MAG=Magnesium.   Non-Adj.=Non Adjacent.  NSF=NSF International Certified Part.  O/H=Overhaul.  Qty=Quantity.  Refn=Refinish.  Repl=Replace. R&I=Remove and Install.  R&R=Remove and Replace.  Rpr=Repair.  RT=Right.  SAS=Sandwiched Steel. Sect=Section.  Subl=Sublet.  UHS=Ultra High Strength Steel.  N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Intelligent Services Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair.  EPA=Environmental Protection Agency.  NHTSA= National Highway Transportation and Safety Administration.  PDR=Paintless Dent Repair.  VIN=Vehicle Identification Number.

Claim #: 59-34T0-34F*1
Workfile ID: e264c7eb

**Supplement of Record 1 Summary**

2022 PORS Taycan RWD 4D SED Electric- Electric white

# *****INSURANCE COMPANY DISCLOSURES AND CUSTOMER NOTIFICATIONS*****

**ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.**

**THE FOLLOWING DISCLOSURE APPLIES TO THOSE PARTS IDENTIFIED AS NON-OEM ON THE ESTIMATE:**

**THIS ESTIMATE HAS BEEN PREPARED BASED ON THE USE OF CRASH PARTS SUPPLIED BY A SOURCE OTHER THAN THE MANUFACTURER OF YOUR MOTOR VEHICLE. THE AFTERMARKET CRASH PARTS USED IN THE PREPARATION OF THIS ESTIMATE ARE WARRANTED BY THE MANUFACTURER OR DISTRIBUTOR OF SUCH PARTS RATHER THAN THE MANUFACTURER OF YOUR VEHICLE.**

State Farm Mutual Automobile Insurance Company
*PO Box 2358*
*Bloomington IL 61702-2358*



P-6825    A

SASSON, ASSAF & ADA L
3385 NE 167TH ST
N MIAMI BEACH FL 33160-3849

## AUTO RENEWAL

**PREMIUM PAID: $1,102.73**

DO NOT PAY.

*Your premium is billed through the State Farm Payment Plan*

State Farm Payment Plan Number: 1520065519

**Your State Farm Agent**

ANTHONY GARCIA

Office: 561-793-9822

Address: 1035 S STATE ROAD 7 STE 311
         WELLINGTON, FL 33414-6137

*If you have a new or different car, have added any drivers, or have moved, please contact your agent.*

**Thank you for choosing State Farm.**

**Policy Number: J53 4643-B02-59C**
Policy Period: August 2, 2022 to February 2, 2023

**Vehicle:**
2022 PORSCHE TAYCAN

**Principal Driver:**
ASSAF SASSON

---

IMPORTANT NOTICE- Under No-Fault Coverage, the only medical expenses we will pay are reasonable medical expenses that are payable under the Florida Motor Vehicle No-Fault Law. The most we will pay for such reasonable medical expenses is 80% of the "schedule of maximum charges" found in the Florida Motor Vehicle No-Fault Law and in the Limits section of the Florida Car Policy's No-Fault Coverage.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

Policy Number: J53 4643-B02-59C
Prepared June 10, 2022
Form 1004933

Page number 1 of 7

144211 201 11-01-2015

TP-OB

# Save up to 25% off on auto care

As a valued State Farm® customer, now it's simple to find great mechanic shops in your neighborhood and enjoy exclusive savings from Openbay of up to 25%.



**Compare estimates**


**Choose local shops**


**Schedule appointments online**



Scan to sign up and start saving.

**Learn more at Openbay.com**



## VEHICLE INFORMATION

**Review your policy information carefully.** If anything is incorrect, or if there are any changes to your vehicle information, please let us know right away.

| Vehicle Description | Vehicle Identification Number (VIN) | Who principally drives this vehicle? | How is this vehicle normally used? *National average: 12,000 miles driven annually per vehicle* |
|---|---|---|---|
| 2022 PORSCHE TAYCAN | WP0AA2Y11NSA13378 | ASSAF SASSON, a married male, who will be age 56 as of August 02, 2022. | To Work, School or Pleasure. Driven over 7,500 miles annually. |

### Other Household Vehicle(s)

Your premium may be influenced by other State Farm policies that currently insure the following vehicle(s) in your household:

2018 TESLA MODEL 3
2021 TESLA MODEL S

### Premium Adjustment

Each year, we review our medical payments and personal injury protection coverages claim experience to determine the vehicle safety discount that is applied to each make and model. In addition, we review the comprehensive, collision, bodily injury and property damage claim experience annually to determine which makes and models have earned decreases or increases from State Farm's standard rates. If any changes result from our reviews, adjustments are reflected in the rates shown on this renewal notice.

## DRIVER INFORMATION

### Assigned Driver(s)

The following driver(s) are assigned to the vehicle(s) on this policy.

| Name | Age *as of August 2, 2022* | Gender | Marital Status |
|---|---|---|---|
| ASSAF  SASSON | 56 | Male | Married |

### Other Household Driver(s)

In addition to the Principal Driver(s) and Assigned Driver(s), your premium may be influenced by the drivers shown below and other individuals permitted to drive your vehicle.  This list does not extend or expand coverage beyond that contained in this automobile policy.  The drivers listed below are the drivers reported to us that most frequently drive other vehicles in your household.

ADA L SASSON
NOA ANN SASSON



**Principal Driver & Assigned Drivers**
For each automobile, the **Principal Driver** is the individual who most frequently drives it.
Each driver is designated as an **Assigned Driver** on the household automobile that he or she most frequently drives.

Your premium may be influenced by the information shown for these drivers.

## IMPORTANT NOTICE REGARDING YOUR PREMIUM

State Farm works hard to offer you the best combination of price, service, and protection.  The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once during your policy term, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

## COVERAGE AND LIMITS *See your policy for an explanation of these coverages.*

| A | Liability | |
|---|---|---|
| | Bodily Injury 300,000/300,000 | |
| | Property Damage  100,000 | $358.80 |
| P14 | 500 Deductible No Fault | |
| | Deductible Applies to You and to | |
| | Each of Your Dependent Relatives | $91.46 |
| D | 500 Deductible Comprehensive | $254.26 |
| G | 500 Deductible Collision | $383.11 |
| H | Emergency Road Service | $0.97 |
| R1 | Car Rental & Travel Expense | |
| | 80%  Per Day, $1,000 Max | $14.13 |
| **Total Premium** | | **$1,102.73** |

If any coverage you carry is changed to give broader protection with no additional premium charge, we will give you the broader protection without issuing a new policy, starting on the date we adopt the broader protection.

**IMPORTANT INFORMATION ABOUT UNINSURED MOTOR VEHICLE COVERAGE**

Now is a good time to consider either adding Uninsured Motor Vehicle Coverage, or increasing your limits for this coverage. This coverage protects you, your resident family members and your passengers in the event of bodily injury sustained in an accident for which an unidentified, uninsured, or underinsured driver is legally liable.
You have the right to choose one of these options:
   a. select stacking coverage (U) with any available limits up to your bodily injury liability coverage limits, which means

that if more than one Uninsured Motor Vehicle Coverage applies, the limits for the applicable coverages may be added together (Stacking is not available for policies with a named insured that is not a natural person);
   b. select, at a reduced premium, non-stacking coverage (U3) with any available limits up to your bodily injury liability coverage limits, which means the Uninsured Motor Vehicle Coverage limits are not added together in most circumstances. The non-stacking coverage on this policy is not available to persons injured while occupying a motor vehicle owned by you or a resident family member which is not insured for uninsured motorist coverage by this policy; or
   c. reject this coverage entirely.
Please contact your State Farm agent if you wish to change coverage.

*(continued on next page)*



---

## COVERAGE AND LIMITS *continued*

**IMPORTANT INFORMATION ABOUT PREMIUM SAVINGS FOR NO-FAULT COVERAGE**

(Coverage P - Personal Injury Protection Insurance)
For personal injury protection insurance, the named insured may elect a deductible and to exclude coverage for loss of gross income and loss of earning capacity ("lost wages"). These elections apply to the named insured alone, or to the named insured and all dependent resident relatives. A premium reduction will result from these elections. The named insured is hereby advised not to elect the lost wage exclusion if the  named insured or dependent resident relatives are employed, since lost wages will not be payable in the event of an accident.

Please contact your agent for information about No-Fault premium savings.

## DISCOUNTS *These adjustments have already been applied to your premium.*

| | |
|---|---|
| Multicar | ✓ |
| Vehicle Safety | ✓ |
| Good Driving | ✓ |
| Homeownership | ✓ |
| **Total Discounts** | **$467.49** |

## SURCHARGES AND DISCOUNTS

**AUTOMOBILE RATING PLAN** - Applies to private passenger cars only.

**Accident-Free Discount** - Once your policy has been in force for at least three years with no chargeable accidents, you may qualify for our Accident-Free Discount. Once you qualify, this discount applies as long as there are no chargeable accidents, and may even increase over time.

**Good Driving Discount** - Newer policyholders who do not yet qualify for our Accident-Free Discount  (available after three years with no chargeable accidents) may already be receiving a Good Driving Discount. This discount continues to apply until your policy qualifies for the Accident-Free Discount as long as there are no chargeable accidents and no new drivers. If you add new drivers, they must also qualify in order for your Good Driving Discount to continue.

**Chargeable Accidents** - For new business rating, an accident is chargeable if it results in $750 or more of damage to any property. For renewal business, an accident is chargeable as of the date State Farm pays at least $750 (for accidents occurring on or after April 1, 1999) under property damage liability and collision coverages for an at-fault accident.

**Surcharges** - If there are chargeable accidents, you may lose your Good Driving Discount or Accident-Free Discount and receive accident surcharges. But if the accident is the first to become chargeable in nine years and this policy has been in force for at least that long, the Accident-Free Discount will continue and no surcharge will apply. The surcharge for each accident depends upon the number and timing of the accidents, and each accident surcharge will remain in effect up to three years.

Surcharges will be removed if the company is given satisfactory evidence that the driver involved is no longer a member of the household or will not be driving the car in the future. If that driver is insured on another State Farm policy, his or her driving record will be considered in the rating of the other policy.

These discounts and surcharges do not apply to all coverages. For complete details, see your State Farm agent.

## ADDITIONAL INFORMATION

If any information on this renewal notice is incomplete or inaccurate, or if you want to confirm the information we have in our records, please contact your agent. For additional information regarding discounts or coverages, see your State Farm agent or visit statefarm.com®.



**Buying a new car? Remember to contact your agent!**

When you buy an additional car or one that replaces a car already on your policy, you need to report the change to your agent **promptly.** Even though the dealership you purchased the car from may offer to notify your agent or insurance company, you, as the named insured, are responsible for reporting all changes to your auto policy. By contacting your agent, you can help:

- avoid any complications or lack of coverage in the event of an accident or loss,

- avoid insurance verification problems with a lienholder, the police, or the department of motor vehicles, and

- ensure that you receive any new discounts you may be entitled to.

Your current State Farm policy automatically provides certain coverages for a new or replacement car for up to a specified, limited number of days after you take possession of the car. Please refer to your policy for the number of days that applies in your state.

If you have any questions about coverage for a newly acquired car, please contact your State Farm agent.

*Disclaimer: This message is provided for informational purposes only and does not grant any insurance coverage. The terms and conditions of coverage are set forth in your State Farm Car Policy booklet, the most recently issued Declarations Page, and any applicable endorsements.*



## Information Regarding Increased Premiums Resulting From Accidents

**(Please disregard if you have not had an accident or if rated as a commercial vehicle)**

If you have been involved in an automobile accident which resulted in an accident surcharge, the amount due indicated on the enclosed statement will show the increased premium.  If any of the conditions listed below applies to your situation, the surcharge may be removed.  Pay the amount shown on the renewal notice and give us the full facts as to why the surcharge should be removed.  We will reimburse you the difference in premium for any surcharge removed.

The insured vehicle was:

a.  Lawfully parked, or

b.  Struck in the rear by another vehicle headed in the same direction, and the driver of your vehicle has not been convicted of a moving traffic violation in connection with the accident, or

c.  Hit by a "hit-and-run" driver and the accident was reported to the proper authorities within 24 hours of discovery, or

*(continued on back)*

The driver of the insured vehicle:

a.  Was reimbursed by, or on behalf of, a person responsible for the accident or has judgment against such person, or

b.  Was not convicted of a moving traffic violation in connection with the accident, but the driver of the other automobile involved in such accident was convicted of a moving traffic violation, or

c.  Was finally judged not to be liable by a court of competent jurisdiction, or

d.  Was issued a traffic citation which was dismissed, or which the prosecutor declined to prosecute, or

e.  Was not at fault and provides a written statement establishing facts demonstrating lack of fault, which are not rebutted by information in our files from which we, in good faith, determine that the insured was substantially at fault, or

f.  Is no longer a member of your household, or

g.  Will not be driving your car in the future, or

h.  Was less than 50% at fault.

State Farm Mutual Automobile Insurance Company
State Farm Fire and Casualty Company
Bloomington, IL

**6/14 (C)**                                    **153-419 FL.4**

**6/14 (C)**                                    **153-419 FL.4**

153-419 FL.4.indd   All Pages                                    6/2/14   10:02 AM



# 2021 ANNUAL REPORT
## TO STATE FARM® MUTUAL POLICYHOLDERS

State Farm is the leading Auto and Home insurer in the United States and continues to offer products, service, digital, and technology capabilities to meet customer needs. In 2021, the year leading to our 100th anniversary, we achieved record growth across product lines and built upon our financial strength that allowed us to be there for our customers when they needed us most. We look forward to our next century of success and helping more people in more ways.

The A.M. Best Co., which provides an independent opinion of an insurance company's ability to meet obligations to policyholders, continues to give State Farm Mutual its highest rating (A++).

For 100 years, we have helped people – through our service to customers, in communities around the United States, and in our efforts to improve Auto and Home safety. State Farm employees and independent contractor agents are dedicated people leading a movement to encourage and empower others to get involved and take action. Each day, through Acts of Good, we are making a meaningful difference in our world. We empower people to be good neighbors and protect what matters most.

Thank you for putting your trust in State Farm. We are honored to serve you.

Michael L. Tipsord
Chairman, President and Chief Executive Officer

### Notice of Annual Meeting

The annual meeting of State Farm Mutual Automobile Insurance Company is held each year at 10 a.m. on the second Monday of June at the Company's Corporate Headquarters, One State Farm Plaza, Bloomington, Illinois. All members may attend the annual meeting, and the first named insured has a right to vote by proxy or in person. You may receive a proxy by writing to Customer Service, One State Farm Plaza, Bloomington, Illinois 61710. Please include your State Farm Mutual Automobile Insurance Company policy number in your request. A return envelope will be provided for your convenience and proxies must be on file with the Corporate Secretary 20 days before the annual meeting. Please visit statefarm.com® for any changes to the annual meeting location, date or time.

153-9000.54

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

### Statement of Condition (In Millions of Dollars)

| Assets | 2021 | 2020 |
|---|---|---|
| Cash and Short Term Investments | $ 43 | $ 3,969 |
| Bonds | 60,753 | 58,902 |
| Unaffiliated Common & Preferred Stocks | 83,626 | 65,404 |
| Equity in Insurance Subsidiaries | 50,769 | 46,160 |
| Other Assets | 19,302 | 19,500 |
| **Total Assets** | **$214,493** | **$193,935** |
| **Liabilities** | | |
| Claims and Claim Expenses | $ 34,051 | $ 31,701 |
| Unearned Premiums | 11,458 | 12,688 |
| Other Liabilities | 25,804 | 23,494 |
| **Surplus** | | |
| Funds for Protection of State Farm Mutual Policyholders, including the Investment Fluctuation Reserve | $ 89,124 | $ 75,649 |
| Funds Assigned for Protection of Customers of Subsidiaries | 50,743 | 46,542 |
| Funds Assigned for Catastrophe Reinsurance Assumed from Affiliates | 3,313 | 3,861 |
| **Total Liabilities and Surplus** | **$214,493** | **$193,935** |

### Summary of Operating Data (In Millions of Dollars)

| | 2021 | 2020 |
|---|---|---|
| Premium Earned | $ 42,230 | $ 41,986 |
| Less: Dollars for Claims | 31,372 | 22,748 |
| Expenses for Paying Claims | 4,793 | 4,679 |
| Service and Administrative Fees | 10,265 | 10,144 |
| **Underwriting Gain or (Loss)** | **(4,200)** | **4,415** |
| Plus: Investment Gain[1] and Other Income | 3,427 | 2,659 |
| Income before Dividends and Taxes | (773) | 7,074 |
| Less: Dividends to Policyholders | 401 | 1,929 |
| Income Taxes Incurred (Recoverable) | (452) | 927 |
| **Net Income** | **$ (722)** | **$ 4,218** |

[1] Investment Gain is reported net of capital gains tax.

The financial statements of the Company are audited by an independent public accounting firm.

### Board of Directors

**Dan E. Arvizu** – Chancellor, New Mexico State University System
**Keith Block** – Former Co-CEO, Salesforce
**Charles K. Bobrinskoy** – Vice Chairman & Head of Investment Group, Ariel Investments
**James Hackett** – Former President and CEO, Ford Motor Company
**W. Steven Jones** – Professor of Organizational Behavior & Strategy, University of North Carolina
**W. H. Knight, Jr.** – Former Professor of Law & Distinguished Academic in Residence, Seattle University School of Law
**Vicki A. O'Meara** – Strategic Advisor and Former Chairman, AdSwerve
**Gary L. Perlin** – Former Chief Financial Officer, Capital One Financial Corp.
**Debra L. Reed-Klages** – Former Executive Chairman, Sempra Energy
**Pamela B. Strobel** – Former Executive Vice President & Chief Administrative Officer, Exelon Corporation
**Michael L. Tipsord** – Chairman, President & Chief Executive Officer, State Farm Mutual Automobile Insurance Company
**Steven C. Williams** – Chief Executive Officer, PepsiCo Foods North America
**Kenneth J. Worzel** – Chief Operating Officer, Nordstrom, Inc.

State Farm Mutual Automobile Insurance Company
Bloomington, IL

153-9000.54

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: COINX-22-049821

ASSAF SASSON,

     Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Defendant.

_____/

## PLAINTIFF'S MOTION TO COMPEL

COMES NOW the Plaintiff, by and through its undersigned counsel, and hereby moves to compel Defendant to respond to outstanding discovery, as follows:

1. Plaintiff served requests for production and interrogatories onto Defendant with the complaint in this action on August 18, 2022.

2. Said discovery responses were due 45 days from the date of service.

3. Defendant has not responded to Plaintiff's discovery requests to date.

4. Plaintiff is entitled to an ex-parte order compelling responses to said discovery pursuant to Local Rule 11 within 10 days.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter a order compelling Defendant to respond to said discovery, and order any other relief that this Court deems just and proper.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by email this 22nd day of December, 2022, to all registered participants of the Florida e-filing portal.

Daren Stabinski P.A.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

___/s/ *Daren Stabinski*_____
Daren Stabinski, Esq.
Fla. Bar. No. 002951

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. COINX-22-049821

ASSAF SASSON,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
Defendant.

_____/

## PLAINTIFFS' NOTICE OF SERVICE OF ANSWERS TO INTERROGATORIES

Plaintiff, ASSAF SASSON, by and through their undersigned counsel, and

pursuant to Florida Rules of Civil Procedure, hereby gives notice of service of his

answers to Defendant's first set of interrogatories.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by email

this 22nd day of December, 2022, to all registered participants of the Florida e-filing portal.

Daren Stabinski P.A.
1213 N.E. First Street
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

___/s/ *Daren Stabinski*_____
Daren Stabinski, Esq.
Fla. Bar No. 002951

## **INTERROGATORIES**

1.    Identify the names and addresses of all person who are believed or known by you, your
agents, or your attorneys to have any knowledge concerning any of the issues in this
lawsuit and specify the subject matter about which the witness has knowledge.
Answer:
   1. The Plaintiff has knowledge regarding repairs made to the subject vehicle.
   2. The Plaintiff's wife, Ada Sasson, has knowledge regarding the accident.  3385 NE
      167th Street, Miami, FL 33160.
   3. Daniel Pagan, Stuttgart International, 1055 NW 51 Ct.,Fort Lauderdale, FL 33309
   4. I assume other employees at Stuttgart actually performed the repairs but I do not know
      their names.
   5. John Henriquez , c/o Defendant, wrote the estimate for Defendant.


2.    Describe in detail and itemize the repair operations and the respective charges/amounts
for each line item for which you seek declaratory relief, including but not limited to the
following:

   a) a detailed description of each and every repair operation at issue;

   b) any and all parts at issue;

   c) the manufacturer's part number;

   d) the price of the manufacturer's part number;

   e) any adjustment made to the manufacturer's part price;

   f) the number of labor hours sought for each itemized repair operation;

   g) the type of labor hour (e.g., body, refinish, frame) for each repair operation at issue;

   h) the rate of each specific labor hour;

   i) the amount of paint and materials; and

   j) the amount of sales tax for each part or material.

   Answer:

   Plaintiff's complaint is for breach of contract, not for declaratory relief.  Notwithstanding,
   all information that Plaintiff is aware of regarding the specifics of the repair in found in
   the estimate and invoice produced in response to request for production.

131223833.1

## **VERIFICATION PAGE**

I AM AWARE THAT ANY MATERIALLY FALSE STATEMENT KNOWINGLY MADE WITH THE INTENT TO DEFRAUD OR MISLEAD SHALL SUBJECT ME TO THE PENALTY FOR PERJURY AND MAY BE CONSIDERED A FRAUD UPON THE COURT.

THE FOREGOING ANSWERS TO INTERROGATORIES ARE TRUE AND CORRECT.

_____
ASSAF SASSON

STATE OF FLORIDA
COUNTY OF _BROWARD_

THE FOREGOING INSTRUMENT was sworn to and subscribed before me this 22ᵗʰ day of _December_, 2022, by Assaf Sasson. He ☐ is personally known to me, or ☑ has produced his/her (state) _Florida_ driver's license, or _#S250-000-66-081-0_ (type of identification) as identification.

_____
Notary Public
State of: _____
My Commission

Kettely Bellzaire
Commission # HH 249385
Commission Expires 04-05-2026
Bonded Through - Cynanotary
Florida - Notary Public

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: COINX-22-049821

ASSAF SASSON,

      Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant.

_____/

## PLAINTIFF'S RESPONSE TO REQUEST FOR PRODUCTION

Plaintiff, ASSAF SASSON, by and through their undersigned counsel, and pursuant to Fla.R.Civ.P. 1.350, hereby files this response to Defendant's First Request for Production dated 11/18/2022, as follows:

1. Attached.

2. Attached.

3. Objection, overbroad, vague, irrelevant.  Without waiving objection, all documents regarding the repairs to the vehicle in our possession are being produced. Discovery regarding attorney's fees are not discoverable at this time.

4. Attached (included in #1 and #2).

5. Attached (included in #1 and #2).

6. None in our possession other than what is being produced in response to #1 and #2.

7. None in our possession other than what is being produced in response to #1 and #2.

8. Only the estimate that was written by Defendant's adjuster produced in response to #1 and #2.

9. None before.  Photos after the accident are attached

10. Attached.

11. None.

12. None in our possession other than what is being otherwise produced in response to request for production.

13. None in our possession other than what is being otherwise produced in response to request for production.

14. Unknown at this time as discovery is ongoing.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by email this 22nd day of December, 2022, to all registered participants of the Florida e-filing portal.

Daren Stabinski P.A.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

___/s/ *Daren Stabinski*_____
Daren Stabinski, Esq.
Fla. Bar. No. 002951

Case 0:23-cv-61594-RS   Document 1-3   Entered on FLSD Docket 08/18/2023   Page 552 of 1096

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

          Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant.

_____/

CASE NO: COINX-22-049821

### DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR *EX PARTE* ORDER COMPELLING RESPONSES TO DISCOVERY

Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), by and through undersigned counsel and pursuant to rule 1.380, Florida Rules of Civil Procedure, and Rule 11, Local Rules of the Seventeenth Judicial Circuit in and for Broward County, respectfully requests that the Court enter an Order compelling Assaf Sasson ("Plaintiff") to produce all documents and fully answer State Farm's November 18, 2022 Interrogatories and Requests for Production within ten (10) days of the entry of such order.  In further support, State Farm states as follows:

1.      On November 18, 2022, State Farm served Plaintiff with Interrogatories and Requests for Production.  (Attached as composite Exhibit A.)

2.      Plaintiff's responses were due on or before December 19, 2022.

3.      Plaintiff has failed to respond, has filed no motion for extension of time with this Court, and has raised no objection to the discovery.  In failing to provide any response whatsoever, Plaintiff has waived any objections to the discovery.

1

4.     Plaintiff's failure to respond to State Farm's discovery has prejudiced State Farm's ability to prepare its case and investigate the basis of Plaintiff's claims and allegations.  Moreover, the discovery deadline in this case is in forty (40) days.

5.     Local Rule number 11 provides: "When a motion to compel discovery alleges a complete failure to respond or object to discovery, and there has been no request for extension, a county judge may enter an ex parte order requiring compliance with the original discovery demand within ten (10) days of the entry of the order.  Movant shall submit the proposed order and the envelopes.  Sanctions may be imposed if discovery is not completed within ten (10) days from the date of entry of the ex parte order, necessitating a hearing on a motion to compel, or if a party fails to appear for a properly noticed hearing on a motion to compel."

6.     Because Plaintiff has failed to respond or object and has not requested an extension of time, State Farm has been left with no other choice but to seek judicial intervention compelling Plaintiff's responses.

7.     Pursuant to Rule 11, Local Rules of the Seventeenth Judicial Circuit in and for Broward County, and due to the impending discovery and pre-trial related deadlines, State Farm requests that the Court enter an *Ex Parte* Order directing Plaintiff to comply with the original discovery demand within ten (10) days.  (A proposed order is attached as Exhibit B.)

WHEREFORE, State Farm respectfully requests that the Court enter an *Ex Parte* Order compelling Plaintiff to fully respond, with ten (10) days, to State Farm's discovery, having waived all objections to the discovery, and for such other and further relief the court deems just and appropriate.

131548602.1

Dated: December 22, 2022

/s/ Johanna W. Clark
Johanna W. Clark
Florida Bar No.  196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:        (407) 648-9099
Email: jclark@carltonfields.com (*primary*)
Email: marodriguez@carltonfields.com (*primary*)
Email: dmonge@carltonfields.com (*secondary*)
Email: atokarz@carltonfields.com (*secondary*)
*Attorneys for Defendant, State Farm Mutual*
*Automobile Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 22, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

/s/ Johanna W. Clark
JOHANNA W. CLARK

3

**EXHIBIT A**

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

               Plaintiff,              CASE NO: COINX-22-049821

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

               Defendant.

_____/

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S**
**NOTICE OF SERVING FIRST SET OF INTERROGATORIES TO PLAINTIFF**

      Defendant, State Farm Mutual Automobile Insurance Company ("State Farm") by and

through its undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.340,

propounds the following Interrogatories to Plaintiff, Assaf Sasson, numbered one (1) through

two (2), to be answered fully, in writing and under oath, within thirty (30) days from the date

hereof.

Dated: November 18, 2022          Respectfully submitted,

                                    */s/ Johanna W. Clark*
                                    Johanna W. Clark
                                    Florida Bar No.  196400
                                    Christopher M. Paolini
                                    Florida Bar No.  669199
                                    CARLTON FIELDS, P.A.
                                    200 S. Orange Avenue, Suite 1000
                                    Orlando, Florida 32801
                                    Tel:   (407) 849-0300
                                    Fax:   (407) 648-9099
                                    Email: jclark@carltonfields.com (primary)
                                    Email: cpaolini@carltonfields.com (primary)
                                    Email: dmonge@carltonfields.com (secondary)
                                    Email:atokarz@carltonfields.com(secondary)
                                    *Attorneys for State Farm Mutual Automobile*
                                    *Insurance Company*

131223833.1

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on November 18, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com
*Attorneys for Plaintiff*

/s/ Johanna W. Clark
JOHANNA W. CLARK

131223833.1

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

         Plaintiff,

v.

CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

         Defendant.

_____/

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S
FIRST SET OF INTERROGATORIES PROPOUNDED TO PLAINTIFF**

Pursuant to Florida Rule of Civil Procedure 1.340, Defendant, State Farm Mutual
Automobile Insurance Company ("State Farm") requests that Plaintiff, his agents, attorneys,
representatives, and any others acting on his behalf, answer the following interrogatories in
writing and under oath within thirty (30) days after service of this request.

**DEFINITIONS AND INSTRUCTIONS**

Unless otherwise specified in these interrogatories, the following definitions apply:

The terms "you," "your" or "plaintiff" mean Assaf Sasson and all your agents, attorneys,
consultants, accountants, predecessors and successors in interest and any other individual or
entity associated or affiliated with you or purporting to act on your behalf with respect to the
matter in question.

The following interrogatories call not only for knowledge of Assaf Sasson but also for all
knowledge available to Assaf Sasson by reasonable inquiry, including inquiry of Plaintiff's
representatives, agents, accountants and bookkeepers, and, if not privileged, the Plaintiff's
attorneys.

131223833.1

Space is provided for answers to these Interrogatories. If such space is insufficient, please attach additional sheets as needed.

The singular and plural forms of any word shall be interchangeable, as shall masculine and feminine pronouns.

Connector words shall be construed conjunctively or disjunctively as necessary to bring within the scope of any request any information which might otherwise be construed to be outside the scope.

The terms "Defendant" and "State Farm" shall mean State Farm Mutual Automobile Insurance Company.

The term "document" means the original, duplicate or any copy of all written, printed, typed, recorded, graphic, electronic mail (e-mail), or photographic matter or sound reproduction including but not limited to: any and all writings, correspondence, memoranda, graphs, charts, photographs, film, estimates, receipts, invoices, contracts, ledgers, cancelled checks, books and records, internal memoranda, reports, studies, calendars, minutes, records of meetings, records of telephone conferences, computer printout of e-mails or other communications, pamphlets, training materials, accounting records (including financial as well as any inventory accounting), and notes prepared by you or others, including handwritten notes, phono-record, and/or other data compilations from which information can be obtained or translated through detection devices into reasonably useable form; it also includes any and all drafts of a document that differ in any way from a final version of a document. The word "document" is further defined to include all notes or notations on such document(s) and all exhibits or attachments or other materials affixed thereto.

The phrase "relating to," "relates to," or "related to" as used in this request is intended to and shall be interpreted to mean relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, contradicts, or is logically or factually connected with the repair charges, services, parts and materials, or any other issues described in the Plaintiff's Complaint.

The word "person" means individuals and all other entities having legal existence, including but not limited to, corporations, general partnerships, limited partnerships, professional associations, and governmental entities or governmental corporations.

The words "identify", "identity", and "identification" when used with respect to a person mean to state the full name and present or last known residence and business or permanent address of such person and, if a natural person, his/her present or last known job title, and the name and address of his/her present or last known employer.

The words "identify", "identity" and "identification" when used with respect to a document (including electronically stored information), means and includes the name and address of the custodian of the document, the location of the document, and a general description of the document, including the type of document (e.g., letter or memorandum) and, if electronically stored information the software application used to create it (e.g. MS Word or MS Excel Spreadsheet), the date, the subject matter, the name of each person who wrote, signed, initialed, dictated or otherwise participated in the preparation of the document, the name and address of each addressee (if any) and the name and address of each person who has possession, custody or control of such document. If any such document was, but is no longer in your

131223833.1

possession or subject to your control, state what disposition was made of it and the reason for its disposition.

The words "identify", "identity", and "identification" when used with respect to an act, occurrence, conversation, statement or conduct, including an alleged violation or breach (hereinafter collectively called an "act"), mean to:  (1) describe the substance of each event constituting such an act and to state the date when such act occurred; (2) identify each person participating in such act; (3) identify each person present when such act occurred; (4) state whether the occurrence of such act was recorded or described in a document; (5) state whether such document, or a copy thereof, now exists; and (6) identify the person presently having possession, custody or control of each such document.

The words "identify", "identity", and "identification" when used in reference to any other item means to provide all information about the item being identified that is available to you, including a detailed description of the item, its location, and its custodian.

The word "communication" means any contact, oral or written, formal or informal, at any time or place, under any circumstance, in any manner, whereby a statement of any nature is transmitted or transferred, including any meeting or other conversation, and shall include, without limitation, any document relating to any such contact.

Unless otherwise defined herein, each word or term shall have the meaning ascribed to it in *Webster's Ninth New Collegiate Dictionary.*

If, in response to any of the interrogatories, you claim that information is privileged, please state, with regard to each designated claim of privilege, the following:

  a) The type of privilege claimed (*e.g.* attorney/client, work product, trade secret, etc.);

131223833.1

b)  The person or persons providing the information;

c)  All recipients of the information;

d)  The date or dates of the disclosure of the information;

e)  The subject matter of, or addressed by, the information;

f)  Whether the information is contained in a document and, if so, the following:

The type of document (*e.g.* letter, or report, *etc.*);

     i.    The author or authors of the document;

    ii.    All recipients of the document;

   iii.    The date of the document; and

   iv.    The subject matter of, or addressed by, the document.

7

## **INTERROGATORIES**

1.     Identify the names and addresses of all person who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit and specify the subject matter about which the witness has knowledge.

2.     Describe in detail and itemize the repair operations and the respective charges/amounts for each line item for which you seek declaratory relief, including but not limited to the following:

a) a detailed description of each and every repair operation at issue;

b) any and all parts at issue;

c) the manufacturer's part number;

d) the price of the manufacturer's part number;

e) any adjustment made to the manufacturer's part price;

f) the number of labor hours sought for each itemized repair operation;

g) the type of labor hour (e.g., body, refinish, frame) for each repair operation at issue;

h) the rate of each specific labor hour;

i) the amount of paint and materials; and

j) the amount of sales tax for each part or material.

## <u>VERIFICATION PAGE</u>

I AM AWARE THAT ANY MATERIALLY FALSE STATEMENT KNOWINGLY MADE WITH THE INTENT TO DEFRAUD OR MISLEAD SHALL SUBJECT ME TO THE PENALTY FOR PERJURY AND MAY BE CONSIDERED A FRAUD UPON THE COURT.

THE FOREGOING ANSWERS TO INTERROGATORIES ARE TRUE AND CORRECT.

_____
ASSAF SASSON

STATE OF FLORIDA
COUNTY OF _____

THE FOREGOING INSTRUMENT was sworn to and subscribed before me this ___ day of _____, 2022, by Assaf Sasson.  He ☐ is personally known to me, or ☐ has produced his/her (state) _____ driver's license, or _____ (type of identification) as identification.

_____
Notary Public
State of: _____
My Commission Expires:_____

131223833.1

Filing # 161513005 E-Filed 11/18/2022 10:38:18 AM

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

    CASE NO: COINX-22-049821

   Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

   Defendant.

_____/

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF

Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), pursuant to Florida Rule of Civil Procedure 1.350, requests that Plaintiff, Assaf Sasson, produce the documents identified in the following request for production numbered one (1) through fourteen (14), pursuant to the Definitions and Instructions below, thirty (30) days from the date of service hereof.

## DEFINITIONS AND INSTRUCTIONS

Unless otherwise specified in these requests for production, the following definitions apply:

1.   The terms "you," "your" or "plaintiff" mean Assaf Sasson, and all persons acting on behalf of this plaintiff including all present and former, agents, representatives, or attorneys of, or consultants, or advisors to, plaintiff.

2.   The singular and plural forms of any word shall be interchangeable, as shall masculine and feminine pronouns.

3.   Connector words shall be construed conjunctively or disjunctively as necessary to bring within the scope of any request any information which might otherwise be construed to be

1

131245690.1

outside the scope.

4.      The term "person" includes any natural person, alive or deceased, and all other entities having legal existence, including but not limited to any corporation, organization, partnership, other business entity or association, and any government or governmental body, commission, department, committee, board or agency.

5.      "State Farm" means and refers to State Farm Mutual Automobile Insurance Company and its agents.

6.      Except when specified, the terms "Complaint" or "your Complaint" mean the Complaint authorized by you and filed on your behalf in the above-captioned lawsuit, including any amendments thereto.

7.      The term "writing" includes all documents, any written materials and all other media used to record or memorialize information, including but not limited to, information saved in computer memory, electronic mail, diskettes, hard drives, magnetic tape, audio tape, and video tape.

8.      The term "documents" means:

a.      all written, printed, typed, recorded or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in your actual or constructive possession, custody or control, including but not limited to, all writings, letters, correspondence, computer printout of emails or other communications, graphs, charts, photographs, films, estimates, supplements, receipts, invoices, contracts, ledgers, cancelled checks, books and records, internal memoranda, reports, studies, calendars,

minutes, records of meetings, records of telephone conferences, pamphlets, training materials, accounting records (including financial as well as any inventory accounting), appraisals, telegrams, memoranda, notes (including handwritten notes), instructions, notebooks, records, agreements, address books, microfilm, notices, releases, waivers, assignments, summaries, invoices, checks, pay stubs, payment records, bills, drafts, data sheets, data compilations, computer data sheets, computer data compilations, work papers, work sheets, calendars, statistics, tape recordings, transcripts of tape recordings, phonograph records or data compilations from which information can be obtained or translated into reasonably usable form;

b.      The original and all other copies not absolutely identical;

c.      All drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not, all exhibits, attachments, or other materials affixed thereto; and

d.      All writings.

9.      "Communication" means any contact, oral or written, formal or informal, at any time or place, under any circumstance, in any manner, whereby a statement of any nature is transmitted or transferred, including any meeting or other conversation, and shall include, without limitation, any document relating to any such contact.

10.     The phrase "relating to," relates to," or "related to" as used in this request is intended to and shall be interpreted to mean relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates,

proves, evidences, shows, refutes, disputes, rebuts, controverts, contradicts, or is logically or factually connected with the repair charges, services, parts and materials, or any other issues described in Plaintiff's Complaint.

      11.    If, in response to any of the document requests, you claim that a document or documents are privileged, please state, with regard to each designated document, the following:

          a.    The type of privilege claimed (e.g. attorney/client, work product, trade secret, etc.);

          b.    The type of document involved (e.g. letter, report, etc.);

          c.    The author or authors of the document;

          d.    All recipients of the document;

          e.    The date of the document; and

          f.    The subject matter of, or addressed by, the document.

      12.    If any requested document that at one time existed is now lost, destroyed or discarded, please identify such document and provide as much of the following information as possible:

(i)    the type of document;

(ii)    its date;

(iii)    the date or approximate date it was lost, destroyed or discarded;

(iv)    the circumstances and manner in which it was lost, destroyed or discarded;

(v)    the reason or reasons the document was lost, destroyed or discarded;

(vi)    the identity of each person who authorized or has knowledge of the circumstances surrounding the disposal of the document;

(vii)    the identity of each person who lost, discarded or destroyed the documents; and

(viii)    the identity of each person having knowledge of the contents of the documents.

131245690.1

## REQUESTS FOR PRODUCTION

1.      All documents related to your property damage claim with State Farm under claim number 59-34T0-34F for date of loss May 27, 2022.

2.      All documents related to any estimates or repair work for the subject vehicle by Stuttgart International Auto Body, or any other repairer, related to your property damage claim under claim number 59-34T0-34F or at any time.

3.      All documents related to the allegations in paragraph 23 of the Complaint that "Plaintiff demands judgment for collision damages to Plaintiff's vehicle, loss of use damages, attorney's fees, costs, and interest."

4.      All estimates related to any damage sustained by the subject vehicle related to your property damage claim with State Farm under claim number 59-34T0-34F.

5.      All receipts for any repairs performed on the subject vehicle related to your property damage claim with State Farm under claim number 59-34T0-34F.

6.      All documents related to any automobile accidents involving the subject vehicle at any time.

7.      All documents, including any estimates, invoices and/or receipts, related to any repairs for any automobile accidents involving the subject vehicle at any time.

8.      All documents evidencing any communications with State Farm regarding any damage caused to the subject vehicle between May 27, 2022 and the present date.

9.      All photographs and videos depicting the condition of the subject vehicle before and/or after the May 27, 2022 automobile accident.

5

131245690.1

10.     All documents evidencing payment made by you (or by any other person or entity on your behalf) for repairs to the subject vehicle between May 27, 2022 and the present date, including repairs that are the subject of this lawsuit.

11.     All Social media postings from Facebook, Twitter, Tumblr, Reddit, YouTube, LinkedIn, Pinterest, MySpace, Google Plus+, Instagram and any other social media sites or fora, including photos, that make reference to the damages claimed, the insurance claims made, and the litigation concerning the repair of the subject vehicle or this Action;

12.     All text messages, e-mail messages and/or other written communications referring to the repair of the subject vehicle, any claims you made arising from that damage, or this action.

13.     All receipts, evidence of payment, or any other documents related to any damages, specific or general, which you will be claiming or seeking to recover in this lawsuit.

14.     All documents you intend to use at trial.

Dated: November 18, 2022                Respectfully submitted,

                                        /s/ Johanna W. Clark
                                        Johanna W. Clark
                                        Florida Bar No.  196400
                                        Christopher M. Paolini
                                        Florida Bar No. 669199
                                        CARLTON FIELDS, P.A.
                                        200 S. Orange Avenue, Suite 1000
                                        Orlando, Florida 32801
                                        Phone:    (407) 849-0300
                                        Fax:      (407) 648-9099
                                        Email: jclark@carltonfields.com (*primary*)
                                        Email: cpaolini@carltonfields.com (*primary*)
                                        Email: dmonge@carltonfields.com (*secondary*)
                                        Email: atokarz@carltonfields.com (*secondary*)
                                        *Attorneys for Defendant, State Farm Mutual*
                                        *Automobile Insurance Company*

6

131245690.1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 18, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

/s/ Johanna W. Clark
JOHANNA W. CLARK

7

131245690.1

**EXHIBIT B**

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

CASE NO: COINX-22-049821

      Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S EX PARTE MOTION TO COMPEL DISCOVERY

THIS CAUSE having come before the Court for consideration on Defendant's Motion for *Ex Parte* Order Compelling Responses to Discovery, and the Court having reviewed the Motion, having considered Local Rule 11, and having been sufficiently advised in the premises, the Court finds as follows:

The moving party has alleged a complete failure of the opposing party to respond or object to State Farm's November 18, 2022 Interrogatories and Requests for Production, and has further alleged that the opposing party has not requested an extension of time. Pursuant to Local Rule 11, it is hereby

ORDERED that State Farm's Motion to Compel Discovery is GRANTED. Plaintiff shall comply with State Farm's discovery demand within ten (10) days of the entry of this Order, having waived all objections. Plaintiff's failure to comply with this Order may result in sanctions against Plaintiff.

DONE AND ORDERED this _____ day of _____, 2022 in Broward County, Florida.

_____
Steven P. DeLuca, County Court Judge

Copies to:
Johanna W. Clark, Esq.
Daren Stabinski, Esq.

131548872.1

Filing # 163551610 E-Filed 12/22/2022 11:33:18 AM

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

        CASE NO: COINX-22-049821

        Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF INTENT TO SERVE SUBPOENA DUCES TECUM ON NON-PARTY

        YOU ARE NOTIFIED THAT, pursuant to Rule 1.351, Florida Rules of Civil Procedure,

ten (10) days from the date of service of this Notice, if no objection is received by any party, the

undersigned will directly issue or apply to the Clerk of Court for issuance of the attached

Subpoena directed to the following, who is a non-party, to produce the items listed at the time

and place specified in the Subpoena:

**Custodian of Records**
**Copans Motor, Inc d/b/a Champion Porsche**
**Attn: Roy Diaz - Registered Agent**
**499 NW 70th Avenue, Suite 309**
**Plantation, Florida 33317**

Dated: December 22, 2022        Respectfully submitted,

        */s/ Johanna W. Clark*
        Johanna W. Clark
        Florida Bar No.  196400
        Miguel A. Rodriguez
        Florida Bar No. 1002585
        CARLTON FIELDS, P.A.
        200 S. Orange Avenue, Suite 1000
        Orlando, Florida 32801
        Phone:   (407) 849-0300
        Fax:     (407) 648-9099
        Email: jclark@carltonfields.com (*primary*)
        Email: marodriguez@carltonfields.com (*primary*)
        Email: dmonge@carltonfields.com (*secondary*)
        Email: atokarz@carltonfields.com (*secondary*)
        *Attorneys for Defendant, State Farm Mutual*
        *Automobile Insurance Company*

131549160.1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 22, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

/s/ Johanna W. Clark
JOHANNA W. CLARK

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

               Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

               Defendant.

_____/

CASE NO: COINX-22-049821

## SUBPOENA FOR PRODUCTION OF DOCUMENTS FROM
## NON-PARTY, COPANS MOTOR, INC D/B/A CHAMPION PORSCHE

### (WITHOUT DEPOSITION)

THE STATE OF FLORIDA

TO:    **Custodian of Records**
        **Copans Motor, Inc d/b/a Champion Porsche**
        **Attn: Roy Diaz - Registered Agent**
        **499 NW 70th Avenue, Suite 309**
        **Plantation, Florida 33317**

YOU ARE COMMANDED to produce by mail to the undersigned attorney, Johanna W. Clark, Esquire, of Carlton Fields, P.A., 200 South Orange Avenue, Suite 1000, Orlando, Florida 32801, on or before the **20th day of January, 2023, at 9:30 a.m.,** or to produce electronically by E-mail to Johanna W. Clark, Esquire at jclark@carltonfields.com, marodriguez@carltonfields.com; dmonge@carltonfields.com the documents described below:

### See Schedule "A"

You will not be required to surrender the original items.

You may comply with this subpoena by providing readable copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon payment, in advance, of the reasonable cost of preparation. If you mail or deliver the copies to the attorney whose name appears on this subpoena before the date indicated above, you do not have to appear in person.

You have the right to object to the production pursuant to this subpoena at any time before

the specified date of production by giving written notice to the attorney whose name appears on this subpoena.

You may be in contempt of court if you fail to:  (1) appear as specified; (2) furnish the records instead of appearing as provided above; or (3) object to this subpoena.

You can only be excused by the attorney whose name appears on this subpoena and, unless excused by that person or the Court, you shall respond to this subpoena as directed.

DATED on this _____ day of _____, 20__

_____
Johanna W. Clark, Esquire
AS OFFICER OF THE COURT
Florida Bar No.: 196400

*Issued by:*

Johanna W. Clark, Esquire
Florida Bar Number 196400
CARLTON FIELDS, P.A.
P.O. Box 1171
Orlando, Florida 32802-1171
Tel: (407) 849-0300
Fax: (407) 648-9099
jclark@carltonfields.com  (primary)
*Attorneys for State Farm Mutual Automobile Insurance Company*

---

**Notice**
**AMERICANS WITH DISABILITY ACT OF 1990**

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Johanna W. Clark at (407) 849-0300 or 1 888 849-9191; Carlton Fields, P.A., 200 South Orange Ave., Suite 1000, Orlando, FL 32801 within two (2) working days of your receipt of this subpoena; if you are hearing or voice impaired, call (800) 955-8771.**

---

2

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1.     The term "writing" includes all documents, any written materials and all other media used to record or memorialize information, including but not limited to, information saved in computer memory, electronic mail, diskettes, hard drives, magnetic tape, audio tape, and video tape.

2.     The term "documents" means:

   a.     all written, printed, typed, recorded or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in your actual or constructive possession, custody or control, including but not limited to, all writings, letters, correspondence, computer printout of emails or other communications, graphs, charts, photographs, films, estimates, supplements, receipts, invoices, contracts, ledgers, cancelled checks, books and records, internal memoranda, reports, studies, calendars, minutes, records of meetings, records of telephone conferences, pamphlets, training materials, accounting records (including financial as well as any inventory accounting),  appraisals, telegrams, memoranda, notes (including handwritten notes), instructions, notebooks, records, agreements, address books, microfilm, notices, releases, waivers, assignments, summaries, invoices, checks, pay stubs, payment records, bills, drafts, data sheets, data compilations, computer data sheets, computer data compilations, work papers, work sheets, calendars, statistics, tape recordings, transcripts of tape recordings, phonograph records or data compilations from which information can be obtained or translated into reasonably usable form;

   b.     The original and all other copies not absolutely identical;

   c.     All drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not, all exhibits, attachments, or other materials affixed thereto; and

   d.     All writings.

3.     The singular and plural forms of any word shall be interchangeable, as shall masculine and feminine pronouns.

4.     Connector words shall be construed conjunctively or disjunctively as necessary to

bring within the scope of any request any information which might otherwise be construed to be outside the scope.

5.      The term "person" includes any natural person, alive or deceased, and all other entities having legal existence, including but not limited to any corporation, organization, partnership, other business entity or association, and any government or governmental body, commission, department, committee, board or agency.

6.      "Communication" means any contact, oral or written, formal or informal, at any time or place, under any circumstance, in any manner, whereby a statement of any nature is transmitted or transferred, including any meeting or other conversation, and shall include, without limitation, any document relating to any such contact.

7.      The phrase "relating to," relates to," or "related to" as used in this request is intended to and shall be interpreted to mean relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, contradicts, or is logically or factually connected with the repair charges, services, parts and materials, or any other issues described in Plaintiff's Complaint against State Farm for repairs to **Assaf Sasson and/or Ada Sasson's 2022 Porsche Taycan RWD, VIN No. WP0AA2Y11NSA13378.**

8.      If, in response to any of the document requests, you claim that a document or documents are privileged, please state, with regard to each designated document, the following:

      a.      The type of privilege claimed (e.g. attorney/client, work product, trade secret, etc.);

      b.      The type of document involved (e.g. letter, report, etc.);

      c.      The author or authors of the document;

      d.      All recipients of the document;

e.      The date of the document; and

f.      The subject matter of, or addressed by, the document.

9.      If any requested document that at one time existed is now lost, destroyed or discarded, please identify such document and provide as much of the following information as possible:

a.      The type of document;

b.      Its date;

c.      The date or approximate date it was lost, destroyed or discarded;

d.      The circumstances and manner in which it was lost, destroyed or discarded;

e.      The reason or reasons the document was lost, destroyed, or discarded.

10.      Unless otherwise indicated in a specific request, the time period covered by these requests is from May 1, 2022 through the present.

## ITEMS TO BE PRODUCED

Complete copies of any and all records prepared and/or generated as a result of repairs to, parts, painting, auto repair and/or any other work performed on or relating to a **2022 Porsche Taycan RWD, VIN No. WP0AA2Y11NSA13378**, for or on behalf of Stuttgart International Auto Body Collision, Inc., Assaf Sasson and/or Ada Sasson. The requested records include, but are not limited to, billing records, receipt(s) for payment received, work order(s), bookkeeping or accounting records showing entry or entries for work performed or parts purchased, records showing the form of payment, return records, and any and all other records relating to said parts or work related to the subject vehicle, and includes but is not limited to the parts and services identified in **Exhibit 1**.

131550085.1

Exhibit 1



SF-Sasson, Assaf - 000265



SF-Sasson, Assaf - 000266

Case 0:23-cv-61594-RS   Document 1-3   Entered on FLSD Docket 08/18/2023   Page 584 of 1096

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

             Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

             Defendant.

_____/

CASE NO: COINX-22-049821

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S
## NOTICE OF SERVING ANSWERS
## TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), by and through the undersigned counsel, and pursuant to Rule 1.340 of the Florida Rules of Civil Procedure, hereby gives notice of serving Answers to Plaintiff's First Set of Interrogatories, served on or about August 19, 2022, and numbered one (1) through seventeen (17).

Dated: December 22, 2022

/s/ Johanna W. Clark
Johanna W. Clark
Florida Bar No. 196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:        (407) 648-9099
Email: jclark@carltonfields.com (*primary*)
Email: marodriguez@carltonfields.com (*primary*)
Email: dmonge@carltonfields.com (*secondary*)
Email: atokarz@carltonfields.com (*secondary*)
*Attorneys for Defendant, State Farm Mutual*
*Automobile Insurance Company*

1

131482878.1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 22, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

*/s/ Johanna W. Clark*
JOHANNA W. CLARK

2

131482878.1

## INTERROGATORY ANSWERS

1. What is your name, address and, if you are answering for someone else, your official position or relationship with the party to whom the interrogatories are directed?

   **ANSWER:  The answers to these interrogatories are provided by the corporate defendant, State Farm Mutual Automobile Insurance Company, together with the assistance of counsel in accordance with Florida Rule of Civil Procedure 1.340(a).**

2. Describe any and all policies of insurance which you contend cover or may cover the allegations set forth in Plaintiffs' complaint, detailing as to such policies the name of the insurer, the number of the policy, the available limits of coverage, including those contained in the policy language, and the name and address of the custodian of the policy.

   **ANSWER:  Pursuant to Florida Rule of Civil Procedure 1. 340(c), State Farm is contemporaneously producing a copy of the insurance policy at issue in this litigation.**

3. Please state with specificity any defenses to coverage that you have in this matter and identify any documents supporting your defenses to coverage.

   **ANSWER:  State Farm directs Plaintiff to its defenses and affirmative defenses filed November 14, 2022 and pursuant to Florida Rule of Civil Procedure 1.340(c), State Farm is contemporaneously producing the relevant, non-privileged portions of its claim documentation for the subject property damage claim.**

4. Please state with specificity any conditions precedent or subsequent to the Plaintiffs' claim that you contend have not been fulfilled by the Plaintiffs, if any exist.

   **ANSWER:  State Farm is not contending Plaintiff's failure to fulfill any conditions precedent or subsequent to Plaintiff's claim at this time.  However, State Farm reserves its right to amend its answer to this interrogatory as discovery is ongoing.**

5. Please state your reason(s) for your nonpayment and/or non-consideration of this claim.

   **ANSWER:  State Farm objects to this interrogatory on the grounds that that terms "nonpayment" and "non-consideration" are vague and ambiguous.**

   **Subject to and without waiving the forgoing objections, State Farm states that it issued payment for the subject automobile repair pursuant to the terms, conditions and limitations set forth in the applicable insurance policy.**

6. Please state the date that you received notice of this claim, the date that you acknowledged notice of the claim, and the date that you received notice of the incident which is the subject of this matter.

131482878.1

**ANSWER:  State Farm received notice of the claim, acknowledged notice of the claim and received notice of the incident on June 1, 2022.**

7.  State separately the facts upon which you rely on for each affirmative defense in your Answer to the Plaintiffs' Complaint.

**ANSWER: State Farm objects to this interrogatory to the extent it seeks information from State Farm related to claim handling. In this litigation, information related to claim handling is irrelevant, immaterial, and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, claim handling information is protected by the work product doctrine.  Finally, State Farm objects to the extent the interrogatory seeks information protected by the attorney client privilege.**

**Subject to and without waiving the foregoing objections, pursuant to Florida Rule of Civil Procedure 1.340(c), State Farm is contemporaneously producing the relevant, non-privileged portions of its claim documentation for the subject property damage claim, including, but not limited to, the subject policy and State Farm's estimate and supplement for the underlying claim.**

8.  Do you contend any person or entity other than you is, or may be, liable in whole or in part for the claims asserted against you in this lawsuit? If so, state the full name and address of each such person or entity, the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not you have notified each such person or entity of your contention.

**ANSWER:  State Farm maintains that it is not liable to Plaintiff under any theory of liability as State Farm has paid all amounts owed under the insurance policy for the subject vehicle repairs.  State Farm is without knowledge as to the contractual agreement between Plaintiff and the repairer he chose to perform the repairs.  To the extent Plaintiff and/or the repairer his chose authorized repair work and/or authorized charges in excess of those covered under the subject insurance policy, Plaintiff and/or the repairer are liable for those charges.**

9.  List the names, addresses and telephone numbers of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which the witness has knowledge.

**ANSWER: State Farm objects to this interrogatory to the extent it seeks information protected by the attorney client and/or work product privilege(s). State Farm further objects to this interrogatory because it seeks information from State Farm related to claim handling. In this litigation, information related to claim handling is irrelevant, immaterial, and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, claim handling information is**

4

protected by the work product privilege.  Finally, State Farm objects to the extent the interrogatory seeks information protected by the attorney client privilege.

Subject to and without waiving the foregoing objections, State Farm states that the following individuals may have knowledge regarding the issues in this litigation:

Assaf Sasson
3385 NE 167th St.
North Miami Beach, FL, 33160-3849
Has knowledge regarding the repairs and communication with State Farm.

Ada Sasson
3385 NE 167th St.
North Miami Beach, FL, 33160-3849
Has knowledge regarding the repairs and communication with State Farm.

Stuttgart International
1055 NW 51st Court
Ft. Lauderdale, FL 33309
Has knowledge regarding the repairs purportedly performed on the subject vehicle and communication with Plaintiff.

Daniel Pagan
1055 NW 51st Court
Ft. Lauderdale, FL 33309
Has knowledge regarding the Preliminary Estimate he prepared and all information provided to him as an expert witness in this matter.

Subject to and without waiving the foregoing objections, pursuant to Florida Rule of Civil Procedure 1.340(c), State Farm is contemporaneously producing the relevant, non-privileged portions of its claim documentation for the subject property damage claim, including, but not limited to correspondence between State Farm and Plaintiff and/or his representative(s).

10. State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody, or control of, any estimate of damage, model, plat, map, drawing, motion picture, video-tape, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

Assaf Sasson
3385 NE 167th St.
North Miami Beach, FL, 33160-3849
Has possession of State Farm's Preliminary Estimate and Supplement 1.

131482878.1

**Stuttgart International**
**1055 NW 51st Court**
**Ft. Lauderdale, FL 33309**
**Has possession of at least twenty-three (23) photographs of the subject vehicle,  State Farm's Preliminary Estimate and Supplement 1 and any estimates authored by Daniel Pagan or Stuttgart International.**

**Daniel Pagan**
**1055 NW 51st Court**
**Ft. Lauderdale, FL 33309**
**Has possession of at least twenty-three (23) photographs of the subject vehicle,  State Farm's Preliminary Estimate and Supplement 1 and any estimates authored by him or Stuttgart International.**

**Pursuant to Florida Rule of Civil Procedure 1.340(c), State Farm is contemporaneously producing the relevant, non-privileged portions of its claim documentation for the subject property damage claim, including, but not limited to State Farm's Preliminary Estimate and Supplement 1 and photographs received from Stuttgart.**

11. Please provide a list of the names and current addresses of any and all individuals employed by, or agents of the Defendant, who were in any way involved with the handling of this claim, for any purpose after the date of loss but prior to the institution of this litigation. Please also provide the date of inspection(s) of the property and a short statement of the person's knowledge and involvement with the claim.

    **ANSWER: State Farm objects to this interrogatory to the extent it seeks information protected by the work product privilege. State Farm further objects to this interrogatory because it seeks information from State Farm related to claim handling. In this litigation, information related to claim handling is irrelevant, immaterial, and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, claim handling information is protected by the work product privilege.**

    **Pursuant to Florida Rule of Civil Procedure 1.340(c), State Farm is contemporaneously producing the relevant, non-privileged portions of its claim documentation for the subject property damage claim.**

12. List the names, residence addresses, business addresses and telephone numbers of all persons believed or known by you, your agents, or attorneys, to have heard Plaintiffs make any statement, remark or comment concerning the incident involved herein and the substance of any such statement, remark or comment.

    **ANSWER: State Farm objects to this interrogatory to the extent it seeks information from State Farm related to claim handling. In this litigation, information related to claim handling is irrelevant, immaterial, and is not**

131482878.1

**reasonably calculated to lead to the discovery of admissible evidence. Additionally, claim handling information is protected by the work product privilege.**

13. For any and all policy defenses which you reasonably believe are available with regard to the claim made by the Plaintiffs herein: Describe in detail the factual and legal basis for any such defenses and give complete names, residence addresses, business addresses and telephone numbers of each any every person believed or known by you, your agents or attorneys, to have knowledge of the facts which would provide the basis for any such defense.

**ANSWER: State Farm objects to this interrogatory to the extent it seeks information from State Farm related to claim handling. In this litigation, information related to claim handling is irrelevant, immaterial, and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, claim handling information is protected by the work product doctrine.  Finally, State Farm objects to the extent the interrogatory seeks information protected by the attorney client privilege.**

**Subject to and without waiving the foregoing objections, pursuant to Florida Rule of Civil Procedure 1.340(c), State Farm is contemporaneously producing the relevant, non-privileged portions of its claim documentation for the subject property damage claim, including, but not limited to, the subject policy and State Farm's estimate and supplement for the underlying claim.**

**In addition, the following individuals may have knowledge of the facts which provide the basis for State Farm's defenses:**

**Assaf Sasson**
**3385 NE 167th St.**
**North Miami Beach, FL, 33160-3849**

**Stuttgart International**
**1055 NW 51st Court**
**Ft. Lauderdale, FL 33309**

**Daniel Pagan**
**1055 NW 51st Court**
**Ft. Lauderdale, FL 33309**

**State Farm reserves its right to amend its answer to this interrogatory as discovery is ongoing.**

14. Please list any amounts that Defendant has paid to Plaintiffs to date for the subject claim, and describe what each such payment was for.

7

131482878.1

**ANSWER:  Pursuant to Florida Rule of Civil Procedure 1.340(c), State Farm is contemporaneously producing the relevant, non-privileged portions of its claim documentation for the subject property damage claim, including, but not limited to, correspondence from State Farm to Plaintiff and State Farm's estimate and Supplement 1.**

15. For each denied or withheld payment of claim listed above, state in detail the legal grounds for doing so, the factual basis for doing so, and provide the exact wording of any policy provisions, or the exact wording of any statutory language or case law upon which you base your denial or withholding of payment.

    **ANSWER:  State Farm objects to this interrogatory on the grounds the phrase "For each denied or withheld payment of claim listed above" is vague and ambiguous.**

    **Subject to and without waiving the forgoing objections, State Farm did not deny Plaintiff's claim; State Farm issued payment for the subject automobile repair pursuant to the terms, conditions and limitations set forth in the applicable insurance policy.**

16. If an appraisal of the subject vehicle and/or its contents was prepared, please state the items that have been appraised, the amount that each such item was appraised for, the name and address of any person who performed or contributed to said appraisal, and the date of said appraisal.

    **ANSWER:  N/A.**

17. State the specific nature of your relationship with the insurance agent who sold Plaintiffs the subject policy of insurance at the time that the subject policy was issued. State whether said insurance agent was authorized to sell or service your policies, and if so, state the specifics of its authority.

    **ANSWER: State Farm objects to this request to the extent it seeks underwriting information on the ground that it is not relevant to any issue in the underlying claim, nor is it reasonably calculated to lead to the discovery of admissible evidence, because there is no dispute that the applicable policy was in effect on the date of loss.  In addition, State Farm objects to the extent it seeks production of documents containing proprietary, confidential, and/or trade secret information.**

131482878.1

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

                   Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                   Defendant.

_____/

CASE NO: COINX-22-049821

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S
RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**

      Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), by and

through the undersigned counsel, and pursuant to Rule 1.350 of the Florida Rules of Civil

Procedure, hereby responds to Plaintiff's First Request for Production, served on August 19,

2022, and numbered one (1) through sixteen (16) as follows:

1.  Any and all insurance policies ever issued by the Defendant to the Plaintiff, including all

    declaration pages, applications, addenda and riders.

    **RESPONSE:  State Farm objects to this request on the grounds that it is overbroad,
    unduly burdensome, seeks materials which are irrelevant, and is not reasonably
    calculated to lead to the discovery of admissible evidence.**

    **Subject to and without waiving the foregoing objections, State Farm is
    contemporaneously producing a certified copy of the subject insurance policy.**

2.  The underwriting file of the Plaintiff.

    **RESPONSE:  State Farm objects to this request to the extent it seeks production of
    underwriting information on the ground that it is not relevant to any issue in the
    underlying claim, nor is it reasonably calculated to lead to the discovery of
    admissible evidence, because there is no dispute that the applicable policy was in
    effect on the date of loss. Moreover, underwriting information is stored
    electronically in multiple locations. State Farm does not maintain a physical file
    folder with respect to most insurance policies issued.  In addition, this request has
    the potential to be unduly burdensome.**

131482161.1

3. Copies of any and all correspondence, forms, report or other documents regarding the Plaintiff's claim herein.

**RESPONSE: State Farm objects to this request on the grounds that the terms "forms, report or other documents" are vague and ambiguous. State Farm further objects that the request is overbroad, unduly burdensome, seeks materials which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence. State Farm also objects to this request to the extent it seeks information from State Farm related to claim handling. In this litigation, information related to claim handling is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, claim handling documents are protected by the work product privilege. In addition, State Farm objects to the extent it seeks production of documents containing proprietary, confidential, and/or trade secret information. Finally, State Farm objects to the extent it seeks production of information protected by the attorney client privilege, work product privilege, or both.**

**Subject to and without waiving the foregoing objections, State Farm will produce the relevant, non-privileged portions of its claim documentation for the subject property damage claim.**

4. Any and all surveillance reports, claims history reports or other investigative reports prepared by you or on your behalf with regard to the Plaintiff or Plaintiff's claim.

**RESPONSE: State Farm objects to this request on the grounds that the terms "surveillance reports, claims history reports or other investigative reports" are vague and ambiguous. State Farm further objects that the request is overbroad, unduly burdensome, seeks materials which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence. State Farm also objects to this request to the extent it seeks information from State Farm related to claim handling. In this litigation, information related to claim handling is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. In addition, claim handling documents are protected by the work product privilege. Moreover, State Farm objects to the extent it seeks production of documents containing proprietary, confidential, and/or trade secret information. Finally, State Farm objects to the extent it seeks production of information protected by the attorney client privilege, work product privilege, or both.**

5. Any and all correspondence between Defendant and/or any representative thereof and the Plaintiff or anyone acting on the Plaintiff's behalf.

**RESPONSE: State Farm is contemporaneously producing correspondence between it and Plaintiff or Plaintiff's representatives for the subject property damage claim.**

131482161.1

6. Any and all documents, papers or things given to Defendant and/or any representative thereof by the Plaintiff or the Plaintiff's agents prior to the filing of the lawsuit.

   **RESPONSE:  State Farm objects to this request on the grounds that the terms "documents, papers or things" are vague and ambiguous.**

   **Subject to and without waiving the foregoing objections, State Farm is contemporaneously producing the relevant, non-privileged portions of its claim documentation for the subject property damage claim.**

7. Any and all written or recorded statements of Plaintiff.

   **RESPONSE:  State Farm objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, seeks materials which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence.**

   **Subject to and without waiving the foregoing objections, State Farm did not take a written statement, or perform a recorded statement, of Plaintiff in this claim.**

8. Any and all written or recorded statements of the Plaintiff's agents and/or representatives.

   **RESPONSE:  State Farm objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, seeks materials which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence.**

   **Subject to and without waiving the foregoing objections, State Farm did not take a written statement, or perform a recorded statement, of Plaintiff's agents or representatives in this claim.**

9. Any and all written or recorded statements of any witness or third party with regard to the subject claim.

   **RESPONSE:  State Farm objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, seeks materials which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence.**

   **Subject to and without waiving the foregoing objections, State Farm did not take a written statement, or perform a recorded statement, of a witness or a third party in this claim.**

10. Any and all contracts, agreements and/or producing agreements as between the Defendant and the insurance agent, with regard to the sale and/or solicitation of the subject insurance.

**RESPONSE:  State Farm objects to the request on the grounds that the phrase, "the insurance agent" is vague and ambiguous.  State Farm further objects to this request as it is overbroad, unduly burdensome, seeks materials which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence. State Farm also objects to this request to the extent it seeks information from State Farm related to claim handling.  In this litigation, information related to claim handling is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.   Moreover, claim handling documents are protected by the work product privilege.  Finally, State Farm objects to the extent it seeks production of documents containing proprietary, confidential, and/or trade secret information.**

11. Any and all estimates and/or appraisal reports relating to the Plaintiffs' claims which are the subject of this litigation.

**RESPONSE:  State Farm objects to the request on the grounds that the phrase, "relating to the Plaintiffs' claims" is vague and ambiguous.  State Farm further objects to this request as it is overbroad, unduly burdensome, seeks materials which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence. State Farm also objects to this request to the extent it seeks information from State Farm related to claim handling.  In this litigation, information related to claim handling is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.   Moreover, claim handling documents are protected by the work product privilege.**

**Subject to and without waiving the foregoing objections, State Farm is contemporaneously producing the relevant, non-privileged portions of its claim documentation for the subject property damage claim, which include repair estimates for the subject vehicle.**

12. Any and all underwriting guidelines, manuals, memos, instructions or other documents delivered by the Defendant to the insurance agent related to the subject policy.

**RESPONSE:  State Farm objects to this request to the extent it seeks production of underwriting information on the ground that it is not relevant to any issue in the underlying claim, nor is it reasonably calculated to lead to the discovery of admissible evidence, because there is no dispute that the applicable policy was in effect on the date of loss. Moreover, underwriting information is stored**

4

electronically in multiple locations. **State Farm does not maintain a physical file folder with respect to most insurance policies issued. In addition, this request has the potential to be unduly burdensome.**

**State Farm also objects to this request to the extent it seeks information from State Farm related to claim handling. In this litigation, information related to claim handling is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, claim handling documents are protected by the work product privilege.**

13. Any and all photographs and/or video of the Plaintiffs' property and/or its contents.

**RESPONSE: State Farm objects to the request on the grounds that the phrase, "Plaintiffs' property and/or its contents" is vague and ambiguous. State Farm further objects to this request as it is overbroad, unduly burdensome, seeks materials which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence.**

**Subject to and without waiving the foregoing objections, State Farm is contemporaneously producing the relevant, non-privileged portions of its claim documentation for the subject property damage claim, which includes photographs of the damaged vehicle at issue in this litigation.**

14. Any and all proof of loss forms, statements, notices of claim and/or any other document submitted by the Plaintiff pertaining to his claim that is the subject of this litigation.

**RESPONSE: State Farm objects to the request on the grounds that the phrases, "proof of loss forms, statements, notices of claim" and "his claim" are vague and ambiguous. State Farm further objects to this request as it is overbroad, unduly burdensome, seeks materials which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence.**

**Subject to and without waiving the foregoing objections, State Farm is contemporaneously producing the relevant, non-privileged portions of its claim documentation for the subject property damage claim.**

15. Any appraisals, estimates or other documents pertaining to the value of Plaintiff's claim.

**RESPONSE: State Farm objects to the request on the grounds that the phrase, "other documents" is vague and ambiguous. State Farm further objects to this request as it is overbroad, unduly burdensome, seeks materials which are irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence. State Farm also objects to this request to the extent it seeks information from State Farm related to claim handling. In this litigation, information related to claim handling is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. In addition, claim handling documents are**

**protected by the work product privilege.  Moreover, State Farm objects to the extent it seeks production of documents containing proprietary, confidential, and/or trade secret information.  Finally, State Farm objects to the extent it seeks production of information protected by the attorney client privilege, work product privilege, or both.**

**Subject to and without waiving the foregoing objections, State Farm is contemporaneously producing the relevant, non-privileged portions of its claim documentation for the subject property damage claim, which includes photographs of the damaged vehicle at issue in this litigation.**

16. Defendant's entire file pertaining to the claim made by Plaintiffs.

**RESPONSE:  State Farm objects that the term "file" is vague, ambiguous and overbroad to the extent it assumes that only a physical file exists for the claims at issue in this litigation.  State Farm does not maintain a physical file folder with respect to the property damage claim at issue in this litigation.  To the extent the request seeks production of information which is not contained in a physical file, electronic information regarding the claim is stored in the Enterprise Claim System ("ECS"), a web based system that State Farm associates use during the claim handling process.  State Farm further objects to this request to the extent that it seeks the production of documents protected by the attorney-client privilege, work product privilege, or both.**

**In addition, State Farm objects to this request to the extent it seeks information from State Farm related to claim handling.  In this litigation, information related to claim handling is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, claim handling documents are protected by the work product privilege.**

**Subject to and without waiving the foregoing objections, State Farm is contemporaneously producing the relevant, non-privileged portions of its claim documentation for the subject property damage claim.**

Dated: December 22, 2022        Respectfully submitted,

                                   */s/ Johanna W. Clark*

Johanna W. Clark
Florida Bar No.  196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:   (407) 849-0300
Fax:      (407) 648-9099

Email: jclark@carltonfields.com (*primary*)
Email: marodriguez@carltonfields.com (*primary*)
Email: dmonge@carltonfields.com (*secondary*)
Email: atokarz@carltonfields.com *(secondary)*
*Attorneys for Defendant, State Farm Mutual*
*Automobile Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 22, 2022, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

/s/ Johanna W. Clark
JOHANNA W. CLARK

7

Filing # 165046718 E-Filed 01/19/2023 01:27:43 PM

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

CASE NO: COINX-22-049821

          Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant.

_____/

### DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S EXPERT INTERROGATORIES

       Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), pursuant to Florida Rule of Civil Procedure 1.090, requests the Court enter an Order enlarging the time for State Frm to answer, object or otherwise respond to Plaintiff's Expert Interrogatories, and in support states as follows:

       1.     On or about December 20, 2022, Plaintiff served State Farm with Plaintiff's Expert Interrogatories.

       2.     State Farm has been working on preparing its answers to Plaintiff's Expert Interrogatories are due January 19, 2023.

       3.     However, due to the undersigned's press of other work as well as State Farm's expert's work schedule, State Farm respectfully requests the Court enter an order extending the time for State Farm to respond to Plaintiff's Expert Interrogatories.

       4.     This motion is being made in good faith and not to delay the orderly progress of this case.

131778870.1

WHEREFORE, Defendant, State Farm Mutual Automobile Insurance Company, respectfully requests the Court enlarge the time for Plaintiff's Expert Interrogatories, and grant State Farm any other relief this Court deems fair and equitable.

Dated: January 19, 2023

Respectfully submitted,

/s/ Johanna W. Clark
Johanna W. Clark [
Florida Bar No.  196400
Christopher M. Paolini
Florida Bar No. 669199
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:       (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: cpaolini@carltonfields.com (primary)
Email: atokarz@carltonfields.com (secondary)
Email: dmonge@carltonfields.com (secondary)
*Attorneys for Defendant, State Farm Mutual Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 19, 2023, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

/s/ Johanna W. Clark
Johanna W. Clark

131778870.1

Filing # 165557904 E-Filed 01/26/2023 04:12:47 PM

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

                Plaintiff,

v.

CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Defendant.

_____/

## JOINT MOTION TO AMEND CASE MANAGEMENT ORDER

Plaintiff, Assaf Sasson, and Defendant, State Farm Mutual Automobile Insurance Company, by and through the undersigned counsel, hereby files its Motion to Amend the Court's November 2, 2022 Case Management Order (the "Order") for the reasons set forth below.

1.      Plaintiff served this breach of contract action on State Farm on August 19, 2022.

2.      Plaintiff alleges that his vehicle, which was insured by State Farm at the time of the underlying loss, was involved in a collision and that Plaintiff is owed insurance proceeds pursuant to the applicable contract of insurance

3.      On November 2, 2022, this Court entered a Case Management Order setting forth various deadlines, including, but not limited to:

    a.  All discovery to be completed no later than ninety (90) days from the date of the Order (January 31, 2023);

    b.  A Joint Pre-Trial Stipulation to be filed and a copy delivered to the Court no later than one hundred (100) days from the date of the Order (February 10, 2023); and

1

131896204.1

    c.  For mediation to be completed within one hundred five (105) days of the date of the Order (February 15, 2023)

4.    Because the parties are still engaged in discovery, including depositions of fact witnesses and of the corporate representatives of both parties, and because of the need for additional discovery to prepare dispositive motions, the parties respectfully request this Court to amend the Order to allow additional time for the parties to complete discovery prior to the pre-trial conference and trial.

5.    Specifically, the parties respectfully request that the deadlines set forth in the Order be extended by ninety (90) days.

6.    This motion is made in good faith and not to cause unreasonable delay. Nor will either party be prejudiced by the relief sought in this motion.

WHEREFORE, Plaintiff, Assaf Sasson, and Defendant, State Farm Mutual Automobile Insurance Company respectfully request this Court Amend the Court's Case Management Order by extending the deadlines therein by ninety (90) days for the reasons set forth above.

131896204.1

Dated: January 26, 2023

Respectfully submitted,

/s/ Johanna W. Clark                          /s/ Daren Stabinski
Johanna W. Clark [                           Daren Stabinski, Esq.
Florida Bar No. 196400                       DAREN STABINSKI, P.A.
Miguel A. Rodriguez                          100 N. Federal Highway, #524
Florida Bar No. 1002585                      Ft. Lauderdale, FL 33301
CARLTON FIELDS, P.A.                         Ph: (954) 324-1552
200 S. Orange Avenue, Suite 1000             Fax: (954) 245-0739
Orlando, Florida 32801                       Email: daren@darenstabinskipa.com
Phone:    (407) 849-0300
Fax:       (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: marodriguez@carltonfields.com (primary)
Email: atokarz@carltonfields.com (secondary)
Email: dmonge@carltonfields.com (secondary)
*Attorneys for Defendant, State Farm Mutual
Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 26, 2023, the foregoing was electronically filed

through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a

service copy of the foregoing to the following:

Johanna W. Clark [                           Daren Stabinski, Esq.
Florida Bar No. 196400                       DAREN STABINSKI, P.A.
Miguel A. Rodriguez                          100 N. Federal Highway, #524
Florida Bar No. 1002585                      Ft. Lauderdale, FL 33301
CARLTON FIELDS, P.A.                         Ph: (954) 324-1552
200 S. Orange Avenue, Suite 1000             Fax: (954) 245-0739
Orlando, Florida 32801                       Email: daren@darenstabinskipa.com
Phone:    (407) 849-0300
Fax:       (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: marodriguez@carltonfields.com (primary)
Email: atokarz@carltonfields.com (secondary)
Email: dmonge@carltonfields.com (secondary)

                                    /s/ Johanna W. Clark
                                    Johanna W. Clark

3

131896204.1

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

CASE NO: COINX-22-049821

          Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant.

_____/

## AGREED ORDER ON JOINT MOTION TO AMEND NOVEMBER 2, 2022
## CASE MANAGEMENT ORDER

This matter having come before the Court on the parties' Joint Motion to Amend November 2, 2022 Case Management Order, and the Court having reviewed the motion, having been advised of the parties agreement, and being duly advised in the premises, hereby **ORDERS** and **ADJUDGES**:

1. The deadlines set forth in the November 2, 2022 Case Management Order are hereby extended by ninety (90) days.

**DONE AND ORDERED** this 30th day of January, 2023 in Chambers in Broward County, Florida.

COINX22049821 01-30-2023 9:47 AM
County Court Judge

Copies furnished to:
Johanna W. Clark, Esq.
Daren Stabinski, Esq.

1

131896269.1

**Copies Furnished To:**

Christopher M. Paolini , E-mail : cpaolini@carltonfields.com
Christopher M. Paolini , E-mail : atokarz@carltonfields.com
Daren Stabinski , E-mail : daren@darenstabinskipa.com
Johanna W Clark , E-mail : dmontgomery@carltonfields.com
Johanna W Clark , E-mail : dmonge@carltonfields.com
Johanna W Clark , E-mail : jclark@carltonfields.com
Miguel A. Rodriguez , E-mail : atokarz@carltonfields.com
Miguel A. Rodriguez , E-mail : marodriguez@carltonfields.com

Filing # 165729934 E-Filed 01/30/2023 02:08:08 PM

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

        CASE NO: COINX-22-049821

        Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/

### DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION TO INVOKE THE FLORIDA RULES OF CIVIL PROCEDURE

The Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), by and through the undersigned counsel and pursuant to Florida Small Claims Rule 7.020(c), requests the Court enter an Order invoking the Florida Rules of Civil Procedure:

1.      This action involves a breach of contract claim brought by Plaintiff seeking to recover from State Farm automobile repair charges for work Plaintiff purportedly performed by Stuttgart International, an auto body repair shop, on a vehicle insured by State Farm and owned by Plaintiff. Because this action was filed in small claims court, the rules governing small claims actions apply.

2.      Small claims courts are designed to be "a People's Court in which technical rules of pleading must not obscure the greater purpose of justice for all." *Donoghue v. Wallach*, 455 So. 2d 1085, n. 1 (Fla. 2d DCA 1984). As an example, Florida Small Claims Rule 7.050(c) provides that the clerk of the court "shall assist in the preparation of a statement of claim and other papers to be filed in the action at the request of any litigant." Fla. Sm. Cl. R. 7.050(c). Similarly, in *Donoghue, supra*, the Second District Court of Appeal noted that the circuit court below commended the small claims trial court which had, *sua sponte*, applied a statutory provision to enter judgment in favor of one of the parties—despite the appellate court's disagreement with the

1

applicability of the particular statutory provision.  *Id.*

3.     In contrast to the limited dispute among unsophisticated, unrepresented litigants for which the Small Claims Rules were designed, the instant dispute is one of many pending suits brought by Plaintiff's counsel against State Farm in which additional costs are being sought for automobile repair charges. Both parties are represented by legal counsel and litigation will entail discovery requests and various depositions, including those of both fact witnesses and corporate representatives. Application of the Florida Rules of Civil Procedure would provide a broader and more structured, technical framework by which the parties will govern themselves as litigation progresses. Additionally, justice requires the application of the more formal Florida Rules of Civil Procedure in this case, so as to allow State Farm is to defend itself against the apparently concerted attack on its policy provisions. As such, State Farm requests that the Court invoke the full Florida Rules of Civil Procedure.

4.     In the event that the Court is opposed to invoking the full Florida Rules of Civil Procedure, State Farm requests that, at a minimum, Rule 1.442 and Rule 1.510 be invoked, as Defendant plans to serve Plaintiff with a proposal for settlement and also intends to ultimately move for summary judgment with regard to Plaintiff's breach of contract claim. With regard to Rule 1.510, Defendant seeks to invoke the Rule of Civil Procedure as opposed to the Small Claims Rule providing for summary disposition for purposes of obtaining the specific timing and notice requirements set forth in Rule 1.510, including the requirement that any movant serve the motion at least forty days before the time fixed for the hearing on same, as well as the requirement that any adverse party identify evidence on which it intends to rely within the specific timeframes set forth within Rule 1.510.

WHEREFORE, Defendant, State Farm Mutual Automobile Insurance Company, respectfully requests that this Court enter an Order Invoking the full Florida Rules of Civil

Procedure or, alternatively, invoking at a minimum Rule 1.442 and Rule 1.510 of the Florida Rules of Civil Procedure.

Dated: January 30, 2023

Respectfully submitted,

*/s/ Johanna W. Clark*
Johanna W. Clark
Florida Bar No.  196400
Christopher M. Paolini
Florida Bar No. 669199
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:        (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: cpaolini@carltonfields.com (primary)
Email: atokarz@carltonfields.com (secondary)
Email: dmonge@carltonfields.com (secondary)
*Attorneys for Defendant, State Farm Mutual Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 30, 2023, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com

*/s/ Johanna W. Clark*
Johanna W. Clark

131953378.1

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. COINX-22-049821

ASSAF SASSON,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
Defendant.

_____/

## REQUEST FOR COPIES

**COMES NOW**, the Plaintiff, ASSAF SASSON, by and through the undersigned counsel, and

pursuant to Fla.R.Civ.P. Rule 1.351(e), hereby requests copies of each item received by the Defendant,

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, pursuant to their Subpoena

Duces Tecum without Deposition from Nonparty, dated December 22, 2022 directed to:

**Custodian of Records**
**Copans Motor, Inc d/b/a Champion Porsche**
**Attn: Roy Diaz - Registered Agent**
**499 NW 70th Avenue, Suite 309**
**Plantation, Florida 33317**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by email

this 2nd day of January, 2023, to all registered participants of the Florida e-filing portal.

Daren Stabinski P.A.
1213 N.E. First Street
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com
   __/s/ *Daren Stabinski*_____
Daren Stabinski, Esq.
Fla. Bar No. 002951

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

                 Plaintiff,

CASE NO: COINX-22-049821

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                 Defendant.

_____/

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF COMPLIANCE WITH REQUEST FOR COPIES

       Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), by and through its undersigned attorneys, hereby files this Notice of Compliance with Plaintiff's Request for Copies for Documents Produced, by Champion Porsche in response to the Subpoena served upon it by State Farm Mutual Automobile Insurance Company, bearing bates designation SF-Sasson- Copan's Motors, Inc - 000001 through SF-Sasson- Copan's Motors, Inc – 000013.

Dated: March 15, 2023

Respectfully submitted,

/s/ Johanna W. Clark
Johanna W. Clark
Florida Bar No. 196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:       (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: marodriguez@carltonfields.com (primary)
Email: atokarz@carltonfields.com (secondary)
Email: dmonge@carltonfields.com (secondary)
*Attorneys for Defendant, State Farm Mutual Automobile Insurance Company*

1

132365781.1

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on March 15, 2023, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 247-0739
Email:  daren@darenstabinskipa.com
*Attorneys for Plaintiff*

*/s/ Johanna W. Clark*
JOHANNA W. CLARK

132365781.1

Case 0:23-cv-61594-RS   Document 1-3   Entered on FLSD Docket 08/18/2023   Page 612 of 1096

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

              Plaintiff,

v.

CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

              Defendant.

_____/

## DEFENDANT'S NOTICE OF TAKING DEPOSITION
### *DUCES TECUM* OF INSURED, ADA SASSON

**To:**    Daren Stabinski, Esq.
        Daren Stabinski, P.A.
        100 N. Federal Highway, #524
        Ft. Lauderdale, FL 33301

      **PLEASE TAKE NOTICE** that pursuant to Florida Rule of Civil Procedure 1.310(b)(1)

that Defendant will, upon oral examination, take the discovery deposition *Duces Tecum* of the

following on the date and at the time and place indicated:

| <u>NAME</u> | <u>DATE / TIME</u> | <u>LOCATION</u> |
|---|---|---|
| **ADA SASSON** | **April 3, 10:00 a.m.** | **Remote via Zoom**<br><br>**https://carltonfields.zoom.us/j/92 469044782?pwd=aklmai90U3JR bUVWNVRzd1ljM1dhdz09**<br><br>**Meeting ID: 924 6904 4782**<br>**Passcode: 427790** |

### *THE WITNESS MUST BRING TO THE DEPOSITION
THE DOCUMENTS LISTED ON EXHIBIT "A" ATTACHED TO THIS NOTICE.

      The deposition will take place on the date and time shown above, and will be conducted

with the witness, all counsel and a *VERITEXT* Court Reporting Agency court reporter, or at such

1

132413923.1

other location, date and time as the parties may agree.

The deponent is required to bring with it to the deposition the following:

**See SCHEDULE "A" attached hereto**

The deposition will continue from day to day until completed.  The deposition is being taken for purposes of discovery, for use at trial or for such other purposes as are permitted pursuant to all applicable and governing Florida Statutes.

Individuals who have a disability that may need accommodation should contact the undersigned seven (7) days prior to the deposition.

Dated: March 21, 2023                    Respectfully submitted,

*/s/ Johanna W. Clark*
Johanna W. Clark
Florida Bar No.  196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:        (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: marodriguez@carltonfields.com (primary)
Email: dmonge@carltonfields.com (secondary)
Email: atokarz@carltonfields.com (secondary)
*Attorneys for Defendant, State Farm Mutual*
*Automobile Insurance Company*

2

132413923.1

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on March 21, 2023, the foregoing was electronically filed

through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a

service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 247-0739
Email:  daren@darenstabinskipa.com

> */s/ Johanna W. Clark*
> Johanna W. Clark

132413923.1

## SCHEDULE "A"

## DEFINITIONS AND INSTRUCTIONS

1.     The term "writing" includes all documents, any written materials and all other media used to record or memorialize information, including but not limited to, information saved in computer memory, electronic mail, diskettes, hard drives, magnetic tape, audio tape, and video tape.

2.     The term "documents" means:

a.     all written, printed, typed, recorded or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in your actual or constructive possession, custody or control, including but not limited to, all writings, letters, correspondence, computer printout of emails or other communications, graphs, charts, photographs, films, estimates, supplements, receipts, invoices, contracts, ledgers, cancelled checks, books and records, internal memoranda, reports, studies, calendars, minutes, records of meetings, records of telephone conferences, pamphlets, training materials, accounting records (including financial as well as any inventory accounting),  appraisals, telegrams, memoranda, notes (including handwritten notes), instructions, notebooks, records, agreements, address books, microfilm, notices, releases, waivers, assignments, summaries, invoices, checks, pay stubs, payment records, bills, drafts, data sheets, data compilations, computer data sheets, computer data compilations, work papers, work sheets, calendars, statistics, tape recordings, transcripts of tape recordings, phonograph records or data compilations from which information can be obtained or translated into reasonably usable form;

b.     The original and all other copies not absolutely identical;

c.     All drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not, all exhibits, attachments, or other materials affixed thereto; and

d.     All writings.

3.     The singular and plural forms of any word shall be interchangeable, as shall masculine and feminine pronouns.

4.     Connector words shall be construed con conjunctively or disjunctively as necessary

132413923.1

to bring within the scope of any request any information which might otherwise be construed to be outside the scope.

5. The term "person" includes any natural person, alive or deceased, and all other entities having legal existence, including but not limited to any corporation, organization, partnership, other business entity or association, and any government or governmental body, commission, department, committee, board or agency.

6. "Communication" means any contact, oral or written, formal or informal, at any time or place, under any circumstance, in any manner, whereby a statement of any nature is transmitted or transferred, including any meeting or other conversation, and shall include, without limitation, any document relating to any such contact.

7. The phrase "relating to," relates to," or "related to" as used in this request is intended to and shall be interpreted to mean relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, contradicts, or is logically or factually connected with the repair charges, services, parts and materials, for your **2022 Porsche Taycan RWD, VIN No. WP0AA2Y11NSA13378**.

8. If, in response to any of the document requests, you claim that a document or documents are privileged, please state, with regard to each designated document, the following:

    a. The type of privilege claimed (e.g. attorney/client, work product, trade secret, etc.);

    b. The type of document involved (e.g. letter, report, etc.);

    c. The author or authors of the document;

    d. All recipients of the document;

    e. The date of the document; and

132413923.1

f.      The subject matter of, or addressed by, the document.

9.      If any requested document that at one time existed is now lost, destroyed or discarded, please identify such document and provide as much of the following information as possible:

a.      The type of document;

b.      Its date;

c.      The date or approximate date it was lost, destroyed or discarded;

d.      The circumstances and manner in which it was lost, destroyed or discarded;

e.      The reason or reasons the document was lost, destroyed, or discarded.

10.      Unless otherwise indicated in a specific request, the time period covered by these requests is from May 1, 2022 through the present.

## <u>SCHEDULE "A" ITEMS TO BE PRODUCED</u>

1.      Any and all documents relating to repair work performed on your 2022 Porsche Taycan RWD, VIN No. WP0AA2Y11NSA13378 by, or directed to be performed by Stuttgart International Auto Body Collision and/or Copan's Motors, Inc., d/b/a/ Champion Porsche or any other repair provider, including but not limited to, all notes, estimates, supplements, correspondence, communications, photographs, invoices, work orders, bank records and/or other records showing payments made by you or on your behalf, receipts, and any and all other records relating to repairs/parts/labor hours/refinish work performed, whether the repair work was for damages from an automobile accident that occurred on or about May 27, 2022, **or for any other reason, at any time.**

2.      Any and all documents received by you from State Farm or its representatives pertaining to the repairs performed by, or directed to be performed by, Stuttgart International Auto Body Collision and/or Copan's Motors, Inc., d/b/a Champion Porsche.

132413923.1

Filing # 169188788 E-Filed 03/21/2023 08:28:34 AM

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

              Plaintiff,

v.

CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

              Defendant.

_____/

## DEFENDANT'S NOTICE OF TAKING DEPOSITION
## *DUCES TECUM* OF ASSAF SASSON

**To:**    Daren Stabinski, Esq.
       Daren Stabinski, P.A.
       100 N. Federal Highway, #524
       Ft. Lauderdale, FL 33301

       **PLEASE TAKE NOTICE** that pursuant to Florida Rule of Civil Procedure 1.310(b)(1)

that Defendant will, upon oral examination, take the discovery deposition *Duces Tecum* of the

following on the date and at the time and place indicated:

| **NAME** | **DATE / TIME** | **LOCATION** |
|---|---|---|
| **ASSAF SASSON** | **April 3, 1:00 p.m.** | **Remote via Zoom**<br><br>**https://carltonfields.zoom.us/j/96 448154226?pwd=Wm5Pd0FsRn RSTWVVRjVPTitvc0ZHQT09**<br><br>**Meeting ID: 964 4815 4226**<br>**Passcode: 820645** |

## *THE WITNESS MUST BRING TO THE DEPOSITION
## THE DOCUMENTS LISTED ON EXHIBIT "A" ATTACHED TO THIS NOTICE.

       The deposition will take place on the date and time shown above, and will be conducted

with the witness, all counsel and a ***VERITEXT*** Court Reporting Agency court reporter, or at such

other location, date and time as the parties may agree.

1

132413939.1

The deponent is required to bring with it to the deposition the following:

**See SCHEDULE "A" attached hereto**

The deposition will continue from day to day until completed.  The deposition is being taken for purposes of discovery, for use at trial or for such other purposes as are permitted pursuant to all applicable and governing Florida Statutes.

Individuals who have a disability that may need accommodation should contact the undersigned seven (7) days prior to the deposition.

Dated: March 21, 2023                    Respectfully submitted,

*/s/ Johanna W. Clark*
Johanna W. Clark
Florida Bar No.  196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:       (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: marodriguez@carltonfields.com (primary)
Email: dmonge@carltonfields.com (secondary)
Email: atokarz@carltonfields.com (secondary)
*Attorneys for Defendant, State Farm Mutual Automobile Insurance Company*

132413939.1

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on March 21, 2023, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 247-0739
Email:  daren@darenstabinskipa.com

_/s/ Johanna W. Clark_
Johanna W. Clark

132413939.1

## SCHEDULE "A"

## DEFINITIONS AND INSTRUCTIONS

1.      The term "writing" includes all documents, any written materials and all other media used to record or memorialize information, including but not limited to, information saved in computer memory, electronic mail, diskettes, hard drives, magnetic tape, audio tape, and video tape.

2.      The term "documents" means:

    a.      all written, printed, typed, recorded or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in your actual or constructive possession, custody or control, including but not limited to, all writings, letters, correspondence, computer printout of emails or other communications, graphs, charts, photographs, films, estimates, supplements, receipts, invoices, contracts, ledgers, cancelled checks, books and records, internal memoranda, reports, studies, calendars, minutes, records of meetings, records of telephone conferences, pamphlets, training materials, accounting records (including financial as well as any inventory accounting),  appraisals, telegrams, memoranda, notes (including handwritten notes), instructions, notebooks, records, agreements, address books, microfilm, notices, releases, waivers, assignments, summaries, invoices, checks, pay stubs, payment records, bills, drafts, data sheets, data compilations, computer data sheets, computer data compilations, work papers, work sheets, calendars, statistics, tape recordings, transcripts of tape recordings, phonograph records or data compilations from which information can be obtained or translated into reasonably usable form;

    b.      The original and all other copies not absolutely identical;

    c.      All drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not, all exhibits, attachments, or other materials affixed thereto; and

    d.      All writings.

3.      The singular and plural forms of any word shall be interchangeable, as shall masculine and feminine pronouns.

4.      Connector words shall be construed con conjunctively or disjunctively as necessary

4

to bring within the scope of any request any information which might otherwise be construed to be outside the scope.

5.      The term "person" includes any natural person, alive or deceased, and all other entities having legal existence, including but not limited to any corporation, organization, partnership, other business entity or association, and any government or governmental body, commission, department, committee, board or agency.

6.      "Communication" means any contact, oral or written, formal or informal, at any time or place, under any circumstance, in any manner, whereby a statement of any nature is transmitted or transferred, including any meeting or other conversation, and shall include, without limitation, any document relating to any such contact.

7.      The phrase "relating to," relates to," or "related to" as used in this request is intended to and shall be interpreted to mean relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, contradicts, or is logically or factually connected with the repair charges, services, parts and materials, for your **2022 Porsche Taycan RWD, VIN No. WP0AA2Y11NSA13378**.

8.      If, in response to any of the document requests, you claim that a document or documents are privileged, please state, with regard to each designated document, the following:

> a.      The type of privilege claimed (e.g. attorney/client, work product, trade secret, etc.);
>
> b.      The type of document involved (e.g. letter, report, etc.);
>
> c.      The author or authors of the document;
>
> d.      All recipients of the document;
>
> e.      The date of the document; and

132413939.1

f.      The subject matter of, or addressed by, the document.

9.      If any requested document that at one time existed is now lost, destroyed or discarded, please identify such document and provide as much of the following information as possible:

a.      The type of document;

b.      Its date;

c.      The date or approximate date it was lost, destroyed or discarded;

d.      The circumstances and manner in which it was lost, destroyed or discarded;

e.      The reason or reasons the document was lost, destroyed, or discarded.

10.     Unless otherwise indicated in a specific request, the time period covered by these requests is from May 1, 2022 through the present.

## **SCHEDULE "A" ITEMS TO BE PRODUCED**

1.      Any and all documents relating to repair work performed on your 2022 Porsche Taycan RWD, VIN No. WP0AA2Y11NSA13378 by, or directed to be performed by Stuttgart International Auto Body Collision and/or Copan's Motors, Inc., d/b/a/ Champion Porsche or any other repair provider, including but not limited to, all notes, estimates, supplements, correspondence, communications, photographs, invoices, work orders, bank records and/or other records showing payments made by you or on your behalf, receipts, and any and all other records relating to repairs/parts/labor hours/refinish work performed, whether the repair work was for damages from an automobile accident that occurred on or about May 27, 2022, **or for any other reason, at any time.**

6

2.      Any and all documents received by you from State Farm or its representatives pertaining to the repairs performed by, or directed to be performed by, Stuttgart International Auto Body Collision and/or Copan's Motors, Inc., d/b/a Champion Porsche.

132413939.1

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

              Plaintiff,

v.

CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

              Defendant.

_____/

## AMENDED SUBPOENA FOR DEPOSITION *DUCES TECUM*[1]

THE STATE OF FLORIDA

TO:   **Daniel Pagan**
      **Stuttgart International Auto Body Collision ("Stuttgart International")**
      **1055 NW 51st Ct**
      **Fort Lauderdale, FL 33309**

YOU ARE COMMANDED to appear for the taking of your deposition before the undersigned attorney, Johanna W. Clark, Esquire, of Carlton Fields, P.A., 200 South Orange Avenue, Suite 1000, Orlando, Florida 32801 on **Wednesday, April 12, 2023 at 1:00 p.m. remotely via Zoom. Directions on how to attend your deposition are set forth on the next page.** If you fail to appear, you may be in contempt of court.

You are hereby directed to produce two business days prior to your deposition all **DOCUMENTS LISTED ON EXHIBIT "A" ATTACHED TO THIS SUBPOENA.**

You are subpoenaed by the attorney whose name appears on this subpoena, and unless excused from this subpoena by the attorney or the Court, you shall respond to this subpoena as directed.

---

[1] Amended to correct date of deposition only.

132499101.1

DATED on:

_____
Johanna W. Clark, Esquire
AS OFFICER OF THE COURT
Florida Bar No.: 196400

*Issued by:*

Johanna W. Clark [FBN 196400]
CARLTON FIELDS, P.A.
P.O. Box 1171
Orlando, Florida 32802-1171
Tel: (407) 849-0300
Fax: (407) 648-9099
jclark@carltonfields.com  (primary)
*Attorneys for State Farm Mutual Automobile Insurance Company*

**Zoom Information:**

https://carltonfields.zoom.us/j/97036956643?pwd=RVJsYTlsdTFwV0l5eWFTQVpOSXZTQT09

Meeting ID: 970 3695 6643
Passcode: 935582

888 788 0099 US Toll-free
877 853 5247 US Toll-free

| **Notice** |
| --- |
| **AMERICANS WITH DISABILITY ACT OF 1990** |
| **If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Johanna W. Clark at (407) 849-0300 or 1 888 849-9191; Carlton Fields, P.A., 200 South Orange Ave., Suite 1000, Orlando, FL 32801 within two (2) working days of your receipt of this subpoena; if you are hearing or voice impaired, call (800) 955-8771** |

132499101.1

## <u>DEFINITIONS AND INSTRUCTIONS</u>

1.      The term "writing" includes all documents, any written materials and all other media used to record or memorialize information, including but not limited to, information saved in computer memory, electronic mail, diskettes, hard drives, magnetic tape, audio tape, and video tape.

2.      The term "documents" means:

      a.      all written, printed, typed, recorded or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in your actual or constructive possession, custody or control, including but not limited to, all writings, letters, correspondence, computer printout of emails or other communications, graphs, charts, photographs, films, estimates, supplements, receipts, invoices, contracts, ledgers, cancelled checks, books and records, internal memoranda, reports, studies, calendars, minutes, records of meetings, records of telephone conferences, pamphlets, training materials, accounting records (including financial as well as any inventory accounting), appraisals, telegrams, memoranda, notes (including handwritten notes), instructions, notebooks, records, agreements, address books, microfilm, notices, releases, waivers, assignments, summaries, invoices, checks, pay stubs, payment records, bills, drafts, data sheets, data compilations, computer data sheets, computer data compilations, work papers, work sheets, calendars, statistics, tape recordings, transcripts of tape recordings, phonograph records or data compilations from which information can be obtained or translated into reasonably usable form;

      b.      The original and all other copies not absolutely identical;

      c.      All drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not, all exhibits, attachments, or other materials affixed thereto; and

      d.      All writings.

3.      The singular and plural forms of any word shall be interchangeable, as shall masculine and feminine pronouns.

4.      Connector words shall be construed conjunctively or disjunctively as necessary to bring within the scope of any request any information which might otherwise be construed to be

3

outside the scope.

5.     The term "person" includes any natural person, alive or deceased, and all other entities having legal existence, including but not limited to any corporation, organization, partnership, other business entity or association, and any government or governmental body, commission, department, committee, board or agency.

6.     "Communication" means any contact, oral or written, formal or informal, at any time or place, under any circumstance, in any manner, whereby a statement of any nature is transmitted or transferred, including any meeting or other conversation, and shall include, without limitation, any document relating to any such contact.

7.     The phrase "relating to," relates to," or "related to" as used in this request is intended to and shall be interpreted to mean relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, contradicts, or is logically or factually connected with the repairs, charges, services, freight, parts and materials, or any other issues related to repairs to **Assaf Sasson's 2022 Porsche Taycan RWD, VIN No. WP0AA2Y11NSA13378** (the "subject vehicle").

8.     If, in response to any of the document requests, you claim that a document or documents are privileged, please state, with regard to each designated document, the following:

a.     The type of privilege claimed (e.g. attorney/client, work product, trade secret, etc.);

b.     The type of document involved (e.g. letter, report, etc.);

c.     The author or authors of the document;

d.     All recipients of the document;

e.     The date of the document; and

132499101.1

       f.     The subject matter of, or addressed by, the document.

9.    If any requested document that at one time existed is now lost, destroyed or discarded, please identify such document and provide as much of the following information as possible:

       a.     The type of document;

       b.     Its date;

       c.     The date or approximate date it was lost, destroyed or discarded;

       d.     The circumstances and manner in which it was lost, destroyed or discarded;

       e.     The reason or reasons the document was lost, destroyed, or discarded.

10.    Unless otherwise indicated in a specific request, the time period covered by these requests is from May 27, 2022 through the present.

## **EXHIBIT A**

## **ITEMS TO BE PRODUCED**

Any and all documents related to the subject vehicle.

132499101.1

Filing # 170009694 E-Filed 03/30/2023 02:10:24 PM

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

               Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

               Defendant.

_____/

CASE NO: COINX-22-049821

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S
NOTICE OF TAKING DEPOSITION *DUCES TECUM* OF DANIEL PAGAN**

      **PLEASE TAKE NOTICE** that the undersigned counsel will take the deposition of the following individual:

| NAME | DATE / TIME | LOCATION |
|:---:|:---:|:---:|
| **DANIEL PAGAN** | **April 12, 2023 at 1:00 P.M.** | **Remote via Zoom**<br><br>https://carltonfields.zoom.us/j/97036956643?pwd=RVJsYTlsdTFwV0l5eWFTQVpOSXZTQT09<br><br>**Meeting ID: 970 3695 6643**<br>**Passcode: 935582** |

      The Deponent is hereby directed to produce two business days prior to his deposition all documents requested on Exhibit "A" attached to the Subpoena. The deposition will take place on the date and time shown above, and will be conducted via remote means using the Zoom meeting platform with the witness, all counsel and a Veritext court reporter appearing remotely, or at such other location, date and time as the parties may agree.

1

132498510.1

The deposition will continue from day to day until completed.  The deposition is being taken for purposes of discovery, for use at trial or for such other purposes as are permitted pursuant to all applicable and governing Florida Statutes.

Dated: March 30, 2023

Respectfully submitted,

*/s/ Johanna W. Clark*
Johanna W. Clark
Florida Bar No.  196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:       (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: marodriguez@carltonfields.com (primary)
Email: dmonge@carltonfields.com (secondary)
Email: atokarz@carltonfields.com (secondary)
*Attorneys for Defendant, State Farm Mutual*
*Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 30, 2023, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 247-0739
Email:  daren@darenstabinskipa.com

*/s/ Johanna W. Clark*
Johanna W. Clark

132498510.1

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

          Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant.

_____/

CASE NO: COINX-22-049821

### DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S
### NOTICE OF TAKING DEPOSITION DUCES TECUM OF NON-PARTY

**PLEASE TAKE NOTICE** that pursuant to Rule 1.310, Florida Rules of Civil Procedure, the undersigned will take the deposition of the following non-party on the date and at the time and place indicated:

| **NAME** | **DATE / TIME** | **LOCATION** |
|---|---|---|
| **Stuttgart International's Corporate Representative** | **April 12, 2023 at 10:00 A.M.** | **Remote via Zoom** <br><br> **https://carltonfields.zoom.us/j/98899 933769?pwd=S0JscjR6TThZK2wz VGhnc1ErS2J0dz09** <br><br> **Meeting ID: 988 9993 3769** <br> **Passcode: 821399** |

The deposition will be taken upon oral examination before Veritext Legal Solutions, Court Reporter and Notary Public in and for the State of Florida at Large, or some other officer duly authorized by law to take deposition.

This deposition is being taken for the purpose of discovery on all matters, for use at trial, or both of the foregoing, or for such other purposes as are permitted under the applicable and governing rules, and will continue from day to day until completed.

1

Individuals who have a disability that may need accommodation should contact the undersigned seven (7) days prior to the deposition.

Dated: March 30, 2023           Respectfully submitted,

*/s/ Johanna W. Clark*
Johanna W. Clark
Florida Bar No. 196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:   (407) 849-0300
Fax:      (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: marodriguez@carltonfields.com (primary)
Email: dmonge@carltonfields.com (secondary)
Email: atokarz@carltonfields.com (secondary)
*Attorneys for Defendant, State Farm Mutual*
*Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 30, 2023, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 247-0739
Email:  daren@darenstabinskipa.com

*/s/ Johanna W. Clark*
Johanna W. Clark

132498208.1

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

                Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Defendant.

CASE NO: COINX-22-049821

_____/

## <u>SUBPOENA FOR DEPOSITION *DUCES TECUM*</u>

THE STATE OF FLORIDA

TO:    **Daniel Pagan**
          **Stuttgart International Auto Body Collision ("Stuttgart International")**
          **1055 NW 51st Ct**
          **Fort Lauderdale, FL 33309**

        YOU ARE COMMANDED to appear for the taking of your deposition before the undersigned attorney, Johanna W. Clark, Esquire, of Carlton Fields, P.A., 200 South Orange Avenue, Suite 1000, Orlando, Florida 32801 on **Wednesday, May 12, 2023 at 1:00 p.m. remotely via Zoom. Directions on how to attend your deposition are set forth on the next page.** If you fail to appear, you may be in contempt of court.

        You are hereby directed to produce two business days prior to your deposition all **<u>DOCUMENTS LISTED ON EXHIBIT "A" ATTACHED TO THIS SUBPOENA</u>.**

        You are subpoenaed by the attorney whose name appears on this subpoena, and unless excused from this subpoena by the attorney or the Court, you shall respond to this subpoena as directed.

132498741.1

DATED on:

_____
Johanna W. Clark, Esquire
AS OFFICER OF THE COURT
Florida Bar No.: 196400

*Issued by:*

Johanna W. Clark [FBN 196400]
CARLTON FIELDS, P.A.
P.O. Box 1171
Orlando, Florida 32802-1171
Tel: (407) 849-0300
Fax: (407) 648-9099
jclark@carltonfields.com  (primary)
*Attorneys for State Farm Mutual Automobile Insurance Company*

**Zoom Information:**

https://carltonfields.zoom.us/j/97036956643?pwd=RVJsYTlsdTFwV0l5eWFTQVpOSXZTQT09

Meeting ID: 970 3695 6643
Passcode: 935582

888 788 0099 US Toll-free
877 853 5247 US Toll-free

---

**Notice**

**AMERICANS WITH DISABILITY ACT OF 1990**

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Johanna W. Clark at (407) 849-0300 or 1 888 849-9191; Carlton Fields, P.A., 200 South Orange Ave., Suite 1000, Orlando, FL 32801 within two (2) working days of your receipt of this subpoena; if you are hearing or voice impaired, call (800) 955-8771**

---

132498741.1

## <u>DEFINITIONS AND INSTRUCTIONS</u>

1.     The term "writing" includes all documents, any written materials and all other media used to record or memorialize information, including but not limited to, information saved in computer memory, electronic mail, diskettes, hard drives, magnetic tape, audio tape, and video tape.

2.     The term "documents" means:

a.     all written, printed, typed, recorded or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in your actual or constructive possession, custody or control, including but not limited to, all writings, letters, correspondence, computer printout of emails or other communications, graphs, charts, photographs, films, estimates, supplements, receipts, invoices, contracts, ledgers, cancelled checks, books and records, internal memoranda, reports, studies, calendars, minutes, records of meetings, records of telephone conferences, pamphlets, training materials, accounting records (including financial as well as any inventory accounting), appraisals, telegrams, memoranda, notes (including handwritten notes), instructions, notebooks, records, agreements, address books, microfilm, notices, releases, waivers, assignments, summaries, invoices, checks, pay stubs, payment records, bills, drafts, data sheets, data compilations, computer data sheets, computer data compilations, work papers, work sheets, calendars, statistics, tape recordings, transcripts of tape recordings, phonograph records or data compilations from which information can be obtained or translated into reasonably usable form;

b.     The original and all other copies not absolutely identical;

c.     All drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not, all exhibits, attachments, or other materials affixed thereto; and

d.     All writings.

3.     The singular and plural forms of any word shall be interchangeable, as shall masculine and feminine pronouns.

4.     Connector words shall be construed conjunctively or disjunctively as necessary to bring within the scope of any request any information which might otherwise be construed to be

outside the scope.

5.    The term "person" includes any natural person, alive or deceased, and all other entities having legal existence, including but not limited to any corporation, organization, partnership, other business entity or association, and any government or governmental body, commission, department, committee, board or agency.

6.    "Communication" means any contact, oral or written, formal or informal, at any time or place, under any circumstance, in any manner, whereby a statement of any nature is transmitted or transferred, including any meeting or other conversation, and shall include, without limitation, any document relating to any such contact.

7.    The phrase "relating to," relates to," or "related to" as used in this request is intended to and shall be interpreted to mean relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, contradicts, or is logically or factually connected with the repairs, charges, services, freight, parts and materials, or any other issues related to repairs to **Assaf Sasson's 2022 Porsche Taycan RWD, VIN No. WP0AA2Y11NSA13378** (the "subject vehicle").

8.    If, in response to any of the document requests, you claim that a document or documents are privileged, please state, with regard to each designated document, the following:

     a.    The type of privilege claimed (e.g. attorney/client, work product, trade secret, etc.);

     b.    The type of document involved (e.g. letter, report, etc.);

     c.    The author or authors of the document;

     d.    All recipients of the document;

     e.    The date of the document; and

      f.      The subject matter of, or addressed by, the document.

9.      If any requested document that at one time existed is now lost, destroyed or discarded, please identify such document and provide as much of the following information as possible:

      a.      The type of document;

      b.      Its date;

      c.      The date or approximate date it was lost, destroyed or discarded;

      d.      The circumstances and manner in which it was lost, destroyed or discarded;

      e.      The reason or reasons the document was lost, destroyed, or discarded.

10.      Unless otherwise indicated in a specific request, the time period covered by these requests is from May 27, 2022 through the present.

5

132498741.1

## **EXHIBIT A**

## **ITEMS TO BE PRODUCED**

Any and all documents related to the subject vehicle.

132498741.1

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

               Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

               Defendant.

_____/

CASE NO: COINX-22-049821

## SUBPOENA FOR DEPOSITION *DUCES TECUM*

THE STATE OF FLORIDA

TO:    **Stuttgart International Auto Body Collision ("Stuttgart International")**
        **1055 NW 51st Ct**
        **Fort Lauderdale, FL 33309**

YOU ARE COMMANDED to appear for the taking of your deposition before the undersigned attorney, Johanna W. Clark, Esquire, of Carlton Fields, P.A., 200 South Orange Avenue, Suite 1000, Orlando, Florida 32801 on **Wednesday, April 12, 2023 at 10:00 a.m. remotely via Zoom. Directions on how to attend your deposition are set forth on the next page.** If you fail to appear, you may be in contempt of court.

You are hereby directed to produce two business days prior to your deposition all **DOCUMENTS LISTED ON EXHIBIT "A" ATTACHED TO THIS SUBPOENA.**

You are subpoenaed by the attorney whose name appears on this subpoena, and unless excused from this subpoena by the attorney or the Court, you shall respond to this subpoena as directed.

DATED on:

_____

Johanna W. Clark, Esquire
AS OFFICER OF THE COURT
Florida Bar No.: 196400

*Issued by:*

Johanna W. Clark [FBN 196400]
CARLTON FIELDS, P.A.
P.O. Box 1171
Orlando, Florida 32802-1171
Tel: (407) 849-0300
Fax: (407) 648-9099
jclark@carltonfields.com  (primary)
*Attorneys for State Farm Mutual Automobile Insurance Company*

**Zoom Information:**

https://carltonfields.zoom.us/j/98899933769?pwd=S0JscjR6TThZK2wzVGhnc1ErS2J0dz09

**Meeting ID: 988 9993 3769**
**Passcode: 821399**

888 788 0099 US Toll-free
877 853 5247 US Toll-free

<div style="border:1px solid black">

**Notice**

**AMERICANS WITH DISABILITY ACT OF 1990**

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Johanna W. Clark at (407) 849-0300 or 1 888 849-9191; Carlton Fields, P.A., 200 South Orange Ave., Suite 1000, Orlando, FL 32801 within two (2) working days of your receipt of this subpoena; if you are hearing or voice impaired, call (800) 955-8771**

</div>

132498341.1

## <u>DEFINITIONS AND INSTRUCTIONS</u>

1.     The term "writing" includes all documents, any written materials and all other media used to record or memorialize information, including but not limited to, information saved in computer memory, electronic mail, diskettes, hard drives, magnetic tape, audio tape, and video tape.

2.     The term "documents" means:

    a.     all written, printed, typed, recorded or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in your actual or constructive possession, custody or control, including but not limited to, all writings, letters, correspondence, computer printout of emails or other communications, graphs, charts, photographs, films, estimates, supplements, receipts, invoices, contracts, ledgers, cancelled checks, books and records, internal memoranda, reports, studies, calendars, minutes, records of meetings, records of telephone conferences, pamphlets, training materials, accounting records (including financial as well as any inventory accounting),  appraisals, telegrams, memoranda, notes (including handwritten notes), instructions, notebooks, records, agreements, address books, microfilm, notices, releases, waivers, assignments, summaries, invoices, checks, pay stubs, payment records, bills, drafts, data sheets, data compilations, computer data sheets, computer data compilations, work papers, work sheets, calendars, statistics, tape recordings, transcripts of tape recordings, phonograph records or data compilations from which information can be obtained or translated into reasonably usable form;

    b.     The original and all other copies not absolutely identical;

    c.     All drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not, all exhibits, attachments, or other materials affixed thereto; and

    d.     All writings.

3.     The singular and plural forms of any word shall be interchangeable, as shall masculine and feminine pronouns.

4.     Connector words shall be construed conjunctively or disjunctively as necessary to bring within the scope of any request any information which might otherwise be construed to be

132498341.1

outside the scope.

5.      The term "person" includes any natural person, alive or deceased, and all other entities having legal existence, including but not limited to any corporation, organization, partnership, other business entity or association, and any government or governmental body, commission, department, committee, board or agency.

6.      "Communication" means any contact, oral or written, formal or informal, at any time or place, under any circumstance, in any manner, whereby a statement of any nature is transmitted or transferred, including any meeting or other conversation, and shall include, without limitation, any document relating to any such contact.

7.      The phrase "relating to," relates to," or "related to" as used in this request is intended to and shall be interpreted to mean relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, contradicts, or is logically or factually connected with the repairs, charges, services, freight, parts and materials, or any other issues related to repairs to **Assaf Sasson's 2022 Porsche Taycan RWD, VIN No. WP0AA2Y11NSA13378** (the "subject vehicle").

8.      If, in response to any of the document requests, you claim that a document or documents are privileged, please state, with regard to each designated document, the following:

      a.      The type of privilege claimed (e.g. attorney/client, work product, trade secret, etc.);

      b.      The type of document involved (e.g. letter, report, etc.);

      c.      The author or authors of the document;

      d.      All recipients of the document;

      e.      The date of the document; and

   f.  The subject matter of, or addressed by, the document.

9.  If any requested document that at one time existed is now lost, destroyed or discarded, please identify such document and provide as much of the following information as possible:

   a.  The type of document;

   b.  Its date;

   c.  The date or approximate date it was lost, destroyed or discarded;

   d.  The circumstances and manner in which it was lost, destroyed or discarded;

   e.  The reason or reasons the document was lost, destroyed, or discarded.

10.  Unless otherwise indicated in a specific request, the time period covered by these requests is from August 1, 2021 through the present.

132498341.1

## EXHIBIT A

## ITEMS TO BE PRODUCED

1.      Stuttgart International's entire file and any documents, including but not limited to all photographs and electronically stored information in its original format and organization, relating to repairs, parts, inspections, shipping, and/or labor performed, or labor directed to be performed, on Assaf Sasson's vehicle by Stuttgart International at any time.

2.      Any and all documents submitted by Stuttgart International to State Farm related to the subject vehicle.

3.      Any and all time records, reports, timecards, payroll information or any other documents reflecting the name of the person(s) who worked on the subject vehicle.

4.      Any and all time records, reports, timecards, payroll information or any other documents reflecting the amount of time each person who worked on the subject vehicle spent performing the repairs.

5.      Any and all documents, evidencing or relating to any contact or communications between Stuttgart International and Assaf Sasson regarding the repair of the subject vehicle, or otherwise pertaining to his claim for insurance benefits from State Farm.

6.      Any and all documents, evidencing the amount Assaf Sasson has been charged by Stuttgart International for the auto body repairs at issue in this litigation, including any outstanding balances still owed.

7.      Any and all documents, evidencing the amount Assaf Sasson has paid Stuttgart International's for the auto body repairs at issue in this litigation.

8.      Any and all documents, evidencing any agreement or contract between Stuttgart International's and Assaf Sasson.

6

9.      Copies of all documentation evidencing repairs made to the subject vehicle, which Stuttgart International's and/or Assaf Sasson contend, have not been reimbursed under the subject insurance policy as well as all documents evidencing the amount charged to Assaf Sasson for such repairs.

10.     To the extent not requested above, any and all documents that support Assaf Sasson's claim or Stuttgart International's claim that either is entitled to additional benefits under the subject insurance policy for repairs made to the subject vehicle.

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. COINX-22-049821

ASSAF SASSON

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
Defendant.
_____/.

## **MOTION TO AMENDED COMPLAINT**

COMES NOW the Plaintiff, by and through undersigned counsel, and moves to amend its complaint, and as support states as follows:

1. Plaintiff moves to amend his complaint to include ADA SASSON as a Plaintiff.  No other allegations or claims have been amended.

2. No party will be prejudiced by the granting of this motion.

3. A copy of the amended complaint is attached hereto.

WHEREFORE, Plaintiff respectfully requests leave of court to amend his complaint as attached hereto.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by email

this 3rd day of April, 2023, to all registered participants of the Florida e-filing portal.


Daren Stabinski P.A.
1213 N.E. First Street
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

___/s/ *Daren Stabinski*_____
Daren Stabinski, Esq.
Fla. Bar No. 002951

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. COINX-22-049821

ASSAF SASSON and
ADA SASSON,

Plaintiffs,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
Defendant.
_____/

## SECOND AMENDED COMPLAINT

COMES NOW, the Plaintiffs, ASSAF SASSON and ADA SASSON, by and through undersigned counsel, hereby sues the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and in support thereof alleges:

1. This is a petition within the jurisdictional limits of this Court exclusive of interest, costs, attorney's fees.

2. At all times material hereto, the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY was a duly authorized insurance company, organized and incorporated under the Laws of Florida or authorized to transact insurance business in the State of Florida.

3. At all times material hereto, the Plaintiff, ASSAF SASSON was and is over the age of 18 and sui juris.

4. Venue is proper in Broward County, Florida, because this claim arose in Broward County, Florida, and the Defendant sufficiently transacts business in Broward

County, Florida.

5. For valuable consideration, at all times material hereto, the Defendant, STATE

   FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, issued a policy of

   automobile insurance, that included collision benefits, which provided coverage to

   Plaintiff under Policy Number J53-4643-B02-59C (A copy of the policy is attached

   and incorporated by reference herein).

6. Pursuant to the terms thereof, the Defendant agreed to pay collision benefits to

   repair or replace Plaintiffs' 2022 Porsche Taycan in the event of an accident under

   the following terms:

   *The Policy in this case contains a specific Limit of Liability provision that governs the*
   *payment obligations of State Farm as follows:*
   *1. We have the right to choose to settle with or the owner of the covered vehicle*
   *in one of the following ways:*
      *a. Pay the cost to repair the covered vehicle minus any applicable*
      *deductible.*
          *1) We have the right to choose one of the following to*
          *determine the cost to repair the covered vehicle;*
             *a) The cost agreed to by both the owner of the covered vehicle*
             *and us; or*
             *b) A bid or repair estimate approved by us; or*
             *c) A repair estimate that is written based upon or adjusted*
             *to:*
                 *i. The prevailing competitive price;*
                 *ii. The lower of paintless dent repair pricing*
                 *established by an agreement we have with a*
                 *third party or the paintless dent repair price that*
                 *is competitive in the market; or*
                 *iii. A combination of (i) and (ii) above.*

7. On or about May 27, 2022, ADA SASSON, an insured under said policy, was

   traveling in the above insured vehicle and was involved in an automobile accident

   in Broward County, Florida.  Said vehicle was insured under said insurance

   policy.

8.  Said automobile accident caused the Plaintiffs' vehicle to suffer damages.

9.  The Plaintiffs submitted a claim for collision benefits to the Defendant, STATE

    FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for payment related

    to the damages to his automobile suffered in the above-mentioned motor vehicle

    accident, under claim number 59-34T0-34F.

10. The Plaintiffs have complied with all statutory conditions precedent to

    recovering benefits under said policy.

11. As the subject vehicle is a luxury foreign vehicle, on or about May 31, 2022,

    Plaintiff, ASSAF SASSON, brought the vehicle to Stuttgart International, in

    Broward County, Florida, a collision body shop that specializes in repairing

    such vehicles.

12. Stuttgart International created an estimate of repairs to the subject vehicle in

    the amount of $8,360.87.  Said estimate was provided to Defendant.

13. On or about July 1, 2022, Defendant created its own estimate of damages

    to the subject vehicle in the amount of $6,267.03, and only agreed to pay

    that amount for repair to the vehicle less a $500.00 deductible.

14. Plaintiffs did not agree to the amount to the amount of Defendant's

    estimate and Defendant did not approve the estimate provided by Stuttgart.

15. The repair estimate provided by Defendant was not based upon or adjusted

    to the prevailing competitive price.

16. Paintless dent repair could not repair the damages to Plaintiffs' vehicle.

17. To date, Defendant has refused and continues to refuse to pay

    Plaintiffs the amount of the estimate created by Stuttgart

International, which is the true the amount required to properly repair the subject luxury vehicle, or the prevailing competitive price to repair said vehicle, as required by the subject policy.

18. As a direct and proximate result of Defendant's failure to pay the full benefits under the subject policy, Plaintiffs suffered damages as a result thereof.

19. The Defendant has breached its contract with Plaintiff by failing to pay for the damages sustained by Plaintiffs in the above referenced accident.

20. The Plaintiffs and/or its agents have complied with all statutory conditions under the law.

21. As a result of the Defendant's failure and/or refusal to pay the aforesaid benefits due, the Plaintiffs suffered actual damages, exclusive of attorney's fees, costs, and interest.

22. The Plaintiffs have been caused to retain the undersigned and this law firm to enforce its rights against the Defendant for collision benefits and is thereby obligated to pay reasonable attorney's fee and costs.

23. The Plaintiffs are entitled to prevailing party attorney's fees, costs, and statutory interest pursuant to Florida Statutes §627.428.

WHEREFORE, the Plaintiffs, ASSAF SASSON and ADA SASSON, demand judgment against the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, in the amount greater than $8,000.00 but less than $15,000.00, for collision damages to Plaintiffs' vehicle, loss of use damages, attorney's fees, costs, interest, and further demands trial by jury for all issues so triable, and any

other relief that this Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by email

this 3rd day of April, 2023, to all registered participants of the Florida e-filing portal.

> Daren Stabinski P.A.
> 1213 N.E. First Street
> Fort Lauderdale, FL 33301
> Ph:  (954) 324-1552
> Fax: (954) 245-0739
> Email:  daren@darenstabinskipa.com
>
> ___/s/ *Daren Stabinski*_____
> Daren Stabinski, Esq.
> Fla. Bar No. 002951

**IN THE COUNTY COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. **COINX22049821**   DIVISION: **73**   JUDGE: **DeLuca, Steven P. (73)**

**Assaf Sasson**

Plaintiff(s) / Petitioner(s)

v.

**State Farm Mutual Automobile Insurance Company**

Defendant(s) / Respondent(s)

_____ /

**AGREED ORDER ON PLAINTIFF'S MOTION TO AMEND COMPLAINT**

This matter having come before the Court on Plaintiff's Motion to Amend Complaint filed on  April 3, 2023, and the Court having reviewed the motion, having been advised of the parties agreement, and being duly advised in the premises, hereby  **ORDERS**  and  **ADJUDGES** :

Granted.  The second amended complaint attached to Plaintiff's motion is deemed filed as of the date of this order.  Defendant shall have 10 days to respond.

**DONE AND ORDERED** in Chambers at Broward County, Florida on 10th day of April, 2023.

COINX22049821 04-10-2023 12:45 AM

COINX22049821 04-10-2023 12:45 AM
Hon. Steven P. DeLuca
**COUNTY COURT JUDGE**
Electronically Signed by Steven P. DeLuca

**Copies Furnished To:**
Christopher M. Paolini , E-mail : cpaolini@carltonfields.com
Christopher M. Paolini , E-mail : atokarz@carltonfields.com
Daren Stabinski , E-mail : daren@darenstabinskipa.com
Johanna W Clark , E-mail : dmontgomery@carltonfields.com
Johanna W Clark , E-mail : dmonge@carltonfields.com
Johanna W Clark , E-mail : jclark@carltonfields.com
Miguel A. Rodriguez , E-mail : atokarz@carltonfields.com
Miguel A. Rodriguez , E-mail : marodriguez@carltonfields.com

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. COINX-22-049821

ASSAF SASSON and
ADA SASSON,

Plaintiffs,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
Defendant.
_____/

## **SECOND AMENDED COMPLAINT**

COMES NOW, the Plaintiffs, ASSAF SASSON and ADA SASSON, by and through undersigned counsel, hereby sues the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and in support thereof alleges:

1. This is a petition within the jurisdictional limits of this Court exclusive of interest, costs, attorney's fees.

2. At all times material hereto, the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY was a duly authorized insurance company, organized and incorporated under the Laws of Florida or authorized to transact insurance business in the State of Florida.

3. At all times material hereto, the Plaintiff, ASSAF SASSON was and is over the age of 18 and sui juris.

4. Venue is proper in Broward County, Florida, because this claim arose in Broward County, Florida, and the Defendant sufficiently transacts business in Broward

County, Florida.

5. For valuable consideration, at all times material hereto, the Defendant, STATE

FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, issued a policy of

automobile insurance, that included collision benefits, which provided coverage to

Plaintiff under Policy Number J53-4643-B02-59C (A copy of the policy is attached

and incorporated by reference herein).

6. Pursuant to the terms thereof, the Defendant agreed to pay collision benefits to

repair or replace Plaintiffs' 2022 Porsche Taycan in the event of an accident under

the following terms:

*The Policy in this case contains a specific Limit of Liability provision that governs the payment obligations of State Farm as follows:*
*1. We have the right to choose to settle with or the owner of the covered vehicle in one of the following ways:*
    *a. Pay the cost to repair the covered vehicle minus any applicable deductible.*
        *1) We have the right to choose one of the following to determine the cost to repair the covered vehicle;*
            *a) The cost agreed to by both the owner of the covered vehicle and us; or*
            *b) A bid or repair estimate approved by us; or*
            *c) A repair estimate that is written based upon or adjusted to:*
                *i. The prevailing competitive price;*
                *ii. The lower of paintless dent repair pricing established by an agreement we have with a third party or the paintless dent repair price that is competitive in the market; or*
                *iii. A combination of (i) and (ii) above.*

7. On or about May 27, 2022, ADA SASSON, an insured under said policy, was

traveling in the above insured vehicle and was involved in an automobile accident

in Broward County, Florida.  Said vehicle was insured under said insurance

policy.

8.  Said automobile accident caused the Plaintiffs' vehicle to suffer damages.

9.  The Plaintiffs submitted a claim for collision benefits to the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for payment related to the damages to his automobile suffered in the above-mentioned motor vehicle accident, under claim number 59-34T0-34F.

10. The Plaintiffs have complied with all statutory conditions precedent to recovering benefits under said policy.

11. As the subject vehicle is a luxury foreign vehicle, on or about May 31, 2022, Plaintiff, ASSAF SASSON, brought the vehicle to Stuttgart International, in Broward County, Florida, a collision body shop that specializes in repairing such vehicles.

12. Stuttgart International created an estimate of repairs to the subject vehicle in the amount of $8,360.87.  Said estimate was provided to Defendant.

13. On or about July 1, 2022, Defendant created its own estimate of damages to the subject vehicle in the amount of $6,267.03, and only agreed to pay that amount for repair to the vehicle less a $500.00 deductible.

14. Plaintiffs did not agree to the amount to the amount of Defendant's estimate and Defendant did not approve the estimate provided by Stuttgart.

15. The repair estimate provided by Defendant was not based upon or adjusted to the prevailing competitive price.

16. Paintless dent repair could not repair the damages to Plaintiffs' vehicle.

17. To date, Defendant has refused and continues to refuse to pay Plaintiffs the amount of the estimate created by Stuttgart

International, which is the true the amount required to properly repair the subject luxury vehicle, or the prevailing competitive price to repair said vehicle, as required by the subject policy.

18. As a direct and proximate result of Defendant's failure to pay the full benefits under the subject policy, Plaintiffs suffered damages as a result thereof.

19. The Defendant has breached its contract with Plaintiff by failing to pay for the damages sustained by Plaintiffs in the above referenced accident.

20. The Plaintiffs and/or its agents have complied with all statutory conditions under the law.

21. As a result of the Defendant's failure and/or refusal to pay the aforesaid benefits due, the Plaintiffs suffered actual damages, exclusive of attorney's fees, costs, and interest.

22. The Plaintiffs have been caused to retain the undersigned and this law firm to enforce its rights against the Defendant for collision benefits and is thereby obligated to pay reasonable attorney's fee and costs.

23. The Plaintiffs are entitled to prevailing party attorney's fees, costs, and statutory interest pursuant to Florida Statutes §627.428.

WHEREFORE, the Plaintiffs, ASSAF SASSON and ADA SASSON, demand judgment against the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, in the amount greater than $8,000.00 but less than $15,000.00, for collision damages to Plaintiffs' vehicle, loss of use damages, attorney's fees, costs, interest, and further demands trial by jury for all issues so triable, and any

other relief that this Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by email

this 3rd day of April, 2023, to all registered participants of the Florida e-filing portal.

Daren Stabinski P.A.
1213 N.E. First Street
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

____/s/ *Daren Stabinski*_____
Daren Stabinski, Esq.
Fla. Bar No. 002951

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

        CASE NO: COINX-22-049821

        Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/

### DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S AMENDED[1] NOTICE OF TAKING DEPOSITION DUCES TECUM OF NON-PARTY

    **PLEASE TAKE NOTICE** that pursuant to Rule 1.310, Florida Rules of Civil Procedure, the undersigned will take the deposition of the following non-party on the date and at the time and place indicated:

| NAME | DATE / TIME | LOCATION |
|------|-------------|----------|
| **Stuttgart International's Corporate Representative** | **April 12, 2023 at 11:00 A.M.** | **Remote via Zoom**<br><br>**https://carltonfields.zoom.us/j/98899933769?pwd=S0JscjR6TThZK2wzVGhnc1ErS2J0dz09**<br><br>**Meeting ID: 988 9993 3769**<br>**Passcode: 821399** |

    The deposition will be taken upon oral examination before Veritext Legal Solutions, Court Reporter and Notary Public in and for the State of Florida at Large, or some other officer duly authorized by law to take deposition.

    The deponent is required to bring with them to the deposition the following:

**See "SCHEDULE A" attached hereto**

---

[1] Amended to reflect 11:00 A.M. start time.

132621558.1

This deposition is being taken for the purpose of discovery on all matters, for use at trial, or both of the foregoing, or for such other purposes as are permitted under the applicable and governing rules, and will continue from day to day until completed.

Individuals who have a disability that may need accommodation should contact the undersigned seven (7) days prior to the deposition.

Dated: April 11, 2023        Respectfully submitted,

*/s/ Johanna W. Clark*
Johanna W. Clark
Florida Bar No.  196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:        (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: marodriguez@carltonfields.com (primary)
Email: dmonge@carltonfields.com (secondary)
Email: atokarz@carltonfields.com (secondary)
*Attorneys for Defendant, State Farm Mutual
Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 11, 2023, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 247-0739
Email:  daren@darenstabinskipa.com

       */s/ Johanna W. Clark*
       Johanna W. Clark

132621558.1

## SECHDULE A

## DEFINITIONS AND INSTRUCTIONS

1.     The term "writing" includes all documents, any written materials and all other media used to record or memorialize information, including but not limited to, information saved in computer memory, electronic mail, diskettes, hard drives, magnetic tape, audio tape, and video tape.

2.     The term "documents" means:

a.     all written, printed, typed, recorded or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in your actual or constructive possession, custody or control, including but not limited to, all writings, letters, correspondence, computer printout of emails or other communications, graphs, charts, photographs, films, estimates, supplements, receipts, invoices, contracts, ledgers, cancelled checks, books and records, internal memoranda, reports, studies, calendars, minutes, records of meetings, records of telephone conferences, pamphlets, training materials, accounting records (including financial as well as any inventory accounting), appraisals, telegrams, memoranda, notes (including handwritten notes), instructions, notebooks, records, agreements, address books, microfilm, notices, releases, waivers, assignments, summaries, invoices, checks, pay stubs, payment records, bills, drafts, data sheets, data compilations, computer data sheets, computer data compilations, work papers, work sheets, calendars, statistics, tape recordings, transcripts of tape recordings, phonograph records or data compilations from which information can be obtained or translated into reasonably usable form;

b.     The original and all other copies not absolutely identical;

c.     All drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not, all exhibits, attachments, or other materials affixed thereto; and

d.     All writings.

3.     The singular and plural forms of any word shall be interchangeable, as shall masculine and feminine pronouns.

4.     Connector words shall be construed conjunctively or disjunctively as necessary to

132621558.1

bring within the scope of any request any information which might otherwise be construed to be outside the scope.

5.     The term "person" includes any natural person, alive or deceased, and all other entities having legal existence, including but not limited to any corporation, organization, partnership, other business entity or association, and any government or governmental body, commission, department, committee, board or agency.

6.     "Communication" means any contact, oral or written, formal or informal, at any time or place, under any circumstance, in any manner, whereby a statement of any nature is transmitted or transferred, including any meeting or other conversation, and shall include, without limitation, any document relating to any such contact.

7.     The phrase "relating to," relates to," or "related to" as used in this request is intended to and shall be interpreted to mean relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, contradicts, or is logically or factually connected with the repairs, charges, services, freight, parts and materials, or any other issues related to repairs to **Assaf Sasson's 2022 Porsche Taycan RWD, VIN No. WP0AA2Y11NSA13378** (the "subject vehicle").

8.     If, in response to any of the document requests, you claim that a document or documents are privileged, please state, with regard to each designated document, the following:

    a.     The type of privilege claimed (e.g. attorney/client, work product, trade secret, etc.);

    b.     The type of document involved (e.g. letter, report, etc.);

    c.     The author or authors of the document;

    d.     All recipients of the document;

      e.     The date of the document; and

      f.     The subject matter of, or addressed by, the document.

9.     If any requested document that at one time existed is now lost, destroyed or discarded, please identify such document and provide as much of the following information as possible:

      a.     The type of document;

      b.     Its date;

      c.     The date or approximate date it was lost, destroyed or discarded;

      d.     The circumstances and manner in which it was lost, destroyed or discarded;

      e.     The reason or reasons the document was lost, destroyed, or discarded.

10.     Unless otherwise indicated in a specific request, the time period covered by these requests is from August 1, 2021 through the present.

132621558.1

## **ITEMS TO BE PRODUCED**

1.      Stuttgart International's entire file and any documents, including but not limited to all photographs and electronically stored information in its original format and organization, relating to repairs, parts, inspections, shipping, and/or labor performed, or labor directed to be performed, on Assaf Sasson's vehicle by Stuttgart International at any time.

2.      Any and all documents submitted by Stuttgart International to State Farm related to the subject vehicle.

3.      Any and all time records, reports, timecards, payroll information or any other documents reflecting the name of the person(s) who worked on the subject vehicle.

4.      Any and all time records, reports, timecards, payroll information or any other documents reflecting the amount of time each person who worked on the subject vehicle spent performing the repairs.

5.      Any and all documents, evidencing or relating to any contact or communications between Stuttgart International and Assaf Sasson regarding the repair of the subject vehicle, or otherwise pertaining to his claim for insurance benefits from State Farm.

6.      Any and all documents, evidencing the amount Assaf Sasson has been charged by Stuttgart International for the auto body repairs at issue in this litigation, including any outstanding balances still owed.

7.      Any and all documents, evidencing the amount Assaf Sasson has paid Stuttgart International's for the auto body repairs at issue in this litigation.

8.      Any and all documents, evidencing any agreement or contract between Stuttgart International's and Assaf Sasson.

6

9.      Copies of all documentation evidencing repairs made to the subject vehicle, which Stuttgart International's and/or Assaf Sasson contend, have not been reimbursed under the subject insurance policy as well as all documents evidencing the amount charged to Assaf Sasson for such repairs.

10.      To the extent not requested above, any and all documents that support Assaf Sasson's claim or Stuttgart International's claim that either is entitled to additional benefits under the subject insurance policy for repairs made to the subject vehicle.

132621558.1

**IN THE COUNTY COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. **COINX22049821**   DIVISION: **73**   JUDGE: **DeLuca, Steven P. (73)**

**Assaf Sasson**

Plaintiff(s) / Petitioner(s)

v.

**State Farm Mutual Automobile Insurance Company**

Defendant(s) / Respondent(s)

_____/

**AGREED ORDER STRIKING LOSS OF USE CLAIM WITHOUT PREJUDICE**

THIS CAUSE came before the Court upon the agreement of the parties, and the Court, having reviewed Plaintiffs' Second Amended Complaint and being duly advised of the agreement of the parties, hereby ORDERS that Plaintiffs' claim for "loss of use" in the Wherefore clause of the Second Amended Complaint is stricken without prejudice as such a claim is extra-contractual and not properly raised in a first party breach of contract claim.  *See Covington v. State Farm Fire & Cas. Co.*, 330 So.3d 943, 946 (Fla. 4th DCA 2021).

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>18th day of April, 2023</u>.

<u>COINX22049821 04-18-2023 12:33 PM</u>
Hon. Steven P. DeLuca
**COUNTY COURT JUDGE**
Electronically Signed by Steven P. DeLuca

**Copies Furnished To:**
Christopher M. Paolini , E-mail : cpaolini@carltonfields.com
Christopher M. Paolini , E-mail : atokarz@carltonfields.com
Daren Stabinski , E-mail : daren@darenstabinskipa.com
Johanna W Clark , E-mail : dmontgomery@carltonfields.com
Johanna W Clark , E-mail : dmonge@carltonfields.com

Johanna W Clark , E-mail : jclark@carltonfields.com
Miguel A. Rodriguez , E-mail : atokarz@carltonfields.com
Miguel A. Rodriguez , E-mail : marodriguez@carltonfields.com

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON                                                    CASE NO. COINX-22-049821

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant.
_____/

### NOTICE OF TAKING DEPOSITION
### (date and time coordinated with Defendant and Defendant will produce witness)

PLEASE TAKE NOTICE that the undersigned will take the deposition of:

**NAME:**            **JOHN HENRIQUEZ**

**DATE & TIME:**     **Wednesday, April 19, 2023 at 2pm**

**LOCATION:**        **Via Zoom (link to be provided)**

Upon oral examination before **Milestone Reporting**, Notary Public, or any other Notary Public or officer authorized by law to take depositions in the State of Florida. The oral examination(s) will continue from day to day until completed. The deposition is being taken for the purpose of discovery, for use at trial or for such other purposes as are permitted under Fla.R.Civ.1.280., 1.310, 1.350, 1.360, 1.380, 1.390, 1.410; or Fed.R.Civ.P.30.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of this response was served to all registered parties of the Florida E-Filing Portal this April 18, 2023.

DAREN STABINSKI, P.A.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
(954) 324-1552
daren@darenstabinskipa.com

/s/ Daren Stabinski, Esq.
Fla. Bar. No. 002951

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON and
ADA SASSON,

                Plaintiffs,

CASE NO: COINX-22-049821

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Defendant.

_____/

## STATE FARM'S ANSWER AND DEFENSES TO SECOND AMENDED COMPLAINT

Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), by and through the undersigned counsel, hereby files its Answer and Defenses to Plaintiffs' Second Amended Complaint by specifically denying each and every allegation not expressly and specifically admitted hereafter, and in further answer to the enumerated paragraphs of the Second Amended Complaint states:

1.      State Farm admits that Plaintiffs purport to assert an action for damages that within the jurisdictional limits of this Court, exclusive of interest, costs and attorneys' fees, but denies that Plaintiffs have asserted such an action or that Plaintiffs are entitled to recovery of any damages.

2.      State Farm admits that it is a corporation licensed to do business in Florida and that it handles insurance claims throughout the state. Otherwise, denied.

3.      State Farm is without knowledge as to whether Assaf Sasson was and is over the age of 18 and *sui juris* and therefore denies the same.

4.      State Farm admits the allegations in paragraph 4 for venue purposes only. Otherwise, denied.

5.      State Farm admits that a policy of insurance was issued by State Farm to Assaf Sasson and Ada Sasson and that the policy speaks for itself. Otherwise, denied.

6.      State Farm admits that a policy of insurance was issued by State Farm to Assaf Sasson and Ada Sasson and that the policy speaks for itself. Otherwise, denied.

7.      State Farm admits that on or about June 1, 2022, it received notice of an accident that reportedly occurred on May 27, 2022 involving a vehicle insured under Assaf and Ada Sasson's State Farm automobile insurance policy. Otherwise, denied.

8.      State Farm is without knowledge and therefore denies the allegations contained in Paragraph 8 of the Second Amended Complaint.

9.      State Farm admits that on or about June 1, 2022, it received notice of an accident that reportedly occurred on May 27, 2022 involving a vehicle insured under Assaf and Ada Sasson's State Farm automobile insurance policy and assigned claim number 59-34T0-34F to the reported loss. Otherwise, denied.

10.     State Farm denies the allegations contained in Paragraph 10 of the Second Amended Complaint.

11.     State Farm is without knowledge and therefore denies the allegations contained in Paragraph 11 of the Second Amended Complaint.

12.     State Farm admits that on June 2, 2022 State Farm received a document dated June 2, 2022 and titled "Preliminary Estimate" which includes a "grand total" of $8,360.87. State Farm denies the remaining allegations in Paragraph 12 of the Second Amended Complaint.

13.     State Farm admits that on or about July 1, 2022, State Farm created its Supplement of Record 1 Summary for the subject loss in the amount of $6,267.03 and State Farm issued a payment of $5,767.03 to Stuttgart International Auto Body after applying the

2

132699010.1

subject policy's applicable deductible.  State Farm denies the remaining allegations in Paragraph 13 of the Second Amended Complaint.

14.     State Farm admits that it issued a $6,267.03 payment to Stuttgart International Auto Body in accordance with the terms, conditions and limitations of the subject policy.  State Farm admits it did not approve Stuttgart's estimate.  State Farm denies the remaining allegations in Paragraph 14 of the Second Amended Complaint.

15.     State Farm denies the allegations contained in Paragraph 15 of the Second Amended Complaint.

16.      State Farm denies the allegations contained in Paragraph 16 of the Second Amended Complaint.

17.     State Farm denies the allegations contained in Paragraph 17 of the Second Amended Complaint.

18.     State Farm denies the allegations contained in Paragraph 18 of the Second Amended Complaint.

19.     State Farm denies the allegations contained in Paragraph 19 of the Second Amended Complaint.

20.     State Farm denies the allegations contained in Paragraph 20 of the Second Amended Complaint.

21.     State Farm denies the allegations contained in Paragraph 21 of the Second Amended Complaint.

22.     State Farm is without knowledge of Plaintiffs' arrangement with counsel and therefore denies the allegations contained in Paragraph 22 of the Second Amended Complaint.

132699010.1

23.     State Farm denies the allegations contained in Paragraph 23 of the Second Amended Complaint.

State Farm denies the allegations within the "Wherefore" paragraph of the Second Amended Complaint.

## DEFENSES AND AFFIRMATIVE DEFENSES

1.      Plaintiffs' action is barred and defeated in whole or in part because the damages claimed are not reasonable or necessary, or both, and/or because the damages claimed exceed the limit of liability for collision coverage under the policy.

2.      Plaintiffs' action is barred in whole or in part because the damages claimed by Plaintiffs were not caused by or attributable to the loss event reported to State Farm or alleged in the operative Second Amended Complaint.

3.      Plaintiffs' claim is barred, in whole or in part, and/or any recovery by the Plaintiffs must be reduced, by virtue of any fault and/or comparative fault of the Plaintiffs or Plaintiffs' representative(s), which substantially contributed to the actions complained about and the damages claimed. For example, any excess repair time or actions that may be at issue in this case are the fault of the Plaintiffs and/or Plaintiffs' representative(s) and, accordingly, damages so-caused are not recoverable from State Farm.

4.      Plaintiffs' action is barred or defeated in whole or in part and/or recovery must be reduced because the Plaintiffs failed to reasonably mitigate Plaintiffs' damages by authorizing repairs that exceed the coverage under the policy.

5.      Defendant is entitled to a setoff of all payments made for operations, parts, procedures, etc., that were not charged or performed, or both, for repairs to the subject vehicle.

4

6.     State Farm reserves the right to amend and supplement its defenses as discovery proceeds.

## DEMAND FOR JURY TRIAL

State Farm demands trial by jury on all issues so triable as of right.

Dated:  April 20, 2023

Respectfully submitted,

/s/ Johanna W. Clark
Johanna W. Clark
Florida Bar No.  196400
Miguel A. Rodriguez
Florida Bar No. 1002585
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:        (407) 648-9099
Email: jclark@carltonfields.com (*primary*)
Email: marodriguez@carltonfields.com (*primary*)
Email: dmonge@carltonfields.com (*secondary*)
Email: atokarz@carltonfields.com (*secondary*)
*Attorneys for Defendant, State Farm Mutual Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 20, 2023, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com

/s/ Johanna W. Clark
JOHANNA W. CLARK

5

132699010.1

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON and ADA SASSON,

          Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant.

_____/

CASE NO: COINX-22-049821

## SECOND JOINT MOTION TO AMEND CASE MANAGEMENT ORDER

Plaintiffs, Assaf Sasson and Ada Sasson and Defendant, State Farm Mutual Automobile Insurance Company, by and through the undersigned counsel, hereby file their Second Joint Motion to Amend the Court's November 2, 2022 Case Management Order, as amended (the "Order"), for the reasons set forth below.

1.      Plaintiff served this breach of contract action on State Farm on August 19, 2022.

2.      Plaintiff alleges that his vehicle, which was insured by State Farm at the time of the underlying loss, was involved in a collision and that Plaintiff is owed insurance proceeds pursuant to the applicable contract of insurance

3.      On November 2, 2022, this Court entered a Case Management Order setting forth various deadlines, including, but not limited to:

    a.    All discovery to be completed no later than ninety (90) days from the date of the Order (January 31, 2023);

    b.    A Joint Pre-Trial Stipulation to be filed and a copy delivered to the Court no later than one hundred (100) days from the date of the Order (February 10, 2023); and

1

132721651.1

    c.   For mediation to be completed within one hundred five (105) days of the date of the Order (February 15, 2023)

4.    On January 30, 2023, the Court extended the deadlines in the Order by ninety (90) days.

5.    Because the parties are still engaged in discovery, including depositions of fact witnesses and of the parties' experts, and because of the need for additional discovery to prepare dispositive motions, the parties respectfully request this Court to amend the Order to allow additional time for the parties to complete discovery prior to the pre-trial conference and trial.

6.    Specifically, the parties respectfully request that the deadlines set forth in the Order be extended by one an additional sixty (60) days.

7.    This motion is made in good faith and not to cause unreasonable delay. Nor will either party be prejudiced by the relief sought in this motion.

WHEREFORE, Plaintiffs, Assaf Sasson and Ada Sasson, and Defendant, State Farm Mutual Automobile Insurance Company respectfully request this Court Amend the Court's Case Management Order by extending the deadlines therein by and additional sixty (60) days for the reasons set forth above.

**THIS SPACE HAS BEEN INTENTIONALLY LEFT BLANK**
*Signature page and Certificate of Service Follow*

Dated: April 20, 2023

Respectfully submitted,

| | |
|---|---|
| /s/ Johanna W. Clark | /s/ Daren Stabinski |
| Johanna W. Clark [ | Daren Stabinski, Esq. |
| Florida Bar No. 196400 | DAREN STABINSKI, P.A. |
| Miguel A. Rodriguez | 100 N. Federal Highway, #524 |
| Florida Bar No. 1002585 | Ft. Lauderdale, FL 33301 |
| CARLTON FIELDS, P.A. | Ph: (954) 324-1552 |
| 200 S. Orange Avenue, Suite 1000 | Fax: (954) 245-0739 |
| Orlando, Florida 32801 | Email: daren@darenstabinskipa.com |
| Phone:   (407) 849-0300 | |
| Fax:       (407) 648-9099 | |
| Email: jclark@carltonfields.com (primary) | |
| Email: marodriguez@carltonfields.com (primary) | |
| Email: atokarz@carltonfields.com (secondary) | |
| Email: dmonge@carltonfields.com (secondary) | |
| *Attorneys for Defendant, State Farm Mutual Automobile Insurance Company* | |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 20, 2023, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

| | |
|---|---|
| Johanna W. Clark [ | Daren Stabinski, Esq. |
| Florida Bar No. 196400 | DAREN STABINSKI, P.A. |
| Miguel A. Rodriguez | 100 N. Federal Highway, #524 |
| Florida Bar No. 1002585 | Ft. Lauderdale, FL 33301 |
| CARLTON FIELDS, P.A. | Ph: (954) 324-1552 |
| 200 S. Orange Avenue, Suite 1000 | Fax: (954) 245-0739 |
| Orlando, Florida 32801 | Email: daren@darenstabinskipa.com |
| Phone:   (407) 849-0300 | |
| Fax:       (407) 648-9099 | |
| Email: jclark@carltonfields.com (primary) | |
| Email: marodriguez@carltonfields.com (primary) | |
| Email: atokarz@carltonfields.com (secondary) | |
| Email: dmonge@carltonfields.com (secondary) | |

/s/ Johanna W. Clark
Johanna W. Clark

3

**IN THE COUNTY COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. **COINX22049821**   DIVISION: **73**   JUDGE: **DeLuca, Steven P. (73)**

**Assaf Sasson**

Plaintiff(s) / Petitioner(s)

v.

**State Farm Mutual Automobile Insurance Company**

Defendant(s) / Respondent(s)

_____/

## AGREED ORDER ON SECOND JOINT MOTION TO AMEND NOVEMBER 2, 2022 CASE MANAGEMENT ORDER

This matter having come before the Court on the parties' Second Joint Motion to Amend November 2, 2022 Case Management Order, and the Court having reviewed the motion, having been advised of the parties agreement, and being duly advised in the premises, hereby **ORDERS** and **ADJUDGES**:

1. The deadlines set forth in the November 2, 2022 Case Management Order are hereby extended by an additional sixty (60) days.

**DONE AND ORDERED** in Chambers at Broward County, Florida on 22nd day of April, 2023.

COINX22049821 04-22-2023 8:54 PM

COINX22049821 04-22-2023 8:54 PM
Hon. Steven P. DeLuca
**COUNTY COURT JUDGE**
Electronically Signed by Steven P. DeLuca

**Copies Furnished To:**
Christopher M. Paolini , E-mail : cpaolini@carltonfields.com
Christopher M. Paolini , E-mail : atokarz@carltonfields.com
Daren Stabinski , E-mail : jp@darenstabinskipa.com
Daren Stabinski , E-mail : daren@darenstabinskipa.com
Johanna W Clark , E-mail : dmontgomery@carltonfields.com
Johanna W Clark , E-mail : dmonge@carltonfields.com

Johanna W Clark , E-mail : jclark@carltonfields.com
Miguel A. Rodriguez , E-mail : atokarz@carltonfields.com
Miguel A. Rodriguez , E-mail : marodriguez@carltonfields.com

**IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. COINX-22-049821

ASSAF and ADA SASSON,
     Plaintiffs,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY
     Defendant.

_____/

## <u>MOTION FOR LEAVE TO AMEND COMPLAINT AND<br>THEN TRANSFER TO CIRCUIT COURT</u>

Plaintiffs, Assaf Sasson and Ada Sasson, by and through the undersigned counsel, move for leave to amend the complaint pursuant to Rule 1.190 and thereafter transfer the case to the Circuit Court pursuant to Rule 1.060(a), and state in support as follows:

1.    This case was initially filed in August 2022 for breach of contract against Defendant, State Farm Mutual Automobile Insurance Company ("State Farm") for failing to pay full collision benefits for the repair of the insured high value luxury vehicle as required under the insurance policy. During discovery, plaintiffs have recently learned that State Farm has been utilizing a consistent, yet non-compliant company practice for the determination of collision benefits on high value vehicles which fails to honor the requirements of the State Farm auto policy. Consequently, Plaintiffs seek leave to amend the complaint to assert a class action pursuant to Rule 1.220(c) on behalf of hundreds (and perhaps thousands) of State Farm automobile policy owners who insure their high value luxury cars with State Farm and have been similarly damaged. A copy of the proposed amended pleading is attached hereto as Exhibit 1.

2.     The undersigned counsel was recently retained as additional counsel for the plaintiffs and intends to file a notice of appearance in this action.

3.     Although the complaint was twice previously amended before the appearance of the undersigned[1], Plaintiffs now seek to amend its complaint for the reasons set forth herein.

4.     This amendment is not made for the purpose of delay, and amendments to pleadings under these circumstances are commonly granted.

5.     Once the pleading is amended to assert a class action, this case must be transferred to the Circuit Court since the Third Amended Complaint alleges a class action pursuant to Rule 1.220 alleging damages in excess of $50,000.  Accordingly, jurisdiction shall be properly situated with the Circuit Court because the Florida Supreme Court has held that the circuit court should have jurisdiction of a class action lawsuit "when the aggregated claims of the class meet the monetary jurisdictional requirement even though an individual claim of a class member does not reach that threshold." *See Diamond v. Elvis Towing, Inc.*, 268 So. 3d 249, 251–52 (Fla. 2d DCA 2019), *quoting Johnson v. Plantation Gen. Hosp. Ltd. P'ship*, 641 So.2d 58, 60 (Fla. 1994); *see also Galencare, Inc. v. Blanton*, 636 So.2d 547, 547 (Fla. 2d DCA 1994) ("[T]he circuit court's dollar jurisdiction may be satisfied by aggregating the value of each plaintiff's claim."), approved, 650 So.2d 42 (Fla. 1995); *Galen of Fla., Inc. v. Arscott*, 629 So.2d 856, 857 (Fla. 5th DCA 1993) ("[T]he amount of the claim of the entire class determines the dollar amount jurisdiction").

---

[1] The most recent prior amendment did not make substantive changes to the claims, but rather only added a party plaintiff (the co-owner of the subject vehicle).  Similarly, the initial amendment was accomplished to quote certain policy language and streamline the claims.  Thus, the right to amend has not be abused, and no Court has previously ruled upon the sufficiency or merits of the pleadings.

6.      Defendant will not be unfairly prejudiced by the granting of the relief sought in this motion.

7.      Plaintiffs are prepared to pay all additional filing fees and clerk's fees in connection with the transfer to Circuit Court, upon order of transfer or as directed by the clerk.

WHEREFORE, Plaintiffs, Assaf Sasson and Ada Sasson, respectfully request that this Court enter an order granting leave to amend, with the Third Amended Complaint being deemed filed, as well as an order directing the Clerk of the Court to transfer this case to the Circuit Court in and for the 17th Judicial Circuit, and all other relief deemed appropriate.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by email this 18th day of May, 2023, to all registered participants of the Florida e-filing portal.

**DAREN STABINSKI P.A.**
100 North Federal Highway, #524
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
Daren Stabinski, Esq.
Fla. Bar No. 002951

**KELLEY | UUSTAL PLC**
500 North Federal Highway, Suite 200
Fort Lauderdale, Florida 33301
Telephone: (954) 522-6601
Facsimile: (954) 522-6608
By: /s/ *Cristina M. Pierson*____
Cristina M. Pierson, Esq. (FBN 984345)
cmp@kulaw.com
johnet@kulaw.com

Attorneys for Plaintiffs

IN THE COUNTY COURT IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. COINX-22-049821

ASSAF SASSON and
ADA SASSON,

CLASS REPRESENTATION

       Plaintiffs,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY.

       Defendant.

_____/

## THIRD AMENDED COMPLAINT
### (Class Action)

Plaintiffs, ASSAF SASSON and ADA SASSON, by and through undersigned counsel, bring this class action pursuant to Florida Rule of Civil Procedure 1.220, on behalf of themselves and all others similarly situated ("Class Members"), against Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm" or "Defendant"), and in support thereof alleges:

## JURISDICTION, PARTIES, & VENUE

1.     This is a class action for damages exceeding $50,000, exclusive of attorney's fees, interest, and costs.

2.     At all times material, Plaintiffs and Class Representatives, Assaf and Ada Sasson, were residents of Broward County, Florida, and insured under an automobile policy issued by STATE FARM AUTOMOBILE INSURANCE COMPANY with collision benefits for a high-value luxury vehicle. A copy of the policy, Florida Policy Form 9810A, is attached hereto as Exhibit A.

EXHIBIT 1

3.      At all times material hereto, Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, was a duly authorized insurance company, organized and incorporated under the Laws of Florida, was authorized to transact insurance business in the State of Florida, and transacted its customary business through its agents and representatives in Broward County, Florida and throughout the state.

4.      Venue is proper because the events giving rise to the claims occurred in Broward County and the causes of action accrued in Broward County, where State Farm regularly conducts business.

5.      Any and all conditions precedent to the maintenance of this action have occurred, been performed, or have been waived.

## INTRODUCTION

6.      Plaintiffs bring this class action challenging State Farm's systemic and wrongful practice of refusing to pay for the proper and necessary collision repairs of its insureds' high-value, luxury automobiles, in accordance with policy terms. In that regard, State Farm made it part of their business model to deny necessary collision benefits by refusing to pay appropriate hourly labor rates for high-value luxury vehicles, like Plaintiffs, that have suffered damage in a collision.

7.      As customary for high-value, luxury automobiles, the manufacturers require collision repairs to be performed by a manufacturer's certified repair facility. This ensures that repairs are conducted in accordance with the manufacturer's specifications and preserves the original manufacturer warranty on the vehicle.  But State Farm, unlike other Florida insurers, refuses to pay the prevailing competitive price for the hourly labor rates at these certified repair facilities.  State Farm's denial of collision benefits in this manner violates the coverage provisions of State Farm's standard automobile policies and artificially reduces claims payments to the benefit of State Farm and to the detriment of its insureds.

8.      State Farm is one of the nation's largest automobile insurance companies and consistently ranks as one the three largest automobile insurers in Florida. In Florida alone, State Farm generates approximately $2.8 billion in premiums written annually, and comprises approximately 16% of the market share of automobile policies. State Farm sells collision coverage as part of its standard automobile insurance policies throughout Florida, and its practices relating to the payment of hourly rates for collision repairs have been uniform and consistent over at least the last five years.

9.      High-value, luxury vehicles are expensive and complex vehicles to repair after a collision. According to the manufacturers of such vehicles, i.e. Porsche, Mercedes-Benz, Bentley, BMW, and Maserati, proper repair requires a *certified* body shop whose technicians have been specially trained by the manufacturer and possess the sophisticated equipment necessary to repair the vehicle to the manufacturer specifications.

10.     A certified repair facility has the manufacturer's advanced technology and particular "know-how" necessary for proper repair of its vehicle safety systems and sophisticated components. Manufacturers warn vehicle owners that work that is not performed by a certified repair facility voids the manufacturer's warranty.  That consequence would diminish the vehicle's value and subject the vehicle owner to additional costs to maintain and own the vehicle.   Moreover, due to the high-tech nature of the safety systems, it is essential that a certified facility perform the repairs to ensure the specialized protective features have been properly returned to manufacturer specifications after a collision.

11.     In general, automobile insurers charge their insureds more premiums for collision coverage on high-value automobiles than other vehicles based upon the recognition that those vehicles are more expensive to repair after a collision. As explained above, collision repairs for such high-value luxury vehicles must be performed by a certified facility, and consequently, Plaintiffs and the class members are entitled to repairs by professionals within that repair market at those prevailing competitive prices.

12.     While State Farm knows of the prevailing competitive prices for that repair market, it has consistently refused to pay those hourly rates for necessary collision repairs despite its promises to "pay for loss caused by collision to a covered vehicle." *See* "Insuring Agreement" for "Collision Coverage" in the Policy at Exhibit A at 31.  For example, the prevailing competitive price for a Porsche certified facility to perform body and paint labor is $105 per hour based on the majority of the repair market comprised of properly certified facilities.  Yet, State Farm has uniformly rejected repair estimates that exceed $47 per hour for such work and refuses to pay the applicable prevailing rate of certified facilities without justification and contrary to its policy terms.

13.     In fact, the hourly rates for labor accepted by State Farm generally do not distinguish between models or types of cars.  So State Farm uses only one rate (whether it is a Porsche or a Hyundai) as the hourly rate for any vehicle in the same geographic area.

14.     State Farm's method of determining the cost of repair for collision damages to its insureds' high-value luxury vehicles does not comply with the requirements under the policy and results in a systematic underpayment of collision insurance payments to its insureds.

## FACTUAL ALLEGATIONS

15.     For valuable consideration, Defendant State Farm issued a policy of automobile insurance to Plaintiffs that included collision benefits, and specifically provided coverage for Plaintiffs' high value luxury vehicle, a 2022 Porsche Taycan ("the insured vehicle").  A copy of Policy Number J53-4643-B02-59C ("the policy") is attached as Exhibit A and incorporated herein by reference. The insured vehicle was purchased by Plaintiffs for more than $100,000, and is a high-tech, all-electric vehicle described as a "technology flagship" for Porsche.

16.     As reflected in the policy, the insured vehicle is listed as a covered vehicle and as such, Defendant agreed to pay for loss caused by a collision.

4

17.     On or about May 27, 2022, Plaintiff Ada Sasson, an insured under the policy, was traveling in the insured vehicle and was involved in an automobile collision in Broward County, Florida ("the collision").  The collision caused Plaintiffs' insured vehicle to suffer loss and damage.

18.     Plaintiffs submitted a claim for collision benefits (claim number 59-34T0-34F) to State Farm for payment related to the damages to the insured vehicle that resulted from the collision.

19.     The Limit of Liability provisions in the policy state that the cost to repair the insured vehicle would be determined as follows:

(1) *We* have the right to choose one of the following to determine the cost to re-pair the *covered vehicle*:

  (a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

  (b) A bid or repair estimate approved by *us*; or

  (c) A repair estimate that is written based upon or adjusted to:

    (i) the prevailing competitive price;

    (ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is com-petitive in the market; or

    (iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a ma-jority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a

survey made by *us*.  If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts suffi-cient to restore the *covered vehi-cle* to its pre-loss condition.

*See* Ex. A, Policy at 32-33.

20.     On or about May 31, 2022, Plaintiffs brought the vehicle to a Porsche dealership who referred Plaintiffs to a local collision body shop certified by Porsche to repair the insured vehicle as required by Porsche to preserve the manufacturer's vehicle warranty and to ensure the work was performed per Porsche's specifications. That Porsche-certified body shop, Stuttgart International, located in Broward County, Florida specializes in repairing high-value luxury vehicles -- like the insured vehicle.

21.     Stuttgart performs collision repairs for numerous insurance companies who pay its hourly labor rates in connection with work on high-value luxury vehicles.  Moreover, Stuttgart's hourly labor rates for Porsche collision repairs represent the prevailing competitive prices – i.e. the prices charged by a majority of the repair market in the area -- and are routinely accepted by Florida automobile insurance companies.

22.      Using these prevailing competitive prices, Stuttgart International created an estimate of repairs to the subject vehicle in the amount of $8,360.87.  This repair estimate was delivered to State Farm, but it was rejected.

23.     On or about July 1, 2022, State Farm created its own estimate of damages to the insured vehicle in the amount of $6,267.03 (based on alternative labor hourly rates that are not the prices charged in the repair market of certified facilities) and offered to pay only that amount for repair to the vehicle, less a $500.00 deductible.

24.     Plaintiffs did not approve or agree to the amount of State Farm's estimate.  And State Farm did not approve the repair estimate provided by Plaintiffs from Stuttgart, despite that Plaintiffs were entitled to have the insured vehicle restored to its "pre-loss condition" which required the collision repairs to be performed by a certified facility.  That would assure that the work was properly performed to manufacturer specifications (including all safety systems) and preserve the manufacturer's original factory warranty.

25.     The repair estimate provided by State Farm was not based upon or adjusted to the prevailing competitive price.  Moreover, paintless dent repair was not applicable and could not properly repair the damages to the insured vehicle.

26.     Despite Plaintiffs' demand and the carrier's admitted collision coverage obligations, State Farm has refused to pay the collision benefits in the total amount of $8,360.87. This is the amount (as reflected in the estimate created by Stuttgart International) that was required to repair the insured vehicle at the prevailing competitive price, pursuant to the subject policy.

27.     Plaintiffs were therefore forced to pay the difference between the State Farm estimate and the cost to repair the vehicle charged by Stuttgart to ensure their vehicle was properly repaired by a Porsche certified repair facility.

28.     Plaintiffs individually, and on behalf of those similarly situated, bring this class action seeking appropriate redress, remedies, and damages.  As shown by its pattern of refusing to pay the appropriate cost to repair collision damages on high-value luxury vehicles, State Farm has engaged and continues to engage in a widespread, recurring, and ongoing practice of improperly underpaying collision benefits and causing its insureds to pay additional monies out of their pockets to have their vehicles properly repaired by certified facilities, as well as suffer other significant harm to their insured vehicles.

## CLASS REPRESENTATION ALLEGATIONS

29.     *Compliance with Rule 1.220.*  Plaintiffs seek to certify a class on the claims for breach of contract (Count I) and breach of implied covenant of good faith and fair dealing (Count II).  As established herein, these claims are maintainable on behalf of a class and Plaintiffs have satisfied all of the prerequisites of Rule 1.220 as detailed below.

30.     *Class Definition*. Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated pursuant to Rule 1.220.   The Class is defined as follows:

All State Farm automobile policy owners (non-commercial) with a covered collision claim after September 1, 2018 involving an insured high-value luxury vehicle, where coverage was denied for the hourly labor rates of a manufacturer's certified facility.

Excluded from the Class are State Farm officers, employees, directors, and members of their immediate families; the legal representatives, heirs, successors or assigns of any such excluded party; and the judicial officer(s) to whom this action is assigned and members of their immediate families. Plaintiffs reserve the right to amend, modify, or expand the definition of the proposed class or add sub-classes as discovery proceeds before certification is determined by the Court.

31.     _Numerosity under Rule 1.220 (a) and (c)(2)(D)._  The members of the Class are so numerous that joinder of them is impractical. Upon information and belief, the Class consists of hundreds (and perhaps thousands) of members. Indeed, Defendant has handled thousands of automobile insurance claims for collision damage to high value luxury vehicles, including those manufactured by Porsche, Mercedes-Benz, Maserati, Bentley, BMW, and Land Rover, but failed to pay to have repairs performed by manufacturer certified facilities. The identity and precise number of class members is exclusively known by the Defendant and can be easily ascertained from Defendant and its records during discovery. State Farm has the ability to identify all members of the class, but at this time such specific information is not available to the Plaintiffs.

32.     _Commonality under Rule 1.220 (a) and (c)(2)(B)._  There is a well-defined community of interest in the questions of law and fact involving and affecting the proposed Class. These common questions relate to Defendant's practices at issue and predominate over any questions affecting only individuals. Such questions of law and fact common to the class include:

a.  Whether State Farm engaged is a systematic underpayment of collision losses to high value luxury vehicles;

b. Whether State Farm has a practice of refusing to pay appropriate hourly rates to repair high value luxury vehicles, like Plaintiffs, that have suffered damage in a collision;

c. Whether State Farm has a standard business practice of refusing to pay for collision losses on high value luxury vehicles where the estimate included hourly labor rates by manufacturer certified facilities;

d. Whether Defendant uniformly instructs its agents and employees follow this routine practice;

e. Whether State Farm has knowledge of the prevailing competitive prices for collision repairs by certified facilities;

f. Whether the hourly rates charged by certified body shops, like Stuttgart, are prevailing competitive prices;

g. Whether other Florida insurers routinely pay the prevailing competitive price of the hourly labor rates at properly certified repair facilities;

h. Whether Defendant's policy requires that the insured vehicle be returned to its pre-loss condition which requires repairs by a properly certified repair facility;

i. Whether State Farm's conduct in determining the cost of repair complies with its standard automobile insurance policy language;

j. Whether Defendant breached its contract of insurance and duties of good faith and fair dealing to its insureds;

k. Whether Defendant artificially reduced collision claim payments with such frequency to constitute a general business practice;

l. Whether Defendant continues to improperly reject estimates that include hourly rates charged by certified facilities; and

m. Whether the class members suffered damages and the proper measure of damages.

33.     _Typicality under Rule 1.220 (a) and (c)(2)(C)._  Plaintiffs' claims are typical of the claims that would be asserted by other members of the Class in that by proving their claims, Plaintiffs will prove the claims of all class members. Moreover, Plaintiffs claims similarly arise from the same wrongful conduct of Defendant.  Plaintiffs possess the same legal interest and rights pursuant to State Farm's policy language and have endured the same legal injury as all the class members: All class members have been denied collision benefits and all class members, like Plaintiffs, were similarly injured by Defendant's conduct. As such, Plaintiffs' interests coincide with, and not antagonistic to, those of other Class Members.

34.     _Adequacy under Rule 1.220 (a) and (c)(2)(D)._  Plaintiffs are adequate Class Representatives who have interests in common with the proposed class members and are committed to the vigorous prosecution of this action.  Plaintiffs are State Farm insureds that have expressed a willingness and desire to represent the interests of the class as a whole and have no conflicts with other Class Members.  Plaintiffs have retained the undersigned law firms who have extensive experience in class actions, insurance coverage disputes, and complex litigation, and who have the resources required to pursue this case.

35.     _Predominance under Rule 1.220(b)(3) & (c)(2)(E)._ The many questions of law and fact that are common to the claims predominate over any questions of law or fact affecting only individual members of the class. Those common questions of law and fact are detailed above in the "Commonality" paragraph and are incorporated herein by reference.

36.     _Superiority of Class Determination._  A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy.  Prosecution of separate actions by individual members of the class create a risk of inconsistent or varying adjudications of the same issues and burden the Court with hundreds (and perhaps thousands) of duplicative actions.  Since the issues referenced above will determine liability, it is far more desirable to proceed in a single action

before this Court than to be burdened with fractionalized litigation throughout Florida.  Moreover, absent a Class, the class members will continue to suffer damages and Defendant's wrongful conduct will continue without redress or remedy. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## Count I – Breach of Contract

37.     Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 36 as if fully set forth herein.

38.     Defendant issued automobile policies of insurance, in the form reflected in Exhibit A, which included collision coverage in exchange for premium payments. This is a valid contract providing Plaintiffs and the class member insureds with a right to seek collision benefits under the policy.

39.     After being involved with a covered collision, Plaintiffs and the class members timely filed claims seeking payment for the cost of repairing the covered high value luxury vehicles under the policy in order to restore their vehicles to their pre-loss condition. That involves the work being performed by a certified repair facility as mandated by the manufacturers.

40.     Despite delivery of an estimate for the cost of repair at prevailing competitive prices, State Farm refused to pay the cost of repair charged by certified facilities.

41.     Defendant materially breached its contracts by failing and refusing to pay the collision benefits as submitted by the Plaintiffs and class members in a timely manner.

42.     As a direct and proximate result of the breach of contract, Plaintiffs and the class members have sustained damages. Indeed, benefits remain unpaid as a result of Defendant's improper denial of

collision repair costs pursuant to the terms of the insurance policy.   Moreover, Plaintiffs and the Class Members have incurred out of pocket losses and other harm alleged herein.

43.     Due to Defendant's failure to pay collision benefits in accordance with its policy, Plaintiffs and class members had to retain counsel to prosecute this suit.  Plaintiffs and the class members are entitled to an award of attorney's fees against State Farm according to § 627.428, Florida Statutes.

WHEREFORE, Plaintiffs demand judgment against Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for themselves and the class members as follows:

a.   Certifying this matter as a class action pursuant to Rule 1.220;

b.   Designating Plaintiffs as class representatives and the undersigned as class counsel;

c.   Awarding Plaintiffs and the class members their damages for breach of contract and denial of benefits, prejudgment interest from the date payment was overdue at the statutory rate;

d.   Enjoining Defendant's ongoing practice of denying coverage for hourly labor rates of certified facilities;

e.   Awarding attorneys' fees and costs to the Plaintiffs and Class; and

f.   Granting such other relief as the Court may deem just and proper.

### COUNT II – Breach of Implied Covenant of Good Faith and Fair Dealing

44.      Plaintiffs reallege and incorporate the allegations of paragraphs 1 through 36, 38 through 40, and 43, as if fully set forth herein.

45.     Every contract in Florida includes an implied covenant of good faith and fair dealing.

46.     Defendant materially breached the implied covenant of good faith and fair dealing by preventing class members from using certified facilities for repairs of their high value luxury vehicles in order to artificially reduce collision claims payments. As a result, Defendant has left its class member insureds with either having to pay out of pocket for covered repairs or having to take risks with repairs performed by non-certified facilities (including failure to satisfy manufacturer specifications and voiding the manufacturer's factory warranty).

47.     Contrary to its obligations of good faith to its insureds, Defendant directed that repairs be performed at non-certified facilities, despite that manufacturer requirements that work be performed only by certified facilities. Making matters worse, Defendant did not warn or inform its insureds of the risks involved with proceeding with collision repairs at a non-certified facility.

48.     Defendant engaged in this wrongful conduct as part of a pattern and practice designed to artificially reduce its collision claims payments irrespective of its obligations to its insureds.

49.     As a direct and proximate result of the material breach of the implied covenant of good faith and fair dealing, Plaintiffs and the class members have sustained damages, including out of pocket losses and harm to the insured vehicles.

WHEREFORE, Plaintiffs demand judgment against Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for themselves and the class members as follows:

    a.  Certifying this matter as a class action pursuant to Rule 1.220;
    b.  Designating Plaintiffs as class representatives and the undersigned as class counsel;
    c.  Awarding Plaintiffs and the class members their damages for breach of implied covenant of good faith and fair dealing, plus prejudgment interest at the statutory rate;
    d.  Enjoining Defendant's ongoing practice of denying coverage for hourly labor rates of certified facilities;
    e.  Awarding attorneys' fees and costs to the Plaintiffs and Class pursuant to applicable law relating to class actions; and
    f.  Granting such other relief to Plaintiffs and the Class as the Court may deem just, proper and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury on all issues so triable.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this 18th day of May, 2023, to all registered participants of the Florida e-filing portal.

**DAREN STABINSKI P.A.**
100 North Federal Highway, #524
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
daren@darenstabinskipa.com
Daren Stabinski, Esq.
Fla. Bar No. 002951

**KELLEY | UUSTAL PLC**
500 North Federal Highway, Suite 200
Fort Lauderdale, Florida 33301
Telephone: (954) 522-6601
Facsimile: (954) 522-6608
By: _/s/ Cristina M. Pierson_____
Cristina M. Pierson, Esq. (FBN 984345)
cmp@kulaw.com
johnet@kulaw.com
Attorneys for Plaintiffs and Putative Class Members



## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number J53 4643-B02-59B including any endorsements, if applicable, for the policy term(s) 04/19/2022 to 06/06/2022 and insuring SASSON, ASSAF & ADA L based on available records.

It is State Farm's business practice to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs. Therefore, the included Declarations Page which was in effect at the time of loss will indicate the policy period of the last policy issuance transaction.

The policy was in effect on the loss date of 05/27/2022.

Jessica Bass
Underwriter
Date: 09/13/2022

Exhibit A



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

State Farm®
**Car Policy**
Booklet

**Florida**
Policy Form 9810A

SF-Sasson, Assaf - 000289

# CONTENTS

**THIS POLICY** ...................................... 3

**DEFINITIONS** ...................................... 4

**LIABILITY COVERAGE (Bodily Injury and Property Damage)** ...................... 6

    Additional Definition .......................... 6
    Insuring Agreement ............................. 7
    Supplementary Payments ....................... 7
    Limits ............................................. 7
    Nonduplication.................................... 8
    Exclusions ....................................... 8
    If Other Liability Coverage Applies.................. 9
    Required Out-of-State Liability Coverage ....... 10
    Financial Responsibility Certification ........... 10

**PROPERTY DAMAGE LIABILITY COVERAGE** ........................................ 10

    Additional Definition .......................... 10
    Insuring Agreement ........................... 11
    Supplementary Payments ..................... 11
    Limit ............................................. 11
    Exclusions ..................................... 12
    If Other Property Damage Liability Coverage Applies ............................. 13
    Required Out-of-State Liability Coverage ....... 14
    Financial Responsibility Certification ........... 14

**NO-FAULT COVERAGE** ................................ 14

    Additional Definition .......................... 14
    Insuring Agreement ........................... 14
    Limits ........................................... 15
    Application of Any Deductible and Workers' Compensation Offset .......................... 17
    Partial Payment or Rejection of a Claim......... 17
    Nonduplication ................................. 17
    Exclusions ..................................... 17
    If Other No-Fault Coverage Applies............... 18
    Our Payment Options .......................... 18

**MEDICAL PAYMENTS COVERAGE** ............ 18

    Additional Definition .......................... 18
    Insuring Agreement ........................... 19
    Determining Medical Expenses .................. 20
    Limits ........................................... 20
    Nonduplication.................................. 21
    Exclusions...................................... 21
    If Other Medical Payments Coverage or Similar Vehicle Insurance Applies .................. 23
    Our Payment Options.......................... 24

**UNINSURED MOTOR VEHICLE COVERAGE (Stacking)** ........................................ 24

    Additional Definitions.......................... 24
    Insuring Agreement ........................... 25
    Consent to Settlement.......................... 25
    Deciding Fault and Amount..................... 25
    Limits ........................................... 25
    Nonduplication ................................. 26
    Exclusions ..................................... 26
    If Other Uninsured Motor Vehicle Coverage Applies ......................................... 26
    Our Payment Options .......................... 26

**UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking)** .................................... 27

    Additional Definitions.......................... 27
    Insuring Agreement ........................... 27
    Consent to Settlement.......................... 27
    Deciding Fault and Amount .................... 28
    Limits ........................................... 28
    Nonduplication ................................. 28
    Exclusions ..................................... 28
    If Other Uninsured Motor Vehicle Coverage Applies ......................................... 29
    Our Payment Options .......................... 30

**PHYSICAL DAMAGE COVERAGES** ........... 30

    Additional Definitions.......................... 30
    Insuring Agreements .......................... 31
    Supplementary Payments – Comprehensive Coverage and Collision Coverage ................. 32
    Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage ................. 32
    Limits – Car Rental and Travel Expenses Coverage ....................................... 33
    Nonduplication ................................. 34
    Exclusions ..................................... 34
    If Other Physical Damage Coverage or Similar Coverage Applies................................ 35
    Financed Vehicle .............................. 36
    Our Payment Options .......................... 36

SF-Sasson, Assaf - 000290

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE** ...................... 36

Additional Definition ........................................ 36
Insuring Agreement ......................................... 36
Benefit ............................................................ 36
Exclusions ........................................................ 37
Our Payment Options ...................................... 38

**INSURED'S DUTIES** ........................................ 38

Insured's Duty at the Time of an Accident or Loss ........................................................... 38
Notice to Us of an Accident or Loss ............... 38
Notice to Us of a Claim or Lawsuit ................ 38
Insured's Duty to Cooperate With Us ............. 38
Questioning Under Oath .................................. 38
Other Duties Under the Physical Damage Coverages ......................................... 39
Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage ............................. 39

**GENERAL TERMS** ........................................... 40

When Coverage Applies ................................... 40
Where Coverage Applies .................................. 40
Limited Coverage in Mexico ........................... 40
Persons Acting On Our Behalf ......................... 41
Newly Owned or Newly Leased Car ............... 42
Changes to This Policy .................................... 42
Premium .......................................................... 42
Renewal ........................................................... 43
Nonrenewal ..................................................... 43
Cancellation ..................................................... 43
Assignment ...................................................... 44
Bankruptcy or Insolvency of the Insured ........ 44
Concealment or Fraud ..................................... 44
Our Right to Recover Our Payments ............... 45
Mediation ........................................................ 45
Arbitration ....................................................... 46
Legal Action Against Us .................................. 46
Choice of Law ................................................. 48
Severability ..................................................... 48

## THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSEMENTS" on the Declarations Page, in reliance on the following statements:

      (1) *You* are the sole owner of *your car*.

      (2) Neither *you* nor any member of *your* household has, within the past three years, had either:

         (a) a license to drive; or

         (b) a vehicle registration

         suspended, revoked, or refused.

      (3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:

   a. the statements in 3.b. above are made by such named insured or applicant and are true; and

   b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow:

   a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

   b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary.

SF-Sasson, Assaf - 000291

Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

# DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

*Bodily Injury* means bodily injury to a *person* and sickness, disease, or death that results from it.

*Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads. *Car* does not include:

1.  Any vehicle while located for use as a dwelling or other premises; or

2.  A truck-tractor designed to pull any type of trailer.

*Car Business* means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

*Emergency Medical Condition* means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

1.  Serious jeopardy to patient health;

2.  Serious impairment to bodily functions; or

3.  Serious dysfunction of any bodily organ or part.

*Fungi* means any type or form of fungus or fungi and includes:

1.  Mold;

2.  Mildew; and

3.  Any of the following that are produced or released by fungi:

    a.  Mycotoxins;

    b.  Spores;

    c.  Scents; or

    d.  Byproducts.

*Medical Expenses* means *reasonable charges* incurred for *medically necessary* medical, surgical, X-ray, dental, and rehabilitative services, including *medically necessary* prosthetic devices and *medically necessary* ambulance, hospital, and nursing services.

*Medical Expenses* do not include any:

1.  massage as defined in s. 480.033, Florida Statutes;

2.  acupuncture as defined in s. 457.102, Florida Statutes;

3.  services, care, treatment, or supplies provided by any massage therapist; or

4.  services, care, treatment, or supplies provided by any acupuncturist.

*Medically Necessary* means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

1.  in accordance with generally accepted standards of medical practice;

2.  clinically appropriate in terms of type, frequency, extent, site, and duration; and

3.  not primarily for the convenience of the patient, physician, or other healthcare provider.

*Motor Vehicle* means a vehicle with four or more wheels that:

1.  is self-propelled and is of a type:

    a.  designed for; and

    b.  required to be licensed for use on Florida highways; or

2.  is a trailer or semitrailer designed for use with a vehicle described in 1. above.

*Motor Vehicle* does not include:

1.  a mobile home; or

2.  any motor vehicle which is:

    a.  used in mass transit, other than public school transportation;

    b.  designed to transport more than five passengers, exclusive of the operator; and

SF-Sasson, Assaf - 000292

c.  *owned by* a municipality, a transit authority, or a political subdivision of the state.

*Newly Acquired Car* means a *car* newly *owned by you*. A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you*.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you*.

*No-Fault Act* means the Florida Motor Vehicle No-Fault Law and any amendments.

*Non-Owned Car* means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1. is *owned by*:
   a.  *you*;
   b.  any *resident relative*;
   c.  any other *person* who resides primarily in *your* household; or
   d.  an employer of any *person* described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:
   a.  *you*; or
   b.  any *resident relative*

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

*Occupying* means in, on, entering, or exiting.

*Our* means the Company issuing this policy as shown on the Declarations Page.

*Owned By* means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 6 months or more, to.

*Pedestrian* means a *person* who is not *occupying*:

1. a motor vehicle; or

2. a vehicle designed to be pulled by a motor vehicle.

*Person* means a human being.

*Private Passenger Car* means:

1. a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:
   a.  while not used for:
      (1) wholesale; or
      (2) retail

      pickup or delivery; and
   b.  that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

*Reasonable Charge*, which includes reasonable expense, means an amount determined by *us* to be reasonable in accordance with the *No-Fault Act*, considering one or more of the following:

1. usual and customary charges;

2. payments accepted by the provider;

3. reimbursement levels in the community;

4. various federal and state medical fee schedules applicable to *motor vehicle* and other insurance coverages;

5. the schedule of maximum charges in the *No-Fault Act*,

6. other information relevant to the reasonableness of the charge for the service, treatment, or supply; or

7. Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, if the coding policy or payment methodology does not constitute a utilization limit.

*Relative* means a relative of any degree by blood or marriage who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

*Resident Relative* means a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

SF-Sasson, Assaf - 000293

2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

***State Farm Companies*** means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

***Temporary Substitute Car*** means a *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a ***non-owned car*** and a ***temporary substitute car***, then it is considered a ***temporary substitute car*** only.

***Trailer*** means:

1. a trailer:

   a. designed to be pulled by a ***private passenger car***;

b. not designed to carry ***persons***; and

c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a *car*.

***Us*** means the Company issuing this policy as shown on the Declarations Page.

***We*** means the Company issuing this policy as shown on the Declarations Page.

***You*** or ***Your*** means the named insured or named insureds shown on the Declarations Page.  If a named insured shown on the Declarations Page is a ***person***, then "*you*" or "*your*" includes the spouse of the first ***person*** shown as a named insured if the spouse resides primarily with that named insured.

***Your Car*** means the vehicle shown under "YOUR CAR" on the Declarations Page.  ***Your Car*** does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask *us* to replace it with a *car* newly ***owned by you***, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly ***owned by you*** is delivered to *you*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.

## LIABILITY COVERAGE (Bodily Injury and Property Damage)

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

### Additional Definition

***Insured*** means:

1. *you* and ***resident relatives*** for:

   a. the ownership, maintenance, or use of:

      (1) *your car*;

      (2) a ***newly acquired car***; or

      (3) a ***trailer***; and

   b. the maintenance or use of:

      (1) a ***non-owned car***; or

      (2) a ***temporary substitute car***;

2. the first ***person*** shown as a named insured on the Declarations Page and that named insured's

spouse who resides primarily with that named insured for the maintenance or use of a *car* that is ***owned by***, or furnished by an employer to, a ***person*** who resides primarily in *your* household, but only if such *car* is neither ***owned by***, nor furnished by an employer to, the first ***person*** shown as a named insured on the Declarations Page or that ***person's*** spouse;

3. any other ***person*** for his or her use of:

   a. *your car*;

   b. a ***newly acquired car***;

   c. a ***temporary substitute car***; or

   d. a ***trailer*** while attached to a *car* described in a., b., or c. above.

Such vehicle must be used with *your* express or implied permission; and

SF-Sasson, Assaf - 000294

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others; and

   b. damage to property

   caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from *bodily injury* to any one *person* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *persons* as a direct result of that *bodily injury*.

7
9810A

SF-Sasson, Assaf - 000295

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *persons* who sustained damages or emotional distress in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. that have already been paid under Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR *BODILY INJURY* TO:
   a. *YOU*;
   b. *RESIDENT RELATIVES*; AND
   c. ANY OTHER *PERSON* WHO BOTH RESIDES PRIMARILY WITH AN *INSURED* AND WHO:
      (1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR
      (2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees, or if this coverage, of this policy, is used to certify financial responsibility;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

7. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:
   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

9. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

11. FOR DAMAGE TO PROPERTY WHILE IT IS:
   a. *OWNED BY*;
   b. RENTED TO;
   c. USED BY;
   d. IN THE CARE OF; OR
   e. TRANSPORTED BY

8

9810A

SF-Sasson, Assaf - 000296

*YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE.  This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

12. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

13. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR

15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If liability coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

a. the liability coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies.  *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides liability coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides liability coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides liability coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

SF-Sasson, Assaf - 000297

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides liability coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PROPERTY DAMAGE LIABILITY COVERAGE

This policy provides Property Damage Liability Coverage if "B" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:

   a. the ownership, maintenance, or use of:

      (1) *your car*;

      (2) a *newly acquired car*; or

      (3) a *trailer*; and

   b. the maintenance or use of:

      (1) a *non-owned car*; or

      (2) a *temporary substitute car*;

2. the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household,

but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

3. any other *person* for his or her use of:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* express or implied permission; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

10
9810A

SF-Sasson, Assaf - 000298

## Insuring Agreement

1. *We* will pay damages an *insured* becomes legally liable to pay because of damage to property caused by an accident that involves a vehicle for which that   *insured* is provided Property Damage Liability Coverage by this policy;

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Property Damage Liability Coverage.

3. *We* will only defend an *insured* in a claim or lawsuit for damages payable under this policy's Property Damage Liability Coverage, that are caused by an accident for which that *insured* is provided Property Damage Liability Coverage by this policy.  If a claim or lawsuit seeks damages due to both property damage and *bodily injury*, then *we* will only defend the *insured* for property damage, and the *insured* will be required to hire and pay attorneys to defend the *insured* for damages due to *bodily injury*.

## Supplementary Payments

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Property Damage Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages.  *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

2. Court costs awarded by the court against an *insured* and resulting from that part of a lawsuit:

   a. that seeks damages payable under this policy's Property Damage Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Property Damage Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Property Damage Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.  *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*.

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*.  *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Property Damage Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Property Damage Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

## Limit

The Property Damage Liability Coverage limit for damage to property is shown on the Declarations Page under "Property Damage Liability Coverage – Limit – Each Accident".  The limit shown is the most *we* will pay for all damages resulting from damage to property  in any one accident.

SF-Sasson, Assaf - 000299

The Property Damage Liability Coverage limit is the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES DAMAGE TO PROPERTY;
2. FOR *BODILY INJURY*;
3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;
4. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;
5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;
6. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:
   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;
7. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;
8. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to

the maintenance or use of a *private passenger car*;

9. FOR DAMAGE TO PROPERTY WHILE IT IS:
   a. *OWNED BY*;
   b. RENTED TO;
   c. USED BY;
   d. IN THE CARE OF; OR
   e. TRANSPORTED BY

   *YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:
   a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;
   b. residence while rented to or leased to an *insured*;
   c. private garage while rented to or leased to an *insured*.
10. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;
11. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;
12. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:
    a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (12.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR
13. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

SF-Sasson, Assaf - 000300

**If Other Property Damage Liability Coverage Applies**

1. If property damage liability coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

   a. the property damage liability coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Property Damage Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides property damage liability coverage which applies to the accident as primary coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other property damage liability coverage that apply as primary coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides property damage liability coverage which applies to the accident as primary coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also

applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Property Damage Liability Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides property damage liability coverage which applies to the accident as excess coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other property damage liability coverage that apply as excess coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides property damage liability coverage which applies to the accident as excess coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as excess coverage.

SF-Sasson, Assaf - 000301

**Required Out-of-State Liability Coverage**

If:

1. an **insured** is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## NO-FAULT COVERAGE

This policy provides No-Fault Coverage if "P" with a number beside it is shown under "SYMBOLS" on the Declarations Page. "P" with a number beside it is **your** coverage symbol. Check **your** coverage symbol shown on the Declarations Page with the SCHEDULE in the Limits section. The Income Loss option **you** have selected is shown by **your** coverage symbol.

**Additional Definition**

**Insured** means:

1. named insureds and **relatives**:

   a. while **occupying** a **motor vehicle**;

   b. struck as a **pedestrian** by a **motor vehicle**; or

2. any other **person** while **occupying** or **struck** as a **pedestrian** by:

   a. **your car**;

   b. a **newly acquired car**;

   c. a **temporary substitute car**; or

   d. a **trailer** while attached to a **car** described in a., b., or c. above.

**Insuring Agreement**

**We** will pay in accordance with the **No-Fault Act** properly billed and documented **reasonable charges** for **bodily injury** to an **insured** caused by an accident resulting from the ownership, maintenance, or use of a **motor vehicle** as follows:

1. **Medical Expenses**

   **We** will pay 80% of properly billed and documented **medical expenses**, but only if that **insured** receives initial services and care from a provider described in A. below within 14 days

after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

**We** will not pay for any **medical expenses** if that **insured** does not receive initial services and care from a provider described in A. below within 14 days after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

**We** will only pay **medical expenses** for:

A. initial services and care:

   (1) lawfully provided, supervised, ordered or prescribed by:

      (a) a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

      (b) a dentist licensed under chapter 466 of the Florida Statutes; or

      (c) a chiropractic physician licensed under chapter 460 of the Florida Statutes;

   (2) provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

   (3) provided by a **person** or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

B. upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

14

9810A

SF-Sasson, Assaf - 000302

(1) a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

(2) a dentist licensed under chapter 466 of the Florida Statutes;

(3) a chiropractic physician licensed under chapter 460 of the Florida Statues; or

(4) to the extent permitted by applicable law and under the supervision of a **person** described in (1), (2), or (3) immediately above;

    (a) a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

    (b) an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

C. follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following **persons** or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

    (a) has a medical director licensed under chapter 458, chapter 459,

or chapter 460 of the Florida Statutes;

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

    i. general medicine;

    ii. radiography;

    iii. orthopedic medicine;

    iv. physical medicine;

    v. physical therapy;

    vi. physical rehabilitation;

    vii. prescribing or dispensing outpatient prescription medication; or

    viii. laboratory services.

2. **Income Loss**

*We* will pay, when properly documented, 60% of any loss of gross income and loss of earnings capacity per individual injured **insured** from that **insured's** inability to work that is proximately caused by the injury sustained by that individual **insured**.

3. **Replacement Services Loss**

*We* will pay, when properly documented, **reasonable charges** incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the individual injured **insured** would have performed without income for the benefit of his or her household.

4. **Death Benefits**

*We* will pay $5,000 per deceased individual **insured**.

**Limits**

1. *We* will not pay any charge that the **No-Fault Act** does not require **us** to pay, or the amount of any charge that exceeds the amount the **No-Fault Act** allows to be charged.

2. The most *we* will pay for each injured **insured** as a result of any one accident is $10,000 for all combined **Medical Expenses**, **Income Loss**, and **Replacement Services Loss**, described in the **Insuring Agreement** of this policy's No-Fault Coverage.

SF-Sasson, Assaf - 000303

The limit for **Medical Expenses** is $10,000 if a physician (excluding a chiropractic physician), a dentist, a physician assistant, or an advanced registered nurse practitioner described in 1.A. or 1.B under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* had an *emergency medical condition*.

The limit for **Medical Expenses** is $2,500 if any healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* did not have an *emergency medical condition*.

*We* will limit payment of **Medical Expenses** described in the **Insuring Agreement** of this policy's No-Fault Coverage to 80% of a properly billed and documented *reasonable charge*, but in no event will *we* pay more than 80% of the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

a.  For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b.  For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c.  For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d.  For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e.  For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f.  For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   (I)  The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

   (II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   (III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-subparagraph, then *we* will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

3.  *We* will pay a **Death Benefit** of $5,000 per deceased individual *insured*. **Death Benefits** are in addition to the **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** limit.

4.  SCHEDULE

| Coverage Symbol | Income Loss Benefits Eliminated For Named Insureds | Income Loss Benefits Eliminated For Named Insureds' Dependent *Relatives* |
|---|---|---|
| | | |
| P10 | No | No |
| P14 | Yes | Yes |
| P19 | Yes | No |

SF-Sasson, Assaf - 000304

**Application of Any Deductible and Workers' Compensation Offset**

1. The deductible amount, if any, is shown on the Declarations Page beside *your* coverage symbol. The deductible amount does not apply to **Death Benefits**.

   The deductible amount applies to:

   a. each named insured if "N" follows the deductible amount; or

   b. each named insured and each dependent *relative* if "N" does not follow the deductible amount.

   Any deductible will be applied to 100% of properly billed and documented **Medical Expenses**, properly documented **Income Loss**, and properly documented **Replacement Services Loss** that are eligible to be paid under this coverage. The deductible will be applied to such expenses and losses upon our receipt of reasonable documented proof of the expenses and losses and the amount of expenses and losses incurred.

2. After any applicable deductible has been applied, *we* will pay the balance of properly billed and documented **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** in accordance with the percentages and limits as described in the section titled **Limits**.

3. *We* will reduce the amount payable as determined in item 2. above by any workers' compensation benefits received for the same loss or expense.

**Partial Payment or Rejection of a Claim**

If *we* pay only a portion of a claim or reject a claim due to an alleged error in the claim, then *we* shall, at the time of the partial payment or rejection, provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the *person* making the claim, at the *person's* option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

In a dispute between the *insured* and *us*, or between an assignee of the *insured's* rights and *us*, upon request, *we* will notify the *insured* or the assignee that the policy limits under this section have been reached within 15 days after the limits have been reached.

**Nonduplication**

*We* will not pay under No-Fault Coverage any benefits:

1. that have already been paid to or for the *insured*:

a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*;

2. that:

a. have already been paid;

b. could have been paid; or

c. could be paid

to or for the *insured* under other no-fault coverage, any disability benefits law, or similar law; or

3. that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. *BODILY INJURY* TO:

   a. ANY *PEDESTRIAN* NOT A RESIDENT OF FLORIDA; OR

   b. ANY *PERSON* ENTITLED TO NO-FAULT BENEFITS FROM:

      (1) THE OWNER OF A *MOTOR VEHICLE* OTHER THAN A NAMED INSURED; OR

      (2) THAT OWNER'S INSURER.

   This exclusion (1.) does not apply to any named insured or any *relative*;

2. ANY NAMED INSURED OR *RELATIVE* WHO SUSTAINED *BODILY INJURY* WHILE *OCCUPYING* A *MOTOR VEHICLE OWNED BY* THE NAMED INSURED AND NOT INSURED UNDER THIS POLICY;

3. ANY *INSURED PERSON*:

   a. WHOSE CONDUCT CONTRIBUTED TO HIS OR HER *BODILY INJURY* UNDER ANY OF THE FOLLOWING CIRCUMSTANCES:

      (1) CAUSING *BODILY INJURY* TO HIMSELF OR HERSELF INTENTIONALLY; OR

      (2) WHILE COMMITTING A FELONY;

   b. WHOSE *BODILY INJURY* OCCURRED WHILE:

SF-Sasson, Assaf - 000305

    (1)  DRIVING *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WITHOUT *YOUR* PERMISSION; OR

    (2)  *OCCUPYING* A *MOTOR VEHICLE* LOCATED FOR USE AS A DWELLING OR PREMISES;

c.  WHO OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT.* This exclusion (3.c.) does not apply to:

    (1)  any named insured;

    (2)  the spouse of any named insured; and

    (3)  any *relative* while *occupying your car* if the accident occurs outside Florida; OR

d.  WHO REFUSES TO:

    (1)  SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAMINATION UNDER OATH; OR

    (2)  PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

4.  INCOME LOSS WHEN THE SCHEDULE SHOWS INCOME LOSS BENEFITS ARE ELIMINATED UNDER *YOUR* COVERAGE SYMBOL;

5.  ANY MASSAGE AS DEFINED IN S. 480.033, FLORIDA STATUTES, OR ACUPUNCTURE AS DEFINED IN S. 457.102, FLORIDA STATUTES, REGARDLESS OF THE *PERSON* OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

6.  ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other No-Fault Coverage Applies**

1.  If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

    a.  the No-Fault Coverage limits of such policies shall not be added together to determine the most that may be paid; and

    b.  the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2.  If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by one or more sources other than the *State Farm Companies* apply to the same *bodily injury*, then:

    a.  the No-Fault Coverage limits of such policies shall not be added together to determine the most that may be paid;

    b.  the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies, subject to *our* pro rata share of the highest applicable limit provided by any one of the policies; and

    c.  *we* are entitled to recover from each insurer that is liable to pay no-fault coverage benefits to or for the *insured* who sustained *bodily injury*, an equitable pro rata share of benefits paid and expenses incurred in processing the claim.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1.  The *insured*;

2.  The *insured's* surviving spouse;

3.  A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4.  A *person* authorized by law to receive such payment;

5.  Any *person* or organization that provides the medical services or funeral services; or

6.  Any *person* appearing to *us* to be equitably entitled to receive such payment.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means named insureds and *relatives*:

1.  while *occupying* a *motor vehicle*;

2.  through being struck as a *pedestrian* by a *motor vehicle*; or

3.  through being struck as a *pedestrian* by a motorcycle of a type required to be licensed for use on Florida highways.

SF-Sasson, Assaf - 000306

**Insuring Agreement**

1. Medical Payments Coverage is excess over No-Fault Coverage. The no-fault deductible, if any, is not payable under Medical Payments Coverage.

2. *We* will pay properly billed and documented *medical expenses* for services and care that are incurred because of *bodily injury* to an *insured* caused by an accident resulting from the ownership, maintenance, or use of a *motor vehicle*, but only:

   a. if that *insured* receives initial services and care from a provider described in A. below within 14 days after the *motor vehicle* accident that caused *bodily injury* to that *insured*; and

   b. if such services and care are provided within three years after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

   *We* will not pay for any *medical expenses* if the *insured* does not receive initial services and care from a provider described in A. below within 14 days after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

   *We* will only pay *medical expenses* for:

   A. initial services and care:

      (1) lawfully provided, supervised, ordered or prescribed by:

         (a) a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

         (b) a dentist licensed under chapter 466 of the Florida Statutes; or

         (c) a chiropractic physician licensed under chapter 460 of the Florida Statutes;

      (2) provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

      (3) provided by a *person* or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

   B. upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

      (1) a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

      (2) a dentist licensed under chapter 466 of the Florida Statutes;

      (3) a chiropractic physician licensed under chapter 460 of the Florida Statues; or

      (4) to the extent permitted by applicable law and under the supervision of a *person* described in (1), (2), or (3) immediately above:

         (a) a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

         (b) an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

   C. follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following *persons* or entities:

      (1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

      (2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

      (3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

      (4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

      (5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

         (a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

SF-Sasson, Assaf - 000307

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

    i.  general medicine;

    ii.  radiography;

    iii.  orthopedic medicine;

    iv.  physical medicine;

    v.  physical therapy;

    vi.  physical rehabilitation;

    vii.  prescribing or dispensing outpatient prescription medication; or

    viii. laboratory services.

3. *We* will pay funeral expenses incurred for an *insured* who dies within three years immediately following the date of a *motor vehicle* accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

    a.  utilization reviews;

    b.  peer reviews; and

    c.  medical bill reviews

to determine if the incurred expenses are *reasonable charges* and *medically necessary* for the *bodily injury* sustained.

2. use a medical examination of the *insured* to determine if:

    a.  the *bodily injury* was caused by a *motor vehicle* accident; and

    b.  the expenses incurred are *medically necessary*.

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Limits**

The Medical Payments Coverage limit is dependent upon determination of an *emergency medical condition* and is shown on the Declarations Page.

1. **Emergency Medical Condition**

    a.  The Medical Payments Coverage limit for an *insured* who has been determined to have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if the insured has been determined to have an *emergency medical condition* by a physician, a dentist, a physician assistant, or an advanced registered nurse practitioner described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage regardless of the number of:

    (1)  *insureds*;

    (2)  claims made;

    (3)  vehicles insured; or

    (4)  vehicles involved in the accident.

    b.  Subject to the limit shown on the Declarations Page, as described in 1.a. above, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

2. **Not An Emergency Medical Condition**

The Medical Payments Coverage limit for an *insured* who has been determined to not have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Not An Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if the *insured* has been determined to not have an *emergency medical condition* by a healthcare provider described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, regardless of the number of:

    a.  *insureds*;

    b.  claims made;

    c.  vehicles insured; or

    d.  vehicles involved in the accident.

3. In no event will *we* pay more than the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

SF-Sasson, Assaf - 000308

a. For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

(III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-sub-subparagraph, then *we* will limit reimbursement to the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided.  Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

**Nonduplication**

*We* will not pay under Medical Payments Coverage any damages or expenses:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*; or

2. that have already been paid under No-Fault Coverage or Uninsured Motor Vehicle Coverage of this policy, the no-fault coverage, medical payments coverage, or uninsured motor vehicle coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. UNTIL THE MEDICAL EXPENSE BENEFITS OF ALL NO-FAULT COVERAGE AVAILABLE FROM ALL SOURCES HAVE BEEN EXHAUSTED. This does not apply to the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

2. WHO REFUSES TO:

   a. SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAMINATION UNDER OATH; OR

   b. PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

3. FOR ANY *MEDICAL EXPENSES* THAT ARE NOT PAYABLE UNDER NO-FAULT COVERAGE.  This does not include:

   a. the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

SF-Sasson, Assaf - 000309

b. *medical expenses* not paid because the medical expense benefits of all no-fault coverage available from all sources have been exhausted;

c. *medical expenses* for *bodily injury* while *occupying* a *non-owned car* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; and

d. *medical expenses* for *bodily injury* sustained through being struck as a *pedestrian* by a:

(1) *motor vehicle* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; or

(2) motorcycle of a type required to be licensed for use on Florida highways;

4. FOR MILEAGE COSTS FOR THE USE OF A PERSONAL VEHICLE;

5. FOR ANY INTEREST CHARGES;

6. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

7. WHO:

a. IS *OCCUPYING* OR THROUGH BEING STRUCK AS A PEDESTRIAN BY A VEHICLE *OWNED BY* ANY NAMED INSURED OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS POLICY; OR

b. AT THE TIME OF THE ACCIDENT OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT* AND IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT*.

This exclusion (7.b.) does not apply to:

(1) any named insured;

(2) the spouse of any named insured; and

(3) any *relative* while *occupying your car*, a *newly acquired car*, a *temporary substitute car*, or a *non-owned car* if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage;

8. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

9. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE.  This exclusion does not apply to:

a. the use of a *private passenger car* on a share-the-expense basis; or

b. an *insured* while *occupying* a *non-owned car* as a passenger;

10. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*.  This exclusion does not apply to:

a. any named insured;

b. any *relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

11. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

12. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING.  This exclusion does not apply to the maintenance or use of a *private passenger car*;

13. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

14. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

b. RUNS ON RAILS OR CRAWLER-TREADS;

15. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

16. WHOSE *BODILY INJURY* RESULTS FROM:

a. NUCLEAR REACTION;

b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

17. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*;

SF-Sasson, Assaf - 000310

18. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (18.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

19. FOR ANY MASSAGE AS DEFINED IN S.480.033, FLORIDA STATUTES, OR ACUPUNCTURE AS DEFINED IN S.457.102, FLORIDA STATUTES, REGARDLESS OF THE *PERSON* OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

20. FOR ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

    a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

    a. If:

        (1) this is the only vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

        (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

    b. If:

        (1) more than one vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

        (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

    a. If:

        (1) this is the only vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

        (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

SF-Sasson, Assaf - 000311

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment;

5. Any *person* or organization that provides the *medically necessary* services or funeral services; or

6. Any *person* appearing to *us* to be equitably entitled to receive such payment.

## UNINSURED MOTOR VEHICLE COVERAGE
### (Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying*:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a trailer attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* express or implied permission.  Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle and a trailer attached to such land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or

   b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but

   (1) the limits are less than required by the financial responsibility act of the state of Florida;

   (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for *bodily injury* sustained by the *insured*; or

   (3) the entity providing the financial responsibility:

      (a) denies that it provides liability coverage for compensatory damages that result from the accident; or

      (b) is or becomes insolvent; or

24
9810A

SF-Sasson, Assaf - 000312

2. the owner or driver:

   a. of which could not reasonably have been identified;

   b. remains unknown; and

   c. that causes *bodily injury* to the *insured*.

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

2. *owned by*, rented to, or furnished or available for the regular use of *you* or a *resident relative*;

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1. *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*.

2. The *bodily injury* for which *we* will pay compensatory damages must be:

   a. sustained by an *insured*;

   b. caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*; and

   c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

   a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

   b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1. The *insured* and *we* must agree to the answers to the following two questions:

   a. Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

   b. If the *insured* and *we* agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

2. If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation, Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from *bodily injury* to any one *insured* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *insureds* as a direct result of that *bodily injury*.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *insureds* who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

25
9810A

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

   c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

3. FOR PUNITIVE OR EXEMPLARY DAMAGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury* sustained by a *person* other than *you* or any *resident relative*, then:

   a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

   If uninsured motor vehicle coverage is provided on a primary basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage for an *insured* who sustains *bodily injury*.

   If uninsured motor vehicle coverage is provided on an excess basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as excess coverage.

4. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then *we* may choose one or more policies from which to make payment.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

SF-Sasson, Assaf - 000314

## UNINSURED MOTOR VEHICLE COVERAGE
### (Non-Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U3" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

***Insured*** means:

1. ***you***;

2. ***resident relatives***;

3. any other ***person*** while ***occupying***:

   a. ***your car***;

   b. a ***newly acquired car***;

   c. a ***temporary substitute car***; or

   d. a trailer attached to a ***car*** described in a., b., or c. above.

   Such vehicle must be used with ***your*** express or implied permission. Such other ***person occupying*** a vehicle used to carry ***persons*** for a charge is not an ***insured***; and

4. any ***person*** entitled to recover compensatory damages as a result of ***bodily injury*** to an ***insured*** as defined in 1., 2., and 3. above.

***Uninsured Motor Vehicle*** means a land motor vehicle and a trailer attached to such land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or

   b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but

      (1) the limits are less than required by the financial responsibility act of the state of Florida;

      (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for ***bodily injury*** sustained by the ***insured***; or

      (3) the entity providing the financial responsibility:

         (a) denies that it provides liability coverage for compensatory damages that result from the accident; or

         (b) is or becomes insolvent; or

2. the owner or driver:

   a. of which could not reasonably have been identified;

   b. remains unknown; and

c. that causes ***bodily injury*** to the ***insured***.

***Uninsured Motor Vehicle*** does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an ***uninsured motor vehicle*** for ***bodily injury*** sustained by ***you*** or a ***resident relative*** while the vehicle is being operated by a ***person*** other than ***you*** or a ***resident relative***;

2. ***owned by***, rented to, or furnished or available for the regular use of ***you*** or a ***resident relative***;

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1. ***We*** will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from the owner or driver of an ***uninsured motor vehicle***.

2. The ***bodily injury*** for which ***we*** will pay compensatory damages must be:

   a. sustained by an ***insured***;

   b. caused by an accident that involves the operation, maintenance, or use of an ***uninsured motor vehicle***; and

   c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The ***insured*** must inform ***us*** of a settlement offer, if any, proposed by or on behalf of the owner or driver of the ***uninsured motor vehicle***, and the ***insured*** must request ***our*** written consent to accept such settlement offer.

If ***we***:

1. consent in writing, then the ***insured*** may accept such settlement offer.

2. inform the ***insured*** in writing that ***we*** do not consent, then the ***insured*** may not accept such settlement offer and:

SF-Sasson, Assaf - 000315

a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1. The *insured* and *we* must agree to the answers to the following two questions:

   a. Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

   b. If the *insured* and *we* agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

2. If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation**, **Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from *bodily injury* to any one *insured* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *insureds* as a direct result of that *bodily injury*.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *insureds* who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the **State Farm Companies** to *you* or any *resident relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

   a. WHILE *OCCUPYING* A VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

   b. THROUGH BEING STRUCK BY A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*.

   This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* or through being struck by a motor vehicle not *owned by* one or both of them;

3. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW,

SF-Sasson, Assaf - 000316

DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

4. FOR PUNITIVE OR EXEMPLARY DAMAGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other insured motor vehicle coverage that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other insured motor vehicle coverage that apply as excess coverage.

SF-Sasson, Assaf - 000317

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

   a. being driven by an *insured*; or

   b. in the custody of an *insured* if at the time of the *loss* it is:

      (1) not being driven; or

      (2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*;

6. a *non-owned trailer* while it is being used by an *insured*; and

7. a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily Rental Charge* means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle*. *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or

2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

SF-Sasson, Assaf - 000318

b. any other *person* who resides primarily in *your* household; or

c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

1. **Comprehensive Coverage**

   a. *We* will pay for *loss*, except *loss caused by collision*, to a *covered vehicle*.

   b. *We* will pay transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:

      (1) during the period that:

         (a) starts on the date *you* report the theft to *us*; and

         (b) ends on the earliest of:

            (i) the date the vehicle is returned to *your* possession in a drivable condition;

            (ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

            (iii) the date *we* offer to pay for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

      (2) during the period that:

         (a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

         (b) ends on the date the vehicle is repaired.

      These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

   c. The deductible does not apply to damage to the windshield of any *covered vehicle*.

2. **Collision Coverage**

   *We* will pay for *loss caused by collision* to a *covered vehicle*.

3. **Emergency Road Service Coverage**

   *We* will pay the fair cost incurred by an *insured* for:

a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**

   a. **Car Rental Expense**

      *We* will pay the *daily rental charge* incurred when an *insured* rents a *car* from a *car business* while *your car* or a *newly acquired car* is:

      (1) not drivable; or

      (2) being repaired

      as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

      *We* will pay this *daily rental charge* incurred during a period that:

      (1) starts on the date:

         (a) the vehicle is not drivable as a result of the *loss*; or

         (b) the vehicle is left at a repair facility if the vehicle is drivable; and

      (2) ends on the earliest of:

         (a) the date the vehicle has been repaired or replaced;

         (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

         (c) seven days after *we* offer to pay for the *loss* if the vehicle is:

            (i) a total loss as determined by *us*; or

            (ii) stolen and not recovered.

      The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

31
9810A

SF-Sasson, Assaf - 000319

b. **Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

(a) starts after the *loss* occurs; and

(b) ends on the earlier of:

(i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

(ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive coverage deductible or collision coverage deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or

the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.

(1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

(a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

(b) A bid or repair estimate approved by *us*; or

(c) A repair estimate that is written based upon or adjusted to:

(i) the prevailing competitive price;

(ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a

SF-Sasson, Assaf - 000320

survey made by *us*.  If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price.  The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

(4) If *you* and *we* agree, then windshield glass will be repaired instead of replaced;

b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by mediation or appraisal.  Either the owner or *we* may request mediation or appraisal.

(2) Mediation will follow the rules outlined in this policy, found under **Mediation**, in the section titled **GENERAL TERMS**.

(3) Appraisal will follow the rules and procedures as listed below:

(a) The owner and *we* will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser.  If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party.  Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

(f) *We* do not waive any of *our* rights by submitting to an appraisal.

(4) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it.  If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. **Car Rental Expense**

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

(1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount; or

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

SF-Sasson, Assaf - 000321

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. **Travel Expenses**

The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. **Rental Car – Repayment of Deductible Expense**

The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

   a. INTENTIONALLY DAMAGED; OR

   b. STOLEN

   BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

   a. THEFT;

   b. CONVERSION;

   c. EMBEZZLEMENT; OR

   d. SECRETION

   BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

    a. LIEN AGREEMENT;

    b. RENTAL AGREEMENT;

    c. LEASE AGREEMENT; OR

    d. SALES AGREEMENT

    NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

    a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

    b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

    a. FAILS OR IS DEFECTIVE; OR

    b. IS DAMAGED AS A DIRECT RESULT OF:

SF-Sasson, Assaf - 000322

(1) WEAR AND TEAR;

(2) FREEZING; OR

(3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

a. THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE* IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b. *OWNED BY* AN *INSURED*; AND

c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

35
9810A

SF-Sasson, Assaf - 000323

**Financed Vehicle**

1.  If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

    However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor.

2.  If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1.  **Comprehensive Coverage and Collision Coverage**

    a.  *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

        (1)  *You*;

        (2)  The repairer; or

        (3)  A creditor shown on the Declarations Page, to the extent of its interest.

    b.  *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

        (1)  *You*;

        (2)  The owner of such vehicle;

        (3)  The repairer; or

        (4)  A creditor, to the extent of its interest.

2.  **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

    *We* may, at *our* option, make payment to one or more of the following:

    a.  *You*;

    b.  The *insured* who incurred the expense; or

    c.  Any party that provided the service for which payment is owed.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

**Insuring Agreement**

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1.  dies; or

2.  suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

SF-Sasson, Assaf - 000324

### Death, Dismemberment and Loss of Sight Benefits Schedules

| If the amount shown on the Declarations Page for the *insured* is $5,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

| If the amount shown on the Declarations Page for the *insured* is $10,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

### Exclusions

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN *INSURED*:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*;

2. WHILE *OCCUPYING*, LOADING, OR UN-LOADING:

   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

   b. A VEHICLE, OTHER THAN AN EMER-GENCY VEHICLE, WHILE USED IN THE:

      (1) *INSURED'S* BUSINESS; OR

      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.

      This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

   c. A MILITARY VEHICLE; OR

   d. A VEHICLE WHILE IT IS:

      (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CON-TEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

      (2) ON A TRACK DESIGNED PRIMARI-LY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

3. WHILE *OCCUPYING*, LOADING, UN-LOADING, OR WHO IS STRUCK AS A *PE-DESTRIAN* BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. A MOTOR VEHICLE THAT IS DE-SIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LO-CATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, AND LOSS OF SIGHT THAT RESULTS FROM:

   a. WAR OF ANY KIND;

   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINA-TION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

   c. EXPOSURE TO *FUNGI*;

   d. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *IN-SURED* WAS SANE OR INSANE; OR

   e. DISEASE except pus-forming infection due to *bodily injury* sustained in the ac-cident.

SF-Sasson, Assaf - 000325

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1.  The *insured*;

2.  The *insured's* surviving spouse;

3.  A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4.  A *person* or organization authorized by law to receive such payment.

## INSURED'S DUTIES

1.  **Insured's Duty at the Time of an Accident or Loss**

    The *insured* must make a reasonable effort to identify:

    a.  the owners, operators, and passengers of the vehicles involved in the accident or *loss*;

    b.  the *person* or *persons* involved in the accident or *loss*; and

    c.  the potential witnesses to the accident or *loss*.

2.  **Notice to Us of an Accident or Loss**

    The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible.  The notice must give *us*:

    a.  *your* name;

    b.  the names and addresses of all *persons* involved in the accident or *loss*;

    c.  the hour, date, place, and facts of the accident or *loss*; and

    d.  the names and addresses of witnesses to the accident or *loss*.

3.  **Notice to Us of a Claim or Lawsuit**

    a.  If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

    b.  If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

4.  **Insured's Duty to Cooperate With Us**

    a.  The *insured* must cooperate with *us* and, when asked, assist *us* in:

        (1)  making settlements;

        (2)  securing and giving evidence; and

        (3)  attending, and getting witnesses to attend, depositions, hearings, and trials.

    b.  The *insured* must not, except at his or her own cost, voluntarily:

        (1)  make any payment to others; or

        (2)  assume any obligation to others

    unless authorized by the terms of this policy.

    c.  Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

5.  **Questioning Under Oath**

    Under:

    a.  No-Fault Coverage, each *insured* making claim or seeking payment, must, at *our* option:

        (1)  submit to an examination under oath;

        (2)  provide a statement under oath; or

        (3)  do both (1) and (2) above,

    as often as *we* reasonably require.  Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers.  *We* may require each *insured* answering questions under oath to answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

    The scope of the questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information.  Compliance with **Questioning Under Oath** is a condition precedent to receiving benefits.

    b.  all other coverages, each *insured* making claim or seeking payment, must, at *our* option:

        (1)  submit to an examination under oath;

        (2)  provide a statement under oath; or

        (3)  do both (1) and (2) above,

    as often as *we* reasonably require.  Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers.  *We* may require each *insured* answering questions under oath to

SF-Sasson, Assaf - 000326

answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

6. **Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft or vandalism;

c. allow *us* to:

   (1) inspect any damaged property before its repair or disposal;

   (2) test any part or equipment before that part or equipment is removed or repaired; and

   (3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

   (1) records;

   (2) receipts; and

   (3) invoices

   that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

7. **Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage**

An *insured* making claim under:

a. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

   (1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

   (2) submit to be examined as often as *we* may reasonably require by physicians chosen and paid by *us*. A copy of the

report will be sent to the *person* upon written request.

   (a) Under No-Fault Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are no longer liable for subsequent benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations raises a rebuttable presumption that the *insured's* refusal or failure was unreasonable;

   (b) Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are not liable for coverage benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations will be considered unreasonable;

   (3) provide written authorization for *us* to obtain:

   (a) medical bills;

   (b) medical records;

   (c) wage, salary, and employment information; and

   (d) any other information *we* deem necessary to substantiate the claim.

   If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

   If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

   (4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. No-Fault Coverage or Medical Payments Coverage must, at *our* request, submit documentation from the appropriate healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage, or described in

SF-Sasson, Assaf - 000327

2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, confirming whether that healthcare provider determined the injured *insured* had, or did not have, an *emergency medical condition*;

c. No-Fault Coverage and Uninsured Motor Vehicle Coverage must send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

d. Uninsured Motor Vehicle Coverage must report an accident, involving a motor vehicle whose owner or driver remains unknown, to the police within 24 hours or as soon as reasonably practicable, and to *us* within 30 days.

## GENERAL TERMS

1. **When Coverage Applies**

   The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

2. **Where Coverage Applies**

   The coverages provided by this policy are shown on the Declarations Page.

   a. Liability Coverage, Property Damage Liability Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Physical Damage Coverages apply to accidents and *losses* that occur:

      (1) in the United States of America and its territories and possessions;

      (2) in Canada; and

      (3) while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

   b. No-Fault Coverage applies to accidental *bodily injury* sustained:

      (1) by an *insured* in Florida; and

      (2) by *you* and *relatives* outside Florida; but within:

         (a) the United States of America, its territories or possessions; or

         (b) Canada,

         while *occupying your car*, a *newly acquired car*, or a *temporary substitute car*.

   c. Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

3. **Limited Coverage in Mexico**

   This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

   Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

   a. **Liability Coverage**

      For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

      *We* may, in addition to the damages described in item 1 of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at *our* option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

   b. **Property Damage Liability Coverage**

      For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Property Damage Liability Coverage is changed to read:

      *We* may, in addition to the damages described in items 1. and 2. of the **Insuring Agreement** of this policy's Property Damage Liability Coverage, pay or reimburse,

SF-Sasson, Assaf - 000328

at our option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Property Damage Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

c. **No-Fault Coverage**

The definition of *insured* is changed read:

> *Insured* means named insured and *relatives* while *occupying*:
>
> (1) *your car*;
>
> (2) a *newly acquired car*;
>
> (3) a *temporary substitute car*; or
>
> (4) a *trailer* while attached to a *car* described in (1), (2), or (3) above.

d. **Medical Payments Coverage**

e. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF FLORIDA IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of Florida in the United States of America.

4. **Persons Acting On Our Behalf**

A company employee adjuster, independent adjuster, attorney, investigator, or other *persons* acting on *our* behalf that needs access to an *insured* or claimant or to the insured property that is the subject of a claim must provide at least 48 hours' notice to the *insured* or claimant, public adjuster, or legal representative before scheduling a meeting with the claimant or an onsite inspection of the insured property. The *insured* or claimant may deny access to the property if the notice has not been provided. The *insured* or claimant may waive the 48-hour notice.

A public adjuster must ensure prompt notice of property loss claims submitted to *us* by or through a public adjuster or on which a public adjuster represents the *insured* at the time the claim or notice of loss is submitted to *us*. The public adjuster must ensure that notice is given to *us*, the public adjuster's contract is provided to *us*, the property is available for inspection of the loss or damage by *us*, and *we* are given an opportunity to interview the *insured* directly about the loss and claim. *We* must be allowed to obtain necessary information to investigate and respond to the claim.

*We* may not exclude the public adjuster from its in-person meetings with the *insured*. *We* shall meet or communicate with the public adjuster in an effort to reach agreement as to the scope of the covered loss under the insurance policy. This section does not impair the terms and conditions of the insurance policy in effect at the time the claim is filed.

A public adjuster may not restrict or prevent *us*, company employee adjuster, independent adjuster, attorney, investigator, or other *person* acting on *our* behalf from having reasonable access at reasonable times to an *insured* or claimant or to the insured property that is the subject of a claim.

A public adjuster may not act or fail to reasonably act in any manner that obstructs or prevents *us* or *our* adjuster from timely conducting an inspection of any part of the insured property for which there is a claim for loss or damage. The public adjuster representing the *insured* may be present for *our* inspection, but if the unavailability of the public adjuster otherwise delays *our* timely inspection of the property, the public adjuster or the *insured* must allow *us* to have access to the property without the participation or presence of the public adjuster or *insured* in order to facilitate *our* prompt inspection of the loss or damage.

41
9810A

SF-Sasson, Assaf - 000329

5.  **Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a.  request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

    (1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

    (2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b.  apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

6.  **Changes to This Policy**

a.  **Changes in Policy Provisions**

    *We* may only change the provisions of this policy by:

    (1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

    (2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Florida without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

b.  **Change of Interest**

    (1) No change of interest in this policy is effective unless *we* consent in writing.

    (2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured shown on the Declarations Page dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

    (a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

    (b) the legal representative of the deceased named insured.

    This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

    Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

c.  **Joint and Individual Interests**

    If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

d.  **Change of Policy Address**

    *We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

    (1) *you*; or

    (2) the United States Postal Service.

7.  **Premium**

a.  Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b.  The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c.  The premium for this policy may vary based upon:

    (1) the purchase of other products or services from the *State Farm Companies*;

    (2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of

SF-Sasson, Assaf - 000330

any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

(1) *Your car*, or its use, including annual mileage;

(2) The *persons* who regularly drive *your car*, including newly licensed family members;

(3) *Your* marital status; or

(4) The location where *your car* is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

8. **Renewal**

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 9. and 10. below.

9. **Nonrenewal**

If *we* decide not to renew this policy, then, at least 45 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the first named insured who is shown on the Declarations Page.

10. **Cancellation**

a. **How You May Cancel**

(1) *You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

(2) However, if the policy provides Liability Coverage or Property Damage Liability Coverage and No-Fault Coverage, *you* may not cancel *your* policy during the first two months immediately following the policy effective date unless:

(a) *your car* has been totally destroyed;

(b) *you* have transferred ownership of *your car*;

(c) *you* have purchased another policy covering *your car*; or

(d) *you* are a member of the United States Armed Forces and have been called to or are on active duty outside the United States in an emergency situation.

b. **How and When We May Cancel**

(1) *We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the first named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

(2) Except as provided under **Cancellation Due to Incorrect Premium**, the date cancellation is effective will be at least:

(a) 10 days after the date *we* mail or deliver the cancellation notice, if the cancellation is because the premium was not paid when due; or

(b) 45 days after *we* mail or deliver the cancellation notice, if the cancellation is because of any other reason.

(3) If *we* cancel this policy for nonpayment of premium during the first 60 days immediately following the effective date of this policy, *we* will do so only if a check used to pay the premium is dishonored for any reason or any other type of premium payment was subsequently determined to be rejected or invalid.

(4) After this policy has been in force for more than 59 days, *we* will not cancel this policy before the end of the current policy period unless it is based on one or more of the following reasons:

(a) Nonpayment of premium;

43
9810A

SF-Sasson, Assaf - 000331

(b) **You**, any **resident relative**, or any other **person** who usually drives **your car** has had his or her driver's license or motor vehicle registration under suspension or revocation during the policy period or the 180 days immediately preceding its effective date, or if the policy is a renewal, during its policy period; or

(c) Material misrepresentation or fraud.

c. **Cancellation Due to Incorrect Premium**

(1) If **we** determine that **we** have charged **you** an incorrect premium for coverages requested in **your** insurance application, **we** will immediately notify **you** of any additional premium due. **You** may:

(a) maintain **your** policy in force by paying the additional amount due by the date stated in the notice; or

(b) cancel **your** policy by the date stated in the notice and receive a refund of any unearned premium.

(2) If **you** fail to respond by the date stated in the notice **we** will cancel **your** policy. The date cancellation is effective will be at least 14 days after the date **we** mail or deliver the cancellation notice.

d. **Return of Unearned Premium**

(1) If **you** cancel this policy, then premium will be earned on a pro rata basis. **We** may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed to **you** within 30 days after the effective date of the policy cancellation, or 30 days after **we** receive **your** request to cancel this policy, whichever is later.

(2) If **we** cancel this policy, then premium will be earned on a pro rata basis. Any unearned premium will be mailed at the time **we** cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation.

11. **Assignment**

No assignment of benefits or other transfer of rights is binding upon **us** unless approved by **us**. This does not include a post loss assignment of benefits.

12. **Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the **insured** or his or her estate will not relieve **us** of **our** obligations under this policy.

13. **Concealment or Fraud**

a. **Coverages Other Than No-Fault and Medical Payments Coverage**

There is no coverage under this policy for any **person** who, or organization making claim or seeking payment that, has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

b. **No-Fault Coverage and Medical Payments Coverage**

Benefits shall not be due or payable to or on behalf of an **insured person** if that **person** has committed, by material act or omission, any insurance fraud relating to No-Fault Coverage or Medical Payments Coverage under this policy, if the fraud is admitted to in a sworn statement by the **insured** or if it is established in a court of competent jurisdiction. Any insurance fraud shall void all coverage arising from the claim related to such fraud under No-Fault Coverage or Medical Payments Coverage of the **insured person** who committed the fraud, irrespective of whether a portion of the **insured person's** claim may be legitimate, and any benefits paid prior to the discovery of the **insured person's** insurance fraud shall be recoverable by **us**, in their entirety, from the **person** who committed insurance fraud. **We** are entitled to all **our** costs and attorney's fees in any action in which **we** prevail that enforces **our** right of recovery under this provision.

Neither **we** nor the **insured** is required to pay a claim or charges:

(1) for any service or treatment that was not lawful at the time rendered; or

(2) to any **person** who knowingly submits a false or misleading statement relating to the claim or charges.

If **we** have reasonable belief that a fraudulent insurance act (s. 626.989, Florida Statutes, or s. 817.234, Florida Statutes) has been committed, **we** shall notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, **we** have an additional 60 days to

44
9810A

SF-Sasson, Assaf - 000332

conduct a fraud investigation. Notwithstanding the demand letter conditions under the **Legal Action Against Us** provision of this policy, no later than 90 days after the submission of the claim, *we* must deny the claim or pay the claim with simple interest as provided in d. (2) under the **Legal Action Against Us** provision of this policy. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Insurance Fraud.

14. **Our Right to Recover Our Payments**

    Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*. Under all other coverages, the following apply:

    a. **Subrogation**

       If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, that is not an *insured*, then *we* will be subrogated to that right to the extent of *our* payment.

       The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

       (1) doing nothing to impair that legal right;

       (2) executing any documents *we* may need to assert that legal right; and

       (3) taking legal action through *our* representatives when *we* ask.

    b. **Reimbursement**

       (1) If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

           (a) hold in trust for *us* the proceeds of any recovery; and

           (b) reimburse *us* to the extent of *our* payment.

       (2) *We* have a right of reimbursement against the owner or the insurer of the owner of a commercial motor vehicle for *our* payments of No-Fault benefits to any *person* having been an *occupant* of the commercial motor vehicle or having been struck by the commercial motor vehicle as a *pedestrian*.

*Our* right of reimbursement for benefits under No-Fault Coverage does not apply to an owner or registrant of a taxicab as identified in s.627.733(1)(b), Florida Statutes.

15. **Mediation**

    The *insured* or *we* may demand mediation of any claim:

    a. in an amount of $10,000 or less, resulting from:

       1. *bodily injury* under No-Fault Coverage, Medical Payments Coverage, or Uninsured Motor Vehicle Coverages; or

       2. death of or loss to an *insured* under Death, Dismemberment and Loss of Sight Coverage; or

    b. in any amount, for a *loss* covered under Physical Damage Coverages,

    by filing a written request with the Florida Department of Financial Services on a form which may be obtained from the Florida Department of Financial Services. The request must state why mediation is being requested and the issue in dispute.

    The Florida Department of Financial Services will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible.

    Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosure provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

    If a *person* files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation. Any suit regarding a mediated dispute must be filed as prescribed under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.

SF-Sasson, Assaf - 000333

16. **Arbitration**

a. The *insured* or *we* may request, in writing, arbitration of any claim. If *you* and *we* agree to arbitrate, then arbitration will follow the procedure outlined below.

(1) The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

(2) The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

(3) Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

(4) The arbitrators shall only decide the answers to the following two questions:

(a) are damages compensatory; and

(b) if damages are compensatory, then what is the amount of compensatory damages.

(5) Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

(6) A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

(a) *us*;

(b) the *insured*;

(c) any assignee of the *insured*; and

(d) any *person* or organization with whom the *insured* expressly or impliedly contracts.

(7) Subject to (1), (2), (3), (4), (5), and (6) above, state court rules governing procedure and admission of evidence will be used.

(8) *We* do not waive any of *our* rights by submitting to arbitration.

b. *We* are not bound by any:

(1) judgment obtained without *our* written consent; or

(2) default judgment against any *person* or organization other than *us*.

c. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

17. **Legal Action Against Us**

a. Legal action may only be brought against *us* within five years immediately following the date of the accident or *loss*.

b. Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy.

c. Under No-Fault Coverage, *we* shall create and maintain for each *insured* a log of No-Fault Coverage benefits *we* have paid on behalf of the *insured*. If litigation is commenced, *we* shall provide to the *insured* a copy of the log within 30 days after receiving a request for the log from the *insured*.

d. In addition, legal action may only be brought against *us* regarding:

(1) Liability Coverage and Property Damage Liability Coverage, after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(a) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(b) agreement between the claimant and *us*.

(2) No-Fault Coverage, if within 30 days after *our* receipt of written notice of an intent to initiate litigation for:

(a) an overdue claim, applicable interest, and a penalty of 10% of the overdue amount that *we* pay, subject to a maximum penalty of $250; or

46

9810A

SF-Sasson, Assaf - 000334

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice and to pay a penalty of 10%, subject to a maximum penalty of $250, when *we* pay for such future treatment.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

Such notice of intent to initiate litigation may not be sent until the claim is overdue, including any additional time *we* have to pay the claim pursuant to the *No-Fault Act*.

The notice must state that it is a "demand letter under s.627.736" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to *us*; and

iii. to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, any other standard form approved by the Florida Office of Insurance Regulation, or the lost wage statement previously submitted, may be used as the itemized statement. To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website. Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(3) Medical Payments Coverage unless *we* receive written notice of an intent to initiate litigation and if within 30 days after *our* receipt of such for:

(a) a claim, *we* fail to pay the claim; or

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

The notice must state that it is a "demand letter for Medical Payments Coverage" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to us; and

SF-Sasson, Assaf - 000335

iii.   to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, or any other standard form approved by the Florida Office of Insurance Regulation, may be used as the itemized statement.   To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website.   Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(4)   Uninsured Motor Vehicle Coverage if the *insured* or that *insured's* legal representative within five years immediately following the date of the accident:

  (a)   presents an Uninsured Motor Vehicle Coverage claim to *us*;

  (b)   files a lawsuit,  in a state or federal court that has jurisdiction against *us*;

  (c)   consents to a jury trial if requested by *us*; and

(d)   agrees that *we* may contest the issues of liability and the amount of damages.

*We* are not bound by any judgment obtained without *our* written consent.

*We* are not bound by default judgment against any *person* or organization other than *us*.

Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

18.   **Choice of Law**

Without regard to choice of law rules, the law of the state of:

a.   Florida will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b.   Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

  (1)   Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

  (2)   Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

19.   **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a.   such provision will remain in full force to the extent not held invalid or unenforceable; and

b.   all other provisions of this policy will remain valid and enforceable.

Policy Form 9810A
©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

SF-Sasson, Assaf - 000336

**State Farm Mutual Automobile Insurance Company**
PO Box 2358
Bloomington IL 61702-2358

R 75500-4 C   (MUTL v2)

**DECLARATIONS PAGE**

NAMED INSURED

AT2          003972 0058
59-6825-4 C      A
SASSON, ASSAF & ADA L
3385 NE 167TH ST
N MIAMI BEACH FL  33160-3849

| POLICY NUMBER   J53 4643-B02-59B |
|---|
| POLICY PERIOD APR 19 2022 to AUG 02 2022 |
| 12:01 A.M. Standard Time |

STATE FARM PAYMENT PLAN NUMBER
1520065519

AGENT

ANTHONY GARCIA
1035 S STATE ROAD 7 STE 311
WELLINGTON, FL 33414-6137

PHONE: (561)793-9822

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

**YOUR CAR**

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|---|---|---|---|---|---|
| 2022 | PORSCHE | TAYCAN | 4DR | WP0AA2Y11NSA13378 | 60306010002 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---|---|---|
| A | Liability Coverage | $174.50 |
| | Bodily Injury Limits | |
| | Each Person,    Each Accident | |
| | $300,000       $300,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $100,000 | |
| P14/$10,00 | $500 Deductible No-Fault Coverage | $55.38 |
| | Deductible Applies to Each Named Insured and to | |
| | Each of Your Dependent Relatives | |
| D | Comprehensive Coverage - $500 Deductible | $119.03 |
| G | Collision Coverage - $500 Deductible | $203.93 |
| H | Emergency Road Service Coverage | $.54 |
| R1 | Car Rental and Travel Expenses Coverage | $7.84 |
| | Limit - Car Rental Expense | |
| | Each Day,    Each Loss | |
| | 80%       $1,000 | |

| Total premium for APR 19 2022 to AUG 02 2022. | $561.22 | This is not a bill. |
|---|---|---|

**IMPORTANT MESSAGES**

IMPORTANT NOTICE- Under No-Fault Coverage, the only medical expenses we will pay are reasonable medical expenses that are payable under the Florida Motor Vehicle No-Fault Law. The most we will pay for such reasonable medical expenses is 80% of the "schedule of maximum charges" found in the Florida Motor Vehicle No-Fault Law and in the Limits section of the Florida Car Policy's No-Fault Coverage.

Replaced policy number J534643-59A.

**Your total renewal premium for FEB 02 2022 to AUG 02 2022 is $981.13.**

For questions, problems or to obtain information about coverage call: (561)793-9822.

State Farm works hard to offer you the best combination of price, service, and protection.   The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once during your policy term, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

**EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)**

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9810A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
CREDITOR- DCU CREDIT UNION, PO BOX 9130, MARLBOROUGH MA 01752-9130.
6128S.1   AMENDATORY ENDORSEMENT:
6910A    AMENDATORY ENDORSEMENT:

Agent:      ANTHONY GARCIA

Telephone:  (561)793-9822

Prepared    JUN 03 2022         6825-C0D

This policy is issued by State Farm Mutual Automobile Insurance Company.

**MUTUAL CONDITIONS**

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary                                    President

SF-Sasson, Assaf - 000338

B10

# 6910A AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

## 1. PHYSICAL DAMAGE COVERAGES

### Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage

The following is added:

If there is disagreement as to the cost of repair, replacement, or recalibration of glass, an appraisal will be used as the first step toward resolution. Appraisal will follow the rules and procedures as listed below.

a. The owner and **we** will each select a competent appraiser.

b. The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or **we** may petition a court that has jurisdiction to select the third appraiser.

c. Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

d. The appraisers shall only determine the cost of repair, replacement, and recalibration of glass. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

e. A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the **covered vehicle** and **us**.

f. **We** and **you** do not waive any rights by submitting to an appraisal.

## 2. GENERAL TERMS

a. Item (3) of **How and When We May Cancel**, under **Cancellation**, is changed to read:

If **we** cancel this policy for nonpayment of premium during the first 30 days immediately following the effective date of this policy, **we** will do so only if a check used to pay the premium is dishonored for any reason or any other type of premium payment was subsequently determined to be rejected or invalid.

b. Item a. of **Legal Action Against Us** is changed to read:

Legal action may only be brought against **us** within five years immediately following the date of the accident or **loss**. However, this limitation of action is tolled for a period of 60 days after **we** receive notice from the Florida Department of Financial Services, in accordance with section 624.155, Florida Statutes.

© Copyright, State Farm Mutual Automobile Insurance Company, 2020

6910A

6910A
2020
9.13



SF-Sasson, Assaf - 000339

SF-Sasson, Assaf - 000340

## 6128S.1 AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

   a. *Newly Acquired Car* is changed to read:

   *Newly Acquired Car* means a *car* newly *owned by you* or a *resident relative*.

   A *car* ceases to be a *newly acquired car* on the earlier of:

   1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

   2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

   If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

   b. *Pedestrian* is changed to read:

   *Pedestrian* means a *person* who is not *occupying*:

   1. a *motor vehicle*;

   2. a self-propelled vehicle; or

   3. a trailer or other vehicle attached to a self-propelled vehicle.

   c. *Relative* is changed to read:

   *Relative* means a *person*, other than *you*, who is:

   1. related to any named insured in any degree by blood, by marriage, or by adoption and who makes his or her home in the same family unit with that named insured, whether or not temporarily living elsewhere, or

   2. a ward or foster child of any named insured or of a *person* described in 1. above and who makes his or her home in the same family unit with that named insured.

2. **LIABILITY COVERAGE (Bodily Injury and Property Damage)**

   a. Item 4. of *Insured*, under **Additional Definition**, is changed to read:

   *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

   a. neither *owned by*, nor hired by, that other *person* or organization; and

   b. neither available for, nor being used for, carrying *persons* for a charge.

   b. The following is added to **Supplementary Payments**:

   Attorney fees for attorneys representing the *person* or entity asserting a claim against an *insured* are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

Page 1 of 11                                                                    6128S.1
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000341

c. **Exclusions**

(1) The exception to exclusion 11. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle ***owned by*** the employer of ***you*** or the employer of any ***resident relative*** if such damage is caused by an ***insured*** while operating another motor vehicle;

b. residence while rented to or leased to an ***insured***; or

c. private garage while rented to or leased to an ***insured***;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN ***INSURED*** WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. ***OCCUPYING*** OR STRUCK BY ***YOUR CAR***, A ***NEWLY ACQUIRED CAR***, OR A ***TEMPORARY SUBSTITUTE CAR*** WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

3. **PROPERTY DAMAGE LIABILITY COVERAGE**

a. Item 4. of ***Insured***, under **Additional Definition**, is changed to read:

***Insured*** means any other ***person*** or organization vicariously liable for the use of a vehicle by an ***insured*** as defined in 1., 2., or 3. above, but only for such vicarious liability.

This provision applies only if the vehicle is:

a. neither ***owned by***, nor hired by, that other ***person*** or organization; and

b. neither available for, nor being used for, carrying ***persons*** for a charge.

b. The following is added to **Supplementary Payments**:

Attorney fees for attorneys representing the ***person*** or entity asserting a claim against an ***insured*** are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

c. **Exclusions**

(1) The exception to exclusion 9. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle ***owned by*** the employer of ***you*** or the employer of any ***resident relative*** if such damage is caused by an ***insured*** while operating another motor vehicle;

b. residence while rented to or leased to an ***insured***; or

c. private garage while rented to or leased to an ***insured***;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN ***INSURED*** WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. ***OCCUPYING*** OR STRUCK BY ***YOUR CAR***, A ***NEWLY***

Page 2 of 11    6128S.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000342

*ACQUIRED CAR*, OR A *TEMPORARY SUBSTI-TUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NET-WORK SERVICES.

4. **NO-FAULT COVERAGE**

a. **Additional Definition**

Item 2. of the definition of *Insured* is changed to read:

*Insured* means any other *person* while *occupying* or struck as a *pedestrian* by:

a. *your car*;

b. a *newly acquired car*;

c. a *temporary substitute car*; or

d. a *trailer* while attached to a *car* described in a., b., or c. above.

b. **Insuring Agreement**

Item 1.C. is changed to read:

follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following *persons* or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above; and

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or

(a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

i. general medicine;

ii. radiography;

iii. orthopedic medicine;

iv. physical medicine;

v. physical therapy;

vi. physical rehabilitation;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000343

vii. prescribing or dispensing outpatient prescription medication; or

viii. laboratory services.

c.  **Limits**

(1) Item 2.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 2. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

d.  **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

5.  **MEDICAL PAYMENTS COVERAGE**

a.  **Insuring Agreement**

Item 2.C. is changed to read:

follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following *persons* or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000344

Statutes, based upon referral by a provider described in B. above; and

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or

(a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

  i. general medicine;

  ii. radiography;

  iii. orthopedic medicine;

  iv. physical medicine;

  v. physical therapy;

  vi. physical rehabilitation;

  vii. prescribing or dispensing outpatient prescription medication; or

  viii. laboratory services.

b. **Limits**

(1) Item 3.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 3. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

c. **Exclusions**

(1) Exclusion 7. is changed to read:

THERE IS NO COVERAGE FOR AN *INSURED* WHO:

a. IS *OCCUPYING* OR THROUGH BEING STRUCK

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000345

AS A *PEDESTRIAN* BY A VE-HICLE *OWNED BY* ANY NAMED INSURED OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS POL-ICY; OR

b.  AT THE TIME OF THE ACCI-DENT OWNS A *MOTOR VE-HICLE* SUBJECT TO THE *NO-FAULT ACT* AND IS NOT INSURED FOR THE COVER-AGE REQUIRED BY THE *NO-FAULT ACT*.

This exclusion (7.b.) does not apply to:

(1)  any named insured;

(2)  the spouse of any named insured; and

(3)  any *relative* while *occupying your car*, a *newly acquired car*, a *temporary substitute car*, or a *non-owned car* if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage;

(2)  The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1.  PROVIDING TRANS-PORTATION NETWORK SERVICES; OR

2.  *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR*

WHILE SUCH VEHICLE IS BEING USED TO PRO-VIDE TRANSPORTA-TION NETWORK SERVICES.

6.  **UNINSURED MOTOR VEHICLE COV-ERAGE (Stacking)**

a.  **Additional Definitions**

"*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer" is changed to read:

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1.  whose ownership, maintenance, or use is provided Liability Cov-erage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehi-cle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being oper-ated by a *person* other than *you* or a *resident relative*;

2.  designed for use primarily off public roads except while on public roads;

3.  while located for use as a dwell-ing or other premises; or

4.  whose owner or operator could have been reasonably identified.

b.  **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1.  PROVIDING TRANSPORTA-TION NETWORK SERVICES; OR

2.  *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY*

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000346

*ACQUIRED CAR*, OR A *TEM-PORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NET-WORK SERVICES.

7. **UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking)**

   a. **Additional Definitions**

   "*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer" is changed to read:

   *Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

   1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

   2. designed for use primarily off public roads except while on public roads;

   3. while located for use as a dwelling or other premises; or

   4. whose owner or operator could have been reasonably identified.

   b. **Exclusions**

   (1) Exclusion 2. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

   a. WHILE *OCCUPYING* A VEHICLE *OWNED BY YOU* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

   b. WHILE *OCCUPYING* A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*. This exclusion (2.b.) does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, provided that the vehicle is *owned by* neither that named insured nor that spouse; OR

   c. WHILE A *PEDESTRIAN* AND IS STRUCK BY A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*;

   (2) The following exclusions are added:

   (a) THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A VEHICLE *OWNED BY* THAT *INSURED* IF THAT VEHICLE IS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE UNDER THIS POLICY OR ANY OTHER POLICY.

   (b) THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

   1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000347

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

8. **PHYSICAL DAMAGE COVERAGES**

a The paragraph that reads:

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

is changed to read:

**Deductible**

1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss* to a *newly acquired car*.

2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss caused by collision* to a *newly acquired car*.

b. **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR ANY *COVERED VEHICLE* WHILE IT IS USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

9. **INSURED'S DUTIES**

a. Item 7.a.(3) is changed to read:

An *insured* making claim under:

a. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(3) provide written authorization for *us* to obtain medical bills, medical records, wage information, salary information, employment information, and any other relevant information *we* deem reasonably necessary to substantiate the claim.

Such authorizations must not:

(a) restrict *us* from performing *our* business functions in:

(i) obtaining relevant and reasonably necessary records, bills, information, and data; nor

(ii) using or retaining relevant and reasonably necessary records, bills, information, and data collected or received by *us*;

Page 8 of 11                                        6128S.1
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000348

(b) require **us** to violate federal or state laws or regulations;

(c) prevent **us** from fulfilling **our** data reporting and data retention obligations to insurance regulators; or

(d) prevent **us** from disclosing claim information and data:

    (i) to enable performance of **our** business functions;

    (ii) to meet **our** reporting obligations to insurance regulators;

    (iii) to meet **our** reporting obligations to insurance data consolidators; and

    (iv) as otherwise permitted by law.

If an injured **insured** is a minor, unable to act, or dead, then his or her legal representative must provide **us** with the written authorization.

If the holder of the information refuses to provide it to **us** despite the authorization, then at **our** request the **person** making claim or his or her legal representative must obtain the information and promptly provide it to **us**; and

b. The following is added to item 7.:

An **insured** making claim under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must submit to **us** all information **we** need to comply with federal and state laws and regulations.

10. **GENERAL TERMS**

a. The following is added to **Limited Coverage in Mexico**:

    **Uninsured Motor Vehicle Coverage (Stacking and Non-Stacking)**

b. Under **Limited Coverage in Mexico**, **Legal Action Against Us** is changed to read:

    Any legal action against **us** arising out of an accident or **loss** occurring in the country of Mexico must be brought in a Florida state court in the United States of America, or a United States of America District Court that has jurisdiction.

c. The provision entitled **Persons Acting On Our Behalf** is deleted in its entirety.

d. The following is added to **Newly Owned or Newly Leased Car**:

    If a **resident relative** wants to insure a **car** newly **owned by** the **resident relative** with the **State Farm Companies** after that **car** ceases to be a **newly acquired car**, then the **resident relative** must apply to the **State Farm Companies** for a separate policy to insure the **car** newly **owned by** the **resident relative**. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

e. The following is added to **Premium**:

    If due to insufficient funds, payment of premium for this policy by debit

6128S.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF-Sasson, Assaf - 000349

card, credit card, electronic funds transfer, or electronic check is returned, is declined, or cannot be processed, *we* may impose an insufficient funds fee of $15 per occurrence.

f. **Return of Unearned Premium** is changed to read:

(1) If *you* cancel this policy:

(a) then premium will be earned on a pro rata basis. *We* may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed or electronically transferred to *you* within 30 days after the effective date of the policy cancellation, or 30 days after *we* receive *your* request to cancel this policy, whichever is later. Delay in the return of unearned premium does not affect the cancellation;

(b) *you* may elect to apply the unearned portion of any premium paid to unpaid balances of other policies with the ***State Farm Companies***.

(2) If *we* cancel this policy:

(a) then premium will be earned on a pro rata basis. Any unearned premium will be mailed or electronically transferred at the time we cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation;

(b) *you* may elect to apply the unearned portion of any premium paid to unpaid balances of other policies with the ***State Farm Companies***.

g. The following are added to **GENERAL TERMS**:

**Electronic Delivery**

With *your* consent, *we* may, if allowed by law, electronically deliver any document or notice, including a notice to renew, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice. This provision does not apply to any notice to non-renew or cancel.

**Our Rights Regarding Claim Information**

a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b. Subject to a. above, *we* will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, relevant data, and any other reasonable information to process the claim;

(2) using any of the items described in item b.(1) above; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6128S.1

SF-Sasson, Assaf - 000350

(3) retaining:

    (a) any of the items in item b.(1) above; or

    (b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c.  *We* may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

    (1) to enable performance of *our* business functions;

    (2) to meet *our* reporting obligations to insurance regulators;

    (3) to meet *our* reporting obligations to insurance data consolidators;

    (4) to meet other obligations required by law; and

    (5) as otherwise permitted by law.

d.  *Our* rights under a., b., and c. above shall not be impaired by any:

    (1) authorization related to any claim submitted under this policy; or

    (2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
6128S.1

SF-Sasson, Assaf - 000351

Filing # 174290181 E-Filed 05/31/2023 01:13:28 PM

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON

CASE NO. COINX-22-049821

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant.

_____/

   YOU ARE HEREBY NOTIFIED that we shall call up for hearing before the Honorable Steven

P. Deluca, one of the Judges in the above-styled Court, on June 7, 2023 at 11:00 am, or as soon

thereafter as we may be heard, by Zoom teleconference:

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND TRANSFER TO
CIRCUIT COURT**

**Zoom Meeting: https://17thflcourts.zoom.us/j/499985495**

**PLEASE GOVERN YOURSELVES ACCORDINGLY.**

*If you are a person with a disability who needs any accommodation in order to participate in this
proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the
ADA Coordinator, Room 470, 201 SE Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at
least 7 days before your scheduled court appearance, or immediately upon receiving this notification if
the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call
711.*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this document was served on all

registered participants of the Florida e-filing system appearing in this case on this 31th day of

May, 2023.


_____/s/__*Daren Stabinski*_____
Daren Stabinski, Esq.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
(954) 324-1552
Florida Bar No.: 002951
daren@darenstabinskipa.com

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON and ADA SASSON,

          Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant.

_____/

CASE NO: COINX-22-049821

## OBJECTION TO UNILATERALLY-SET HEARING ON JUNE 7, 2023 AT 11:00A.M. AND NOTICE OF UNAVAILABILITY

Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), by and through undersigned counsel hereby files its Objection to, and Notice of Unavailability for, Plaintiff's June 7, 2023 **_unilaterally_** set hearing on Plaintiff's Motion for Leave to Amend Complaint (to assert Class Action claims) and Transfer to Circuit Court.

Plaintiff filed its notice of hearing on May 31, 2023 with less than one-weeks' notice and without clearing the date with counsel for State Farm. Lead counsel for State Farm is unavailable on June 7, 2023. Plaintiff's counsel was promptly made aware of State Farm's unavailability and refused to reschedule the hearing. A copy of email communication between State Farm's counsel and Plaintiff's counsel attached as **Ex. A**.

State Farm will be be severely prejudiced should the Court allow the hearing to proceed without State Farm's Lead Counsel present and without permitting State Farm the opportunity to be heard.

Accordingly, State Farm objects to Plaintiff's unilaterally-noticed hearing and requests the Court re-set the hearing on a date and time coordinated with both parties.

1

Dated: June 6, 2023                    /s/ Johanna W. Clark

                                  Johanna W. Clark
                                    Florida Bar No.  196400
                                    Miguel A. Rodriguez
                                    Florida Bar No. 1002585
                                    CARLTON FIELDS, P.A.
                                    200 S. Orange Avenue, Suite 1000
                                    Orlando, Florida 32801
                                    Phone:    (407) 849-0300
                                    Fax:        (407) 648-9099
                                    Email: jclark@carltonfields.com (*primary*)
                                    Email: marodriguez@carltonfields.com (*primary*)
                                    Email: dmonge@carltonfields.com (*secondary*)
                                    Email: atokarz@carltonfields.com (*secondary*)
                                    *Attorneys for Defendant, State Farm Mutual Automobile Insurance Company*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 6, 2023, the foregoing was filed with the Clerk of the Court through Florida's e-Portal, which will send an electronic notice of filing and service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
*Attorneys for Plaintiff*

                                    /s/ Johanna W. Clark
                                    JOHANNA W. CLARK

133125825.1

# EXHIBIT A

**Tokarz, Aubrey M.**

| | |
|---|---|
| **From:** | Daren Stabinski <daren@darenstabinskipa.com> |
| **Sent:** | Wednesday, May 31, 2023 2:18 PM |
| **To:** | Rodriguez, Miguel A. |
| **Cc:** | Clark, Johanna W.; Tokarz, Aubrey M.; Cristina M. Pierson; Johnet Grimm |
| **Subject:** | Re: Sasson vs. State Farm |

Please don't put this one back on me. I sent more than one email to attempt to resolve this and was ignored until receiving your email that Johanna was out of town (which certainly does not stop you from coordinating a date for the hearing). I am not going to cancel anything without a confirmed alternate date and I am not waiting a month to have this hearing.

**WE HAVE MOVED. PLEASE NOTE OUR NEW ADDRESS.**

Daren Stabinski, Esq.
Daren Stabinski P.A.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739

---

**From:** Rodriguez, Miguel A. <MARodriguez@carltonfields.com>
**Sent:** Wednesday, May 31, 2023 2:13 PM
**To:** Daren Stabinski <daren@darenstabinskipa.com>
**Cc:** Clark, Johanna W. <jclark@carltonfields.com>; Tokarz, Aubrey M. <ATokarz@carltonfields.com>; Cristina M. Pierson <cmp@kulaw.com>; Johnet Grimm <johnet@kulaw.com>
**Subject:** RE: Sasson vs. State Farm

Daren,

That you decided to wait until "various deadlines [are] approaching" to file your motion is no reason to unilaterally set a hearing after one attempt to coordinate (which was responded to). You relayed proposed dates for a hearing on your motion <u>once</u> on May 25 and I replied to your email. The local rules are clear in that the parties need to make a good faith attempt to resolve prior to setting a hearing. I informed you Johanna would be back next week and we would get back to you at that time in order to confer on the matter.

We are not available on June 7 or June 14 for a hearing. For the last time, please cancel the unilaterally set hearing and coordinate the conference and hearing with Ms. Tokarz who has our office's availability.

Thank you,

**Miguel A. Rodriguez**
Attorney at Law | Carlton Fields
200 S. Orange Ave., Ste. 1000 | Orlando, Florida 32801-3456
Direct: 407.244.8232 | Fax: 407.648.9099
MARodriguez@carltonfields.com

---

**From:** Daren Stabinski <daren@darenstabinskipa.com>
**Sent:** Wednesday, May 31, 2023 1:32 PM

1

**To:** Tokarz, Aubrey M. <ATokarz@carltonfields.com>; Rodriguez, Miguel A. <MARodriguez@carltonfields.com>
**Cc:** Clark, Johanna W. <jclark@carltonfields.com>; Cristina M. Pierson <cmp@kulaw.com>; Johnet Grimm <johnet@kulaw.com>
**Subject:** Re: Sasson vs. State Farm

I have sent multiple emails to both Johanna and Miguel.   If you are the one in charge of scheduling, I would think either could have forwarded my emails to you.

I am not changing this hearing unless I get a confirmed date from your office for an alternate date as we have various deadlines approaching.   Judge Deluca only holds hearings on Wednesdays.  I can re-notice for June 14 at 9am or 11am.

**WE HAVE MOVED.  PLEASE NOTE OUR NEW ADDRESS.**

Daren Stabinski, Esq.
Daren Stabinski P.A.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739

---

**From:** Tokarz, Aubrey M. <ATokarz@carltonfields.com>
**Sent:** Wednesday, May 31, 2023 1:21 PM
**To:** Daren Stabinski <daren@darenstabinskipa.com>; Rodriguez, Miguel A. <MARodriguez@carltonfields.com>
**Cc:** Clark, Johanna W. <jclark@carltonfields.com>; Cristina M. Pierson <cmp@kulaw.com>; Johnet Grimm <johnet@kulaw.com>
**Subject:** RE: Sasson vs. State Farm

This is not a date on which our office is not available.  I am the person who coordinates all hearings on this matter since the inception of the litigation.  Please copy me on emails if you would like your hearings coordinated as per our Notice of Appearance.  Please provide alternative dates for this hearing.

**Aubrey M. Tokarz**
Legal Administrative Assistant | Carlton Fields
200 S. Orange Ave., Ste. 1000 | Orlando, Florida 32801-3456
Direct: 407.481.5479 | Fax: 407.648.9099
ATokarz@carltonfields.com

---

**From:** Daren Stabinski <daren@darenstabinskipa.com>
**Sent:** Wednesday, May 31, 2023 1:20 PM
**To:** Tokarz, Aubrey M. <ATokarz@carltonfields.com>; Rodriguez, Miguel A. <MARodriguez@carltonfields.com>
**Cc:** Clark, Johanna W. <jclark@carltonfields.com>; Cristina M. Pierson <cmp@kulaw.com>; Johnet Grimm <johnet@kulaw.com>
**Subject:** Re: Sasson vs. State Farm

This is a 15 minute hearing which is more than sufficient for a motion to amend.

**WE HAVE MOVED.  PLEASE NOTE OUR NEW ADDRESS.**

Daren Stabinski, Esq.
Daren Stabinski P.A.
1213 N.E. 1st Street

Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739

---

**From:** Tokarz, Aubrey M. <ATokarz@carltonfields.com>
**Sent:** Wednesday, May 31, 2023 1:19 PM
**To:** Daren Stabinski <daren@darenstabinskipa.com>; Rodriguez, Miguel A. <MARodriguez@carltonfields.com>
**Cc:** Clark, Johanna W. <jclark@carltonfields.com>; Cristina M. Pierson <cmp@kulaw.com>; Johnet Grimm <johnet@kulaw.com>; Tokarz, Aubrey M. <ATokarz@carltonfields.com>
**Subject:** RE: Sasson vs. State Farm

Mr. Stabinski:

Per our earlier email you did not coordinate this date with our office and we are not available for a hearing on this date.  Please provide other dates for this hearing to properly coordinate rather than unilaterally scheduling on a date that your office is available.  Additionally, that State Farm will need time to prepare and file any objection to this motion prior to the hearing, should it choose to do so and we will need more than 5 minutes for this hearing.

**Aubrey M. Tokarz**
Legal Administrative Assistant | Carlton Fields
200 S. Orange Ave., Ste. 1000 | Orlando, Florida 32801-3456
Direct: 407.481.5479 | Fax: 407.648.9099
ATokarz@carltonfields.com

---

**From:** Daren Stabinski <daren@darenstabinskipa.com>
**Sent:** Wednesday, May 31, 2023 1:17 PM
**To:** Rodriguez, Miguel A. <MARodriguez@carltonfields.com>
**Cc:** Clark, Johanna W. <jclark@carltonfields.com>; Cristina M. Pierson <cmp@kulaw.com>; Johnet Grimm <johnet@kulaw.com>; Tokarz, Aubrey M. <ATokarz@carltonfields.com>
**Subject:** Re: Sasson vs. State Farm

Hi Miguel,

I understand that Johanna is out of town, but because of the upcoming deadlines we had to get this set for hearing and I have not received an answer which of the dates provided you are available.  I have set the hearing after Johanna gets back into town.  Attached please find the notice of hearing.  If you have any questions, do not hesitate to contact me.

**WE HAVE MOVED.  PLEASE NOTE OUR NEW ADDRESS.**

Daren Stabinski, Esq.
Daren Stabinski P.A.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739

---

**From:** Rodriguez, Miguel A. <MARodriguez@carltonfields.com>
**Sent:** Thursday, May 25, 2023 8:39 PM
**To:** Daren Stabinski <daren@darenstabinskipa.com>
**Cc:** Clark, Johanna W. <jclark@carltonfields.com>; Cristina M. Pierson <cmp@kulaw.com>; Johnet Grimm

<johnet@kulaw.com>; Tokarz, Aubrey M. <ATokarz@carltonfields.com>
**Subject:** Re: Sasson vs. State Farm

Good evening Daren,

Johanna is still out of the country. Once she returns the week of June 5th, we will be meeting with our client regarding your motion and will get back to you at that time. Thanks for your patience.

Best regards,

Miguel A. Rodriguez
Attorney at Law | Carlton Fields
200 S. Orange Ave., Ste. 1000 | Orlando, Florida 32801-3456
Direct: 407.244.8232 | Fax: 407.648.9099
MARodriguez@carltonfields.com

On May 25, 2023, at 8:25 PM, Daren Stabinski <daren@darenstabinskipa.com> wrote:

Johanna and Miguel,

Since I have not heard back from you, I have obtained dates that the Court is available for hearing:

June 7 or 14-  Available times between 9am and 1pm.

Please let me know what works for you.  I have copied my co-counsel Cristina Pierson and her assistant Johnet to provide her availability as well.

Thanks,


WE HAVE MOVED.  PLEASE NOTE OUR NEW ADDRESS.

Daren Stabinski, Esq.
Daren Stabinski P.A.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739
_____
From: Daren Stabinski
Sent: Thursday, May 18, 2023 3:06 PM
To: Clark, Johanna W. <jclark@carltonfields.com>; Rodriguez, Miguel A. <MARodriguez@carltonfields.com>
Cc: Cristina M. Pierson <cmp@kulaw.com>; Johnet Grimm <johnet@kulaw.com>
Subject: Sasson vs. State Farm

Hi Johanna and Miguel,

Earlier today, my co-counsel Cristina Pierson filed a motion to amend and to transfer to circuit court with a proposed amended complaint.  Please advise whether we can agree on an order allowing leave to amend and transfer, and if so, let me know how much time you need to answer the amended complaint.

If you cannot agree, let me know and I will look on CMS for available dates for the hearing.

Thanks,

WE HAVE MOVED.  PLEASE NOTE OUR NEW ADDRESS.

Daren Stabinski, Esq.
Daren Stabinski P.A.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
Ph:  (954) 324-1552
Fax: (954) 245-0739

IN THE COUNTY COURT IN AND FOR
BROWAR COUNTY, FLORIDA

ASSAF SASSON                                    CASE NO. COINX-22-049821

Plaintiff,

vs.                                             **RE-NOTICE OF HEARING**

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant.

_____/

  YOU ARE HEREBY NOTIFIED that we shall call up for hearing before the Honorable Steven

P. Deluca, one of the Judges in the above-styled Court, on June 28, 2023 at 11:00 am, or as soon

thereafter as we may be heard, by Zoom teleconference:

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND TRANSFER TO
CIRCUIT COURT**

**Zoom Meeting: https://17thflcourts.zoom.us/j/499985495**

**PLEASE GOVERN YOURSELVES ACCORDINGLY.**

*If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 470, 201 SE Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this document was served on all registered participants of the Florida e-filing system appearing in this case on this 6th day of June, 2023.


_____/s/__*Daren Stabinski*____
Daren Stabinski, Esq.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
(954) 324-1552
Florida Bar No.: 002951
daren@darenstabinskipa.com

IN THE COUNTY COURT IN AND FOR
BROWER COUNTY, FLORIDA

ASSAF SASSON                                    CASE NO. COINX-22-049821

Plaintiff,

vs.                                             **RE-NOTICE OF HEARING**

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant.

_____/

   YOU ARE HEREBY NOTIFIED that we shall call up for hearing before the Honorable Steven

P. Deluca, one of the Judges in the above-styled Court, on June 21, 2023 at 11:00 am, or as soon

thereafter as we may be heard, by Zoom teleconference:

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND TRANSFER TO
CIRCUIT COURT**

**Zoom Meeting: https://17thflcourts.zoom.us/j/499985495**

**PLEASE GOVERN YOURSELVES ACCORDINGLY.**

*If you are a person with a disability who needs any accommodation in order to participate in this
proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the
ADA Coordinator, Room 470, 201 SE Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at
least 7 days before your scheduled court appearance, or immediately upon receiving this notification if
the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call
711.*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this document was served on all registered participants of the Florida e-filing system appearing in this case on this 6th day of June, 2023.

_____/s/__*Daren Stabinski*_____
Daren Stabinski, Esq.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
(954) 324-1552
Florida Bar No.: 002951
daren@darenstabinskipa.com

Case 0:23-cv-61594-RS   Document 1-3   Entered on FLSD Docket 08/18/2023   Page 778 of 1096

IN THE COUNTY COURT IN
AND FOR BROWARD
COUNTY, FLORIDA

CASE NO. COINX-22-049821

ASSAF SASSON,

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
Defendant.

_____/

## NOTICE OF UNAVAILABILITY

**PLEASE TAKE NOTICE** that the undersigned, Daren Stabinski, Esq., will be unavailable from **July 5, 2023 through and including July 13, 2023**, and respectfully requests that no hearings or depositions be scheduled during this time; no motions, requests to produce, interrogatories or other pleadings be filed which require a timely response during this time; and that all pending matters remain in status quo during this period of time. The filing and service of this Notice shall constitute an application and request for continuance, extension of time and/or for a Protective Order as appropriately required for the above reason.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served to all registered parties via the Florida e-portal filing system on June 9th, 2023.

.

_____/s/_ _**Daren Stabinski**_
Daren Stabinski, Esq.
Daren Stabinski P.A.
1213 N.E. 1st Street
Fort Lauderdale, FL 33301
(954) 324-1552
Florida Bar No.: 002951
daren@darenstabinskipa.com

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF AND ADA SASSON,

        Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/

CASE NO: COINX-22-049821

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE COMPANY'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), through

counsel and pursuant to Florida Rule of Civil Procedure 1.190, respectfully opposes Plaintiffs'

Motion for Leave to Amend the Complaint and then Transfer to Circuit Court (the "Motion").

**RELEVANT BACKGROUND**

Last summer, Plaintiff Assaf Sasson, filed this one-count action against State Farm, his

automobile insurer, alleging breach of contract under his insurance policy (the "Policy").

Mr. Sasson alleged State Farm paid $6,267.03 for repairs to his vehicle, but breached the Policy

by refusing to pay the entire $8,360.87 estimate prepared by his collision body shop, Stuttgart

International ("Stuttgart"). Since that initial filing, Mr. Sasson has amended the complaint twice,

including adding his wife, Ada Sasson, as a second Plaintiff (collectively, "Plaintiffs"). In addition,

the parties agreed twice that a claim of "loss of use" would be stricken from various versions of

the complaint. The now-operative Second Amended Complaint (the third complaint) is limited to

the discrete issue of whether State Farm owes Plaintiffs an additional $2,093.84 for collision

repairs to their vehicle, and the litigation has proceeded forward on this basis nearly a year. Indeed,

discovery concludes in nine days. State Farm is preparing a motion for summary judgment based on the existing discovery record, and otherwise preparing for trial.

Now, nearly a year after filing the original complaint, Plaintiffs have again changed their minds as to the scope of the litigation, and this time derailed the matter's progress to resolution. On May 18, 2023, Plaintiffs filed their Motion seeking to bring a putative class action and three new theories of liability. Mot. at Ex. 1, ¶¶ 10, 41, 46, Wherefore.

The Motion should be denied because of the prejudice that will accrue to State Farm if it is granted. The parties have already, twice, asked the Court to extend case management deadlines. Most recently, on April 23, 2023, the Court entered a new Case Management Order. Under that Order, discovery closes June 30, 2023 – two days after the hearing on this Motion. And the deadline to file the Joint Pretrial Stipulation is July 10, 2023 – a mere <u>12 days</u> after the hearing.

If the amendment is granted, and the case rebooted as a class action, the parties will have no choice but to start over. First, there has been no discovery on Plaintiffs' proposed class claims or new theories of liability, and, under the current schedule, discovery will be closed in less than two weeks. Absent additional extension, there will be no opportunity for State Farm to take discovery on the class issues or new liability theories before trial. Second, under the Case Management Order, Plaintiffs' deadline for disclosing expert witnesses was March 3, 2023 and State Farm's expert disclosure deadline was March 13, 2023 – more than **three months ago**. Thus, if the proposed class claims and new theories of liability are added, under the current schedule, State Farm will have no ability to disclose a new or additional expert before trial. Third, were this Court to grant the motion, Plaintiffs will have moved the parties to Circuit Court, before a new judge. Fourth and finally, Plaintiffs will also need to move to certify a class under applicable rules,

and State Farm will need the opportunity to oppose certification. But the current Case Management Order provides no time for class certification briefing.

This amendment would truly result in a restart. Were amendment granted, the new court would have to reset all deadlines, and the last year of litigation would end up wasted. This is unfair and prejudicial to State Farm. Plaintiffs – apart from their counsel – benefit in no way from this new amendment, as they have already had discovery on their damages allegations. If the Motion is denied, Plaintiffs' counsel can always bring a new class action with a new client.

Plaintiffs have also abused the right to amend, as the proposed amendment would be their **fourth** complaint. Plaintiffs could have started this matter as a class action, but did not; they could have moved to amend months ago, well before the expert and discovery deadlines, but did not.

Finally, the claims alleged in the proposed amendment are futile as a matter of law – Plaintiffs cannot state a claim for relief under their new theories in the face of the Policy's clear language and Florida law, and courts that have addressed class action allegations similar to those in the proposed complaint have uniformly denied certification. For those reasons, even if the Court were to grant the Motion, the matter will be dismissed in whole or in part by another court on a motion to dismiss or after a class certification hearing, and the Parties will find themselves right back before this Court, preparing for summary judgment or trial on the current allegations.

Accordingly, Plaintiffs' Motion must be denied.

## <u>MEMORANDUM OF LAW</u>

Florida Rule of Civil Procedure 1.190(a) provides that leave to amend a complaint "shall be given freely when justice so requires." This liberality in granting leave to amend diminishes, however, as the case progresses towards trial. *Levine v. United Co. Life Ins. Co.*, 659 So. 2d 265, 266-67 (Fla. 1995); *Lasar Mfg. Co., Inc. v. Bachanov*, 436 So. 2d 236, 237-38 (Fla. 3d DCA 1983);

*Noble v. Martin Mem. Hosp. Ass'n*, 710 So. 2d 567 (Fla. 3d DCA 1997); *Digiacomo v. Mosquera*, 322 So. 3d 734, 738 (Fla. 3d DCA 2021).

Indeed, justice does not require the Court to grant leave to amend when the privilege to amend has been abused, amendment is futile, or, as here, there is prejudice to the opposing party. *E.g.*, *Fla. Dept. of Transp. v. Tropical Trailer Leasing, LLC*, 308 So. 3d 242 (Fla. 1st DCA 2020); *Lasar Mfg.*, 436 So. 2d at 237; *Digiacomo*, 322 So. 3d at 738. The trial court's decision to permit or refuse amendment to pleadings will not be disturbed on appeal in the absence of an abuse of discretion. *Rooks v. Shader*, 384 So. 2d 681 (Fla. 5th DCA 1980); *Lasar Mfg.*, 436 So. 2d at 237; *Digiacomo*, 322 So. 3d at 737.[1] Here, Plaintiffs' proposed amendment prejudices State Farm, is an abuse of the right to amend, and is futile.

### A.  The Proposed Amendment Prejudices State Farm.

In determining prejudice to a defendant, the Court should consider the pretrial order and how long the case has been pending, although these things alone are not sufficient to create prejudice. *State Farm Mut. Auto. Ins. Co. v. Global Neuro and Spine Institute*, 323 So. 3d 754, 755 (Fla. 4th DCA 2021). Indeed, "a trial court may deny any party the right to amend his pleadings if the proposed amendments will change or introduce new issues or materially vary the grounds for relief." *Tropical Trailer*, 308 So. 3d 242, 249 (Fla. 1st DCA 2020) (quoting *Brown v. Montgomery Ward & Co.*, 252 So. 2d 817, 819 (Fla. 1st DCA 1971))*; see Int'l Patrol & Detective Agency, Inc. v. Aetna Cas. & Sur. Co.*, 396 So. 2d 774, 776 (Fla. 1st DCA 1981), *approved sub nom.*, 419 So. 2d 323 (Fla. 1982).

---

[1] Plaintiffs cite no case law in support of their motion for leave to amend. The only authority cited relates to jurisdictional amounts requiring transfer of an action to Circuit Court.

There is no dispute the proposed amendment here will materially vary the grounds for relief. The Motion makes that clear. In essence, Plaintiffs seek to convert a $2,000 individual collision repair payment dispute into a nationwide class action involving "hundreds (and perhaps thousands)" of collision repair payment disputes. Mot. at 1. Plaintiffs' proposed amendment alters the scope of damages from labor rates **and** all other individual line items resisted by State Farm for the repairs to Plaintiff's vehicle, solely to a labor rate dispute. Nonetheless, Plaintiffs continue to assert their breach of contract claim for underpayment of collision repairs. *Id.* Plaintiffs also purport to assert three entirely new **theories of liability**. First, Plaintiffs allege State Farm breached the "Implied Covenant of Good Faith and Fair Dealing" as it relates to payment for repairs to their vehicle and to those of the putative class. *Id.* Second, the proposed amendment attempts to allege a claim for diminished value of the Plaintiffs' vehicle and that of the putative class. Third, Plaintiffs attempt to seek injunctive relief in both counts of their proposed complaint; they specifically demand a judgment "[e]njoining" State Farm from "denying coverage for hourly labor rates of certified facilities." Mot., Ex. 1, ¶¶ Wherefore, subsections d.

Each of Plaintiffs' proposed new claims, including the class claims **and evidence** associated with these new claims and theories, have not been the subject of any discovery, testimony, or expert evaluation. Effectively, if leave to amend is granted, State Farm will have to start the litigation over.[2]

*International Patrol* is on-point. There, plaintiff sought in a second amended complaint to add class action claims and seek injunctive relief (precisely as Plaintiffs attempt here), where, as

---

[2] The Fourth District has found abuse of discretion in a denial of amendment at the summary judgment stage when the amendment's prejudice to defendant is additional time needed for legal research. *See Dimmick v. Ray*, 774 So. 3d 830 (Fla. 4th DCA 2000). By contrast, here, the prejudice is the Defendant's need to start over entirely.

here, discovery was substantially completed. 396 So. 2d at 776. The trial court refused leave to amend, and the First District affirmed, holding that "the addition of substantial new issues associated with a class action would interfere with the timely resolution of the already pending issues in this case." *Id.* The court further explained that, in those circumstances, while "leave to amend should be liberally granted so that matters may be tried on the merits, such amendments are not allowable if they would change the issue, introduce new issues, or materially vary the grounds for relief." *Id.* (citation omitted).

*Tropical Trailer* is also on-point. There, in a putative class action, plaintiff moved to file a third amended complaint two months before the case was set for trial, stating the amendment's primary purpose was to correct an "internal inconsistency between the proposed class definitions and to add a count for common-law refund." 308 So. 2d at 249. The trial court denied the motion because nearly three and a half years had passed since the case was filed, citing the Florida Supreme Court's time standards for civil trials, and trial was a mere two months away. The First District held the trial court did not abuse its discretion in denying leave to file a new complaint "which introduced a new count … so late in the litigation." *Id.* Although the trial court's denial only referenced the case's age, the appellate court affirmed "because the record reflects that the age of the case and the addition of a new count supports the trial court's decision." *Id.* at 249 n.*.

*Brown* also is instructive. There, shortly before trial, plaintiff sought to amend his personal injury complaint against a firearm manufacturer to raise "different issues of liability as grounds for relief." 252 So. 2d at 818. Although plaintiff admitted the proposed amended pleading "would materially change and introduce into the case new issues," he argued that "our modern rules of procedure establish the policy of allowing litigants to amend pleadings freely in order that causes may be tried on their merits." *Id.* The trial court denied the motion, and the First District affirmed.

It held the amendment "would necessarily require a continuance of the trial until some later date in order to permit the parties to prepare themselves on the new issues thus proposed." *Id.* at 819. This delay of the suit "by necessarily requiring a continuance" would be "unduly prejudicial to the opposing party." *Id.* Although it is "highly desirable that amendments to pleadings be liberally allowed so that cases may be concluded on their merits, there is an equally compelling obligation on the court to see to it that the end of all litigation be finally reached." *Id.; see also Levine v. United Co. Life Ins. Co.*, 659 So. 2d 265, 266-67 (Fla. 1995) (approving affirmance of trial court's refusal to allow amendment of defenses two weeks before trial because "the liberality typically associated with amendments to pleadings diminishes as the case progresses").

Indeed, because Plaintiffs seek to inject entirely new issues into this case, allowing their proposed amendments would require not only a continuance, but also starting over from the beginning and in a new court. In *Brown*, plaintiff sought to amend the complaint solely to introduce new evidence. Here, Plaintiffs seek to amend to raise entirely new theories of liability involving entirely new issues, in addition to a proposed class.

As in *Tropical Trailer*, *Brown*, and *Levine*, prejudice is manifest when a continuance would be required to litigate Plaintiffs' new theory in a new court. Essentially, if amendment is permitted, all the parties' work done for the past year in litigating the existing claims will have been wasted. Thus, this case falls easily within the declaration of the First District in *Tropical Trailer*: "a trial court may deny any party the right to amend his pleadings if the proposed amendments will change or introduce new issues or materially vary the grounds for relief." 308 So. 2d at 249

### B. Plaintiffs' Proposed Amendment Would Be The Fourth Formal Complaint And Sixth Iteration Of Their Claims, And Thus An Abuse Of The Right To Amend.

Although Plaintiffs breezily assert in a footnote they have not abused the right to amend, the proposed amendment would be the **fourth** formal complaint and **sixth** iteration of the

complaint since Mr. Sasson first sued. Plaintiffs assert the "most recent prior amendment did not make substantive changes to the claims, but rather only added a party plaintiff (the co-owner of the subject vehicle)." Mot. at 2 n.1. This assertion underplays the degree to which the pleadings repeatedly have changed throughout this litigation. The original complaint sought damages for (1) breach of contract, (2) diminished value and (3) loss of use. State Farm moved to dismiss, and Mr. Sasson voluntarily amended. The First Amended Complaint then sought damages for (1) breach of contract and (2) loss of use, but Mr. Sasson subsequently abandoned his loss of use claim. *See* November 14, 2022 Agreed Order Striking Loss of Use Claim Without Prejudice. Plaintiff's Second Amended Complaint added Mrs. Sasson as co-Plaintiff, but also sought damages for (1) breach of contract and (2) loss of use, but Plaintiffs <u>again</u> abandoned the loss of use claim. *See* April 18, 2023 Agreed Order Striking Loss of Use Claim Without Prejudice.

"Leave to amend a complaint should be freely granted when justice so requires and it should not be denied unless the privilege has been abused." *Dryden Waterproofing, Inc. v. Bogard*, 488 So. 2d 672, 673 (Fla. 4th DCA 1986). Here, the privilege has been abused.

In *Kohn v. City of Miami Beach*, 611 So. 2d 538, 539 (Fla. 3d DCA 1993), the Third District held that "[w]hile there is no magical number of amendments which are allowed, we have previously observed that with amendments beyond the third attempt, dismissal with prejudice is generally not an abuse of discretion." The court reasoned that "[t]here is simply a point in litigation when defendants are entitled to be relieved of the time, effort, energy, and expense of defending themselves against seemingly vexatious claims." *Id.* The Fourth District has adopted this standard in multiple cases. *See Gladstone v. Smith*, 729 So. 2d 1002 (Fla. 4th DCA 1999); *Horton v. Freeman*, 917 So. 2d 1064 (Fla. 4th DCA 2006); *Gernstein v. Int'l Asset Value Group, LLC*, 199 So. 3d 979 (Fla. 4th DCA 2016).

Here, as noted, Plaintiffs are on their third proposed formal amendment to the complaint, but when the two orders striking claims are considered, the complaint is actually on its **fifth** iteration, with the proposed amendment being the **sixth** attempt to modify the claims and allegations. Enough is enough. The Motion should be denied, so that the parties can adjudicate the merits of the claims that now exist. Any putative class claims that Plaintiffs' counsel wishes to bring can await an appropriate case with another plaintiff, although, as noted in the below section, such complaint would be subject to dismissal.

### C.       Plaintiffs' Proposed Amendment Is Futile.

The proposed amendment is futile for several reasons.

### 1.       Plaintiffs' Claim That State Farm Breached The Policy By Failing To Pay The Face-Value Of Plaintiffs' Repair Estimate Is Belied By The Express Terms Of The Policy Which Govern State Farm's Payment Obligation.

A breach of contract claim requires a plaintiff to plead and prove a specific promise or obligation not performed by the defendant. *See, e.g., Abbott Labs., Inc. v. G.E. Cap.,* 765 So.2d 737 (Fla. 5th DCA 2000) (finding elements of a contract action are a valid contract, a material breach of the contract, and damages); *Burlington & Rockenbach, P.C. v. Law Offices of E. Clay Parker*, 160 So. 3d 955 (Fla. 5th DCA 2015) (holding that a contract action depends upon the execution of the contract, the obligation thereby assumed, and the breach of that obligation).

> Where it appears that the alleged conduct, nonperformance or defective performance does not contravene any term in the contract, an action for breach will not be sustained. Where, by the express definite terms of a complete contract any action taken or omitted under it does not appear to be a violation of it and no fraud or other illegal or inequitable conduct is shown, additional provisions will not be implied for the purpose of showing a violation when it otherwise does not appear and where the contract may be performed according to its terms.

Fla. Jur. 2d Contracts §269 (2012) (emphasis added); *see City-Wide Sanitation Co. v. City of Pembroke Pines*, 214 So.2d 485, 486 (Fla. 4th DCA 1968).

The proposed complaint asserts State Farm "materially breached its contracts by failing and refusing to pay the collision benefits as submitted by the Plaintiffs and class members..." Mot., Ex. 1, ¶ 41). However, there is no obligation in the Policy for State Farm to pay whatever estimate Plaintiffs or their repairer submit to State Farm — including the Stuttgart estimate submitted by Plaintiffs, and the proposed complaint identifies no such contract language.

Likewise, the proposed complaint alleges: "Stuttgart's hourly labor rates for Porsche collision repairs represent the prevailing competitive prices – i.e. the prices charged by a majority of the repair market in the area – and are routinely accepted by Florida automobile insurance companies." Mot., Ex. 1, ¶ 21. But the Policy does not require State Farm to pay repairs based on amounts "routinely accepted" by other insurers. *See* Mot., Ex. 1, Ex. A, at 32. Nor does the Policy obligate State Farm pay "the prices charged by a majority of the repair market in the area." Mot., Ex. 1, ¶ 21. To the contrary, the Policy requires only that State Farm pay the cost of repairing the vehicle by paying the prevailing competitive price or "PCP" ***as determined by State Farm's survey***. Mot., Ex. 1, Ex. A, at 32 ("The prevailing competitive price means prices charged by a majority of the repair market in the area where the ***covered vehicle*** is to be repaired as determined by a survey made by ***us***.").

Plaintiffs' proposed claims of breach are silent as to any terms or provisions in the Policy purportedly breached by State Farm. A breach of contract claim requires a specific promise or obligation that was not performed by the defendant. *See, e.g., Abbott Labs.*, 765 So. 2d at 737. Neither Plaintiffs nor the Court may extend State Farm's liability to an obligation it has not expressly assumed in the contract. *See, e.g., Ideal Mut. Ins. Co. v. C.D.I. Constr., Inc.,* 640 F. 2d 654 (Fla. 5th DCA 1981) (the parties' intent must be discerned from the four corners of the insurance policy and the contract language itself is the best evidence of the parties' intent); *South*

10

*Carolina Ins. Co. v. Heuer*, 402 So. 2d 480, 481 (Fla. 4th DCA 1981) ("Particularly with respect to insurance policies, a court needs to view the contract provisions in light of the character of the risks assumed by the insurer."); *see also O'Conner v. Safeco Ins. Co. of N. Am.,* 352 So. 2d 1255 (Fla. 1st DCA 1977).

Multiple Florida courts have decided similar rate disputes governed by the same Policy language at issue here. First, in *McHugh a/a/o Haline Gregory v. State Farm Mut. Auto. Ins. Co.*, Broward County, Florida, Case No.: 12-06933 COCE56, a Broward County repair facility sued State Farm claiming entitlement to higher hourly rates involving the same issues and the same contract language. County Court Judge Linda Pratt granted State Farm's motion for partial summary judgment based on State Farm's payment of body labor, refinish labor, and paint/materials at the PCP rates established by State Farm through its survey. *See* Order Granting State Farm's Motion for Partial Summary Judgment, entered June 16, 2016, attached as <u>Exhibit A</u>.

Likewise, in *McHugh a/a/o Kenneth Braden v. State Farm Mut. Auto. Ins. Company*, Broward County, Florida, Case No.: COCE 11-024975 (52) and *McHugh a/a/o Susan Reich v. State Farm Mut. Auto. Ins. Company*, Broward County, Florida, Case No.: COCE 12-012906 (52), the repair facility sought higher body and refinish labor rates, as well as a higher paint/materials rate for repairs it made to a vehicle insured by State Farm. County Court Judge Giuseppina Miranda granted summary judgment to State Farm because "[t]he amount State Farm paid for the repairs at issue was subject to a limit of liability provision in the governing insurance contract." *See* Orders Granting Defendant's Motion for Partial Summary Judgment, entered August 23, 2017, attached as <u>Composite Exhibit B</u>. Judge Giuseppina explained that State Farm complied with the insurance policy by paying the PCP as determined by a survey made by State Farm. *Id*.

These cases do not stand alone. *See Coastline Auto, Inc., a/a/o Harrynarine Maharaj v. State Farm Mut. Auto. Ins. Co.*, 23 Fla. L. Weekly Supp. 972a (Fla. 17th Cir. Ct. February 1, 2016), Order Granting Defendant's Motion for Partial Summary Judgment, entered April 2,1, 2016, attached as <u>Exhibit C</u>; *Collision Concepts of Delray, LLC, a/a/o Larry Canipe v. State Farm Mut. Auto. Ins. Co.*, Case No. 15-AP-000081-CA (Fla. 15th Cir. App. Ct. Dec. 13, 2016)*,* final judgment attached as <u>Exhibit D</u>; *Swift Invs., Inc. d/b/a Fantastic Finishes of Palm Beach, a/a/o Inna Kallas v. State Farm Mut. Auto. Ins. Co.*, Palm Beach County, Florida, Case No. 50-2015-SC-001147; *Swift Invs., Inc. d/b/a Fantastic Finishes of Palm Beach a/a/o Arthur Goldberg v. State Farm Mutual Automobile Insurance Company*, Palm Beach County, Florida, Case No. 50-2015-SC-001104; *Auto Krafters LLC a/a/o Kristie West v. State Farm Mut. Auto. Ins. Co.*, Palm Beach County, Florida, Case No. 502014SC006468XXXXNB, Orders granting State Farm's Motion for Partial Summary Judgment, attached as <u>Composite Exhibit E</u>; *A&E Auto Body, Inc. a/a/o James Thompson v. State Farm Mut. Auto. Ins. Co.*, Polk County, Florida, Case No. 2018-SC-000883-000, Order granting State Farm's Motion for Partial Summary Judgment, attached as <u>Exhibit F</u>; *Zero 6 a/a/o Alina Vazquez*, Case No. 18-1354-SC; *Zero 6 Inc. a/a/o Parker Davis*, Case No. 18-1356-SC, <u>Composite Exhibit G</u>; *Elite Euro Cars Collision Servs. a/a/o Carlos Uzzo v. State Farm Mut. Auto. Ins. Co.*, Hernando County Case No. 2021-CA-507, Order granting State Farm's Motion for Partial Summary Judgment and denying Plaintiff's Cross-Motion for Summary Judgment, attached as <u>Exhibit H</u>.

Further, to the extent Plaintiffs attempt to "test" or "attack" State Farm's survey methodology or assert a different pricing model altogether, all such efforts must fail.  In *Coastline Auto Inc./Maharaj*, Judge Zaccor explained that State Farm's "insurance contract gives the Defendant [State Farm] tremendous discretion in how to conduct its survey."  Ex. C at p.

3.  Likewise, two California appellate courts have rejected plaintiffs' attempts to state a breach of contract claim centered on a dislike for "how" State Farm performs it survey.  In *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1 (Cal. 4th DCA Mar. 23, 2007), plaintiff, on behalf of a putative class, alleged State Farm breached its contract because plaintiff's labor costs were higher than the repair estimate State Farm provided and paid based upon. *Id*. But the court dismissed the complaint, holding as a matter of law nothing in the insurance contract prevented State Farm from conducting the survey however it saw fit—so long as the survey was conducted. *Id.; accord Joaquin v. Geico Gen. Ins. Co.*, 2008 WL 53150, at *3 (N.D. Cal. Jan 2, 2008) (holding "there is nothing in Geico's policy that requires it to conduct a labor survey in any particular way").

   *Levy* involved contract language that is identical to the contract language at issue here, and as is true under Florida law, the *Levy* Court explained that it was not permitted under California law "under the guise of strict construction, [to] rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." *Levy*, 150 Cal. App. 4th at 7 (quotations and citations omitted). Just as the *Levy, Coastline/Maharaj*, *Collisions Concepts/Canipe, McHugh/Gregory, McHugh/Reich, McHugh/Braden, Swift Investments/Kallas, Swift Investments/Goldberg, Swift Investments/West, A&E/Thompson, and Elite Euro/Uzzo* courts were not free to rewrite the State Farm contract, neither may this Court rewrite that same contract provision to require State Farm to pay amounts greater than the PCP amounts established by State Farm's survey.

   "In contract interpretation cases, the issue to be addressed is not what this Court or the petitioner would prefer the policy cover, but what losses the mutually agreed-upon contractual language covers." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 739 (Fla. 2002) (insured's interpretation of the term "repair" to include compensation for lost value of damaged

vehicle would impermissibly negate the insurer's choice of remedy explicitly contained in the contractual text). A repair facility is free, of course, to charge its customers with State Farm insurance an amount exceeding PCP, but no third party—including Stuttgart here— may change State Farm's contractual obligation to its insured.

Because no breach of contract claim exists for a duty manufactured by a litigant, and because Plaintiffs have not alleged a breach of any contractual provision, duty, or obligation set forth in the subject Policy, Plaintiff's proposed amendment is futile.

### 2. Florida Law Bars Plaintiffs' Purported Claim For Breach of Implied Covenant Of Good Faith And Fair Dealing.

In Count II, the proposed complaint attempts a claim for breach of the covenant of good faith and fair dealing. The Florida Supreme Court has held no such cause of action (independent of an action under section 624.155, Florida Statutes) exists under Florida law arising out of a first-party insurance contract dispute such as the present case. *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541 (Fla. 2012) (Florida common law does not recognize a cause of action for breach of the implied warranty of good faith and fair dealing by an insured against its insurer); *see also Gen. Star Indem. Co. v. Atl. Hospitality, LLC*, 93 So. 3d 501 (Fla. 3d DCA 2012) (same); *United Prop. & Cas. Ins. Co. v. Chernick,* 94 So. 3d 646, 2012 WL 2913292 (Fla. 4th 2012) (same). Accordingly, Plaintiffs' proposed claim for breach of the implied duty of good faith and fair dealing cannot be sustained, and the amendment is futile.

### 3. The Policy And Florida Law Bar Plaintiffs' Purported Claim For Diminished Value.

The proposed class complaint alleges damages arising from State Farm's purported first-party breach of the Policy including the amount of the vehicle's diminished value. Mot., Ex. 1,

¶10. But the Policy nowhere provides coverage for diminution of value. *Id.* at Ex. 1, Ex. A, at 33. To the contrary, the policy, at *id.*, expressly **excludes** diminished value as a cost to repair:

> (2) The cost to repair the ***covered vehicle*** does not include any reduction in the value of the ***covered vehicle*** after it has been repaired, as compared to its value before it was damaged.

Further, Florida law explicitly rejects that a plaintiff may recover diminution of value in a first-party breach of contract action. *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (plain language of the policy does not provide coverage for the diminished value of a repaired automobile); *Smith v. Superior Ins. Co.*, 802 So. 2d 424, 425 (Fla. 4th DCA 2001) (same); *Rezevskis v. Aries Ins. Co.*, 784 So.2d 472, 474 (Fla. 3d DCA 2001) (same). Accordingly, Plaintiffs' amendment seeking to assert damages for diminished value is futile.

### 4.      Plaintiffs' Claim for Injunctive Relief Is Futile.

The proposed amendment seeks a judgment "enjoining [State Farm]…[from] denying coverage for hourly labor rates of certified facilities." Mot, Ex. 1, ¶¶ Wherefore, subsections d. Plaintiffs ask the Court to block State Farm from exercising future denials of <u>undefined</u> coverage for <u>unspecified</u> hourly labor rates charged by <u>unnamed</u> facilities – all in the context of <u>unknown</u> insurance claims. For this reason, and others, Florida courts disfavor mandatory injunctions and are reluctant to issue them. *See Shaw v. Tampa Elec. Co.*, 949 So. 2d 1066, 1070 n.3 (Fla. 2d DCA 2007); s*ee also Mayor's Jewelers, Inc. v. Cal. Public Emps.' Ret. Sys.*, 685 So. 2d 904, 910 (Fla. 4th DCA 1996) (Farmer, J., concurring).

Plaintiff's claim for injunctive relief is improper given the availability of an adequate remedy at law. *See Weinstein v. Aisenberg*, 758 So. 2d 705 (Fla. 4th DCA 2000) (a party seeking injunctive relief must have an injury for which there is no adequate remedy at law.); *see also DiChristopher v. Bd. of Cnty. Com'rs*, 908 So. 2d 492, 497 (Fla. 5th DCA 2005), *decision clarified*

*on denial of reh'g* (Aug. 12, 2005) (affirming granting of motion to dismiss claim for injunctive relief because Plaintiff had adequate remedy at law through two separate counts alleging damages.) By its very nature, a breach of contract claim, like the one Plaintiffs assert, "necessarily contemplates an adequate remedy of law afforded by the damages under the contractual terms." *See M.I. Indus. USA Inc. v. Attorneys' Title Ins. Fund, Inc.*, 6 So. 3d 627, 629 (Fla. 4th DCA 2009) (reversing denial of motion to dissolve injunction where money damages would suffice to compensate any loss incurred); *see also Emp. Benefit Plans, Inc. v. Radice Corp. Ctr. I, Inc.*, 593 So. 2d 1125, 1128 (Fla. 4th DCA 1992) (breach of contract actions constitute adequate remedies at law obviating need for injunctive relief). Plaintiffs' injunctive relief claim is no different than their breach of contract claim. Both claims are predicated on the same facts and seek an identical result from both parties' perspectives — forced payment of claims from State Farm to Plaintiffs. This remedy is available at law, and consequently, Plaintiffs have failed to plead injunctive relief.

Plaintiffs' amendment also fails to meet the pleading burden for mandatory injunctions. The monetary damages Plaintiffs seek as part of their pending and proposed amended breach of contract claim, if granted, would adequately compensate for the alleged injuries. A mandatory injunction is improper, and Plaintiffs' injunctive relief claim is futile. *See Shaw*, 949 So. 2d at 1070 n.3 (Fla. 2d DCA 2007).

### 5.    Because No Class Will Be Certified, Amendment Is Futile.

No class will be certified as pleaded. Fla. R. Civ. P. 1.220(b)(3) bars certification of a money damages class if individual issues of fact or law predominate over common questions. Courts across a variety of contexts have rejected class certification in cases, like this, involving challenges to an insurer's repair or replacement offers that involve a survey, report, or other tool. *See Husar v. State Farm Mut. Auto. Ins. Co.*, 2020-CA-004670-O (Fla. 9th Jud. Cir.) (Craner, J.)

(oral ruling denying class certification in case involving definition of "total loss" in State Farm insurance policy); *State Farm Mut. Auto. Ins. Co. v. Sestile*, 821 So. 2d 1244 (Fla. 2d DCA 2002) (court cannot determine across the board whether auto insurer's internal method of gauging reasonableness of provider's bill based on computer database complied with statutory obligation to pay "reasonable" expenses for necessary medical care); *cf. State Farm Mut. Auto. Ins. Co. v. All X-Ray Diagnostic Servs. Corp.*, 338 So. 3d 376, 382 (Fla. 3d DCA 2002) (reversing summary judgment to provider when evidence as to reasonableness of x-ray was disputed); *MRI Assoc. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1208 (M.D. Fla. 2010) (granting motion to dismiss declaratory judgment claim challenging insurer's use of statutory fee schedule); *Shenandoah Chiro., P.A. v. Nat'l Spec. Ins. Co.*, 526 F. Supp. 2d 1283, 1285 (S.D. Fla. 2007) (denying class certification in case challenging insurer's use of statutory fee schedule).

This case will be no different. Here, Plaintiffs' core proposed common question of whether State Farm engaged in a systematic underpayment of collision losses to high value luxury vehicles is not common, but individualized. Indeed, individual issues abound regarding the types of vehicles being repaired, whether certain damage involves aluminum frame repairs, whether damaged parts are "bolt-on" or "restricted" parts, whether recycled or original manufactured parts are available and sufficient to restore the vehicle to its pre-loss condition, PCP as determined by State Farm's survey in a given community, and negotiations of claims. Thus, amendment to bring Plaintiffs' proposed class claims is futile.

## <u>Conclusion</u>

Based on the foregoing, Plaintiffs' motion for leave to amend the complaint is prejudicial, Plaintiffs have abused their amendment rights and the proposed amended claims are futile. Accordingly, the motion should be denied.

Dated:  June 21, 2023

Respectfully submitted,

*/s/ Johanna W. Clark*
Johanna W. Clark (FBN 196400)
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Telephone:  (407) 849-0300
Facsimile:  (407) 648-9099
Email: jclark@carltonfields.com *(primary)*
Email: atokarz@carltonfields.com
*(secondary)*
*Attorneys for Defendant, State Farm Mutual
Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 21, 2023, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

Cristina M. Pierson
KELLEY | UUSTAL PLC
500 North Federal Highway, Suite 200
Fort Lauderdale, Florida 33301
Telephone: (954) 522-6601
Facsimile: (954) 522-6608
Email:  cmp@kulaw.com; johnet@kulaw.com

*/s/ Johanna W. Clark*
Johanna W. Clark

# **EXHIBIT A**

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

JAMES MCHUGH a/a/o HALINE
GREGORY,

Case No.: 12-06933 COCE 56

       Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant.

_____/

### ORDER GRANTING STATE FARM'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter came before the Court for hearing on June 3, 2016 on Defendant State Farm

Mutual Automobile Insurance Company's Amended Motion for Partial Summary Judgment on

Plaintiff's breach of contract claim seeking payment of higher body and refinish labor rates, as

well as a higher paint and materials rate, and the Court having heard argument of counsel, having

reviewed the papers filed by the parties, and being otherwise fully informed in the premises

hereby **ORDERS AND ADJUDGES:**

State Farm's Motion for Partial Summary Judgment as to the body labor rate, refinish

labor rate and paint and materials rate paid by State Farm pursuant to its survey is **GRANTED,**

for all the reasons set forth in State Farm's motion, exhibits and the argument of State Farm's

counsel.

DONE AND ORDERED in Chambers, in Fort Lauderdale, Broward County, Florida, this

16 day of June 2016.

Linda R. Pratt

JUN 16 2016

_____
JUDGE LINDA K. PRATT   True Copy
County Court Judge

Copies to:
Michael Fischetti, Esq.
Johanna W. Clark, Esq.
107861647

# **EXHIBIT B**

IN THE COUNTY COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT

IN AND FOR BROWARD COUNTY, FLORIDA

JAMES MCHUGH
d/b/a JAMES MCHUGH'S,                       CASE NO. COCE 11-024975 (52)
a/a/o Kenneth Braden,

       Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant.

_____/

ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION OF THIS
COURT'S ORDER DATED JUNE 18, 2015 ON THE PARTIES'
CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS CAUSE having come before the Court for hearing on July 31, 2017 on the parties'

cross Motions for Reconsideration of this Court's Order dated June 18, 2105 wherein the Court

ruled on the parties' cross Motions for Partial Summary Judgment.  The Court having reviewed

the motions, heard argument of counsel, and being otherwise duly advised in the premises, it is

hereby ORDERED and ADJUDGED that Defendant's Motion for Reconsideration is

GRANTED and the Court hereby VACATES its Order dated June 18, 2015 and hereby

substitutes the instant Order in its place thereby GRANTING Defendant's Motion for Partial

Summary Judgment for the reasons set forth below.

      1.     Plaintiff, James McHugh d/b/a James McHugh's, an automobile repair facility in

Broward County, Florida, filed this one-count breach of contract case against State Farm

seeking, *inter alia*, payment for a higher body labor rate, paint labor rate and paint and material

rate relating to repairs it made to a vehicle insured by State Farm.

2.      In September 2011, State Farm insured Kenneth Braden's 2003 Jeep Grand Cherokee when it was involved in an automobile accident.

3.      Mr. Braden chose to have his vehicle repaired at Plaintiff's repair facility.

4.      State Farm provided coverage and made payment for repairs to the subject vehicle pursuant to an estimate written by State Farm.

5.      In November 2011, Plaintiff filed this breach of contract claim against State Farm for alleged underpayment of the repairs.   Plaintiff seeks additional payment pursuant to an assignment of benefits executed by State Farm's insured, Mr. Braden.

6.      Plaintiff claims that State Farm breached its insurance policy because it paid $5 below the amount that Plaintiff billed State Farm per hour for body labor and paint labor.

7.      State Farm's estimates reflect that State Farm's payments were based on the following rates:

- Body labor at $40.00 per hour; and

- Paint labor at $40.00 per hour.

8.      The amount State Farm paid for the repairs at issue was subject to a limit of liability provision in the governing insurance contract.   The policy clearly and unambiguously states as follows:

The limit of our liability for loss to property or any part of it is the lower of:

1.      the actual case value; or
2.      the cost of repair or replacement.

Actual cash value is determined by the market value, age and condition at the time the loss occurred.   Any deductible amount that applies is then subtracted.

The cost of repair or replacement is based upon one of the following:

2

1.     the cost of repair or replacement agreed upon by you and us;
2.     a competitive bid approved by us; or
3.     an estimate written based upon the prevailing competitive prices. <u>The prevailing competitive price means prices charged by a majority of the repair market in the area where the car is to be repaired</u> ***as determined by a survey made by us***. If you ask, we will identify some facilities that will perform the repairs at the prevailing competitive price. …

(emphasis added).

9.     The parties' dispute in this matter is what constitutes "the prevailing competitive price" as defined by the policy.

10.     State Farm moved for partial summary judgment on the basis that it had complied with the insurance policy by paying the prevailing competitive price as determined by a survey made by State Farm.

11.     In support of its motion, State Farm relied upon the affidavit of Estimatics Team Manager Joe Dorio.

12.     Mr. Dorio's affidavit states that because the vehicle was repaired in Broward County, the applicable repair market as determined by State Farm's survey was Broward County, Florida.

13.     Mr. Dorio's affidavit further states that the prevailing competitive prices in Broward County, Florida, as determined by State Farm's survey in September 2011, were $40 per hour for both body labor and paint labor.

14.     Mr. Dorio explained that these two rate categories were calculated and paid pursuant to State Farm's survey that established the prevailing competitive prices charged by a majority of the repair market in Broward County, Florida on the date State Farm prepared its first written estimate.

15.     Accordingly, State Farm established that it paid the prevailing competitive prices as determined by its survey as required by the governing insurance contract.

16.     Plaintiff failed to produce any counter evidence that State Farm did <u>not</u> pay the prevailing competitive prices as determined by State Farm's survey.

17.     Instead, Plaintiff argued that the terms "prevailing competitive price," "prices", "repair market" and "majority" were ambiguous; and therefore, should be construed in Plaintiff's favor.

18.     The Court rejects Plaintiff's arguments.  The prevailing case law is clear that an ambiguity in a contract exists <u>only</u> if it can be read two reasonable ways. *Lambert v. Berkley South Condo. Ass'n.*, 680 So. 2d 588, 590 (Fla. 4th DCA 1996) ("Whether a document is ambiguous depends upon whether it is reasonably susceptible to more than one interpretation. However a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner.").

19.     Plaintiff argued that each term had multiple meanings.  But Plaintiff's multiple interpretations of the terms are impractical and would lead to an impractical reading of the policy.  *See, e.g., Vyfvinkel v. Vyfvinkel*, 135 So. 3d 384, 385 (Fla. 5th DCA 2014) ("[A] true ambiguity does not exist in a contract merely because the contract can possibly be interpreted in more than one manner.  Indeed, fanciful, inconsistent, and absurd interpretations of plain language are always possible. It is the duty of the trial court to prevent such interpretations") (quoting *BKD Twenty-One Management Co. v. Delsordo*, 127 So. 3d 527 (Fla. 4th DCA 2012)); *U.S. Fire Ins. Co. v. Pruess*, 394 So. 2d 468, 470 (Fla. 4th DCA 1981) ("It is a general rule of law that terms of an insurance policy must be construed to promote a reasonable, practical, and sensible interpretation consistent with the intent of the parties.")

The Florida Supreme Court has stated:

> The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided.

*James v. Gulf Life Ins.*, 66 So. 2d 62, 63 (Fla. 1953) (emphasis added). *See Vyvfinkel*, 135 So. 2d at 385 ("[W]here one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner.").

20.   The Court finds that, pursuant to the subject survey and the subject policy language, the "prevailing competitive price" for body labor and refinish labor is the range of prices from $30 per hour to $40 per hour.  This range of labor rates constitutes a majority because 477 of 943 shops charge these amounts.

21.   Plaintiff's argument regarding the possibility of there being multiple ranges of prices that could constitute a majority leads to shewed definition of the word "majority."

22.   The Court finds that the term "repair market" is not ambiguous.  Plaintiff interprets "repair market" to mean all the shops contained in Broward County.  State Farm interprets "repair market" to mean the shops in Broward County that participated in State Farm's survey.  State Farm's interpretation is correct based on the wording of the policy.

23.   In sum, State Farm's payment of $40 per hour for body labor and $40 per hour for paint labor did not breach the policy.  Those rates were the prevailing competitive price as determined by State Farm's survey of the Broward County market during the relevant time period.

24.    Accordingly, State Farm satisfied its obligation under the insurance policy, and is entitled to Judgment as a matter of law in its favor on those claims.

DONE AND ORDERED in Chambers in Fort Lauderdale, Broward County, Florida on August 23, 2017.

_____
Giuseppina Miranda
County Court Judge

*Copies furnished to the following via e-service:*
Martin D. Mehan, Esq.
Johanna W. Clark, Esq.

Electronically Signed by Miranda, Giuseppina COCE11024975 08-23-2017 3:22 PM

IN THE COUNTY COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT

IN AND FOR BROWARD COUNTY, FLORIDA

JAMES MCHUGH
d/b/a JAMES MCHUGH'S,           CASE NO. COCE 12-012906 (52)
a/a/o Susan Reich,

      Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

_____/

ORDER GRANTING DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT

THIS CAUSE having come before the Court for hearing on Defendant's Motion for Partial Summary Judgment and Plaintiff's Amended Motion for Summary Judgment, and the Court having reviewed the motion, heard argument of counsel, and being otherwise duly advised in the premises, it is hereby ORDERED and ADJUDGED that State Farm's Motion for Partial Summary Judgment is GRANTED and Plaintiff's Amended Motion for Partial Summary Judgment is DENIED for the reasons set forth below.

1.      Plaintiff, James McHugh d/b/a James McHugh's, an automobile repair facility in Broward County, Florida, filed this one-count breach of contract case against State Farm seeking, *inter alia*, payment for a higher body labor rate, paint labor rate and paint and material rate relating to repairs it made to a vehicle insured by State Farm.

2.      In December 2011, State Farm insured Susan Reich's 2011 Mazda CX-7 when it was involved in an automobile accident.

3.      Ms. Reich chose to have her vehicle repaired at Plaintiff's repair facility.

4.    State Farm provided coverage and made payment for repairs to the subject vehicle pursuant to an estimate written by State Farm.

5.    In June 2012, Plaintiff filed this breach of contract claim against State Farm for alleged underpayment of the repairs.  Plaintiff seeks additional payment pursuant to an assignment of benefits executed by State Farm's insured, Ms. Reich.

6.    Plaintiff claims that State Farm breached its insurance policy because it paid $13 below the amount that Plaintiff billed State Farm per hour for body labor and paint labor and $3 below the amount Plaintiff billed for paint and materials.

7.    State Farm's estimates reflect that State Farm's payments were based on the following rates:

- Sheet Metal (or body) labor at $42.00 per hour;

- Refinish (or paint) labor at $42.00 per hour; and

- Paint and Materials at $24.00 per hour.

8.    The amount State Farm paid for the repairs at issue was subject to a limit of liability provision in the governing insurance contract.  The policy clearly and unambiguously states as follows:

The limit of our liability for loss to property or any part of it is the lower of:

1.    the actual case value; or
2.    the cost of repair or replacement.

Actual cash value is determined by the market value, age and condition at the time the loss occurred.  Any deductible amount that applies is then subtracted.

The cost of repair or replacement is based upon one of the following:

1.    the cost of repair or replacement agreed upon by you and us;
2.    a competitive bid approved by us; or

2

3.     an estimate written based upon the prevailing competitive prices.  <u>The prevailing competitive price means prices charged by a majority of the repair market in the area where the car is to be repaired</u> ***as determined by a survey made by us***.  If you ask, we will identify some facilities that will perform the repairs at the prevailing competitive price. …

(emphasis added).

9.     The parties' dispute in this matter is what constitutes "the prevailing competitive price" as defined by the policy.

10.     State Farm moved for partial summary judgment on the basis that it had complied with the insurance policy by paying the prevailing competitive price as determined by a survey made by State Farm.

11.     In support of its motion, State Farm relied upon the affidavit of Estimatics Team Manager Joe Dorio.

12.     Mr. Dorio's affidavit states that because the vehicle was repaired in Broward County, the applicable repair market as determined by State Farm's survey was Broward County, Florida.

13.     Mr. Dorio's affidavit further states that the prevailing competitive prices in Broward County, Florida, as determined by State Farm's survey in December 2011, were $42 per hour for both body labor and paint labor and $24 per hour for paint and materials.

14.     Mr. Dorio explained that these three rate categories were calculated and paid pursuant to State Farm's survey that established the prevailing competitive prices charged by a majority of the repair market in Broward County, Florida on the date State Farm prepared its first written estimate.

15.     Accordingly, State Farm established that it paid the prevailing competitive prices as determined by its survey as required by the governing insurance contract.

16.     Plaintiff failed to produce any counter evidence that State Farm did <u>not</u> pay the prevailing competitive prices as determined by State Farm's survey.

17.     Instead, Plaintiff argued that the terms "prevailing competitive price," "prices", "repair market" and "majority" were ambiguous; and therefore, should be construed in Plaintiff's favor.

18.     The Court rejects Plaintiff's arguments.  The prevailing case law is clear that an ambiguity in a contract exists <u>only</u> if it can be read two reasonable ways. *Lambert v. Berkley South Condo. Ass'n.*, 680 So. 2d 588, 590 (Fla. 4th DCA 1996) ("Whether a document is ambiguous depends upon whether it is reasonably susceptible to more than one interpretation. However a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner.").

19.     Plaintiff argued that each term had multiple meanings.  But Plaintiff's multiple interpretations of the terms are impractical and would lead to an impractical reading of the policy.  *See, e.g., Vyfvinkel v. Vyfvinkel*, 135 So. 3d 384, 385 (Fla. 5th DCA 2014) ("[A] true ambiguity does not exist in a contract merely because the contract can possibly be interpreted in more than one manner.  Indeed, fanciful, inconsistent, and absurd interpretations of plain language are always possible. It is the duty of the trial court to prevent such interpretations") (quoting *BKD Twenty-One Management Co. v. Delsordo*, 127 So. 3d 527 (Fla. 4th DCA 2012)); *U.S. Fire Ins. Co. v. Pruess*, 394 So. 2d 468, 470 (Fla. 4th DCA 1981) ("It is a general rule of law that terms of an insurance policy must be construed to promote a reasonable, practical, and sensible interpretation consistent with the intent of the parties.")  The Florida Supreme Court has stated:

4

> The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided.

*James v. Gulf Life Ins.*, 66 So. 2d 62, 63 (Fla. 1953) (emphasis added). *See Vyvfinkel*, 135 So. 2d at 385 ("[W]here one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner.").

20.     The Court finds that, pursuant to the subject survey and the subject policy language, the "prevailing competitive price" for body labor and refinish labor is the range of prices from $38 per hour to $42 per hour.  This range of labor rates constitutes a majority because 543 of 937 shops charge these amounts.

21.     Similarly, the Court finds that, pursuant to the subject survey and the subject policy language, the "prevailing competitive price" for paint and materials is the range of prices from $24 per hour to $20 per hour.  This range of labor rates constitutes a majority because 501 of 937 shops charge these amounts.

22.     Plaintiff's argument regarding the possibility of there being multiple ranges of prices that could constitute a majority leads to shewed definition of the word "majority."

23.     The Court finds that the term "repair market" is not ambiguous.  Plaintiff interprets "repair market" to mean all the shops contained in Broward County.  State Farm interprets "repair market" to mean the shops in Broward County that participated in State Farm's survey.  State Farm's interpretation is correct based on the wording of the policy.

5

24.     In sum, State Farm's payment of $42 per hour for body labor, $42 per hour for paint labor, as well as $24 per hour for paint and materials did not breach the policy.  Those rates were the prevailing competitive price as determined by State Farm's survey of the Broward County market during the relevant time period.  Accordingly, State Farm satisfied its obligation under the insurance policy, and is entitled to Judgment as a matter of law in its favor on those claims.

DONE AND ORDERED in Chambers in Fort Lauderdale, Broward County, Florida on August 23, 2017.

_____
Giuseppina Miranda
County Court Judge

*Copies furnished to the following via e-service:*
Martin D. Mehan, Esq.
Johanna W. Clark, Esq.

6

# **EXHIBIT C**

**Online Reference: FLWSUPP 2309MAHA**

**Insurance -- Automobile -- Coverage -- Prevailing competitive price -- Where applicable policy provisions state that cost of repair is based on prevailing competitive price and define prevailing competitive price as price charged by majority of repair market in area as determined by survey made by insurer, and insurer made payment based on cost-estimating method and price reported by majority of area repair facilities surveyed, insurer is entitled to summary judgment**

COASTLINE AUTO, INC., a/a/o HARRYNARINE MAHARAJ, Plaintiff(s), v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant(s). County Court, 17th Judicial Circuit in and for Broward County. Case No. COCE12-020313(54). February 1, 2016. Stephen J. Zaccor, Judge. Counsel: Martin Mehan, Gordon & Doner, P.A., Palm Beach Gardens, for Plaintiff. Johanna W. Clark and Joshua D. Moore, Carlton Fields, Orlando, for Defendant.

ORDER ON CROSS MOTIONS

FOR SUMMARY JUDGMENT

THIS CAUSE coming on for consideration of the parties cross-motions for summary judgment relative to the meaning of a term within an insurance policy, and the Court having reviewed the motions, the relevant legal authority, the record, hearing argument from counsel, and being otherwise fully advised in the premises, makes the following findings and conclusions of law:

Coastline Auto (*hereinafter* the Plaintiff), made repairs to Harrynarine Maharaj's (*hereinafter* the Insured) vehicle. The Insured was covered by a policy issued by State Farm (*hereinafter* the Defendant). The Defendant failed to pay the full amount charged by the Plaintiff for the repairs. The Insured assigned his rights under the policy to the Plaintiff who brought suit.

The Plaintiff alleges in its complaint the Insured incurred reasonable expenses to restore his vehicle to pre-accident condition and the Defendant failed to make full payment. The Defendant based its payment on upon the "prevailing competitive price." The Defendant determined the "prevailing competitive price" by conducting a survey of the major repair facilities in the area where the car was repaired. The portion of the insurance policy that provides for "prevailing competitive price" is at issue here.

The issue before the court involves the construction of an insurance policy, which presents a question of law to be decided by the court. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Underwriters at Lloyd's, London,* 971 So. 2d 885, 888 (Fla. 3d DCA 2007) [32 Fla. L. Weekly D2827b]. The policy at issue provides:

The cost of repair or replacement is based upon the following:

    1. The cost of the repair or replacement agreed upon by you and us;

    2. A competitive bid approved by us; or

    3. An estimate written -- based upon the prevailing competitive price. The prevailing competitive price means prices charged by a majority of the repair market in the area where the car is to be repaired as determined by a survey made by us.

There was no agreement between the parties, nor was there a competitive bid approved by the Defendant, therefore options one and two above do not apply. Option three unequivocally states the cost of repair is based upon a written estimate predicated on the prevailing competitive price (*hereinafter* PCP). PCP is defined as the "prices charged by a majority of the repair market in the area where the car is to be repaired as determined by a survey made by us." The undisputed evidence is the survey made by the Defendant revealed a "majority of the repair market" does not use a paint calculator[1], and charges twenty-four dollars or less per hour for paint and materials.

The Plaintiff takes issue with how the Defendant interprets the data contained in the survey and argues there is an ambiguity in the language of the contract. "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.,* 845 So. 2d 161, 165 (Fla. 2003) [28 Fla. L. Weekly S307d]. An ambiguous policy term must be construed in favor of coverage, or against limiting coverage. *Id.*

According to the survey, the highest rate charged by a facility within the repair market is thirty-six dollars, and the lowest rate charged is eight dollars[2]. The Plaintiff maintains their charge of thirty-one dollars and thirty-two cents falls within the definition of the policy because it is less than thirty-six dollars. The Plaintiff argues that due to the ambiguity of the term "prices charged by a majority of the repair market," the court should construe the policy in their favor and find their rate falls within the majority. The Plaintiff's argument must fail. There is no ambiguity in the insurance contract. PCP is specifically defined as being determined "by a survey made by us." The insurance contract gives the Defendant tremendous discretion in how to conduct its survey. The survey was compiled by the repair facilities filling out a questionnaire provided by the Defendant. The questionnaire asks various questions, including as pertinent to the case at bar:

Part III - Repair Pricing Information

    4. Do you use an automated paint and materials rate calculator?

    ___ Yes ___ No

    If no, what is the rate charged for paint and materials?

    $_____

Nine-hundred and forty-eight facilities voluntarily responded to the survey. Four-hundred and eighty-six facilities (more than half) reported a paint and materials rate of twenty-four dollars or less. Even more than that reported that they do not use a paint and materials rate calculator. Therefore, the PCP for paint and materials is twenty-four dollars.

<div align="center">CONCLUSION</div>

There is no ambiguity in the contract for insurance as to the definition of the Prevailing Competitive Price, therefore:

It is ORDERED AND ADJUDGED that the Plaintiff's Motion for Summary Judgment is DENIED and the Defendant's Motion for Partial Summary Judgment is GRANTED.

_____

# **EXHIBIT D**

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

APPELLATE DIVISION (CIVIL): AY
CASE NO.: 2015AP000081CAXXMB
L.T. NO.: 2014SC008904XXXXMB

COLLISION CONCEPTS OF DELRAY, LLC,
a/a/o Larry Canipe,
      Appellant,

Opinion/Decision filed: DEC 1 3 2016

v.

Appeal from the County Court in and for
Palm Beach County;
Judge Frank Castor

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
      Appellee.

Appealed: November 16, 2015

_____/

DATE OF PANEL: <u>DECEMBER 13, 2016</u>

PANEL JUDGES: <u>HAFELE, GILLEN, ROWE</u>

AFFIRMED/REVERSED/OTHER: <u>AFFIRMED</u>

PER CURIAM OPINION/DECISION BY: <u>PER CURIAM</u>

| DATE CONCURRING: | ) | DISSENTING: | ) | CONCURRING SPECIALLY: | ) |
|---|---|---|---|---|---|
| _12/13/16_ | ) | With/Without Opinion | ) | With/Without Opinion | ) |
| | ) | | ) | | ) |
| _____ | ) | _____ | ) | _____ | ) |
| _12/13/16_ J. | ) | J. | ) | J. | ) |
| | ) | | ) | | ) |
| _____ | ) | _____ | ) | _____ | ) |
| _12/13/16_ J. | ) | J. | ) | J. | ) |
| | ) | | ) | | ) |
| _____ | ) | _____ | ) | _____ | ) |
| J. | ) | J. | ) | J. | ) |

23 Fla. L. Weekly Supp. 614d

Online Reference: FLWSUPP 2306CANI

**Insurance -- Automobile -- Coverage -- Labor and material rates -- Insurer's motion for partial summary disposition on claims for higher body and paint labor rates and paint and material rate is granted where insurer established that it paid prevailing competitive prices as required by insurance contract, and repair shop failed to produce any opposing evidence**

COLLISION CONCEPTS OF DELRAY, LLC. as assignee of Larry Canipe, Plaintiff, vs. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Defendant. County Court, 15th Judicial Circuit in and for Palm Beach County. Case No. 502014SC008904XXXXMB. September 29, 2015. Frank Castor, Judge. Counsel: Mariano R. Gonzalez, Gonzalez & Associates, P.A., Miramar, for Plaintiff. Johanna W. Clark, Carlton Fields Jorden Burt, Orlando, for Defendant.

ORDER ON STATE FARM'S MOTION FOR PARTIAL

SUMMARY DISPOSITION

This matter came before the Court for hearing on August 24, 2015 on Defendant's Motion for Partial Summary Disposition as to Plaintiff's claims for payment of higher labor rates and paint and materials rate, and the Court having heard argument of counsel, having reviewed the papers filed by the parties, and being otherwise fully informed in the premises, it is hereby ORDERED:

For the reasons set forth below, State Farm's Motion for Partial Summary Disposition is GRANTED.

1. Plaintiff filed a one-count breach of contract claim against State Farm seeking, *inter alia,* payment for a higher body ("sheet metal") labor rate, paint ("refinish") labor rate, and paint and materials rate.

2. Plaintiff, Collision Concepts of Delray, LLC, is an automobile repair facility in Palm Beach County, Florida.

3. In June 2014, State Farm insured Larry Canipe's 2005 Acura when it was involved in an automobile accident.

4. Mr. Canipe chose to have his vehicle repaired at Plaintiff's repair facility.

5. State Farm provided coverage and made payment for repairs to the subject vehicle pursuant to an estimate written by State Farm.

6. In August 2014, Plaintiff filed the breach of contract claim against State Farm for alleged underpayment of the repairs. Plaintiff seeks additional payment pursuant to a purported assignment of benefits executed by State Farm's insured, Mr. Canipe.

7. Plaintiff claims that State Farm breached its insurance policy because it paid $2 below the amount that Plaintiff billed State Farm per hour for body labor and paint labor, and $1 below the amount Plaintiff billed for the paint and materials rate.

8. State Farm's estimates reflect that State Farm's payments were based on the following rates:

· Body labor at $44.00 per hour;

· Paint labor at $44.00 per hour; and

· Paint and Materials at $25.00 per hour.

9. The amount State Farm paid for the repairs at issue was subject to a limit of liability provision in the governing insurance contract.

10. The policy clearly and unambiguously states that State Farm's limit of liability for the subject dispute is the prevailing competitive price, which means prices charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determined by a survey made by State Farm.

11. State Farm moved for summary disposition on the basis that it had complied with the insurance policy by paying the prevailing competitive price as determined by a survey made by State Farm.

12. In support of its motion, State Farm relied upon the affidavit of Estimatics Team Manager Scott Walker and Mr. Walker's deposition testimony.

13. Mr. Walker testified that because the vehicle was repaired in Palm Beach County, the applicable repair market as determined by State Farm's survey was Palm Beach County, Florida.

14. Mr. Walker further testified that the prevailing competitive prices in Palm Beach County, Florida, as determined by State Farm's survey in June 2014, were $44 for both body labor and paint labor and $25 for paint and materials rate.

15. Mr. Walker explained that these three rate categories were calculated and paid pursuant to State Farm's survey that established the prevailing competitive prices charged by a majority of the repair market in Palm Beach County, Florida on the date State Farm prepared its first written estimate.

16. Accordingly, State Farm established that it paid the prevailing competitive prices as determined by its survey as required by the governing insurance contract.

17. Plaintiff failed to produce any counter evidence that State Farm did not pay the prevailing competitive prices as determined by State Farm's survey.

* * *

# EXHIBIT E

IN THE COUNTY COURT IN AND
FOR PALM BEACH COUNTY, FLORIDA

SWIFT INVESTMENTS, INC d/b/a
FANTASTIC FINISHES OF PALM BEACH,
a/a/o INNA KALLAS,

        Plaintiff,                    Case No. 50-2015-SC-001147

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/

### ORDER GRANTING DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter came before the Court for hearing on December 21, 2017 on Defendant's Motion for Partial Summary Judgment as to Plaintiff's claims for payment of higher labor rates and paint and materials rate, and the Court having heard argument of counsel, having reviewed the papers filed by the parties, and being otherwise fully informed in the premises, it is hereby

**ORDERED:**

For the reasons set forth below, State Farm's Motion for Partial Summary Judgment is **GRANTED.**

1.      Plaintiff filed a one-count breach of contract claim against State Farm seeking, *inter alia*, payment for a higher body ("sheet metal") labor rate, paint ("refinish") labor rate, and paint and materials rate.

2.      Plaintiff, Swift Investments, Inc. d/b/a Fantastic Finishes, is an automobile repair facility in Palm Beach County, Florida.

1

3.    In August 2014, State Farm insured Inna Kallas' 2015 Audi TTS when it was involved in an automobile accident.

4.    Ms. Kallas chose to have her vehicle repaired at Plaintiff's repair facility.

5.    State Farm provided coverage and made payment for repairs to the subject vehicle pursuant to an estimate written by State Farm.

6.    In February 2015, Plaintiff filed the breach of contract claim against State Farm for alleged underpayment of the repairs.  Plaintiff seeks additional payment pursuant to a purported assignment of benefits executed by State Farm's insured, Ms. Kallas.

7.    Plaintiff claims that State Farm breached its insurance policy because it paid $14 below the amount that Plaintiff billed State Farm per hour for body labor and paint labor, and $17 below the amount Plaintiff billed for the paint and materials rate.

8.    State Farm's estimates reflect that State Farm's payments were based on the following rates:

- Body labor at $44.00 per hour;

- Paint labor at $44.00 per hour; and

- Paint and Materials at $25.00 per hour.

9.    The amount State Farm paid for the repairs at issue was subject to a limit of liability provision in the governing insurance contract.

10.    The policy clearly and unambiguously states that State Farm's limit of liability for the subject dispute is the prevailing competitive price, which means prices charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determined by a survey made by State Farm. *Collision Concepts of Delray, LLC, a/a/o Larry Canipe v. State*

2

*Farm Mut. Auto. Ins. Co.*, 23 Fla. L. Weekly Supp. 614d (Fla. 15th Cir. Ct. September 29, 2015), *aff'd*, 24 Fla. L. Weekly Supp. 670b (Fla. 15th Cir. Ct. Dec. 13, 2016).

11.     State Farm moved for partial summary judgment on the basis that it had complied with the insurance policy by paying the prevailing competitive price as determined by a survey made by State Farm.

12.     In support of its motion, State Farm relied upon the affidavit of Estimatics Team Manager Scott Walker.

13.     Mr. Walker testified that because the vehicle was repaired in Palm Beach County, the applicable repair market as determined by State Farm's survey was Palm Beach County, Florida.

14.     Mr. Walker further testified that the prevailing competitive prices in Palm Beach County, Florida, as determined by State Farm's survey in August 2014, were $44 for both body labor and paint labor and $25 for the paint and materials rate.

15.     Mr. Walker explained that these three rate categories were calculated and paid pursuant to State Farm's survey that established the prevailing competitive prices charged by a majority of the repair market in Palm Beach County, Florida on the date State Farm prepared its first written estimate.

16.     Accordingly, State Farm established that it paid the prevailing competitive prices as determined by its survey as required by the governing insurance contract.

17.     Plaintiff failed to produce any counter evidence that State Farm did not pay the

prevailing competitive prices as determined by State Farm's survey.

DONE AND ORDERED in Chambers, in West Palm Beach, Palm Beach County,

Florida, this ___ day of _____, 2017.

SIGNED & DATED

JAN 16 2018

_____

Judge Sandra Bosso-Pardo

JUDGE SANDRA BOSSO-PARDO

Copies to:
Peter Van Keuren
Johanna W. Clark

113614397.1

IN THE COUNTY COURT IN AND
FOR PALM BEACH COUNTY, FLORIDA

SWIFT INVESTMENTS, INC d/b/a
FANTASTIC FINISHES OF PALM BEACH,
a/a/o Arthur Goldberg,

        Plaintiff,                      Case No. 50-2015-SC-001104

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/

### ORDER GRANTING DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter came before the Court for hearing on December 21, 2017 on Defendant's

Motion for Partial Summary Judgment as to Plaintiff's claims for payment of higher labor rates

and paint and materials rate, and the Court having heard argument of counsel, having reviewed

the papers filed by the parties, and being otherwise fully informed in the premises, it is hereby

**ORDERED:**

For the reasons set forth below, State Farm's Motion for Partial Summary Judgment is

**GRANTED.**

    1.     Plaintiff filed a one-count breach of contract claim against State Farm seeking,

*inter alia*, payment for a higher body ("sheet metal") labor rate, paint ("refinish") labor rate, and

paint and materials rate.

    2.     Plaintiff, Swift Investments, Inc. d/b/a Fantastic Finishes, is an automobile repair

facility in Palm Beach County, Florida.

3.    In August 2014, State Farm insured Arthur Goldberg's 2014 Audi A6 when it was involved in an automobile accident.

4.    Mr. Goldberg chose to have his vehicle repaired at Plaintiff's repair facility.

5.    State Farm provided coverage and made payment for repairs to the subject vehicle pursuant to an estimate written by State Farm.

6.    In February 2015, Plaintiff filed the breach of contract claim against State Farm for alleged underpayment of the repairs.  Plaintiff seeks additional payment pursuant to a purported assignment of benefits executed by State Farm's insured, Mr. Goldberg.

7.    Plaintiff claims that State Farm breached its insurance policy because it paid $14 below the amount that Plaintiff billed State Farm per hour for body labor and paint labor, and $17 below the amount Plaintiff billed for the paint and materials rate.

8.    State Farm's estimates reflect that State Farm's payments were based on the following rates:

- Body labor at $44.00 per hour;
- Paint labor at $44.00 per hour; and
- Paint and Materials at $25.00 per hour.

9.    The amount State Farm paid for the repairs at issue was subject to a limit of liability provision in the governing insurance contract.

10.    The policy clearly and unambiguously states that State Farm's limit of liability for the subject dispute is the prevailing competitive price, which means prices charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determined by a survey made by State Farm. *Collision Concepts of Delray, LLC, a/a/o Larry Canipe v. State*

2

*Farm Mut. Auto. Ins. Co.*, 23 Fla. L. Weekly Supp. 614d (Fla. 15th Cir. Ct. September 29, 2015), *aff'd*, 24 Fla. L. Weekly Supp. 670b (Fla. 15th Cir. Ct. Dec. 13, 2016).

11.     State Farm moved for partial summary judgment on the basis that it had complied with the insurance policy by paying the prevailing competitive price as determined by a survey made by State Farm.

12.     In support of its motion, State Farm relied upon the affidavit of Estimatics Team Manager Scott Walker.

13.     Mr. Walker testified that because the vehicle was repaired in Palm Beach County, the applicable repair market as determined by State Farm's survey was Palm Beach County, Florida.

14.     Mr. Walker further testified that the prevailing competitive prices in Palm Beach County, Florida, as determined by State Farm's survey in August 2014, were $44 for both body labor and paint labor and $25 for the paint and materials rate.

15.     Mr. Walker explained that these three rate categories were calculated and paid pursuant to State Farm's survey that established the prevailing competitive prices charged by a majority of the repair market in Palm Beach County, Florida on the date State Farm prepared its first written estimate.

16.     Accordingly, State Farm established that it paid the prevailing competitive prices as determined by its survey as required by the governing insurance contract.

17.     Plaintiff failed to produce any counter evidence that State Farm did not pay the

113614471.1

prevailing competitive prices as determined by State Farm's survey.

DONE AND ORDERED in Chambers, in West Palm Beach, Palm Beach County,

Florida, this ___ day of ____, 2017.

SIGNED & DATED

JAN 1 6 2018

_____
Judge Sandra Bosso-Pardo

JUDGE SANDRA BOSSO-PARDO

Copies to:
Peter Van Keuren
Johanna W. Clark

4

113614471 1

IN THE COUNTY COURT IN AND
FOR PALM BEACH COUNTY, FLORIDA

AUTO KRAFTERS LLC
a/a/o Kristie West,

          Plaintiff,               Case No. 502014SC006468XXXXNB

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Defendant

_____/

### ORDER GRANTING DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter came before the Court for hearing on December 21, 2017 on Defendant's

Motion for Partial Summary Judgment as to Plaintiff's claims for payment of higher labor rates

and paint and materials rate, and the Court having heard argument of counsel, having reviewed

the papers filed by the parties, and being otherwise fully informed in the premises, it is hereby

**ORDERED:**

For the reasons set forth below, State Farm's Motion for Partial Summary Judgment is

**GRANTED.**

1.     Plaintiff filed a one-count breach of contract claim against State Farm seeking,

*inter alia*, payment for a higher body ("sheet metal") labor rate, paint ("refinish") labor rate, and

paint and materials rate.

2.     Plaintiff, Auto Krafters LLC, is an automobile repair facility in Palm Beach

County, Florida.

3.     In October 2013, State Farm insured Kristie West's 2009 Mercedes-Benz when it

was involved in an automobile accident.

1

113614479.1

4.     Ms. West chose to have her vehicle repaired at Plaintiff's repair facility.

5.     State Farm provided coverage and made payment for repairs to the subject vehicle pursuant to an estimate written by State Farm.

6.     In July 2014, Plaintiff filed the breach of contract claim against State Farm for alleged underpayment of the repairs.  Plaintiff seeks additional payment pursuant to a purported assignment of benefits executed by State Farm's insured, Ms. West.

7.     Plaintiff claims that State Farm breached its insurance policy because it paid $13 below the amount that Plaintiff billed State Farm per hour for body labor and paint labor, and $1 below the amount Plaintiff billed for the paint and materials rate.

8.     State Farm's estimates reflect that State Farm's payments were based on the following rates:

- Body labor at $42.00 per hour;

- Paint labor at $42.00 per hour; and

- Paint and Materials at $24.00 per hour.

9.     The amount State Farm paid for the repairs at issue was subject to a limit of liability provision in the governing insurance contract.

10.     The policy clearly and unambiguously states that State Farm's limit of liability for the subject dispute is the prevailing competitive price, which means prices charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determined by a survey made by State Farm. *Collision Concepts of Delray, LLC, a/a/o Larry Canipe v. State Farm Mut. Auto. Ins. Co.*, 23 Fla. L. Weekly Supp. 614d (Fla. 15th Cir. Ct. September 29, 2015), *aff'd*, 24 Fla. L. Weekly Supp. 670b (Fla. 15th Cir. Ct. Dec. 13, 2016).

2

11.     State Farm moved for partial summary judgment on the basis that it had complied with the insurance policy by paying the prevailing competitive price as determined by a survey made by State Farm.

12.     In support of its motion, State Farm relied upon the affidavit of Estimatics Team Manager Scott Walker.

13.     Mr. Walker testified that because the vehicle was repaired in Palm Beach County, the applicable repair market as determined by State Farm's survey was Palm Beach County, Florida.

14.     Mr. Walker further testified that the prevailing competitive prices in Palm Beach County, Florida, as determined by State Farm's survey in October 2013, were $42 for both body labor and paint labor and $24 for the paint and materials rate.

15.     Mr. Walker explained that these three rate categories were calculated and paid pursuant to State Farm's survey that established the prevailing competitive prices charged by a majority of the repair market in Palm Beach County, Florida on the date State Farm prepared its first written estimate.

16.     Accordingly, State Farm established that it paid the prevailing competitive prices as determined by its survey as required by the governing insurance contract.

17.     Plaintiff failed to produce any counter evidence that State Farm did not pay the prevailing competitive prices as determined by State Farm's survey.

DONE AND ORDERED in Chambers, in West Palm Beach, Palm Beach County, Florida, this ___ day of _____, 2017.

SIGNED & DATED

JAN 16 2018

_____
Judge Sandra Bosso-Pardo

Copies to:
Peter Van Keuren
Johanna W. Clark

3

113614479.1

# **<u>EXHIBIT F</u>**

IN THE COUNTY COURT IN AND FOR
POLK COUNTY, FLORIDA

A&E AUTO BODY, INC. a/a/o
JAMES THOMPSON,                                    CASE NO: 2018SC-000883-0000

      Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.
_____/

## ORDER GRANTING STATE FARM'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** came before the Court on February 28, 2019, on Defendant, State Farm Mutual Automobile Insurance Company's Motion for Partial Summary Judgment as to Plaintiff's claim for payment of higher labor rates and paint and materials rate. The Court having heard argument of counsel, having reviewed the papers filed by the parties, and being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED**:

For the reasons set forth below, State Farm's Motion for Partial Summary Judgment is **GRANTED**.

1.    Plaintiff filed a breach of contract claim against State Farm seeking, among other things, payment for a higher body labor rate, refinish labor rate, and paint and materials amount.

2.    Plaintiff is an automobile repair facility located in Polk County, Florida.

3.    In October 2017, State Farm insured James Thompson's Chevrolet Silverado when it was involved in an automobile accident.

4.    Following the automobile accident, Mr. Thompson chose to have his vehicle repaired at Plaintiff's repair facility.

1

5.    State Farm provided coverage and made payment for repairs to the subject vehicle pursuant to an estimate written by State Farm.

6.    Plaintiff filed its breach of contract action against State Farm in February 2018, alleging underpayment for repairs.  Plaintiff seeks additional payment pursuant to a purported assignment of benefits executed by State Farm's insured -- James Thompson.

7.    Plaintiff claims that State Farm breached the insurance policy because it paid $4.00 per hour below the amount that Plaintiff billed State Farm for body labor and refinish labor, and that State Farm breached the policy because State Farm did not pay a remaining balance of $52.73 for paint and materials purportedly used to repair James Thompson's vehicle, as calculated by Plaintiff's automated paint and materials rate calculator.

8.    State Farm's estimates reflect that payments issued by State Farm were based on the following rates:

- Body Labor Rate at $46.00 per hour;
- Refinish Labor Rate at $46.00 per hour; and
- Paint and Materials Rate at $28.00 per hour.

9.    The amount State Farm paid for the repairs at issue was subject to a limit of liability provision in the governing insurance policy.

10.    Specifically, the policy clearly and unambiguously states that State Farm's limit of liability for the subject dispute is the prevailing competitive price, which means prices charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determined by a survey made by State Farm.

11.    State Farm moved for partial summary judgment on the basis that it complied with the insurance policy by paying the prevailing competitive price as revealed by a survey

117380270.1

made by State Farm for the hourly body and refinish labor rates and for the paint and materials rate. In support of its Motion for Partial Summary Judgment, State Farm filed the affidavit of Ralph Bennett, who is a State Farm Estimatics Team Manager.

12.     Mr. Bennett indicated within his affidavit that because the vehicle was repaired in Polk County, the applicable repair market as determined by State Farm's survey was the Lakeland-Winter Haven core-based statistical area ("CBSA").

13.     Mr. Bennett further indicated within his affidavit that the prevailing competitive price in the Lakeland-Winter Haven CBSA, as reveled by State Farm's survey in October 2017, was $46.00 per hour for both body labor and refinish labor. The survey further revealed that the majority of the repair market was not using an automated paint and materials rate calculator, and the majority of the repair market was charging $28.00 or less per hour for paint and materials.

14.     Per Mr. Bennett, these rate categories were calculated and paid pursuant to State Farm's survey that revealed the prevailing competitive prices charged by a majority of the repair market in the Lakeland-Winter Haven CBSA on the date State Farm prepared its first written estimate.

15.     Accordingly, State Farm established that it paid the prevailing competitive prices as determined by State Farm's survey, as required by the governing insurance policy.

16.     Plaintiff failed to produce counter-evidence that State Farm did not pay the prevailing competitive prices as determined by State Farm's survey.     **MAR 1 1 2019**

**DONE AND ORDERED** in Chambers in Bartow, Polk County, Florida this ____ day of March, 2019.

/s/ Bob Grode

_____

Judge Bob Grode

Copies furnished to:
Counsel of Record

3

|17380270.|

# **EXHIBIT G**

IN THE COUNTY COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR MARTIN COUNTY, FLORIDA

**ZERO 6 INCORPORATED**                    Case No.     **18001354SCAXMX**

-VS-.

**STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY**
      Defendant(s).
_____/

## ORDER GRANTING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came on to be heard on Defendant's Motion for Partial Summary Judgment on July 16, 2019 and this Court, having heard argument of Counsel, reviewed the pleadings on file, including the Summary Judgment Motion and the Affidavits filed, hereby finds as follows:

1. On or about September 10, 2017, Alina Vazquez, the insured, was involved in a motor vehicle accident. As a result of the damage to Ms. Vazquez's 2017 BMW X5 vehicle, Ms. Vazquez submitted a claim to Defendant for the damage to her vehicle.

2. Plaintiff performed work on Ms. Vazquez vehicle to repair damage sustained in the accident. Plaintiff's repair facility is located in Martin County, Florida.

3. Plaintiff filed a one count breach of contract claim against Defendant on or about September 17, 2018, pursuant to an assignment of benefits executed by Ms. Vazquez.

4. Plaintiff seeks a $4.00 increase to the body labor rate paid by Defendant to repair Ms. Vazquez's vehicle, a $4.00 increase to the labor rate paid by Defendant to repair the vehicle; and an $8.00 increase for the paint/material rate paid by Defendant for repairs to Ms. Vazquez's vehicle.

5. The issue before the Court involves the construction of an insurance policy, which is a question of law for the court's determination. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Underwriters at Lloyd's London,* 971 So. 2d 885 (Fla. 3d DCA 2007).

6. The insurance contract provides the methodology to determine the cost to repair the vehicle. The amount State Farm Paid for the repairs at issue was subject to a limit of liability provision in the governing contract.

7. The policy clearly and unambiguously states in relevant part as follows:

Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage

We have the right to choose to settle with you or the owner of the covered vehicle in one of the following ways:

a. Pay the cost to repair the covered vehicle minus any applicable deductible

 (1) We have the right to choose one of the following to determine the cost to repair the covered vehicle:
  (a) The cost agreed to by both the owner of the covered vehicle and us
  (b) A bid or repair estimate approved by us; or
  (c) A repair estimate that is written based upon or adjusted to:
   (i.)  The prevailing competitive price;
   (ii.)  The lower of paintless dent repair pricing established by an agreement we have with a third party or the paintless dent repair price that is competitive in the market; or
   (iii.) A combination of (i) and (ii) above.

  The prevailing competitive price means prices charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determined by a survey made by us…

  (Policy page 32-33)

8. There was no agreement between the parties as to the cost of the repairs, nor was there any competitive bid that State Farm approved. Therefore, State Farm utilized option c.

9. State Farm moved for partial summary judgment on the basis that it complied with the language of the policy by paying the prevailing competitive price as determined by a survey completed by State Farm.

10. State Farm relied upon an affidavit filed by Ralph Bennett, an Estimatics Team Manager at State Farm Mutual Automobile Insurance Company. The affidavit provided that the prevailing competitive process in Martin County were $46.00 for body labor and refinish labor, and $28.00 for paint/materials. The affidavit further provided that Martin County is located within the Port St. Lucie core-based statistical area (CBSA).

11. State Farm paid the cost of the repairs based upon a written estimate, prepared by State Farm based upon State Farm's survey for body labor, refinish labor and for paint and materials. State Farm paid $46.00 for the body labor, $46 for the refinish labor and $28 for the paint and materials, which were the prevailing competitive market prices.

12. State Farm's policy language is unambiguous and provides that State Farm's limit of liability for this matter is the prevailing competitive price, which means the prices charged by a majority of the repaid facilities in the area where the vehicle is to be repaired, as determined by a survey made by ***State Farm***. The language of the policy provides State Farm with tremendous leeway as to the survey.

13. Simply because various repair providers, including the Plaintiff, did not complete the survey, does not render the survey inapplicable. Although Defendant takes issue with the factual circumstances surrounding the survey completed by State Farm, the clear and plan language of the policy provides that State Farm has the ability to determine the survey.

14. There is no ambiguity in the contract as to the definition of the Prevailing Competitive Price. State Farm complied with the terms of its policy. The rate categories were determined and paid based upon State Farm's survey that established prevailing

competitive prices charged by the area repair market, of Stuart, Port St. Lucie and Ft. Pierce.

15. Plaintiff failed to provide evidence in opposition that State Farm did not pay the prevailing competitive prices as determined by State Farm's own survey, as set forth in the unambiguous language of State Farm's policy.

ACCORDINGLY, it is hereby ORDERED and ADJUDGED that the Defendant's Motion for Partial Summary Judgment is GRANTED.

DONE AND ORDERED at Stuart, Martin County, Florida, this 18th day of July, 2019.

JENNIFER ALCORTA WATERS
COUNTY COURT JUDGE

Electronic Service:

Abraham Ovadia <efile2@wesetthestandards.com>
Abraham Ovadia, Esq. <Service@WeSetTheStandards.com>
Johanna W Clark <jclark@carltonfields.com>, <dasmith@carltonfields.com>, <atokarz@carltonfields.com>
Kelley Christian Godfrey <kgodfrey@carltonfields.com>, <dasmith@carltonfields.com>, <jboyd@carltonfields.com>

Filing # 92766588 E-Filed 07/18/2019 11:51:21 AM

IN THE COUNTY COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR MARTIN COUNTY, FLORIDA

**ZERO 6 INCORPORATED**                    Case No.    **18001356SCAXMX**

-VS-.

**STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY**
          Defendant(s).
_____/

## ORDER GRANTING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came  before this Court on Defendant's Motion for Partial Summary Judgment on July 16, 2019 and this Court, having heard argument of Counsel, reviewed the pleadings on file, including the Summary Judgment Motion and the Affidavits filed, hereby finds as follows:

1.  On or about October 6, 2017, Parker Davis, the insured, was involved in a motor vehicle accident. As a result of the damage to the Davis' 2013 Honda Accord vehicle, Mr. Davis submitted a claim to Defendant for the damage to his vehicle.

2.  Plaintiff performed work on Mr. Davis' vehicle to repair damage sustained in the accident.  Plaintiff's repair facility is located in Martin County, Florida.

3.  Plaintiff filed a one count breach of contract claim against Defendant on or about September 17, 2018, pursuant to an assignment of benefits executed by Mr. Davis.

4.  Plaintiff seeks a $4.00 increase to the body labor rate paid by Defendant to repair Mr. Davis' vehicle, a $4.00 increase to the labor rate paid by Defendant to repair the vehicle; and an $8.00 increase for the paint/material rate paid by Defendant for repairs to Mr. Davis' vehicle.

5. The issue before the Court involves the construction of an insurance policy, which is a question of law for the court's determination. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Underwriters at Lloyd's London,* 971 So. 2d 885 (Fla. 3d DCA 2007)

6. The insurance contract provides the methodology to determine the cost to repair the vehicle. The amount State Farm Paid for the repairs at issue was subject to a limit of liability provision in the governing contract.

7. The policy clearly and unambiguously states in relevant part as follows:

Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage

We have the right to choose to settle with you or the owner of the covered vehicle in one of the following ways:

a. Pay the cost to repair the covered vehicle minus any applicable deductible

(1) We have the right to choose one of the following to determine the cost to repair the covered vehicle:
(a) The cost agreed to by both the owner of the covered vehicle and us
(b) A bid or repair estimate approved by us; or
(c) A repair estimate that is written based upon or adjusted to:
(i.) The prevailing competitive price;
(ii.) The lower of paintless dent repair pricing established by an agreement we have with a third party or the paintless dent repair price that is competitive in the market; or
(iii.) A combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determined by a survey made by us...

(Policy page 32-33)

8. There was no agreement between the parties as to the cost of the repairs, nor was there any competitive bid that State Farm approved. Therefore, State Farm utilized option c.

9. State Farm moved for partial summary judgment on the basis that it complied with the language of the policy by paying the prevailing competitive price as determined by a survey completed by State Farm.

10. State Farm relied upon an affidavit filed by Ralph Bennett, an Estimatics Team Manager at State Farm Mutual Automobile Insurance Company. The affidavit provided that the prevailing competitive prices in Martin County were $46.00 for body labor and refinish labor, and $28.00 for paint/materials. The affidavit further provided that Martin County is located within the Port St. Lucie core-based statistical area (CBSA).

11. State Farm paid the cost of the repairs based upon a written estimate, prepared by State Farm, based upon State Farm's survey for body labor, refinish labor and for paint and materials. State Farm paid $46.00 for the body labor, $46.00 for the refinish labor and $28.00 for the paint and materials, which were the prevailing competitive market prices.

12. State Farm's policy language is unambiguous and provides that State Farm's limit of liability for this matter is the prevailing competitive price, which means the prices charged by a majority of the repaid facilities in the area where the vehicle is to be repaired, as determined by a survey made by *State Farm*. The language of the policy provides State Farm with tremendous leeway as to the survey.

13. Simply because various repair providers, including the Plaintiff, did not complete the survey, does not render the survey inapplicable. Although Defendant takes issue with the factual circumstances surrounding the survey completed by State Farm, the clear and plain language of the policy provides that State Farm has the ability to determine the survey.

14. There is no ambiguity in the contract as to the definition of the Prevailing Competitive Price. State Farm complied with the terms of its policy. The rate categories were determined and paid based upon State Farm's survey that established prevailing

competitive prices charged by the area repair market, of Stuart, Port St. Lucie and Ft. Pierce.

15. Plaintiff failed to provide evidence in opposition that State Farm did not pay the prevailing competitive prices as determined by State Farm's own survey, as set forth in the unambiguous language of State Farm's policy.

ACCORDINGLY, it is hereby ORDERED and ADJUDGED that the Defendant's Motion for Partial Summary Judgment is GRANTED.

DONE AND ORDERED at Stuart, Martin County, Florida, this 18th day of July, 2019.

JENNIFER ALCORTA WATERS
COUNTY COURT JUDGE

Electronic Service:

Abraham Ovadia <efile2@wesetthestandards.com>
Abraham Ovadia, Esq. <Service@WeSetTheStandards.com>
Johanna W Clark <jclark@carltonfields.com>, <dasmith@carltonfields.com>, <atokarz@carltonfields.com>
Kelley Christian Godfrey <kgodfrey@carltonfields.com>, <dasmith@carltonfields.com>, <jboyd@carltonfields.com>

# **EXHIBIT H**

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR HERNANDO COUNTY, FLORIDA

ELITE EURO CARS COLLISION SERVICES,
INC. A/A/O CARLOS UZZO,
        Plaintiff,

v.                                    CASE NO: 2021-CA-507

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
        Defendant.
_____/

## ORDER AS TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS MOTION FRO SUMMARY JUDGMENT

THIS MATTER having come before the Court at hearing on June 15, 2023 and the court having reviewed the file, pleadings, as well as argument of counsel finds as follows:

1.      Case filed June 28,2021.

          Case set for Trial at CMC for Trial Term of August 21, 2023.

          (Currently #2 in Priority Order)

          Defendant's Summary Judgment filed May 1, 2023.

          Notice of Hearing filed May 16, 2023 for hearing of June 15, 2023.

          Plaintiff's Response with Cross Motion for Summary Judgment filed May 23, 2023.

          Hearing held June 15, 2023.

2.      This Case is under Florida Supreme Court SC 20-1490 (December 31, 2020) and Amended SC-1490 (April 29, 2021).

New rule 1.510 took effect on May 1, 2021. This means that the new rule must govern the adjudication of any summary judgment motion decided on or after that date, including in pending cases. *Cf. Love v. State*, 286 So.3d 177, 187-88 (Fla. 2019).

In cases where a summary judgment motion was denied under the pre-amendment rule, the court should give the parties a reasonable opportunity to file a renewed summary judgment motion under the new rule. *See Wilsonart, LLC v. Lopez*, 308 So.3d 961, 964 (Fla. 2020). In cases where a pending summary judgment motion has been briefed but not decided, the court

should allow the parties a reasonable opportunity to amend their filings to comply with the new rule. Any pending rehearing of a summary judgment motion decided under the pre-amendment rule should be decided under the pre-amendment rule, subject of course to a party's ability to file a renewed motion for summary judgment under the new rule.

A party moving for summary judgment has the burden of demonstrating to the court that there are no material facts that are genuinely disputed and that the movant therefore is entitled to judgment as a matter of law. But a key question is what standard the court should apply to determine whether the movant has satisfied its burden.

The Supreme Court addressed this question in its 1986 decision in *Celotex Corporation v. Catrett.* That case involved an action charging that the death of plaintiff's husband resulted from exposure to asbestos products manufactured or distributed by defendants. Defendant moved for summary judgment on the ground that during discovery plaintiff had failed to produce any evidence to support the allegation that the decedent had been exposed to defendant's products – an issue on which plaintiff would bear the burden of proof at trial. Plaintiff then produced three documents, which defendant challenged as inadmissible hearsay. The District court granted summary judgment and a divided panel of the District of Columbia Circuit reversed on the ground that the defendant had failed to meet its Rule 56 burden because it had not supported its motion with any evidence, so that plaintiff therefore had no obligation to respond with evidence. The Supreme Court reversed.

Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates, they disagreed as to how the standard was applied to the facts of the case. Justice Rehnquist, writing for the majority, ruled that there was "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. This conclusion was bolstered by the recognition that courts may enter summary judgment sua sponte. As Justice Rehnquist noted,

> It would surely defy common sense to hold that the District Court could have entered summary judgment sua sponte in favor of the petitioner in the instant case, but that petitioner's filing of a motion requesting such a disposition precluded the District Court from ordering it.

The satisfaction of the moving party's summary judgment burden was influenced by the fact that the nonmovant would bear the burden of proof at trial. When that was so, the moving party could make a proper summary judgment motion in reliance on the pleadings and the allegation that the nonmovant had failed to establish an element essential to that party's case. Rule 56 then would require the opposing party to go beyond the pleadings to designate specific facts showing there was a genuine issue for trial. Justice Rehnquist concluded the majority's opinion with the policy justification that supported this conclusion.

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

In the dissenting opinion by Justice Brennan, he elaborated more fully on the way in which the burden shifts between the parties to the action, as well as how it can be satisfied. Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment. That can be satisfied, in cases in which the ultimate burden of persuasion at trial rests on the nonmoving party, either by submitting affirmative evidence negating an essential element of the nonmovant's claim or, as in Celotex, by demonstrating that the nonmoving party's evidence itself is insufficient to establish an essential element of its claim. As described by Justice Brennan, the moving party may make this showing by deposing the nonmoving party's witness, by establishing the inadequacy of documentary evidence or, if there is no evidence, by reviewing for the court what exists to show why that does not support a judgment for the nonmoving party. To this extent, the dissent agreed with the majority that the movant need not present affidavits or new evidence of its own to meet its initial burden, but may premise its summary judgment motion on an attack of the opponent's evidence. If it is successful in arguing that the nonmovant's evidence is insufficient, the burden shifts to that party to call evidence to the attention of the court to dispute that contention. The dissent argued, however, that in Celotex itself defendant had not met this initial burden because it had ignored supporting evidence clearly contained in the record and thus had not demonstrated that no evidence existed to support plaintiff's claim.

There are numerous ways in which the movant can satisfy its burden on summary judgment to show that there are no genuine issues of fact. Indeed, when Rule 56 was rewritten in 2010, a new subdivision (c) was included that explicitly provides that a movant must support its position that there is no genuine dispute of material facts by citing to materials in the record that demonstrate the absence of a dispute, by showing that those materials do not establish the presence of a genuine dispute, or, as in Celotex, by showing that the opposing party cannot produce admissible evidence to support a material fact. In short, the movant may discharge the Rule 56 burden by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for the opposing party. This may occur, for example, if a movant, by means of uncontroverted affidavits or by using any of the other materials specified in Rule 56(c), completely explores and establishes the facts, thereby demonstrating the absence of any genuine dispute as to the facts and securing the entry of summary judgment. If no evidence could be mustered to sustain the nonmoving party's position, a trial would be useless, and the movant is entitled to a judgment as a matter of law.

Indeed, applying this principle, even if the movant's own evidentiary material reveals an issue of credibility, summary judgment still may be warranted if it also appears that the party opposing the motion cannot prevail in any event so that the issue or credibility is immaterial.

Situations in which credibility issues are unimportant because the adversary cannot prevail occasionally result the interplay between the burden of proof on the summary judgment motion and the burden of persuasion at trial. For example, in *Dyer v. MacDougall*, the allegations in a complaint in a slander action were countered by affidavits signed by all of the witnesses to the supposed defamation, each denying that the wrong had occurred. Plaintiff was unable to resist defendant's motion for summary judgment since even if he succeeded in impeaching the credibility of defendant's witnesses at trial, the court concluded that he nevertheless would be unable to discharge his burden of persuasion the issue of slander. Thus, defendant had demonstrated that a trial would be useless and summary judgment appropriate; there would be no competent evidence that could support a verdict for plaintiff, especially since he could not impeach the testimony of the witnesses to the alleged defamation if he called them to testify at trial.

Finally, it is important to note that, as established in Celotex, it is not necessary for the movant to introduce any evidence in order to prevail on summary judgment, at least in cases in

which the nonmoving party will bear the burden of proof al trial. The movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him. On the other hand, the party moving for summary judgment cannot sustain its burden merely by denying the allegations in the opponent's pleadings, or merely by asserting that the nonmovant lacks evidence to support its claim. The movant must show why the opponent's allegations of fact are insufficient to support the claim for relief as a matter of law or why the court should conclude that its opponent lacks sufficient evidence. Remember that in Celotex itself discovery was completed, and the only evidence plaintiff produced was found to be inadmissible hearsay.

In contrast, if the movant bears the burden of proof on a claim at trial, then its burden of production is greater. It must lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing. If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.

In meeting its burden, it is important to note that despite the usual rule that all doubts are resolved against the moving party, there is one inference to which the movant is entitled. If the movant presents credible evidence that, if not controverted at trial, would entitle the movant to a Rule 50 judgment as a matter of law, that evidence must be accepted as true on a summary judgment motion when the party opposing the motion does not offer counter-affidavits or other evidentiary material supporting the opposing contention that an issue of fact remains, or does not show a good reason, in accordance with Rule 56(d) why he is unable to present facts justifying opposition to the motion.

The amendment adopted by the Florida Supreme Court in SC20-1490 largely replaces the text of existing rule 1.510 with the text of Federal rule 56. New Rule 1.510(a) will also include the following sentence: "The summary judgment standard provided for in this rule shall be construed and applied in accordance with the Federal Summary Judgment Standard."

In the December 31, 2020, decision amending rule 1,510, the Court made it clear that adopting the federal summary judgment standard means that Florida will now adhere to the principles established in the *Celotex* trilogy. In the broadest sense, those cases stand for the proposition that "[s]ummary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part" of rules aimed at "the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). More specifically, though, embracing the *Celotex* trilogy means abandoning certain features of Florida jurisprudence that have unduly hindered the use of summary judgment in our state. *In re Amends. to Fla. Rule of Civ. Pro. 1.510*, 309 So.3d at 192-93.

Those applying new rule 1.510 must recognize the fundamental similarity between the summary judgment standard and the directed verdict standard. *See Anderson*, 477 U.S. at 251 (noting that "the inquiry under each is the same"). Both standards focus on "whether the evidence presents a sufficient disagreement to require submission to a jury." Id. at 251-52. And under both standards "[t]he substantive evidentiary burden of proof that the respective parties must meet at trial is the only touchstone that accurately measures whether a genuine issue of material fact exists to be tried." Thomas Logue & Javier Alberto Soto, *Florida Should Adopt the Celotex Standard for Summary Judgments*, 76 Fla. Bar J., Feb. 2002, at 26; *see also Anderson*, 477 U.S. at 255.

Those applying new rule 1.510 must recognize that a moving party that does not bear the burden of persuasion at trial can obtain summary judgment without disproving the nonmovant's case. Under Celotex and therefore the new rule, such a movant can satisfy its initial burden of production in either of two ways: "[I]f the nonmoving party must prove X to prevail [at trial], the moving party at summary judgment can either produce evidence that X is not so or point out that the nonmoving party lacks the evidence to prove X." *Bedford v. Doe*, 880 F.3d 993, 996-97 (8th Cir. 2018). "A movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019).

Those applying new rule 1.510 must recognize that the correct test for the existence of a genuine factual dispute is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Under our new rule, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In Florida it will no longer be plausible to maintain that "the existence of any competent evidence creating an issue of fact, however credible or incredible, substantial or trivial, stops the

inquiry and precludes summary judgment, so long as the 'slightest doubt' is raised." Bruce J. Berman & Peter D. Webster, Berman's Florida Civil Procedure § 1.510:5 (2020 ed.) (describing Florida's pre-amendment summary judgment standard).

The new rule will continue to require adherence to "the federal summary judgment standard," which itself cannot be understood apart from the Celotex trilogy. But the Court removed the textual reference to the cases themselves. The Court recognized that "30 years of practice under the has refined and added to the trilogy." Gensler & Mulligan, supra. And naturally, courts applying the new rule must be guided not only by the Celotex but by the overall body of case law interpreting federal rule 56.

In any event, the Court in adopting the text of federal rule 56 almost verbatim has made it unnecessary to list specific cases in new rule 1.510. That is because our act of transplanting Federal Rule 56 brings with it the "old soil" of case law interpreting that rule. *See Fla. Hwy. Patrol v. Jackson*, 288 So.3d 1179, 1183 (Fla. 2020) ("[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947))).

3.     This action out of a claim for repairs Plaintiff, Elite Euro Cars Collision Services, Inc., to a 1963 Chevrolet owned by State Farm's insured, Carlo Uzzo ("Mr. Uzzo").  is a repair facility located in Hernando County, Florida, which is within the Tampa-St. Petersburg-Clearwater core-based statistical area. Because Plaintiff is a stranger to the insurance policy between State Farm and Mr. Uzzo, Plaintiff has brought this one-count breach of contract action pursuant to a purported assignment of benefits executed by Mr. Uzzo. Plaintiff seeks, $22 increase to the paint/materials rate paid by State Farm.

For the purposes of this dispute, the contract between State Farm and Mr. Uzzo requires only that State Farm pay the cost of repairing the vehicle by paying the prevailing competitive price or "PCP" as determined bp State Farm 's survey. Plaintiff is seeking $50 per hour for paint/materials — a rate it obtained from a paint and materials rate calculator. However, on the date of State Farm's initial repair estimate, the majority (more than half) of the repair market responding to State Farm's survey and based on capacity 1) were not using an automated paint and materials rate calculator and 2) were charging $28.00 per hour or less for paint and materials.

Defendant submits that because State Farm has already paid the prevailing competitive price for paint/materials, State Farm has satisfied its obligation under the insurance contract and is entitled to summary judgment on the paint/materials rate dispute as a matter of law.

4.      Mr. Uzzo submitted a claim to State Farm under his State Farm Policy No. 118 9764-59F (the insurance "Policy") for collision damage sustained to his vehicle. Policy sets forth, in clear and unambiguous language, the following provision governing State Farm's duty to pay for collision damage:

### PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:
. . .

2. Collision Coverage if "G";

. . .

Is shown under "SYMBOLS" on the Declaration's Page.

. . . The deductible that applies to Collision Coverage is shown on the

Declaration Page.

The Policy also includes the following provision that limits State Farm's liability under this Collision provision:

### Limits and Loss Settlement — Comprehensive Coverage and Collision Coverage

We have the right to choose to settle with you or the owner of the covered vehicle in one of the following ways:

a.      Pay the cost to repair the covered vehicle minus any applicable deductible.
(1) We have the right to choose one of the following to determine the cost to repair the covered vehicle:
(a) The cost agreed to by both the owner of the covered vehicle and us;
(b) A bid or repair estimate approved by us; or
(c) A repair estimate that is written based upon or adjusted to:
(i)      the prevailing competitive price;

> (ii) the lower of paintless dent repair pricing established by an agreement we have with a third party or the paintless dent repair price that is competitive in the market; or
> (iii) a combination of (i) and (ii) above.
> The prevailing competitive price means prices charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determined by a survey made by us. . .

Policy at pp. 32-33.

The parties do not dispute that State Farm elected to pay the cost to repair Mr. Uzzo's vehicle. As provided for in the Policy, State Farm determined the "cost to repair" based upon State Farm's written repair estimate, which was "based upon the prevailing competitive price." State Farm's Policy explicitly defines "prevailing competitive price" to mean "prices charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determined by a survey made by [State Farm]."

In March of 2019, Mr. Uzzo's 1963 Chevrolet Corvette was insured under an automobile insurance policy issued by State Farm. On or about March 24, 2019, Mr. Uzzo's vehicle was involved in a motor vehicle accident. Mr. Uzzo chose to have his vehicle repaired at Elite Euro Cars Collision Center in Spring Hill, Florida.

Upon notification of the claim, State Farm's estimator inspected the damage to Mr. Uzzo's vehicle. The State Farm estimator thereafter prepared a written estimate of damage. During the repair process, the repair facility notified State Farm of additional repair costs. Accordingly, State Farm's estimator inspected the vehicle and prepared a supplemental estimate. Based upon its original and supplemental written estimates, State Farm issued payments to Elite Euro Cars Collision Center and the Ovadia Law Group totaling $4,284.98.

As State Farm's estimates reflect, State Farm paid $28 per refinish hour for the paint/materials necessary to complete the repairs. This rate was paid pursuant to State Farm's survey that identified the prevailing competitive prices charged by a majority of the repair market in the Tampa-St. Petersburg-Clearwater CBSA on the date State Farm prepared its first written estimate on the Uzzo vehicle. In April of 2019, State Farm's survey results establishing the prevailing competitive price for paint/materials in the Tampa-St. Petersburg-Clearwater CBSA showed that the majority of the responding repair market, based on capacity, did not use

an automated paint and materials rate calculator and charged $28 per hour or less for paint/materials.

Plaintiff filed suit claiming, that State Farm "has refused and continues to refuse to issue payment of all sums due Plaintiff in breach of its contract with [Carlo Uzzo]."

Plaintiff claims it is owed an additional $22 per hour for paint/materials (Plaintiffs $50 per hour as set by a paint calculator, versus $28 per hour paid by State Farm). State Farm maintains it paid for paint/materials based on its survey which revealed the majority of the responding repair market based on capacity was accepting $28 per hour or less for paint and materials and was not using a paint and materials calculator.

5.     This case presents a narrow question of law with respect to the rate State Farm paid for paint/materials. The Policy permits State Farm to pay for the cost of repairs based upon the prevailing competitive prices charged by a majority of the repair market as determined by State Farm's survey.

6.     In this case, the Policy provides that the cost of repair (and State Farm's resultant liability) may be determined by utilizing the prevailing competitive prices charged by a majority of the responding repair facilities based on capacity as identified by a survey performed by State Farm. Here, the undisputed evidence shows State Farm paid for the cost of repairs to Mr. Uzzo's vehicle based upon a written estimate, prepared by State Farm, which utilized the prevailing competitive price as determined by State Farm's survey for the paint/materials rate.

State Farm's Estimatics Team Manager attested that State Farm's survey results indicated a majority of the responding repair facilities located within the Tampa-St. Petersburg-Clearwater CBSA, based on capacity l) did not use an automated paint and materials rate calculator and 2) charged $28.00 per hour or less for paint/materials. Thus, State Farm's survey revealed, at that time, the prevailing competitive price for paint/materials in the market area was $28 per hour. State Farm paid Plaintiff exactly $28 per hour for paint/materials for the Uzzo vehicle. Because the Policy requires nothing further with respect to that rate and State Farm's corresponding payment, State Farm could not have breached, and did not breach, the Policy as a matter of law.

At least seven Florida courts have decided similar rate disputes governed by the same Policy language at issue here. First, just like the paint/material charges in this case, in *Coastline Auto, Inc., a/a/o Harrynarine Maharaj v. State Farm Mut. Auto. Ins. Company*, 23 Fla. L. Weekly Supp. 972a (Fla. 17th Cir. Ct. February l, 2016), a plaintiff/repair facility sought a

paint/material rate that was set via an automated paint/material calculator and resulted in a rate that was $7.32 per hour higher than the PCP rate determined by State Farm's survey. The Honorable Stephen J. Zaccor found that "[t]he undisputed evidence is the survey made by the Defendant [State Farm] revealed a 'majority of the repair market' does not use a paint calculator, and charges twenty-four dollars or less per hour for paint and materials." Ex. D at p. 2 (footnote omitted). Accordingly, the court held that the PCP for paint/materials was $24 per hour—which is what State Farm paid—and entered judgment in favor of State Farm.

Second, in *Collision Concepts of Delray, LLC, a/a/o Larry Canipe v. State Farm Mut. Auto. Ins. Co.*, the circuit court, sitting in its appellate capacity, affirmed the trial judge who granted State Farm's motion for summary disposition as to PCP paid by State Farm pursuant to State Farm's survey process. No. 15-AP-000081-CA (Fla. 15th Cir. App. Ct. Dec. 13, 2016). In Collision Concepts/Canipe, the plaintiff/repair facility sought body and refinish labor rates that were $2 higher than the PCP rates established by State Farm's survey. 23 Fla. L. Weekly Supp. 614d (Fla. 15th Cir. Ct. September 29, 2015). That Court held that not only was State Farm's insurance contract language clear and unambiguous, but that State Farm was entitled to summary disposition on the breach of contract claims as to the body labor rates and refinish labor rates paid by State Farm where State Farm had presented evidence that it: 1) performed a survey of the repair market where the vehicle was to be repaired, and 2) paid the prevailing competitive prices determined by that survey. *Id.* The Plaintiff in Collision Concepts/Canipe, like here, presented no counter evidence (nor could it) to show that State Farm had either failed to perform a survey or failed to pay the prevailing competitive prices determined by State Farm's survey. *Id.* Judgment was entered for State Farm, and the appellate court affirmed.

Third, on June 16, 2016, in a separate lawsuit filed by yet another plaintiff repair facility (*James McHugh a/a/o Haline Gregory v. State Farm Mut. Auto. Ins. Co.*, Broward County, Florida, Case No.: 12-06933 COCE56) involving the same issues and the same contract language, the Honorable Linda Pratt granted State Farm's motion for partial summary judgment in State Farm's favor based on State Farm's payment of body labor, refinish labor, and paint/material at the PCP rates established by State Farm through its survey.

Fourth, in *James McHugh d/b/a James McHugh 's a/a/o Kenneth Braden v. State Farm Mut. Auto. Ins. Company*, Broward County, Florida, Case No.: COCE 11-024975 (52) and *James*

*McHugh d/b/a James McHugh's a/a/o Susan Reich v. State Farm Mute Auto. Ins. Company*, Broward County, Florida, Case No.: COCE 12-012906 (52), a plaintiff/repair facility sought higher body and refinish labor rates, as well as a higher paint/material rate for repairs it made to a vehicle insured by State Farm. See Orders Granting Defendant's Motion for Partial Summary Judgment, entered August 23, 2017. The Honorable Giuseppina Miranda found that "[t]he amount State Farm paid for the repairs at issue was subject to a limit of liability provision in the governing insurance contract" and rejected plaintiffs argument that terms found within the limit of liability provision (specifically, "prevailing competitive price, "prices", "repair market" and "majority") were ambiguous. *Id.* The court held that State Farm complied with the subject insurance policy by paying the PCP as determined by a survey made by State Farm and entered judgment in favor of State Farm. *Id.*

Additionally, in January 2018, the Honorable Sandra Bosso Pardo granted State Farm's motions for partial summary judgment in State Fames favor based on State Farm's payment of body labor, refinish labor, and paint/material at the PCP rates as determined by State Farm's survey as required by the governing insurance contract in three separate matters: l) *Swift Investments, Inc. d/b/a Fantastic Finishes of Palm Beach, a/a/o Inna Kallas v. State Farm Mutual Automobile Insurance Company*, Palm Beach County, Florida, Case No. 50-2015-SC-001147; 2) *Swift Investments, Inc. d/b/a Fantastic Finishes of Palm Beach a/a/o Arthur Goldberg v. State Farm Mutual Automobile Insurance Company*, Palm Beach County, Florida, Case No. 50-2015-SC-001104; and 3) *Auto Krafters, LLC a/a/o Kristie West v. State Farm Mutual Automobile Insurance Company*, Palm Beach County, Florida, case No. 502014SC006468XXXXNB. *See* Orders granting State Farm's Motion for Partial Summary Judgment.

In March of 2019, the Honorable Bob Grode granted State Farm's motion for partial summary judgment in State Farm's favor based on State Farms payment of body labor, refinish labor, and paint/material labor at the PCP rates as determined by State Farm's survey as required by the governing insurance contract in *Auto Body, Inc. a/a/o James Thompson v. State Farm Mutual Automobile Insurance Company*, Polk County, Florida, Case No. 2018-SC-000883-000. *See* Order granting State Farm's Motion for Partial Summary Judgment.

Finally, in July of 2019, the Honorable Jennifer Waters granted State Farm's Motion for Partial Summary Judgment in two cases, including l) *Zero 6 a/a/o Alina Vazquez*, Case No.

181354-SC, and 2) *Zero 6 Incorporated a/a/o Parker Davis*, Case No. 18-1356-SC. In so holding, Judge Waters ruled that there was no ambiguity in the State Farm contract as to the definition of prevailing competitive price and found that State Farm had complied with its obligations under said policy by paying the prevailing competitive prices for body labor, refinish labor, and for paint/materials.

      To the extent Plaintiff attempts to "test" or "attack" State Farm's survey methodology or assert a different pricing model altogether, all such efforts must fail. In *Coastline Auto Inc./Maharaj*, Judge Zaccor explained that State Farm's "insurance contract gives the Defendant [State Farm] tremendous discretion in how to conduct its survey." Ex. D at p. 3. Likewise, two California appellate courts have rejected plaintiffs' attempts to state a breach of contract claim centered on a dislike for "how" State Farm performs it survey. In Levy v. State Farm Mut. Auto. Ins. Co., 150 Cal. App. 4th I (Cal. 4th DCA March 23, 2007), the plaintiff alleged that State Farm breached the terms of the contract because plaintiffs labor costs were $4 higher than the repair estimate State Farm provided. Id. But the Levy Court rejected, as a matter of law, plaintiff's allegation that State Farm breached the terms of the insurance contract. *Id.* The court held that nothing in the contract prevented State Farm from conducting the survey however it saw fit — so long as the survey was conducted. *Id. See also, Joaquin v. Geico General Insurance Co.*, No. C 07-3259 JSW, 2008 53150, at *3 (N.D. Cal. Jan 2, 2008) (holding that "there is nothing in Geico's policy that requires it to conduct a labor survey in any particular way").

      *Levy* involved contract language that is identical to the contract language at issue here, and as is true under Florida law, the *Levy* Court explained that it was not permitted under California law "under the guise of strict construction, [to] rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." *Levy*, 150 Cal. 4th at 7 (quotations and citations omitted). Just as the *Levy, Coastline/Maharaj, Collisions Concepts/Canipe, McHugh/Gregory, McHugh/Reich, McHugh/Braden, Swift Investments/Kallas, Swift Investments/Goldberg, Swift Investments/West, and A&E/I'hompson* courts were not free to rewrite the State Farm contract, neither may this Court rewrite that same contract provision to require State Farm to pay amounts greater than the PCP amounts established by State Farm's survey.

      "In contract interpretation cases, the issue to be addressed is not what this Court or the petitioner would prefer the policy cover, but what losses the mutually agreed-upon contractual

language covers." *Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732, 739 (Fla. 2002) (insured's interpretation of the term "repair" to include compensation for lost value of damaged vehicle would impermissibly negate the insurer's choice of remedy explicitly contained in the contractual text). A repair facility is free, of course, to charge its customers with State Farm Insurance an amount exceeding PCP, but no third party—including Elite Euro Cars Collision Center— may change State Farm's contractual obligation to its insured.

Therefore, based upon the forgoing, the Court GRANTS the Defendant's Summary Judgment.

The Court DENIES the Plaintiff's Summary Judgment.

The Case is Stricken from the August 12, 2023 Trial docket and any other scheduled hearings.

Parties are referred to Arbitration on all other remaining issues.

DONE AND ORDERED in Chambers at Hernando County, Florida this __ day of June, 2023.

_____
Donald E. Scaglione, Circuit Judge

## CERTIFICATE OF SERVICE

I hereby certify copies of the foregoing were furnished by E-Service delivery on this __ day of June, 2023 to:

Chris Kasper, Esq.
Ovadia Law Group, PA
4800 N Federal Hwy, Ste D204
Boca Raton, FL 33431
service@wesetthestandards.com

Johanna W. Clark, Esq.
Novera H. Ahmad, Esq.
Chad W. Durham, Esq.
Carlton Fields, PA
200 S Orange Ave, Ste 1000
Orlando, FL 32801
jclark@carltonfields.com
nahmad@carltonfields.com
cdurham@carltonfields.com

_____
Judicial Assistant

Filing # 176490067 E-Filed 06/29/2023 07:17:50 PM

**IN THE COUNTY COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. <u>COINX22049821</u>   DIVISION: <u>73</u>   JUDGE: <u>DeLuca, Steven P. (73)</u>

**Assaf Sasson**

Plaintiff(s) / Petitioner(s)

v.

**State Farm Mutual Automobile Insurance Company**

Defendant(s) / Respondent(s)

_____/

**<u>ORDER RESETTING HEARING ON PLAINTIFFS' MOTION FOR LEAVE TO AMEND
COMPLAINT</u>**

     **THIS MATTER** came before the Court on June 28, 2023 at 11:00 a.m. on Plaintiff's Motion for Leave to Amend Complaint and then Transfer to Circuit Court (the "Motion") and after being considered by the Court, having heard argument of counsel for the parties and otherwise being fully advised of the premises, it is hereby **ORDERED** and **ADJUDGED**:

     1. The Motion shall be special-set for a one-hour hearing on July 18, 2023 at 9:00 a.m.

     2. The Court will notice the Motion for hearing prior to July 18, 2023.

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>29th day of June, 2023</u>.

<u>COINX22049821 06-29-2023 2:35 PM</u>
Hon. Steven P. DeLuca
**COUNTY COURT JUDGE**
Electronically Signed by Steven P. DeLuca

**Copies Furnished To:**
Christopher M. Paolini , E-mail : cpaolini@carltonfields.com
Christopher M. Paolini , E-mail : atokarz@carltonfields.com
Cristina M. Pierson , E-mail : cmp@kulaw.com
Cristina M. Pierson , E-mail : johnet@kulaw.com
Daren Stabinski , E-mail : Trey@darenstabinskipa.com

Daren Stabinski , E-mail : daren@darenstabinskipa.com
Johanna W Clark , E-mail : dmontgomery@carltonfields.com
Johanna W Clark , E-mail : dmonge@carltonfields.com
Johanna W Clark , E-mail : jclark@carltonfields.com
Miguel A. Rodriguez , E-mail : atokarz@carltonfields.com
Miguel A. Rodriguez , E-mail : marodriguez@carltonfields.com

IN THE COUNTY COURT, IN AND FOR BROWARD COUNTY, FLORIDA

ASSAF SASSON,

                                                    CASE NO: COINX 22-049821 (73)

          Plaintiff(s),

                                                  JUDGE: STEVEN P. DELUCA

STATE FARM MUTUAL AUTO INS CO,

          Defendant(s).

                                  /

## NOTICE OF HEARING

TO:

        Daren Stabinski             Johanna W Clark
        1213 NE 1st Street          Carlton Fields PA
        Fort Lauderdale FL  33301    200 S Orange Ave
                                    Suite 1000
                                    Orlando FL  32801

       **YOU ARE HEREBY NOTIFIED** that the Honorable Steven P. DeLuca will conduct the hearing on *All Pending Motions* remotely at the time listed below:

                    **Tuesday 18th**    day of  **July  2023**  at **09:00 A.M.**

       Your zoom appearance is required, if you do not appear remotely for your hearing, your absence will be treated no differently than if you failed to appear for an in-person hearing.

                      **Join Judge DeLuca Zoom Meeting at**

                      **https://17thflcourts.zoom.us/j/499985495**

                      **Meeting ID: 499 985 495**

                      **Phone call information:**

                      **(888)475-4499 US Toll-free**

                      **Meeting ID: 499 985 495**

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

**Please note that COUNSEL must join by computer audi.../video so that you are easily identified**

PLEASE BE GOVERNED ACCORDINGLY

STEVEN P. DELUCA
County Commission

JUN 30 2023

TRUE COPY

DATED this __30th__ day of June, 2023 A.D.

___/s/ *Steven P. DeLuca*___
HONORABLE STEVEN P. DELUCA
COUNTY COURT JUDGE

**I HEREBY CERTIFY** that on the date shown above, copies of the foregoing were mailed to each of the above named addresses.

___/s/ *Tandakwa Walker*___
Tandakwa Walker, Judicial Assistant to
Judge Steven P. DeLuca
Twalker@17th.flcourts.org
954-831-0322

**IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. COINX-22-049821

ASSAF and ADA SASSON,
     Plaintiffs,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY
     Defendant.

_____/

<u>**MOTION TO EXTEND PRETRIAL DEADLINES**</u>

Plaintiffs, Assaf Sasson and Ada Sasson, by and through the undersigned counsel, move to extend all pending pretrial deadlines, and state in support as follows:

1.     On May 18, 2023, Plaintiffs filed a motion for leave to amend the complaint pursuant to Rule 1.190 and thereafter transfer the case to the Circuit Court pursuant to Rule 1.060(a). Because defense counsel were unavailable for a hearing on that motion until June 28, 2023, a hearing date was finally scheduled and noticed for that date.

2.     After having to wait nearly six weeks for the hearing, defense counsel raised for the first time that additional hearing time was needed for argument. To accommodate that request, the Court set a one hour hearing for July 18, 2023, however, that date is after several pending pretrial deadlines previously set by the Court prior to the filing of Plaintiffs' motion.

3.     Under the circumstances, all pending pretrial deadlines should be extended until after the Court has ruled upon the pending motion to amend and transfer. That will conserve time and resources of all parties since the pleadings may be amended and thereby transferred to the Circuit Court where a new pretrial schedule will then be addressed by the assigned Judge.

4.      This case is not set for trial and there is no prejudice by the granting of the relief sought in this motion.

WHEREFORE, Plaintiffs, Assaf Sasson and Ada Sasson, respectfully request that this Court enter an order extending all pending pretrial deadlines until after the Court rules on the pending motion to amend and transfer, and all other relief deemed appropriate.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by email this 5th day of July, 2023, to all registered participants of the Florida e-filing portal.

**DAREN STABINSKI P.A.**
100 North Federal Highway, #524
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com
Daren Stabinski, Esq.
Fla. Bar No. 002951

**KELLEY | UUSTAL PLC**
500 North Federal Highway, Suite 200
Fort Lauderdale, Florida 33301
Telephone: (954) 522-6601
Facsimile: (954) 522-6608
By: */s/ Cristina M. Pierson*
Cristina M. Pierson, Esq. (FBN 984345)
cmp@kulaw.com
johnet@kulaw.com

Attorneys for Plaintiffs

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF AND ADA SASSON,

                    Plaintiffs,

v.

CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                    Defendant.

_____/

## MOTION TO COMPEL PLAINTIFFS' COMPLIANCE WITH
## CASE MANAGEMENT ORDER

Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), hereby

notifies the Court of Plaintiffs' refusal to participate in the preparation of the Joint Stipulation in

violation of the Court's November 2, 2022 Case Management Order, as amended April 23, 2023

(the "CMO") and requests the Court compel Plaintiffs and their counsel to comply with the CMO

and work with State Farm to prepare the Joint Stipulation. The CMO requires State Farm to notify

the Court of Plaintiffs' noncompliance and advise of possible sanctions on State Farm if it files a

unilateral pretrial stipulation even if Plaintiffs are the ones who have refused to cooperate.

Accordingly, State Farm has no choice but to seek the Court's involvement in compelling Plaintiffs

to comply with the CMO and cooperate with State Farm in the preparation and filing of a joint

pretrial stipulation.

In support of this motion, State Farm states as follows:

1.       The Court's CMO provides explicit pretrial stipulation requirements:

4.   A **JOINT** PreTrial Stipulation must be filed and a copy delivered to the Court
by all counsel of record no later than 100 days from the date of this Order. THE
COURT    DOES    NOT    ACCEPT    UNILATERATERAL    PRETRIAL
STIPULATIONS. It is the responsibility of **all** parties to cooperate in good faith in
preparation of the Joint Pretrial Stipulation. FAILURE TO COMPLY WITH THIS

REQUIREMENT MAY RESULT IN SANCTIONS. Any Unilateral Pretrial Stipulations filed will be *sua sponte* STRICKEN and may result in the imposition of sanctions on the filing party. Failure to file a complete Joint Pretrial Stipulation, including witness lists, exhibit lists, jury instructions and verdict forms, will result in postponement of the trial, and/or sanctions including dismissal and/or default. If either party delays the preparation of the Joint Stipulation, a motion describing the delay must be immediately filed with the Clerk of the Courts and brought to the Court's attention prior to the deadline. The Joint Pretrial Stipulation must be a single, unified submission and must contain the following information in separately numbered paragraphs or sections…

5. Failure to file a **complete** joint pretrial joint pretrial stipulation, including jury instructions and verdict forms, will result in sanctions including dismissal and/ or default.

2.       Pursuant to the CMO, the deadline for the parties to file their Pretrial Stipulation (and submit a copy to the Court) is Monday, July 10, 2023.

3.       Accordingly, on Tuesday, July 4, 2023, State Farm's counsel sent Plaintiffs' counsel a 41-page proposed Pretrial Stipulation, which included a Statement of the Facts, Stipulated Facts, Statements of Disputed Law and Facts, State Farm's Exhibit List, State Farm's Witness List, Jury Instructions and a Verdict Form. (A copy of the undersigned's July 4, 2023 email with proposed stipulation is attached as Exhibit A.)  The undersigned asked Plaintiffs' counsel for his comments and edits and reminded him of the Monday, July 10, 2023 deadline to file the Pretrial Stipulation. *Id.*

4.       That same day, Plaintiffs' counsel advised he would review the proposed stipulation and send his edits "back before the end of the week." (See Exhibit B.)

5.       The next day, however, Plaintiffs' counsel advised, **"it doesn't make sense to waste time on this now"** and refused to participate in the drafting of the Pretrial Stipulation altogether.  (A copy of the July 5, 2023 email thread between the parties' counsel is attached as Exhibit C.) Plaintiffs' counsel explained, he and his **"co-counsel decided it makes most sense to file a motion for extension of time to comply with pre-trial deadlines until our motion to**

amend and transfer is heard.  If the case is transferred, there would be a new trial order, so it doesn't make sense to waste time on this now." *Id.*

6.     The undersigned again asked Plaintiffs' counsel to provide his clients' revisions to the proposed Pretrial Stipulation by Friday, July 7th. *Id.*  However, Plaintiffs' counsel again rebuffed all efforts to jointly prepare the stipulation and instead filed a Motion To Extend Pretrial Deadlines – which will be impossible to be heard by the Court before the July 10, 2023 deadline. Plaintiffs' counsel thereafter reiterated by email he does "**not have the time to spend on something as extensive as jury instructions right now**" and Plaintiffs "**have filed the motion for extension of time and are going with it**" instead of complying with the CMO. *Id.*

7.     Because Plaintiffs and their counsel have refused to participate in the drafting of the Pretrial Stipulation in violation of the CMO, State Farm has no choice by to file this motion to bring this issue before the Court, as the CMO explicitly requires. State Farm requests the Court enter an order requiring Plaintiffs to comply with the CMO's pretrial stipulation filing requirement. State Farm also asks for an order requiring Plaintiffs and their counsel to pay State Farm's fees and costs for the preparation of this motion.

WHEREFORE, Defendant, State Farm Mutual Automobile Insurance Company, respectfully requests the Court order Plaintiffs to cooperate with State Farm in preparing and filing a joint pretrial stipulation, order Plaintiffs and their counsel to pay State Farm's fees and costs for the preparation of this motion, and order any other relief this Court deems fair and equitable.

Dated: July 7, 2023

Respectfully submitted,

*/s/ Johanna W. Clark*
Johanna W. Clark [
Florida Bar No.  196400
CARLTON FIELDS, P.A.

200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:    (407) 849-0300
Fax:       (407) 648-9099
Email: jclark@carltonfields.com (primary)
Email: atokarz@carltonfields.com (secondary)
*Attorneys for Defendant, State Farm Mutual Automobile Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on July 7, 2023, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com

Cristina M. Pierson, Esq.
KELLEY UUSTAL PLC
500 North Federal Highway
Suite 200
Ft. Lauderdale, FL 33301
Ph: (954) 522-6601
Fax: (954) 522-6608
Email:  cmp@kulaw.com
Email:  johnet@kulaw.com

*/s/ Johanna W. Clark*
Johanna W. Clark

# EXHIBIT A

**Tokarz, Aubrey M.**

| | |
|---|---|
| **From:** | Clark, Johanna W. |
| **Sent:** | Tuesday, July 4, 2023 2:14 PM |
| **To:** | Daren Stabinski |
| **Cc:** | Tokarz, Aubrey M.; Rodriguez, Miguel A.; Clark, Johanna W. |
| **Subject:** | Sasson - Joint Pretrial Statement - draft - DUE JULY 10, 2023 |
| **Attachments:** | Joint Pretrial Stipulation - SASSON_(133379800_1) (2).DOCX; Exhibit C - Jury Instructions SASSON_(133381298_1) (2).DOC |
| | |
| **Importance:** | High |

Hi Daren,

Happy 4th of July!  Under the current CMO, our joint pretrial statement is due **<span style="color:red">Monday, July 10</span>**.

Attached is a proposed joint pretrial statement which includes exhibit and witness lists, jury instructions, and verdict form.

I know you filed a notice of unavailability, but the court-ordered deadline is Monday.  Please let me know if you have proposed edits (I may have some, too).  If we can list our exhibits together, that would be best.  You will see, I have them separated out right now.

Best regards,

Johanna



**Johanna W. Clark**
Attorney at Law

200 S. Orange Ave., Ste. 1000
Orlando, Florida 32801-3456
Direct: 407.244.8257 | Fax: 407.648.9099

jclark@carltonfields.com | www.carltonfields.com
bio | vcard | linkedin

**Carlton Fields is ISO 27001:2013 certified**

*Confidential: This e-mail contains a communication protected by the attorney-client privilege or constitutes work product. If you do not expect such a communication, please delete this message without reading it or any attachment and then notify the sender of this inadvertent delivery.*

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

             Plaintiff,

v.

CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

             Defendant.

_____/

## JOINT PRE TRIAL STIPULATION

Plaintiffs, Assaf and Ada Sasson (Plaintiffs or "the Sassons") and Defendant State Farm

Mutual Automobile Insurance Company (Defendant or "State Farm") hereby submit the following

Joint Pre-Trial Stipulation pursuant to this Court's November 2, 2022 Case Management Order,

as amended April 23, 2023.  In submitting this Joint Stipulation, neither party waives its objections

to specific claims or damages made before or during trial.  .

**A.  Statement of the Facts**

This action arises out of a claim for automobile repairs brought against State Farm by Plaintiffs.

On or about May 27, 2022, State Farm's insured, Ada Sasson, was driving her 2022 Porsche

Taycan (the "vehicle") in North Miami Beach, when she struck another vehicle.  Plaintiffs

thereafter choose Stuttgart International Auto Body Collision ("Stuttgart" or the "Shop") for

repairs. At the time of the accident, the vehicle was insured under a State Farm automobile

insurance policy. State Farm contends it paid for repairs to the vehicle pursuant to the terms of

the insurance policy, but Plaintiffs contend State Farm owes the full amount billed by Stuttgart

because Stuttgart is a collision repair shop that specializes in repairing Porsche vehicles.

1

**B.  Stipulated Facts**

1.  On May 27, 2022, Plaintiffs' vehicle was damaged in a motor vehicle accident.

2.  On the date of the accident, the vehicle was insured under State Farm policy number J534-643-59A.

3.  Plaintiffs submitted a claim to State Farm for the property damage to the vehicle.

4.  Plaintiffs chose to have the vehicle repaired by Stuttgart, which is an automobile repair shop in Broward County.

5.  On June 2, 2022, Stuttgart sent State Farm a copy of its repair estimate totaling $8,360.87.

6.  On June 6, 2022, State Farm conducted an inspection of the vehicle and prepared an estimate totaling $5,379.98.

7.   On July 1, 2022, State Farm inspected the vehicle again and prepared State Farm's Supplement 1, which totaled $6,267.03.

8.  That same day, State Farm issued a payment to Stuttgart in the amount of $5,767.03 based on State Farm's Supplement 1, less the $500 deductible.

9.  Both State Farm's estimates and Plaintiff's estimates were prepared using the CCC ONE estimating software.

10. On August 16, 2022, Plaintiffs filed suit against State Farm seeking recovery of the balance remaining on Stuttgart's $8,360.87 estimate – which is $2,593.84, plus attorneys' fees and costs.

**C.  Statement of Disputed Law & Fact**

Did State Farm breach the terms of the insurance policy? If yes, what are Plaintiff's damages?  State Farm also maintains that it overpaid a number of repair line items and is,

therefore, entitled to a set-off against any damages claimed by the Plaintiff.  If State Farm

overpaid for certain repairs, what is the amount of those overpayments?

**D.  Exhibit Lists\***

**Plaintiff's exhibit list**: *insert*

**Defendant's exhibit list**:

1.  State Farm policy number J534-643-59A

2.  State Farm's Estimate dated June 6, 2022

3.  State Farm's Supplement 1 dated July 1, 2022

4.  Stuttgart's Estimate dated June 2, 2022

5.  Stuttgart's Estimate dated June 13, 2022

6.  Email thread between State Farm and Stuttgart between June 2-6, 2022

7.  State Farm letter to Plaintiffs dated June 7, 2022

8.  State Farm's payment to Stuttgart dated July 1, 2022 ($5,767.03)

9.  Invoices/receipts from Copans Motors, Inc. d/b/a/ Champion

10. Invoice/receipt for the Sasson vehicle repair from Stuttgart

11. Remittance Detail for the Sasson vehicle repair from Stuttgart

12. The Sassons' credit card receipts for payments made to Stuttgart

13. Photographs of Vehicle

14. State Farm's Electronic Communications with Plaintiff

15. CCC P-Pages

16. Any exhibit listed by any party subject to all evidentiary objections

17. Depositions taken in this case and any exhibits attached thereto

18. Answers to Interrogatories and any documents attached thereto

133379800.1

19. Documents produced in response to any Request to Produce

20. All pleadings in this case

21. Defendant reserves the right to add additional exhibits subject to notification to all parties and allowing examination of same.

*Attached as Exhibit A is a schedule of all exhibits numbered with evidentiary objections.

**E.  Witness List***

*Attached as Exhibit B is a list of witnesses (with addresses) in alphabetical order.

**F.  JURY INSTRUCTIONS**

*Attached as Exhibit C are proposed jury instructions.

**G.  VERDICT FORM**

*Attached as Exhibit D is a proposed verdict form.


DATED this July 10, 2023

_____
Daren Stabinski
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email:  daren@darenstabinskipa.com
*Attorney for Plaintiffs*

_____
Johanna W. Clark
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Telephone:  (407) 849-0300
Facsimile:  (407) 648-9099
Email: jclark@carltonfields.com *(primary)*
Email: atokarz@carltonfields.com *(secondary)*
*Attorneys for Defendant*

133379800.1

**Exhibit A** – **Exhibit List**

| No. | Exhibit | Evidentiary Objection |
|---|---|---|
| 1. | State Farm policy number J534-643-59A | |
| 2. | State Farm's Estimate dated June 6, 2022 | |
| 3. | State Farm's Supplement 1 dated July 1, 2022 | |
| 4. | Stuttgart's Estimate dated June 2, 2022 | |
| 5. | Stuttgart's Estimate dated June 13, 2022 | |
| 6. | Email thread between State Farm and Stuttgart between June 2-6, 2022 | |
| 7. | State Farm letter to Plaintiffs dated June 7, 2022 | |
| 8. | State Farm's payment to Stuttgart dated July 1, 2022 ($5,767.03) | |
| 9. | Invoice/receipt for the Sasson vehicle repair from Stuttgart | |
| 10. | Remittance Detail for the Sasson vehicle repair from Stuttgart | |
| 11. | The Sassons' credit card receipts for payments made to Stuttgart | |
| 12. | Photographs of Vehicle | |
| 13. | Invoices and Receipts from Copans Motors, Inc. d/b/a Champion | |
| 14. | State Farm's Electronic Communications with Plaintiff | |
| 15. | CCC P-Pages | |

133379800.1

**Exhibit B – Witness List**

**Mohan Bacham**
c/o Stuttgart International
1055 NW 51st Court
Fort Lauderdale, FL 33309

**Copans Motors, Inc. Records Custodian**
500 West Copans Road
Pompano Beach, Florida 33064

**Steven Ellenthal (State Farm Expert)**
6264 N.W.125 Ave.
Coral Springs, FL 33076

**John Henriquez**
c/o Counsel Johanna Clark
200 South Orange Ave.  Suite 1000
Orlando, FL 32801

**Shawn McKenna**
c/o Counsel Johanna Clark
200 South Orange Ave.  Suite 1000
Orlando, FL 32801

**Noelle Ortiz**
c/o Stuttgart International
1055 NW 51st Court
Fort Lauderdale, FL 33309

**Daniel Pagan**
c/o Stuttgart International
1055 NW 51st Court
Fort Lauderdale, FL 33309

**Dennis Palencia**
c/o Stuttgart International
1055 NW 51st Court
Fort Lauderdale, FL 33309

**Ada Sasson**
c/o Counsel Daren Stabinski
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301

**Assaf Sasson**

133379800.1

100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301



133379800.1

**<u>Exhibit C</u> – Jury Instructions** *[separate doc due to size]*



133379800.1

**Exhibit D – Verdict Form**

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

CASE NO: COINX-22-049821

       Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant.

_____/

## **JURY VERDICT**

1.    a.    Did State Farm breach the terms of the insurance policy?

       b.    If your answer to Question 1. a. is YES, what is the amount of damage caused by the breach?

$_____

SO SAY WE ALL, this _____ day of _____, 2023

_____
FOREPERSON

9

133379800.1

## <u>Exhibit C</u> - Jury Instructions

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF SASSON,

CASE NO: COINX-22-049821

       Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant.

_____/

## <u>JOINT PRE TRIAL STIPULATION</u>

Plaintiffs, Assaf and Ada Sasson (Plaintiffs or the "Sassons") and Defendant State Farm

Mutual Automobile Insurance Company (Defendant or "State Farm") hereby submit the

following Proposed Jury Instructions and Verdict Form pursuant to this Court's November 2,

2022 Case Management Order, as amended April 23, 2023.  In doing so, the parties do not now

or hereafter waive their previously raised objections.   The parties submit each of these

instructions as a separate request and request a separate ruling for each instruction.  State Farm

may hereafter submit additional or alternative materials based on the Court's rulings,

State Farm's requests, the submission of evidence, the progress of the trial, or other events.


***[THIS SPACE HAS BEEN INTENTIONALLY LEFT BLANK]***

## REQUESTED PRELIMINARY INSTRUCTION NO. 1

### (Description of the Case)

Welcome. The clerk will now administer your oath.

Now that you have been sworn, I'd like to give you an idea about what we are here to do.

This is a civil trial. A civil trial is different from a criminal case, where a defendant is charged by the state prosecutor with committing a crime. The subject of a civil trial is a disagreement between people or companies, where the claims of one or more of these parties have been brought to court to be resolved. It is called "a trial of a lawsuit."

This is a case about a claim for automobile repair expenses brought against State Farm by Assaf and Ada Sasson.

The principal witnesses who will testify in this case are Assaf and Ada Sasson, Daniel Pagan, John Henriquez and Steven Ellenthal.

**Source:**      Fla. Std. Jury Instr. (Civ.) 201.1

## REQUESTED PRELIMINARY INSTRUCTION NO. 2
### (Introduction of Participants and Their Roles)

I am the Judge. You may hear people occasionally refer to me as "The Court." That is the formal name for my role. My job is to maintain order and decide how to apply the rules of the law to the trial. I will also explain various rules to you that you will need to know in order to do your job as the jury. It is my job to remain neutral on the issues of this lawsuit.

A party who files a lawsuit is called the Plaintiff. A party that is sued is called the Defendant.

The attorneys have the job of representing their clients. That means they speak for their client here at the trial. They have taken oaths as attorneys to do their best and to follow the rules for their profession.

The attorney on this side of the courtroom, Daren Stabinski, represents the Sassons and is the person who filed the lawsuit here at the courthouse. His job is to present his clients' side of things to you.  He and his clients will be referred to most of the time as "the plaintiffs." Mr. Stabinski will you please introduce who is sitting at the table with you?

The attorney on this side of the courtroom, Johanna Clark, represents State Farm, the one who has been sued. Her job is to present her client's side of things to you. She and her client will usually be referred to here as "the defendant." Ms. Clark, will you please introduce who is sitting at the table with you?

This person sitting in front of me,  (name) , is the court clerk. The court clerk is here to assist me with some of the mechanics of the trial process, including the numbering and collection of the exhibits that are introduced in the course of the trial.

The person sitting at the stenographic machine,  (name) , is the court reporter. The court reporter's job is to keep an accurate legal record of everything we say and do during this trial.

The person over there, <u> (name) </u>, is the bailiff. The bailiff's job is to maintain order and security in the courtroom. The bailiff is also my representative to the jury. Anything you need or any problems that come up for you during the course of the trial should be brought to the bailiff. However, the bailiff cannot answer any of your questions about the case. Only I can do that.

Last, but not least, is the jury, which we will begin to select in a few moments from among all of you. The jury's job will be to decide what the facts are and what the facts mean. Jurors should be as neutral as possible at this point and have no fixed opinion about the lawsuit.

In order to have a fair and lawful trial, there are rules that all jurors must follow. A basic rule is that jurors must decide the case only on the evidence presented in the courtroom. You must not communicate with anyone, including friends and family members, about this case, the people and places involved, or your jury service. You must not disclose your thoughts about this case or ask for advice on how to decide this case.

I want to stress that this rule means you must not use electronic devices or computers to communicate about this case, including tweeting, texting, blogging, e-mailing, posting information on a website or chat room, or any other means at all. Do not send or accept any messages to or from anyone about this case or your jury service.

You must not do any research or look up words, names, or anything else that may have anything to do with this case. This includes reading newspapers, watching television or using a computer, cell phone, the Internet, any electronic device, or any other means at all, to get information related to this case or the people and places involved in this case. This applies whether you are in the courthouse, at home, or anywhere else.

Many of you may have cell phones, tablets, laptops or other electronic devices with you here in the courtroom.

***<u>Alternative A for Judge:</u>*** [All cell phones, computers, tablets or other types of electronic devices must be turned off while you are in the courtroom. Turned off means that the phone or

other electronic device is actually off and not in a silent or vibrating mode.  You may use these devices during recesses, but even then you may not use your cell phone or electronic device to find out any information about the case or communicate with anyone about the case or the people involved in the case.  Do not take photographs, video recordings or audio recordings of the proceedings or of your fellow jurors.  After each recess, please double check to make sure your cell phone or electronic device is turned off.  At the end of the case, while you are deliberating, you must not communicate with anyone outside the jury room.  You cannot have in the jury room any cell phones, computers, or other electronic devices.  If someone needs to contact you in an emergency, the court can receive messages and deliver them to you without delay.  A contact phone number will be provided to you.]

*__Alternative B for Judge:__* [You cannot have any cell phones, tablets, laptops, or other electronic devices in the courtroom.  You may use these devices during recesses, but even then you may not use your cell phone or electronic device to find out any information about the case or communicate with anyone about the case or the people involved in the case.  Do not take photographs, video recordings or audio recordings of the proceedings or your fellow jurors.  At the end of the case, while you are deliberating, you must not communicate with anyone outside the jury room.  If someone needs to contact you in an emergency, the court can receive messages and deliver them to you without delay.  A contact phone number will be provided to you.]

What are the reasons for these rules?  These rules are imposed because jurors must decide the case without distraction and only on the evidence presented in the courtroom.  If you investigate, research, or make inquiries on your own outside of the courtroom, the trial judge has no way to make sure that the information you obtain is proper for the case.  The parties likewise have no opportunity to dispute or challenge the accuracy of what you find. That is contrary to our judicial system, which assures every party the right to ask questions about and challenge the evidence being considered against it and to present argument with respect to that evidence.  Any

independent investigation by a juror unfairly and improperly prevents the parties from having that opportunity our judicial system promises.

Any juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. A mistrial is a tremendous expense and inconvenience to the parties, the court, and the taxpayers.  If you violate these rules, you may be held in contempt of court, and face sanctions, such as serving time in jail, paying a fine or both.

All of your communications with courtroom personnel, or me, will be part of the record of these proceedings.  That means those communications shall either be made in open court with the court reporter present or, if they are in writing, the writing will be filed with the court clerk.  I have instructed the courtroom personnel that any communications you have with them outside of my presence must be reported to me, and I will tell the parties and their attorneys about any communication from you that I believe may be of interest to the parties and their attorneys.

However, you may communicate directly with courtroom personnel about matters concerning your comfort and safety, such as juror parking, location of break areas, how and when to assemble for duty, dress, and what personal items can be brought into the courthouse or jury room.

If you become aware of any violation of these instructions or any other instruction I give in this case, you must tell me by giving a note to the bailiff.

**Source**:        Fla. Std. Jury Instr. (Civ.) 201.2

## REQUESTED PRELIMINARY INSTRUCTION NO. 3
### (Explanation of the Voir Dire Process)

The last thing I want to do, before we begin to select the jury, is to explain to you how the selection process works.

This is the part of the case where the parties and their lawyers have the opportunity to get to know a little bit about you, in order to help them come to their own conclusions about your ability to be fair and impartial, so they can decide who they think should be the jurors in this case.

How we go about that is as follows: First, I'll ask some general questions of you. Then, each of the lawyers will have more specific questions that they will ask of you. After they have asked all of their questions, I will meet with them and they will tell me their choices for jurors. Each side can ask that I exclude a person from serving on a jury if they can give me a reason to believe that he or she might be unable to be fair and impartial. That is what is called a challenge for cause. The lawyers also have a certain number of what are called peremptory challenges, by which they may exclude a person from the jury without giving a reason. By this process of elimination, the remaining persons are selected as the jury. It may take more than one conference among the parties, their attorneys, and me before the final selections are made.

The questions that you will be asked during this process are not intended to embarrass you or unnecessarily pry into your personal affairs, but it is important that the parties and their attorneys know enough about you to make this important decision. If a question is asked that you would prefer not to answer in front of the whole courtroom, just let me know and you can come up here and give your answer just in front of the attorneys and me. If you have a question of either the attorneys or me, don't hesitate to let me know.

There are no right or wrong answers to the questions that will be asked of you. The only thing that I ask is that you answer the questions as frankly and as honestly and as completely as

you can. You have taken an oath to answer all questions truthfully and completely and you must do so. Remaining silent when you have information you should disclose is a violation of that oath as well. If a juror violates this oath, it not only may result in having to try the case all over again but also can result in civil and criminal penalties against a juror personally. So, again, it is very important that you be as honest and complete with your answers as you possibly can. If you don't understand the question, please raise your hand and ask for an explanation or clarification.

In sum, this is a process to assist the parties and their attorneys to select a fair and impartial jury. All of the questions they ask you are for this purpose. If, for any reason, you do not think you can be a fair and impartial juror, you must tell us.

**Source**:         Fla. Std. Jury Instr. (Civ.) 201.3

## REQUESTED PRELIMINARY INSTRUCTION NO. 4
### (Introduction After Jury Selection)

You have now taken an oath to serve as jurors in this trial. Before we begin, I am going to tell you about the rules of law that apply to this case and let you know what you can expect as the trial proceeds.

It is my intention to give you most of the rules of law but it might be that I will not know for sure all of the law that will apply in this case until all of the evidence is presented. However, I can anticipate most of the law and give it to you at the beginning of the trial so that you will better understand what to be looking for while the evidence is presented. If I later decide that different or additional law applies to the case, I will tell you. In any event, at the end of the evidence I will give you the final instructions on which you must base your verdict. At that time, you will have a complete written set of the instructions so you do not have to memorize what I am about to tell you.

**Source**:        Fla. Std. Jury Instr. (Civ.) 202.1

133381298.1

# INSERT ANY SUBSTANTIVE LAW INSTRUCTIONS

133381298.1

### REQUESTED PRELIMINARY INSTRUCTION NO. 5
**(Explanation of the Trial Procedure)**

Now that you have heard the law, I want to let you know what you can expect as the trial proceeds.

In a few moments, the attorneys will each have a chance to make what are called opening statements. In an opening statement, an attorney is allowed to give you his or her views about what the evidence will be in the trial and what you are likely to see and hear in the testimony.

After the attorneys' opening statements the plaintiffs will bring their witnesses and evidence to you.

Evidence is the information that the law allows you to see or hear in deciding this case. Evidence includes the testimony of the witnesses, documents, and anything else that I instruct you to consider.

A witness is a person who takes an oath to tell the truth and then answers attorneys' questions for the jury. The answering of attorneys' questions by witnesses is called "giving testimony." Testimony means statements that are made when someone has sworn an oath to tell the truth.

The plaintiff's lawyer will normally ask a witness the questions first.  That is called direct examination. Then the defense lawyer may ask the same witness additional questions about whatever the witness has testified to. That is called cross-examination. Certain documents or other evidence may also be shown to you during direct or cross-examination. After the plaintiff's witnesses have testified, the defendant will have the opportunity to put witnesses on the stand and go through the same process. Then the plaintiff's lawyer gets to do cross-examination. The process is designed to be fair to both sides.

It is important that you remember that testimony comes from witnesses. The attorneys do not give testimony and they are not themselves witnesses.

133381298.1

Sometimes the attorneys will disagree about the rules for trial procedure when a question is asked of a witness. When that happens, one of the lawyers may make what is called an "objection." The rules for a trial can be complicated, and there are many reasons for attorneys to object. You should simply wait for me to decide how to proceed. If I say that an objection is "sustained," that means you should disregard the question and the witness may not answer the question. If I say that the objection is "overruled," that means the witness may answer the question.

When there is an objection and I make a decision, you must not assume from that decision that I have any particular opinion other than that the rules for conducting a trial are being correctly followed. If I say a question may not be asked or answered, you must not try to guess what the answer would have been. That is against the rules, too.

Sometimes I will need to speak to the attorneys about legal elements of the case that are not appropriate for the jury to hear. The attorneys and I will try to have as few of these conferences as possible while you are giving us your valuable time in the courtroom. But, if we do have to have such a conference during testimony, we will try to hold the conference at the side of my desk so that we do not have to take a break and ask you to leave the courtroom.

Breaks in an ongoing trial are usually called "recesses." During a recess you still have your duties as a juror and must follow the rules, even while having coffee, at lunch, or at home.

After all the evidence has been presented to you, I will instruct you in the law that you must follow. It is important that you remember these instructions to assist you in evaluating the final attorney presentations, which come next, and, later, during your deliberations, to help you correctly sort through the evidence to reach your decision.

The attorneys will then have the opportunity to make their final presentations to you, which are called closing arguments.

After you have heard the closing arguments, I will instruct you further in the law as well as explain to you the procedures you must follow to decide the case.

After you hear the final jury instructions, you will go to the jury room and discuss and decide the questions I have put on your verdict form. You will have a copy of the jury instructions to use during your discussions. The discussions you have and the decisions you make are usually called "jury deliberations." Your deliberations are absolutely private and neither I nor anyone else will be with you in the jury room.

When you have finished answering the questions, you will give the verdict form to the bailiff, and we will all return to the courtroom where your verdict will be read. When that is completed, you will be released from your assignment as a juror.

Finally, before we begin the trial, I want to give you just a brief explanation of rules you must follow as the case proceeds.

You must pay close attention to the testimony and other evidence as it comes into the trial. However, you must avoid forming any final opinion or telling anyone else your views on the case until you begin your deliberations. This rule requires you to keep an open mind until you have heard all of the evidence and is designed to prevent you from influencing how your fellow jurors think until they have heard all of the evidence and had an opportunity to form their own opinions. The time and place for coming to your final opinions and speaking about them with your fellow jurors is during deliberations in the jury room, after all of the evidence has been presented, closing arguments have been made, and I have instructed you on the law. It is important that you hear all of the facts and that you hear the law and how to apply it before you start deciding anything.

It is the things you hear and see in this courtroom that matter in this trial. The law tells us that a juror can consider only the testimony and other evidence that all the other jurors have also heard and seen in the presence of the judge and the lawyers. Doing anything else is wrong and is

against the law. That means that you must not do any work or investigation of your own about the case. You must not obtain on your own any information about the case or about anyone involved in the case, from any source whatsoever. This includes reading newspapers, watching television or using a computer, cell phone, the Internet, any electronic device, or any other means at all, to get information related to this case or the people and places involved in this case. This applies whether you are in the courthouse, at home, or anywhere else. You must not visit places mentioned in the trial or use the internet to look at maps or pictures to see any place discussed during trial.

Do not provide any information about this case to anyone, including friends or family members. Do not let anyone, including the closest family members, make comments to you or ask questions about the trial. Jurors must not have discussions of any sort with friends or family members about the case or the people and places involved. So, do not let even the closest family members make comments to you or ask questions about the trial. In this age of electronic communication, I want to stress again that just as you must not talk about this case face-to-face, you must not talk about this case by using an electronic device. You must not use phones, computers or other electronic devices to communicate. Do not send or accept any messages related to this case or your jury service. Do not discuss this case or ask for advice by any means at all, including posting information on an Internet website, chat room or blog.

When we are in a recess, do not discuss anything about the trial or the case with each other or with anyone else. If attorneys approach you, don't speak with them. The law says they are to avoid contact with you. If an attorney will not look at you or speak to you, do not be offended or form a conclusion about that behavior. The attorney is not supposed to interact with jurors outside of the courtroom and is only following the rules. The attorney is not being impolite. If an attorney or anyone else does try to speak with you or says something about the case in your presence, please inform the bailiff immediately.

Only you get to deliberate and answer the verdict questions at the end of the trial. I will not intrude into your deliberations at all. I am required to be neutral. You should not assume that I prefer one decision over another. You should not try to guess what my opinion is about any part of the case. It would be wrong for you to conclude that anything I say or do means that I am for one side or another in the trial. Discussing and deciding the facts is your job alone.

**Source**:        Fla. Std. Jury Instr. (Civ.) 202.2

## REQUESTED PRELIMINARY INSTRUCTION NO. 6
### (Note-Taking By Jurors)

If you would like to take notes during the trial, you may do so. On the other hand, of course, you are not required to take notes if you do not want to. That will be left up to you individually.

You will be provided with a note pad and a pen for use if you wish to take notes. Any notes that you take will be for your personal use. However, you should not take them with you from the courtroom. During recesses, the bailiff will take possession of your notes and will return them to you when we reconvene. After you have completed your deliberations, the bailiff will deliver your notes to me. They will be destroyed. No one will ever read your notes.

If you take notes, do not get so involved in note-taking that you become distracted from the proceedings. Your notes should be used only as aids to your memory.

Whether or not you take notes, you should rely on your memory of the evidence and you should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than each juror's memory of the evidence.


**Source**:        Fla. Std. Jury Instr. (Civ.) 202.3

## REQUESTED PRELIMINARY INSTRUCTION NO. 7
### (Juror Questions)

During the trial, you may have a question you think should be asked of a witness. If so, there is a procedure by which you may request that I ask the witness a question. After all the attorneys have completed their questioning of the witness, you should raise your hand if you have a question. I will then give you sufficient time to write the question on a piece of paper, fold it, and give it to the bailiff, who will pass it to me. You must not show your question to anyone or discuss it with anyone.

I will then review the question with the attorneys. Under our law, only certain evidence may be considered by a jury in determining a verdict. You are bound by the same rules of evidence that control the attorneys' questions. If I decide that the question may not be asked under our rules of evidence, I will tell you. Otherwise, I will direct the question to the witness. The attorneys may then ask follow-up questions if they wish. If there are additional questions from jurors, we will follow the same procedure again.

By providing this procedure, I do not mean to suggest that you must or should submit written questions for witnesses. In most cases, the lawyers will have asked the necessary questions.

**Source:**        Fla. Std. Jury Instr. (Civ.) 202.4

133381298.1

# FINAL INSTRUCTIONS

133381298.1

## REQUESTED FINAL INSTRUCTION NO. 1
### (Introduction to Final Instructions)

Members of the jury, you have now heard and received all of the evidence in this case. I am now going to tell you about the rules of law that you must use in reaching your verdict. When I finish telling you about the rules of law, the attorneys will present their final arguments and you will then retire to decide your verdict.

**Source:**      Fla. Std. Jury Instr. (Civ.) 413.1

GIVEN          _____

DENIED          _____

## REQUESTED FINAL INSTRUCTION NO. 2
### (Insurance Policy Is Contract)

The State Farm insurance policy with the Sassons is a contract between State Farm and the Sassons.

**Source**:

*State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Fla., Inc.*, 678 So. 2d 397, 400 (Fla. 4th DCA 1996), on reh'g (Aug. 20, 1996), approved, 711 So. 2d 1135 (Fla. 1998) ("An insurance policy is a contract between the insured and the carrier.").

GIVEN          _____

DENIED          _____

133381298.1

## REQUESTED FINAL INSTRUCTION NO. 3
### (Breach of Contract—Introduction)

The Sassons claim that State Farm breached the contract by failing to pay the amount of the Stuttgart estimate and that the breach resulted in damages to the Sassons.

State Farm denies that it breached the contract and claims that it overpaid Stuttgart for the repairs.

**Source:**       Fla. Std. Jury Instr. (Civ.) 416.1


GIVEN          _____

DENIED          _____

133381298.1

### REQUESTED FINAL INSTRUCTION NO. 4
**(Breach of Contract—Introduction)**

Under the contract, both State Farm and the Sassons have obligations.

State Farm is obligated to pay to repair or replace the Sassons' vehicle, and State Farm has three options regarding the amount to be paid. State Farm chose the third option, which requires State Farm to pay based upon a written estimate.

The Sassons are obligated to cooperate with State Farm and, when asked, to assist State Farm in securing or giving evidence. The Sassons are also obligated, except at their own cost, not to make any payment or assume any obligation to others.

The Sassons are not entitled to payment for repairs that Stuttgart did not include on its final estimate.

**Source:**       Pleadings, Policy

GIVEN          _____

DENIED         _____

133381298.1

## <u>REQUESTED FINAL INSTRUCTION NO. 5</u>
### (Breach of Contract—Essential Factual Elements)

To recover damages from State Farm for breach of contract, the Sassons must prove all of the following:

1.      The Sassons' did all, or substantially all, of the essential things which the contract required her to do;

2.      State Farm failed to do something essential which the contract required it to do; and

3.      The Sassons were harmed by that failure.

**<u>Source</u>:**      Fla. Std. Jury Instr. 416.4

GIVEN          _____

DENIED         _____

## REQUESTED FINAL INSTRUCTION NO. 6
### (Breach of Contract—Essential Factual Elements)

For State Farm to have failed to do something essential which the contract required it to do, State Farm must have failed to do so on or before the date the Sassons filed their complaint in this case, August 16, 2022.

**Source:**     Pleadings

GIVEN          _____

DENIED         _____

133381298.1

## REQUESTED FINAL INSTRUCTION NO. 7
### (Breach of Contract—Damages)

If you find for State Farm, you will not consider the matter of damages.  But, if you find

for the Sassons, you should award them an amount of money that the greater weight of the

evidence shows will fairly and adequately compensate the Sassons for their damages. You shall

consider the following type(s) of damages:

Compensatory Damages.

Compensatory damages is that amount of money which will put the Sassons in as good a

position as they would have been if State Farm had not breached the contract and which naturally

resulted from the breach.

**Source:**       Fla. Std. Jury Instr. (Civ.) 504.1, 504.2

GIVEN          _____

DENIED         _____

133381298.1

## REQUESTED FINAL INSTRUCTION NO. 8
### (Breach of Contract—Damages)

The court now instructs you that pursuant to the contract of insurance, the deductible amount under the contract is $500.  This means, the Sassons owe Stuttgart $500 of the vehicle repair charges.  The Sassons have not paid Stuttgart the $500 deductible.  Accordingly, State Farm did not breach the contract by refusing to pay $500 in repair charges and the Sassons may not collect $500 from State Farm.

**Source:**      Policy pg. 32 and Declarations Page

GIVEN          _____

DENIED          _____

133381298.1

### REQUESTED FINAL INSTRUCTION NO. 9
**(Weighing The Evidence)**

In deciding this case, it is your duty as jurors to decide the issues, and only those issues, that I submit for your determination and to answer certain questions I ask you to answer on a special form, called a verdict form.  You must come to an agreement about what your answers will be. Your agreed-upon answers to my questions are called your jury verdict.

The evidence in this case consists of the sworn testimony of the witnesses, all exhibits received in evidence, all facts that were admitted or agreed to by the parties, and any fact of which the court has taken judicial notice.

In reaching your verdict, you must think about and weigh the testimony and any documents, photographs, or other material that has been received in evidence. You may also consider any facts that were admitted or agreed to by the lawyers. Your job is to determine what the facts are. You may use reason and common sense to reach conclusions. You may draw reasonable inferences from the evidence. But you should not guess about things that were not covered here. And, you must always apply the law as I have explained it to you.


**Source:**         Fla. Std. Jury Instr. (Civ.) 601.1

## REQUESTED FINAL INSTRUCTION NO. 10
### (Believability of Witnesses)

Let me speak briefly about witnesses. In evaluating the believability of any witness and the weight you will give the testimony of any witness, you may properly consider the demeanor of the witness while testifying; the frankness or lack of frankness of the witness; the intelligence of the witness; any interest the witness may have in the outcome of the case; the means and opportunity the witness had to know the facts about which the witness testified; the ability of the witness to remember the matters about which the witness testified; and the reasonableness of the testimony of the witness, considered in the light of all the evidence in the case and in the light of your own experience and common sense.

You will hear opinion testimony on certain technical subjects from persons referred to as expert witnesses. Some of the testimony before you will be in the form of opinions about certain technical subjects.

You may accept such opinion testimony, reject it, or give it the weight you think it deserves, considering the knowledge, skill, experience, training, or education of the witness, the reasons given by the witness for the opinion expressed, and all the other evidence in the case.

**Source**:        Fla. Std. Jury Instr. (Civ.) 601.2

## REQUESTED FINAL INSTRUCTION NO. 11
### (Concluding Instruction—Before Final Argument)

That is the law you must follow in deciding this case. The attorneys for the parties will now present their final arguments. When they are through, I will have a few final instructions about your deliberations.

**Source:**        Fla. Std. Jury Instr. (Civ.) 601.5

## REQUESTED JURY INSTRUCTION NO. 12
### (Closing Instructions)

Members of the jury, you have now heard all the evidence, my instructions on the law that you must apply in reaching your verdict and the closing arguments of the attorneys. You will shortly retire to the jury room to decide this case. Before you do so, I have a few last instructions for you.

During deliberations, jurors must communicate about the case only with one another and only when all jurors are present in the jury room. You will have in the jury room all of the evidence that was received during the trial. In reaching your decision, do not do any research on your own or as a group. Do not use dictionaries, the Internet, or any other reference materials. Do not investigate the case or conduct any experiments. Do not visit or view the scene of any event involved in this case or look at maps or pictures on the Internet. If you happen to pass by the scene, do not stop or investigate. All jurors must see or hear the same evidence at the same time. Do not read, listen to, or watch any news accounts of this trial.

You are not to communicate with any person outside the jury about this case. Until you have reached a verdict, you must not talk about this case in person or through the telephone, writing, or electronic communication, such as a blog, twitter, e-mail, text message, or any other means. Do not contact anyone to assist you, such as a family accountant, doctor, or lawyer. These communications rules apply until I discharge you at the end of the case.

If you become aware of any violation of these instructions or any other instruction I have given in this case, you must tell me by giving a note to the bailiff.

Any notes you have taken during the trial may be taken to the jury room for use during your discussions. Your notes are simply an aid to your own memory, and neither your notes nor those of any other juror are binding or conclusive. Your notes are not a substitute for your own

133381298.1

memory or that of other jurors. Instead, your verdict must result from the collective memory and judgment of all jurors based on the evidence and testimony presented during the trial.

At the conclusion of the trial, the bailiff will collect all of your notes and immediately destroy them. No one will ever read your notes.

In reaching your verdict, do not let bias, sympathy, prejudice, public opinion, or any other sentiment for or against any party to influence your decision. Your verdict must be based on the evidence that has been received and the law on which I have instructed you.

Reaching a verdict is exclusively your job. I cannot participate in that decision in any way and you should not guess what I think your verdict should be from something I may have said or done. You should not think that I prefer one verdict over another. Therefore, in reaching your verdict, you should not consider anything that I have said or done, except for my specific instructions to you.

Pay careful attention to all the instructions that I gave you, for that is the law that you must follow. You will have a copy of my instructions with you when you go to the jury room to deliberate. All the instructions are important, and you must consider all of them together. There are no other laws that apply to this case, and even if you do not agree with these laws, you must use them in reaching your decision in this case.

When you go to the jury room, the first thing you should do is choose a presiding juror to act as a foreperson during your deliberations. The foreperson should see to it that your discussions are orderly and that everyone has a fair chance to be heard.

It is your duty to talk with one another in the jury room and to consider the views of all the jurors. Each of you must decide the case for yourself, but only after you have considered the evidence with the other members of the jury. Feel free to change your mind if you are convinced that your position should be different. You should all try to agree. But do not give up your honest

beliefs just because the others think differently. Keep an open mind so that you and your fellow jurors can easily share ideas about the case.

I will give you a verdict form with questions you must answer. I have already instructed you on the law that you are to use in answering these questions. You must follow my instructions and the form carefully. You must consider each question separately. Please answer the questions in the order they appear. After you answer a question, the form tells you what to do next. I will now read the form to you:

(read form of verdict)

Your verdict must be unanimous, that is, your verdict must be agreed to by each of you. When you have agreed on your verdict, your foreperson must write the date and sign it at the bottom and return the verdict to the bailiff.

If any of you need to communicate with me for any reason, write me a note and give it to the bailiff. In your note, do not disclose any vote or split or the reason for the communication.

You may now retire to decide your verdict.

**Source**:        Fla. Std. Jury Instr. (Civ.) 700

# EXHIBIT B

**Tokarz, Aubrey M.**

---

| | |
|---|---|
| **From:** | Daren Stabinski <daren@darenstabinskipa.com> |
| **Sent:** | Tuesday, July 4, 2023 4:59 PM |
| **To:** | Clark, Johanna W. |
| **Cc:** | Tokarz, Aubrey M.; Rodriguez, Miguel A. |
| **Subject:** | Re: Sasson - Joint Pretrial Statement - draft - DUE JULY 10, 2023 |

Happy 4th.  I'm flying out of town tomorrow for a week.  I'll take a look and send you something back before the end of the week.

Daren

Sent from my iPhone


On Jul 4, 2023, at 2:14 PM, Clark, Johanna W. <jclark@carltonfields.com> wrote:

Hi Daren,
Happy 4th of July!  Under the current CMO, our joint pretrial statement is due **Monday, July 10**.
Attached is a proposed joint pretrial statement which includes exhibit and witness lists, jury instructions, and verdict form.
I know you filed a notice of unavailability, but the court-ordered deadline is Monday.  Please let me know if you have proposed edits (I may have some, too).  If we can list our exhibits together, that would be best.  You will see, I have them separated out right now.
Best regards,
Johanna

<image001.png>


**Johanna W. Clark**
Attorney at Law

200 S. Orange Ave., Ste. 1000
Orlando, Florida 32801-3456
Direct: 407.244.8257 | Fax: 407.648.9099

jclark@carltonfields.com | www.carltonfields.com
bio | vcard | linkedin

**Carlton Fields is ISO 27001:2013 certified**

*Confidential: This e-mail contains a communication protected by the attorney-client privilege or constitutes work product. If you do not expect such a communication, please delete this message without reading it or any attachment and then notify the sender of this inadvertent delivery.*

<Joint Pretrial Stipulation - SASSON_(133379800_1) (2).DOCX>
<Exhibit C - Jury Instructions SASSON_(133381298_1) (2).DOC>

# EXHIBIT C

**Tokarz, Aubrey M.**

| | |
|---|---|
| **From:** | Daren Stabinski <daren@darenstabinskipa.com> |
| **Sent:** | Wednesday, July 5, 2023 6:49 PM |
| **To:** | Clark, Johanna W. |
| **Cc:** | Tokarz, Aubrey M.; Rodriguez, Miguel A.; Cristina M. Pierson; Johnet Grimm |
| **Subject:** | Re: Sasson - Joint Pretrial Statement - draft - DUE JULY 10, 2023 |

Johanna,

 I do not agree that there is no harm in preparing the stip now.  First, I am on vacation and I do not have the time to spend on something as extensive as jury instructions right now.  Second, there is a likelihood that the Court will allow our amendment and the circuit court judge will have his or her own trial order, so it would be a waste of time and money.   Third, if the judge allows the amendment we can always work on this and get it filed by whatever time the judge gives us to file it, with no prejudice to anyone.

We have filed the motion for extension of time and are going with it.

Thanks,

Daren

Sent from my iPhone


On Jul 5, 2023, at 12:10 PM, Clark, Johanna W. <jclark@carltonfields.com> wrote:


Hi Daren,
Thanks for your email. We have an order setting the deadline of Monday, July 10th, so we don't have a choice on this.  I think it's better to comply with the CMO and file the joint pretrial stipulation on Monday as we are ordered to do.  Even if your clients' pending motion for leave to amend is granted, there is no harm in preparing the joint stipulation now.
Given the deadline, can you please provide your comments to me by noon on Friday?  I may have some other edits too that I will send to you in redline.
Regards,
Johanna



<image001.png>


**Johanna W. Clark**
Attorney at Law

200 S. Orange Ave., Ste. 1000
Orlando, Florida 32801-3456
Direct: 407.244.8257 | Fax: 407.648.9099

jclark@carltonfields.com | www.carltonfields.com

bio | vcard | linkedin

**Carlton Fields is ISO 27001:2013 certified**

*Confidential: This e-mail contains a communication protected by the attorney-client privilege or constitutes work product. If you do not expect such a communication, please delete this message without reading it or any attachment and then notify the sender of this inadvertent delivery.*

**From:** Daren Stabinski <daren@darenstabinskipa.com>
**Sent:** Wednesday, July 5, 2023 12:37 PM
**To:** Clark, Johanna W. <jclark@carltonfields.com>
**Cc:** Tokarz, Aubrey M. <ATokarz@carltonfields.com>; Rodriguez, Miguel A. <MARodriguez@carltonfields.com>; Cristina M. Pierson <cmp@kulaw.com>; Johnet Grimm <johnet@kulaw.com>
**Subject:** Re: Sasson - Joint Pretrial Statement - draft - DUE JULY 10, 2023

Hi Johanna,

I spoke to my co-counsel about this and we decided it makes most sense to file a motion for extension of time to comply with pre-trial deadlines until our motion to amend and transfer is heard. If the case is transferred, there would be a new trial order, so it doesn't make sense to waste time on this now.

Do you have an objection to the motion?

Daren

Sent from my iPhone

On Jul 4, 2023, at 2:14 PM, Clark, Johanna W. <jclark@carltonfields.com> wrote:

Hi Daren,
Happy 4th of July! Under the current CMO, our joint pretrial statement is due **Monday, July 10**.
Attached is a proposed joint pretrial statement which includes exhibit and witness lists, jury instructions, and verdict form.
I know you filed a notice of unavailability, but the court-ordered deadline is Monday. Please let me know if you have proposed edits (I may have some, too). If we can list our exhibits together, that would be best. You will see, I have them separated out right now.
Best regards,
Johanna

**Johanna W. Clark**
Attorney at Law

200 S. Orange Ave., Ste. 1000
Orlando, Florida 32801-3456

2

Direct: 407.244.8257 | Fax: 407.648.9099

jclark@carltonfields.com | www.carltonfields.com
bio | vcard | linkedin

**Carlton Fields is ISO 27001:2013 certified**

*Confidential: This e-mail contains a communication protected by the attorney-client privilege or constitutes work product. If you do not expect such a communication, please delete this message without reading it or any attachment and then notify the sender of this inadvertent delivery.*

IN THE COUNTY COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

ASSAF SASSON AND ADA SASSON,

        Plaintiffs,                    CASE NO.:  COINX22049821

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Plaintiffs, Assaf and Ada Sasson, by and through undersigned counsel, submit their reply to State Farm Mutual Automobile Insurance Company's ("State Farm") response in opposition to Plaintiffs' Motion for Leave to Amend the Complaint.

**INTRODUCTION**

The proposed Third Amended Complaint arises from Plaintiffs' recent discovery that State Farm's breach of its insurance contract with Plaintiffs was not an isolated occurrence, but rather, part of a wrongful pattern and practice of refusing to pay the appropriate labor repair rates for luxury vehicles as required by State Farm's insurance policies. Because leave to amend a complaint "shall be freely given when justice so requires[,]" the Court should therefore grant Plaintiffs' proposed amendment that adds class allegations. *See* Fla. R. Civ. P. 1.190(a); *World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798, 800 (Fla. 4th DCA 1999); ***Gerber Trade Fin., Inc. v. Bayou Dock Seafood Co.***, 917 So. 2d 964, 968 (Fla. 3d DCA 2005) (citation omitted).

Despite Florida's liberal policy in favor of granting amendments, State Farm asks this

1

Court to deny the amendment based on a distorted analysis of exceptions to the rule and mischaracterizations of the case's history. Furthermore, as discussed later in this reply, review of State Farm's cited authorities reveals their inapplicability to the present case. State Farm also opposes amendment by attempting to prematurely litigate the substantive merits of Plaintiffs' claims. But the issue before the Court is whether the Court should grant Plaintiffs' motion to amend, and not whether State Farm believes it can prevail on any of the claims. Given the recently developed basis to add class allegations and the fact that State Farm will not suffer prejudice if the amendment is allowed, the Court must grant Plaintiffs' motion.

## **ARGUMENT**

I.      **Plaintiffs' motion should be granted because leave to amend a complaint is freely given and Plaintiffs only recently uncovered evidence that warrants the addition of class allegations**

Although State Farm peddles a variety of reasons for denying Plaintiffs' amended complaint, it ignores the fundamental principle that leave to file an amended complaint "**shall be given freely when justice so requires.**" Fla. R. Civ. P. 1.190(a) (emphasis added). Trial courts "should not deny a party leave to amend a complaint unless the privilege has been abused, there is prejudice to the opposing party, or amendment would be futile." *World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798, 800 (Fla. 4th DCA 1999) (citation omitted). Because of this flexible amendment rule, any doubt regarding the appropriateness of an amendment should be resolved in favor of granting the amendment. *See DiGiacomo v. Mosquera*, 322 So. 3d 734, 738 (Fla. 4th DCA 2021) (citation omitted).[1]

Here, justice requires granting Plaintiffs' amendment because newly discovered evidence

---

[1] *See also Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d 868, 871 n.4 (Fla. 3d DCA 2016); *Intego Software, LLC v. Concept Dev., Inc.*, 198 So. 3d 887, 896 (Fla. 1st DCA 2016); *Micanopy v. Connell*, 304 So. 2d 478, 480 (Fla. 1st DCA 1974); *see also Feigin v. Hosp. Staffing Servs., Inc.*, 569 So. 2d 941, 942 (Fla. 4th DCA 1990) (affirming trial court's grant of leave for plaintiff to file a fourth amended complaint).

obtained during the litigation has revealed that State Farm's denial of paying appropriate hourly labor rates in Plaintiffs' case is part of a wrongful pattern and practice that affects all State Farm insureds with certain luxury vehicles. Plaintiffs uncovered the extensiveness of this practice during the April 2023 deposition of a corporate representative of the body shop that repaired Plaintiff's vehicle. After learning this information, Plaintiffs promptly moved to amend the complaint with class allegations on May 18, 2023; however, delays by State Farm postponed adjudication of Plaintiffs' motion until July 18, 2023.[2] Since Plaintiffs diligently and timely moved to amend upon discovering information warranting amendment, the Court should grant the amendment. *See P.V. Const. v. Atlas Pools*, 510 So. 2d 318, 319-320 (4th DCA 1987) (reversing trial court's denial of amended counterclaim filed after defendant discovered evidence during deposition that gave rise to the counterclaim). Denying Plaintiffs' amendment will harm countless State Farm insureds and only benefit State Farm by allowing it continue with this wrongful practice. Therefore, justice requires granting Plaintiffs leave to amend.

## II.    The amendment will not prejudice State Farm

The mere fact that State Farm hopes to avoid litigating a class action does not constitute prejudice. Prejudice occurs when an amendment will hinder the opposing party's ability to prepare for new allegations prior to trial. *Dimick v. Ray*, 774 So. 2d 830, 833 (Fla. 4th DCA 2000); *Morgan v. Bank of New York Mellon*, 200 So. 3d 792, 795 (Fla. 1st DCA 2016). For example, courts have denied amendments where the proposed amendments added new or different causes of action during or after trial.[3] State Farm does not claim that it will suffer prejudice in this regard as a trial

---

[2] Although Plaintiffs promptly moved to amend the complaint to add class allegations on May 18, 2023, defense counsel was unavailable until June 28, 2023, to attend a hearing on Plaintiffs' motion. Upon appearing at the hearing, defense counsel requested (for the first time) a specially set hearing for additional time to present oral argument. The Court granted this request and scheduled the hearing for July 18, 2023.

[3] *See, e.g.*, *Frenz Enterprises, Inc. v. Port Everglades*, 746 So.2d 498 (Fla. 4th DCA 1999), *Designers Tile International Corp. v. Capitol C Corp.*, 499 So.2d 4 (Fla. 3d DCA 1986), and *Santi v. Zack Co.*, 287 So.2d 127 (Fla. 3d DCA 1973).

date in this matter has not even been scheduled. Rather, State Farm makes the legally unsupported claim that "the prejudice is the Defendant's need to start over entirely." Def. Opp. at n. 2. What State Farm means by "starting over" is unclear. To date, only a handful of depositions have taken place, along with a limited amount of related discovery. The parties have not filed substantive motions, including summary judgment motions, the Court has not issued any substantive rulings, and trial is not yet scheduled. *See Dimick*, 774 So. 2d at 833 ("**Amendments should be liberally granted, particularly when the motion is made prior to the hearing on a motion for summary judgment.**") (emphasis added); *see also Drish v. Bos*, 298 So. 3d 722, 724 (Fla. 2d DCA 2020). Additional litigation does not constitute prejudice and the Court should disregard this empty and legally unsupported argument by State Farm.

Although less than a year has passed since Plaintiffs initiated this lawsuit, State Farm relies on decisions where courts denied amendments due to multi-year delays that caused litigation to drag without end in sight. This contradicts the position State Farm previously took in *State Farm Mut. Auto Ins. Co. v. Glob. Neuro & Spine Inst.*, 323 So. 3d 754, 754-55 (Fla. 4th DCA 2021), where State Farm appealed a trial court's denial of its motion to amend a pleading three years after the litigation began and all pretrial deadlines elapsed.[4] Nonetheless, State Farm misplaces its reliance on these cases because they illustrate exceptions to Florida's liberal amendment policy.

In *Florida Dep't of Transportation v. Tropical Trailer Leasing, LLC*, 308 So. 242, 245 (Fla. 1st DCA 2020), the court denied a third amended complaint weeks before trial after nearly three and a half years of litigation. Likewise, in *Brown v. Montgomery Ward & Co.*, 252 So. 2d 817, 819 (Fla. 1st DCA 1971), the trial court denied amendment weeks before a scheduled trial

---

[4] In reversing the district court's denial of State Farm's amended pleading, the Fourth District Court of Appeal held that the age of the case, without prejudice to the party opposing amendment, constituted reversible error. *Id.* at 755-56.

and after "several years" of litigation. And in *Int'l Patrol & Detective Agency, Inc. v. Aetna Cas. & Sur. Co.*, the trial court denied a second amended complaint after nearly two years of litigation and when discovery was substantially complete.[5] These cases stand in stark contrast to the present case where the lawsuit is less than a year old and trial has not yet been scheduled. Moreover, once the Court grants the proposed amendment, the case will be transferred and subject to a new Case Management Order. *See generally* Fla. R. Civ. P. 1.200 (setting forth pretrial procedure in civil cases); Fla. R. Civ. P. 1.440 (requiring case to be "at issue" before a court may schedule trial). In short, State Farm will suffer no prejudice if the Court grants the amendment.

### III.    Plaintiffs have not abused their amendment privilege

As part of its scattershot opposition to Plaintiffs' motion, State Farm claims that Plaintiffs have abused the amendment process and supports its argument with cases involving vexatious litigants who repeatedly attempted to escape dismissal by serial amendments. Unlike this case, the plaintiffs in those cases failed to allege a single complaint that set forth a legally sufficient cause of action. State Farm tries to frame Plaintiffs' case in a similar light, but the history of this case dispels this fictional narrative.

On August 8, 2022, Plaintiff Assaf Sasson initiated a one-count Complaint against State Farm for breach of contract. On November 9, 2022, Plaintiff filed an Amended Complaint that added quotes from Plaintiff's insurance policy in the Amended Complaint.[6] On April 3, 2023, Plaintiff filed a Second Amended Complaint that added Ada Sasson, Assaf Sasson's wife, as a plaintiff. None of these amendments reflect that Plaintiffs have been unable to plead a legally sufficient cause of action. Nonetheless, State Farm writes, "Enough is Enough," and parades a

---

[5] *Int'l Patrol & Detective Agency, Inc. v. Aetna Cas. & Sur. Co.*, 396 So. 2d 774, 776 (Fla. 1st DCA 1981), *approved sub nom.*, 419 So. 2d 323 (Fla. 1982).
[6] State Farm ignores this amendment and appears to recycle arguments it made in a prior motion that Plaintiffs' complaint fails to allege the specific contractual language relating to the contractual breach.

string of cases that purportedly state that Plaintiffs' minor and technical amendments constitute an abuse of the amendment process. *See* Def. Opp. at 8. Cursory review of these cases illustrates the disingenuousness of State Farm's position.

For example, State Farm highlights *Kohn v. City of Miami Beach*, 611 So. 2d 538, 539 (Fla. 3d DCA 1992), where a *pro se* plaintiff failed in four attempts to plead a legally sufficient cause of action arising from his arrest on animal cruelty charges. In affirming the dismissal of the plaintiff's fourth complaint, the Third District Court of Appeal held that the plaintiff had been given multiple opportunities to state a claim and failed to do so on each occasion. *Id.* at 540. Likewise, in *Gladstone v. Smith*, 729 So. 2d 1002 (Fla. 4th DCA 1999), *cause dismissed*, 773 So. 2d 55 (Fla. 2000), another *pro se* litigant sued President Bill Clinton, Attorney General Janet Reno, and numerous other persons for conspiring to torture and murder him. After his ten attempts at a complaint failed to allege a legally sufficient cause of action, the trial court reached the conclusion that the plaintiff had abused his privilege to amend the complaints. *Id.* at 1004-05.[7] None of these situations compare to this case as Plaintiffs' prior amendments made minor clarifications and changes to Plaintiffs' claims and did not constitute efforts to avoid dismissal of a meritless lawsuit. Therefore, Plaintiffs did not abuse their privilege to amend.

## IV.     The amendment is not futile

State Farm also seeks premature resolution of the substantive claims raised by Plaintiffs' amended complaint, asserting that Plaintiffs' amendment is futile. The Court should disregard this effort to ramrod summary judgment and trial issues into an opposition to a motion to amend. A

---

[7] State Farm's other cases also involve situations where litigants repeatedly attempted to escape dismissal with legally insufficient amendments. In *Gerstein v. Int'l Asset Value Grp., LLC*, 199 So. 3d 979, 982 (Fla. 4th DCA 2016), the court dismissed a fourth amended complaint that was "byzantine at best with no coherence whatsoever to the state claims" after four prior orders that likewise failed to allege a legally sufficient cause of action. In *Horton v. Freeman*, 917 So. 2d 1064, 1066-67 (Fla. 4th DCA 2006), the plaintiff's fourth amended complaint, along with all prior complaints, failed to state a viable cause of action.

6

proposed amendment is futile only "if it is insufficiently pled [citation omitted] or is insufficient as a matter of law. *Quality Roof Servs., Inc. v. Intervest Nat. Bank*, 21 So. 3d 883, 885 (Fla. 4th DCA 2009), quoting *Burger King Corp. v. Weaver*, 169 F. 3d 1310, 1320 (11th Cir. 1999) (internal quotation marks omitted); *see also Drish*, 298 So. 3d at 725 (holding that futility occurred where "no meaningful difference" existed between the prior insufficient complaint and proposed amendment). State Farm does not allege that either situation exists here and instead, seeks to litigate the substantive merits of Plaintiffs' claims such as whether Plaintiff can establish a breach of contract claim. Even if this Court were to consider State Farm's premature arguments, State Farm has only raised disputed issues of material fact regarding whether State Farm breached its insurance contracts. An amendment is not futile when such disputes exist. *See JBJ Inv. of S. Fla., Inc. v. S. Title Grp., Inc.*, 251 So. 3d 173, 181 (Fla. 4th DCA 2018); *RV-7 Prop. Inc. v. Stefani De La O, Inc.*, 187 So. 3d 915, 917 (Fla. 4th DCA 2016); *Cobbum v. Citimortgage, Inc.*, 158 So. 3d 755, 758 (Fla. 2d DCA 2015).

State Farm also argues that amendment is futile because Plaintiffs cannot establish that State Farm breached its insurance policy contracts with insureds regarding collision repair payments. State Farm correctly notes that its policies require it to pay the "prevailing competitive price," which means the "price charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determined by a survey made by us." Pls.' Mot. to Amend, Ex. A at 32 (Pls.' Ins. Contract). Plaintiffs allege that State Farm breached this provision, a question of fact that State Farm denies. This dispute alone means that Plaintiffs' amendment is not futile. *See Fed. Nat'l Mtg. Ass'n v. Morton*, 196 So. 3d 428, 431 (Fla. 2d DCA 2016) ("whether a party has substantially complied with or performed a contract term remains a question of fact").

The parties also dispute the meaning of the term "repair market." As Plaintiffs' Third

Amended Complaint alleges, the definition of local "repair market" for luxury vehicles must account for the fact that these vehicles must be repaired by certified repair facilities who possess the technical capability to repair the vehicles and who can perform the repairs without voiding the manufacturer's warranty. *See* Ex Mot. to Amend at ¶¶ 10-14 (Third Am. Compl.). State Farm appears to take the position that the term "repair market" includes all vehicles, regardless of whether those repair facilities are qualified to perform repair work on the vehicles. Setting aside the dubiousness of this assertion, the existence of a dispute over this critical term demonstrates that Plaintiffs' amendment is not futile. *See Fecteau v. Southeast Bank, N.A.*, 585 So. 2d 1005, 1007 (Fla. 4th DCA 1991) (holding that when there are two or more reasonable interpretations of a contractual term, that there is a genuine issue of material fact that precludes summary judgment); *Accord Emerald Pointe Prop. Owners' Ass'n, Inc. v. Commercial Constr. Ind., Inc.,* 978 So. 2d 873, 877-78 (Fla. 4th DCA 2008) (citation omitted).

State Farm tries to sidestep the ambiguity of the term "repair market" by claiming that Plaintiffs seek to challenge its survey methodology. Again, this misses the mark of Plaintiffs' claims, and accordingly, the Court should disregard State Farm's reliance on County Court decisions where plaintiffs challenged how State Farm conducted its surveys.[8] Review of the various summary judgment orders (where the parties had the opportunity to develop a complete factual record) also shows that these cases did not involve the class of luxury vehicles at issue in this case. These cases also not involve Plaintiffs' additional claim that State Farm's conduct caused insureds to either pay out of pocket for covered repairs or risk voiding their manufacturer warranties by subjecting their vehicle to work performed by unqualified repair facilities. *See* Ex

---

[8] *See, e.g., McHugh a//a/o Haline Gregory v. State Farm Mut. Auto Ins. Co.*, Broward County, Florida, Case No. 12-06933COCE56; *McHugh a/a/o Kenneth Braden v. State Farm Mut. Auto Ins. Co.*, Broward County, Florida, Case No. COCE 11-024975 (52); *McHugh a/a/o Susan Reich v. State Farm Mut. Auto Ins. Co.*, COCE 12-012906 (52).

Mot. to Amend at ¶ 46 (Third Am. Compl.).

Finally, under the guise of claiming amendment futility, State Farm raises a variety of arguments that seek to prematurely litigate the merits of other issues related to the lawsuit. For example, State Farm seeks to prematurely litigate Plaintiffs' ability to certify the proposed class. *See Whigum v. Helig-Meyers Furniture Inc.*, 682 So. 2d 643, 645 (Fla. 1st DCA 1996) (holding that class certification decision can be made "only after the parties have had an adequate opportunity to discover facts necessary to support all of the requirements of a class action."); *see also Diamond v. Elvis Towing, Inc.*, 268 So. 3d 249, 251 (Fla. 2d DCA 2019). Once the Court grants Plaintiffs' proposed amendment and transfers this matter, the Circuit Court can address these issues at the appropriate juncture. But merely because State Farm postures that it will prevail in this action does not entitle it to short circuit the civil litigation process.

## CONCLUSION

For the foregoing reasons, the Court should grant the proposed amendment, deem the Third Amended Complaint effective upon the date of its filing on May 18, 2023, and transfer the case forthwith to Circuit Court.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this

12th day of July, 2023, to all registered participants of the Florida e-filing portal.

> **DAREN STABINSKI P.A.**
> 100 North Federal Highway, #524
> Fort Lauderdale, FL 33301
> Phone: (954) 324-1552
> Fax: (954) 245-0739
> daren@darenstabinskipa.com
> Daren Stabinski (FBN 002951)
>
> **KELLEY UUSTAL, PLC**
> 500 North Federal Highway, Suite 200
> Fort Lauderdale, Florida 33301
> Phone: (954) 522-6601
> Fax: (954) 522-6608
> By: _/s/ Cristina Pierson_
> Cristina Pierson (FBN 984345)
> cmp@kulaw.com
> Matthew DellaBetta (FBN 1031216)
> mdb@kulaw.com
> Attorneys for Plaintiffs and Putative Class
> Members

IN THE COUNTY COURT, IN AND FOR BROWARD COUNTY, FLORIDA

ASSAF SASSON,

          Plaintiff(s),

CASE NO: COINX 22-049821 (73)

JUDGE: STEVEN P. DELUCA

STATE FARM MUTUAL AUTO INS CO,

          Defendant(s).

_____/

### <u>RE-NOTICE OF HEARING</u>

TO:

    Daren Stabinski          Johanna Clark
    daren@darenstabinskipa.com    atokarz@carltonfields.com

       **YOU ARE HEREBY NOTIFIED** that the Honorable Steven P. DeLuca will conduct the hearing on *All Pending Motions* remotely at the time listed below:

<u>**Monday 17th**</u> day of  <u>July  2023</u>  at <u>**09:15 A.M.**</u>

      Your zoom appearance is required, if you do not appear remotely for your hearing, your absence will be treated no differently than if you failed to appear for an in-person hearing.

       **Join Judge DeLuca Zoom Meeting at**

       **https://17thflcourts.zoom.us/j/499985495**

       **Meeting ID: 499 985 495**

       **Phone call information:**

       **(888)475-4499 US Toll-free**

       **Meeting ID: 499 985 495**

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

**Please note that COUNSEL must join by computer audio/video so that you are easily identified**

PLEASE BE GOVERNED ACCORDINGLY

DATED this __14th__ day of  July, 2023 A.D.

> ____/s/ *Steven P. DeLuca* _____
> HONORABLE STEVEN P. DELUCA
> COUNTY COURT JUDGE

**I HEREBY CERTIFY** that on the date shown above, copies of the foregoing were mailed to each of the above named addresses.

> ____/s/ *Tandakwa Walker* _____
> Tandakwa Walker, Judicial Assistant to
> Judge Steven P. DeLuca
> Twalker@17th.flcourts.org
> 954-831-0322

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF AND ADA SASSON,

              Plaintiffs,

v.

CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

              Defendant.

_____/

### DEFENDANT'S NOTICE OF APPEARANCE AND
### DESIGNATION OF E-MAIL ADDRESSES

PLEASE TAKE NOTICE that D. Matthew Allen of the law firm of Carlton Fields, P.A.,

hereby enters his appearance as co-counsel for Defendant, State Farm Mutual Automobile

Insurance Company.

Pursuant to Florida Rule of Judicial Administration 2.516, Defendant hereby designates

the following addresses by e-mail:

Email: mallen@carltonfields.com (primary)
Email: bwoolard@carltonfields.com (secondary)
Email: tpaecf@cfdom.net (secondary)

Please note that service by e-mail should utilize all e-mail addresses.  Correspondence

other than service should utilize only the primary e-mail address.

Dated: July 14, 2023

Respectfully submitted,

/s/ D. Matthew Allen
John E. Clabby
Florida Bar No. 113664
D. Matthew Allen
Florida Bar No. 866326
CARLTON FIELDS, P.A.
4221 W. Boy Scout Boulevard, Suite 1000

Tampa, FL 33607
*Mailing address:*
P.O. Box 3239
Tampa, FL 33601-3239
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
jclabby@carltonfields.com
mallen@carltonfields.com
nkapadia@carltonfields.com
bwoolard@carltonfields.com

*Attorneys for Defendant, State Farm Mutual Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 14, 2023, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com

Cristina M. Pierson, Esq.
KELLEY UUSTAL PLC
500 North Federal Highway
Suite 200
Ft. Lauderdale, FL 33301
Ph: (954) 522-6601
Fax: (954) 522-6608
Email: cmp@kulaw.com
Email: johnet@kulaw.com

/s/ *D. Matthew Allen*
D. Matthew Allen

2

133477222.1

IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA

ASSAF AND ADA SASSON,

        Plaintiffs,

v.

        CASE NO: COINX-22-049821

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/

## DEFENDANT'S NOTICE OF APPEARANCE AND
## DESIGNATION OF E-MAIL ADDRESSES

PLEASE TAKE NOTICE that John E. Clabby of the law firm of Carlton Fields, P.A.,
hereby enters his appearance as co-counsel for Defendant, State Farm Mutual Automobile
Insurance Company.

Pursuant to Florida Rule of Judicial Administration 2.516, Defendant hereby designates
the following addresses by e-mail:

Email:jclabby@carltonfields.com (primary)
Email: nkapadia@carltonfields.com (secondary)
Email: tpaecf@cfdom.net (secondary)

Please note that service by e-mail should utilize all e-mail addresses. Correspondence
other than service should utilize only the primary e-mail address.

Dated: July 14, 2023

Respectfully submitted,

/s/ *John E. Clabby*
John E. Clabby
Florida Bar No. 113664
CARLTON FIELDS, P.A.
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, FL 33607
*Mailing address:*

P.O. Box 3239
Tampa, FL 33601-3239
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
jclabby@carltonfields.com
nkapadia@carltonfields.com

*Attorney for Defendant, State Farm Mutual Automobile Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 14, 2023, the foregoing was electronically filed through the Florida Courts' e-filing Portal, which will send electronic notice of the filing and a service copy of the foregoing to the following:

Daren Stabinski, Esq.
DAREN STABINSKI, P.A.
100 N. Federal Highway, #524
Ft. Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
Email: daren@darenstabinskipa.com

Cristina M. Pierson, Esq.
KELLEY UUSTAL PLC
500 North Federal Highway
Suite 200
Ft. Lauderdale, FL 33301
Ph: (954) 522-6601
Fax: (954) 522-6608
Email: cmp@kulaw.com
Email: johnet@kulaw.com

/s/ *John E. Clabby*
John E. Clabby

2

133475519.1

Case 0:23-cv-61594-RS Document 1-3 Entered on FLSD Docket 08/18/2023 Page 935 of 1096

**IN THE COUNTY COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. **COINX22049821**   DIVISION: **73**   JUDGE: **DeLuca, Steven P. (73)**

**Assaf Sasson**

Plaintiff(s) / Petitioner(s)

v.

**State Farm Mutual Automobile Insurance Company**

Defendant(s) / Respondent(s)

_____/

**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT
AND TRANSFER CASE TO CIRCUIT COURT**

THIS MATTER having come before the Court for hearing on July 17, 2023 on Plaintiffs' Motion for Leave to Amend Complaint and then Transfer to Circuit Court, and the Court having reviewed the record, heard argument of counsel, and being otherwise advised in the premises, it is **HEREBY ORDERED AND ADJUDGED** as follows:

1) Plaintiffs' Motion for Leave to Amend the Complaint and Transfer to Circuit Court is hereby **GRANTED**.  Plaintiffs' Third Amended Complaint, attached to Plaintiffs' Motion, shall be filed on the docket promptly upon entry of this order.

2) Based on jurisdictional grounds, this case shall be immediately transferred to the Circuit Court for further proceedings.   Any other pending motions, including Plaintiffs' Motion for Extension of the Pretrial Deadlines and Defendant's Motion to Compel Plaintiffs' Compliance with Case Management Order, are therefore moot.

3) Accordingly, the Clerk of Court is hereby **ORDERED** to transfer this matter to the Circuit Court forthwith.  As may be required to accomplish the transfer, Plaintiff shall pay all necessary filing fees upon notice and request.

4) This transfer is contingent upon the receiving division accepting the case. Should the receiving division decline to receive the matter it is requested that the matter be returned without delay.

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>20th day of July, 2023</u>.

<u>COINX22049821 07-20-2023 5:07 PM</u>
Hon. Steven P. DeLuca
**COUNTY COURT JUDGE**
Electronically Signed by Steven P. DeLuca

**Copies Furnished To:**
Christopher M. Paolini , E-mail : cpaolini@carltonfields.com
Christopher M. Paolini , E-mail : atokarz@carltonfields.com
Cristina M. Pierson , E-mail : johnet@kulaw.com
Cristina M. Pierson , E-mail : cmp@kulaw.com
D Matthew Allen , E-mail : bwoolard@carltonfields.com
D Matthew Allen , E-mail : mallen@carltonfields.com
D Matthew Allen , E-mail : tpaecf@cfdom.net
Daren Stabinski , E-mail : Trey@darenstabinskipa.com
Daren Stabinski , E-mail : daren@darenstabinskipa.com
Johanna W Clark , E-mail : dmonge@carltonfields.com
Johanna W Clark , E-mail : jclark@carltonfields.com
Johanna W Clark , E-mail : dmontgomery@carltonfields.com
John E Clabby , E-mail : jclabby@carltonfields.com
John E Clabby , E-mail : nkapadia@carltonfields.com
Miguel A. Rodriguez , E-mail : atokarz@carltonfields.com
Miguel A. Rodriguez , E-mail : marodriguez@carltonfields.com

IN THE COUNTY COURT IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. COINX-22-049821

ASSAF SASSON and
ADA SASSON,

CLASS REPRESENTATION

     Plaintiffs,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY.

     Defendant.

_____/

## THIRD AMENDED COMPLAINT
### (Class Action)

Plaintiffs, ASSAF SASSON and ADA SASSON, by and through undersigned counsel, bring this class action pursuant to Florida Rule of Civil Procedure 1.220, on behalf of themselves and all others similarly situated ("Class Members"), against Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm" or "Defendant"), and in support thereof alleges:

### JURISDICTION, PARTIES, & VENUE

1.     This is a class action for damages exceeding $50,000, exclusive of attorney's fees, interest, and costs.

2.     At all times material, Plaintiffs and Class Representatives, Assaf and Ada Sasson, were residents of Broward County, Florida, and insured under an automobile policy issued by STATE FARM AUTOMOBILE INSURANCE COMPANY with collision benefits for a high-value luxury vehicle. A copy of the policy, Florida Policy Form 9810A, is attached hereto as Exhibit A.

3.      At all times material hereto, Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, was a duly authorized insurance company, organized and incorporated under the Laws of Florida, was authorized to transact insurance business in the State of Florida, and transacted its customary business through its agents and representatives in Broward County, Florida and throughout the state.

4.      Venue is proper because the events giving rise to the claims occurred in Broward County and the causes of action accrued in Broward County, where State Farm regularly conducts business.

5.      Any and all conditions precedent to the maintenance of this action have occurred, been performed, or have been waived.

## INTRODUCTION

6.      Plaintiffs bring this class action challenging State Farm's systemic and wrongful practice of refusing to pay for the proper and necessary collision repairs of its insureds' high-value, luxury automobiles, in accordance with policy terms. In that regard, State Farm made it part of their business model to deny necessary collision benefits by refusing to pay appropriate hourly labor rates for high-value luxury vehicles, like Plaintiffs, that have suffered damage in a collision.

7.      As customary for high-value, luxury automobiles, the manufacturers require collision repairs to be performed by a manufacturer's certified repair facility. This ensures that repairs are conducted in accordance with the manufacturer's specifications and preserves the original manufacturer warranty on the vehicle.  But State Farm, unlike other Florida insurers, refuses to pay the prevailing competitive price for the hourly labor rates at these certified repair facilities.  State Farm's denial of collision benefits in this manner violates the coverage provisions of State Farm's standard automobile policies and artificially reduces claims payments to the benefit of State Farm and to the detriment of its insureds.

8.      State Farm is one of the nation's largest automobile insurance companies and consistently ranks as one the three largest automobile insurers in Florida. In Florida alone, State Farm generates approximately $2.8 billion in premiums written annually, and comprises approximately 16% of the market share of automobile policies. State Farm sells collision coverage as part of its standard automobile insurance policies throughout Florida, and its practices relating to the payment of hourly rates for collision repairs have been uniform and consistent over at least the last five years.

9.      High-value, luxury vehicles are expensive and complex vehicles to repair after a collision. According to the manufacturers of such vehicles, i.e. Porsche, Mercedes-Benz, Bentley, BMW, and Maserati, proper repair requires a *certified* body shop whose technicians have been specially trained by the manufacturer and possess the sophisticated equipment necessary to repair the vehicle to the manufacturer specifications.

10.      A certified repair facility has the manufacturer's advanced technology and particular "know-how" necessary for proper repair of its vehicle safety systems and sophisticated components. Manufacturers warn vehicle owners that work that is not performed by a certified repair facility voids the manufacturer's warranty.  That consequence would diminish the vehicle's value and subject the vehicle owner to additional costs to maintain and own the vehicle.   Moreover, due to the high-tech nature of the safety systems, it is essential that a certified facility perform the repairs to ensure the specialized protective features have been properly returned to manufacturer specifications after a collision.

11.      In general, automobile insurers charge their insureds more premiums for collision coverage on high-value automobiles than other vehicles based upon the recognition that those vehicles are more expensive to repair after a collision. As explained above, collision repairs for such high-value luxury vehicles must be performed by a certified facility, and consequently, Plaintiffs and the class members are entitled to repairs by professionals within that repair market at those prevailing competitive prices.

3

12.     While State Farm knows of the prevailing competitive prices for that repair market, it has consistently refused to pay those hourly rates for necessary collision repairs despite its promises to "pay for loss caused by collision to a covered vehicle."  *See* "Insuring Agreement" for "Collision Coverage" in the Policy at Exhibit A at 31.  For example, the prevailing competitive price for a Porsche certified facility to perform body and paint labor is $105 per hour based on the majority of the repair market comprised of properly certified facilities.  Yet, State Farm has uniformly rejected repair estimates that exceed $47 per hour for such work and refuses to pay the applicable prevailing rate of certified facilities without justification and contrary to its policy terms.

13.     In fact, the hourly rates for labor accepted by State Farm generally do not distinguish between models or types of cars.  So State Farm uses only one rate (whether it is a Porsche or a Hyundai) as the hourly rate for any vehicle in the same geographic area.

14.     State Farm's method of determining the cost of repair for collision damages to its insureds' high-value luxury vehicles does not comply with the requirements under the policy and results in a systematic underpayment of collision insurance payments to its insureds.

## **FACTUAL ALLEGATIONS**

15.     For valuable consideration, Defendant State Farm issued a policy of automobile insurance to Plaintiffs that included collision benefits, and specifically provided coverage for Plaintiffs' high value luxury vehicle, a 2022 Porsche Taycan ("the insured vehicle").  A copy of Policy Number J53-4643-B02-59C ("the policy") is attached as Exhibit A and incorporated herein by reference. The insured vehicle was purchased by Plaintiffs for more than $100,000, and is a high-tech, all-electric vehicle described as a "technology flagship" for Porsche.

16.     As reflected in the policy, the insured vehicle is listed as a covered vehicle and as such, Defendant agreed to pay for loss caused by a collision.

4

17.     On or about May 27, 2022, Plaintiff Ada Sasson, an insured under the policy, was traveling in the insured vehicle and was involved in an automobile collision in Broward County, Florida ("the collision").  The collision caused Plaintiffs' insured vehicle to suffer loss and damage.

18.     Plaintiffs submitted a claim for collision benefits (claim number 59-34T0-34F) to State Farm for payment related to the damages to the insured vehicle that resulted from the collision.

19.     The Limit of Liability provisions in the policy state that the cost to repair the insured vehicle would be determined as follows:

> (1)  *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:
>
> (a)  The cost agreed to by both the owner of the *covered vehicle* and *us*;
>
> (b)  A bid or repair estimate approved by *us*; or
>
> (c)  A repair estimate that is written based upon or adjusted to:
>
> (i)  the prevailing competitive price;
>
> (ii)  the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or
>
> (iii)  a combination of (i) and (ii) above.
>
> ---
>
> The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*.  If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price.  The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*See* Ex. A, Policy at 32-33.

20.     On or about May 31, 2022, Plaintiffs brought the vehicle to a Porsche dealership who referred Plaintiffs to a local collision body shop certified by Porsche to repair the insured vehicle as required by Porsche to preserve the manufacturer's vehicle warranty and to ensure the work was performed per Porsche's specifications. That Porsche-certified body shop, Stuttgart International, located in Broward County, Florida specializes in repairing high-value luxury vehicles -- like the insured vehicle.

21.     Stuttgart performs collision repairs for numerous insurance companies who pay its hourly labor rates in connection with work on high-value luxury vehicles.  Moreover, Stuttgart's hourly labor rates for Porsche collision repairs represent the prevailing competitive prices – i.e. the prices charged by a majority of the repair market in the area -- and are routinely accepted by Florida automobile insurance companies.

22.      Using these prevailing competitive prices, Stuttgart International created an estimate of repairs to the subject vehicle in the amount of $8,360.87.  This repair estimate was delivered to State Farm, but it was rejected.

23.     On or about July 1, 2022, State Farm created its own estimate of damages to the insured vehicle in the amount of $6,267.03 (based on alternative labor hourly rates that are not the prices charged in the repair market of certified facilities) and offered to pay only that amount for repair to the vehicle, less a $500.00 deductible.

24.     Plaintiffs did not approve or agree to the amount of State Farm's estimate.  And State Farm did not approve the repair estimate provided by Plaintiffs from Stuttgart, despite that Plaintiffs were entitled to have the insured vehicle restored to its "pre-loss condition" which required the collision repairs to be performed by a certified facility.  That would assure that the work was properly performed to manufacturer specifications (including all safety systems) and preserve the manufacturer's original factory warranty.

6

25.     The repair estimate provided by State Farm was not based upon or adjusted to the prevailing competitive price.  Moreover, paintless dent repair was not applicable and could not properly repair the damages to the insured vehicle.

26.     Despite Plaintiffs' demand and the carrier's admitted collision coverage obligations, State Farm has refused to pay the collision benefits in the total amount of $8,360.87. This is the amount (as reflected in the estimate created by Stuttgart International) that was required to repair the insured vehicle at the prevailing competitive price, pursuant to the subject policy.

27.     Plaintiffs were therefore forced to pay the difference between the State Farm estimate and the cost to repair the vehicle charged by Stuttgart to ensure their vehicle was properly repaired by a Porsche certified repair facility.

28.     Plaintiffs individually, and on behalf of those similarly situated, bring this class action seeking appropriate redress, remedies, and damages.  As shown by its pattern of refusing to pay the appropriate cost to repair collision damages on high-value luxury vehicles, State Farm has engaged and continues to engage in a widespread, recurring, and ongoing practice of improperly underpaying collision benefits and causing its insureds to pay additional monies out of their pockets to have their vehicles properly repaired by certified facilities, as well as suffer other significant harm to their insured vehicles.

<p align="center">**CLASS REPRESENTATION ALLEGATIONS**</p>

29.     *Compliance with Rule 1.220.*  Plaintiffs seek to certify a class on the claims for breach of contract (Count I) and breach of implied covenant of good faith and fair dealing (Count II).  As established herein, these claims are maintainable on behalf of a class and Plaintiffs have satisfied all of the prerequisites of Rule 1.220 as detailed below.

30.     *Class Definition*. Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated pursuant to Rule 1.220.   The Class is defined as follows:

<p align="center">7</p>

All State Farm automobile policy owners (non-commercial) with a covered collision claim after September 1, 2018 involving an insured high-value luxury vehicle, where coverage was denied for the hourly labor rates of a manufacturer's certified facility.

Excluded from the Class are State Farm officers, employees, directors, and members of their immediate families; the legal representatives, heirs, successors or assigns of any such excluded party; and the judicial officer(s) to whom this action is assigned and members of their immediate families. Plaintiffs reserve the right to amend, modify, or expand the definition of the proposed class or add sub-classes as discovery proceeds before certification is determined by the Court.

31. _Numerosity under Rule 1.220 (a) and (c)(2)(D)._ The members of the Class are so numerous that joinder of them is impractical. Upon information and belief, the Class consists of hundreds (and perhaps thousands) of members. Indeed, Defendant has handled thousands of automobile insurance claims for collision damage to high value luxury vehicles, including those manufactured by Porsche, Mercedes-Benz, Maserati, Bentley, BMW, and Land Rover, but failed to pay to have repairs performed by manufacturer certified facilities. The identity and precise number of class members is exclusively known by the Defendant and can be easily ascertained from Defendant and its records during discovery. State Farm has the ability to identify all members of the class, but at this time such specific information is not available to the Plaintiffs.

32. _Commonality under Rule 1.220 (a) and (c)(2)(B)._ There is a well-defined community of interest in the questions of law and fact involving and affecting the proposed Class. These common questions relate to Defendant's practices at issue and predominate over any questions affecting only individuals. Such questions of law and fact common to the class include:

a. Whether State Farm engaged is a systematic underpayment of collision losses to high value luxury vehicles;

b.  Whether State Farm has a practice of refusing to pay appropriate hourly rates to repair high value luxury vehicles, like Plaintiffs, that have suffered damage in a collision;

c.  Whether State Farm has a standard business practice of refusing to pay for collision losses on high value luxury vehicles where the estimate included hourly labor rates by manufacturer certified facilities;

d.  Whether Defendant uniformly instructs its agents and employees follow this routine practice;

e.  Whether State Farm has knowledge of the prevailing competitive prices for collision repairs by certified facilities;

f.  Whether the hourly rates charged by certified body shops, like Stuttgart, are prevailing competitive prices;

g.  Whether other Florida insurers routinely pay the prevailing competitive price of the hourly labor rates at properly certified repair facilities;

h.  Whether Defendant's policy requires that the insured vehicle be returned to its pre-loss condition which requires repairs by a properly certified repair facility;

i.  Whether State Farm's conduct in determining the cost of repair complies with its standard automobile insurance policy language;

j.  Whether Defendant breached its contract of insurance and duties of good faith and fair dealing to its insureds;

k.  Whether Defendant artificially reduced collision claim payments with such frequency to constitute a general business practice;

l.  Whether Defendant continues to improperly reject estimates that include hourly rates charged by certified facilities; and

m.  Whether the class members suffered damages and the proper measure of damages.

9

33.     _Typicality under Rule 1.220 (a) and (c)(2)(C)._  Plaintiffs' claims are typical of the claims

that would be asserted by other members of the Class in that by proving their claims, Plaintiffs will prove

the claims of all class members. Moreover, Plaintiffs claims similarly arise from the same wrongful

conduct of Defendant.  Plaintiffs possess the same legal interest and rights pursuant to State Farm's policy

language and have endured the same legal injury as all the class members: All class members have been

denied collision benefits and all class members, like Plaintiffs, were similarly injured by Defendant's

conduct. As such, Plaintiffs' interests coincide with, and not antagonistic to, those of other Class Members.

34.     _Adequacy under Rule 1.220 (a) and (c)(2)(D)._     Plaintiffs are adequate Class

Representatives who have interests in common with the proposed class members and are committed to

the vigorous prosecution of this action.   Plaintiffs are State Farm insureds that have expressed a

willingness and desire to represent the interests of the class as a whole and have no conflicts with other

Class Members.  Plaintiffs have retained the undersigned law firms who have extensive experience in

class actions, insurance coverage disputes, and complex litigation, and who have the resources required

to pursue this case.

35.     _Predominance under Rule 1.220(b)(3) & (c)(2)(E)._ The many questions of law and fact

that are common to the claims predominate over any questions of law or fact affecting only individual

members of the class. Those common questions of law and fact are detailed above in the "Commonality"

paragraph and are incorporated herein by reference.

36.     _Superiority of Class Determination._  A class action is superior to other available methods

and highly desirable for the fair and efficient adjudication of this controversy.  Prosecution of separate

actions by individual members of the class create a risk of inconsistent or varying adjudications of the

same issues and burden the Court with hundreds (and perhaps thousands) of duplicative actions.  Since

the issues referenced above will determine liability, it is far more desirable to proceed in a single action

before this Court than to be burdened with fractionalized litigation throughout Florida. Moreover, absent a Class, the class members will continue to suffer damages and Defendant's wrongful conduct will continue without redress or remedy. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## Count I – Breach of Contract

37. Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 36 as if fully set forth herein.

38. Defendant issued automobile policies of insurance, in the form reflected in Exhibit A, which included collision coverage in exchange for premium payments. This is a valid contract providing Plaintiffs and the class member insureds with a right to seek collision benefits under the policy.

39. After being involved with a covered collision, Plaintiffs and the class members timely filed claims seeking payment for the cost of repairing the covered high value luxury vehicles under the policy in order to restore their vehicles to their pre-loss condition. That involves the work being performed by a certified repair facility as mandated by the manufacturers.

40. Despite delivery of an estimate for the cost of repair at prevailing competitive prices, State Farm refused to pay the cost of repair charged by certified facilities.

41. Defendant materially breached its contracts by failing and refusing to pay the collision benefits as submitted by the Plaintiffs and class members in a timely manner.

42. As a direct and proximate result of the breach of contract, Plaintiffs and the class members have sustained damages. Indeed, benefits remain unpaid as a result of Defendant's improper denial of

collision repair costs pursuant to the terms of the insurance policy.   Moreover, Plaintiffs and the Class Members have incurred out of pocket losses and other harm alleged herein.

43.     Due to Defendant's failure to pay collision benefits in accordance with its policy, Plaintiffs and class members had to retain counsel to prosecute this suit.  Plaintiffs and the class members are entitled to an award of attorney's fees against State Farm according to § 627.428, Florida Statutes.

WHEREFORE, Plaintiffs demand judgment against Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for themselves and the class members as follows:

  a.  Certifying this matter as a class action pursuant to Rule 1.220;

  b.  Designating Plaintiffs as class representatives and the undersigned as class counsel;

  c.  Awarding Plaintiffs and the class members their damages for breach of contract and denial of benefits, prejudgment interest from the date payment was overdue at the statutory rate;

  d.  Enjoining Defendant's ongoing practice of denying coverage for hourly labor rates of certified facilities;

  e.  Awarding attorneys' fees and costs to the Plaintiffs and Class; and

  f.  Granting such other relief as the Court may deem just and proper.

### COUNT II – Breach of Implied Covenant of Good Faith and Fair Dealing

44.      Plaintiffs reallege and incorporate the allegations of paragraphs 1 through 36, 38 through 40, and 43, as if fully set forth herein.

45.     Every contract in Florida includes an implied covenant of good faith and fair dealing.

46.     Defendant materially breached the implied covenant of good faith and fair dealing by preventing class members from using certified facilities for repairs of their high value luxury vehicles in order to artificially reduce collision claims payments. As a result, Defendant has left its class member insureds with either having to pay out of pocket for covered repairs or having to take risks with repairs performed by non-certified facilities (including failure to satisfy manufacturer specifications and voiding the manufacturer's factory warranty).

47.     Contrary to its obligations of good faith to its insureds, Defendant directed that repairs be performed at non-certified facilities, despite that manufacturer requirements that work be performed only by certified facilities. Making matters worse, Defendant did not warn or inform its insureds of the risks involved with proceeding with collision repairs at a non-certified facility.

48.     Defendant engaged in this wrongful conduct as part of a pattern and practice designed to artificially reduce its collision claims payments irrespective of its obligations to its insureds.

49.     As a direct and proximate result of the material breach of the implied covenant of good faith and fair dealing, Plaintiffs and the class members have sustained damages, including out of pocket losses and harm to the insured vehicles.

WHEREFORE, Plaintiffs demand judgment against Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for themselves and the class members as follows:

a.  Certifying this matter as a class action pursuant to Rule 1.220;

b.  Designating Plaintiffs as class representatives and the undersigned as class counsel;

c.  Awarding Plaintiffs and the class members their damages for breach of implied covenant of good faith and fair dealing, plus prejudgment interest at the statutory rate;

d.  Enjoining Defendant's ongoing practice of denying coverage for hourly labor rates of certified facilities;

e.  Awarding attorneys' fees and costs to the Plaintiffs and Class pursuant to applicable law relating to class actions; and

f.  Granting such other relief to Plaintiffs and the Class as the Court may deem just, proper and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury on all issues so triable.

13

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this 21st

day of July 2023, to all registered participants of the Florida e-filing portal.

> **DAREN STABINSKI P.A.**
> 100 North Federal Highway, #524
> Fort Lauderdale, FL 33301
> Ph: (954) 324-1552
> Fax: (954) 245-0739
> daren@darenstabinskipa.com
> Daren Stabinski, Esq.
> Fla. Bar No. 002951
>
> **KELLEY | UUSTAL PLC**
> 500 North Federal Highway, Suite 200
> Fort Lauderdale, Florida 33301
> Telephone: (954) 522-6601
> Facsimile: (954) 522-6608
> By: _/s/ Cristina M. Pierson_____
> Cristina M. Pierson, Esq. (FBN 984345)
> cmp@kulaw.com
> johnet@kulaw.com
> Attorneys for Plaintiffs and Putative Class Members

14



## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number J53 4643-B02-59B including any endorsements, if applicable, for the policy term(s) 04/19/2022 to 06/06/2022 and insuring SASSON, ASSAF & ADA L based on available records.

It is State Farm's business practice to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs. Therefore, the included Declarations Page which was in effect at the time of loss will indicate the policy period of the last policy issuance transaction.

The policy was in effect on the loss date of 05/27/2022.


Jessica Bass
Underwriter
Date: 09/13/2022


( [ KIELW$



Please read the policy carefully. If there is an
accident, contact your State Farm agent or one
RI RXU &ODLP 2I¿FHV DW RQFH. (6HH ³1685('´ ¶6
'87, (6´ LQ WKLV SROLF\ ERRNOHW.)

State Farm®
Car Policy
Booklet

Florida
Policy Form 9810A

6) -6DVVRQ SVVDI- 000289

# CONTENTS

THIS POLICY ....................................... 3

DEFINITIONS...................................... 4

**LIABILITY COVERAGE (Bodily Injury and Property Damage)** ...................................... 6

Additional Definition ......................................... 6
Insuring Agreement ........................................... 7
Supplementary Payments................................... 7
Limits ................................................................ 7
Nonduplication................................................... 8
Exclusions......................................................... 8
If Other Liability Coverage Applies.................. 9
Required Out-of-State Liability Coverage ....... 10
Financial Responsibility Certification ............. 10

**PROPERTY DAMAGE LIABILITY COVERAGE** ...................................................... 10

Additional Definition ....................................... 10
Insuring Agreement ......................................... 11
Supplementary Payments................................. 11
Limit ................................................................ 11
Exclusions....................................................... 12
If Other Property Damage Liability Coverage Applies ............................................ 13
Required Out-of-State Liability Coverage ....... 14
Financial Responsibility Certification ............. 14

**NO-FAULT COVERAGE** ................................ 14

Additional Definition ....................................... 14
Insuring Agreement ......................................... 14
Limits............................................................... 15
Application of Any Deductible and Workers' Compensation Offset ........................ 17
Partial Payment or Rejection of a Claim.......... 17
Nonduplication ................................................ 17
Exclusions....................................................... 17
If Other No-Fault Coverage Applies................ 18
Our Payment Options ...................................... 18

**MEDICAL PAYMENTS COVERAGE** ........... 18

Additional Definition ....................................... 18
Insuring Agreement ......................................... 19
Determining Medical Expenses ...................... 20
Limits............................................................... 20
Nonduplication ................................................ 21
Exclusions....................................................... 21
If Other Medical Payments Coverage or Similar Vehicle Insurance Applies ................. 23
Our Payment Options....................................... 24

**UNINSURED MOTOR VEHICLE COVERAGE (Stacking)** .................................. 24

Additional Definitions..................................... 24
Insuring Agreement ......................................... 25
Consent to Settlement...................................... 25
Deciding Fault and Amount............................. 25
Limits .............................................................. 25
Nonduplication ............................................... 26
Exclusions....................................................... 26
If Other Uninsured Motor Vehicle Coverage Applies ............................................ 26
Our Payment Options ...................................... 26

**UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking)** ...................... 27

Additional Definitions..................................... 27
Insuring Agreement ......................................... 27
Consent to Settlement...................................... 27
Deciding Fault and Amount ............................ 28
Limits .............................................................. 28
Nonduplication ............................................... 28
Exclusions....................................................... 28
If Other Uninsured Motor Vehicle Coverage Applies ............................................ 29
Our Payment Options ...................................... 30

**PHYSICAL DAMAGE COVERAGES** ........... 30

Additional Definitions..................................... 30
Insuring Agreements ....................................... 31
Supplementary Payments – Comprehensive Coverage and Collision Coverage ................... 32
Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage .................... 32
Limits – Car Rental and Travel Expenses Coverage ......................................................... 33
Nonduplication ............................................... 34
Exclusions....................................................... 34
If Other Physical Damage Coverage or Similar Coverage Applies................................ 35
Financed Vehicle ............................................ 36
Our Payment Options ...................................... 36

6) -6DVVRCSVVDI- 000290

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE** ....................... 36

    Additional Definition ........................................ 36
    Insuring Agreement .......................................... 36
    Benefit ................................................................ 36
    Exclusions......................................................... 37
    Our Payment Options ...................................... 38

**INSURED'S DUTIES**.......................................... 38

    Insured's Duty at the Time of an Accident or Loss ............................................................. 38
    Notice to Us of an Accident or Loss ................ 38
    Notice to Us of a Claim or Lawsuit ................. 38
    Insured's Duty to Cooperate With Us .............. 38
    Questioning Under Oath ................................... 38
    Other Duties Under the Physical Damage Coverages .......................................... 39
    Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and  Death, Dismemberment and Loss of Sight Coverage ............................. 39

**GENERAL TERMS** ........................................... 40

    When Coverage Applies ................................... 40
    Where Coverage Applies .................................. 40
    Limited Coverage in Mexico............................ 40
    Persons Acting On Our Behalf ........................ 41
    Newly Owned or Newly Leased Car .............. 42
    Changes to This Policy .................................... 42
    Premium ........................................................... 42
    Renewal ............................................................ 43
    Nonrenewal ...................................................... 43
    Cancellation...................................................... 43
    Assignment....................................................... 44
    Bankruptcy or Insolvency of the Insured ........ 44
    Concealment or Fraud ..................................... 44
    Our Right to Recover Our Payments ............... 45
    Mediation ......................................................... 45
    Arbitration ........................................................ 46
    Legal Action Against Us.................................. 46
    Choice of Law .................................................. 48
    Severability ...................................................... 48

## THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSE-MENTS" on the Declarations Page, in reliance on the following statements:

   (1) *You* are the sole owner of *your car*.

   (2) Neither *you* nor any member of *your* household has, within the past three years, had either:

   (a) a license to drive; or

   (b) a vehicle registration

   suspended, revoked, or refused.

   (3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:

   a. the statements in 3.b. above are made by such named insured or applicant and are true; and

   b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow:

   a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

   b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary.

6)  -6DVVRQGSVVDI- 000291

Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

## DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

*Bodily Injury* means bodily injury to a *person* and sickness, disease, or death that results from it.

*Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads. *Car* does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

*Car Business* means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

*Emergency Medical Condition* means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

1. Serious jeopardy to patient health;

2. Serious impairment to bodily functions; or

3. Serious dysfunction of any bodily organ or part.

*Fungi* means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

   a. Mycotoxins;

   b. Spores;

   c. Scents; or

   d. Byproducts.

*Medical Expenses* means *reasonable charges* incurred for *medically necessary* medical, surgical, X-ray, dental, and rehabilitative services, including *medically necessary* prosthetic devices and *medically necessary* ambulance, hospital, and nursing services.

*Medical Expenses* do not include any:

1. massage as defined in s. 480.033, Florida Statutes;

2. acupuncture as defined in s. 457.102, Florida Statutes;

3. services, care, treatment, or supplies provided by any massage therapist; or

4. services, care, treatment, or supplies provided by any acupuncturist.

*Medically Necessary* means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

1. in accordance with generally accepted standards of medical practice;

2. clinically appropriate in terms of type, frequency, extent, site, and duration; and

3. not primarily for the convenience of the patient, physician, or other healthcare provider.

*Motor Vehicle* means a vehicle with four or more wheels that:

1. is self-propelled and is of a type:

   a. designed for; and

   b. required to be licensed for use on Florida highways; or

2. is a trailer or semitrailer designed for use with a vehicle described in 1. above.

*Motor Vehicle* does not include:

1. a mobile home; or

2. any motor vehicle which is:

   a. used in mass transit, other than public school transportation;

   b. designed to transport more than five passengers, exclusive of the operator; and

4

9810A

c. **owned by** a municipality, a transit authority, or a political subdivision of the state.

**Newly Acquired Car** means a **car** newly **owned by you**. A **car** ceases to be a **newly acquired car** on the earlier of:

1. the effective date and time of a policy, including any binder, issued by **us** or any other company that describes the **car** as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the **car** is delivered to **you**.

If a **newly acquired car** is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that **newly acquired car**, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the **newly acquired car** is delivered to **you**.

**No-Fault Act** means the Florida Motor Vehicle No-Fault Law and any amendments.

**Non-Owned Car** means a **car** that is in the lawful possession of **you** or any **resident relative** and that neither:

1. is **owned by**:
   a. **you**;
   b. any **resident relative**;
   c. any other **person** who resides primarily in **your** household; or
   d. an employer of any **person** described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:
   a. **you**; or
   b. any **resident relative**

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or **loss**.

**Occupying** means in, on, entering, or exiting.

**Our** means the Company issuing this policy as shown on the Declarations Page.

**Owned By** means:

1. owned by;
2. registered to; or
3. leased, if the lease is written for a period of 6 months or more, to.

**Pedestrian** means a **person** who is not **occupying**:

1. a motor vehicle; or

2. a vehicle designed to be pulled by a motor vehicle.

**Person** means a human being.

**Private Passenger Car** means:

1. a **car** of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry **persons** and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:
   a. while not used for:
      (1) wholesale; or
      (2) retail
      pickup or delivery; and
   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

**Reasonable Charge**, which includes reasonable expense, means an amount determined by **us** to be reasonable in accordance with the **No-Fault Act**, considering one or more of the following:

1. usual and customary charges;
2. payments accepted by the provider;
3. reimbursement levels in the community;
4. various federal and state medical fee schedules applicable to **motor vehicle** and other insurance coverages;
5. the schedule of maximum charges in the **No-Fault Act**,
6. other information relevant to the reasonableness of the charge for the service, treatment, or supply; or
7. Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, if the coding policy or payment methodology does not constitute a utilization limit.

**Relative** means a relative of any degree by blood or marriage who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

**Resident Relative** means a **person**, other than **you**, who resides primarily with the first **person** shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

5

9810A

2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

***State Farm Companies*** means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

***Temporary Substitute Car*** means a *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a ***non-owned car*** and a ***temporary substitute car***, then it is considered a ***temporary substitute car*** only.

***Trailer*** means:

1. a trailer:

   a. designed to be pulled by a ***private passenger car***;

b. not designed to carry ***persons***; and

c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a *car*.

***Us*** means the Company issuing this policy as shown on the Declarations Page.

***We*** means the Company issuing this policy as shown on the Declarations Page.

***You*** or ***Your*** means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a ***person***, then "***you***" or "***your***" includes the spouse of the first ***person*** shown as a named insured if the spouse resides primarily with that named insured.

***Your Car*** means the vehicle shown under "YOUR CAR" on the Declarations Page. ***Your Car*** does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask *us* to replace it with a *car* newly ***owned by you***, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly ***owned by you*** is delivered to *you*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.

## LIABILITY COVERAGE (Bodily Injury and Property Damage)

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

### Additional Definition

***Insured*** means:

1. *you* and ***resident relatives*** for:

   a. the ownership, maintenance, or use of:

      (1) *your car*;

      (2) a ***newly acquired car***; or

      (3) a ***trailer***; and

   b. the maintenance or use of:

      (1) a ***non-owned car***; or

      (2) a ***temporary substitute car***;

2. the first ***person*** shown as a named insured on the Declarations Page and that named insured's

spouse who resides primarily with that named insured for the maintenance or use of a *car* that is ***owned by***, or furnished by an employer to, a ***person*** who resides primarily in *your* household, but only if such *car* is neither ***owned by***, nor furnished by an employer to, the first ***person*** shown as a named insured on the Declarations Page or that ***person's*** spouse;

3. any other ***person*** for his or her use of:

   a. *your car*;

   b. a ***newly acquired car***;

   c. a ***temporary substitute car***; or

   d. a ***trailer*** while attached to a *car* described in a., b., or c. above.

Such vehicle must be used with *your* express or implied permission; and

6) -6DVVRSDVVDL- 000294

4. any other **person** or organization vicariously liable for the use of a vehicle by an **insured** as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither **owned by**, nor hired by, that other **person** or organization.

**Insured** does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. **We** will pay damages an **insured** becomes legally liable to pay because of:

   a. **bodily injury** to others; and

   b. damage to property

   caused by an accident that involves a vehicle for which that **insured** is provided Liability Coverage by this policy.

2. **We** have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an **insured** in any claim or lawsuit, with attorneys chosen by **us**; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

**We** will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by **us** to defend an **insured** who is sued for such damages. **We** have no duty to pay attorney fees incurred after **we** deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2. Court costs awarded by the court against an **insured** and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which **we** defend an **insured** with attorneys chosen by **us**.

   **We** have no duty to pay court costs incurred after **we** deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the **insured** is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages **we** pay; or

      (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   **We** have no duty to pay interest that accrues after **we** deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. **We** also have no duty to pay interest that accrues on any damages paid or payable by a party other than the **insured** or **us**;

4. Premiums for bonds, provided by a company chosen by **us**, required to appeal a decision in a lawsuit against an **insured**. **We** have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after **we** deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an **insured**:

   a. Loss of wages or salary, but not other income, up to $200 for each day an **insured** attends, at **our** request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an **insured** at **our** request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an **insured** must be reported to **us** before **we** will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for **bodily injury** are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most **we** will pay for the sum of:

1. all damages resulting from **bodily injury** to any one **person** injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other **persons** as a direct result of that **bodily injury**.

6) -6DVVRQ6VVDl- 000295

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *persons* who sustained damages or emotional distress in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. that have already been paid under Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR *BODILY INJURY* TO:

   a. *YOU*;

   b. *RESIDENT RELATIVES*; AND

   c. ANY OTHER *PERSON* WHO BOTH RESIDES PRIMARILY WITH AN *INSURED* AND WHO:

      (1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR

      (2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees, or if this coverage, of this policy, is used to certify financial responsibility;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

7. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*;

   b. any *resident relative*; or

   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

9. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

11. FOR DAMAGE TO PROPERTY WHILE IT IS:

    a. *OWNED BY*;

    b. RENTED TO;

    c. USED BY;

    d. IN THE CARE OF; OR

    e. TRANSPORTED BY

8

9810A

6) -6DVVRC6VVDI- 000296

*YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE.  This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

12. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

13. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILLCLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR

15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If liability coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

a. the liability coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies.  *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides liability coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides liability coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides liability coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

9
9810A

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides liability coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PROPERTY DAMAGE LIABILITY COVERAGE

This policy provides Property Damage Liability Coverage if "B" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:

   a. the ownership, maintenance, or use of:

      (1) *your car*;

      (2) a *newly acquired car*; or

      (3) a *trailer*; and

   b. the maintenance or use of:

      (1) a *non-owned car*; or

      (2) a *temporary substitute car*;

2. the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household,

but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

3. any other *person* for his or her use of:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* express or implied permission; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

6) -6DVVR&SVVDI- 000298

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of damage to property caused by an accident that involves a vehicle for which that *insured* is provided Property Damage Liability Coverage by this policy;

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Property Damage Liability Coverage.

3. *We* will only defend an *insured* in a claim or lawsuit for damages payable under this policy's Property Damage Liability Coverage, that are caused by an accident for which that *insured* is provided Property Damage Liability Coverage by this policy.  If a claim or lawsuit seeks damages due to both property damage and *bodily injury*, then *we* will only defend the *insured* for property damage, and the *insured* will be required to hire and pay attorneys to defend the *insured* for damages due to *bodily injury*.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Property Damage Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

2. Court costs awarded by the court against an *insured* and resulting from that part of a lawsuit:

   a. that seeks damages payable under this policy's Property Damage Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Property Damage Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Property Damage Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.  *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*.

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*.  *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Property Damage Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Property Damage Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limit**

The Property Damage Liability Coverage limit for damage to property is shown on the Declarations Page under "Property Damage Liability Coverage – Limit – Each Accident".  The limit shown is the most *we* will pay for all damages resulting from damage to property  in any one accident.

6) -6DVVRC S VVDI- 000299

The Property Damage Liability Coverage limit is the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES DAMAGE TO PROPERTY;
2. FOR *BODILY INJURY*;
3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;
4. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;
5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;
6. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:
   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or business partner of a. or b. above
   
   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;
7. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;
8. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to

the maintenance or use of a *private passenger car*;

9. FOR DAMAGE TO PROPERTY WHILE IT IS:
   a. *OWNED BY*;
   b. RENTED TO;
   c. USED BY;
   d. IN THE CARE OF; OR
   e. TRANSPORTED BY

   *YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:
   a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;
   b. residence while rented to or leased to an *insured*;
   c. private garage while rented to or leased to an *insured*.

10. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;
11. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;
12. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:
    a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (12.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR
13. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Property Damage Liability Coverage Applies**

1. If property damage liability coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

   a. the property damage liability coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Property Damage Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides property damage liability coverage which applies to the accident as primary coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other property damage liability coverage that apply as primary coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides property damage liability coverage which applies to the accident as primary coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Property Damage Liability Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides property damage liability coverage which applies to the accident as excess coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other property damage liability coverage that apply as excess coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides property damage liability coverage which applies to the accident as excess coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as excess coverage.

6)  -6DVVRQSVVDI- 000301

**Required Out-of-State Liability Coverage**

If:

1. an **insured** is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## NO-FAULT COVERAGE

This policy provides No-Fault  Coverage if "P" with a number beside it is shown under "SYMBOLS" on the Declarations Page.  "P" with a number beside it is **your** coverage symbol. Check **your** coverage symbol shown on the Declarations Page with the SCHEDULE in the Limits section.  The Income Loss option **you** have selected is shown by **your** coverage symbol.

**Additional Definition**

**Insured** means:

1. named insureds and **relatives**:

   a. while **occupying** a **motor vehicle**;

   b. struck as a **pedestrian** by a **motor vehicle**; or

2. any other **person** while **occupying** or **struck** as a **pedestrian** by:

   a. **your car**;

   b. a **newly acquired car**;

   c. a **temporary substitute car**; or

   d. a **trailer** while attached to a **car** described in a., b., or c. above.

**Insuring Agreement**

**We** will pay in accordance with the **No-Fault Act** properly billed and documented **reasonable charges** for **bodily injury** to an **insured** caused by an accident resulting from the ownership, maintenance, or use of a **motor vehicle** as follows:

1. **Medical Expenses**

   **We** will pay 80% of properly billed and documented **medical expenses**, but only if that **insured** receives initial services and care from a provider described in A. below within 14 days

after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

**We** will not pay for any **medical expenses** if that **insured** does not receive initial services and care from a provider described in A. below within 14 days after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

**We** will only pay **medical expenses** for:

A. initial services and care:

   (1) lawfully provided, supervised, ordered or prescribed by:

       (a) a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

       (b) a dentist licensed under chapter 466 of the Florida Statutes; or

       (c) a chiropractic physician licensed under chapter 460 of the Florida Statutes;

   (2) provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

   (3) provided by a **person** or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

B. upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

14
9810A

(1) a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

(2) a dentist licensed under chapter 466 of the Florida Statutes;

(3) a chiropractic physician licensed under chapter 460 of the Florida Statues; or

(4) to the extent permitted by applicable law and under the supervision of a *person* described in (1), (2), or (3) immediately above;

    (a) a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

    (b) an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

C. follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following *persons* or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

    (a) has a medical director licensed under chapter 458, chapter 459,

or chapter 460 of the Florida Statutes;

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

    i. general medicine;

    ii. radiography;

    iii. orthopedic medicine;

    iv. physical medicine;

    v. physical therapy;

    vi. physical rehabilitation;

    vii. prescribing or dispensing outpatient prescription medication; or

    viii. laboratory services.

2. **Income Loss**

*We* will pay, when properly documented, 60% of any loss of gross income and loss of earnings capacity per individual injured *insured* from that *insured's* inability to work that is proximately caused by the injury sustained by that individual *insured*.

3. **Replacement Services Loss**

*We* will pay, when properly documented, *reasonable charges* incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the individual injured *insured* would have performed without income for the benefit of his or her household.

4. **Death Benefits**

*We* will pay $5,000 per deceased individual *insured*.

**Limits**

1. *We* will not pay any charge that the *No-Fault Act* does not require *us* to pay, or the amount of any charge that exceeds the amount the *No-Fault Act* allows to be charged.

2. The most *we* will pay for each injured *insured* as a result of any one accident is $10,000 for all combined **Medical Expenses**, **Income Loss**, and **Replacement Services Loss**, described in the **Insuring Agreement** of this policy's No-Fault Coverage.

15

9810A

The limit for **Medical Expenses** is $10,000 if a physician (excluding a chiropractic physician), a dentist, a physician assistant, or an advanced registered nurse practitioner described in 1.A. or 1.B under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* had an *emergency medical condition*.

The limit for **Medical Expenses** is $2,500 if any healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* did not have an *emergency medical condition*.

*We* will limit payment of **Medical Expenses** described in the **Insuring Agreement** of this policy's No-Fault Coverage to 80% of a properly billed and documented *reasonable charge*, but in no event will *we* pay more than 80% of the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

a. For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

(III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-subparagraph, then *we* will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

3. *We* will pay a **Death Benefit** of $5,000 per deceased individual *insured*. **Death Benefits** are in addition to the **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** limit.

4. SCHEDULE

| Coverage Symbol | Income Loss Benefits Eliminated For Named Insureds | Income Loss Benefits Eliminated For Named Insureds' Dependent *Relatives* |
|---|---|---|
|  |  |  |
| P10 | No | No |
| P14 | Yes | Yes |
| P19 | Yes | No |

**Application of Any Deductible and Workers' Compensation Offset**

1.  The deductible amount, if any, is shown on the Declarations Page beside *your* coverage symbol. The deductible amount does not apply to **Death Benefits**.

    The deductible amount applies to:

    a.  each named insured if "N" follows the deductible amount; or

    b.  each named insured and each dependent *relative* if "N" does not follow the deductible amount.

    Any deductible will be applied to 100% of properly billed and documented **Medical Expenses**, properly documented **Income Loss**, and properly documented **Replacement Services Loss** that are eligible to be paid under this coverage. The deductible will be applied to such expenses and losses upon our receipt of reasonable documented proof of the expenses and losses and the amount of expenses and losses incurred.

2.  After any applicable deductible has been applied, *we* will pay the balance of properly billed and documented **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** in accordance with the percentages and limits as described in the section titled **Limits**.

3.  *We* will reduce the amount payable as determined in item 2. above by any workers' compensation benefits received for the same loss or expense.

**Partial Payment or Rejection of a Claim**

If *we* pay only a portion of a claim or reject a claim due to an alleged error in the claim, then *we* shall, at the time of the partial payment or rejection, provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the *person* making the claim, at the *person's* option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

In a dispute between the *insured* and *us*, or between an assignee of the *insured's* rights and *us*, upon request, *we* will notify the *insured* or the assignee that the policy limits under this section have been reached within 15 days after the limits have been reached.

**Nonduplication**

*We* will not pay under No-Fault Coverage any benefits:

1.  that have already been paid to or for the *insured*:

    a.  by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

    b.  for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*;

2.  that:

    a.  have already been paid;

    b.  could have been paid; or

    c.  could be paid

    to or for the *insured* under other no-fault coverage, any disability benefits law, or similar law; or

3.  that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR:

1.  ***BODILY INJURY*** TO:

    a.  ANY ***PEDESTRIAN*** NOT A RESIDENT OF FLORIDA; OR

    b.  ANY ***PERSON*** ENTITLED TO NO-FAULT BENEFITS FROM:

        (1) THE OWNER OF A ***MOTOR VEHICLE*** OTHER THAN A NAMED INSURED; OR

        (2) THAT OWNER'S INSURER.

    This exclusion (1.) does not apply to any named insured or any *relative*;

2.  ANY NAMED INSURED OR ***RELATIVE*** WHO SUSTAINED ***BODILY INJURY*** WHILE ***OCCUPYING*** A ***MOTOR VEHICLE OWNED BY*** THE NAMED INSURED AND NOT INSURED UNDER THIS POLICY;

3.  ANY ***INSURED PERSON***:

    a.  WHOSE CONDUCT CONTRIBUTED TO HIS OR HER ***BODILY INJURY*** UNDER ANY OF THE FOLLOWING CIRCUMSTANCES:

        (1) CAUSING ***BODILY INJURY*** TO HIMSELF OR HERSELF INTENTIONALLY; OR

        (2) WHILE COMMITTING A FELONY;

    b.  WHOSE ***BODILY INJURY*** OCCURRED WHILE:

6) -6DVVRC6VVDI- 000305

(1) DRIVING *YOUR CAR* OR A *NEW-LY ACQUIRED CAR* WITHOUT *YOUR* PERMISSION; OR

(2) *OCCUPYING* A *MOTOR VEHICLE* LOCATED FOR USE AS A DWELL-ING OR PREMISES;

c. WHO OWNS A *MOTOR VEHICLE* SUB-JECT TO THE *NO-FAULT ACT.* This exclusion (3.c.) does not apply to:

(1) any named insured;

(2) the spouse of any named insured; and

(3) any *relative* while *occupying your car* if the accident occurs outside Florida; OR

d. WHO REFUSES TO:

(1) SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAM-INATION UNDER OATH; OR

(2) PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

4. INCOME LOSS WHEN THE SCHEDULE SHOWS INCOME LOSS BENEFITS ARE ELIMINATED UNDER *YOUR* COVERAGE SYMBOL;

5. ANY MASSAGE AS DEFINED IN S. 480.033, FLORIDA STATUTES, OR ACU-PUNCTURE AS DEFINED IN S. 457.102, FLORIDA STATUTES, REGARDLESS OF THE *PERSON* OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

6. ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other No-Fault Coverage Applies**

1. If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

a. the No-Fault Coverage limits of such poli-cies shall not be added together to deter-mine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single high-est applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by one or more sources other than the *State Farm Companies* apply to the same *bodily injury*, then:

a. the No-Fault Coverage limits of such poli-cies shall not be added together to deter-mine the most that may be paid;

b. the maximum amount that may be paid from all such policies combined is the single high-est applicable limit provided by any one of the policies, subject to *our* pro rata share of the highest applicable limit provided by any one of the policies; and

c. *we* are entitled to recover from each insur-er that is liable to pay no-fault coverage benefits to or for the *insured* who sus-tained *bodily injury*, an equitable pro rata share of benefits paid and expenses in-curred in processing the claim.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such pay-ment;

5. Any *person* or organization that provides the medical services or funeral services; or

6. Any *person* appearing to *us* to be equitably entitled to receive such payment.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Dec-larations Page.

**Additional Definition**

*Insured* means named insureds and *relatives*:

1. while *occupying* a *motor vehicle*;

2. through being struck as a *pedestrian* by a *mo-tor vehicle*; or

3. through being struck as a *pedestrian* by a mo-torcycle of a type required to be licensed for use on Florida highways.

6) -6DVVRCSVVDI- 000306

**Insuring Agreement**

1. Medical Payments Coverage is excess over No-Fault Coverage. The no-fault deductible, if any, is not payable under Medical Payments Coverage.

2. **We** will pay properly billed and documented **medical expenses** for services and care that are incurred because of **bodily injury** to an **insured** caused by an accident resulting from the ownership, maintenance, or use of a **motor vehicle**, but only:

   a. if that **insured** receives initial services and care from a provider described in A. below within 14 days after the **motor vehicle** accident that caused **bodily injury** to that **insured**; and

   b. if such services and care are provided within three years after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

   **We** will not pay for any **medical expenses** if the **insured** does not receive initial services and care from a provider described in A. below within 14 days after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

   **We** will only pay **medical expenses** for:

   A. initial services and care:

      (1) lawfully provided, supervised, ordered or prescribed by:

         (a) a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

         (b) a dentist licensed under chapter 466 of the Florida Statutes; or

         (c) a chiropractic physician licensed under chapter 460 of the Florida Statutes;

      (2) provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

      (3) provided by a **person** or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

   B. upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

      (1) a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

      (2) a dentist licensed under chapter 466 of the Florida Statutes;

      (3) a chiropractic physician licensed under chapter 460 of the Florida Statues; or

      (4) to the extent permitted by applicable law and under the supervision of a **person** described in (1), (2), or (3) immediately above;

         (a) a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

         (b) an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

   C. follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following **persons** or entities:

      (1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

      (2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

      (3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

      (4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

      (5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

         (a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

6)  -6DVVRC  SVVDI- 000307

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

    i. general medicine;

    ii. radiography;

    iii. orthopedic medicine;

    iv. physical medicine;

    v. physical therapy;

    vi. physical rehabilitation;

    vii. prescribing or dispensing outpatient prescription medication; or

    viii. laboratory services.

3. *We* will pay funeral expenses incurred for an *insured* who dies within three years immediately following the date of a *motor vehicle* accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

    a. utilization reviews;

    b. peer reviews; and

    c. medical bill reviews

    to determine if the incurred expenses are *reasonable charges* and *medically necessary* for the *bodily injury* sustained.

2. use a medical examination of the *insured* to determine if:

    a. the *bodily injury* was caused by a *motor vehicle* accident; and

    b. the expenses incurred are *medically necessary*.

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Limits**

The Medical Payments Coverage limit is dependent upon determination of an *emergency medical condition* and is shown on the Declarations Page.

1. **Emergency Medical Condition**

    a. The Medical Payments Coverage limit for an *insured* who has been determined to have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if the insured has been determined to have an *emergency medical condition* by a physician, a dentist, a physician assistant, or an advanced registered nurse practitioner described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage regardless of the number of:

    (1) *insureds*;

    (2) claims made;

    (3) vehicles insured; or

    (4) vehicles involved in the accident.

    b. Subject to the limit shown on the Declarations Page, as described in 1.a. above, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

2. **Not An Emergency Medical Condition**

    The Medical Payments Coverage limit for an *insured* who has been determined to not have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Not An Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if the *insured* has been determined to not have an *emergency medical condition* by a healthcare provider described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, regardless of the number of:

    a. *insureds*;

    b. claims made;

    c. vehicles insured; or

    d. vehicles involved in the accident.

3. In no event will *we* pay more than the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

a. For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   (I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

   (II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   (III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-sub-subparagraph, then *we* will limit reimbursement to the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

**Nonduplication**

*We* will not pay under Medical Payments Coverage any damages or expenses:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*; or

2. that have already been paid under No-Fault Coverage or Uninsured Motor Vehicle Coverage of this policy, the no-fault coverage, medical payments coverage, or uninsured motor vehicle coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. UNTIL THE MEDICAL EXPENSE BENEFITS OF ALL NO-FAULT COVERAGE AVAILABLE FROM ALL SOURCES HAVE BEEN EXHAUSTED. This does not apply to the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

2. WHO REFUSES TO:

   a. SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAMINATION UNDER OATH; OR

   b. PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

3. FOR ANY *MEDICAL EXPENSES* THAT ARE NOT PAYABLE UNDER NO-FAULT COVERAGE. This does not include:

   a. the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

b. *medical expenses* not paid because the medical expense benefits of all no-fault coverage available from all sources have been exhausted;

c. *medical expenses* for *bodily injury* while *occupying* a *non-owned car* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; and

d. *medical expenses* for *bodily injury* sustained through being struck as a *pedestrian* by a:

(1) *motor vehicle* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; or

(2) motorcycle of a type required to be licensed for use on Florida highways;

4. FOR MILEAGE COSTS FOR THE USE OF A PERSONAL VEHICLE;

5. FOR ANY INTEREST CHARGES;

6. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

7. WHO:

a. IS *OCCUPYING* OR THROUGH BEING STRUCK AS A PEDESTRIAN BY A VEHICLE *OWNED BY* ANY NAMED INSURED OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS POLICY; OR

b. AT THE TIME OF THE ACCIDENT OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT* AND IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT*.

This exclusion (7.b.) does not apply to:

(1) any named insured;

(2) the spouse of any named insured; and

(3) any *relative* while *occupying your car*, a *newly acquired car*, a *temporary substitute car*, or a *non-owned car* if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage;

8. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

9. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

a. the use of a *private passenger car* on a share-the-expense basis; or

b. an *insured* while *occupying* a *non-owned car* as a passenger;

10. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS.* This exclusion does not apply to:

a. any named insured;

b. any *relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

11. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

12. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

13. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

14. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

b. RUNS ON RAILS OR CRAWLER-TREADS;

15. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

16. WHOSE *BODILY INJURY* RESULTS FROM:

a. NUCLEAR REACTION;

b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

17. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*;

18. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (18.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

19. FOR ANY MASSAGE AS DEFINED IN S.480.033, FLORIDA STATUTES, OR ACUPUNCTURE AS DEFINED IN S.457.102, FLORIDA STATUTES, REGARDLESS OF THE *PERSON* OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

20. FOR ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance

which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

23
9810A

6)  6DVVRC SVVDI 000311

then **we** will pay the proportion of **medical expenses** and funeral expenses payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b.  If:

(1) more than one vehicle policy issued to any named insured or any **relative** by the **State Farm Companies** provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then the **State Farm Companies** will pay the proportion of **medical expenses** and funeral expenses payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

**We** may, at **our** option, make payment to one or more of the following:

1. The **insured**;

2. The **insured's** surviving spouse;

3. A parent or guardian of the **insured**, if the **insured** is a minor or an incompetent **person**;

4. A **person** authorized by law to receive such payment;

5. Any **person** or organization that provides the **medically necessary** services or funeral services; or

6. Any **person** appearing to **us** to be equitably entitled to receive such payment.

## UNINSURED MOTOR VEHICLE COVERAGE
### (Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

**Insured** means:

1. **you**;

2. **resident relatives**;

3. any other **person** while **occupying**:

   a. **your car**;

   b. a **newly acquired car**;

   c. a **temporary substitute car**; or

   d. a trailer attached to a **car** described in a., b., or c. above.

   Such vehicle must be used with **your** express or implied permission.  Such other **person** occupying a vehicle used to carry **persons** for a charge is not an **insured**; and

4. any **person** entitled to recover compensatory damages as a result of **bodily injury** to an **insured** as defined in 1., 2., or 3. above.

**Uninsured Motor Vehicle** means a land motor vehicle and a trailer attached to such land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or

   b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but

   (1) the limits are less than required by the financial responsibility act of the state of Florida;

   (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for **bodily injury** sustained by the **insured**; or

   (3) the entity providing the financial responsibility:

       (a) denies that it provides liability coverage for compensatory damages that result from the accident; or

       (b) is or becomes insolvent; or

24
9810A

2.  the owner or driver:

   a.  of which could not reasonably have been identified;

   b.  remains unknown; and

   c.  that causes *bodily injury* to the *insured*.

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1.  whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

2.  *owned by*, rented to, or furnished or available for the regular use of *you* or a *resident relative*;

3.  designed for use primarily off public roads except while on public roads;

4.  while located for use as a dwelling or other premises; or

5.  whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1.  *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*.

2.  The *bodily injury* for which *we* will pay compensatory damages must be:

   a.  sustained by an *insured*;

   b.  caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*; and

   c.  a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1.  consent in writing, then the *insured* may accept such settlement offer.

2.  inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

   a.  *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

   b.  any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1.  The *insured* and *we* must agree to the answers to the following two questions:

   a.  Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

   b.  If the *insured* and *we* agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

2.  If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation**, **Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1.  all damages resulting from *bodily injury* to any one *insured* injured in any one accident; and

2.  all damages, including damages for emotional distress, sustained by other *insureds* as a direct result of that *bodily injury*.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *insureds* who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1.  *insureds*;

2.  claims made;

6) -6DVVRCSVVDI- 000313

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

    a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

    b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

    a. have already been paid;

    b. could have been paid; or

    c. could be paid

    to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. TO THE EXTENT IT BENEFITS:

    a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

    b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

    c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

3. FOR PUNITIVE OR EXEMPLARY DAMAGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury* sustained by a *person* other than *you* or any *resident relative*, then:

    a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

    If uninsured motor vehicle coverage is provided on a primary basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage for an *insured* who sustains *bodily injury*.

    If uninsured motor vehicle coverage is provided on an excess basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as excess coverage.

4. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then *we* may choose one or more policies from which to make payment.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## UNINSURED MOTOR VEHICLE COVERAGE
### (Non-Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U3" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying*:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a trailer attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* express or implied permission. Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., and 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle and a trailer attached to such land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or

   b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but

      (1) the limits are less than required by the financial responsibility act of the state of Florida;

      (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for *bodily injury* sustained by the *insured*; or

      (3) the entity providing the financial responsibility:

         (a) denies that it provides liability coverage for compensatory damages that result from the accident; or

         (b) is or becomes insolvent; or

2. the owner or driver:

   a. of which could not reasonably have been identified;

   b. remains unknown; and

   c. that causes *bodily injury* to the *insured*.

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

2. *owned by*, rented to, or furnished or available for the regular use of *you* or a *resident relative*;

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1. *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*.

2. The *bodily injury* for which *we* will pay compensatory damages must be:

   a. sustained by an *insured*;

   b. caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*; and

   c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

27
9810A

6) -6DVVRＱＳＶＶDＩ- 000315

a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1. The *insured* and *we* must agree to the answers to the following two questions:

   a. Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

   b. If the *insured* and *we* agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

2. If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation**, **Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from *bodily injury* to any one *insured* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *insureds* as a direct result of that *bodily injury*.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *insureds* who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

   a. WHILE *OCCUPYING* A VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

   b. THROUGH BEING STRUCK BY A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*.

   This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* or through being struck by a motor vehicle not *owned by* one or both of them;

3. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW,

6)  -6DVVRQ  6 VVDI- 000316

DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

4. FOR PUNITIVE OR EXEMPLARY DAMAGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

29

9810A

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

   a. being driven by an *insured*; or

   b. in the custody of an *insured* if at the time of the *loss* it is:

     (1) not being driven; or

     (2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*;

6. a *non-owned trailer* while it is being used by an *insured*; and

7. a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily Rental Charge* means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle*. *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or

2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

6) -6DVVRC6VVDI- 000318

b. any other *person* who resides primarily in *your* household; or

c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

1. **Comprehensive Coverage**

    a. *We* will pay for *loss*, except *loss caused by collision*, to a *covered vehicle*.

    b. *We* will pay transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:

       (1) during the period that:

           (a) starts on the date *you* report the theft to *us*; and

           (b) ends on the earliest of:

               (i) the date the vehicle is returned to *your* possession in a drivable condition;

               (ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

               (iii) the date *we* offer to pay for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

       (2) during the period that:

           (a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

           (b) ends on the date the vehicle is repaired.

       These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

    c. The deductible does not apply to damage to the windshield of any *covered vehicle*.

2. **Collision Coverage**

    *We* will pay for *loss caused by collision* to a *covered vehicle*.

3. **Emergency Road Service Coverage**

    *We* will pay the fair cost incurred by an *insured* for:

a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**

    a. **Car Rental Expense**

       *We* will pay the *daily rental charge* incurred when an *insured* rents a *car* from a *car business* while *your car* or a *newly acquired car* is:

       (1) not drivable; or

       (2) being repaired

       as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

       *We* will pay this *daily rental charge* incurred during a period that:

       (1) starts on the date:

           (a) the vehicle is not drivable as a result of the *loss*; or

           (b) the vehicle is left at a repair facility if the vehicle is drivable; and

       (2) ends on the earliest of:

           (a) the date the vehicle has been repaired or replaced;

           (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

           (c) seven days after *we* offer to pay for the *loss* if the vehicle is:

               (i) a total loss as determined by *us*; or

               (ii) stolen and not recovered.

       The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

31
9810A

b. **Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

(a) starts after the *loss* occurs; and

(b) ends on the earlier of:

(i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

(ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive coverage deductible or collision coverage deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or

the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.

(1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

(a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

(b) A bid or repair estimate approved by *us*; or

(c) A repair estimate that is written based upon or adjusted to:

(i) the prevailing competitive price;

(ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a

6)  6DVVRC SVVDI  000320

survey made by *us*.  If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

(4) If *you* and *we* agree, then windshield glass will be repaired instead of replaced;

b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by mediation or appraisal.  Either the owner or *we* may request mediation or appraisal.

(2) Mediation will follow the rules outlined in this policy, found under **Mediation**, in the section titled **GENERAL TERMS**.

(3) Appraisal will follow the rules and procedures as listed below:

(a) The owner and *we* will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser.  If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party.  Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*.  Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

(f) *We* do not waive any of *our* rights by submitting to an appraisal.

(4) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it.  If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. **Car Rental Expense**

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

(1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount; or

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

33
9810A

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. **Travel Expenses**

   The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. **Rental Car – Repayment of Deductible Expense**

   The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

   a. INTENTIONALLY DAMAGED; OR

   b. STOLEN

   BY OR AT THE DIRECTION OF AN *IN-SURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

   a. THEFT;

   b. CONVERSION;

   c. EMBEZZLEMENT; OR

   d. SECRETION

   BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY AC-QUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

    a. LIEN AGREEMENT;

    b. RENTAL AGREEMENT;

    c. LEASE AGREEMENT; OR

    d. SALES AGREEMENT

    NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

    a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

    b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

    a. FAILS OR IS DEFECTIVE; OR

    b. IS DAMAGED AS A DIRECT RESULT OF:

6) -6DVVRQ6VVDI- 000322

(1)  WEAR AND TEAR;

(2)  FREEZING; OR

(3)  MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

a.  THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE* IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

b.  THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a.  *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b.  *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a.  DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b.  *OWNED BY* AN *INSURED*; AND

c.  NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

a.  BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b.  ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1.  If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2.  If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3.  The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4.  Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

6) -6DVVRQSVVDI- 000323

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

      (1) *You*;

      (2) The repairer; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

      (1) *You*;

      (2) The owner of such vehicle;

      (3) The repairer; or

      (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;

   b. The *insured* who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

**Insuring Agreement**

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1. dies; or

2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

**Death, Dismemberment and
Loss of Sight Benefits Schedules**

If the amount shown on the Declarations Page for the **insured** is $5,000, then **we** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

If the amount shown on the Declarations Page for the **insured** is $10,000, then **we** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

**Exclusions**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN **INSURED**:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A **CAR BUSINESS**;

2. WHILE **OCCUPYING**, LOADING, OR UN-LOADING:

   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

   b. A VEHICLE, OTHER THAN AN EMER-GENCY VEHICLE, WHILE USED IN THE:

      (1) **INSURED'S** BUSINESS; OR

      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A **CAR BUSINESS**.

      This exclusion (2.b.) does not apply if the vehicle is a **private passenger car**;

   c. A MILITARY VEHICLE; OR

   d. A VEHICLE WHILE IT IS:

      (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CON-TEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

      (2) ON A TRACK DESIGNED PRIMARI-LY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

3. WHILE **OCCUPYING**, LOADING, UN-LOADING, OR WHO IS STRUCK AS A **PE-DESTRIAN** BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. A MOTOR VEHICLE THAT IS DE-SIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LO-CATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, AND LOSS OF SIGHT THAT RESULTS FROM:

   a. WAR OF ANY KIND;

   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINA-TION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

   c. EXPOSURE TO **FUNGI**;

   d. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE **IN-SURED** WAS SANE OR INSANE; OR

   e. DISEASE except pus-forming infection due to **bodily injury** sustained in the ac-cident.

6) -6DVVRQ6VVDI- 000325

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1.  The *insured*;

2.  The *insured's* surviving spouse;

3.  A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4.  A *person* or organization authorized by law to receive such payment.

## INSURED'S DUTIES

1.  **Insured's Duty at the Time of an Accident or Loss**

    The *insured* must make a reasonable effort to identify:

    a.  the owners, operators, and passengers of the vehicles involved in the accident or *loss*;

    b.  the *person* or *persons* involved in the accident or *loss*; and

    c.  the potential witnesses to the accident or *loss*.

2.  **Notice to Us of an Accident or Loss**

    The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

    a.  *your* name;

    b.  the names and addresses of all *persons* involved in the accident or *loss*;

    c.  the hour, date, place, and facts of the accident or *loss*; and

    d.  the names and addresses of witnesses to the accident or *loss*.

3.  **Notice to Us of a Claim or Lawsuit**

    a.  If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

    b.  If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

4.  **Insured's Duty to Cooperate With Us**

    a.  The *insured* must cooperate with *us* and, when asked, assist *us* in:

        (1)  making settlements;

        (2)  securing and giving evidence; and

        (3)  attending, and getting witnesses to attend, depositions, hearings, and trials.

    b.  The *insured* must not, except at his or her own cost, voluntarily:

        (1)  make any payment to others; or

        (2)  assume any obligation to others

    unless authorized by the terms of this policy.

    c.  Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

5.  **Questioning Under Oath**

    Under:

    a.  No-Fault Coverage, each *insured* making claim or seeking payment, must, at *our* option:

        (1)  submit to an examination under oath;

        (2)  provide a statement under oath; or

        (3)  do both (1) and (2) above,

        as often as *we* reasonably require. Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *insured* answering questions under oath to answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

        The scope of the questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. Compliance with **Questioning Under Oath** is a condition precedent to receiving benefits.

    b.  all other coverages, each *insured* making claim or seeking payment, must, at *our* option:

        (1)  submit to an examination under oath;

        (2)  provide a statement under oath; or

        (3)  do both (1) and (2) above,

        as often as *we* reasonably require. Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *insured* answering questions under oath to

38
9810A

6) -6DVVRQ SVVDI- 000326

answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

6. **Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft or vandalism;

c. allow *us* to:

   (1) inspect any damaged property before its repair or disposal;

   (2) test any part or equipment before that part or equipment is removed or repaired; and

   (3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

   (1) records;

   (2) receipts; and

   (3) invoices

that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

7. **Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage**, and **Death, Dismemberment and Loss of Sight Coverage**

An *insured* making claim under:

a. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

   (1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

   (2) submit to be examined as often as *we* may reasonably require by physicians chosen and paid by *us*. A copy of the

report will be sent to the *person* upon written request.

   (a) Under No-Fault Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are no longer liable for subsequent benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations raises a rebuttable presumption that the *insured's* refusal or failure was unreasonable;

   (b) Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are not liable for coverage benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations will be considered unreasonable;

   (3) provide written authorization for *us* to obtain:

     (a) medical bills;

     (b) medical records;

     (c) wage, salary, and employment information; and

     (d) any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

   (4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. No-Fault Coverage or Medical Payments Coverage must, at *our* request, submit documentation from the appropriate healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage, or described in

6) -6DVVRQ6VVDI- 000327

2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, confirming whether the injured *insured* determined had, or did not have, an *emergency medical condition*;

c. No-Fault Coverage and Uninsured Motor Vehicle Coverage must send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

d. Uninsured Motor Vehicle Coverage must report an accident, involving a motor vehicle whose owner or driver remains unknown, to the police within 24 hours or as soon as reasonably practicable, and to *us* within 30 days.

## GENERAL TERMS

1. **When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

2. **Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page.

a. Liability Coverage, Property Damage Liability Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Physical Damage Coverages apply to accidents and *losses* that occur:

(1) in the United States of America and its territories and possessions;

(2) in Canada; and

(3) while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

b. No-Fault Coverage applies to accidental *bodily injury* sustained:

(1) by an *insured* in Florida; and

(2) by *you* and *relatives* outside Florida; but within:

(a) the United States of America, its territories or possessions; or

(b) Canada,

while *occupying your car*, a *newly acquired car*, or a *temporary substitute car*.

c. Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

3. **Limited Coverage in Mexico**

This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

a. **Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

*We* may, in addition to the damages described in item 1 of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at *our* option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

b. **Property Damage Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Property Damage Liability Coverage is changed to read:

*We* may, in addition to the damages described in items 1. and 2. of the **Insuring Agreement** of this policy's Property Damage Liability Coverage, pay or reimburse,

6)  6DVVRC SVVDI 000328

at our option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Property Damage Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

c. **No-Fault Coverage**

The definition of *insured* is changed read:

> *Insured* means named insured and *relatives* while *occupying*:
>
> (1) *your car*;
>
> (2) a *newly acquired car*;
>
> (3) a *temporary substitute car*; or
>
> (4) a *trailer* while attached to a *car* described in (1), (2), or (3) above.

d. **Medical Payments Coverage**

e. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF FLORIDA IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of Florida in the United States of America.

4. **Persons Acting On Our Behalf**

A company employee adjuster, independent adjuster, attorney, investigator, or other *persons* acting on *our* behalf that needs access to an *insured* or claimant or to the insured property that is the subject of a claim must provide at least 48 hours' notice to the *insured* or claimant, public adjuster, or legal representative before scheduling a meeting with the claimant or an onsite inspection of the insured property. The *insured* or claimant may deny access to the property if the notice has not been provided. The *insured* or claimant may waive the 48-hour notice.

A public adjuster must ensure prompt notice of property loss claims submitted to *us* by or through a public adjuster or on which a public adjuster represents the *insured* at the time the claim or notice of loss is submitted to *us*. The public adjuster must ensure that notice is given to *us*, the public adjuster's contract is provided to *us*, the property is available for inspection of the loss or damage by *us*, and *we* are given an opportunity to interview the *insured* directly about the loss and claim. *We* must be allowed to obtain necessary information to investigate and respond to the claim.

*We* may not exclude the public adjuster from its in-person meetings with the *insured*. *We* shall meet or communicate with the public adjuster in an effort to reach agreement as to the scope of the covered loss under the insurance policy. This section does not impair the terms and conditions of the insurance policy in effect at the time the claim is filed.

A public adjuster may not restrict or prevent *us*, company employee adjuster, independent adjuster, attorney, investigator, or other *person* acting on *our* behalf from having reasonable access at reasonable times to an *insured* or claimant or to the insured property that is the subject of a claim.

A public adjuster may not act or fail to reasonably act in any manner that obstructs or prevents *us* or *our* adjuster from timely conducting an inspection of any part of the insured property for which there is a claim for loss or damage. The public adjuster representing the *insured* may be present for *our* inspection, but if the unavailability of the public adjuster otherwise delays *our* timely inspection of the property, the public adjuster or the *insured* must allow *us* to have access to the property without the participation or presence of the public adjuster or *insured* in order to facilitate *our* prompt inspection of the loss or damage.

41
9810A

5. **Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

   (1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

   (2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

6. **Changes to This Policy**

a. **Changes in Policy Provisions**

   *We* may only change the provisions of this policy by:

   (1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

   (2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Florida without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

b. **Change of Interest**

   (1) No change of interest in this policy is effective unless *we* consent in writing.

   (2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured shown on the Declarations Page dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

   (a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

   (b) the legal representative of the deceased named insured.

   This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

   Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

c. **Joint and Individual Interests**

   If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

d. **Change of Policy Address**

   *We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

   (1) *you*; or

   (2) the United States Postal Service.

7. **Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon:

   (1) the purchase of other products or services from the *State Farm Companies*;

   (2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of

any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which **you** are a member, employee, subscriber, licensee, or franchisee.

d. The premium for this policy is based upon information **we** have received from **you** or other sources. **You** must inform **us** if any information regarding the following is incorrect or incomplete, or changes during the policy period, and **you** must answer questions **we** ask regarding the following:

(1) **Your car**, or its use, including annual mileage;

(2) The **persons** who regularly drive **your car**, including newly licensed family members;

(3) **Your** marital status; or

(4) The location where **your car** is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to **us** when **we** ask, then **we** may decrease or increase the premium during the policy period. If **we** decrease the premium during the policy period, then **we** will provide a refund or a credit in the amount of the decrease. If **we** increase the premium during the policy period, then **you** must pay the amount of the increase.

8. **Renewal**

**We** agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless **we** mail or deliver a nonrenewal notice or a cancellation notice as set forth in 9. and 10. below.

9. **Nonrenewal**

If **we** decide not to renew this policy, then, at least 45 days before the end of the current policy period, **we** will mail or deliver a nonrenewal notice to the most recent policy address that **we** have on record for the first named insured who is shown on the Declarations Page.

10. **Cancellation**

a. **How You May Cancel**

(1) **You** may cancel this policy by providing to **us** advance notice of the date cancellation is effective. **We** may confirm the cancellation in writing.

(2) However, if the policy provides Liability Coverage or Property Damage Liability Coverage and No-Fault Coverage, **you** may not cancel **your** policy during the first two months immediately following the policy effective date unless:

(a) **your car** has been totally destroyed;

(b) **you** have transferred ownership of **your car**;

(c) **you** have purchased another policy covering **your car**; or

(d) **you** are a member of the United States Armed Forces and have been called to or are on active duty outside the United States in an emergency situation.

b. **How and When We May Cancel**

(1) **We** may cancel this policy by mailing or delivering a written notice to the most recent policy address that **we** have on record for the first named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

(2) Except as provided under **Cancellation Due to Incorrect Premium**, the date cancellation is effective will be at least:

(a) 10 days after the date **we** mail or deliver the cancellation notice, if the cancellation is because the premium was not paid when due; or

(b) 45 days after **we** mail or deliver the cancellation notice, if the cancellation is because of any other reason.

(3) If **we** cancel this policy for nonpayment of premium during the first 60 days immediately following the effective date of this policy, **we** will do so only if a check used to pay the premium is dishonored for any reason or any other type of premium payment was subsequently determined to be rejected or invalid.

(4) After this policy has been in force for more than 59 days, **we** will not cancel this policy before the end of the current policy period unless it is based on one or more of the following reasons:

(a) Nonpayment of premium;

43
9810A

(b) *You*, any *resident relative*, or any other *person* who usually drives *your car* has had his or her driver's license or motor vehicle registration under suspension or revocation during the policy period or the 180 days immediately preceding its effective date, or if the policy is a renewal, during its policy period; or

(c) Material misrepresentation or fraud.

c. **Cancellation Due to Incorrect Premium**

(1) If *we* determine that *we* have charged *you* an incorrect premium for coverages requested in *your* insurance application, *we* will immediately notify *you* of any additional premium due. *You* may:

(a) maintain *your* policy in force by paying the additional amount due by the date stated in the notice; or

(b) cancel *your* policy by the date stated in the notice and receive a refund of any unearned premium.

(2) If *you* fail to respond by the date stated in the notice *we* will cancel *your* policy. The date cancellation is effective will be at least 14 days after the date *we* mail or deliver the cancellation notice.

d. **Return of Unearned Premium**

(1) If *you* cancel this policy, then premium will be earned on a pro rata basis. *We* may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed to *you* within 30 days after the effective date of the policy cancellation, or 30 days after *we* receive *your* request to cancel this policy, whichever is later.

(2) If *we* cancel this policy, then premium will be earned on a pro rata basis. Any unearned premium will be mailed at the time *we* cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation.

11. **Assignment**

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*. This does not include a post loss assignment of benefits.

12. **Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

13. **Concealment or Fraud**

a. **Coverages Other Than No-Fault and Medical Payments Coverage**

There is no coverage under this policy for any *person* who, or organization making claim or seeking payment that, has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

b. **No-Fault Coverage and Medical Payments Coverage**

Benefits shall not be due or payable to or on behalf of an *insured person* if that *person* has committed, by material act or omission, any insurance fraud relating to No-Fault Coverage or Medical Payments Coverage under this policy, if the fraud is admitted to in a sworn statement by the *insured* or if it is established in a court of competent jurisdiction. Any insurance fraud shall void all coverage arising from the claim related to such fraud under No-Fault Coverage or Medical Payments Coverage of the *insured person* who committed the fraud, irrespective of whether a portion of the *insured person's* claim may be legitimate, and any benefits paid prior to the discovery of the *insured person's* insurance fraud shall be recoverable by *us*, in their entirety, from the *person* who committed insurance fraud. *We* are entitled to all *our* costs and attorney's fees in any action in which *we* prevail that enforces *our* right of recovery under this provision.

Neither *we* nor the *insured* is required to pay a claim or charges:

(1) for any service or treatment that was not lawful at the time rendered; or

(2) to any *person* who knowingly submits a false or misleading statement relating to the claim or charges.

If *we* have reasonable belief that a fraudulent insurance act (s. 626.989, Florida Statutes, or s. 817.234, Florida Statutes) has been committed, *we* shall notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, *we* have an additional 60 days to

44
9810A

conduct a fraud investigation. Notwithstanding the demand letter conditions under the **Legal Action Against Us** provision of this policy, no later than 90 days after the submission of the claim, *we* must deny the claim or pay the claim with simple interest as provided in d. (2) under the **Legal Action Against Us** provision of this policy. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Insurance Fraud.

14. **Our Right to Recover Our Payments**

Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*. Under all other coverages, the following apply:

a. **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, that is not an *insured*, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(1) doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through *our* representatives when *we* ask.

b. **Reimbursement**

(1) If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(a) hold in trust for *us* the proceeds of any recovery; and

(b) reimburse *us* to the extent of *our* payment.

(2) *We* have a right of reimbursement against the owner or the insurer of the owner of a commercial motor vehicle for *our* payments of No-Fault benefits to any *person* having been an *occupant* of the commercial motor vehicle or having been struck by the commercial motor vehicle as a *pedestrian*.

*Our* right of reimbursement for benefits under No-Fault Coverage does not apply to an owner or registrant of a taxicab as identified in s.627.733(1)(b), Florida Statutes.

15. **Mediation**

The *insured* or *we* may demand mediation of any claim:

a. in an amount of $10,000 or less, resulting from:

1. *bodily injury* under No-Fault Coverage, Medical Payments Coverage, or Uninsured Motor Vehicle Coverages; or

2. death of or loss to an *insured* under Death, Dismemberment and Loss of Sight Coverage; or

b. in any amount, for a *loss* covered under Physical Damage Coverages,

by filing a written request with the Florida Department of Financial Services on a form which may be obtained from the Florida Department of Financial Services. The request must state why mediation is being requested and the issue in dispute.

The Florida Department of Financial Services will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible.

Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosure provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a *person* files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation. Any suit regarding a mediated dispute must be filed as prescribed under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.

6) -6DVVRQSVVDI- 000333

16. **Arbitration**

a. The *insured* or *we* may request, in writing, arbitration of any claim. If *you* and *we* agree to arbitrate, then arbitration will follow the procedure outlined below.

(1) The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

(2) The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

(3) Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

(4) The arbitrators shall only decide the answers to the following two questions:

(a) are damages compensatory; and

(b) if damages are compensatory, then what is the amount of compensatory damages.

(5) Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

(6) A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

(a) *us*;

(b) the *insured*;

(c) any assignee of the *insured*; and

(d) any *person* or organization with whom the *insured* expressly or impliedly contracts.

(7) Subject to (1), (2), (3), (4), (5), and (6) above, state court rules governing

procedure and admission of evidence will be used.

(8) *We* do not waive any of *our* rights by submitting to arbitration.

b. *We* are not bound by any:

(1) judgment obtained without *our* written consent; or

(2) default judgment against any *person* or organization other than *us*.

c. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

17. **Legal Action Against Us**

a. Legal action may only be brought against *us* within five years immediately following the date of the accident or *loss*.

b. Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy.

c. Under No-Fault Coverage, *we* shall create and maintain for each *insured* a log of No-Fault Coverage benefits *we* have paid on behalf of the *insured*. If litigation is commenced, *we* shall provide to the *insured* a copy of the log within 30 days after receiving a request for the log from the *insured*.

d. In addition, legal action may only be brought against *us* regarding:

(1) Liability Coverage and Property Damage Liability Coverage, after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(a) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(b) agreement between the claimant and *us*.

(2) No-Fault Coverage, if within 30 days after *our* receipt of written notice of an intent to initiate litigation for:

(a) an overdue claim, applicable interest, and a penalty of 10% of the overdue amount that *we* pay, subject to a maximum penalty of $250; or

6) -6DVVRC–SVVDI- 000334

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice and to pay a penalty of 10%, subject to a maximum penalty of $250, when *we* pay for such future treatment.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

Such notice of intent to initiate litigation may not be sent until the claim is overdue, including any additional time *we* have to pay the claim pursuant to the *No-Fault Act*.

The notice must state that it is a "demand letter under s.627.736" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to *us*; and

iii. to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, any other standard form approved by the Florida Office of Insurance Regulation, or the lost wage statement previously submitted, may be used as the itemized statement. To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website. Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(3) Medical Payments Coverage unless *we* receive written notice of an intent to initiate litigation and if within 30 days after *our* receipt of such for:

(a) a claim, *we* fail to pay the claim; or

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

The notice must state that it is a "demand letter for Medical Payments Coverage" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to us; and

47
9810A

iii. to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, or any other standard form approved by the Florida Office of Insurance Regulation, may be used as the itemized statement. To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website. Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(4) Uninsured Motor Vehicle Coverage if the *insured* or that *insured's* legal representative within five years immediately following the date of the accident:

   (a) presents an Uninsured Motor Vehicle Coverage claim to *us*;

   (b) files a lawsuit, in a state or federal court that has jurisdiction against *us*;

   (c) consents to a jury trial if requested by *us*; and

   (d) agrees that *we* may contest the issues of liability and the amount of damages.

*We* are not bound by any judgment obtained without *our* written consent.

*We* are not bound by default judgment against any *person* or organization other than *us*.

Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

18. **Choice of Law**

Without regard to choice of law rules, the law of the state of:

a. Florida will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

   (1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

   (2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

19. **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

Policy Form 9810A
©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

**State Farm Mutual Automobile Insurance Company**
PO Box 2358
Bloomington IL 61702-2358

**DECLARATIONS PAGE**



NAMED INSURED

AT2
003972 0058
59-6825-4  C    A
SASSON, ASSAF & ADA L
3385 NE 167TH ST
N MIAMI BEACH FL  33160-3849

| POLICY NUMBER   J53 4643-B02-59B |
|---|
| POLICY PERIOD APR 19 2022 to AUG 02 2022<br>12:01 A.M. Standard Time |

STATE FARM PAYMENT PLAN NUMBER
1520065519

AGENT

ANTHONY GARCIA
1035 S STATE ROAD 7 STE 311
WELLINGTON, FL 33414-6137

PHONE: (561)793-9822

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

**YOUR CAR**

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|---|---|---|---|---|---|
| 2022 | PORSCHE | TAYCAN | 4DR | WP0AA2Y11NSA13378 | 60306010002 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---|---|---|
| A | Liability Coverage | $174.50 |
| | Bodily Injury Limits | |
| | Each Person,   Each Accident | |
| | $300,000       $300,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $100,000 | |
| P14/$10,00 | $500 Deductible No-Fault Coverage | $55.38 |
| | Deductible Applies to Each Named Insured and to | |
| | Each of Your Dependent Relatives | |
| D | Comprehensive Coverage - $500 Deductible | $119.03 |
| G | Collision Coverage - $500 Deductible | $203.93 |
| H | Emergency Road Service Coverage | $.54 |
| R1 | Car Rental and Travel Expenses Coverage | $7.84 |
| | Limit - Car Rental Expense | |
| | Each Day,     Each Loss | |
| | 80%         $1,000 | |

| Total premium for APR 19 2022 to AUG 02 2022. | $561.22 | This is not a bill. |
|---|---|---|

**IMPORTANT MESSAGES**

IMPORTANT NOTICE- Under No-Fault Coverage, the only medical expenses we will pay are reasonable medical expenses that are payable under the Florida Motor Vehicle No-Fault Law. The most we will pay for such reasonable medical expenses is 80% of the "schedule of maximum charges" found in the Florida Motor Vehicle No-Fault Law and in the Limits section of the Florida Car Policy's No-Fault Coverage.

Replaced policy number J534643-59A.

**Your total renewal premium for FEB 02 2022 to AUG 02 2022 is $981.13.**

For questions, problems or to obtain information about coverage call: (561)793-9822.

State Farm works hard to offer you the best combination of price, service, and protection.   The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once during your policy term, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

**EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)**

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9810A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
CREDITOR- DCU CREDIT UNION, PO BOX 9130, MARLBOROUGH MA 01752-9130.
6128S.1    AMENDATORY ENDORSEMENT:
6910A    AMENDATORY ENDORSEMENT:

Agent:      ANTHONY GARCIA
Telephone:  (561)793-9822
Prepared    JUN 03 2022

This policy is issued by State Farm Mutual Automobile Insurance Company.

**MUTUAL CONDITIONS**

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary                    President

# 6910A AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

## 1. PHYSICAL DAMAGE COVERAGES

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

The following is added:

If there is disagreement as to the cost of repair, replacement, or recalibration of glass, an appraisal will be used as the first step toward resolution. Appraisal will follow the rules and procedures as listed below.

a. The owner and **we** will each select a competent appraiser.

b. The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the **owner** or **we** may petition a court that has jurisdiction to select the third appraiser.

c. Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

d. The appraisers shall only determine the cost of repair, replacement, and recalibration of glass. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

e. A written appraisal that is both agreed upon by and signed by any **two** appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the **covered vehicle** and **us**.

f. **We** and **you** do not waive any rights by submitting to an appraisal.

## 2. GENERAL TERMS

a. Item (3) of **How and When We May Cancel**, under **Cancellation**, is changed to read:

If **we** cancel this policy for nonpayment of premium during the first 30 days immediately following the **effective date** of this policy, **we** will do so only if a check used to pay the premium is dishonored for any **reason** or any other type of premium payment was subsequently determined to be rejected or invalid.

b. Item a. of **Legal Action Against Us** is changed to read:

Legal action may only be **brought** against **us** within five years immediately following the date of the accident or **loss**. However, this limitation of action is tolled for a period of 60 days after **we** receive notice from the Florida Department of Financial Services, in accordance with section 624.155, Florida Statutes.

6910A

6910A
2020
9.13

©, Copyright, State Farm Mutual Automobile Insurance Company, 2020

Policy Number: J53 4643-B02-59B
Sheet 1 of 1

6) 4DVVRC8VVDI-000339



GOOGLE-SONOS-NDCA-00340

## 6128S.1 AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

   a. *Newly Acquired Car* is changed to read:

   *Newly Acquired Car* means a *car* newly *owned by you* or a *resident relative*.

   A *car* ceases to be a *newly acquired car* on the earlier of:

   1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

   2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

   If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

   b. *Pedestrian* is changed to read:

   *Pedestrian* means a *person* who is not *occupying*:

   1. a *motor vehicle*;

   2. a self-propelled vehicle; or

   3. a trailer or other vehicle attached to a self-propelled vehicle.

   c. *Relative* is changed to read:

   *Relative* means a *person*, other than *you*, who is:

   1. related to any named insured in any degree by blood, by marriage, or by adoption and who makes his or her home in the same family unit with that named insured, whether or not temporarily living elsewhere, or

   2. a ward or foster child of any named insured or of a *person* described in 1. above and who makes his or her home in the same family unit with that named insured.

2. **LIABILITY COVERAGE (Bodily Injury and Property Damage)**

   a. Item 4. of *Insured*, under **Additional Definition**, is changed to read:

   *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

   a. neither *owned by*, nor hired by, that other *person* or organization; and

   b. neither available for, nor being used for, carrying *persons* for a charge.

   b. The following is added to **Supplementary Payments**:

   Attorney fees for attorneys representing the *person* or entity asserting a claim against an *insured* are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

c. **Exclusions**

(1) The exception to exclusion 11. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

3. **PROPERTY DAMAGE LIABILITY COVERAGE**

a. Item 4. of *Insured*, under **Additional Definition**, is changed to read:

*Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability.

This provision applies only if the vehicle is:

a. neither *owned by*, nor hired by, that other *person* or organization; and

b. neither available for, nor being used for, carrying *persons* for a charge.

b. The following is added to **Supplementary Payments**:

Attorney fees for attorneys representing the *person* or entity asserting a claim against an *insured* are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

c. **Exclusions**

(1) The exception to exclusion 9. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY*

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6) -6DVVRQSVVDI- 000342

***ACQUIRED CAR***, OR A ***TEMPORARY SUBSTITUTE CAR*** WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

### 4. NO-FAULT COVERAGE

#### a. Additional Definition

Item 2. of the definition of ***Insured*** is changed to read:

> ***Insured*** means any other ***person*** while ***occupying*** or struck as a ***pedestrian*** by:
>
> a. ***your car***;
>
> b. a ***newly acquired car***;
>
> c. a ***temporary substitute car***; or
>
> d. a ***trailer*** while attached to a ***car*** described in a., b., or c. above.

#### b. Insuring Agreement

Item 1.C. is changed to read:

> follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following ***persons*** or entities:
>
> (1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;
>
> (2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;
>
> (3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;
>
> (4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above; and
>
> (5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or
>
> > (a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;
> >
> > (b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and
> >
> > (c) provides at least four of the following medical specialties:
> >
> > > i.   general medicine;
> > >
> > > ii.  radiography;
> > >
> > > iii. orthopedic medicine;
> > >
> > > iv.  physical medicine;
> > >
> > > v.   physical therapy;
> > >
> > > vi.  physical rehabilitation;

Page 3 of 11                                6128S.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6) -6DVVRQ6VVDI- 000343

vii. prescribing or dispensing outpatient prescription medication; or

viii. laboratory services.

c. **Limits**

(1) Item 2.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 2. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

d. **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

5. **MEDICAL PAYMENTS COVERAGE**

a. **Insuring Agreement**

Item 2.C. is changed to read:

follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following *persons* or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

Statutes, based upon referral by a provider described in B. above; and

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or

(a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

   i. general medicine;

   ii. radiography;

   iii. orthopedic medicine;

   iv. physical medicine;

   v. physical therapy;

   vi. physical rehabilitation;

   vii. prescribing or dispensing outpatient prescription medication; or

   viii. laboratory services.

**b. Limits**

(1) Item 3.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 3. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

**c. Exclusions**

(1) Exclusion 7. is changed to read:

THERE IS NO COVERAGE FOR AN *INSURED* WHO:

a. IS **OCCUPYING** OR THROUGH BEING STRUCK

© , Copyright, State Farm Mutual Automobile Insurance Company, 2017

6) -6DVVRQ6VVDI- 000345

AS A *PEDESTRIAN* BY A VE-HICLE *OWNED BY* ANY NAMED INSURED OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS POL-ICY; OR

b. AT THE TIME OF THE ACCI-DENT OWNS A *MOTOR VE-HICLE* SUBJECT TO THE *NO-FAULT ACT* AND IS NOT INSURED FOR THE COVER-AGE REQUIRED BY THE *NO-FAULT ACT*.

This exclusion (7.b.) does not apply to:

(1) any named insured;

(2) the spouse of any named in-sured; and

(3) any *relative* while *occupy-ing your car*, a *newly ac-quired car*, a *temporary substitute car*, or a *non-owned car* if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Pay-ments Coverage;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANS-PORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR*

WHILE SUCH VEHICLE IS BEING USED TO PRO-VIDE TRANSPORTA-TION NETWORK SERVICES.

6. **UNINSURED MOTOR VEHICLE COV-ERAGE (Stacking)**

a. **Additional Definitions**

"*Uninsured Motor Vehicle* does not in-clude a land motor vehicle or trailer" is changed to read:

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Cov-erage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehi-cle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being oper-ated by a *person* other than *you* or a *resident relative*;

2. designed for use primarily off public roads except while on public roads;

3. while located for use as a dwell-ing or other premises; or

4. whose owner or operator could have been reasonably identified.

b. **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTA-TION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY*

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

*ACQUIRED CAR*, OR A *TEM-PORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NET-WORK SERVICES.

7. **UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking)**

   a. **Additional Definitions**

   "*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer" is changed to read:

   *Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

   1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

   2. designed for use primarily off public roads except while on public roads;

   3. while located for use as a dwelling or other premises; or

   4. whose owner or operator could have been reasonably identified.

   b. **Exclusions**

   (1) Exclusion 2. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

   a. WHILE *OCCUPYING* A VEHICLE *OWNED BY YOU* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

   b. WHILE *OCCUPYING* A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*. This exclusion (2.b.) does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, provided that the vehicle is *owned by* neither that named insured nor that spouse; OR

   c. WHILE A *PEDESTRIAN* AND IS STRUCK BY A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*;

   (2) The following exclusions are added:

   (a) THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A VEHICLE *OWNED BY* THAT *INSURED* IF THAT VEHICLE IS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE UNDER THIS POLICY OR ANY OTHER POLICY.

   (b) THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

   1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

6128S.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

2.  ***OCCUPYING*** OR STRUCK BY ***YOUR CAR***, A ***NEWLY ACQUIRED CAR***, OR A ***TEMPORARY SUBSTITUTE CAR*** WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

8. **PHYSICAL DAMAGE COVERAGES**

a   The paragraph that reads:

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

is changed to read:

**Deductible**

1.  If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, ***we*** will not deduct more than $500 for any ***loss*** to a ***newly acquired car***.

2.  If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, ***we*** will not deduct more than $500 for any ***loss caused by collision*** to a ***newly acquired car***.

b.  **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR ANY ***COVERED VEHICLE*** WHILE IT IS USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

9.  **INSURED'S DUTIES**

a.  Item 7.a.(3) is changed to read:

An ***insured*** making claim under:

a.  No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(3) provide written authorization for ***us*** to obtain medical bills, medical records, wage information, salary information, employment information, and any other relevant information ***we*** deem reasonably necessary to substantiate the claim.

Such authorizations must not:

(a) restrict ***us*** from performing ***our*** business functions in:

(i) obtaining relevant and reasonably necessary records, bills, information, and data; nor

(ii) using or retaining relevant and reasonably necessary records, bills, information, and data collected or received by ***us***;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(b) require **us** to violate federal or state laws or regulations;

(c) prevent **us** from fulfilling **our** data reporting and data retention obligations to insurance regulators; or

(d) prevent **us** from disclosing claim information and data:

  (i) to enable performance of **our** business functions;

  (ii) to meet **our** reporting obligations to insurance regulators;

  (iii) to meet **our** reporting obligations to insurance data consolidators; and

  (iv) as otherwise permitted by law.

If an injured **insured** is a minor, unable to act, or dead, then his or her legal representative must provide **us** with the written authorization.

If the holder of the information refuses to provide it to **us** despite the authorization, then at **our** request the **person** making claim or his or her legal representative must obtain the information and promptly provide it to **us**; and

b. The following is added to item 7.:

An **insured** making claim under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must submit to **us** all information **we** need to comply with federal and state laws and regulations.

10. **GENERAL TERMS**

a. The following is added to **Limited Coverage in Mexico**:

**Uninsured Motor Vehicle Coverage (Stacking and Non-Stacking)**

b. Under **Limited Coverage in Mexico**, **Legal Action Against Us** is changed to read:

Any legal action against **us** arising out of an accident or **loss** occurring in the country of Mexico must be brought in a Florida state court in the United States of America, or a United States of America District Court that has jurisdiction.

c. The provision entitled **Persons Acting On Our Behalf** is deleted in its entirety.

d. The following is added to **Newly Owned or Newly Leased Car**:

If a **resident relative** wants to insure a **car** newly **owned by** the **resident relative** with the **State Farm Companies** after that **car** ceases to be a **newly acquired car**, then the **resident relative** must apply to the **State Farm Companies** for a separate policy to insure the **car** newly **owned by** the **resident relative**. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

e. The following is added to **Premium**:

If due to insufficient funds, payment of premium for this policy by debit

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

card, credit card, electronic funds transfer, or electronic check is returned, is declined, or cannot be processed, *we* may impose an insufficient funds fee of $15 per occurrence.

f. **Return of Unearned Premium** is changed to read:

(1) If *you* cancel this policy:

(a) then premium will be earned on a pro rata basis. *We* may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed or electronically transferred to *you* within 30 days after the effective date of the policy cancellation, or 30 days after *we* receive *your* request to cancel this policy, whichever is later. Delay in the return of unearned premium does not affect the cancellation;

(b) *you* may elect to apply the unearned portion of any premium paid to unpaid balances of other policies with the *State Farm Companies*.

(2) If *we* cancel this policy:

(a) then premium will be earned on a pro rata basis. Any unearned premium will be mailed or electronically transferred at the time we cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation;

(b) *you* may elect to apply the unearned portion of any premium paid to unpaid balances of other policies with the *State Farm Companies*.

g. The following are added to **GENERAL TERMS**:

**Electronic Delivery**

With *your* consent, *we* may, if allowed by law, electronically deliver any document or notice, including a notice to renew, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice. This provision does not apply to any notice to non-renew or cancel.

**Our Rights Regarding Claim Information**

a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b. Subject to a. above, *we* will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, relevant data, and any other reasonable information to process the claim;

(2) using any of the items described in item b.(1) above; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6) -6DVVRQ&6VVDI- 000350

(3) retaining:

    (a) any of the items in item b.(1) above; or

    (b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c. *We* may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

    (1) to enable performance of *our* business functions;

    (2) to meet *our* reporting obligations to insurance regulators;

    (3) to meet *our* reporting obligations to insurance data consolidators;

    (4) to meet other obligations required by law; and

    (5) as otherwise permitted by law.

d. *Our* rights under a., b., and c. above shall not be impaired by any:

    (1) authorization related to any claim submitted under this policy; or

    (2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

6128S.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6) -6DVVRCSVVDI- 000351

IN THE COUNTY COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

ASSAF SASSON AND ADA SASSON,

                Plaintiffs,                        CASE NO.:  COINX22049821

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Defendant.
_____/

**PLAINTIFFS' NOTICE OF FILING COURT ORDER GRANTING PLAINTIFFS'
MOTION FOR LEAVE TO AMEND THE COMPLAINT AND TRANSFER CASE TO
CIRCUIT COURT**

      Plaintiffs, Assaf and Ada Sasson, by and through undersigned counsel, hereby file the

attached Court's Order dated July 20, 2023.

**<u>CERTIFICATE OF SERVICE</u>**

      **I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this 9th

day of  August 2023, to all registered participants of the Florida e-filing portal.

                              **DAREN STABINSKI P.A.**
                              100 North Federal Highway, #524
                              Fort Lauderdale, FL 33301
                              Phone: (954) 324-1552
                              Fax: (954) 245-0739
                              daren@darenstabinskipa.com
                              Daren Stabinski (FBN 002951)

                              **KELLEY UUSTAL, PLC**
                              500 North Federal Highway, Suite 200
                              Fort Lauderdale, Florida 33301
                              Phone: (954) 522-6601
                              Fax: (954) 522-6608
                              By: <u>*/s/ Cristina Pierson*</u>
                              Cristina Pierson (FBN 984345)

1

cmp@kulaw.com
Matthew DellaBetta (FBN 1031216)
mdb@kulaw.com
Attorneys for Plaintiffs and Putative Class
Members

## IN THE COUNTY COURT OF THE 17TH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. **COINX22049821**  DIVISION: **73**  JUDGE: **DeLuca, Steven P. (73)**

**Assaf Sasson**

Plaintiff(s) / Petitioner(s)

v.

**State Farm Mutual Automobile Insurance Company**

Defendant(s) / Respondent(s)

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT
## AND TRANSFER CASE TO CIRCUIT COURT

THIS MATTER having come before the Court for hearing on July 17, 2023 on Plaintiffs'

Motion for Leave to Amend Complaint and then Transfer to Circuit Court, and the Court having

reviewed the record, heard argument of counsel, and being otherwise advised in the premises, it is

**HEREBY ORDERED AND ADJUDGED** as follows:

1)Plaintiffs' Motion for Leave to Amend the Complaint and Transfer to Circuit Court is hereby

**GRANTED**.  Plaintiffs' Third Amended Complaint, attached to Plaintiffs' Motion, shall be filed on

the docket promptly upon entry of this order.

2)Based on jurisdictional grounds, this case shall be immediately transferred to the Circuit Court

for further proceedings.   Any other pending motions, including Plaintiffs' Motion for Extension of the

Pretrial Deadlines and Defendant's Motion to Compel Plaintiffs' Compliance with Case Management

Order, are therefore moot.

3)Accordingly, the Clerk of Court is hereby **ORDERED** to transfer this matter to the Circuit

Court forthwith.  As may be required to accomplish the transfer, Plaintiff shall pay all necessary filing

fees upon notice and request.

4) This transfer is contingent upon the receiving division accepting the case. Should the receiving division decline to receive the matter it is requested that the matter be returned without delay.

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>20th day of July, 2023</u>.

<u>COINX22049821 07-20-2023 5:07 PM</u>
Hon. Steven P. DeLuca
**COUNTY COURT JUDGE**
Electronically Signed by Steven P. DeLuca

**Copies Furnished To:**
Christopher M. Paolini , E-mail : cpaolini@carltonfields.com
Christopher M. Paolini , E-mail : atokarz@carltonfields.com
Cristina M. Pierson , E-mail : johnet@kulaw.com
Cristina M. Pierson , E-mail : cmp@kulaw.com
D Matthew Allen , E-mail : bwoolard@carltonfields.com
D Matthew Allen , E-mail : mallen@carltonfields.com
D Matthew Allen , E-mail : tpaecf@cfdom.net
Daren Stabinski , E-mail : Trey@darenstabinskipa.com
Daren Stabinski , E-mail : daren@darenstabinskipa.com
Johanna W Clark , E-mail : dmonge@carltonfields.com
Johanna W Clark , E-mail : jclark@carltonfields.com
Johanna W Clark , E-mail : dmontgomery@carltonfields.com
John E Clabby , E-mail : jclabby@carltonfields.com
John E Clabby , E-mail : nkapadia@carltonfields.com
Miguel A. Rodriguez , E-mail : atokarz@carltonfields.com
Miguel A. Rodriguez , E-mail : marodriguez@carltonfields.com

IN THE COUNTY COURT IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO. COINX-22-049821

ASSAF SASSON and
ADA SASSON,

       Plaintiffs,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY.

       Defendant.

_____/

CLASS REPRESENTATION

## THIRD AMENDED COMPLAINT
### (Class Action)

Plaintiffs, ASSAF SASSON and ADA SASSON, by and through undersigned counsel, bring this class action pursuant to Florida Rule of Civil Procedure 1.220, on behalf of themselves and all others similarly situated ("Class Members"), against Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm" or "Defendant"), and in support thereof alleges:

## JURISDICTION, PARTIES, & VENUE

1.     This is a class action for damages exceeding $50,000, exclusive of attorney's fees, interest, and costs.

2.     At all times material, Plaintiffs and Class Representatives, Assaf and Ada Sasson, were residents of Broward County, Florida, and insured under an automobile policy issued by STATE FARM AUTOMOBILE INSURANCE COMPANY with collision benefits for a high-value luxury vehicle. A copy of the policy, Florida Policy Form 9810A, is attached hereto as Exhibit A.

1

3.      At all times material hereto, Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, was a duly authorized insurance company, organized and incorporated under the Laws of Florida, was authorized to transact insurance business in the State of Florida, and transacted its customary business through its agents and representatives in Broward County, Florida and throughout the state.

4.      Venue is proper because the events giving rise to the claims occurred in Broward County and the causes of action accrued in Broward County, where State Farm regularly conducts business.

5.      Any and all conditions precedent to the maintenance of this action have occurred, been performed, or have been waived.

## INTRODUCTION

6.      Plaintiffs bring this class action challenging State Farm's systemic and wrongful practice of refusing to pay for the proper and necessary collision repairs of its insureds' high-value, luxury automobiles, in accordance with policy terms. In that regard, State Farm made it part of their business model to deny necessary collision benefits by refusing to pay appropriate hourly labor rates for high-value luxury vehicles, like Plaintiffs, that have suffered damage in a collision.

7.      As customary for high-value, luxury automobiles, the manufacturers require collision repairs to be performed by a manufacturer's certified repair facility. This ensures that repairs are conducted in accordance with the manufacturer's specifications and preserves the original manufacturer warranty on the vehicle.  But State Farm, unlike other Florida insurers, refuses to pay the prevailing competitive price for the hourly labor rates at these certified repair facilities.  State Farm's denial of collision benefits in this manner violates the coverage provisions of State Farm's standard automobile policies and artificially reduces claims payments to the benefit of State Farm and to the detriment of its insureds.

2

8.     State Farm is one of the nation's largest automobile insurance companies and consistently ranks as one the three largest automobile insurers in Florida. In Florida alone, State Farm generates approximately $2.8 billion in premiums written annually, and comprises approximately 16% of the market share of automobile policies. State Farm sells collision coverage as part of its standard automobile insurance policies throughout Florida, and its practices relating to the payment of hourly rates for collision repairs have been uniform and consistent over at least the last five years.

9.     High-value, luxury vehicles are expensive and complex vehicles to repair after a collision. According to the manufacturers of such vehicles, i.e. Porsche, Mercedes-Benz, Bentley, BMW, and Maserati, proper repair requires a *certified* body shop whose technicians have been specially trained by the manufacturer and possess the sophisticated equipment necessary to repair the vehicle to the manufacturer specifications.

10.    A certified repair facility has the manufacturer's advanced technology and particular "know-how" necessary for proper repair of its vehicle safety systems and sophisticated components. Manufacturers warn vehicle owners that work that is not performed by a certified repair facility voids the manufacturer's warranty.  That consequence would diminish the vehicle's value and subject the vehicle owner to additional costs to maintain and own the vehicle.   Moreover, due to the high-tech nature of the safety systems, it is essential that a certified facility perform the repairs to ensure the specialized protective features have been properly returned to manufacturer specifications after a collision.

11.    In general, automobile insurers charge their insureds more premiums for collision coverage on high-value automobiles than other vehicles based upon the recognition that those vehicles are more expensive to repair after a collision. As explained above, collision repairs for such high-value luxury vehicles must be performed by a certified facility, and consequently, Plaintiffs and the class members are entitled to repairs by professionals within that repair market at those prevailing competitive prices.

3

12.     While State Farm knows of the prevailing competitive prices for that repair market, it has consistently refused to pay those hourly rates for necessary collision repairs despite its promises to "pay for loss caused by collision to a covered vehicle." *See* "Insuring Agreement" for "Collision Coverage" in the Policy at Exhibit A at 31.  For example, the prevailing competitive price for a Porsche certified facility to perform body and paint labor is $105 per hour based on the majority of the repair market comprised of properly certified facilities.  Yet, State Farm has uniformly rejected repair estimates that exceed $47 per hour for such work and refuses to pay the applicable prevailing rate of certified facilities without justification and contrary to its policy terms.

13.     In fact, the hourly rates for labor accepted by State Farm generally do not distinguish between models or types of cars.  So State Farm uses only one rate (whether it is a Porsche or a Hyundai) as the hourly rate for any vehicle in the same geographic area.

14.     State Farm's method of determining the cost of repair for collision damages to its insureds' high-value luxury vehicles does not comply with the requirements under the policy and results in a systematic underpayment of collision insurance payments to its insureds.

## FACTUAL ALLEGATIONS

15.     For valuable consideration, Defendant State Farm issued a policy of automobile insurance to Plaintiffs that included collision benefits, and specifically provided coverage for Plaintiffs' high value luxury vehicle, a 2022 Porsche Taycan ("the insured vehicle").  A copy of Policy Number J53-4643-B02-59C ("the policy") is attached as Exhibit A and incorporated herein by reference. The insured vehicle was purchased by Plaintiffs for more than $100,000, and is a high-tech, all-electric vehicle described as a "technology flagship" for Porsche.

16.     As reflected in the policy, the insured vehicle is listed as a covered vehicle and as such, Defendant agreed to pay for loss caused by a collision.

4

17.     On or about May 27, 2022, Plaintiff Ada Sasson, an insured under the policy, was traveling in the insured vehicle and was involved in an automobile collision in Broward County, Florida ("the collision").  The collision caused Plaintiffs' insured vehicle to suffer loss and damage.

18.     Plaintiffs submitted a claim for collision benefits (claim number 59-34T0-34F) to State Farm for payment related to the damages to the insured vehicle that resulted from the collision.

19.     The Limit of Liability provisions in the policy state that the cost to repair the insured vehicle would be determined as follows:

(1)   *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

   (a)   The cost agreed to by both the owner of the *covered vehicle* and *us*;

   (b)   A bid or repair estimate approved by *us*; or

   (c)   A repair estimate that is written based upon or adjusted to:

      (i)   the prevailing competitive price;

      (ii)   the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

      (iii)   a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*.  If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price.  The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*See* Ex. A, Policy at 32-33.

20.     On or about May 31, 2022, Plaintiffs brought the vehicle to a Porsche dealership who referred Plaintiffs to a local collision body shop certified by Porsche to repair the insured vehicle as required by Porsche to preserve the manufacturer's vehicle warranty and to ensure the work was performed per Porsche's specifications. That Porsche-certified body shop, Stuttgart International, located in Broward County, Florida specializes in repairing high-value luxury vehicles -- like the insured vehicle.

21.     Stuttgart performs collision repairs for numerous insurance companies who pay its hourly labor rates in connection with work on high-value luxury vehicles.  Moreover, Stuttgart's hourly labor rates for Porsche collision repairs represent the prevailing competitive prices – i.e. the prices charged by a majority of the repair market in the area -- and are routinely accepted by Florida automobile insurance companies.

22.      Using these prevailing competitive prices, Stuttgart International created an estimate of repairs to the subject vehicle in the amount of $8,360.87.  This repair estimate was delivered to State Farm, but it was rejected.

23.     On or about July 1, 2022, State Farm created its own estimate of damages to the insured vehicle in the amount of $6,267.03 (based on alternative labor hourly rates that are not the prices charged in the repair market of certified facilities) and offered to pay only that amount for repair to the vehicle, less a $500.00 deductible.

24.     Plaintiffs did not approve or agree to the amount of State Farm's estimate.  And State Farm did not approve the repair estimate provided by Plaintiffs from Stuttgart, despite that Plaintiffs were entitled to have the insured vehicle restored to its "pre-loss condition" which required the collision repairs to be performed by a certified facility.  That would assure that the work was properly performed to manufacturer specifications (including all safety systems) and preserve the manufacturer's original factory warranty.

25.     The repair estimate provided by State Farm was not based upon or adjusted to the prevailing competitive price.  Moreover, paintless dent repair was not applicable and could not properly repair the damages to the insured vehicle.

26.     Despite Plaintiffs' demand and the carrier's admitted collision coverage obligations, State Farm has refused to pay the collision benefits in the total amount of $8,360.87. This is the amount (as reflected in the estimate created by Stuttgart International) that was required to repair the insured vehicle at the prevailing competitive price, pursuant to the subject policy.

27.     Plaintiffs were therefore forced to pay the difference between the State Farm estimate and the cost to repair the vehicle charged by Stuttgart to ensure their vehicle was properly repaired by a Porsche certified repair facility.

28.     Plaintiffs individually, and on behalf of those similarly situated, bring this class action seeking appropriate redress, remedies, and damages.  As shown by its pattern of refusing to pay the appropriate cost to repair collision damages on high-value luxury vehicles, State Farm has engaged and continues to engage in a widespread, recurring, and ongoing practice of improperly underpaying collision benefits and causing its insureds to pay additional monies out of their pockets to have their vehicles properly repaired by certified facilities, as well as suffer other significant harm to their insured vehicles.

## CLASS REPRESENTATION ALLEGATIONS

29.     *Compliance with Rule 1.220.*  Plaintiffs seek to certify a class on the claims for breach of contract (Count I) and breach of implied covenant of good faith and fair dealing (Count II).  As established herein, these claims are maintainable on behalf of a class and Plaintiffs have satisfied all of the prerequisites of Rule 1.220 as detailed below.

30.     *Class Definition*. Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated pursuant to Rule 1.220.   The Class is defined as follows:

7

All State Farm automobile policy owners (non-commercial) with a covered collision claim after September 1, 2018 involving an insured high-value luxury vehicle, where coverage was denied for the hourly labor rates of a manufacturer's certified facility.

Excluded from the Class are State Farm officers, employees, directors, and members of their immediate families; the legal representatives, heirs, successors or assigns of any such excluded party; and the judicial officer(s) to whom this action is assigned and members of their immediate families. Plaintiffs reserve the right to amend, modify, or expand the definition of the proposed class or add sub-classes as discovery proceeds before certification is determined by the Court.

31. _Numerosity under Rule 1.220 (a) and (c)(2)(D)._  The members of the Class are so numerous that joinder of them is impractical. Upon information and belief, the Class consists of hundreds (and perhaps thousands) of members. Indeed, Defendant has handled thousands of automobile insurance claims for collision damage to high value luxury vehicles, including those manufactured by Porsche, Mercedes-Benz, Maserati, Bentley, BMW, and Land Rover, but failed to pay to have repairs performed by manufacturer certified facilities. The identity and precise number of class members is exclusively known by the Defendant and can be easily ascertained from Defendant and its records during discovery. State Farm has the ability to identify all members of the class, but at this time such specific information is not available to the Plaintiffs.

32. _Commonality under Rule 1.220 (a) and (c)(2)(B)._  There is a well-defined community of interest in the questions of law and fact involving and affecting the proposed Class. These common questions relate to Defendant's practices at issue and predominate over any questions affecting only individuals. Such questions of law and fact common to the class include:

a. Whether State Farm engaged is a systematic underpayment of collision losses to high value luxury vehicles;

b.  Whether State Farm has a practice of refusing to pay appropriate hourly rates to repair high value luxury vehicles, like Plaintiffs, that have suffered damage in a collision;

c.  Whether State Farm has a standard business practice of refusing to pay for collision losses on high value luxury vehicles where the estimate included hourly labor rates by manufacturer certified facilities;

d.  Whether Defendant uniformly instructs its agents and employees follow this routine practice;

e.  Whether State Farm has knowledge of the prevailing competitive prices for collision repairs by certified facilities;

f.  Whether the hourly rates charged by certified body shops, like Stuttgart, are prevailing competitive prices;

g.  Whether other Florida insurers routinely pay the prevailing competitive price of the hourly labor rates at properly certified repair facilities;

h.  Whether Defendant's policy requires that the insured vehicle be returned to its pre-loss condition which requires repairs by a properly certified repair facility;

i.  Whether State Farm's conduct in determining the cost of repair complies with its standard automobile insurance policy language;

j.  Whether Defendant breached its contract of insurance and duties of good faith and fair dealing to its insureds;

k.  Whether Defendant artificially reduced collision claim payments with such frequency to constitute a general business practice;

l.  Whether Defendant continues to improperly reject estimates that include hourly rates charged by certified facilities; and

m.  Whether the class members suffered damages and the proper measure of damages.

33.     *Typicality under Rule 1.220 (a) and (c)(2)(C).*  Plaintiffs' claims are typical of the claims that would be asserted by other members of the Class in that by proving their claims, Plaintiffs will prove the claims of all class members. Moreover, Plaintiffs claims similarly arise from the same wrongful conduct of Defendant.  Plaintiffs possess the same legal interest and rights pursuant to State Farm's policy language and have endured the same legal injury as all the class members: All class members have been denied collision benefits and all class members, like Plaintiffs, were similarly injured by Defendant's conduct. As such, Plaintiffs' interests coincide with, and not antagonistic to, those of other Class Members.

34.     *Adequacy under Rule 1.220 (a) and (c)(2)(D).*     Plaintiffs are adequate Class Representatives who have interests in common with the proposed class members and are committed to the vigorous prosecution of this action.  Plaintiffs are State Farm insureds that have expressed a willingness and desire to represent the interests of the class as a whole and have no conflicts with other Class Members.  Plaintiffs have retained the undersigned law firms who have extensive experience in class actions, insurance coverage disputes, and complex litigation, and who have the resources required to pursue this case.

35.     *Predominance under Rule 1.220(b)(3) & (c)(2)(E).* The many questions of law and fact that are common to the claims predominate over any questions of law or fact affecting only individual members of the class. Those common questions of law and fact are detailed above in the "Commonality" paragraph and are incorporated herein by reference.

36.     *Superiority of Class Determination.*  A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy.  Prosecution of separate actions by individual members of the class create a risk of inconsistent or varying adjudications of the same issues and burden the Court with hundreds (and perhaps thousands) of duplicative actions.  Since the issues referenced above will determine liability, it is far more desirable to proceed in a single action

10

before this Court than to be burdened with fractionalized litigation throughout Florida. Moreover, absent a Class, the class members will continue to suffer damages and Defendant's wrongful conduct will continue without redress or remedy. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

### Count I – Breach of Contract

37.     Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 36 as if fully set forth herein.

38.     Defendant issued automobile policies of insurance, in the form reflected in Exhibit A, which included collision coverage in exchange for premium payments. This is a valid contract providing Plaintiffs and the class member insureds with a right to seek collision benefits under the policy.

39.     After being involved with a covered collision, Plaintiffs and the class members timely filed claims seeking payment for the cost of repairing the covered high value luxury vehicles under the policy in order to restore their vehicles to their pre-loss condition. That involves the work being performed by a certified repair facility as mandated by the manufacturers.

40.     Despite delivery of an estimate for the cost of repair at prevailing competitive prices, State Farm refused to pay the cost of repair charged by certified facilities.

41.     Defendant materially breached its contracts by failing and refusing to pay the collision benefits as submitted by the Plaintiffs and class members in a timely manner.

42.     As a direct and proximate result of the breach of contract, Plaintiffs and the class members have sustained damages. Indeed, benefits remain unpaid as a result of Defendant's improper denial of

collision repair costs pursuant to the terms of the insurance policy.   Moreover, Plaintiffs and the Class Members have incurred out of pocket losses and other harm alleged herein.

43.     Due to Defendant's failure to pay collision benefits in accordance with its policy, Plaintiffs and class members had to retain counsel to prosecute this suit.  Plaintiffs and the class members are entitled to an award of attorney's fees against State Farm according to § 627.428, Florida Statutes.

WHEREFORE, Plaintiffs demand judgment against Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for themselves and the class members as follows:

a.   Certifying this matter as a class action pursuant to Rule 1.220;

b.   Designating Plaintiffs as class representatives and the undersigned as class counsel;

c.   Awarding Plaintiffs and the class members their damages for breach of contract and denial of benefits, prejudgment interest from the date payment was overdue at the statutory rate;

d.   Enjoining Defendant's ongoing practice of denying coverage for hourly labor rates of certified facilities;

e.   Awarding attorneys' fees and costs to the Plaintiffs and Class; and

f.   Granting such other relief as the Court may deem just and proper.

### COUNT II – Breach of Implied Covenant of Good Faith and Fair Dealing

44.      Plaintiffs reallege and incorporate the allegations of paragraphs 1 through 36, 38 through 40, and 43, as if fully set forth herein.

45.     Every contract in Florida includes an implied covenant of good faith and fair dealing.

46.     Defendant materially breached the implied covenant of good faith and fair dealing by preventing class members from using certified facilities for repairs of their high value luxury vehicles in order to artificially reduce collision claims payments. As a result, Defendant has left its class member insureds with either having to pay out of pocket for covered repairs or having to take risks with repairs performed by non-certified facilities (including failure to satisfy manufacturer specifications and voiding the manufacturer's factory warranty).

12

47.     Contrary to its obligations of good faith to its insureds, Defendant directed that repairs be performed at non-certified facilities, despite that manufacturer requirements that work be performed only by certified facilities. Making matters worse, Defendant did not warn or inform its insureds of the risks involved with proceeding with collision repairs at a non-certified facility.

48.     Defendant engaged in this wrongful conduct as part of a pattern and practice designed to artificially reduce its collision claims payments irrespective of its obligations to its insureds.

49.     As a direct and proximate result of the material breach of the implied covenant of good faith and fair dealing, Plaintiffs and the class members have sustained damages, including out of pocket losses and harm to the insured vehicles.

WHEREFORE, Plaintiffs demand judgment against Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for themselves and the class members as follows:

a.  Certifying this matter as a class action pursuant to Rule 1.220;

b.  Designating Plaintiffs as class representatives and the undersigned as class counsel;

c.  Awarding Plaintiffs and the class members their damages for breach of implied covenant of good faith and fair dealing, plus prejudgment interest at the statutory rate;

d.  Enjoining Defendant's ongoing practice of denying coverage for hourly labor rates of certified facilities;

e.  Awarding attorneys' fees and costs to the Plaintiffs and Class pursuant to applicable law relating to class actions; and

f.  Granting such other relief to Plaintiffs and the Class as the Court may deem just, proper and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury on all issues so triable.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this 21st

day of July 2023, to all registered participants of the Florida e-filing portal.

**DAREN STABINSKI P.A.**
100 North Federal Highway, #524
Fort Lauderdale, FL 33301
Ph: (954) 324-1552
Fax: (954) 245-0739
daren@darenstabinskipa.com
Daren Stabinski, Esq.
Fla. Bar No. 002951

**KELLEY | UUSTAL PLC**
500 North Federal Highway, Suite 200
Fort Lauderdale, Florida 33301
Telephone: (954) 522-6601
Facsimile: (954) 522-6608
By: _/s/ Cristina M. Pierson_____
Cristina M. Pierson, Esq. (FBN 984345)
cmp@kulaw.com
johnet@kulaw.com
Attorneys for Plaintiffs and Putative Class Members

14



# Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number J53 4643-B02-59B including any endorsements, if applicable, for the policy term(s) 04/19/2022 to 06/06/2022 and insuring SASSON, ASSAF & ADA L based on available records.

It is State Farm's business practice to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs. Therefore, the included Declarations Page which was in effect at the time of loss will indicate the policy period of the last policy issuance transaction.

The policy was in effect on the loss date of 05/27/2022.

Jessica Bass
Underwriter
Date: 09/13/2022

( [ KIELW$



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "Insured's Duties in this policy booklet.)

# State Farm®
# Car Policy
# Booklet

**Florida**
Policy Form 9810A

# CONTENTS

THIS POLICY ................................. 3

DEFINITIONS ................................. 4

LIABILITY COVERAGE (Bodily Injury and Property Damage) ........................... 6

    Additional Definition .......................... 6
    Insuring Agreement ........................... 7
    Supplementary Payments .................... 7
    Limits ............................................ 7
    Nonduplication ................................. 8
    Exclusions ...................................... 8
    If Other Liability Coverage Applies .......... 9
    Required Out-of-State Liability Coverage ...... 10
    Financial Responsibility Certification ......... 10

PROPERTY DAMAGE LIABILITY COVERAGE ....................................... 10

    Additional Definition ......................... 10
    Insuring Agreement .......................... 11
    Supplementary Payments ................... 11
    Limit ........................................... 11
    Exclusions ..................................... 12
    If Other Property Damage Liability Coverage Applies ............................ 13
    Required Out-of-State Liability Coverage ...... 14
    Financial Responsibility Certification .......... 14

NO-FAULT COVERAGE ............................. 14

    Additional Definition ......................... 14
    Insuring Agreement .......................... 14
    Limits .......................................... 15
    Application of Any Deductible and Workers' Compensation Offset ....................... 17
    Partial Payment or Rejection of a Claim ......... 17
    Nonduplication ............................... 17
    Exclusions ..................................... 17
    If Other No-Fault Coverage Applies ............ 18
    Our Payment Options ........................ 18

MEDICAL PAYMENTS COVERAGE ............ 18

    Additional Definition ......................... 18
    Insuring Agreement .......................... 19
    Determining Medical Expenses .............. 20
    Limits .......................................... 20
    Nonduplication ............................... 21
    Exclusions ..................................... 21
    If Other Medical Payments Coverage or Similar Vehicle Insurance Applies ............ 23
    Our Payment Options ........................ 24

UNINSURED MOTOR VEHICLE COVERAGE (Stacking) ......................... 24

    Additional Definitions ........................ 24
    Insuring Agreement .......................... 25
    Consent to Settlement ....................... 25
    Deciding Fault and Amount .................. 25
    Limits .......................................... 25
    Nonduplication ............................... 26
    Exclusions ..................................... 26
    If Other Uninsured Motor Vehicle Coverage Applies ........................... 26
    Our Payment Options ........................ 26

UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking) .................... 27

    Additional Definitions ........................ 27
    Insuring Agreement .......................... 27
    Consent to Settlement ....................... 27
    Deciding Fault and Amount .................. 28
    Limits .......................................... 28
    Nonduplication ............................... 28
    Exclusions ..................................... 28
    If Other Uninsured Motor Vehicle Coverage Applies ........................... 29
    Our Payment Options ........................ 30

PHYSICAL DAMAGE COVERAGES ........... 30

    Additional Definitions ........................ 30
    Insuring Agreements ......................... 31
    Supplementary Payments – Comprehensive Coverage and Collision Coverage .................. 32
    Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage .................. 32
    Limits – Car Rental and Travel Expenses Coverage ...................................... 33
    Nonduplication ............................... 34
    Exclusions ..................................... 34
    If Other Physical Damage Coverage or Similar Coverage Applies ...................... 35
    Financed Vehicle ............................. 36
    Our Payment Options ........................ 36

6) -6DVVRS&VVDI- 000290

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE** ...................... 36

Additional Definition ........................................ 36
Insuring Agreement .......................................... 36
Benefit ........................................................... 36
Exclusions....................................................... 37
Our Payment Options ...................................... 38

**INSURED'S DUTIES** ........................................ 38

Insured's Duty at the Time of an Accident or Loss ............................................................ 38
Notice to Us of an Accident or Loss ............... 38
Notice to Us of a Claim or Lawsuit ................. 38
Insured's Duty to Cooperate With Us ............. 38
Questioning Under Oath ................................. 38
Other Duties Under the Physical Damage Coverages ......................................... 39
Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage ............................. 39

**GENERAL TERMS** .......................................... 40

When Coverage Applies.................................. 40
Where Coverage Applies................................. 40
Limited Coverage in Mexico........................... 40
Persons Acting On Our Behalf ........................ 41
Newly Owned or Newly Leased Car............... 42
Changes to This Policy................................... 42
Premium ........................................................ 42
Renewal ........................................................ 43
Nonrenewal ................................................... 43
Cancellation................................................... 43
Assignment.................................................... 44
Bankruptcy or Insolvency of the Insured ........ 44
Concealment or Fraud .................................... 44
Our Right to Recover Our Payments............... 45
Mediation ...................................................... 45
Arbitration ..................................................... 46
Legal Action Against Us................................. 46
Choice of Law ............................................... 48
Severability ................................................... 48

## THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSEMENTS" on the Declarations Page, in reliance on the following statements:

      (1) *You* are the sole owner of *your car*.

      (2) Neither *you* nor any member of *your* household has, within the past three years, had either:

         (a) a license to drive; or

         (b) a vehicle registration

         suspended, revoked, or refused.

      (3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:

   a. the statements in 3.b. above are made by such named insured or applicant and are true; and

   b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow:

   a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

   b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary.

Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

## DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

*Bodily Injury* means bodily injury to a *person* and sickness, disease, or death that results from it.

*Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads. *Car* does not include:

1.  Any vehicle while located for use as a dwelling or other premises; or

2.  A truck-tractor designed to pull any type of trailer.

*Car Business* means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

*Emergency Medical Condition* means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

1.  Serious jeopardy to patient health;

2.  Serious impairment to bodily functions; or

3.  Serious dysfunction of any bodily organ or part.

*Fungi* means any type or form of fungus or fungi and includes:

1.  Mold;

2.  Mildew; and

3.  Any of the following that are produced or released by fungi:

    a.  Mycotoxins;

    b.  Spores;

    c.  Scents; or

    d.  Byproducts.

*Medical Expenses* means *reasonable charges* incurred for *medically necessary* medical, surgical, X-ray, dental, and rehabilitative services, including *medically necessary* prosthetic devices and *medically necessary* ambulance, hospital, and nursing services.

*Medical Expenses* do not include any:

1.  massage as defined in s. 480.033, Florida Statutes;

2.  acupuncture as defined in s. 457.102, Florida Statutes;

3.  services, care, treatment, or supplies provided by any massage therapist; or

4.  services, care, treatment, or supplies provided by any acupuncturist.

*Medically Necessary* means a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

1.  in accordance with generally accepted standards of medical practice;

2.  clinically appropriate in terms of type, frequency, extent, site, and duration; and

3.  not primarily for the convenience of the patient, physician, or other healthcare provider.

*Motor Vehicle* means a vehicle with four or more wheels that:

1.  is self-propelled and is of a type:

    a.  designed for; and

    b.  required to be licensed for use on Florida highways; or

2.  is a trailer or semitrailer designed for use with a vehicle described in 1. above.

*Motor Vehicle* does not include:

1.  a mobile home; or

2.  any motor vehicle which is:

    a.  used in mass transit, other than public school transportation;

    b.  designed to transport more than five passengers, exclusive of the operator; and

6) -6DVVRC6VVDI- 000292

c. *owned by* a municipality, a transit authority, or a political subdivision of the state.

*Newly Acquired Car* means a *car* newly *owned by you*. A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you*.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you*.

*No-Fault Act* means the Florida Motor Vehicle No-Fault Law and any amendments.

*Non-Owned Car* means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1. is *owned by*:
   a. *you*;
   b. any *resident relative*;
   c. any other *person* who resides primarily in *your* household; or
   d. an employer of any *person* described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:
   a. *you*; or
   b. any *resident relative*

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

*Occupying* means in, on, entering, or exiting.

*Our* means the Company issuing this policy as shown on the Declarations Page.

*Owned By* means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 6 months or more, to.

*Pedestrian* means a *person* who is not *occupying*:

1. a motor vehicle; or

2. a vehicle designed to be pulled by a motor vehicle.

*Person* means a human being.

*Private Passenger Car* means:

1. a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:
   a. while not used for:
      (1) wholesale; or
      (2) retail

      pickup or delivery; and
   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

*Reasonable Charge*, which includes reasonable expense, means an amount determined by *us* to be reasonable in accordance with the *No-Fault Act*, considering one or more of the following:

1. usual and customary charges;

2. payments accepted by the provider;

3. reimbursement levels in the community;

4. various federal and state medical fee schedules applicable to *motor vehicle* and other insurance coverages;

5. the schedule of maximum charges in the *No-Fault Act*,

6. other information relevant to the reasonableness of the charge for the service, treatment, or supply; or

7. Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, if the coding policy or payment methodology does not constitute a utilization limit.

*Relative* means a relative of any degree by blood or marriage who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

*Resident Relative* means a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

5

9810A

6) -6DVVRQ6VVDI- 000293

2. a ward or a foster child of that named insured, his or her spouse, or a **person** described in 1. above.

**State Farm Companies** means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

**Temporary Substitute Car** means a **car** that is in the lawful possession of the **person** operating it and that:

1. replaces **your car** for a short time while **your car** is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither **you** nor the **person** operating it own or have registered.

If a **car** qualifies as both a **non-owned car** and a **temporary substitute car**, then it is considered a **temporary substitute car** only.

**Trailer** means:

1. a trailer:

   a. designed to be pulled by a **private passenger car**;

b. not designed to carry **persons**; and

c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a **car**.

**Us** means the Company issuing this policy as shown on the Declarations Page.

**We** means the Company issuing this policy as shown on the Declarations Page.

**You** or **Your** means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a **person**, then "**you**" or "**your**" includes the spouse of the first **person** shown as a named insured if the spouse resides primarily with that named insured.

**Your Car** means the vehicle shown under "YOUR CAR" on the Declarations Page. **Your Car** does not include a vehicle that **you** no longer own or lease.

If a **car** is shown on the Declarations Page under "YOUR CAR", and **you** ask **us** to replace it with a **car** newly **owned by you**, then the **car** being replaced will continue to be considered **your car** until the earliest of:

1. the end of the 30th calendar day immediately following the date the **car** newly **owned by you** is delivered to **you**;

2. the date this policy is no longer in force; or

3. the date **you** no longer own or lease the **car** being replaced.

## LIABILITY COVERAGE (Bodily Injury and Property Damage)

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

**Insured** means:

1. **you** and **resident relatives** for:

   a. the ownership, maintenance, or use of:

      (1) **your car**;

      (2) a **newly acquired car**; or

      (3) a **trailer**; and

   b. the maintenance or use of:

      (1) a **non-owned car**; or

      (2) a **temporary substitute car**;

2. the first **person** shown as a named insured on the Declarations Page and that named insured's

spouse who resides primarily with that named insured for the maintenance or use of a **car** that is **owned by**, or furnished by an employer to, a **person** who resides primarily in **your** household, but only if such **car** is neither **owned by**, nor furnished by an employer to, the first **person** shown as a named insured on the Declarations Page or that **person's** spouse;

3. any other **person** for his or her use of:

   a. **your car**;

   b. a **newly acquired car**;

   c. a **temporary substitute car**; or

   d. a **trailer** while attached to a **car** described in a., b., or c. above.

Such vehicle must be used with **your** express or implied permission; and

6
9810A

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others; and

   b. damage to property

   caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

   (1) that part of the damages *we* pay; or

   (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

   (1) an arbitration;

   (2) a mediation; or

   (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from *bodily injury* to any one *person* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *persons* as a direct result of that *bodily injury*.

7

6) -6DVVRC6VVDI- 000295

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *persons* who sustained damages or emotional distress in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

2. that have already been paid under Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR *BODILY INJURY* TO:

    a. *YOU*;

    b. *RESIDENT RELATIVES*; AND

    c. ANY OTHER *PERSON* WHO BOTH RESIDES PRIMARILY WITH AN *INSURED* AND WHO:

       (1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR

       (2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees, or if this coverage, of this policy, is used to certify financial responsibility;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

7. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

    a. *you*;

    b. any *resident relative*; or

    c. any agent, employee, or business partner of a. or b. above

    while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

9. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

11. FOR DAMAGE TO PROPERTY WHILE IT IS:

    a. *OWNED BY*;

    b. RENTED TO;

    c. USED BY;

    d. IN THE CARE OF; OR

    e. TRANSPORTED BY

6) -6DVVRQ6VVDI- 000296

*YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

12. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

13. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR

15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If liability coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

a. the liability coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides liability coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides liability coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides liability coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

6) 6DVVRCSVVDI- 000297

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides liability coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PROPERTY DAMAGE LIABILITY COVERAGE

This policy provides Property Damage Liability Coverage if "B" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:

   a. the ownership, maintenance, or use of:

      (1) *your car*;

      (2) a *newly acquired car*; or

      (3) a *trailer*; and

   b. the maintenance or use of:

      (1) a *non-owned car*; or

      (2) a *temporary substitute car*;

2. the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household,

but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

3. any other *person* for his or her use of:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* express or implied permission; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

6) -6DVVRC&VVDl- 000298

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of damage to property caused by an accident that involves a vehicle for which that   *insured* is provided Property Damage Liability Coverage by this policy;

2. *We* have the right to:

   a.   investigate, negotiate, and settle any claim or lawsuit;

   b.   defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c.   appeal any award or legal decision

   for damages payable under this policy's Property Damage Liability Coverage.

3. *We* will only defend an *insured* in a claim or lawsuit for damages payable under this policy's Property Damage Liability Coverage, that are caused by an accident for which that *insured* is provided Property Damage Liability Coverage by this policy. If a claim or lawsuit seeks damages due to both property damage and *bodily injury*, then *we* will only defend the *insured* for property damage, and the *insured* will be required to hire and pay attorneys to defend the *insured* for damages due to *bodily injury*.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Property Damage Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

2. Court costs awarded by the court against an *insured* and resulting from that part of a lawsuit:

   a.   that seeks damages payable under this policy's Property Damage Liability Coverage; and

   b.   against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage.

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Property Damage Liability Coverage:

   a.   before a judgment, but only the interest on the lesser of:

   (1)   that part of the damages *we* pay; or

   (2)   this policy's applicable Property Damage Liability Coverage limit; and

   b.   after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Property Damage Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*.

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a.   pay for any bond with a face amount that exceeds this policy's applicable Property Damage Liability Coverage limit;

   b.   furnish or apply for any bonds; or

   c.   pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Property Damage Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a.   Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

   (1)   an arbitration;

   (2)   a mediation; or

   (3)   a trial of a lawsuit; and

   b.   Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limit**

The Property Damage Liability Coverage limit for damage to property is shown on the Declarations Page under "Property Damage Liability Coverage – Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property  in any one accident.

11
9810A

6) -6DVVRC SVVDI- 000299

The Property Damage Liability Coverage limit is the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES DAMAGE TO PROPERTY;
2. FOR *BODILY INJURY*;
3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;
4. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;
5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;
6. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:
   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;
7. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;
8. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;
9. FOR DAMAGE TO PROPERTY WHILE IT IS:
   a. *OWNED BY*;
   b. RENTED TO;
   c. USED BY;
   d. IN THE CARE OF; OR
   e. TRANSPORTED BY

   *YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:
   a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;
   b. residence while rented to or leased to an *insured*;
   c. private garage while rented to or leased to an *insured*.
10. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;
11. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;
12. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:
   a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (12.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR
13. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

12
9810A

**If Other Property Damage Liability Coverage Applies**

1. If property damage liability coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

   a. the property damage liability coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Property Damage Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides property damage liability coverage which applies to the accident as primary coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other property damage liability coverage that apply as primary coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides property damage liability coverage which applies to the accident as primary coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also

applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Property Damage Liability Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides property damage liability coverage which applies to the accident as excess coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other property damage liability coverage that apply as excess coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides property damage liability coverage which applies to the accident as excess coverage; and

      (2) property damage liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other property damage liability coverage that apply as excess coverage.

6) -6DVVRQ &VVVDI- 000301

**Required Out-of-State Liability Coverage**

If:

1. an **insured** is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

# NO-FAULT COVERAGE

This policy provides No-Fault Coverage if "P" with a number beside it is shown under "SYMBOLS" on the Declarations Page. "P" with a number beside it is **your** coverage symbol. Check **your** coverage symbol shown on the Declarations Page with the SCHEDULE in the Limits section. The Income Loss option **you** have selected is shown by **your** coverage symbol.

**Additional Definition**

**Insured** means:

1. named insureds and **relatives**:

   a. while **occupying** a **motor vehicle**;

   b. struck as a **pedestrian** by a **motor vehicle**; or

2. any other **person** while **occupying** or **struck** as a **pedestrian** by:

   a. **your car**;

   b. a **newly acquired car**;

   c. a **temporary substitute car**; or

   d. a **trailer** while attached to a **car** described in a., b., or c. above.

**Insuring Agreement**

**We** will pay in accordance with the **No-Fault Act** properly billed and documented **reasonable charges** for **bodily injury** to an **insured** caused by an accident resulting from the ownership, maintenance, or use of a **motor vehicle** as follows:

1. **Medical Expenses**

   **We** will pay 80% of properly billed and documented **medical expenses**, but only if that **insured** receives initial services and care from a provider described in A. below within 14 days

after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

**We** will not pay for any **medical expenses** if that **insured** does not receive initial services and care from a provider described in A. below within 14 days after the **motor vehicle** accident that caused **bodily injury** to that **insured**.

**We** will only pay **medical expenses** for:

A. initial services and care:

   (1) lawfully provided, supervised, ordered or prescribed by:

      (a) a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

      (b) a dentist licensed under chapter 466 of the Florida Statutes; or

      (c) a chiropractic physician licensed under chapter 460 of the Florida Statutes;

   (2) provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

   (3) provided by a **person** or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

B. upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

14
9810A

(1) a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

(2) a dentist licensed under chapter 466 of the Florida Statutes;

(3) a chiropractic physician licensed under chapter 460 of the Florida Statues; or

(4) to the extent permitted by applicable law and under the supervision of a *person* described in (1), (2), or (3) immediately above;

    (a) a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

    (b) an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

C. follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following *persons* or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

    (a) has a medical director licensed under chapter 458, chapter 459,

or chapter 460 of the Florida Statutes;

    (b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

    (c) provides at least four of the following medical specialties:

        i. general medicine;

        ii. radiography;

        iii. orthopedic medicine;

        iv. physical medicine;

        v. physical therapy;

        vi. physical rehabilitation;

        vii. prescribing or dispensing outpatient prescription medication; or

        viii. laboratory services.

2. **Income Loss**

*We* will pay, when properly documented, 60% of any loss of gross income and loss of earnings capacity per individual injured *insured* from that *insured's* inability to work that is proximately caused by the injury sustained by that individual *insured*.

3. **Replacement Services Loss**

*We* will pay, when properly documented, *reasonable charges* incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the individual injured *insured* would have performed without income for the benefit of his or her household.

4. **Death Benefits**

*We* will pay $5,000 per deceased individual *insured*.

**Limits**

1. *We* will not pay any charge that the *No-Fault Act* does not require *us* to pay, or the amount of any charge that exceeds the amount the *No-Fault Act* allows to be charged.

2. The most *we* will pay for each injured *insured* as a result of any one accident is $10,000 for all combined **Medical Expenses**, **Income Loss**, and **Replacement Services Loss**, described in the **Insuring Agreement** of this policy's No-Fault Coverage.

6) -6DVVRQ6VVDI- 000303

The limit for **Medical Expenses** is $10,000 if a physician (excluding a chiropractic physician), a dentist, a physician assistant, or an advanced registered nurse practitioner described in 1.A. or 1.B under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* had an *emergency medical condition*.

The limit for **Medical Expenses** is $2,500 if any healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage determined the injured *insured* did not have an *emergency medical condition*.

*We* will limit payment of **Medical Expenses** described in the **Insuring Agreement** of this policy's No-Fault Coverage to 80% of a properly billed and documented *reasonable charge*, but in no event will *we* pay more than 80% of the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

a. For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   (I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

   (II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   (III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-subparagraph, then *we* will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

3. *We* will pay a **Death Benefit** of $5,000 per deceased individual *insured*. **Death Benefits** are in addition to the **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** limit.

4. SCHEDULE

| Coverage Symbol | Income Loss Benefits Eliminated For Named Insureds | Income Loss Benefits Eliminated For Named Insureds' Dependent *Relatives* |
|---|---|---|
| P10 | No | No |
| P14 | Yes | Yes |
| P19 | Yes | No |

16

9810A

**Application of Any Deductible and Workers' Compensation Offset**

1. The deductible amount, if any, is shown on the Declarations Page beside *your* coverage symbol. The deductible amount does not apply to **Death Benefits**.

   The deductible amount applies to:

   a. each named insured if "N" follows the deductible amount; or

   b. each named insured and each dependent *relative* if "N" does not follow the deductible amount.

   Any deductible will be applied to 100% of properly billed and documented **Medical Expenses**, properly documented **Income Loss**, and properly documented **Replacement Services Loss** that are eligible to be paid under this coverage. The deductible will be applied to such expenses and losses upon our receipt of reasonable documented proof of the expenses and losses and the amount of expenses and losses incurred.

2. After any applicable deductible has been applied, *we* will pay the balance of properly billed and documented **Medical Expenses**, **Income Loss**, and **Replacement Services Loss** in accordance with the percentages and limits as described in the section titled **Limits**.

3. *We* will reduce the amount payable as determined in item 2. above by any workers' compensation benefits received for the same loss or expense.

**Partial Payment or Rejection of a Claim**

If *we* pay only a portion of a claim or reject a claim due to an alleged error in the claim, then *we* shall, at the time of the partial payment or rejection, provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the *person* making the claim, at the *person's* option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

In a dispute between the *insured* and *us*, or between an assignee of the *insured's* rights and *us*, upon request, *we* will notify the *insured* or the assignee that the policy limits under this section have been reached within 15 days after the limits have been reached.

**Nonduplication**

*We* will not pay under No-Fault Coverage any benefits:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under other no-fault coverage, any disability benefits law, or similar law; or

3. that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ***BODILY INJURY*** TO:

   a. ANY ***PEDESTRIAN*** NOT A RESIDENT OF FLORIDA; OR

   b. ANY ***PERSON*** ENTITLED TO NO-FAULT BENEFITS FROM:

      (1) THE OWNER OF A ***MOTOR VEHICLE*** OTHER THAN A NAMED INSURED; OR

      (2) THAT OWNER'S INSURER.

   This exclusion (1.) does not apply to any named insured or any *relative*;

2. ANY NAMED INSURED OR ***RELATIVE*** WHO SUSTAINED ***BODILY INJURY*** WHILE ***OCCUPYING*** A ***MOTOR VEHICLE OWNED BY*** THE NAMED INSURED AND NOT INSURED UNDER THIS POLICY;

3. ANY ***INSURED PERSON***:

   a. WHOSE CONDUCT CONTRIBUTED TO HIS OR HER ***BODILY INJURY*** UNDER ANY OF THE FOLLOWING CIRCUMSTANCES:

      (1) CAUSING ***BODILY INJURY*** TO HIMSELF OR HERSELF INTENTIONALLY; OR

      (2) WHILE COMMITTING A FELONY;

   b. WHOSE ***BODILY INJURY*** OCCURRED WHILE:

6) -6DVVRQ6VVDI- 000305

(1) DRIVING *YOUR CAR* OR A *NEWLY ACQUIRED CAR* WITHOUT *YOUR* PERMISSION; OR

(2) *OCCUPYING* A *MOTOR VEHICLE* LOCATED FOR USE AS A DWELLING OR PREMISES;

c. WHO OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT.* This exclusion (3.c.) does not apply to:

(1) any named insured;

(2) the spouse of any named insured; and

(3) any *relative* while *occupying your car* if the accident occurs outside Florida; OR

d. WHO REFUSES TO:

(1) SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAMINATION UNDER OATH; OR

(2) PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

4. INCOME LOSS WHEN THE SCHEDULE SHOWS INCOME LOSS BENEFITS ARE ELIMINATED UNDER *YOUR* COVERAGE SYMBOL;

5. ANY MASSAGE AS DEFINED IN S. 480.033, FLORIDA STATUTES, OR ACUPUNCTURE AS DEFINED IN S. 457.102, FLORIDA STATUTES, REGARDLESS OF THE *PERSON* OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

6. ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other No-Fault Coverage Applies**

1. If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

a. the No-Fault Coverage limits of such policies shall not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. If No-Fault Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by one or more sources other than the *State Farm Companies* apply to the same *bodily injury*, then:

a. the No-Fault Coverage limits of such policies shall not be added together to determine the most that may be paid;

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies, subject to *our* pro rata share of the highest applicable limit provided by any one of the policies; and

c. *we* are entitled to recover from each insurer that is liable to pay no-fault coverage benefits to or for the *insured* who sustained *bodily injury*, an equitable pro rata share of benefits paid and expenses incurred in processing the claim.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment;

5. Any *person* or organization that provides the medical services or funeral services; or

6. Any *person* appearing to *us* to be equitably entitled to receive such payment.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means named insureds and *relatives*:

1. while *occupying* a *motor vehicle*;

2. through being struck as a *pedestrian* by a *motor vehicle*; or

3. through being struck as a *pedestrian* by a motorcycle of a type required to be licensed for use on Florida highways.

6) -6DVVRQSVVDI- 000306

**Insuring Agreement**

1. Medical Payments Coverage is excess over No-Fault Coverage.  The no-fault deductible, if any, is not payable under Medical Payments Coverage.

2. *We* will pay properly billed and documented *medical expenses* for services and care that are incurred because of *bodily injury* to an *insured* caused by an accident resulting from the ownership, maintenance, or use of a *motor vehicle*, but only:

   a. if that *insured* receives initial services and care from a provider described in A. below within 14 days after the *motor vehicle* accident that caused *bodily injury* to that *insured*; and

   b. if such services and care are provided within three years after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

   *We* will not pay for any *medical expenses* if the *insured* does not receive initial services and care from a provider described in A. below within 14 days after the *motor vehicle* accident that caused *bodily injury* to that *insured*.

   *We* will only pay *medical expenses* for:

   A. initial services and care:

      (1) lawfully provided, supervised, ordered or prescribed by:

          (a) a physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

          (b) a dentist licensed under chapter 466 of the Florida Statutes; or

          (c) a chiropractic physician licensed under chapter 460 of the Florida Statutes;

      (2) provided in a hospital or facility that owns, or is wholly owned by, a hospital; or

      (3) provided by a *person* or entity licensed under part III of chapter 401 of the Florida Statutes which provides emergency transportation and treatment;

   B. upon referral by a provider described in A. above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may be provided, supervised, ordered, or prescribed only by:

      (1) a physician or osteopathic physician licensed under chapter 458 or chapter 459 of the Florida Statutes;

      (2) a dentist licensed under chapter 466 of the Florida Statutes;

      (3) a chiropractic physician licensed under chapter 460 of the Florida Statues; or

      (4) to the extent permitted by applicable law and under the supervision of a *person* described in (1), (2), or (3) immediately above;

          (a) a physician assistant licensed under chapter 458 or chapter 459 of the Florida Statutes; or

          (b) an advanced registered nurse practitioner licensed under chapter 464 of the Florida Statutes; and

   C. follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may only be provided by the following *persons* or entities:

      (1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

      (2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

      (3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

      (4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above;

      (5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or

          (a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

19
9810A

6) -6DVVRQS VVDI- 000307

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

    i. general medicine;

    ii. radiography;

    iii. orthopedic medicine;

    iv. physical medicine;

    v. physical therapy;

    vi. physical rehabilitation;

    vii. prescribing or dispensing outpatient prescription medication; or

    viii. laboratory services.

3. *We* will pay funeral expenses incurred for an *insured* who dies within three years immediately following the date of a *motor vehicle* accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

    a. utilization reviews;

    b. peer reviews; and

    c. medical bill reviews

    to determine if the incurred expenses are *reasonable charges* and *medically necessary* for the *bodily injury* sustained.

2. use a medical examination of the *insured* to determine if:

    a. the *bodily injury* was caused by a *motor vehicle* accident; and

    b. the expenses incurred are *medically necessary*.

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Limits**

The Medical Payments Coverage limit is dependent upon determination of an *emergency medical condition* and is shown on the Declarations Page.

1. **Emergency Medical Condition**

    a. The Medical Payments Coverage limit for an *insured* who has been determined to have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if the insured has been determined to have an *emergency medical condition* by a physician, a dentist, a physician assistant, or an advanced registered nurse practitioner described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage regardless of the number of:

        (1) *insureds*;

        (2) claims made;

        (3) vehicles insured; or

        (4) vehicles involved in the accident.

    b. Subject to the limit shown on the Declarations Page, as described in 1.a. above, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

2. **Not An Emergency Medical Condition**

    The Medical Payments Coverage limit for an *insured* who has been determined to not have an *emergency medical condition* is shown on the Declarations Page under "Medical Payments Coverage – Not An Emergency Medical Condition Limit – Each Person". This limit is the most *we* will pay for *medical expenses* and for funeral expenses combined that are incurred by or on behalf of any one *insured* as a result of any one accident if the *insured* has been determined to not have an *emergency medical condition* by a healthcare provider described in 2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, regardless of the number of:

    a. *insureds*;

    b. claims made;

    c. vehicles insured; or

    d. vehicles involved in the accident.

3. In no event will *we* pay more than the following *No-Fault Act* "schedule of maximum charges" including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers:

a. For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare.

b. For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

c. For emergency services and care as defined by s. 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   (I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

   (II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   (III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

   However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-sub-subparagraph, then *we* will limit reimbursement to the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation (Florida Rules of Procedure for Worker's Compensation Adjudication) will not be reimbursed by *us*.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

**Nonduplication**

*We* will not pay under Medical Payments Coverage any damages or expenses:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to any named insured or any *relative*; or

2. that have already been paid under No-Fault Coverage or Uninsured Motor Vehicle Coverage of this policy, the no-fault coverage, medical payments coverage, or uninsured motor vehicle coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. UNTIL THE MEDICAL EXPENSE BENEFITS OF ALL NO-FAULT COVERAGE AVAILABLE FROM ALL SOURCES HAVE BEEN EXHAUSTED. This does not apply to the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

2. WHO REFUSES TO:

   a. SUBMIT TO, COMPLETE, OR FAILS TO APPEAR AT AN EXAMINATION UNDER OATH; OR

   b. PROVIDE, COMPLETE, OR FAILS TO APPEAR AT A STATEMENT UNDER OATH;

3. FOR ANY *MEDICAL EXPENSES* THAT ARE NOT PAYABLE UNDER NO-FAULT COVERAGE. This does not include:

   a. the 20% of *medical expenses* that are not paid under no-fault coverage because of the 80% limitation;

6) 6DVVRQ SVVDI 000309

b. *medical expenses* not paid because the medical expense benefits of all no-fault coverage available from all sources have been exhausted;

c. *medical expenses* for *bodily injury* while *occupying* a *non-owned car* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; and

d. *medical expenses* for *bodily injury* sustained through being struck as a *pedestrian* by a:

   (1) *motor vehicle* while outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage; or

   (2) motorcycle of a type required to be licensed for use on Florida highways;

4. FOR MILEAGE COSTS FOR THE USE OF A PERSONAL VEHICLE;

5. FOR ANY INTEREST CHARGES;

6. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

7. WHO:

   a. IS *OCCUPYING* OR THROUGH BEING STRUCK AS A PEDESTRIAN BY A VEHICLE *OWNED BY* ANY NAMED INSURED OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS POLICY; OR

   b. AT THE TIME OF THE ACCIDENT OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT* AND IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT*.

   This exclusion (7.b.) does not apply to:

   (1) any named insured;

   (2) the spouse of any named insured; and

   (3) any *relative* while *occupying your car*, a *newly acquired car*, a *temporary substitute car*, or a *non-owned car* if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage;

8. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

9. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

a. the use of a *private passenger car* on a share-the-expense basis; or

b. an *insured* while *occupying* a *non-owned car* as a passenger;

10. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

a. any named insured;

b. any *relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

11. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

12. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

13. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

14. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

b. RUNS ON RAILS OR CRAWLER-TREADS;

15. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

16. WHOSE *BODILY INJURY* RESULTS FROM:

a. NUCLEAR REACTION;

b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

17. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*;

22
9810A

6) -6DVVRCSVVDI- 000310

18. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (18.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

19. FOR ANY MASSAGE AS DEFINED IN S.480.033, FLORIDA STATUTES, OR ACUPUNCTURE AS DEFINED IN S.457.102, FLORIDA STATUTES, REGARDLESS OF THE *PERSON* OR ENTITY PROVIDING THE MASSAGE OR ACUPUNCTURE; OR

20. FOR ANY SERVICES, CARE, TREATMENT, OR SUPPLIES PROVIDED BY ANY MASSAGE THERAPIST OR ANY ACUPUNCTURIST.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to any named insured or any *relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

   a. If:

      (1) this is the only vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance

which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

   then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

   then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

6) -6DVVRQ SVVDI- 000311

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b.  If:

(1)  more than one vehicle policy issued to any named insured or any *relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2)  medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1.  The *insured*;

2.  The *insured's* surviving spouse;

3.  A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4.  A *person* authorized by law to receive such payment;

5.  Any *person* or organization that provides the *medically necessary* services or funeral services; or

6.  Any *person* appearing to *us* to be equitably entitled to receive such payment.

## UNINSURED MOTOR VEHICLE COVERAGE
### (Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1.  *you*;

2.  *resident relatives*;

3.  any other *person* while *occupying*:

    a.  *your car*;

    b.  a *newly acquired car*;

    c.  a *temporary substitute car*; or

    d.  a trailer attached to a *car* described in a., b., or c. above.

    Such vehicle must be used with *your* express or implied permission.  Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4.  any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle and a trailer attached to such land motor vehicle:

1.  the ownership, maintenance, and use of which is:

    a.  neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or

    b.  insured, self-insured, or bonded for bodily injury liability at the time of the accident; but

    (1)  the limits are less than required by the financial responsibility act of the state of Florida;

    (2)  the limits of liability of the insurance, self-insurance, or bond are less than the damages for *bodily injury* sustained by the *insured*; or

    (3)  the entity providing the financial responsibility:

        (a)  denies that it provides liability coverage for compensatory damages that result from the accident; or

        (b)  is or becomes insolvent; or

24
9810A

6) -6DVVRQSVVDI- 000312

2. the owner or driver:

   a. of which could not reasonably have been identified;

   b. remains unknown; and

   c. that causes *bodily injury* to the *insured*.

***Uninsured Motor Vehicle*** does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

2. *owned by*, rented to, or furnished or available for the regular use of *you* or a *resident relative*;

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1. *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*.

2. The *bodily injury* for which *we* will pay compensatory damages must be:

   a. sustained by an *insured*;

   b. caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*; and

   c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

   a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

   b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1. The *insured* and *we* must agree to the answers to the following two questions:

   a. Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

   b. If the *insured* and *we* agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

2. If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation**, **Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1. all damages resulting from *bodily injury* to any one *insured* injured in any one accident; and

2. all damages, including damages for emotional distress, sustained by other *insureds* as a direct result of that *bodily injury*.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *insureds* who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

25

9810A

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

    a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

    b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

    a. have already been paid;

    b. could have been paid; or

    c. could be paid

    to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. TO THE EXTENT IT BENEFITS:

    a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

    b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

    c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

3. FOR PUNITIVE OR EXEMPLARY DAMAGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative*

by the *State Farm Companies* apply to the same *bodily injury* sustained by a *person* other than *you* or any *resident relative*, then:

    a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

    If uninsured motor vehicle coverage is provided on a primary basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage for an *insured* who sustains *bodily injury*.

    If uninsured motor vehicle coverage is provided on an excess basis by one or more other sources, then *we* will pay the proportion of damages that the applicable limit of this policy bears to the total of all uninsured motor vehicle coverage that applies as excess coverage.

4. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then *we* may choose one or more policies from which to make payment.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## UNINSURED MOTOR VEHICLE COVERAGE
### (Non-Stacking)

This policy provides Uninsured Motor Vehicle Coverage if "U3" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying*:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a trailer attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with *your* express or implied permission. Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., and 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle and a trailer attached to such land motor vehicle:

1. the ownership, maintenance, and use of which is:

   a. neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or

   b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but

      (1) the limits are less than required by the financial responsibility act of the state of Florida;

      (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for *bodily injury* sustained by the *insured*; or

      (3) the entity providing the financial responsibility:

         (a) denies that it provides liability coverage for compensatory damages that result from the accident; or

         (b) is or becomes insolvent; or

2. the owner or driver:

   a. of which could not reasonably have been identified;

   b. remains unknown; and

c. that causes *bodily injury* to the *insured*.

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

2. *owned by*, rented to, or furnished or available for the regular use of *you* or a *resident relative*;

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. whose owner or operator could have been reasonably identified.

**Insuring Agreement**

1. *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*.

2. The *bodily injury* for which *we* will pay compensatory damages must be:

   a. sustained by an *insured*;

   b. caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*; and

   c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

27
9810A

6) -6DVVRC6VVDI- 000315

a.  *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

b.  any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1.  The *insured* and *we* must agree to the answers to the following two questions:

    a.  Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

    b.  If the *insured* and *we* agree that the answer to 1.a. above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

2.  If there is no agreement on the answer to either question in 1. above, then the disagreement shall be resolved by mediation, arbitration, or litigation as outlined in the **Mediation**, **Arbitration**, and **Legal Action Against Us** provisions under **GENERAL TERMS**.

**Limits**

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for the sum of:

1.  all damages resulting from *bodily injury* to any one *insured* injured in any one accident; and

2.  all damages, including damages for emotional distress, sustained by other *insureds* as a direct result of that *bodily injury*.

The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages and all emotional distress resulting from *bodily injury* to two or more *insureds* who sustained damages or emotional distress in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1.  *insureds*;

2.  claims made;

3.  vehicles insured; or

4.  vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1.  that have already been paid to or for the *insured*:

    a.  by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

    b.  for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2.  that:

    a.  have already been paid;

    b.  could have been paid; or

    c.  could be paid

    to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3.  that have already been paid as expenses under No-Fault Coverage or Medical Payments Coverage of this policy, the no-fault coverage or medical payments coverage of any other policy, or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1.  FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2.  FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

    a.  WHILE *OCCUPYING* A VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR

    b.  THROUGH BEING STRUCK BY A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*.

    This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* or through being struck by a motor vehicle not *owned by* one or both of them;

3.  TO THE EXTENT IT BENEFITS:

    a.  ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

    b.  A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW,

DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

c.   ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES; OR

4.   FOR PUNITIVE OR EXEMPLARY DAMAGES.

**If Other Uninsured Motor Vehicle Coverage Applies**

1.   If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

a.   the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

b.   the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2.   The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

a.   If:

(1)   this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

(2)   uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

b.   If:

(1)   more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

(2)   uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

3.   Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

a.   If:

(1)   this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

(2)   uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

b.   If:

(1)   more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

(2)   uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

6) -6DVVRС$VVDI- 000317

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

# PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

   a. being driven by an *insured*; or

   b. in the custody of an *insured* if at the time of the *loss* it is:

      (1) not being driven; or

      (2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*;

6. a *non-owned trailer* while it is being used by an *insured*; and

7. a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily Rental Charge* means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle*. *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or

2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

30
9810A

6) -6DVVRCSVVDI- 000318

b. any other **person** who resides primarily in **your** household; or

c. an employer of any **person** described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an **insured** during any part of each of the 31 or more consecutive days immediately prior to the date of the **loss**.

**Insuring Agreements**

1. **Comprehensive Coverage**

   a. **We** will pay for **loss**, except **loss caused by collision**, to a **covered vehicle**.

   b. **We** will pay transportation expenses incurred by an **insured** as a result of the total theft of **your car** or a **newly acquired car**. These transportation expenses are payable:

      (1) during the period that:

         (a) starts on the date **you** report the theft to **us**; and

         (b) ends on the earliest of:

            (i) the date the vehicle is returned to **your** possession in a drivable condition;

            (ii) the date **we** offer to pay for the **loss** if the vehicle has not yet been recovered; or

            (iii) the date **we** offer to pay for the **loss** if the vehicle is recovered, but is a total loss as determined by **us**; and

      (2) during the period that:

         (a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to **your** possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

         (b) ends on the date the vehicle is repaired.

      These transportation expenses must be reported to **us** before **we** will pay such incurred expenses.

   c. The deductible does not apply to damage to the windshield of any **covered vehicle**.

2. **Collision Coverage**

   **We** will pay for **loss caused by collision** to a **covered vehicle**.

3. **Emergency Road Service Coverage**

   **We** will pay the fair cost incurred by an **insured** for:

   a. up to one hour of labor to repair a **covered vehicle** at the place of its breakdown;

   b. towing to the nearest repair facility where necessary repairs can be made if a **covered vehicle** is not drivable;

   c. towing a **covered vehicle** out of a location where it is stuck if the vehicle is on or immediately next to a public road;

   d. delivery of gas, oil, battery, or tire necessary to return a **covered vehicle** to driving condition. **We** do not pay the cost of the gas, oil, battery, or tire; and

   e. up to one hour of labor for locksmith services to unlock a **covered vehicle** if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**

   a. **Car Rental Expense**

      **We** will pay the **daily rental charge** incurred when an **insured** rents a **car** from a **car business** while **your car** or a **newly acquired car** is:

      (1) not drivable; or

      (2) being repaired

      as a result of a **loss** which would be payable under Comprehensive Coverage or Collision Coverage.

      **We** will pay this **daily rental charge** incurred during a period that:

      (1) starts on the date:

         (a) the vehicle is not drivable as a result of the **loss**; or

         (b) the vehicle is left at a repair facility if the vehicle is drivable; and

      (2) ends on the earliest of:

         (a) the date the vehicle has been repaired or replaced;

         (b) the date **we** offer to pay for the **loss** if the vehicle is repairable but **you** choose to delay repairs; or

         (c) seven days after **we** offer to pay for the **loss** if the vehicle is:

            (i) a total loss as determined by **us**; or

            (ii) stolen and not recovered.

      The amount of any such **daily rental charge** incurred by an **insured** must be reported to **us** before **we** will pay such amount.

31
9810A

b. **Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

(a) starts after the *loss* occurs; and

(b) ends on the earlier of:

(i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

(ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive coverage deductible or collision coverage deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or

the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.

(1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

(a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

(b) A bid or repair estimate approved by *us*; or

(c) A repair estimate that is written based upon or adjusted to:

(i) the prevailing competitive price;

(ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a

32

9810A

survey made by *us*.  If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

(4) If *you* and *we* agree, then windshield glass will be repaired instead of replaced;

b.  Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by mediation or appraisal.  Either the owner or *we* may request mediation or appraisal.

(2) Mediation will follow the rules outlined in this policy, found under **Mediation**, in the section titled **GENERAL TERMS**.

(3) Appraisal will follow the rules and procedures as listed below:

(a) The owner and *we* will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser.  If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

(f) *We* do not waive any of *our* rights by submitting to an appraisal.

(4) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it.  If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

c.  Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2.  The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3.  The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1.  **Car Rental Expense**

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a.  The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*.  If:

(1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount; or

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

33
9810A

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. **Travel Expenses**

The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. **Rental Car – Repayment of Deductible Expense**

The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

   a. INTENTIONALLY DAMAGED; OR
   b. STOLEN

   BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

   a. THEFT;
   b. CONVERSION;
   c. EMBEZZLEMENT; OR
   d. SECRETION

   BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

   a. NUCLEAR REACTION;
   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR
   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

    a. LIEN AGREEMENT;
    b. RENTAL AGREEMENT;
    c. LEASE AGREEMENT; OR
    d. SALES AGREEMENT

    NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

    a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR
    b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

    a. FAILS OR IS DEFECTIVE; OR
    b. IS DAMAGED AS A DIRECT RESULT OF:

34

9810A

(1) WEAR AND TEAR;

(2) FREEZING; OR

(3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

a. THAT IS NOT LEGAL FOR USE IN OR ON THE ***COVERED VEHICLE*** IN THE JURISDICTION WHERE THE ***COVERED VEHICLE*** IS REGISTERED; OR

b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE ***COVERED VEHICLE*** IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE ***COVERED VEHICLE***.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b. ***OWNED BY*** AN ***INSURED***; AND

c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY ***COVERED VEHICLE*** WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the ***State Farm Companies*** apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

If similar coverage provided by one or more sources other than the ***State Farm Companies*** also applies as primary coverage for the same *loss* or expense, then the ***State Farm Companies*** will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the ***State Farm Companies*** bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same *loss* or expense, then the ***State Farm Companies*** will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the ***State Farm Companies*** bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

35
9810A

6) -6DVVRQ&SVVDI- 000323

**Financed Vehicle**

1.  If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

    However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor.

2.  If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1.  **Comprehensive Coverage and Collision Coverage**

    a.  *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

        (1) *You*;

        (2) The repairer; or

        (3) A creditor shown on the Declarations Page, to the extent of its interest.

    b.  *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

        (1) *You*;

        (2) The owner of such vehicle;

        (3) The repairer; or

        (4) A creditor, to the extent of its interest.

2.  **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

    *We* may, at *our* option, make payment to one or more of the following:

    a.  *You*;

    b.  The *insured* who incurred the expense; or

    c.  Any party that provided the service for which payment is owed.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

**Insuring Agreement**

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1.  dies; or

2.  suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

6) -6DVVR&VVDI- 000324

### Death, Dismemberment and
### Loss of Sight Benefits Schedules

If the amount shown on the Declarations Page for the *insured* is $5,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

If the amount shown on the Declarations Page for the *insured* is $10,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

### Exclusions

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN *INSURED*:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*;

2. WHILE *OCCUPYING*, LOADING, OR UN-LOADING:

    a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

    b. A VEHICLE, OTHER THAN AN EMER-GENCY VEHICLE, WHILE USED IN THE:

    (1) *INSURED'S* BUSINESS; OR

    (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.

    This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

    c. A MILITARY VEHICLE; OR

    d. A VEHICLE WHILE IT IS:

    (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CON-TEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    (2) ON A TRACK DESIGNED PRIMARI-LY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

3. WHILE *OCCUPYING*, LOADING, UN-LOADING, OR WHO IS STRUCK AS A *PE-DESTRIAN* BY:

    a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

    b. A MOTOR VEHICLE THAT IS DE-SIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

    c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LO-CATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, AND LOSS OF SIGHT THAT RESULTS FROM:

    a. WAR OF ANY KIND;

    b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINA-TION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

    c. EXPOSURE TO *FUNGI*;

    d. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *IN-SURED* WAS SANE OR INSANE; OR

    e. DISEASE except pus-forming infection due to *bodily injury* sustained in the ac-cident.

6) -6DVVRСSVVDl- 000325

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* or organization authorized by law to receive such payment.

## INSURED'S DUTIES

1. **Insured's Duty at the Time of an Accident or Loss**

   The *insured* must make a reasonable effort to identify:

   a. the owners, operators, and passengers of the vehicles involved in the accident or *loss*;

   b. the *person* or *persons* involved in the accident or *loss*; and

   c. the potential witnesses to the accident or *loss*.

2. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

3. **Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

4. **Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

      (1) making settlements;

      (2) securing and giving evidence; and

      (3) attending, and getting witnesses to attend, depositions, hearings, and trials.

   b. The *insured* must not, except at his or her own cost, voluntarily:

      (1) make any payment to others; or

      (2) assume any obligation to others

unless authorized by the terms of this policy.

   c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

5. **Questioning Under Oath**

   Under:

   a. No-Fault Coverage, each *insured* making claim or seeking payment, must, at *our* option:

      (1) submit to an examination under oath;

      (2) provide a statement under oath; or

      (3) do both (1) and (2) above,

   as often as *we* reasonably require. Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *insured* answering questions under oath to answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

   The scope of the questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. Compliance with **Questioning Under Oath** is a condition precedent to receiving benefits.

   b. all other coverages, each *insured* making claim or seeking payment, must, at *our* option:

      (1) submit to an examination under oath;

      (2) provide a statement under oath; or

      (3) do both (1) and (2) above,

   as often as *we* reasonably require. Such *insured* must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *insured* answering questions under oath to

6) -6DVVRC  SVVDI- 000326

answer the questions with only that *insured's* legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

6. **Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft or vandalism;

c. allow *us* to:

(1) inspect any damaged property before its repair or disposal;

(2) test any part or equipment before that part or equipment is removed or repaired; and

(3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

(1) records;

(2) receipts; and

(3) invoices

that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

7. **Other Duties Under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage**

An *insured* making claim under:

a. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

(2) submit to be examined as often as *we* may reasonably require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request.

(a) Under No-Fault Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are no longer liable for subsequent benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations raises a rebuttable presumption that the *insured's* refusal or failure was unreasonable;

(b) Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage, if an *insured* unreasonably refuses to submit to an examination, then *we* are not liable for coverage benefits. An *insured's* refusal to submit to, complete, or failure to appear at two examinations will be considered unreasonable;

(3) provide written authorization for *us* to obtain:

(a) medical bills;

(b) medical records;

(c) wage, salary, and employment information; and

(d) any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

(4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. No-Fault Coverage or Medical Payments Coverage must, at *our* request, submit documentation from the appropriate healthcare provider described in 1.A. or 1.B. under the **Insuring Agreement** of this policy's No-Fault Coverage, or described in

2.A. or 2.B. under the **Insuring Agreement** of this policy's Medical Payments Coverage, confirming whether that healthcare provider determined the injured *insured* had, or did not have, an *emergency medical condition*;

c. No-Fault Coverage and Uninsured Motor Vehicle Coverage must send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

d. Uninsured Motor Vehicle Coverage must report an accident, involving a motor vehicle whose owner or driver remains unknown, to the police within 24 hours or as soon as reasonably practicable, and to *us* within 30 days.

## GENERAL TERMS

1. **When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

2. **Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page.

a. Liability Coverage, Property Damage Liability Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Physical Damage Coverages apply to accidents and *losses* that occur:

(1) in the United States of America and its territories and possessions;

(2) in Canada; and

(3) while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

b. No-Fault Coverage applies to accidental *bodily injury* sustained:

(1) by an *insured* in Florida; and

(2) by *you* and *relatives* outside Florida; but within:

(a) the United States of America, its territories or possessions; or

(b) Canada,

while *occupying your car*, a *newly acquired car*, or a *temporary substitute car*.

c. Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

3. **Limited Coverage in Mexico**

This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

a. **Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

*We* may, in addition to the damages described in item 1 of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at *our* option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

b. **Property Damage Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Property Damage Liability Coverage is changed to read:

*We* may, in addition to the damages described in items 1. and 2. of the **Insuring Agreement** of this policy's Property Damage Liability Coverage, pay or reimburse,

at our option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Property Damage Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

c. **No-Fault Coverage**

The definition of *insured* is changed read:

*Insured* means named insured and *relatives* while *occupying*:

(1) *your car*;

(2) a *newly acquired car*;

(3) a *temporary substitute car*; or

(4) a *trailer* while attached to a *car* described in (1), (2), or (3) above.

d. **Medical Payments Coverage**

e. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF FLORIDA IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of Florida in the United States of America.

4. **Persons Acting On Our Behalf**

A company employee adjuster, independent adjuster, attorney, investigator, or other *persons* acting on *our* behalf that needs access to an *insured* or claimant or to the insured property that is the subject of a claim must provide at least 48 hours' notice to the *insured* or claimant, public adjuster, or legal representative before scheduling a meeting with the claimant or an onsite inspection of the insured property. The *insured* or claimant may deny access to the property if the notice has not been provided. The *insured* or claimant may waive the 48-hour notice.

A public adjuster must ensure prompt notice of property loss claims submitted to *us* by or through a public adjuster or on which a public adjuster represents the *insured* at the time the claim or notice of loss is submitted to *us*. The public adjuster must ensure that notice is given to *us*, the public adjuster's contract is provided to *us*, the property is available for inspection of the loss or damage by *us*, and *we* are given an opportunity to interview the *insured* directly about the loss and claim. *We* must be allowed to obtain necessary information to investigate and respond to the claim.

*We* may not exclude the public adjuster from its in-person meetings with the *insured*. *We* shall meet or communicate with the public adjuster in an effort to reach agreement as to the scope of the covered loss under the insurance policy. This section does not impair the terms and conditions of the insurance policy in effect at the time the claim is filed.

A public adjuster may not restrict or prevent *us*, company employee adjuster, independent adjuster, attorney, investigator, or other *person* acting on *our* behalf from having reasonable access at reasonable times to an *insured* or claimant or to the insured property that is the subject of a claim.

A public adjuster may not act or fail to reasonably act in any manner that obstructs or prevents *us* or *our* adjuster from timely conducting an inspection of any part of the insured property for which there is a claim for loss or damage. The public adjuster representing the *insured* may be present for *our* inspection, but if the unavailability of the public adjuster otherwise delays *our* timely inspection of the property, the public adjuster or the *insured* must allow *us* to have access to the property without the participation or presence of the public adjuster or *insured* in order to facilitate *our* prompt inspection of the loss or damage.

41
9810A

5. **Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

6. **Changes to This Policy**

a. **Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Florida without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

b. **Change of Interest**

(1) No change of interest in this policy is effective unless *we* consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured shown on the Declarations Page

dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

c. **Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

d. **Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

(1) *you*; or

(2) the United States Postal Service.

7. **Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon:

(1) the purchase of other products or services from the *State Farm Companies*;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of

6) -6DVVRΩSVVDI- 000330

any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which **you** are a member, employee, subscriber, licensee, or franchisee.

d. The premium for this policy is based upon information **we** have received from **you** or other sources. **You** must inform **us** if any information regarding the following is incorrect or incomplete, or changes during the policy period, and **you** must answer questions **we** ask regarding the following:

(1) **Your car**, or its use, including annual mileage;

(2) The **persons** who regularly drive **your car**, including newly licensed family members;

(3) **Your** marital status; or

(4) The location where **your car** is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to **us** when **we** ask, then **we** may decrease or increase the premium during the policy period. If **we** decrease the premium during the policy period, then **we** will provide a refund or a credit in the amount of the decrease. If **we** increase the premium during the policy period, then **you** must pay the amount of the increase.

8. **Renewal**

**We** agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless **we** mail or deliver a nonrenewal notice or a cancellation notice as set forth in 9. and 10. below.

9. **Nonrenewal**

If **we** decide not to renew this policy, then, at least 45 days before the end of the current policy period, **we** will mail or deliver a nonrenewal notice to the most recent policy address that **we** have on record for the first named insured who is shown on the Declarations Page.

10. **Cancellation**

a. **How You May Cancel**

(1) **You** may cancel this policy by providing to **us** advance notice of the date cancellation is effective. **We** may confirm the cancellation in writing.

(2) However, if the policy provides Liability Coverage or Property Damage Liability Coverage and No-Fault Coverage, **you** may not cancel **your** policy during the first two months immediately following the policy effective date unless:

(a) **your car** has been totally destroyed;

(b) **you** have transferred ownership of **your car**;

(c) **you** have purchased another policy covering **your car**; or

(d) **you** are a member of the United States Armed Forces and have been called to or are on active duty outside the United States in an emergency situation.

b. **How and When We May Cancel**

(1) **We** may cancel this policy by mailing or delivering a written notice to the most recent policy address that **we** have on record for the first named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

(2) Except as provided under **Cancellation Due to Incorrect Premium**, the date cancellation is effective will be at least:

(a) 10 days after the date **we** mail or deliver the cancellation notice, if the cancellation is because the premium was not paid when due; or

(b) 45 days after **we** mail or deliver the cancellation notice, if the cancellation is because of any other reason.

(3) If **we** cancel this policy for nonpayment of premium during the first 60 days immediately following the effective date of this policy, **we** will do so only if a check used to pay the premium is dishonored for any reason or any other type of premium payment was subsequently determined to be rejected or invalid.

(4) After this policy has been in force for more than 59 days, **we** will not cancel this policy before the end of the current policy period unless it is based on one or more of the following reasons:

(a) Nonpayment of premium;

43
9810A

(b) **You**, any **resident relative**, or any other **person** who usually drives **your car** has had his or her driver's license or motor vehicle registration under suspension or revocation during the policy period or the 180 days immediately preceding its effective date, or if the policy is a renewal, during its policy period; or

(c) Material misrepresentation or fraud.

c. **Cancellation Due to Incorrect Premium**

(1) If **we** determine that **we** have charged **you** an incorrect premium for coverages requested in **your** insurance application, **we** will immediately notify **you** of any additional premium due. **You** may:

(a) maintain **your** policy in force by paying the additional amount due by the date stated in the notice; or

(b) cancel **your** policy by the date stated in the notice and receive a refund of any unearned premium.

(2) If **you** fail to respond by the date stated in the notice **we** will cancel **your** policy. The date cancellation is effective will be at least 14 days after the date **we** mail or deliver the cancellation notice.

d. **Return of Unearned Premium**

(1) If **you** cancel this policy, then premium will be earned on a pro rata basis. **We** may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed to **you** within 30 days after the effective date of the policy cancellation, or 30 days after **we** receive **your** request to cancel this policy, whichever is later.

(2) If **we** cancel this policy, then premium will be earned on a pro rata basis. Any unearned premium will be mailed at the time **we** cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation.

11. **Assignment**

No assignment of benefits or other transfer of rights is binding upon **us** unless approved by **us**. This does not include a post loss assignment of benefits.

12. **Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the **insured** or his or her estate will not relieve **us** of **our** obligations under this policy.

13. **Concealment or Fraud**

a. **Coverages Other Than No-Fault and Medical Payments Coverage**

There is no coverage under this policy for any **person** who, or organization making claim or seeking payment that, has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

b. **No-Fault Coverage and Medical Payments Coverage**

Benefits shall not be due or payable to or on behalf of an **insured person** if that **person** has committed, by material act or omission, any insurance fraud relating to No-Fault Coverage or Medical Payments Coverage under this policy, if the fraud is admitted to in a sworn statement by the **insured** or if it is established in a court of competent jurisdiction. Any insurance fraud shall void all coverage arising from the claim related to such fraud under No-Fault Coverage or Medical Payments Coverage of the **insured person** who committed the fraud, irrespective of whether a portion of the **insured person's** claim may be legitimate, and any benefits paid prior to the discovery of the **insured person's** insurance fraud shall be recoverable by **us**, in their entirety, from the **person** who committed insurance fraud. **We** are entitled to all **our** costs and attorney's fees in any action in which **we** prevail that enforces **our** right of recovery under this provision.

Neither **we** nor the **insured** is required to pay a claim or charges:

(1) for any service or treatment that was not lawful at the time rendered; or

(2) to any **person** who knowingly submits a false or misleading statement relating to the claim or charges.

If **we** have reasonable belief that a fraudulent insurance act (s. 626.989, Florida Statutes, or s. 817.234, Florida Statutes) has been committed, **we** shall notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, **we** have an additional 60 days to

44

9810A

conduct a fraud investigation. Notwithstanding the demand letter conditions under the **Legal Action Against Us** provision of this policy, no later than 90 days after the submission of the claim, *we* must deny the claim or pay the claim with simple interest as provided in d. (2) under the **Legal Action Against Us** provision of this policy. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Insurance Fraud.

14. **Our Right to Recover Our Payments**

Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*. Under all other coverages, the following apply:

a. **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, that is not an *insured*, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(1) doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through *our* representatives when *we* ask.

b. **Reimbursement**

(1) If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(a) hold in trust for *us* the proceeds of any recovery; and

(b) reimburse *us* to the extent of *our* payment.

(2) *We* have a right of reimbursement against the owner or the insurer of the owner of a commercial motor vehicle for *our* payments of No-Fault benefits to any *person* having been an *occupant* of the commercial motor vehicle or having been struck by the commercial motor vehicle as a *pedestrian*.

*Our* right of reimbursement for benefits under No-Fault Coverage does not apply to an owner or registrant of a taxicab as identified in s.627.733(1)(b), Florida Statutes.

15. **Mediation**

The *insured* or *we* may demand mediation of any claim:

a. in an amount of $10,000 or less, resulting from:

1. ***bodily injury*** under No-Fault Coverage, Medical Payments Coverage, or Uninsured Motor Vehicle Coverages; or

2. death of or loss to an *insured* under Death, Dismemberment and Loss of Sight Coverage; or

b. in any amount, for a *loss* covered under Physical Damage Coverages,

by filing a written request with the Florida Department of Financial Services on a form which may be obtained from the Florida Department of Financial Services. The request must state why mediation is being requested and the issue in dispute.

The Florida Department of Financial Services will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible.

Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosure provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a *person* files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation. Any suit regarding a mediated dispute must be filed as prescribed under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.

6) -6DVVRQV SVVDI- 000333

### 16. Arbitration

a. The *insured* or *we* may request, in writing, arbitration of any claim. If *you* and *we* agree to arbitrate, then arbitration will follow the procedure outlined below.

(1) The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

(2) The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

(3) Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

(4) The arbitrators shall only decide the answers to the following two questions:

(a) are damages compensatory; and

(b) if damages are compensatory, then what is the amount of compensatory damages.

(5) Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

(6) A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

(a) *us*;

(b) the *insured*;

(c) any assignee of the *insured*; and

(d) any *person* or organization with whom the *insured* expressly or impliedly contracts.

(7) Subject to (1), (2), (3), (4), (5), and (6) above, state court rules governing procedure and admission of evidence will be used.

(8) *We* do not waive any of *our* rights by submitting to arbitration.

b. *We* are not bound by any:

(1) judgment obtained without *our* written consent; or

(2) default judgment against any *person* or organization other than *us*.

c. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

### 17. Legal Action Against Us

a. Legal action may only be brought against *us* within five years immediately following the date of the accident or *loss*.

b. Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy.

c. Under No-Fault Coverage, *we* shall create and maintain for each *insured* a log of No-Fault Coverage benefits *we* have paid on behalf of the *insured*. If litigation is commenced, *we* shall provide to the *insured* a copy of the log within 30 days after receiving a request for the log from the *insured*.

d. In addition, legal action may only be brought against *us* regarding:

(1) Liability Coverage and Property Damage Liability Coverage, after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(a) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(b) agreement between the claimant and *us*.

(2) No-Fault Coverage, if within 30 days after *our* receipt of written notice of an intent to initiate litigation for:

(a) an overdue claim, applicable interest, and a penalty of 10% of the overdue amount that *we* pay, subject to a maximum penalty of $250; or

6)-6DVVRQ6VVDI- 000334

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice and to pay a penalty of 10%, subject to a maximum penalty of $250, when *we* pay for such future treatment.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

Such notice of intent to initiate litigation may not be sent until the claim is overdue, including any additional time *we* have to pay the claim pursuant to the *No-Fault Act*.

The notice must state that it is a "demand letter under s.627.736" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to *us*; and

iii. to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, any other standard form approved by the Florida Office of Insurance Regulation, or the lost wage statement previously submitted, may be used as the itemized statement. To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website. Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(3) Medical Payments Coverage unless *we* receive written notice of an intent to initiate litigation and if within 30 days after *our* receipt of such for:

(a) a claim, *we* fail to pay the claim; or

(b) *our* withdrawal of payment for future treatment not yet rendered, *we* fail to mail to the *person* filing the notice a written statement of *our* agreement to pay for such treatment in accordance with the notice.

Payment or *our* written statement of agreement to pay for future treatment not yet rendered shall be treated as being made on the date a draft, other valid instrument that is equivalent to payment, or *our* written statement of agreement to pay, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery.

The notice must state that it is a "demand letter for Medical Payments Coverage" and specify:

i. the name of the *insured* for whom benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

ii. the claim number or policy number upon which the claim was originally submitted to us; and

47
9810A

iii.  to the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, or any other standard form approved by the Florida Office of Insurance Regulation, may be used as the itemized statement.  To the extent that the demand involves *our* withdrawal of payment for future treatment not yet rendered, the claimant shall attach a copy of *our* notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

The notice must be delivered to *us* by United States certified or registered mail, return receipt requested, at the address *we* have filed with, and that is made available by, the office of the Florida Chief Financial Officer on its Internet Website.  Such postal costs shall be reimbursed by *us*, if requested by the claimant in the notice, when *we* pay the claim.

(4)  Uninsured Motor Vehicle Coverage if the *insured* or that *insured's* legal representative within five years immediately following the date of the accident:

(a)  presents an Uninsured Motor Vehicle Coverage claim to *us*;

(b)  files a lawsuit, in a state or federal court that has jurisdiction against *us*;

(c)  consents to a jury trial if requested by *us*; and

(d)  agrees that *we* may contest the issues of liability and the amount of damages.

*We* are not bound by any judgment obtained without *our* written consent.

*We* are not bound by default judgment against any *person* or organization other than *us*.

Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

18.  **Choice of Law**

Without regard to choice of law rules, the law of the state of:

a.  Florida will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b.  Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1)  Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2)  Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

19.  **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a.  such provision will remain in full force to the extent not held invalid or unenforceable; and

b.  all other provisions of this policy will remain valid and enforceable.

Policy Form 9810A
©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

6) -6DVVR&SVVDI- 000336

**State Farm Mutual Automobile Insurance Company**
PO Box 2358
Bloomington IL 61702-2358

R 75509-1-S        MUTL /YQI

**DECLARATIONS PAGE**

NAMED INSURED
AT2                003972 0058
                   59-6825-4  C    A
SASSON, ASSAF & ADA L
3385 NE 167TH ST
N MIAMI BEACH FL  33160-3849

| | |
|---|---|
| POLICY NUMBER | J53 4643-B02-59B |

POLICY PERIOD APR 19 2022 to AUG 02 2022
12:01 A.M. Standard Time

STATE FARM PAYMENT PLAN NUMBER
1520065519

AGENT

ANTHONY GARCIA
1035 S STATE ROAD 7 STE 311
WELLINGTON, FL 33414-6137

PHONE: (561)793-9822

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

### YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|------|------|-------|------------|--------------------|-------|
| 2022 | PORSCHE | TAYCAN | 4DR | WP0AA2Y11NSA13378 | 60306010002 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---------|-------------------|----------|
| A | Liability Coverage | $174.50 |
| | Bodily Injury Limits | |
| | Each Person,   Each Accident | |
| | $300,000        $300,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $100,000 | |
| P14/$10,00 | $500 Deductible No-Fault Coverage | $55.38 |
| | Deductible Applies to Each Named Insured and to | |
| | Each of Your Dependent Relatives | |
| D | Comprehensive Coverage - $500 Deductible | $119.03 |
| G | Collision Coverage - $500 Deductible | $203.93 |
| H | Emergency Road Service Coverage | $.54 |
| R1 | Car Rental and Travel Expenses Coverage | $7.84 |
| | Limit - Car Rental Expense | |
| | Each Day,    Each Loss | |
| | 80%          $1,000 | |

| | | |
|---|---|---|
| **Total premium for APR 19 2022 to AUG 02 2022.** | **$561.22** | This is not a bill. |

### IMPORTANT MESSAGES

IMPORTANT NOTICE- Under No-Fault Coverage, the only medical expenses we will pay are reasonable medical expenses that are payable under the Florida Motor Vehicle No-Fault Law. The most we will pay for such reasonable medical expenses is 80% of the "schedule of maximum charges" found in the Florida Motor Vehicle No-Fault Law and in the Limits section of the Florida Car Policy's No-Fault Coverage.

Replaced policy number J534643-59A.

**Your total renewal premium for FEB 02 2022 to AUG 02 2022 is $981.13.**

For questions, problems or to obtain information about coverage call: (561)793-9822.

State Farm works hard to offer you the best combination of price, service, and protection.   The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once during your policy term, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

### EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9810A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
CREDITOR- DCU CREDIT UNION, PO BOX 9130, MARLBOROUGH MA 01752-9130.
6128S.1   AMENDATORY ENDORSEMENT:
6910A    AMENDATORY ENDORSEMENT:

Agent:        ANTHONY GARCIA

Telephone:    (561)793-9822

Prepared      JUN 03 2022        6825-C0D

09289/03803
155-3866.2  04-2005 (o1a025hd)
i4SX0N     (o1a025te)
                (o1a0254c)

6) -6DVVRC6VVDI- 000337

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

_Lynne M. Yaukell_
Secretary

_Michael F. Tipsord_
President

6) -6DVVRCSVVDI- 000338

# 6910A AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

## 1. PHYSICAL DAMAGE COVERAGES

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

The following is added:

If there is disagreement as to the cost of repair, replacement, or recalibration of glass, an appraisal will be used as the first step toward resolution. Appraisal will follow the rules and procedures as listed below.

a. The owner and **we** will each select a competent appraiser.

b. The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the **owner** or **we** may petition a court that has jurisdiction to select the third appraiser.

c. Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

d. The appraisers shall only determine the cost of repair, replacement, and recalibration of glass. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

e. A written appraisal that is both agreed upon by and signed by any **two** appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the **covered vehicle** and **us**.

f. **We** and **you** do not waive any rights by submitting to an appraisal.

## 2. GENERAL TERMS

a. Item (3) of **How and When We May Cancel**, under **Cancellation**, is changed to read:

If **we** cancel this policy for nonpayment of premium during the first 30 days immediately following the **effective date** of this policy, **we** will do so only if a check used to pay the premium is dishonored for any **reason** or any other type of premium payment was subsequently determined to be rejected or invalid.

b. Item a. of **Legal Action Against Us** is changed to read:

Legal action may only be **brought** against **us** within five years immediately following the date of the accident or **loss**. However, this limitation of action is tolled for a period of 60 days after **we** receive notice from the Florida Department of Financial Services, in accordance with section 624.155, Florida Statutes.

6910A

© Copyright, State Farm Mutual Automobile Insurance Company, 2020

6910A
2020
9-13

6) 4DVVRG$VVDI-000339

**PLEASE ATTACH TO YOUR POLICY BOOKLET**

Policy Number: J53 4643-B02-59B
Sheet 1 of 1



DEFENDANTS_VDL-000340

**6128S.1 AMENDATORY ENDORSEMENT**

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

   a. *Newly Acquired Car* is changed to read:

   *Newly Acquired Car* means a *car* newly *owned by you* or a *resident relative*.

   A *car* ceases to be a *newly acquired car* on the earlier of:

   1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

   2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

   If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

   b. *Pedestrian* is changed to read:

   *Pedestrian* means a *person* who is not *occupying*:

   1. a *motor vehicle*;

   2. a self-propelled vehicle; or

   3. a trailer or other vehicle attached to a self-propelled vehicle.

   c. *Relative* is changed to read:

   *Relative* means a *person*, other than *you*, who is:

   1. related to any named insured in any degree by blood, by marriage, or by adoption and who makes his or her home in the same family unit with that named insured, whether or not temporarily living elsewhere, or

   2. a ward or foster child of any named insured or of a *person* described in 1. above and who makes his or her home in the same family unit with that named insured.

2. **LIABILITY COVERAGE (Bodily Injury and Property Damage)**

   a. Item 4. of *Insured*, under **Additional Definition**, is changed to read:

   *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

   a. neither *owned by*, nor hired by, that other *person* or organization; and

   b. neither available for, nor being used for, carrying *persons* for a charge.

   b. The following is added to **Supplementary Payments**:

   Attorney fees for attorneys representing the *person* or entity asserting a claim against an *insured* are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6) -6DVVRCSVVDI- 000341

c. **Exclusions**

(1) The exception to exclusion 11. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

3. **PROPERTY DAMAGE LIABILITY COVERAGE**

a. Item 4. of *Insured*, under **Additional Definition**, is changed to read:

*Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability.

This provision applies only if the vehicle is:

a. neither *owned by*, nor hired by, that other *person* or organization; and

b. neither available for, nor being used for, carrying *persons* for a charge.

b. The following is added to **Supplementary Payments**:

Attorney fees for attorneys representing the *person* or entity asserting a claim against an *insured* are not a covered court cost, cost or expense under the Supplementary Payments provision of this coverage in this policy.

c. **Exclusions**

(1) The exception to exclusion 9. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY*

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6) -6DVVR&VVDI- 000342

*ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

4. **NO-FAULT COVERAGE**

   a. **Additional Definition**

   Item 2. of the definition of *Insured* is changed to read:

   *Insured* means any other *person* while *occupying* or struck as a *pedestrian* by:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   b. **Insuring Agreement**

   Item 1.C. is changed to read:

   follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following *persons* or entities:

   (1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

   (2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

   (3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

   (4) a physical therapist licensed under chapter 486 of the Florida Statutes, based upon referral by a provider described in B. above; and

   (5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or

   (a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

   (b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

   (c) provides at least four of the following medical specialties:

   i. general medicine;

   ii. radiography;

   iii. orthopedic medicine;

   iv. physical medicine;

   v. physical therapy;

   vi. physical rehabilitation;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6) -6DVVRCSVVDI- 000343

vii. prescribing or dispensing outpatient prescription medication; or

viii. laboratory services.

c. **Limits**

(1) Item 2.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 2. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

d. **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

5. **MEDICAL PAYMENTS COVERAGE**

a. **Insuring Agreement**

Item 2.C. is changed to read:

follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to A. above which may also be provided by the following *persons* or entities:

(1) a hospital or ambulatory surgical center licensed under chapter 395 of the Florida Statutes;

(2) an entity wholly owned by one or more physicians licensed under chapter 458 or 459 of the Florida Statutes, chiropractic physicians licensed under chapter 460 of the Florida Statutes or dentists licensed under chapter 466 of the Florida Statutes, or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

(3) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

(4) a physical therapist licensed under chapter 486 of the Florida

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6) -6DVVRQ6VVDI- 000344

Statutes, based upon referral by a provider described in B. above; and

(5) a health care clinic licensed under part X of chapter 400 of the Florida Statutes which is accredited by an accrediting organization whose standards incorporate comparable regulations required by the state of Florida; or

(a) has a medical director licensed under chapter 458, chapter 459, or chapter 460 of the Florida Statutes;

(b) has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

(c) provides at least four of the following medical specialties:

i. general medicine;

ii. radiography;

iii. orthopedic medicine;

iv. physical medicine;

v. physical therapy;

vi. physical rehabilitation;

vii. prescribing or dispensing outpatient prescription medication; or

viii. laboratory services.

b. **Limits**

(1) Item 3.f.(I) is changed to read:

For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I) The participating physician fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).

(2) The last paragraph of item 3. is changed to read:

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it will not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, the term "service year" means the period from March 1 through the end of February of the following year.

c. **Exclusions**

(1) Exclusion 7. is changed to read:

THERE IS NO COVERAGE FOR AN **INSURED** WHO:

a. IS **OCCUPYING** OR THROUGH BEING STRUCK

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6128S.1

AS A *PEDESTRIAN* BY A VEHICLE *OWNED BY* ANY NAMED INSURED OR ANY *RELATIVE* WHICH IS NOT INSURED UNDER THIS POLICY; OR

b. AT THE TIME OF THE ACCIDENT OWNS A *MOTOR VEHICLE* SUBJECT TO THE *NO-FAULT ACT* AND IS NOT INSURED FOR THE COVERAGE REQUIRED BY THE *NO-FAULT ACT*.

This exclusion (7.b.) does not apply to:

(1) any named insured;

(2) the spouse of any named insured; and

(3) any *relative* while *occupying your car*, a *newly acquired car*, a *temporary substitute car*, or a *non-owned car* if the accident occurs outside Florida, but within the area described under **Where Coverage Applies** for Medical Payments Coverage;

(2) The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY ACQUIRED CAR*, OR A *TEMPORARY SUBSTITUTE CAR*

WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

6. **UNINSURED MOTOR VEHICLE COVERAGE (Stacking)**

a. **Additional Definitions**

"*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer" is changed to read:

*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

2. designed for use primarily off public roads except while on public roads;

3. while located for use as a dwelling or other premises; or

4. whose owner or operator could have been reasonably identified.

b. **Exclusions**

The following exclusion is added:

THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

2. *OCCUPYING* OR STRUCK BY *YOUR CAR*, A *NEWLY*

6128S.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

*ACQUIRED CAR*, OR A *TEM-PORARY SUBSTITUTE CAR* WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

7. **UNINSURED MOTOR VEHICLE COVERAGE (Non-Stacking)**

   a. **Additional Definitions**

   "*Uninsured Motor Vehicle* does not include a land motor vehicle or trailer" is changed to read:

   *Uninsured Motor Vehicle* does not include a land motor vehicle or trailer:

   1. whose ownership, maintenance, or use is provided Liability Coverage by this policy. However, any such vehicle will be deemed to be an *uninsured motor vehicle* for *bodily injury* sustained by *you* or a *resident relative* while the vehicle is being operated by a *person* other than *you* or a *resident relative*;

   2. designed for use primarily off public roads except while on public roads;

   3. while located for use as a dwelling or other premises; or

   4. whose owner or operator could have been reasonably identified.

   b. **Exclusions**

   (1) Exclusion 2. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

   a. WHILE *OCCUPYING* A VEHICLE *OWNED BY YOU* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

   b. WHILE *OCCUPYING* A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*. This exclusion (2.b.) does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, provided that the vehicle is *owned by* neither that named insured nor that spouse; OR

   c. WHILE A *PEDESTRIAN* AND IS STRUCK BY A VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*;

   (2) The following exclusions are added:

   (a) THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A VEHICLE *OWNED BY* THAT *INSURED* IF THAT VEHICLE IS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE UNDER THIS POLICY OR ANY OTHER POLICY.

   (b) THERE IS NO COVERAGE FOR AN *INSURED* WHO IS:

   1. PROVIDING TRANSPORTATION NETWORK SERVICES; OR

6128S.1
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

2. **OCCUPYING** OR STRUCK BY **YOUR CAR**, A **NEWLY ACQUIRED CAR**, OR A **TEMPORARY SUBSTITUTE CAR** WHILE SUCH VEHICLE IS BEING USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

8. **PHYSICAL DAMAGE COVERAGES**

a   The paragraph that reads:

> If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

is changed to read:

**Deductible**

1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, **we** will not deduct more than $500 for any **loss** to a **newly acquired car**.

2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, **we** will not deduct more than $500 for any **loss caused by collision** to a **newly acquired car**.

b. **Exclusions**

The following exclusion is added:

> THERE IS NO COVERAGE FOR ANY **COVERED VEHICLE** WHILE IT IS USED TO PROVIDE TRANSPORTATION NETWORK SERVICES.

9. **INSURED'S DUTIES**

a. Item 7.a.(3) is changed to read:

An **insured** making claim under:

a. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(3) provide written authorization for **us** to obtain medical bills, medical records, wage information, salary information, employment information, and any other relevant information **we** deem reasonably necessary to substantiate the claim.

Such authorizations must not:

(a) restrict **us** from performing **our** business functions in:

(i) obtaining relevant and reasonably necessary records, bills, information, and data; nor

(ii) using or retaining relevant and reasonably necessary records, bills, information, and data collected or received by **us**;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(b) require **us** to violate federal or state laws or regulations;

(c) prevent **us** from fulfilling **our** data reporting and data retention obligations to insurance regulators; or

(d) prevent **us** from disclosing claim information and data:

    (i) to enable performance of **our** business functions;

    (ii) to meet **our** reporting obligations to insurance regulators;

    (iii) to meet **our** reporting obligations to insurance data consolidators; and

    (iv) as otherwise permitted by law.

If an injured **insured** is a minor, unable to act, or dead, then his or her legal representative must provide **us** with the written authorization.

If the holder of the information refuses to provide it to **us** despite the authorization, then at **our** request the **person** making claim or his or her legal representative must obtain the information and promptly provide it to **us**; and

b. The following is added to item 7.:

An **insured** making claim under No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must submit to **us** all information **we** need to comply with federal and state laws and regulations.

10. **GENERAL TERMS**

a. The following is added to **Limited Coverage in Mexico**:

    **Uninsured Motor Vehicle Coverage** (**Stacking** and **Non-Stacking**)

b. Under **Limited Coverage in Mexico**, **Legal Action Against Us** is changed to read:

    Any legal action against **us** arising out of an accident or **loss** occurring in the country of Mexico must be brought in a Florida state court in the United States of America, or a United States of America District Court that has jurisdiction.

c. The provision entitled **Persons Acting On Our Behalf** is deleted in its entirety.

d. The following is added to **Newly Owned or Newly Leased Car**:

    If a **resident relative** wants to insure a **car** newly **owned by** the **resident relative** with the **State Farm Companies** after that **car** ceases to be a **newly acquired car**, then the **resident relative** must apply to the **State Farm Companies** for a separate policy to insure the **car** newly **owned by** the **resident relative**. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

e. The following is added to **Premium**:

    If due to insufficient funds, payment of premium for this policy by debit

6128S.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6) -6DVVRODVVDI- 000349

card, credit card, electronic funds transfer, or electronic check is returned, is declined, or cannot be processed, *we* may impose an insufficient funds fee of $15 per occurrence.

f.  **Return of Unearned Premium** is changed to read:

(1) If *you* cancel this policy:

(a) then premium will be earned on a pro rata basis. *We* may retain up to 10% of any unearned premium. Any remaining unearned premium will be mailed or electronically transferred to *you* within 30 days after the effective date of the policy cancellation, or 30 days after *we* receive *your* request to cancel this policy, whichever is later. Delay in the return of unearned premium does not affect the cancellation;

(b) *you* may elect to apply the unearned portion of any premium paid to unpaid balances of other policies with the *State Farm Companies*.

(2) If *we* cancel this policy:

(a) then premium will be earned on a pro rata basis. Any unearned premium will be mailed or electronically transferred at the time we cancel the policy or within 15 days after the effective date of the policy cancellation. Delay in the return of unearned premium does not affect the cancellation;

(b) *you* may elect to apply the unearned portion of any

premium paid to unpaid balances of other policies with the *State Farm Companies*.

g.  The following are added to **GENERAL TERMS**:

**Electronic Delivery**

With *your* consent, *we* may, if allowed by law, electronically deliver any document or notice, including a notice to renew, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice. This provision does not apply to any notice to non-renew or cancel.

**Our Rights Regarding Claim Information**

a.  *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b.  Subject to a. above, *we* will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, relevant data, and any other reasonable information to process the claim;

(2) using any of the items described in item b.(1) above; or

6128S.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(3) retaining:

    (a) any of the items in item b.(1) above; or

    (b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c.  *We* may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

    (1) to enable performance of *our* business functions;

    (2) to meet *our* reporting obligations to insurance regulators;

    (3) to meet *our* reporting obligations to insurance data consolidators;

    (4) to meet other obligations required by law; and

    (5) as otherwise permitted by law.

d.  *Our* rights under a., b., and c. above shall not be impaired by any:

    (1) authorization related to any claim submitted under this policy; or

    (2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

6128S.1